IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:                                                    Chapter 11

                                                          Case No. 13-29597-RAM
FLORIDA GAMING CENTERS, INC.,                             (Joint Administration Requested)
*et al.*,[1]

_____ Debtors.    /

**DECLARATION OF DANIEL LICCIARDI IN SUPPORT
OF FIRST-DAY MOTIONS AND APPLICATIONS**

DANIEL LICCIARDI, being duly sworn upon oath states:

1. My name is Daniel Licciardi, and I am the Executive Vice-President of the Debtors, Florida Gaming Centers, Inc. and Florida Gaming Corporation, which together with Tara Club Estates, Inc. and Freedom Holding, Inc. are referred to here as "**Miami Jai-Alai**." Except as otherwise indicated herein, all facts set forth in this Declaration are based on my personal knowledge, my discussions with other members of Miami Jai-Alai's senior management, my review of relevant documents, and/or my opinion, relying on my experience and knowledge of Miami Jai-Alai's operations and financial condition.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.  I am authorized to submit this Declaration.

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Florida Gaming Centers, Inc. (5893), Florida Gaming Corporation (0533), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

**BACKGROUND**

2. Miami Jai-Alai is one of Miami's oldest institutions. In fact, the first professional Jai-Alai game was played at Miami Jai-Alai in 1926. Over the years, Miami Jai-Alai has been an important part of this growing community – hosting jammed-packed jai-alai games, concerts by Jimi Hendrix, *Miami Vice* episodes, Miami Junior Women's Club meetings, and championship boxing matches. In fact, when Anthony Bourdain came to town and wanted to experience something uniquely Miami, he went to Miami Jai-Alai to watch a game.

3. Over the years, as the popularity of jai-alai itself waned, it became clear that casino gambling was the key to Miami Jai-Alai's continued viability. In 2008, when Miami-Dade County residents voted to legalize gambling at pari-mutuel sites, Miami Jai-Alai began the process of building a casino that would house the permitted slot machines adjacent to the historic Miami Jai-Alai site.

4. Miami Jai-Alai is now thriving and is a success by every measure but one: its relationship with its lender, a syndicate led by ABC Funding, LLC (**"ABC Funding"**) that provided the $87 million necessary to build the casino. Despite the fact that Miami Jai-Alai built the casino ahead of schedule and made all required payments under the loan, ABC Funding called a number of technical defaults and initiated foreclosure proceedings. It is Miami Jai-Alai's firm belief that ABC Funding's sole interest is owning the casino, and not repayment of its loan.

5. Most recently, Miami Jai-Alai had arranged to sell all its assets to Silvermark, LLC, another casino owner and operator. As part of that transaction, Miami Jai-Alai was appraised by an investment bank as having a value of at least $180 million.

6.  More important, it thus became apparent that the proposed sale to Silvermark would mean that shareholders in Florida Gaming Centers would be unable to realize on Miami Jai-Alai's residual equity, which may exceed $50 million. Thus, Miami Jai-Alai seeks chapter 11 protection to enable it to realize this value for the benefit of its creditors, shareholders and other parties in interest.

### MIAMI JAI-ALAI'S BUSINESS OVERVIEW

7.  Miami Jai-Alai is operated by Florida Gaming Centers, Inc. ("**Centers**"), which in turn, is 100% owned by Florida Gaming Corporation ("**Corp.**") ("**Centers**" and "**Corp.**" together, "**Florida Gaming**"), a corporation organized under the laws of the state of Delaware. Corp. is a public company registered with the United States Securities and Exchange Commission. Miami Jai-Alai's principal business is owning jai-alai frontons – courts where jai-alai is played – with simulcasting operations in Miami and Ft. Pierce, Florida. It is one of the largest, if not the largest jai-alai operator in the world.

8.  Due to a decline in the jai-alai industry and the need to bring in additional cash flow to the Miami jai-alai fronton, using loans from the Syndicated Credit Facility, as defined below, Miami Jai-Alai opened *Casino Miami Jai-Alai* in January 2012. The addition includes a 60,000 square foot state of the art casino with 1058 Class III slot machines, an expanded poker room, electronic blackjack, roulette, dominoes, live shows such as concerts and boxing, a new restaurant and three full-service bars.

9.  Miami Jai-Alai continues to operate a fronton in Ft. Pierce, Florida and owns an inactive jai-alai permit for Tampa, Florida. The Ft. Pierce location provides inter-track wagering

on interstate simulcasting of horse racing, dog racing, and jai-alai from various tracks and frontons in the United States and within the state of Florida.

