IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ) | Case No. 1329597-RAM |
| FLORIDA GAMING CENTERS, INC., *et al.*,[1] ) | (Joint Administration Requested) |
| ) | |
| ) | |
| Debtors. / | |

### EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO PERFORM AND HONOR CERTAIN CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS AND OBLIGATIONS UNDER GAMING ACTS AND REGULATIONS

**Basis for Emergency Hearing**

Miami Jai-Alai request an immediate emergency hearing in this matter in order to maintain certain customer programs that are critical to its operations and continued viability as a casino and to preserve and maximize value for Miami Jai-Alai's creditors, shareholders, and other parties in interest. Miami Jai-Alai respectfully requests that the Court waive the provisions of Local Rule 9075-1(B), as the relief requested herein is urgent and does not lend itself to advance resolution, and submits that the relief sought herein satisfies the requirements of Federal Rule of Bankruptcy Procedure 6003(a) and is necessary to avoid immediate and irreparable harm notwithstanding that this Motion is being filed within 21 days of the filing of the petition.

Debtors, Florida Gaming Centers, Inc. ("**Florida Gaming Centers**"), Florida Gaming Corporation ("**Florida Gaming Corp.**"), Tara Club Estates, Inc. ("**Tara**") and Freedom Holding, Inc. ("**Freedom**")(collectively, "**Miami Jai-Alai**"), respectfully request, pursuant to Bankruptcy Code Sections 105(a), 363, 507, 1107(a) and 1108, and Federal Rules of Bankruptcy Procedure 6003 and 6004(h) for the entry of an order, in substantially the form attached hereto

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Florida Gaming Centers, Inc. (5893), Florida Gaming Corporation (0533), and Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

**S|J**    **Salazar Jackson** | 2 South Biscayne Boulevard, Suite 3760 | Miami, Florida 33131

as **Exhibit "A,"** (a) authorizing Miami Jai-Alai to perform and honor its pre-petition obligations related to certain Customer Programs (as defined below and described more fully herein) as it determines advisable, in the ordinary course of business and without further application to this Court, (b) authorizing Miami Jai-Alai to continue, renew, replace, implement new, and/or terminate such of the Customer Programs as it deems appropriate, in the ordinary course of business, without further application to this Court, (c) authorizing Miami Jai-Alai to honor and meet all obligations to the appropriate governing bodies under any applicable Florida gaming laws, rules and regulations (collectively, the "**Florida Gaming Laws**"), and (d) providing any additional relief required to effectuate the foregoing. In support of this Motion, Miami Jai-Alai states:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are Bankruptcy Code Sections 105(a), 363, 507, 1107(a) and 1108, and Bankruptcy Rules 6003 and 6004(h).

## BACKGROUND

3. On the date hereof (the "**Petition Date**"), Miami Jai-Alai commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. Miami Jai-Alai is authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108. No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases.

4. For a description of Miami Jai-Alai's business operations and the events leading up to the commencement of these chapter 11 cases, see the *Declaration of Daniel Licciardi in Support of the Chapter 11 Petitions and First Day Motions and Applications* (the **"Licciardi Declaration"**) filed on the Petition Date and incorporated herein by reference.

## RELIEF REQUESTED

5. By this Motion, Miami Jai-Alai seeks entry of an order pursuant to Bankruptcy Code Sections 105(a), 363, 507, 1107(a) and 1108, and Bankruptcy Rules 6003 and 6004(h): (a) authorizing, but not directing, Miami Jai-Alai to perform and honor their pre-petition obligations related to the Customer Programs, as they determine advisable, in the ordinary course of business and without further application to this Court, (b) authorizing Miami Jai-Alai to continue, renew, replace, implement new, and/or terminate such of the Customer Programs as Miami Jai-Alai deems appropriate, in the ordinary course of business and without further application to this Court, and (c) authorizing Miami Jai-Alai to honor and meet all obligations to the appropriate governing bodies under the Florida Gaming Laws. Because certain of the relief requested herein may give rise to the post-petition payment of obligations from pre-petition practices, Miami Jai-Alai is seeking authority to make such payments in the ordinary course of business.

