

**ORDERED in the Southern District of Florida on August 27, 2013.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:                                               Chapter 11

                                                     Case No. 13-29597-RAM-BKC
                                                     (Joint Administered)
FLORIDA GAMING CENTERS, INC.,
*et al.*,

_____ Debtors.      /

**INTERIM ORDER GRANTING MOTION OF DEBTORS FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO UTILIZE
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION,
(III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING OTHER RELIEF**

This matter came before the court on August  21, 2013 (the **"Interim Hearing"**) upon

the *Emergency Motion of Debtors for Orders (I) Authorizing Debtors to Utilize Cash Collateral, (II)*

*Granting Adequate Protection, (III) Scheduling a Final Hearing and (IV) Granting Other Relief* (the

**"Motion"**).  Upon consideration of the Motion, the argument of counsel and the record,  and

after due deliberation and consideration, this Court hereby finds:

1

A.      On August 19, 2013 (the **"Petition Date"**), the Debtors filed a voluntary petition for relief with this Court under Chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**).   The Debtors are operating their businesses as  debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.    The Debtors' cases are jointly administered.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

C.      The Debtors properly served notice of the Motion and the Interim Hearing thereon pursuant to sections 105, 361, and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002 and 4001,[3] which notice was sent to among others: (i) the United States Trustee for the Southern District of Florida; (ii) all counsel of record; (iii) the Debtors' 20 largest unsecured creditors; (iv) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors, including the Pre-Petition Secured Parties[1] and the Other Alleged Pre-Petition Lien Holders (each as defined hereafter); (v) all agencies requiring notice; (vi) all agencies that regulate the Debtors' business; and (vii) the United States Trustee. This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules and Local Bankruptcy Rules in respect to the relief requested.

---

[1] As used herein, the Federal Rules of Bankruptcy Procedure are referred to as the "Bankruptcy Rules."

[3] All Capitalized Terms not described herein shall have the meaning ascribed to them in the Motion.

D.    The Debtors have requested authorization to use cash collateral (the "**Cash Collateral**") to pay for expenses incurred by the Debtors in the ordinary course of business and in connection with this Chapter 11 case, as further described in the Motion.  The Debtors' ability to finance their business operations pending entry of a final order on the Motion (a **"Final Order"**) is essential to the Debtors' ability to preserve the value of the Debtors' assets.

E.    The Debtors' need for use of the Cash Collateral is immediate, and the Debtors have requested immediate entry of this Interim Order.  In the absence of entry of this Interim Order and authority to use the Cash Collateral for the period concluding on the date that this Court enters a further order regarding the use of the Cash Collateral following the final hearing on the Motion (the **"Final Hearing"**), the continued operation of the Debtors' businesses would not be possible, causing serious and irreparable harm to the Debtors and their estates.

F.    This Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, provide the Debtors with the necessary liquidity to sustain the operation of the Debtors' businesses.  If the Debtors  are not able to use the Cash Collateral as provided herein, they may be unable to fund operating expenses and expenses in connection with this Chapter 11 case that are necessary to maintain the value of the Debtors' estates and to enable the Debtors to attempt to maximize recoveries for all parties in interest.

Based upon the foregoing findings and conclusions, and good and sufficient cause appearing therefore, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

1.    The Motion is granted on an interim basis solely on the terms set forth in this Interim Order. Any objections to the relief sought in the Motion that have not been previously

resolved or withdrawn, and all reservations of rights contained therein, are overruled on the merits. The requirements of Bankruptcy Rule 4001(b)(2) are satisfied with respect to the use of the Cash Collateral on an interim and preliminary basis pending the Final Hearing on the Motion.

2.      The Debtors are authorized to use the Cash Collateral until the earlier of (i) entry of a further order by this Court regarding the use of the Cash Collateral following the Final Hearing (the **"Interim Cash Collateral Period"**) or (ii) September 13, 2013, subject to the terms and conditions set forth in this Interim Order.

3.      The Debtors may use the Cash Collateral to pay the expenses that are both (i) incurred by the Debtors in the ordinary course of business and in connection with this Chapter 11 case, solely as outlined in the budget (the **"Budget"**) attached hereto as **Exhibit A**, and (ii) approved by Mr. David Jonas, the pre-petition receiver appointed pursuant to that state court order attached hereto as **Exhibit B** (the "**Receiver Order**")**.**

4.      Mr. Jonas shall continue to have the compensation, protection, authority and responsibility set forth in the Receiver Order during the Interim Cash Collateral Period, including but not limited to judicial immunity as stated in paragraph 17 of the Receiver Order, but Mr. Jonas shall comply with all provisions of the Bankruptcy Code and shall have no authority with respect to directing the Debtors' strategy in connection with the Chapter 11 case nor does his appointment affect Debtors' exclusivity period.   The Debtors may not terminate Mr. Jonas absent further order of the Court.

5.      Notwithstanding any other provision in this Interim Order, the Debtors may not use the Cash Collateral during the Interim Cash Collateral Period to pay fees or expenses of

professionals or make payments to insiders other than salaries permitted to be paid under the Receiver Order and approved by Mr. Jonas.

