IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:                                              Chapter 11

                                                    Case No. 13-29597-RAM
FLORIDA GAMING CENTERS,                             (Joint Administration Requested)
INC., *et al.*,

Debtors.                                    /

## DECLARATION OF DANIEL LICCIARDI IN OPPOSITION TO MOTION TO APPOINT TRUSTEE

DANIEL LICCIARDI, being duly sworn upon oath states:

1.      My name is Daniel Licciardi, and I am the Executive Vice-President of the Debtors, Florida Gaming Centers, Inc. and Florida Gaming Corporation, which together with Tara Club Estates, Inc. and Freedom Holding, Inc. are referred to here as "**Miami Jai-Alai**" or "**FGC**."  Except as otherwise indicated herein, all facts set forth in this Declaration are based on my personal knowledge, my discussions with other members of Miami Jai-Alai's senior management, my review of relevant documents, and/or my opinion, relying on my experience and knowledge of Miami Jai-Alai's operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein.  I am authorized to submit this Declaration.

### ABC – A MANIPULATIVE LENDER

2.      It is hard not to read ABC's Trustee Motion without a sense of outrage, especially after having been victimized by ABC's manipulations for over two years. The truth is that ABC is not a traditional financial institution by any means, and, when it comes to Miami Jai-Alai, ABC manipulated the lending relationship in order to achieve one of two outcomes: (1) owning the casino, or (2) exacting a usurious rate of interest.

3.      At every turn, ABC manipulated its lending relationship with Miami Jai-Alai to achieve these ends.  For example, the Credit Agreement calls for a 360-day interest calculation. But ABC instead charged interest on a 365-day year (and because the loan was in place during leap year, 366 once). Each of those extra days is an additional $39,000 in interest, minimum. In total, these "extra days" amount to over $500,000 in interest taken with no entitlement. I noticed this disparity right away, and called the "error" to ABC's attention immediately. But despite being a breach of the Credit Agreement, ABC advised that it was going to continue to take the extra interest. Miami Jai-Alai was at ABC's mercy and could do nothing about it.

4.      Here's another example: the Credit Agreement required Miami Jai-Alai to draw the full face amount of $87 million, but nearly $20 million of that was to be held as interest and construction reserves. The Credit Agreement allowed Miami Jai-Alai to hold those funds in an interest-bearing account, which would have yielded an additional $180,000 in interest for the company's use.  But ABC refused to permit it.

5.      Another: in March, 2012, just after the casino opened, ABC requested that Miami Jai-Alai make the monthly million-dollar interest payments out of cash flow, rather than from the prepaid interest reserve that was created for just those payments. Considering the incredible power that ABC then had over the company, Miami Jai-Alai complied, and paid both March and April payments – totaling nearly $2.3 million – from cash flow. But in May, Miami Jai-Alai's yearly casino license and bond payment, coincidentally totaling $2.4 million, came due. ABC's forcing Miami Jai-Alai to make the interest payments from cash-flow crippled its ability to make that payment.  And, of course, ABC prohibited use of the unused interest reserve to make that license payment and, instead, swept those millions, as well as the $3 million in remaining construction reserves, into its coffers.

6.      And yet another example: in October, 2012, ABC swept more than $1.2 million from another construction contingency account. Since then, Miami

Jai-Alai has requested an accounting of what happened to those funds on numerous occasions. ABC has just refused to explain how those funds were used or applied, except to say that they were used for "fees."

7.    When you add all these items up, ABC manipulated over $7 million out of Miami Jai-Alai's accounts, and into their hands. Not coincidentally, this is almost the amount of money ABC claims Miami Jai-Alai failed to pay, and is nearly 20 times the combined magnitude of all the payments that ABC alleges Miami Jai-Alai misused.

### ABC's False Allegations in Support of Trustee Motion

8.    ABC's Motion overflows with powerful adjectives to describe the terrible acts Miami Jai-Alai has supposedly carried out. But there is just one problem – the so-called facts they allege are flatly false, and they know it. In fact, it's worth noting that ABC parked a team of forensic accountants from a nationally known firm at Miami Jai-Alai's office for nearly three months. That team had complete and unfettered access to Miami Jai-Alai's books and records. After all that time, ABC's forensic team found nothing improper beyond the sparse allegations in its current motion.