10. Collectively, Miami Jai-Alai employs approximately 500 full-time and part-time hourly and salaried employees.

## PRE-PETITION CREDIT FACILITY

11. **THE SYNDICATED CREDIT FACILITY.** On April 25, 2011, Corp. entered into a Credit Agreement (the "**Credit Agreement**") with its wholly owned subsidiary, Centers, with a syndicate of unaffiliated third party lenders, Summit Partners Subordinated Debt Fund IV-A, L.P., Summit Partners Subordinated Debt Fund IV-B, L.P., Canyon Value Realization Fund, L.P., and FS Investment Corporation (collectively, the "**Pre-Petition Lenders**[2]"), and ABC Funding, LLC, as administrative agent for the Lenders (the "**Pre-Petition Agent,**" collectively with the Pre-Petition Lenders, the "**Pre-Petition Secured Parties**").

12. Pursuant to the Credit Agreement, the Pre-Petition Lenders agreed to make revolving loans available to Centers up to $87,000,000 (the "**Syndicated Credit Facility**") to be used by Centers to pay off existing debt of Centers and Corp., fund the casino project at the Miami jai-alai fronton and for working capital.

13. Corp. and certain affiliates of Corp. are guarantors (the "**Guarantors**") of the Syndicated Credit Facility under the Credit Agreement. The Syndicated Credit Facility is

---

[2] However, the "Pre-Petition Lenders" shall be limited to only those entities comprising the syndicate of third party lenders that are parties to the Credit Agreement as of the Petition Date, which upon information and belief, includes: Summit Partners Subordinated Debt Fund IV-A, L.P., Summit Partners Subordinated Debt Fund IV-B, L.P., Canyon Value Realization Fund, L.P., Canyon Value Realization Master Fund, L.P., Canyon Distressed Opportunity Master Fund, L.P., Canyon-GRF Master Fund II, L.P., Locust Street Funding LLC, and JPMorgan Chase Bank, N.A.

allegedly secured by first priority liens and security interests (subject only to certain mortgage liens granted in favor of the County on the Phase I Property and Phase II Property, as described below) (collectively, the "**Alleged Pre-Petition Lender Liens**") granted by Miami Jai-Alai and certain affiliates of Miami Jai-Alai to the Pre-Petition Secured Parties, including, but not limited to, all accounts, chattel paper, commercial tort claims, documents, equipment, goods, general intangibles, instruments, inventory, investment property, pledged deposits, letter-of-credit rights and supporting obligations and the real property in Ft. Pierce and Miami (all of the foregoing collateral generally described above, and all proceeds thereof, shall be referred to herein as the "**Pre-Petition Encumbered Assets**").

14.   **MIAMI JAI-ALAI'S MIAMI-DADE COUNTY DEBT.**  In February 2009, in a settlement agreement related to an eminent domain proceeding, Corp. agreed to acquire a total of 10.982 acres of land from Miami-Dade County (the "**County**") in two (2) separate phases and to sell the County a temporary construction easement and 0.492 acres of Centers' Miami property. The purchase price for the acquisition of the 10.982 acres from the County was $16,742,145 (the "**County Debt**").

15.   On April 6, 2009, Corp. acquired approximately 2.283 acres (the "**Phase I Property**") from the County for $3,348,429, a portion of which was financed by the County in the amount of $3,013,586. The financing was evidenced by a promissory note executed and delivered by Corp. to the County in the original principal amount of $3,013,586 (the "**Phase I Note**"), which was allegedly secured by a first mortgage lien on the Phase I Property.

16.   On June 16, 2011, Corp. acquired the remaining 8.67 acres (the "**Phase II Property**") from the County for $13,393,716, a portion of which was financed by the County in

the amount of $12,054,344. The financing was evidenced by a promissory note executed and delivered to County by Corp. in the original principal amount of $12,054,344 (the "**Phase II Note**"), which was allegedly secured by a first mortgage lien on the Phase II Property.

17. The parking lot for the Miami Jai-Alai facility is located on the Phase I Property and the Phase II Property, which is vital to Miami Jai-Alai's operations.