6. Miami Jai-Alai also requests that all applicable banks and other financial institutions be authorized and directed to receive, process, honor, and pay all checks presented for payment, and to honor all electronic payment requests made by Miami Jai-Alai related to any pre-petition obligations described herein, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. Miami Jai-Alai further requests that

all such banks and financial institutions be authorized and directed to rely on Miami Jai-Alai's designation of any particular check or electronic payment request as approved pursuant to this Motion. Miami Jai-Alai reserves the right to seek additional or modified relief with repsect to the Customer Programs and the issues set forth in this Motion in the future.

## BASIS FOR RELIEF

7. Prior to the Petition Date, in the ordinary course of business and as is customary in the gaming industry, Miami Jai-Alai implemented certain Customer Programs to develop and sustain a positive reputation in the marketplace, including but not limited to (a) issuing and honoring Gaming Currency and Jackpot Checks, (b) Patron Rewards Programs, and (c) Promotions (each as defined herein and, together with all other similar customer claims and obligations, the **"Customer Programs"**).

8. The Customer Programs are fundamental to the continued success of Miami Jai-Alai's gaming business because, by design, the Customer Programs encourage repeat business and ensure customer satisfaction, thereby retaining current customers, attracting new customers and ultimately increasing Miami Jai-Alai's revenues. And the success and viability of Miami Jai-Alai's gaming business and its ability to successfully maximize value for the stakeholders in these chapter 11 cases are dependent in large part upon the patronage and loyalty of its customers.

9. If Miami Jai-Alai were unable to offer the Customer Programs, it would be at a significant disadvantage compared to its competitors. Therefore, it is critical that Miami Jai-Alai is able to assure customers of its ability to satisfy pre-petition obligations under the Customer Programs following the commencement of these chapter 11 cases.

10. Any failure to continue the Customer Programs may drive away valuable

customers and potential customers, resulting in a loss of goodwill among Miami Jai-Alai's customers and leading to lower revenues, which could ultimately impede Miami Jai-Alai's efforts to successfully reorganize and maximize the value of their estates for the benefit of all stakeholders.  Moreover, the failure to maintain and honor obligations under certain Customer Programs could also potentially result in a violation of certain Florida Gaming Laws and other laws and regulations.

11.     Miami Jai-Alai also has certain requirements that it must satisfy in order to comply with the Florida Gaming Laws.  Those include, but are not limited, to: (i) filing all required forms and reports to governing bodies in accordance with the Florida Gaming Laws; (ii) satisfying certain bonding requirements, as set forth in the Florida Gaming Laws, (iii) using certain funds received from other operations to supplement jai alai prize money; and (iv) complying with all other state and federal regulatory and compliance requirements.  Any failure on the part of Miami Jai-Alai to comply with such requirements of the Florida Gaming Laws could potentially jeopardize Miami Jai-Alai's gaming licenses.

12.     In order for Miami Jai-Alai to successfully reorganize, it is critical that it maintains its gaming licenses and customer base.  And, in order to accomplish this, Miami Jai-Alai must continue to comply with the Florida Gaming Laws and honor its Customer Programs.

## DESCRIPTION OF CUSTOMER PROGRAMS

### A.     OUTSTANDING GAMING CURRENCY

13.     As is customary in the casino business, Miami Jai-Alai routinely issues chips, tokens and  the like to customers for use at gaming tables and slot machines (**"Gaming Currency"**).  Customers possess Gaming Currency in the ordinary course while on Miami Jai-

Alai's properties, and, inevitably, some customers, whether purposefully or inadvertently, retain Gaming Currency after they leave Miami Jai-Alai's properties (**"Outstanding Gaming Currency"**). Miami Jai-Alai is unable to ascertain the exact value of Outstanding Gaming Currency as of the Petition Date. But Miami Jai-Alai believes that, as of the Petition Date, customers were in possession of approximately $10,000 in Outstanding Gaming Currency.

**B.    PATRON REWARD PROGRAMS**

14.    Miami Jai-Alai has instituted various players clubs and complimentary services programs through which patrons are awarded points for money wagered at its gaming machines or otherwise wagered at Miami Jai-Alai's gaming facilities (the **"Patron Reward Programs"**). Such points are redeemable for "free play." Miami Jai-alai estimates that there may be a minimal amount of in outstanding commitments under the Patron Reward Programs as of the Petition Date. These Patron Reward Programs offer a powerful incentive for patrons to return to Miami Jai-Alai's facilities.