6.      Notwithstanding any other provision in this Interim Order, the Cash Collateral generated by one Debtor may not be used to pay the obligations of any other Debtor, except that the Cash Collateral of Florida Gaming Centers, Inc. may be used to pay the salary and related benefits and taxes for the Chief Financial Officer of Florida Gaming Corp.

7.      On the first day of each week, the Debtors shall provide to the Agent a report comparing the Debtors' actual expenditures for the prior week to those in the Budget and bank statements reflecting such expenditures.

8.      To the extent of any actual diminution in value of the interests of the Lender or any Other Alleged Pre-Petition Lien Holder in its respective pre-petition collateral as a result of the Debtors' use of the Cash Collateral, the Lender or such Other Alleged Pre-Petition Lien Holder is hereby granted replacement liens in the Debtors' post-petition assets to the extent that the post-petition assets are the same as the applicable pre-petition collateral that is allegedly encumbered by the applicable Lender Alleged Liens or Other Alleged Pre-Petition Liens and further provided that the Lender or any such Other Alleged Pre-Petition Lien Holder had a valid, properly perfected, enforceable and non-avoidable lien in and to the Debtors' assets prior to the Petition Date (the **"Replacement Liens"**).  Any Replacement Lien shall only extend to those assets of the Debtors that were specifically encumbered pre-petition by the applicable Lender Alleged Lien or Other Alleged Pre-Petition Lien and shall not extend to any other asset of the Debtors not previously encumbered pre-petition by such applicable Alleged Pre-Petition Lender Lien or Other Alleged Pre-Petition Lien.  The Replacement Liens shall be subject to all other

validly and properly perfected, pre-petition liens in favor of third parties. The Replacement Liens shall have the same priority with respect to post-petition assets as the liens have with respect to pre-petition assets.

9. Notwithstanding any other provision in this Interim Order, this Court makes no determination as to the amount, extent, validity, perfection, priority and/or enforceability of the Pre-Petition Debt, the Alleged Pre-Petition Lender Liens or any Other Alleged Pre-Petition Liens. Further, nothing contained in this Interim Order shall be construed as a concession or admission by the Debtors that the Alleged Pre-Petition Lender Liens or any Other Alleged Pre-Petition Liens are valid and enforceable against the Debtors or a concession or admission as to the amount of the Pre-Petition Debt.

10. This Interim Order is not intended nor shall it be construed as a waiver or limitation in any way by the Debtors of any rights or remedies under the Bankruptcy Code or other applicable law which it may have, nor shall this Interim Order limit the Debtors' right to request use of the Cash Collateral in the future.

11. The Debtors shall be authorized to use the Cash Collateral to pay all fees payable to the United States Trustee under 28 U.S.C. § 1930 as and when due. The foregoing fees shall be a carve-out from any lien on Cash Collateral, including any Replacement Liens.

12. Upon entry of this Order and on the first day of each month thereafter the Debtors shall deposit the sum allocated for the U.S. Trustee fees in the trust account of Salazar Jackson, LLP, as counsel for the Debtors, to be distributed to the U.S. Trustee when due and payable .

13.    The Final Hearing on the Motion is scheduled for **September 11, 2013 at 2:30 p.m. (prevailing Eastern time)** before the Honorable Robert A. Mark, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of Florida, Claude Pepper Federal Building, 51 S.W First Avenue, Courtroom 1406, Miami Florida 33130, at which time any party in interest may appear and state its objections, if any, to the relief requested in the Motion. Objections shall be in writing and shall be filed with the Clerk of the Bankruptcy Court with a copy served upon (a) counsel for the Debtors, Luis Salazar and Linda Worton Jackson, Salazar Jackson, LLP 2 South Biscayne Boulevard, Suite 3760, Miami, Florida 33131 (b) the Office of the United States Trustee for the Southern District of Florida, 51 S.W First Avenue, Miami Florida 33130, Suite 1204, Miami, Florida 33130; and (c) any other parties requesting notice in this Chapter 11 case, so as to be underlined received on or before **4:00 p.m. (prevailing Eastern time) on September 9, 2013** (the **"Objection Deadline"**). Any objections by creditors or other parties in interest to any of the provisions of this Interim Order shall be deemed waived unless filed and served as set forth herein prior to the Objection Deadline. Counsel for the Debtors shall promptly serve a copy of this Interim Order on the parties that received notice of the Motion and Interim Hearing and those parties requesting notice in this Chapter 11 case.

14.    Except as otherwise provided herein, or as otherwise ordered by this Court, the terms of this Interim Order shall be valid and binding upon the Debtors, all of their creditors, and all other parties in interest from and after the date of this Interim Order.

15.    The relief granted in this Interim Order is effective *nunc pro tunc* to the Petition Date.

16.    This Interim Order shall be deemed effective immediately and, for the avoidance of doubt, Federal Rule of Bankruptcy Procedure 6004(h) shall not apply hereto.