9.    Just as ABC has manipulated its loan relationship with Miami Jai-Alai with impunity, it is now seeking to manipulate this Court. For ease of reference, I have set forth each of ABC's allegations, with Miami Jai-Alai's response setting forth the actual facts.

| Allegation | Response |
|---|---|
| **June 2011 transfer of $54,835.00 to pay Farmer's Bank loan** | There was no such payment. Farmer's Bank set-off overdue interest in the amount of $54,835.00 when Miami Jai-Alai obtained the release of a nearly $250,000 deposit for its gambling-license bond. The funds were not ABC's collateral. Nonetheless, ABC declared this a default and levied a $377,000 interest penalty. |

| Allegation | Response |
|---|---|
| **April, May, July, and August 2012 payments of monthly interest payment to "obligation of Holdings."** | These are $10,883.18 interest payments pursuant to a note with Florida Lemark, the casino general contractor, made with full knowledge and agreement of ABC. Debt to Lemark was previous owed by Centers, but was subordinated at ABC's demand. Additionally, payments were permissible from, and pursuant to, the $65,000 monthly expense budget for Corp. pursuant to Credit Agreement. *See Credit Agreement,* Section 606.06(d).[1] |
| **Two payments of $25,000 each to Freedom pursuant to Freedom Consulting Agreement.** | Consulting agreement entered into with ABC's full knowledge and consent – in fact, it is a defined term in the Credit Agreement and an attached Exhibit. *See Credit Agreement,* page 11 and Exhibit H. The Credit Agreement allows payments under the Freedom Consulting Agreement, up to a cap of $300,000. *See Credit Agreement,* page 19.[2] |
| **June 2012 payment of $100,322.95** | This payment of interest was made with full knowledge of ABC. Payment was required to avoid default under ABC's $87 million Credit Agreement. *See Credit Agreement,* Section 7.01(f). |
| **Payment of a total of $20,000 from January 2012 to June 2012 to cover personal rent and utilities for Mr. Collett.** | Mr. Collett (CEO) is an FGC employee. He is a resident of Indiana and it has consistently been Florida Gaming's practice to pay his housing expenses, which total $3,340 a month. ABC was aware of this long-standing practice and these expense payments. These housing expenses are *less than* the $5,000 ABC agreed were reasonable for the living expenses of Jonas, the Receiver. |
| **Payment of a total of $10,500 from** | Mr. Collett (CEO) is an FGC employee |

---

[1] "[T]he Borrower may pay dividends to Holdings [Corp.] in an amount not to exceed $65,000 per month with respect to Permitted Corporate Expenses[.]" *See* **Exhibit A**, *Credit Agreement,* Section 606.06(d). Permitted Corporate Expenses includes $498,600. See **Exhibit A**, *Credit Agreement,* Schedule 1.01.

[2] "Permitted Freedom Consulting Payment Cap" means $300,000 per fiscal year[.]" *See* **Exhibit A**, *Credit Agreement,* page 19.



| Allegation | Response |
|---|---|
| **January 2012 to June 2012 in gas credit card use by Mr. Collett.** | and a resident of Indiana. FGC's consistent, disclosed practice has been to pay his travel expenses.  Mr. Collett commutes from Indiana by car, and does not travel by air, which saves Florida Gaming that considerable travel expense. |
| **FGC paying approximately $20,200 in petty cash replenishments with no documentation.** | There is no support for this allegation, nor does ABC allege that the Colletts were the recipients of any "petty cash replenishments." Notably, Miami Jai-Alai had $7,565,290 of nonpayroll, nontax expenses during this time. This $20,200 presumably found by ABC's forensic team after a 3 month investigation is less than .002% of the total expenses during that time. |
| **FGC paying thousands of dollars in other undocuments personal expenses of Collett and others, including gas credit cards and hotel bills, and expensive meals.** | Repetitive, no evidence to support such an allegation. |
| **Jonas asked to take actions he felt was improper. Only example cited: asked to approve transfer of $30,000 to Corp without documentation.** | No such request was made. |
| **FGC failed to terminate current auditor and hire new, independent auditor.** | ABC's Credit Agreement required FGC to hire one of the "big six." *See Credit Agreement,* Section 5.01(a) and Schedule 5.01(a).  FGC interviewed each, but each declined to accept the engagement because of its relatively small size, previous "going concern" warnings, and ABC's constant calling of technical defaults. ABC was fully aware of the results of this effort, and ABC even negotiated directly with two of the auditing firms and tried convincing them to accept the engagement. ABC failed to do so.  As a publicly traded company, FGC required an auditor at all times. But ABC refused to permit the interview of any other auditors, leaving FGC with no choice but to continue using King & Co. |