18. **ADDITIONAL FINANCING.** In addition to the Alleged Pre-Petition Lender Liens asserted by the Pre-Petition Secured Parties against certain pre-petition assets of Miami Jai-Alai, certain other parties have asserted liens and security interests against certain pre-petition assets of Miami Jai-Alai, including but not limited to the County (collectively, the **"Other Alleged Pre-Petition Liens"**, and the holders of the Other Alleged Pre-Petition Liens, including but not limited to the County, shall be referred to collectively herein as the **"Other Alleged Pre-Petition Lien Holders"**), and may potentially have an interest in the Cash Collateral.[3]

## MIAMI JAI-ALAI'S CASH COLLATERAL

19. As of the Petition Date, Miami Jai-Alai had approximately $4 million of cash and cash equivalents. Of this amount, approximately $3 million consists of "Cage Cash," which Miami Jai-Alai submits does not constitute Cash Collateral and is excluded from the Syndicated Credit Facility, Alleged Pre-Petition Lender Liens, and Other Alleged Pre-Petition Liens. Accordingly, I am advised that most of Miami Jai Alai's cash would not constitute Cash Collateral.

---

[3] Miami Jai-Alai expressly reserves any and all rights to contest, among other things, the alleged amount, extent, validity, perfection, priority and/or enforceability of any Alleged Pre-Petition Lender Liens and/or any Other Alleged Pre-Petition Lien asserted by the Pre-Petition Secured Parties and/or any Other Alleged Pre-Petition Lien Holder.

**EVENTS LEADING TO THESE BANKRUPTCY FILINGS**

21. The filing of these chapter 11 cases has been brought about by ABC Funding's relentless effort to wrest control of Miami Jai-Alai and the casino from Centers and Corp.

22. On September 5, 2012, ABC Funding filed a Complaint in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida seeking to foreclose the Mortgage, styled as *ABC Funding, LLC, et al. v. Florida Gaming Centers, Inc., et al.*, Case No. 12-35064 CA 58.

23. On that same day, ABC Funding also initiated a foreclosure action against Florida Gaming in the Circuit Court of the 19th Judicial Circuit in and for St. Lucie County, Florida, styled as *ABC Funding, LLC, et al. v. Florida Gaming Centers, Inc., et al.*, Case No. 56-2012-CA-003525 AXXXHC. The St. Lucie matter was later transferred to and consolidated with the Miami-Dade matter on May 8, 2013, and is now being heard as one case in the Circuit Court of Miami-Dade County by the Honorable Beatrice Butchko (collectively, the "**ABC Florida Action**").

24. The ABC Florida Action has been heavily contested and litigated for over 11 months, with many complex and unique legal and factual issues addressed along the way.

25. **ABC FUNDING'S MOTION FOR APPOINTMENT OF RECEIVER IN THE ABC FLORIDA ACTION**. On October 18, 2012, ABC Funding filed its *Verified Motion to Appoint Receiver* in the ABC Florida Action, relying in large part upon the obligation in the Loan Documents that a receiver be appointed upon declaration of a default. On November 2, 2012, Miami Jai-Alai consented to an Order appointing David Jonas as Receiver, *nunc pro tunc* to

October 25, 2012, of the real and personal property described in and encumbered by the two mortgages at issue in the ABC Florida Action including, without limitation, all real, personal, tangible, and intangible property, contracts, records, documents. At the time of his appointment, Mr. Jonas was already retained by Florida Gaming and was serving as its casino manager.

26. **THE WARRANT AGREEMENT AND NEED FOR SELECTED INVESTMENT BANK**. Shortly after the ABC Florida Action was filed, Miami Jai-Alai was able to negotiate an agreement for the sale of substantially all its assets to a qualified third party, Silvermark, LLC for $115 million in cash and approximately $14 million in assumed liabilities. In short, enough to pay ABC Funding's secured claim in full.

27. As part of providing financing, ABC Funding required that Florida Gaming execute a Warrant Agreement on April 25, 2011 (the "**Warrant Agreement**"). The Syndicated Lenders are the counterparties and warrant holders under that agreement.[4] The Warrant Agreement requires Centers to pay a repurchase price should certain trigger events arise, including the sale of all the assets to a third party, such as Silvermark. Under the terms of the Warrant Agreement, if the parties cannot agree to a valuation for that Repurchase Price, an investment bank must then be designated to determine the Repurchase Price in the event of a sale of all of the Company (Florida Gaming Centers) assets:

> ***Selected Investment Bank*** means an investment bank, selected by ABC Funding, as Administrative Agent under the Credit Agreement, and reasonably acceptable to the Company [Florida Gaming Centers]. If the investment bank selected by the Administrative Agent is not reasonably acceptable to the Company, and the Administrative Agent and the

---

[4] When amounts due under the Warrant Agreements are combined with interest charged under the lending facility, the resulting interest rate is usurious and violates Florida law. Miami Jai-Alai intends to challenge the ABC Funding's loan on these and other grounds.