15.    By this Motion, Miami Jai-Alai requests authority to honor the pre-petition Patron Reward Programs obligations and to continue honoring, in its sole discretion, Patron Reward Programs obligations in the ordinary course of their businesses. Because the potential harm to Miami Jai-Alai's businesses from not honoring the Patron Reward Programs far outweighs the costs to their estates, Miami Jai-Alai believes that such relief is warranted and necessary to promote its reorganization efforts and maximize the value of the estates for the benefit of all creditors and parties in interest in these chapter 11 cases.

**C.    PROMOTIONS**

16.    Miami Jai-Alai also extends the Promotions to potential and repeat patrons at its

gaming facilities to encourage greater attendance and wagering at the gaming facilities. For example, Miami Jai-Alai is currently promoting a "Cross Property Bad Beat Jackpot" to encourage greater attendance and wagering in their poker room at the Ft. Pierce, Florida gaming facilities. As of the Petition Date, the "Cross Property Bad Beat Jackpot" held approximately $95,000 in funds that continue to accrue as more patrons place wagers in the Ft. Pierce poker room.

17. Miami Jai-Alai requests authority to honor its obligations for Promotions that are outstanding as of the Petition Date, in an amount of approximately $95,000, and to continue providing Promotions, in its sole discretion, in the ordinary course of business.

## ARGUMENT

A. **AMPLE AUTHORITY EXISTS TO GRANT THE RELIEF REQUESTED HEREIN**

18. Bankruptcy Code Sections 1107(a) and 1108 authorize a debtor-in-possession to continue to operate its business. Further, Bankruptcy Code Section 363(c) authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to use property of the estate in the ordinary course of business without notice or a hearing. The purposes of section 363(c)(1) of the Bankruptcy Code is to provide a debtor-in-possession with "flexibility to engage in ordinary transactions" required to operate its business without unneeded oversight by its creditors or the court. *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.'") (quoting *U.S. ex rel. Harrison v. Estate of Deutscher (In re H&S Transp. Co.)*, 115 B.R. 592, 599 (M.D. Tenn. 1990); *In re Nellson Nutraceutical, Inc.*, 369

B.R. 787, 796 (Bankr. D. Del. 2007).

19.     Miami Jai-Alai submits that continuing, renewing, replacing, initiating, and/or terminating its Customer Programs in the ordinary course of business without interruption is permitted by Bankruptcy Code Sections 363(c), 1107(a), and 1108 without further application to this Court.  Notwithstanding the foregoing, out of an abundance of caution, Miami Jai-Alai seeks this Court's authorization, but not direction, to continue its Customer Programs.

20.     To the extent that Miami Jai-Alai's obligations under the Customer Programs are considered pre-petition obligations, Miami Jai-Alai should be authorized to honor and continue the Customer Programs pursuant to Bankruptcy Code Section 363(b)(1).  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y.) (affirming lower court order authorizing payment of pre-petition wages pursuant to section 363(b) of the Bankruptcy Code).  In order to do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors . . . ." *Id*.  Miami Jai-Alai has articulated such business justification herein.

21.     Additionally, Bankruptcy Code Section 105(a) authorizes a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  The purpose of Bankruptcy Code Section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  2 *Collier on Bankruptcy* ¶ 105.01 (16th ed.).  Miami Jai-Alai submits that the relief requested in this Motion is critical to its continued viability as a going concern and is justified under Bankruptcy Code Section 105(a).

22.     The relief requested in this Motion is also supported by the well-established "doctrine of necessity."  Numerous courts have used their Section 105(a) equitable powers

under the necessity of payment doctrine to authorize payment of a debtor's pre-petition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of chapter 11 cases, which is to preserve a debtor's potential for rehabilitation. *See In re Lehigh Co. & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("to invoke the necessity of payment doctrine, a debtor must show the payment of the pre-petition claims is critical to the debtor's reorganization"); *Pension Benefit Guarantee Corp. v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 159 B.R. 730, 736 (Bankr. W.D. Pa. 1993) (embracing "necessity of payment" doctrine and citing *Leigh & England Ry. Co.* with approval); *Ionosphere Clubs*, 98 B.R. at 176-77 (necessity of payment doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor"); *In re Gulf Air, Inc.*, 112 B.R. 152, 153-54 (Bankr. W.D. La. 1989) (allowing payment of pre-petition claims under the "doctrine of necessity").