###

Submitted by:
Luis Salazar, Esq.
SALAZAR JACKSON, LLP
2 South Biscayne Boulevard
Suite 3760
Miami, Florida 33131
Phone:  (305) 374-4848
Fax:  (305) 397-1021
Email:  Salazar@SalazarJackson.com


(Attorney Salazar shall serve a copy of this Order upon all interested parties upon receipt and file a certificate of service.)

# EXHIBIT "A"

Florida Gaming Centers, Inc.
Cash Flow Projections
16-Week period August 24 - December 7, 2013

| | ACTUAL WE 8/24/2013 | FORECAST WE 8/31/2013 | FORECAST WE 9/7/2013 | FORECAST WE 9/14/2013 | FORECAST WE 9/21/2013 | FORECAST WE 9/28/2013 | FORECAST WE 10/5/2013 | FORECAST WE 10/12/2013 | FORECAST WE 10/19/2013 | FORECAST WE 10/26/2013 | FORECAST WE 11/2/2013 | FORECAST WE 11/9/2013 | FORECAST WE 11/16/2013 | FORECAST WE 11/23/2013 | FORECAST WE 11/30/2013 | FORECAST WE 12/7/2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash receipts** | | | | | | | | | | | | | | | | |
| Net slot receipts | 1,324,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 |
| Card room receipts | | | | | | | | | | | | | | | | |
| Miami | 143,573 | 119,539 | 119,539 | 123,200 | 123,200 | 123,200 | 123,200 | 123,200 | 123,200 | 123,200 | 123,200 | 123,200 | 123,200 | 123,200 | 123,200 | 123,200 |
| Ft Pierce | 74,158 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 |
| Pari-mutuel receipts | | | | | | | | | | | | | | | | |
| Miami | 48,308 | 39,600 | 39,600 | 39,600 | 39,600 | 39,600 | 39,600 | 39,600 | 39,600 | 39,600 | 39,600 | 39,600 | 39,600 | 39,600 | 39,600 | 39,600 |
| Ft Pierce | 54,423 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 | 64,000 |
| DFS receipts | 74,817 | 61,600 | 61,600 | 61,600 | 61,600 | 61,600 | 61,600 | 61,600 | 61,600 | 61,600 | 61,600 | 61,600 | 61,600 | 61,600 | 61,600 | 61,600 |
| Transfer from jackpot | | | | | | | | | | | | | | | | |
| DFS commission | 9,353 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Food, beverage & other | | | | | | 64,240 | | | | 64,240 | | | | 64,240 | | |
| **Total cash receipts** | 1,728,632 | 1,499,739 | 1,499,739 | 1,503,400 | 1,503,400 | 1,567,640 | 1,503,400 | 1,503,400 | 1,503,400 | 1,567,640 | 1,503,400 | 1,503,400 | 1,503,400 | 1,567,640 | 1,503,400 | 1,503,400 |
| | | | | | | | | | | | | | | | | |
| **Cash disbursements** | | | | | | | | | | | | | | | | |
| State casino taxes | 255,093 | | | | | | | | | | | | | | | |
| State and local slots & pari-mutual taxes | 55,031 | | | | | | | | | | | | | | | |
| State gaming license | 8,816 | | | | | | | | | | | | | | | |
| Payroll | 9,867 | | | | | | | | | | | | | | | |
| Payroll taxes | 5,686 | | | | | | | | | | | | | | | |
| Employee benefits | 12,400 | | | | | | | | | | | | | | | |
| Other taxes | | | | | | | | | | | | | | | | |
| Cage checks cleared | | | | | | | | | | | | | | | | |
| Cash orders | | | | | | | | | | | | | | | | |
| Debt service payments | 197,500 | | | | | | 205,000 | | | | 205,000 | | | | 205,000 | |
| US Trustee Fee | 17,908 | | | | | | | | | | | | | | | |
| Gaming equipment rentals | 87,180 | | | | | | | | | | | | | | | |
| ITW payments | | | | | | | | | | | | | | | | |
| Utilities | | | | | | | | | | | | | | | | |
| Insurance | 99,722 | | | | | | | | | | | | | | | |
| Marketing and advertising | | | | | | | | | | | | | | | | |
| Corporate transfers | 363,907 | | | | | | | | | | | | | | | |
| Professional fees | | | | | | | | | | | | | | | | |
| Property taxes | | | | | | | | | | | | | | | | |
| Bank service charges | 13,273 | | | | | | | | | | | | | | | |
| Other operating expenses | 232,460 | | | | | | | | | | | | | | | |
| **Total cash disbursements** | 1,358,843 | 1,360,117 | 3,071,057 | 705,480 | 558,880 | 1,476,520 | 2,696,240 | 705,480 | 558,880 | 1,476,520 | 2,696,240 | 705,480 | 558,880 | 1,476,520 | 2,696,240 | 705,480 |
| | | | | | | | | | | | | | | | | |
| Net change in cash | 369,789 | 139,622 | (1,571,318) | 797,920 | 944,520 | 91,120 | (1,192,840) | 797,920 | 944,520 | 91,120 | (1,192,840) | 797,920 | 944,520 | 91,120 | (1,192,840) | 797,920 |
| Opening balance cash | 745,854 | 1,115,643 | 1,255,265 | (316,053) | 481,867 | 1,426,387 | 1,517,507 | 324,667 | 1,122,587 | 2,067,107 | 2,158,227 | 965,387 | 1,763,307 | 2,707,827 | 2,798,947 | 1,606,107 |
| Closing balance cash | 1,115,643 | 1,255,265 | (316,053) | 481,867 | 1,426,387 | 1,517,507 | 324,667 | 1,122,587 | 2,067,107 | 2,158,227 | 965,387 | 1,763,307 | 2,707,827 | 2,798,947 | 1,606,107 | 2,404,027 |