| Allegation | Response |
|---|---|
|  | That allowed ABC to keep FGC in a constant artificial state of default.  The Receiver finally convinced ABC to permit Morrison, Brown, Argiz, & Farra, LLC to assume that auditing role. |
| **When the Receiver took over, he found over $1 million in receivables "in arrears," not overdue which he reduced by 70% in the first month.** | Again, this is an intentionally deceptive statement on ABC's part. Miami Jai-Alai normally pays over $5 million in monthly expenses. At any one time during the month, the amount outstanding can easily exceed $1 million, but it cycles up and down. Further, the Receiver assumed control almost a year ago, when Miami Jai-Alai's cash-flow was much less than it is today, and payables were managed to meet that cash constraint. |
| **Two undisclosed bank accounts** | This is false. These accounts were disclosed to ABC – and to the Court and all parties, of course.  One is a zero based account opened in November 2011 and used for Florida lottery sales.  It currently holds $1,901.33, the same amount it has held for years. The second is Corp's principal business checking account, which was opened in April 2011. |
| **Funding of Settlement Payments to CCLN, LLC** | CCLN, LLC, now known as Miami Gaming Ventures, is the consulting firm that assisted Centers in legalizing slots at Miami Jai-Alai. At least 80% of the monies owed to CCLN is owed by Centers. These payments were permissible under the $65,000 cap authorized by the Credit Agreement. |
| **The insiders failed to disclose a liability of $3,600,000, which ABC uncovered prior to the Silvermark closing.** | This allegation is a false and nonsensical. There is so such "secret debt."  The only debt Miami Jai-Alai can see that is close in dollar amount is the $3,550,000 agreed contribution to a political action committee (PAC) that worked to expand gaming rights to include slots. This debt was disclosed to ABC and in multiple public filings with the SEC, and was paid |

| Allegation | Response |
|---|---|
| | in full over a year ago. |

## OVERWHELMING CONTROLS IN PLACE

10.      The Trustee's Motion suggests that a Trustee is required to make sure controls are in place to protect Miami Jai-Alai. But far from the laughable stereotypes of gaming establishments in movies like *Oceans' 11* or *Casino*, the modern casino business is heavily regulated and controlled. When combined with the additional oversight and controls imposed by the Bankruptcy process, the imposition of a receiver, much less a trustee, is patently unnecessary.

11.      To start, Miami Jai Alai is regulated by the Department of Business and Professional Regulation, which imposes strict operational, reporting, and security requirements. Miami Jai Alai is required to develop, maintain, and implement extensive security policies, procedures, and controls that govern the intake and management of all cash. As a matter of fact, Miami Jai-Alai "System of Internal Control" Manual is 100's of pages long.

12.      As part of these required controls, Miami Jai Alai also maintains security personal and an internal auditing department whose sole function is to monitor cash, in part using the over 350 cameras that monitor every part of the facility.

13.      On top of that, State regulators maintain an active presence and office on site.  The State regulator's office is manned by state regulators, who have independent and direct access to all of the cameras at the facility.

14.      Further, Miami Jai Alai is also a publicly traded company that is required and in fact is audited annually.  It files required quarterly and annual SEC public disclosures. Morrison, Brown, Argiz & Farra, LLC, a reputable and well-known accounting firm, currently audits Centers.

15.      In the face of all these controls, it is my understanding that the Bankruptcy Code and Rules impose yet another layer of controls, including the

preparing and filing of monthly operating reports and the direct reporting of all banking activity by our bank, Wells Fargo, to the Office of the United States Trustee. Additionally, it is my understanding that this transparent process requires Miami Jai Alai to seek approval of any expense or action that is out of the ordinary course of business. Further, I also understand that there will soon be a Committee of Unsecured Creditors appointed to further actively monitor Miami Jai-Alai.

16.     Given these extensive layers of controls, disclosures, and reporting, it appears that the imposition of a trustee or a receiver is an unneeded overkill.

### THE COLLETT'S COMPENSATION

17.     ABC works hard to slander the Colletts and their operations of Miami Jai Alai, so it is important to share a strong dose of the truth with the Court so it has a real understanding of the sacrifices made to ensure that Miami Jai Alai could reach its current level of value and operational success.

18.     When the Colletts acquired Miami Jai Alai in 1997, they implemented a long-term, strategic plan to pursue the expansion of legal gambling at the facility, including traditional casino-style gambling. This required careful management to ensure that Miami Jai Alai's parimutuel operations survived the lean years and their financially sustaining the company over the last 20 years. The Colletts have truly invested their very last penny to ensure that Miami Jai Alai would survive to flourish as a casino, as it is today.