> Company cannot agree on a mutually acceptable investment bank within ten days of the Company being informed of that selection, then the Administrative Agent and the Company shall each choose one investment bank within the next ten days and the respective chosen firms shall jointly select a third investment bank within ten days of the selection of the second such firm (*provided* that if either party shall fail to designate an investment bank within such ten day period, then the investment bank that was designated by one of the parties shall be the Selected Investment Bank), which shall make the determination. Any investment bank selected [under the Warrant Agreement] shall be an independent investment bank of nationally recognized standing and have experience in the valuation of companies similar to the Company.

See Section 1(b), pages 5-6 of Warrant Agreement.

28. After a protracted battle with ABC Funding, including a full day of mediation, Miami Jai-Alai and ABC Funding's investment bankers jointly selected Jefferies, LLC to serve as the Selected Investment Bank to provide services to Miami Jai-Alai, including, without limitation, valuation services and reports as required under the terms of the Warrant Agreement.

29. Jefferies ultimately issues its valuation report, valuing Miami Jai-Alai at ***over $180 million***. Under the terms of the Warrant Agreement, that means that the Repurchase Price that would be due the warrant holders is $26,845,000.

30. **ABC FUNDING'S DELAY.** Despite the fact that Miami Jai-Alai has a buyer willing and able to complete this transaction and even pay the Repurchase Price, ABC Funding has continuously delayed the sale process and run up their ultimate pay-off in the process. For two reasons, it is in ABC Funding's interest to delay this sale. First, ABC Funding charges nearly $45,000 a day in interest, or nearly $1 million a month for a total of over $10 million during the pendency of the foreclosure action alone. During the pendency of the foreclosure action, Miami Jai-Alai actually paid that interest every month – with some agreed upon exceptions – despite being declared in default.

31. Second, and more important, ABC Funding will argue that it is entitled to an additional and significant increase in Warrants when a nearby competitor, Hialeah Race Track Casino, begins slot operations, which in fact appears to have occurred on or about August 14, 2013. This may entitle the Warrant holders to up to $7 million more.

32. **THE PAYOFF AND ESTOPPEL ISSUES.** Silvermark, LLC had agreed to close the transaction to purchase substantially all of Miami Jai-Alai's assets and pay the full amount due and owing to ABC Funding under the Loan Documents, including the Repurchase Price under the Warrant Agreement and all professional fees incurred to date by ABC Funding.

33. On July 9, 2013, after repeated requests and a hearing on Miami Jai-Alai's *Motion to Compel ABC Funding to Provide Estoppel Letter*, ABC Funding provided Florida Gaming with the estoppel letter purporting to comply with Florida Statute Section 701.04.

34. Pursuant to the estoppel letter, the unpaid balance due and owing under the Loan Documents is $90,302,907.27, which includes principal, interest and an anticipated payoff of July 22, 2013. And on July 11, 2013, ABC Funding sent a letter to Florida Gaming setting forth the amounts allegedly due and owing – $3,126,242.97 – on account of professional and attorney fees incurred by ABC Funding.

35. Therefore, combining these two amounts with the $26 million due under the Warrant Agreement, Miami Jai-Alai was prepared to pay ABC Funding at closing the over $120 million necessary to pay-off ABC Funding in full.

36. As of the Petition Date, Miami Jai-Alai was unable to obtain an acceptable payoff amount or estoppel letter setting forth the amounts due under the Loan Documents, including a per diem and was unable to close the transaction with Silvermark.

37.  Based on the foregoing, Miami Jai-Alai determined in its business judgment that the commencement of these chapter 11 cases would be the best avenue to realize and maximize the value of the residual equity in Florida Gaming Centers, Inc. – which may exceed $50 million – for the benefit of its creditors, shareholders and other parties in interest.