23.     This Court's exercise of its authority under Section 105(a) and the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically, sections 1107(a), 1108 and 363(b)(1), which authorize a debtor-in-possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, a debtor-in-possession operating a business under setion 1108 has a fiduciary duty to protect and preserve the estate, including the going concern value of an operating business. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this

[fiduciary] duty can only be fulfilled by the preplan satisfaction of a pre-petition claim.").

24. This Court's exercise of its authority under Bankruptcy Code Section 105(a) is also necessary to carry out two central policies underlying chapter 11: (a) to permit the successful rehabilitation of Miami Jai-Alai, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1984), and (ii) to preserve going concern value and maximize property available to satisfy all creditors. *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).

### B. HONORING THE CUSTOMER PROGRAMS AND COMPLYING WITH THE FLORIDA GAMING LAWS IS IN THE BEST INTERESTS OF MIAMI JAI-ALAI'S ESTATES

25. Approval of the Customer Programs will protect Miami Jai-Alai's goodwill and going concern value during this chapter 11 process and will enhance Miami Jai-Alai's value. The continued loyalty of Miami Jai-Alai's existing customers and its ability to attract new customers is critical to Miami Jai-Alai's continued operations and the success of these chapter 11 cases. If Miami Jai-Alai is prohibited from honoring and maintaining the Customer Programs consistently, not only with their past business practices, but with the common business practice of Miami Jai-Alai's competitors, then customers' lost confidence in Miami Jai-Alai and related failure to visit its gaming facilities will damage Miami Jai-Alai's businesses to an extent that far exceeds the cost associated with honoring and continuing such practices.

26. In the casino/gaming industry, more than most others, customer loyalty is of critical importance. Miami Jai-Alai's revenues are entirely driven by customers visiting its gaming facilities. Absent repeat business, Miami Jai-Alai would be unable to generate sufficient revenue to fund its operations on a daily basis. Accordingly, it is vital that Miami Jai-Alai does not alienate its customer base following the commencement of these chapter 11 cases. If Miami

Jai-Alai experiences diminished customer loyalty subsequent to the filing of these chapter 11 cases, then it will be unable to continue to operate on a cash-flow positive basis and will risk significant harm to their constituents.

27. In addition, the failure to honor certain of the Customer Programs would potentially result in Miami Jai-Alai's non-compliance with applicable law. It is sound business judgment for Miami Jai-Alai to comply with the Florida Gaming Laws, in order to preserve its gaming licenses. Stated simply, jeopardizing the gaming licenses would destroy any hope for a meaningful reorganization.

28. Accordingly, Miami Jai-Alai requests that it be (i) authorized, but not directed, to perform and honor its pre-petition obligations related to the Customer Programs, as it determines advisable, in the ordinary course of business and without further application to this Court, and (ii) authorized to honor and meet all obligations to the appropriate governing bodies under the Florida Gaming Laws.

C. **CERTAIN OBLIGATIONS FOR CUSTOMER PROGRAMS COULD POTENTIALLY BE PRIORITY CLAIMS**

29. Finally, Bankruptcy Code Section 507(a)(7) grants priority status to allowed unsecured claims of individuals (in an amount up to $2,775.00 for each individual) arising from the deposit of money in connection with, among other things, the purchase of property or services for personal, family or household use. Certain of the Customer Programs obligations may be entitled to such priority under Bankruptcy Code Section 507(a)(7).

30. To the extent that the Customer Programs obligations represent priority claims, pursuant to Bankruptcy Code Section 1129(a)(9), holders are entitled to receive payment in full (subject to the statutory cap) under a chapter 11 plan. Miami Jai-Alai therefore believes that

other creditors of these estates will not be prejudiced by this Court's approval of its request to honor the claims on account of these Customer Programs.

31. Instead, Miami Jai-Alai believes that its creditors will also benefit from the relief sought herein. As discussed above, if Miami Jai-Alai is prohibited from honoring and maintaining the Customer Programs consistent with its past business practices, then customers' lost confidence will damage Miami Jai-Alai's businesses to an extent that far exceeds the cost associated with honoring and continuing such practices. The relief requested herein will protect Miami Jai-Alai's goodwill and help maintain the value of these estates during this critical time.