Assumptions

1. Slot net deposits have increased approximately 20% over deposits at same time in previous year. This is as the result of marketing and promotional efforts that have drawn a larger customer base throughout Miami-Dade County. The promotional effects are also drawing away Miami-Dade residents that had formerly gambled at Broward casinos such as the Isle and Hard Rock Casinos. Management expects that revenue will follow the same seasonal patterns as in prior year (1st year of operations - 2012) except with the same 20% net increase over deposits at same time in previous year.

2. Management paid property taxes in the amount of $400,000 in May, 2013 and expects to pay remaining balance in months of June - August 2013

3. Gaming tax - slots is payable monthly at 1.5% of slot receipts to City of Miami and 1.5% of slot receipts to Miami - Dade County.

4. DFS receipts represent repayment of cash advances on checks and credit cards that were advanced by the Casino to customers. Net slot receipts are reported net of the DFS advances. In addition to the DFS receipts, the Casino also receives a commission from DFS related to the total advances each month.

# EXHIBIT "B"

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO. 12-35064CA58

ABC FUNDING, LLC, as Administrative Agent for
SUMMIT PARTNERS SUBORDINATED DEBT
FUND IV-A, L.P., SUMMIT PARTNERS
SUBORDINATED DEBT FUND IV-B, L.P.,
JPMORGAN CHASE BANK, N.A., LOCUST
STREET FUNDING LLC, CANYON VALUE
REALIZATION FUND, L.P., CANYON VALUE
REALIZATION MASTER FUND, L.P., CANYON
DISTRESSED OPPORTUNITY MASTERFUND, L.P.,
and CANYON-GRF MASTER FUND II, L.P.,

      Plaintiff,

vs.

FLORIDA GAMING CENTERS, INC., a Florida
corporation; FLORIDA GAMING CORPORATION, a
Delaware corporation; CITY NATIONAL BANK OF
FLORIDA, not individually but solely as Trustee under
the Land Trust Agreement dated January 3, 1979,
known as Trust Number 5003471; FREEDOM
HOLDING, INC., a Delaware Corporation; TARA
CLUB ESTATES, INC., a Georgia Corporation;
FLORIDA LEMARK CORPORATION, a Florida
corporation; ART SIGN CO., INC., a Florida
corporation; M & G FILL CORPORATION, a Florida
corporation; D2 CONSTRUCTION, INC., a Florida
corporation; AUSTIN TUPLER TRUCKING, INC., a
Florida corporation; *et al.*,

      Defendants.

_____/

## ORDER APPOINTING TEMPORARY RECEIVER PENDING
## HEARING ON NOVEMBER 27, 2012

**THIS CAUSE** came before the Court at 8:45 a.m. on October 25, 2012 upon Plaintiff's

Verified Motion for Appointment of Receiver, Supplement to Verified Motion to Appoint

Receiver and Request for Emergency Hearing (collectively, the "Motion"), and the Court having

1

reviewed the file, heard from counsel and it appearing to the Court that the loan documents at issue expressly authorize the relief requested herein, and being otherwise duly advised in the premises,

It is hereby **ORDERED AND ADJUDGED:**

1.    <u>Appointment</u>.    David Jonas is hereby appointed Temporary Receiver (the "Receiver") of the real and personal property which is described in and encumbered by the Miami Dade Mortgage and the St. Lucie Mortgage, each executed by Borrower in favor of Lenders (collectively, the "Mortgages") and other loan documents which are the subject of this action, including all real, personal, tangible, and intangible property, whether now existing or hereafter arising, wherever located (the "Receivership Property"), such appointment to be effective as of October 25, 2012, *nunc pro tunc*, to continue until further order of this Court.

2.    <u>Hearing</u>.    A hearing has been scheduled for November 27, 2012 at which time the Court will consider whether the Receiver should be appointed through the pendency of this litigation.

3.    <u>Expedited Discovery</u>.    Responses to all discovery with respect to the Motion shall be served within two (2) weeks of service.

4.    <u>Oath</u>.    Within ten (10) days of the date of this Order, the Receiver shall file with this Court an Oath of Receiver.

5.    <u>Bond</u>.    The Receiver shall post a surety bond in the amount of $100,000.00 with the Clerk of Court within ten (10) days of the date of this Order.