19.     Since the ABC Funding Loan, W. Bennett Collett, Sr. has received no income from the company, other than the initial two authorized payments of $25,000, and is not employed by Miami Jai-Alai. W. Bennett Collett, Jr., who serves as CEO of both Corp and Centers receives a salary of $315,000 a year, plus health care benefits.

### THE DECISION TO FILE CHAPTER 11

20.     ABC Funding alleges that Miami Jai Alai's Chapter 11 filing was



"unplanned," implying recklessness on the part of management. Nothing could be further from the truth.

21.     Beginning in October, 2012, Miami Jai Alai's Board and management began analyzing a number of alternatives to respond to ABC's relentless efforts to control and own the casino. The Board and management, in consultation with its professionals, considered, for example, a work out with ABC, a potential chapter 11 filing and restructuring, and a sale of the company or its assets. In fact, in 2012, before ABC filed its foreclosure filing, Miami Jai-Alai prepared a full chapter 11 filing, but ultimately decided to pursue a sale to Silvermark, LLC. And even the Silvermark SPA contains an alternative deal structure that contemplates a potential Section 363 sale. And, of course, the very hiring of Salazar Jackson, LLP, a firm known for its Chapter 11 experience, 11 months ago demonstrates the level of engagement by the Board on this issue.

22.     Further, during the course of the ABC foreclosure litigation and the negotiations on the sale to Silvermark, Miami Jai-Alai periodically revisited its potential strategic options, including a chapter 11 filing. More recently, when it became clear that the Silvermark transaction was likely no longer feasible due to Miami Jai-Alai's $180 million valuation and the related warrant repurchase, the Board and management again reconsidered its strategic options, including a Chapter 11 filing. And as it became increasingly clear during July and August that the Silvermark transaction was not a workable option, the Board and management directed its counsel to pursue preparation of a Chapter 11 in a parallel strategy, should a filing become necessary.

23.     It is true, however, that the Board decided to file without notifying either Silvermark or ABC.  There are several reasons why it felt this approach was necessary.  Among other things, the relationship with Silvermark had become quite adversarial by that time because Miami Jai-Alai had refused to acquiesce to various unreasonable and substantial modifications to the SPA. Moreover, Silvermark personnel had repeatedly threatened Miami Jai-Alai's CEO and were actively soliciting creditors to file an involuntary proceeding against the company.

Also, the Board felt there was no benefit in reaching out to ABC, as ABC had taken an obstructionist approach to every Miami Jai-Alai initiative. As the above shows, far from being an unplanned or reckless decision, this Chapter 11 proceeding is the result of over a year of constant review, consideration, and planning.

24.     Ultimately, ABC's chicken-little prognostications aside, the Casino business is as strong as ever, even in the face of the Chapter 11 and the grand opening of Hialeah Casino & Racetrack. Coin-in wagers, which are the strongest indication of demand because it shows actual customers gambling, are still up over 27% from last year.  In fact, the two weeks, post-petition have been consistently strong, as the chart below demonstrates:



## RETAINING THE RECEIVER

25.     On October 18, 2012, ABC Funding filed its *Verified Motion to Appoint Receiver* in the ABC Florida Action, relying in large part upon the obligation in the Loan Documents that a receiver be appointed upon declaration of a default.   On November 2, 2012, Miami Jai-Alai consented to an Order appointing David Jonas as Receiver, *nunc pro tunc* to October 25, 2012.  Miami Jai-

Alai consented to that relief because Jonas had, in fact, already been retained by Florida Gaming a year earlier and was serving as its casino manager.

26.    During the course of the Receivership, Jonas continued to focus his efforts on casino operations, where his experience lies. Although Miami Jai-Alai does not agree that Jonas should continue as receiver in this Chapter 11 proceeding, it has no intention of terminating its relationship with Jonas.  To the contrary, Miami Jai-Alai and Jonas have already undertaken discussion for Jonas to remain in the casino management role he currently fills.

27.    Given that, and the extensive controls already in place by gaming regulations and this Chapter 11 proceeding, Miami Jai-Alai believes maintaining the receivership is completely unnecessary.

### ABC's Staunch Opposition to the Silvermark Sale

28.    Incredibly, ABC complains in its motion that Miami Jai-Alai walked away from a sale transaction that ABC somehow supported. The reality is that ABC fought tooth and nail to prevent that closing and gave no assurance whatsoever that it intended to even provide an acceptable payoff letter.

29.    Despite the fact that Miami Jai-Alai was negotiating with Silvermark to effectuate a sale and was offering to pay the debt in full, ABC Funding continuously delayed the process and ran up their ultimate pay-off in the process.