### FIRST DAY MOTIONS AND APPLICATIONS

38.  On the Petition Date and in connection with its bankruptcy cases, Miami Jai-Alai has filed the following motions and applications (collectively, the "**First Day Pleadings**"), among other pleadings:

(a) **Cash Collateral Motion.**
*Debtor's Emergency Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. § 361, 362 and 363, and Fed. R. Bankr. P. 4001 and 9014 Authorizing Use of Cash Collateral and Granting Adequate Protection;*

(b) **Salazar Jackson, LLP Retention Application.**
*Emergency Application for Entry of Interim and Final Orders Authorizing Employment and Retention of Salazar Jackson, LLP, as General Counsel for Debtor and Debtor-in-Possession, Nunc Pro Tunc to Petition Date;*

(c) **Customer Programs Motion.**
*Emergency Motion For Entry Of Interim And Final Orders Authorizing The Debtors To Perform And Honor Certain Customer Programs In The Ordinary Course Of Business And Obligations Under Gaming Acts And Regulations;*

(d) **Employee Wages and Obligations Motion.**
*Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Pay (A) Certain Prepetition Employee Obligations and (B) Prepetition Withholding Obligations, and (II) Directing Banks to Honor Related Prepetition Transfers.*

39.  I have reviewed each of the First-Day Pleadings (including any exhibits thereto) and can attest to the veracity of the facts set forth therein. Additionally, I believe that the relief sought in each First Day Pleading (a) is necessary to enable Miami Jai-Alai to operate in chapter

11 with minimum disruption to its business or loss of productivity or value, and (b) constitutes a critical element in maintaining Miami Jai-Alai's going concern value pending the confirmation of a plan or sale of substantially all of Miami Jai-Alai's assets.  Factual information in support of the First-Day Pleadings is provided below and in the applications and motions filed concurrently herewith.

40.     **SALAZAR JACKSON RETENTION APPLICATION.**  Miami Jai-Alai respectfully requests that the Court enter an order authorizing it to employ and retain Salazar Jackson, LLP as its counsel in this case as of the Petition Date.

41.     Miami Jai-Alai seeks to retain Salazar Jackson as its counsel because of the firm's extensive general experience and knowledge in the field of debtor's and creditor's rights and business reorganizations under chapter 11 of the Bankruptcy Code.  Moreover, Salazar Jackson is well suited for the type of representation required by Miami Jai-Alai.  Salazar Jackson maintains offices for the practice of law in the Southern District of Florida, where this case is pending and has extensive experience appearing before the Courts in this District.  In addition, Salazar Jackson has substantial experience representing debtors in complex reorganization cases.

42.     I believe, therefore, that the relief requested is necessary and appropriate and is in the best interests of Miami Jai-Alai's estate, creditors and other parties in interest.

### FIRST DAY MOTIONS PERTAINING TO BUSINESS OPERATIONS

43.     **EMPLOYEE WAGE MOTION.**  In order to enable Miami Jai-Alai to retain employees (each an "**Employee**" and collectively, the "**Employees**"), and help minimize the personal hardship such Employees may suffer if certain prepetition employee-related obligations are not paid when due, or honored as expected, and maintain morale, Miami Jai-Alai seeks

authority, in its sole discretion, to pay and/or honor, as the case may be, certain prepetition claims of Employees.

44. The details of the required payroll funding are set forth in the Motion, which I have read and verify is true. But generally, as of the Petition Date, Miami Jai-Alai's aggregate workforce consisted of approximately 500 Employees. Miami Jai-Alai believes that paying its employees without interruption is critical and indispensable to the success of this Chapter 11 process.

45. **CASH COLLATERAL MOTION.** As noted above, as of the Petition Date, Miami Jai-Alai had approximately $ 4 million of cash and cash equivalents. Of this amount, approximately $3 million consists of "Cage Cash," which Miami Jai-Alai submits does not constitute Cash Collateral and is excluded from the Syndicated Credit Facility, Alleged Pre-Petition Lender Liens, and Other Alleged Pre-Petition Liens. Accordingly, most of Miami Jai-Alai's cash does not constitute Cash Collateral. However, in an abundance of caution, due to the immediate need to utilize their cash and cash equivalents and the irreparable harm that Miami Jai-Alai would suffer if it was not able to immediately access its cash and cash equivalents, Miami Jai-Alai is filing the Cash Collateral Motion with respect to all cash and cash equivalents.

46. **CUSTOMER PROGRAM MOTION.** As a casino, Miami Jai Alai operates virtually around the clock, and its continued viability as a successful business requires that the transition into bankruptcy be virtually seamless for customer. As set forth in the Customer Program Motion, Miami Jai Alai should therefore be authorized to honor outstanding Gaming Currency and any pending promotional programs.

## CONCLUSION

47. For the reasons stated herein and in each of the First Day Pleadings, the relief sought therein is in the best interests of Miami Jai-Alai, its creditors and estate; and therefore, on behalf of Miami Jai-Alai, I respectfully request that the First Day Pleadings be granted.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 19, 2013.

_____
Daniel Licciardi