### SATISFACTION OF BANKRUPTCY RULE 6003

32. Pursuant to Bankruptcy Rule 6003, this Court may authorize payment of a pre-petition claim within 21 days after the Petition Date if such relief is necessary to avoid immediate and irreparable harm. As explained above, continuing the Customer Programs and satisfying any pre-petition obligations owed thereunder, as well as complying with any Florida Gaming Laws, is essential to the continued, uninterrupted operation of Miami Jai-Alai's businesses. Without satisfaction of these obligations, Miami Jai-Alai could lose existing customers or fail to attract new ones, Miami Jai-Alai could potentially jeopardize its gaming licenses, and its businesses could be disrupted to the potential great detriment of these bankruptcy estates. For the foregoing reasons, Miami Jai-Alai submits that it has satisfied the requirements of Bankruptcy Rule 6003 and accordingly, this Court should grant the relief requested herein.

### WAIVER OF BANKRUPTCY RULE 6004

33. Miami Jai-Alai seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rules 6004(h) of the, "[a]n order authorizing

the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The payments proposed herein are essential to prevent immediate and irreparable harm to Miami Jai-Alai's business operations. Accordingly, Miami Jai-Alai submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## RESERVATION

34. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against Miami Jai-Alai, a waiver of Miami Jai-Alai's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code Section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to this Court's order are not intended and should not be construed as an admission as to the validity of any claim or a waiver of Miami Jai-Alai's rights to subsequently dispute such claim.

WHEREFORE, Miami Jai-Alai respectfully requests that this Court enter the Order, substantially in the form attached hereto as **Exhibit "A**," (i) authorizing, but not directing, Miami Jai-Alai to perform and honor its pre-petition obligations related to the Customer Programs, as it determines advisable, in the ordinary course of business and without further application to this Court, (ii) authorizing Miami Jai-Alai to continue, renew, replace, implement new, and/or terminate such of the Customer Programs as it deems appropriate, in the ordinary course of business and without further application to this Court, (iii) authorizing Miami Jai-Alai to honor and meet all obligations to the appropriate governing bodies under the Florida Gaming Laws, and (iv) granting such other and further relief as this Court deems appropriate.

Dated:  August 19, 2013

Respectfully submitted,

SALAZAR JACKSON, LLP
*Proposed Counsel for Florida Gaming Centers, Inc.,*
*Florida Gaming Corporation, Tara Club Estates, Inc., and*
*Freedom Holding, Inc.*
Two South Biscayne Boulevard, Suite 3760
Miami, FL 33131
Telephone: (305) 374-4848
Facsimile:  (305) 397-1021
Email:  Salazar@SalazarJackson.com
          Jackson@SalazarJackson.com
          Honaker@SalazarJackson.com

By:         /s/Luis Salazar
            Luis Salazar
            Florida Bar No. 147788
            Linda Worton Jackson
            Florida Bar No. 843164
            Aaron P. Honaker
            Florida Bar No. 48749

### CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Master Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:         /s/Luis Salazar
            Luis Salazar
            Florida Bar No. 147788
            Linda Worton Jackson
            Florida Bar No. 843164
            Aaron P. Honaker
            Florida Bar No. 48749

# EXHIBIT A

## PROPOSED ORDER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:

FLORIDA GAMING CENTERS, INC., *et al.*,

Debtors.

Chapter 11

Case No. 13-_____ (____)
(Joint Administration Requested)

### ORDER AUTHORIZING THE DEBTORS TO PERFORM AND HONOR CERTAIN CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS AND OBLIGATIONS UNDER GAMING ACTS AND REGULATIONS

THIS MATTER came before the Court on the ____ day of August, 2013, at __:__ a.m./p.m. in Miami, Florida, upon the *Motion for Entry of an Order Authorizing the Debtors to Perform and Honor Certain Customer Programs in the Ordinary Course of Business and Obligations Under Gaming Acts and Regulations* (ECF No. ___) (the **"Customer Program Motion"**) filed by Debtors, Florida Gaming Centers, Inc., Florida Gaming Corporation, Tara Club Estates, Inc., and Freedom Holding, Inc. (collectively, "**Miami Jai-Alai**") pursuant to Bankruptcy Code Sections 105(a), 363, 507, 1107(a) and 1108, and Federal Rules of Bankruptcy Procedure 6003 and 6004(h), for the entry of an order (a) authorizing Miami Jai-Alai to perform and honor its pre-petition obligations related to certain Customer Programs[1] as it determines advisable, in the ordinary course of business and without further application to this Court, (b) authorizing Miami Jai-Alai to continue, renew, replace, implement new, and/or terminate such of the Customer Programs as it deems appropriate, in the ordinary course of business, without further application to this Court, (c) authorizing Miami Jai-Alai to honor and meet all obligations to the appropriate

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Customer Program Motion.