6.    <u>Possession of Receivership Property</u>.    The Receiver shall immediately take possession of all the accounts, books of account, checkbooks, lease agreements, sales contracts, assets, files, papers, contracts, records, documents, monies, securities, choses in action, keys, pass codes and passwords, computers, all software and data, archived and historical data, and all

2

other property, real, mortgaged, personal or mixed, of FLORIDA GAMING CENTERS, INC. ("Borrower") including but not limited to any and all funds being held by any third-party on behalf of Borrower, which are specifically included within the definition of the Receivership Property, which are within the jurisdiction of this Court, except as is otherwise set forth herein, and shall retain custody, except as is set forth hereinafter, of all such Receivership Property, until further order of this Court. All persons and corporations now or hereafter in possession of any Receivership Property, or any part thereof, shall forthwith surrender such possession to the Receiver. Plaintiff and Borrower shall have access to the above records and documents upon reasonable notice and during business hours. For the purpose of taking possession of and managing the Receivership Property, the Receiver is hereby authorized to employ agents, servants and employees and to contract as reasonably necessary for property management and accounting services, leasing and sales as may be necessary. The Receiver shall collect the rents, issues, profits and revenues, if any, from the Receivership Property. Further, Borrower and any persons in active participation with them, shall grant the Receiver unfettered access to any accounts, records, documents, files, plans, engineering reports, permits (whether expired or not), and computer equipment owned by Borrower. Such access shall include, without limitation, the right to inspect and copy any such accounts, records, documents, files, plans, engineering reports, permits, and computer equipment.

The Receiver may at any time, apply to this Court for further powers and authority as may be necessary and appropriate to carry out the purposes of this Order.

7.    Receiver's Powers. The Receiver is empowered, directed and authorized by this Court to act on its behalf as the Receiver of the Receivership Property, and to do any and all things necessary for the proper management, operation, preservation, maintenance, protection and administration of the Receivership Property. The Receiver may, but is not required to, take

3

action in the name of Borrower, where necessary to fulfill his duties pursuant to this Order. Further, the Receiver may, but is not required to, utilize Borrower's promotional and marketing materials, website, signs, logos and brand names, where necessary to fulfill his duties pursuant to this Order. The Receiver shall have and possess all powers and rights to the extent necessary in the discretion of the Receiver to facilitate its management and preservation including, but not limited to, the following:

(a)      taking immediate possession of the Receivership Property to the extent necessary to manage, preserve and protect the same, including, taking possession and control, to the exclusion of defendants and all others of all accounts relating to the Receivership Property and holding, retaining, preserving, protecting, operating and managing the Receivership Property and performing all tasks necessary therefore;

(b)      directing, overseeing and managing the Borrower's daily operations, including without limitation sole responsibility for all treasury functions and day-to-day cash flow decisions;

(c)      managing the Borrower's cash flow and liquidity, make recommendations and implement improvements;

(d)      evaluating current management and employees, reporting and governance procedures and implement appropriate alterations;

(e)      attending meetings of the Board, if any;

(f)      providing any ongoing operational and financial updates and other information required under the Credit Agreement to the Plaintiff;

(g)      paying all costs reasonably necessary to conserve, maintain, repair, secure, operate, preserve and protect the Receivership Property, including all such costs incurred prior to date of this Order of which Plaintiff has approved;

(h)     paying any and all necessary costs, executing any and all necessary documents, obtaining releases of lien;

(i)     paying any taxes, assessments and charges in the nature thereof, due in connection with the Receivership Property;

(j)     opening accounts in the name of the Receiver in order to fulfill his duties pursuant to this Order;

(k)     applying for or obtaining from Borrower an assignment of all licenses, approvals, and permits issued for the operation of the Receivership Property, including but not limited to the Certificate of Occupancy for the real property;

(l)     directing, overseeing, and managing Borrower's daily operations, including without limitation, exercising sole responsibility for all treasury functions and day-to-day cash flow decisions;

(m)     managing Borrower's cash flow and liquidity;

(n)     taking any action which could lawfully be taken by the managers or officers of Borrower prior to the date of this Order to fulfill its duties pursuant to this Order;

(o)     enforcing rights under agreements, contracts, leases, warranties, easements, covenants, and restrictions benefiting the Receivership Property;

(p)     providing to Lenders ongoing operational and financial updates and any other information required under the Credit Agreement;

(q)     performing under any declarations of covenants, restrictions and easements or other similar agreements appurtenant to the Receivership Property; and

(r)     hiring legal counsel to assist the Receiver in performing the responsibilities with respect to the Receivership Property as set forth in this order and in performing the filing

5

obligations with the Clerk of the Circuit Court set forth in this order and paying all legal costs and fees incurred in performing the responsibilities with respect to the Receivership Property.

Nothing contained herein shall require the Receiver to expend any of its own funds.

8.     Turnover of Receivership Property.  The parties in this matter and their respective officers, directors, shareholders, employees, and agents are directed, forthwith, to turn over to the Receiver all of the Receivership Property, as described in paragraphs 1 and 5 of this Order, including without limitation, any and all cash and other monies, whether in a bank or otherwise, all income, issues, revenues, rental payments, security deposits, down payments or other monies paid to or on account of any contracts, leases or rental agreements, and records and documents relating to the business operations of the Receivership Property (including all licenses, permits, and other land use entitlements, approvals and files), the Receivership Property itself, and any other matter not specifically described in this Order, but which is reasonably necessary for the Receiver to perform his duties as described herein.