30.    It was in ABC Funding's interest to delay that sale for at least three reasons.  First, ABC truly wants to own this Casino, and torpedoing the Silvermark transaction was and has been its primary goal.

31.    Second, ABC Funding charges nearly $43,000 a day in interest, or more than $1 million a month for a total of over $13 million during the pendency of the foreclosure action alone.  During the pendency of the foreclosure action, Miami Jai-Alai actually paid that interest every month – with some agreed upon exceptions – despite being declared in default.

32.     Third, ABC Funding actively sought to delay any possible Silvermark closing to allow it to argue that it is entitled to an additional and significant increase in Warrants when a nearby competitor, Hialeah Race Track Casino, begins slot operations, which in fact appears to have occurred on or about August 14, 2013.  This may entitle the Warrant holders to up to $7 million more.

33.     As of the Petition Date, Miami Jai-Alai was unable to obtain an acceptable payoff amount or estoppel letter setting forth the amounts due under the Loan Documents, including a per diem, and was unable to close the transaction with Silvermark.

34.     Miami Jai-Alai tried again and again to compel ABC to cooperate with the possible Silvermark transaction, and this chart shows just some of the many pleadings and hearings brought by Miami Jai-Alai to accomplish that:

| Date | Motion |
| --- | --- |
| **May 9, 2013** | Motion to Designate Investment Bank in Accordance With Terms of Credit Agreement and Warrant Agreement |
| **May 14, 2013** | Order Directing Parties to Mediation |
| **May 30, 2013** | Motion to Approve Employment and Retention of Jefferies LLC as Selected Investment Bank |
| **June 10, 2013** | Joint Stipulation (for retention of Jefferies) |
| **July 1, 2013** | Motion to Compel Plaintiff to Deliver Estoppel Letter |
| **July 9, 2013** | Emergency Motion to Compel ABC Funding, LLC to (i) Accept Full Payoff of All Amounts Due Under the Loan Documents, and (ii) to Execute and Provide All Closing Documents in |

|  | Connection with the Sale of Substantially All of Miami Jai-Alai Assets (the **"Payoff Motion"**) |
| --- | --- |
| **July 15, 2013** | Motion to Set Hearing on Reasonableness of Attorney's Fees Incurred by ABC Funding |
| **July 23, 2013** | First Case Management Conference on Payoff Motion |
| **July 24, 2013** | Second Case Management Conference on Payoff Motion |
| **July 24, 2013** | Order on Court's Case Management Conference |
| **August 12, 2013** | Order Compelling Delivery of Estoppel Letter and Satisfaction of Liens Upon Receipt of Full Payment – AFTER 4 HEARINGS BEFORE JUDGE BUTCHKO ON THE PAYOFF/ESTOPPEL ISSUES |

Again, ABC cannot honestly contend that it supported the Silvermark transaction, or that it had anything but a dishonest intent to stop any possible sale.

### CONCLUSION

35.    As the above makes clear, ABC's Trustee Motion is replete with falsehoods and misrepresentations. There is no basis to appoint a Trustee here, and no evidence of gross mismanagement, fraud, or dishonesty of any kind. There is ample evidence, however, of an abusive lender that believes it can manipulate Miami Jai-Alai – and now this Court.

Salazar Jackson, LLP                                         www.SalazarJackson.com

S  J

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true
and correct.

Executed on September 9, 2013

_____
DANIEL LICCIARDI

## Certificate of Service

I hereby certify that on September 9, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all parties identified on the Master Service List attached to the original hereof, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those parties who are not registered to receive notices electronically.

SALAZAR JACKSON, LLP
*Counsel for Florida Gaming Centers, Inc.,*
*Florida Gaming Corporation, Tara Club*
*Estates, Inc., and Freedom Holding, Inc.*
2 South Biscayne Boulevard, Suite 3760
Miami, Florida 33131
Phone:  (305) 374-4848
Fax:  (305) 397-1021
Email:  Salazar@SalazarJackson.com
Email:  Honaker@SalazarJackson.com

By:_____/s/ Luis Salazar_____
                    Luis Salazar
                    Florida Bar No. 147788
                    Aaron P. Honaker
                    Florida Bar No. 48749

**MASTER SERVICE LIST AS OF SEPTEMBER 6, 2013**
**Florida Gaming Centers, Inc. *et al.***

## DEBTORS

Florida Gaming Centers, Inc.
Florida Gaming Corporation
Freedom Holding, Inc.
Tara Club Estates, Inc.
Attn: W. Bennett Collett, Jr.
3500 NW 37th Avenue
Miami, FL 33142