1

governing bodies under any applicable Florida gaming laws, rules and regulations, and (d) providing any additional relief required to effectuate the foregoing.

The Court having reviewed the Customer Program Motion and having heard the statements of counsel in support of the relief requested in the Customer Program Motion at the hearing before the Court (the **"Hearing"**); and the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper before this Court pursuant to 28 U.S.C. § 1408; (c) this matter is core pursuant to 28 U.S.C. § 157(b)(2); (d) notice of the Customer Program Motion and the Hearing was sufficient under the circumstances; and (e) the Court having determined that the legal and factual bases set forth in the Customer Program Motion and at the Hearing establish just cause for the relief granted herein, it is hereby

**ORDERED** that:

1. The Customer Program Motion is GRANTED, on an interim basis, *nunc pro tunc* to the Petition Date.

2. The Court shall conduct a final hearing on the Customer Program Motion on _____**, 2013** at _____ **a.m./p.m.** at Claude Pepper Federal Building, 51 S.W. First Avenue, Room \_\_\_\_\_, Miami, Florida 33130 (the **"Final Hearing"**). Any party in interest objecting to the relief sought in the Customer Program Motion shall file written objections with the Clerk of the United States Bankruptcy Court, and serve copies upon: (a) Salazar Jackson, LLP, Attention: Luis Salazar, Esq.; (b) Office of the United States Trustee for the Southern District of Florida; (c) all entities identified on any Master Service List filed with the Court pursuant to Local Rule 2002-1(H); and (d) counsel to any Official Committee of Creditors

2

Holding Unsecured Claims (collectively, the **"Notice Parties"**).  Objections shall be filed with the Clerk such that they are received by no later than 4:30 p.m. Eastern Time at least two days prior to the Final Hearing

       3.      Miami Jai-Alai, in its business judgment, is authorized, but not directed, to honor and perform its obligations in regard to its Customer Programs in the ordinary course of business, without regard to whether Miami Jai-Alai's obligations under any such Customer Programs arose before or after the Petition Date, and without further application to or order of the Court.

       4.      Miami Jai-Alai, in its business judgment, is authorized, but not directed, to continue, renew, replace, implement, modify and/or terminate such of its Customer Programs as it deems appropriate, in the ordinary course of business, and without further application to or order of the Court.

       5.      Miami Jai-Alai is authorized to honor any and all obligations deemed necessary to comply with the Florida Gaming Laws.

       6.      All banks and other financial institutions on which checks were drawn or electronic payment requests made in payment of such pre-petition obligations approved herein are authorized and directed to (i) receive, process, honor, and pay all such checks and electronic payment requests when presented for payment (assuming that sufficient funds are then available in Miami Jai-Alai's bank accounts to cover such payments), and (ii) rely on Miami Jai-Alai's designation of any particular check or electronic payment request as approved by this Order.

       7.      Miami Jai-Alai is authorized to reissue any check, electronic payment or other transfer that was drawn in payment of any such pre-petition obligations approved herein, including, but not limited to, any Customer Programs claims that are not cleared by a depository.

8. Any payment or transfer made or service rendered by Miami Jai-Alai pursuant to this Order is not, and shall not be deemed, an admission as to the validity of the underlying obligation, a waiver of any rights Miami Jai-Alai may have to dispute such obligation or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code Section 365.

9. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

10. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11. Miami Jai-Alai is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

12. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# # #

**Submitted by:**
Luis Salazar, Esq.
SALAZAR JACKSON, LLP
2 South Biscayne Boulevard
Suite 3760
Miami, Florida 33131
Phone: (305) 374-4848
Fax: (305) 397-1021
Email: Salazar@SalazarJackson.com

*(Attorney Salazar shall serve a copy of this Order upon all interested parties upon receipt and file a certificate of service.)*

4