9.     Specific Duties of Receiver.  The Receiver shall manage, secure, sell, rent (to the extent provided hereafter), preserve, protect, and maintain the Receivership Property in a reasonable, prudent, diligent and efficient manner.  Without limitation of that general duty, the Receiver shall have the following specific duties:

(a)     Receivership Property Maintenance and Repair.  The Receiver shall maintain the building, appurtenances and grounds of the Receivership Property, substantially in accordance with their current condition, making such repairs and renovations as are necessary and appropriate to ensure the security, life, health, and safety of any persons or thing on the Receivership Property, but only to the extent the Receiver determines, after consultation with Plaintiff, that such repairs and renovations are economically feasible and in the best interest of the Receivership Property.

6

(b)    Approvals and Permits. The Receiver shall (i) take such actions as may be necessary or appropriate to ensure that any and all existing or future licenses, permits, applications and other governmental approvals and entitlements pertaining to the ownership, operation, management, use, or development of the real property (collectively, "Permits"), are obtained and maintained in full force and effect; and (ii) enter into a contract or contracts with third parties to obtain and maintain such Permits, and to complete any required improvements to the Receivership Property in connection with such Permits.

(c)    Insurance. The Receiver shall maintain casualty insurance with respect to the Receivership Property, and if required by Plaintiff, liability, windstorm, flood, professional liability, betterment and improvement and workers' compensation insurance with respect to the Receivership Property, all in such amounts and with such coverages as are required under the Mortgage which is the subject of this action. All such insurance policies shall name the Receiver and Plaintiff, as additional insureds and shall name Plaintiff as loss payee with respect to all casualty policies. The Receiver is authorized to continue in existence all current insurance policies in place. The Receiver shall promptly investigate and will file a full, prompt written report with the Clerk of this Court as to all serious and material accidents, claims for damage relating to the ownership, operation and maintenance of the Receivership Property, and any damage or destruction to the Receivership Property, and the estimated cost of repair thereof, and shall prepare any and all reports required by any insurance company in connection therewith.

(d)    Operating Account. The Receiver may establish and maintain, at a bank whose deposits are insured by the Federal Deposit Insurance Corporation, a separate operating account or accounts into which the Receiver shall deposit all receipts, if any, related to the Receivership Property and from which the Receiver shall disburse all amounts due and payable as reasonable, necessary and proper operating expenses of the Receivership Property, subject to

7

the terms of this Order and the availability of funds. The parties shall provide the Receiver with information regarding those expenses which the Receiver is required to pay, which expenses were incurred prior to the Receivership.

(e)    Records. The Receiver shall maintain a comprehensive system of office records, books and accounts concerning the maintenance of the Receivership Property. Upon reasonable notice, and at all reasonable times, Plaintiff and Borrower, and their respective agents, shall have reasonable access to such records, accounts and books and to all other material pertaining to the operation of the Receivership Property, all of which the Receiver agrees to keep safe, available and separate from any records not having to do with the operation of the Receivership Property.

(f)    Legal Requirements. The Receiver shall ensure that all aspects of the Receivership Property, and its operation, management, and development, comply with any and all laws, regulations, orders or requirements affecting the Receivership Property having jurisdiction thereover.

(g)    Major Repairs and Improvements. Except as otherwise provided herein, the Receiver shall not incur any obligation for major repairs, improvements, additions or alterations of the Receivership Property requiring expenditures in excess of $50,000.00 without prior order of this Court or a written stipulation of Plaintiff.

(h)    Use and Maintenance of Premises. The Receiver shall not permit the use of the Receivership Property for any purpose which will or might void any required policy of insurance or which might render any loss thereunder uncollectible, or which would be in violation of any law or government restriction.

(i)    Service Contracts. The Receiver shall not enter into any service contracts affecting the Receivership Property including any and all real estate brokerage and listing

agreements, having a term which cannot be cancelled (without premium or penalty), upon the termination of the receivership or upon 30 days notice, whichever is earlier, except with prior order of this Court or a written stipulation of Plaintiff. In submitting all such service contracts to the Court for its approval or to the Plaintiff, the Receiver shall disclose any affiliate relationship, or pecuniary interest, that he may have with or in such contracting party. The Casino Development and Management Agreement between Borrower and Miami Casino Management, LLC (which is affiliated with Receiver) dated March 31, 2011 shall remain in place.

(j)      No Waste.  Without the approval of the Plaintiff or Court, the Receiver shall not suffer, cause or permit: (i) any removal of any Receivership Property; nor (ii) any waste of the Receivership Property or any of the components thereof.

10.    Environmental Report.  The Receiver may, if he reasonably deems same to be necessary or appropriate, have environmental inspections and/or reports prepared with respect to the Receivership Property, showing the environmental status of the Receivership Property and any remediation required with respect to same.