## DEBTORS COUNSEL / PROFESSIONALS

Luis Salazar, Esq.
Linda Worton Jackson, Esq.
Aaron P. Honaker, Esq.
SALAZAR JACKSON, LLP
Two S. Biscayne Blvd., Suite 3760
Miami, FL 33131
Email: Salazar@SalazarJackson.com
Email: Jackson@SalazarJackson.com
Email: Honaker@SalazarJackson.com
*Counsel for Debtors*

VIA EMAIL ONLY
Robert W. Hudson, Esq.
HUDSON & CALLEJA, LLC
3211 Ponce de Leon Boulevard, Suite 102
Coral Gables, FL 33134
Email: rhudson@hudsoncalleja.com
*Proposed Special Counsel for Debtors*

VIA EMAIL ONLY
R. James Straus, Esq.
FROST BROWN TODD LLC
400 West Market Street, Suite 3200
Louisville, KY 40202-3363
Email: jstraus@fbtlaw.com
*Proposed Special Counsel for Debtors*

## U.S TRUSTEE

Office of the United States Trustee
51 Southwest First Avenue, Room 1204
Miami, FL 33130
Email: USTPRegion21.MM.ECF@usdoj.gov

## SECURED CREDITORS

Drew Dillworth
150 West Flagler Street
Miami, FL 33130
Email: ddillworth@stearnsweaver.com
*Local Counsel for ABC Funding, LLC*

Marissa D. Kelley, Eq.
Stearns Weaver Miller Weissler Alhadeff &
Sitterson, P.A.
200 East Las Olas Blvd., Suite 2100
Fort Lauderdale, FL 33301
Email: mkelley@stearnsweaver.com
*Counsel for ABC Funding, LLC*

Andrew F. O'Neill
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Email: aoneill@sidley.com
*Counsel for ABC Funding, LLC*

Dennis M. Twomey
 Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Email: dtwomey@sidley.com
*Counsel for ABC Funding, LLC*

ABC Funding, LLC
Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

1

**MASTER SERVICE LIST AS OF SEPTEMBER 6, 2013**
**Florida Gaming Centers, Inc. *et al.***

Canyon Distressed Opportunity Master
Fund, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon-GRF Master Fund II, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon Value Realization Fund, L.P.
c/o Canyon Capital Advisors LLC
Attn: Chaney Sheffield
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon Value Realization Master Fund, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

J.P. Morgan Securities LLC
Attn: Jason Kroll
383 Madison Avenue, 3rd Floor
New York, NY 10017

JPMorgan Chase Bank, N.A.
Attn: Jason Kroll
383 Madison Avenue, 3rd Floor
New York, NY 10017

Locust Street Funding LLC
c/o GSO/Blackstone Debt Funds Management
Attn: James Roche
345 Park Avenue, 31st Floor
New York, NY 10154

Summit Partners Subordinated Debt Fund IV-A,
L.P.
c/o Summit Partners Credit Advisors, L.P.
Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

Summit Partners Subordinated Debt Fund IV-
A, L.P.
Summit Partners Subordinated Debt Fund IV-
B, L.P.
ABC Funding, LLC
Attn: Summit Partners SD IV, L.P.,
Attn: Robin W. Devereux, General Partner
222 Berkeley Street, 18th Floor
Boston, MA 02116

Summit Partners Subordinated Debt Fund IV-B,
L.P.
c/o Summit Partners Credit Advisors, L.P.
Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

Ileana Cruz
Assistant County Attorney
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, FL 33128-1993
Email: ileanac@miamidade.gov
Email: cao.bkc@miamidade.gov
*Counsel for Miami Dade County-County Tax*
*Collector*

Miami Dade County Tax Collector
Darely Garcia-Lopez
c/o Miami Dade County Paralegal Unit
Miami Dade Bankruptcy Unit
140 West Flagler Street, Suite 1403
Miami, FL 33130-1575
Email: dgjp@miamidade.gov
Email: MDTCBKC@miamidade.gov

**MASTER SERVICE LIST AS OF SEPTEMBER 6, 2013**
**Florida Gaming Centers, Inc.** *et al.*

Thomas P. Abbott, Assistant County Attorney
PO Box 025504
Miami, FL 33102-5504
Facsimile: 305-876-7294
Email: TABBOTT@miami-airport.com