11.    Receiver's Certificates.  Without further order of this Court, the Receiver may from time to time borrow up to $150,000.00 from Plaintiff for the performance of his duties hereunder, if necessary, and may issue Receiver's Certificates of Indebtedness ("Certificates") to evidence such borrowings. The principal and interest evidenced by the Certificates shall be a first lien and security interest upon the Receivership Property, and all rents, earnings and income of the Receivership Property. Any such funds advanced by Plaintiff and evidenced by the issuance of Certificates shall be considered advances made under the Loan Documents, whether or not such advances are otherwise permitted thereunder. The lien of each Certificate shall be prior and superior to the rights, titles and interests in the Receivership Property of all parties to this action, except Plaintiff. The lien of each Certificate shall be prior and superior to the interest

9

or lien of all judgment holders, mechanics' lien claimants, partners, members, shareholders, and creditors of Defendants. Without limiting the foregoing, the sums evidenced by each Certificate shall also be secured by the lien and security interests in the Loan Documents. Nothing herein shall obligate Plaintiff to advance all or any part of the borrowings authorized herein. If the Receiver desires to borrow additional funds, or funds from sources other than Plaintiff, the Receiver shall petition this Court (with notice to all parties) for authority to issue Supplemental Certificates of Indebtedness ("Supplemental Certificates"), and this Court may authorize the specific amounts and terms of any Supplemental Certificates, the specific uses of any funds borrowed thereunder, and the lien priority of any Supplemental Certificates.

12.   _Net Proceeds._ All profits from the Borrower's operations or arising from all or part of the Receivership Property shall be held by Receiver in a Receivership account, pending further Order of this Court. It is anticipated that the Plaintiff will seek to have some or all of said net proceeds paid over to it during the pendency of this receivership.

13.   _Net Cash Flow._ On or before the 20th day of each month while this Order is in effect, the Receiver shall pay to the Plaintiff any net cash flow in excess of $10,000.00, available from the operation of the Receivership Property from the prior month's collections, for application to costs, expenses, interest and principal evidenced by any of Receiver's Certificates issued to Plaintiff, and then for application to such sums which are secured by the security documents.

14.   _No Interference._ Except as otherwise requested or authorized by the Receiver, or until further order of this Court, the parties, and their respective officers, directors, shareholders, agents, servants, employees, representatives, and attorneys are hereby enjoined from: (i) collecting, or attempting to collect, the rents, receivables, income, revenues, profits, and bank accounts of the Receivership Property from and after the date of the Order; (ii) interfering in any

manner with the management of the Receivership Property by the Receiver as hereinabove described until further order of this Court; or (iii) acting or purporting to act on behalf of the Receivership Property and/or the Receiver.

15.    Consultants and Professionals. Without further order of the Court, the Receiver is hereby empowered to employ independent legal counsel to furnish legal advice to the Receiver for such purposes as may be necessary during the period of receivership.  Upon further order of the Court, or with the prior written approval of Plaintiff, the Receiver is also empowered to employ accountants, consultants, developers and other professionals, to furnish accounting and other advice and services to the Receiver, all for such purposes as may be reasonable and necessary during the term of the receivership.  Such professionals may include those retained by the Receiver to assist in obtaining and maintaining permits.   All such persons shall be compensated in accordance with Paragraph 18 below.

16.    Fees. The Receiver shall be compensated at a rate of $25,000.00 per month, plus the reasonable and necessary out-of-pocket expenses incurred by the Receiver on behalf of the Receivership Property, excluding travel, lodging and meal expenses.  All approved counsel, accountants, consultants and other professionals retained by the Receiver shall be compensated on hourly rate basis as approved by Plaintiff in writing, or upon further order of this Court.  The Receiver and all such approved accountants, attorneys, consultants and other professionals shall be paid on a monthly basis.  To be paid on a monthly basis, the Receiver must serve a copy on Plaintiff and Defendants for the monthly fee and expenses of the Receiver and the time, fees and expenses of such approved accountants, attorneys, consultants and other professionals, incurred in the preceding calendar month.  The statement of account shall be included in the monthly report of the Receiver as provided for in Paragraph 13 above.  If no objection thereto is filed and served by the Plaintiff and/or Defendants on or within ten (10) business days following service

on the Plaintiff, such statement of account may be paid.  In the event objections are made to fees and/or expenses, objected-to fees and/or expenses shall be paid within ten (10) business days of an agreement between the objecting party and Receiver, or entry of an order of this Court adjudicating the matter.  If an objection is timely filed and served, the contested portion of such statement of account shall not be paid absent further order of this Court, but the uncontested portion shall be paid as provided herein.  The fees, costs and expenses of the Receiver and its attorneys, accountants, consultants and other professionals shall be paid by Plaintiff as a protective advance under the Loan Documents, or by Receiver issuing a Receiver's Certificate to pay for such fees, costs and expenses, as permitted under Paragraph 10 above, all as determined by Plaintiff in its sole discretion.