**20 Largest Creditors**

Andrew R. Herron, Esq. Herron Ortiz
255 Alhambra Circle, Suite 1060
Coral Gables, FL 33134
Email: aherron@herronortiz.com
Email: ndrubin@herronortiz.com
*Counsel for Miami Gaming Ventures, LLC*

Allied Health Plans
Attn: Vdayan Sen
9400 South Dadeland Blvd. Suite 510
Miami, FL 33156

American Gaming Systems, LLS
Attn: Lisa Begay-Jennings
6680 Amelia Earhart Court
Las Vegas, NV 89119

Aristocrat Technologies
Attn: Tatiana Janevski
7230 Amigo Street
Las Vegas, NV 89119

Andrea Neiman
1333 St. Tropez Circle #406
Weston, FL 33326

Broadridge ICS
 PO Box 416423
Boston, MA 02241

Chase Credit Cardmember
P.O. Box 94014
Palatine, IL 60094

Construct Design/Florida Lemark
20470 NW 94th Avenue
Miami, FL 33172
Continental Stock Transfer
17 Battery Place
New York, NY 10004

Cousins, Chipman, and Brown
The Nemours Building
Attn: Joseph Cicero
1007 North Orange Street, Ste 1110
Wilmington, DE 19801

Dania Jai-Alai
Attn: Clint Morris
301 East Dania Beach Blvd
P.O. Box 96
Dania, FL 33004

Derby Lane
Attn: Sandra Halbert
10490 Gandy Blvd. N.
Saint Petersburg, FL 33702

Edmunds Direct Mail, Inc.
Attn: K. Biglin
301 Tilton Road
Northfield, NJ 08225

Farmers Bank
P.O. Box 231
Hardinsburg, KY 40143

Freedom Financial Corporation
2669 Charlestown Road #D
New Albany, IN 47150

Florida Legislative Consultants, Inc.
Attn: Jim Tillman
522 East Jefferson Street
Tallahassee, FL 32302

**MASTER SERVICE LIST AS OF SEPTEMBER 6, 2013**
**Florida Gaming Centers, Inc. *et al.***

George Galloway
2399 Mountain Tops Road
Blue Ridge, GA 30513

Gulfstream Park
Attn: Carl Ng Mon
901 South Federal Highway
Hallandale, FL 33009

H. Hewitt Brown
600 East Main Street
Louisville, KY 40202

IGT-Eastern Operating
Attn: Dea Drummond
6355 South Buffalo Drive
Las Vegas, NV 89113

International Sound Corporation
Attn: Dale Walter
7130 Milford Industrial Rd.
Pikesville, MD 21208

James Stuckert/Solomon Howell
7308 Shadwell Lane
Prospect, KY 40059

Kim Tharp
2669 Charlestown Rd #D
New Albany, IN 47150

King & Company
Attn: Jim King
32400 Dutchmans Lane
Louisville, KY 40205

Miami Casino Management, LLC
Attn: Dave Jonas
21001 North Tatun Blvd. Suite 1630-256
Phoenix, AZ 85050

Palm Beach Kennel
Attn: Le Ruth DeMunn
1111 North Congress Avenue
West Palm Beach, FL 33409

Roberts Communication Network, Inc.
Attn: Joanne Colon
4175 Cameron Street Suite B-10
Las Vegas, NV 89103

Roland Howell Estate
Attn: Alex Rosa
555 NE 15th Street
Miami, FL 33132

Staples Credit Card
P.O. Box 689020
Des Moines, IA 50368

SHFL Entertainment, Inc.
Attn: Amy Lawrence
1106 Palms Airport Drive
Las Vegas, NV 89119

Sportech, Inc.
Attn: Albashir Haji
1095 Winward Ridge Parkway, Suite 170
Alpharetta, GA 30005

Tampa Bay Downs
Attn: Greg Gelyon
11225 Race Track Road
Tampa, FL 33626

Tom Tew
Four Seasons Tower
1435 Brickell Avenue 15th Floor
Miami, FL 33131

Vintage Filings
350 Hudson Street, Suite 300
New York, NY 10014

4

**MASTER SERVICE LIST AS OF SEPTEMBER 6, 2013**
**Florida Gaming Centers, Inc. *et al.***

William Haddon Estate
Attn: Betty Haddon
196 Atlanta Country Club Drive
SE Marietta, GA 30067

### GOVERNMENTAL AGENCIES / TAXING AUTHORITIES

Division of Alcoholic Beverages and Tobacco
Attn: Allen Douglas, Director
1940 North Monroe Street
Tallahassee, FL 32399
Facsimile: 850.922.5175