17.    _Judicial Immunity_.  The Receiver and the Receiver's attorneys and agents: (i) may rely on any and all outstanding court orders, judgments, decrees and rules of law, and shall not be liable to anyone for their own good faith compliance with any such order, judgment, decree or rule of law; (ii) may rely on, and shall be protected in any action upon, any resolution, certificate, statement, opinion, report, notice, consent, or other document believed by them to be genuine and to have been signed or presented by the proper parties; (iii) shall not be liable to anyone for their good faith compliance with their duties and responsibilities as a receiver, or as attorney or agent for Receiver; (iv) shall not be considered nor have liability as a "successor developer;" and (v) shall not be liable to anyone for their acts or omissions, except upon a finding by this Court that such acts or omissions were outside the scope of their duties or were grossly negligent or constitute misfeasance.  Except for matters set forth in subsection (v) of the preceding sentence, persons dealing with the Receiver shall only look to the receivership assets and bond posted by the Receiver to satisfy any liability, and neither the Receiver nor his attorneys or his agents shall have any personal liability to satisfy any such obligation.

18.   <u>Further Instructions</u>.  The Receiver may at any time upon notice to all parties, apply to this Court for further or other instructions or powers, whenever such instructions or additional powers shall be deemed necessary in order to enable him to perform properly and legally the duties of his Receivership and to maintain, operate, protect and preserve the real property.

19.   <u>Duration</u>.  This Receivership will continue for such time until the Court enters an order terminating it and discharging the Receiver; provided that to the extent the Receiver no longer desires to serve in that capacity, upon notice to Plaintiff and Borrower, the Receiver may apply to the Court for termination of his appointment.

20.   <u>Discharge</u>.  If the Plaintiff is paid in full, inclusive of all principal, interest, costs, fees, and advances, while the Receiver is in place, Borrower shall have the right to request that the Court discharge the Receiver after notice and hearing on a motion setting forth those facts.

21.   <u>Jurisdiction</u>.  Jurisdiction of this action is retained to enter further orders as are appropriate.

**DONE AND ORDERED** in Chambers at Martin County, Florida, on this 2nd day of November, 2012. Nunc pb tunc 10/25/12 BAB

HONORABLE BEATRICE BUTCHKO
Circuit Court Judge
Beatrice A. Butchko
Circuit Court Judge

Copies furnished to:

Marissa D. Kelley, Esq., *Counsel for Plaintiff*, Stearns, Weaver, Miller, *et al.*, 200 East Las Olas Boulevard, Suite 2100, Fort Lauderdale, FL 33301

Gerard D. Kelly, Esq. and Claire E.W. Stewart, Esq., *Co-Counsel for Plaintiff*, Sidley Austin LLP, One South Dearborn Street, Chicago, IL 60603

13

Robert W. Hudson, Esq., *Counsel for Florida Gaming Centers, Inc. and Florida Gaming Corporation,* Hudson & Calleja, LLC, 3211 Ponce De Leon Boulevard, Suite 102, Coral Gables, FL 33134

Luis Salazar, Esq., *Co-Counsel for Florida Gaming Centers, Inc. and Florida Gaming Corporation,* Salazar Jackson, Two South Biscayne Boulevard, Suite 3760, Miami, FL 33131

James S. Lupino, Esq. and Jessica Rothenberg, Esq., *Counsel for Florida Lemark Corporation,* Hershoff Lupino & Yagel, LLP, 90130 Old Highway, Tavernier, FL 33070

David S. Tupler, Esq., *Counsel for Austin Tupler Trucking, Inc. and M & G Fill Corporation,* David S. Tupler, P.A., 9900 Stirling Road, Suite 211, Cooper City, FL 33024

Jorge L. Piedra, Esq., *Counsel for Larrabee Air Conditioning, Inc. d/b/a KAR & Larabee Mechanical Constractors,* Jorge L. Piedra & Associates, P.A., Grove Professional Building, 2950 SW 27th Avenue, Suite 300, Miami, FL 33133

City National Bank of Florida, Attention: S. Marshall Martin, Esquire, 25 West Flagler Street, Miami, FL 33130

Freedom Holding, Inc., W.B. Collett, Jr., *Registered Agent,* 1750 S. King Highway, Fort Pierce, FL 34945

Tara Club Estates, Inc., W.B. Collett, *Registered Agent,* 637 Richmond Place, Loganville, GA 30052

Art Sign Co., Inc., Joseph C. Dillard, *Registered Agent,* 835 N.W. 6th Avenue, Ft. Lauderdale, FL 33311

Decktight Roofing Services, Inc., Richard P. Spreen, *Registered Agent,* 6680 N.W. 17th Avenue, Fort Lauderdale, FL 33309

Statewide Electric & Environmental Solutions, LLC, Rafael J. Fernandez, *Registered Agent,* 10737 S.W. 104th Street, Miami, FL 33176

High Tech Striping, Inc., Paul A. Reyes, *Registered Agent,* 7776 N.W. 73rd Court, Medley, FL 33166

Southeast Duct Specialists, Inc., Leo Moya, *Registered Agent,* 2200 S.W. 58th Ave, West Park, FL 33023

Barreiro Concrete Corporation, Americo Barreiro, *Registered Agent,* 25440 S.W. 140 Avenue, Princeton, FL 33032