Division of Pari-Mutuel Wagering
Southern Division
1400 West Commercial Boulevard, Suite 165
Ft. Lauderdale, FL 33309-3787

Division of Pari-Mutuel Wagering
Attn: Leon M Biegalski, Director
1940 North Monroe Street
Tallahassee, FL 32399-1035
Facsimile: 850.488.0550

Florida Department of Revenue
Attn: Bankruptcy Unit
P.O Box 6668
Tallahassee, FL 32314-6668

Florida Department of Revenue
c/o Agency Clerk
501 S. Calhoun Street
Room 201, Carlton Building
Tallahassee, FL 32399

Florida Department of Revenue
8175 NW 12th St, Suite 119
Miami Service Center
Miami, FL 33126-1828

Florida Department of Revenue
5050 West Tennessee Street
Tallahassee, FL 32399-0100

Office of Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
Special Procedures- Insolvency
7850 SW 6th Court
Plantation, FL 33324

David Baddley
U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces N.E, Suite 900
Atlanta, GA 30326-1382
Email: atlreorg@sec.gov
*Counsel for U.S. Securities and Exchange Commission*

Securities and Exchange Commission
Eric I Bustillo, Regional Director
801 Brickell Ave., Suite 1800
Miami, FL 33131

Special Asst. U.S. Attorney
P.O. Box 9, Stop 8000
51 SW 1st Avenue, #1114
Miami, FL 33130

Special Asst. U.S. Attorney
IRS District Counsel
1000 S. Pine Island Rd., Ste 340
Plantation, FL 33324-3906

**MASTER SERVICE LIST AS OF SEPTEMBER 6, 2013**
**Florida Gaming Centers, Inc. *et al.***

Eric Holder, US Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**Parties in Interest**

VIA EMAIL ONLY
Lance A. Schildkraut, Esq.
DiConza Traurig LLP
630 Third Avenue, 7th Floor
New York, NY 10017
Email: las@dtlawgroup.com

VIA EMAIL ONLY
Gerald D. Kelly, Esq.
Claire E. W. Stewart, Esq.
SIDLEY AUSTIN, LLP
One South Dearborn Street
Chicago, IL 60603
Email:  gkelly@sidley.com

VIA EMAIL ONLY
Benjamin R. Nagin, Esq.
Adam McClay, Esq.
SIDLEY AUSTIN, LLP
787 Seventh Avenue
New York, NY 10019
Email: bnagin@sidley.com
Email: amcclay@sidley.com

VIA EMAIL ONLY
Alexander D. Silverman, Member
William S. Kogan, General Counsel
SILVERMARK LLC
430 Park Avenue, 5th Floor
New York, NY 10022
Email: alexs@andalex.com
Email:  wkogan@andalex.com

VIA EMAIL ONLY
Craig V. Rasile, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8539
Facsimile: (305) 437-8131
Email: craig.rasile@dlapiper.com
*Local Counsel for Silvermark, LLC*

VIA EMAIL ONLY
Andrew D. Zaron, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8523
Facsimile: (305) 437-8131
Email: andrew.zaron@dlapiper.com
*Local Counsel for Silvermark, LLC*

VIA EMAIL ONLY
Rachel Nanes, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Facsimile: (305) 437-8131
Email: rachel.nanes@dlapiper.com
*Lcoal Counsel for Silvermark, LLC*

Thomas R. Kreller
Milbank, Tweed, Hadley & McCloy LLP
601 South Figurerora Street, 30th Floor
Los Angeles, CA 90017
*Counsel for Silvermark, LLC*

VIA EMAIL ONLY
Linda A. Conahan
GUNSTER, YOAKLEY & STEWART, P.A.
450 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33301
Email:  lconahan@gunster.com

6

**MASTER SERVICE LIST AS OF SEPTEMBER 6, 2013**
**Florida Gaming Centers, Inc.** *et al.*

VIA EMAIL ONLY
Etan Mark, Esq.
BERGER SINGERMAN, LLP
1450 Birckell Avenue, Suite 1900
Miami, FL 33131
Email:  emark@bergersingerman.com
*Counsel for David Jonas*

VIA EMAIL ONLY
Christopher A. Jarvinen, Esq.
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
E-mail: cjarvinen@bergersingerman.com
*Counsel for David Jonas*

VIA EMAIL ONLY
David Jonas
4 Overlook Ct.
Medford, NJ 8055
Email:  davesjonas@gmail.com

Wells Fargo Bank Deposits Bankruptcy
Wells Fargo Bank NA
2701 NW Vaughn St, 5th Floor
Portland, OR 97210