MINUTES OF A SPECIAL MEETING
OF THE
BOARD OF DIRECTORS
OF
FLORIDA GAMING CORPORATION

A special meeting of the Board of Directors of Florida Gaming Corporation, a Delaware corporation (the "Corporation"), was held at 1:30 p.m. Eastern Daylight Time on March 25, 2011 in Duluth, Georgia pursuant to proper notice given to each Director. Present in person at the meeting were the following Directors:  W. Bennett Collett, W. Bennett Collett, Jr., William C. Haddon and George W. Galloway, M.D.

W. Bennett Collett, Chairman of the Board and Chief Executive Officer of the Corporation served as Chairman of the meeting.  W. Bennett Collett, Jr., President and Chief Operating Officer of the Corporation, served as Secretary of the meeting.

The Chairman called the meeting to order and declared that a quorum of Directors was present.

At the invitation of the Board, Matt Sodl, Kevin Scheible and Michael Hilcove of Innovation Capital (the "Innovation Representatives"), the Corporation's financial advisor, participated in the meeting via teleconference.  Also at the invitation of the Board, Daniel J. Licciardi, Executive Vice President and General Manager of the Corporation's subsidiary Florida Gaming Centers, Inc., and R. James Straus of Frost Brown Todd LLC, legal counsel to the Corporation, attended, and participated in, the meeting.  Jeff Stodghill of Frost Brown Todd participated in the meeting via teleconference.

Mr. Collett, with the assistance of Mr. Straus and the Innovation Representatives, led a discussion of the Corporation's current financial situation and its urgent need for a significant capital infusion.   Previous financing and investment proposals that ultimately were not consummated were discussed.  The Innovation Representatives discussed in detail a proposal from ABC Funding, LLC, a wholly-owned affiliate of Summit Partners Credit Advisors, L.P., to provide approximately $86.0 million in financing to the Corporation and its wholly-owned subsidiary Florida Gaming Centers, Inc. to enable the Corporation and its subsidiary to fund construction of a build-out of the Miami Jai Alai facility to facilitate slot machine gaming, refinance certain existing debt, and pay fees and expenses incurred in furtherance of the foregoing. With the assistance of the Innovation Representatives, Mr. Straus and Mr. Stodghill, the Directors discussed the Summary of Proposed Terms and Conditions related to the ABC Funding financing.    The Innovation Representatives left the meeting and the Directors, with the assistance of Mr. Straus and Mr. Stodghill, reviewed drafts of the principal documents to be entered into by the Corporation and its affiliates and discussed legal issues pertaining to the ABC Funding proposal.

After the discussions, the Directors adopted the following resolutions:

WHEREAS, the Directors have determined that it is in the best interests of the Corporation and its shareholders to cause the Corporation's wholly-owned subsidiary Florida Gaming Centers, Inc. ("Centers") to seek financing to (i) fund construction and improvement costs associated with the build-out of the Miami Jai-Alai facility (the "Facility") owned and operated by Centers to,

among other things, permit the operation by Centers of a slot machine gambling business, (ii) refinance certain existing debt of the Corporation and Centers, (iii) provide working capital to the Corporation and Centers, and (iv) pay fees and expenses incurred in accordance with the foregoing (collectively, the "Project"), and for the Corporation to take whatever steps as may be reasonably necessary for the Corporation to take to enable Centers to obtain such financing;

WHEREAS, the Corporation's investment banker Innovation Capital, LLC has secured a proposal from ABC Funding, LLC, a wholly-owned affiliate of Summit Partners Credit Advisors, L.P. ("ABC Funding"), to provide or arrange a Senior Secured Credit Facility in the amount of approximately $86,000,000 (the "Credit Facility") in general accordance with the terms and provisions outlined in the Summary of Proposed Terms and Conditions dated February 24, 2011(the "Proposal"), which has been provided to and reviewed by the Board; and

WHEREAS, the Board has determined that it is in the best interests of the Corporation and its shareholders for Centers to obtain the Credit Facility in accordance with the Proposal to complete the Project and for the Corporation to take such steps as are reasonably necessary to enable Centers to obtain the Credit Facility.

NOW, THEREFORE, IT IS:

RESOLVED, that the Corporation is authorized and directed to cause Centers to obtain the Credit Facility in general accordance with the Proposal and to initiate and complete the Project;

FURTHER RESOLVED, that the Corporation is authorized and directed to take such actions as are reasonably necessary to enable Centers to Obtain the Credit Facility;

FURTHER RESOLVED, that in furtherance of the foregoing and as contemplated in the Proposal, the Corporation is authorized and directed to enter into (i) a Credit Agreement among Centers, the Lenders Parties (as defined therein), ABC Funding, and the Corporation, (ii) a Guaranty Agreement whereby the Corporation guaranties Center's obligations under the Credit Agreement and the other agreements and instruments contemplated by the Credit Agreement and the Proposal, (iii) one or more Pledge and Security Agreements between the Corporation and ABC Funding pledging the Corporation's equity in Centers and Tara Club Estates, Inc. as security for the performance by the Corporation and Centers of their obligations in connection with the Credit Facility, and (iv) all other documents and instruments contemplated by the Credit Agreement and the Proposal or otherwise necessary to enable Centers to obtain the Credit Facility (collectively, the "Credit Facility Documents") in substantially the same form and substance as reviewed by the Directors;

FURTHER RESOLVED, that as required by the Proposal, the Credit Agreement and the Disbursement Agreement between Centers and ABC Funding, the Corporation is authorized and directed to enter into a Warrant Agreement with the Lenders Party pursuant to which on the date thereof the Corporation will issue warrants to the Lenders Party pursuant to which the Lenders Party may acquire up to 30% of the Corporation's common stock, which warrants will only be exercisable in the event Centers draws upon a specified $3,000,000 completion guaranty account and does not replace the completion guaranty amount within 30 days of the Project becoming out of balance;

FURTHER RESOLVED, that, as required by the Proposal, on the effective date of the Credit Agreement, the Corporation terminates its current consulting arrangement with Freedom Financial Corporation ("FFC") pursuant to which the Corporation is obligated to pay to FFC $65,000 per month, and replace it with a Consulting Agreement pursuant to which the Corporation is obligated to pay to FFC $300,000 per 12 month period beginning on the Opening Date as defined in the Credit Agreement, which amount shall be increased to $450,000 per 12 month period in the event Centers satisfies certain financial covenants set forth in the Credit Agreement;

FURTHER RESOLVED, that, as required by the proposal, the Corporation enter into a Modification Agreement with FFC pursuant to which the Corporation's accrued but unpaid liability to FFC of approximately $1,755,000 as of March 31, 2011 under the current consulting arrangement, together with the Corporation's accrued but unpaid general accounts payable to FFC of approximately $150,000 as of March 31, 2011, are converted into the unsecured note of the Corporation in FFC's favor in the original principal amount of approximately $1,905,000 with such note providing, at the Corporation's sole discretion, for the payment of interest in kind rather than in cash and for a maturity date in 2016 six months after the Maturity Date as defined in the Credit Agreement;

FURTHER RESOLVED, that effective simultaneously with the execution and delivery of the Credit Facility Documents by the Corporation, the Corporation accepts the resignation of W. Bennett Collett as the Chief Executive Officer of the Corporation, which resignation shall not affect Mr. Collett's status as a member and the Chairman of the Corporation's Board of Directors;

FURTHER RESOLVED, that effective simultaneously with the resignation of W. Bennett Collett, the Board elects W. Bennett Collett, Jr. as the President and Chief Executive Officer of the Corporation;

FURTHER RESOLVED, that the Corporation, in its capacity as the sole shareholder of Centers, directs that the Articles of Incorporation of Centers be amended so that, as amended, Article III thereof reads in its entirety as follows:

"The number of shares of stock that this corporation is authorized to have outstanding at any one time is 2,000 shares of stock at no par value."

FURTHER RESOLVED, that the number of Directors of Centers is set at four and W. Bennett Collett, W. Bennett Collett, Jr., William C. Haddon and George W. Galloway, M.D. are appointed as the Directors of Centers;

FURTHER RESOLVED, that each of W. Bennett Collett and W. Bennett Collett, Jr., acting alone, is authorized and directed, for and on behalf of the Corporation, to execute and deliver each of the Credit Facility Documents and all such other documents, instruments and agreements that are contemplated therein or necessary or appropriate to effect the intent thereof, each in such specific form as Mr. Collett or Mr. Collett, Jr. shall approve, and to take all such other actions as are necessary or appropriate to cause Centers to obtain the Credit Facility and to initiate and complete the Project.

FREEDOM HOLDING, INC.

Unanimous Written Action By Directors

The undersigned, all of the members of the Board of Directors of Freedom Holding, Inc., a Delaware corporation (the "Corporation"), adopt, and consent to the adoption of, the following Resolutions:

WHEREAS, the Directors have determined that it is in the best interests of the Corporation and its wholly-owned subsidiary Florida Gaming Corporation ("FGC") to cooperate with the efforts of FGC's wholly-owned subsidiary Florida Gaming Centers, Inc. ("Centers") to seek and obtain financing to (i) fund construction and improvement costs associated with the build-out of the Miami Jai-Alai facility (the "Facility") owned and operated by Centers to, among other things, permit the operation by Centers of a slot machine gambling business, (ii) refinance certain existing debt of the Corporation and Centers, (iii) provide working capital to the Corporation and Centers, and (iv) pay fees and expenses incurred in accordance with the foregoing (collectively, the "Project");

WHEREAS, FGC's and Center's investment banker Innovation Capital, LLC has secured a proposal from ABC Funding, LLC, a wholly-owned affiliate of Summit Partners Credit Advisors, L.P. ("ABC Funding"), to provide or arrange a Senior Secured Credit Facility in the amount of approximately $87,000,000 (the "Credit Facility") in general accordance with the terms and provisions outlined in the Summary of Proposed Terms and Conditions dated February 24, 2011(the "Proposal"); and

WHEREAS, the Board has determined that it is in the best interests of the Corporation and its shareholders for Centers to obtain the Credit Facility in accordance with the Proposal to complete the Project and for the Corporation to take such steps as are reasonably necessary to enable Centers to obtain the Credit Facility.

NOW, THEREFORE, IT IS:

RESOLVED, that the Corporation is authorized and directed to take such actions as are reasonably necessary to enable Centers to Obtain the Credit Facility;

FURTHER RESOLVED, that in furtherance of the foregoing and as contemplated in the Proposal, the Corporation is authorized and directed to enter into (i) a Guaranty Agreement whereby the Corporation guaranties Center's obligations under the Credit Agreement and the other agreements and instruments contemplated by the Credit Agreement and the Proposal, (ii) one or more Pledge and Security Agreements between the Corporation and ABC Funding pledging the assets of the Corporation as security for the performance by the Corporation and Centers of their obligations in connection with the Credit Facility, and (iii) all other documents and instruments contemplated by the Credit Agreement and the Proposal or otherwise necessary to enable Centers to obtain the Credit Facility (collectively, the "Credit Facility Documents"); and

FURTHER RESOLVED, that each of W. Bennett Collett and W. Bennett Collett, Jr., acting alone, is authorized and directed, for and on behalf of the Corporation, to execute and deliver each of the Credit Facility Documents and all such other documents, instruments and agreements that are contemplated therein or necessary or appropriate to effect the intent thereof, each in such specific form as Mr. Collett or Mr. Collett, Jr. shall approve, and to take all such other actions as are necessary or appropriate to cause Centers to obtain the Credit Facility and to initiate and complete the Project.


_____

W. Bennett Collett


_____

W. Bennett Collett, Jr.


Dated:  March 31, 2011

TARA CLUB ESTATES, INC.

<u>Unanimous Written Action By Directors</u>

The undersigned, all of the members of the Board of Directors of Tara Club Estates, Inc., a Georgia corporation (the "Corporation"), adopt, and consent to the adoption of, the following Resolutions:

WHEREAS, the Directors have determined that it is in the best interests of the Corporation and its sole shareholder Florida Gaming Corporation ("FGC") to cooperate with the efforts of FGC's wholly-owned subsidiary Florida Gaming Centers, Inc. ("Centers") to seek and obtain financing to (i) fund construction and improvement costs associated with the build-out of the Miami Jai-Alai facility (the "Facility") owned and operated by Centers to, among other things, permit the operation by Centers of a slot machine gambling business, (ii) refinance certain existing debt of the Corporation and Centers, (iii) provide working capital to the Corporation and Centers, and (iv) pay fees and expenses incurred in accordance with the foregoing (collectively, the "Project");

WHEREAS, FGC's and Center's investment banker Innovation Capital, LLC has secured a proposal from ABC Funding, LLC, a wholly-owned affiliate of Summit Partners Credit Advisors, L.P. ("ABC Funding"), to provide or arrange a Senior Secured Credit Facility in the amount of approximately $87,000,000 (the "Credit Facility") in general accordance with the terms and provisions outlined in the Summary of Proposed Terms and Conditions dated February 24, 2011(the "Proposal"); and

WHEREAS, the Board has determined that it is in the best interests of the Corporation and its shareholder for Centers to obtain the Credit Facility in accordance with the Proposal to complete the Project and for the Corporation to take such steps as are reasonably necessary to enable Centers to obtain the Credit Facility.

NOW, THEREFORE, IT IS:

RESOLVED, that the Corporation is authorized and directed to take such actions as are reasonably necessary to enable Centers to Obtain the Credit Facility;

FURTHER RESOLVED, that in furtherance of the foregoing and as contemplated in the Proposal, the Corporation is authorized and directed to enter into (i) a Guaranty Agreement whereby the Corporation guaranties Center's obligations under the Credit Agreement and the other agreements and instruments contemplated by the Credit Agreement and the Proposal, (ii) one or more Pledge and Security Agreements between the Corporation and ABC Funding pledging the assets of the Corporation as security for the performance by the Corporation and Centers of their obligations in connection with the Credit Facility, and (iii) all other documents and instruments contemplated by the Credit Agreement and the Proposal or otherwise necessary to enable Centers to obtain the Credit Facility (collectively, the "Credit Facility Documents"); and

FURTHER RESOLVED, that each of W. Bennett Collett and W. Bennett Collett, Jr., acting alone, is authorized and directed, for and on behalf of the Corporation, to execute and deliver each of the Credit Facility Documents and all such other documents, instruments and agreements that are contemplated therein or necessary or appropriate to effect the intent thereof, each in such specific form as Mr. Collett or Mr. Collett, Jr. shall approve, and to take all such other actions as are necessary or appropriate to cause Centers to obtain the Credit Facility and to initiate and complete the Project.

_____

W. Bennett Collett

_____

W. Bennett Collett, Jr.

_____

George W. Galloway, M.D.

Dated: March 31, 2011

FURTHER RESOLVED, that each of W. Bennett Collett and W. Bennett Collett, Jr., acting alone, is authorized and directed, for and on behalf of the Corporation, to execute and deliver each of the Credit Facility Documents and all such other documents, instruments and agreements that are contemplated therein or necessary or appropriate to effect the intent thereof, each in such specific form as Mr. Collett or Mr. Collett, Jr. shall approve, and to take all such other actions as are necessary or appropriate to cause Centers to obtain the Credit Facility and to initiate and complete the Project.


_____

W. Bennett Collett


_____

W. Bennett Collett, Jr.


_____

George W. Galloway, M.D.


Dated: March 31, 2011

FURTHER RESOLVED, that each of W. Bennett Collett and W. Bennett Collett, Jr., acting alone, is authorized and directed, for and on behalf of the Corporation, to execute and deliver each of the Credit Facility Documents and all such other documents, instruments and agreements that are contemplated therein or necessary or appropriate to effect the intent thereof, each in such specific form as Mr. Collett or Mr. Collett, Jr. shall approve, and to take all such other actions as are necessary or appropriate to cause Centers to obtain the Credit Facility and to initiate and complete the Project.

_____

W. Bennett Collett

•

_____

W. Bennett Collett, Jr.

George W. Galloway, M.D.

Dated: March 31, 2011

•

LOULibrary 0060KXE.0228967  1039998v1

012/945/2217

## Schedule II

### Disclosed Matters

1.    West Flagler Associates et. al. v. Florida Gaming Centers, Inc., Miami-Dade County Circuit Court, Action No. 2009-91853-CA-01.

2.    Isle of Capri Casinos v. Florida Gaming Corporation et. al., Palm Beach County Circuit Court, Action No. 50-2010CA004440xxxx MB.

3.    Isle of Capri Casinos v. Florida Gaming Corporation et. al., St. Luci County Circuit Court, Action No. 56-2010CA001462.

4.    Pending Fort Pierce Jai Alia employee Molz-Lara discrimination charge.

5.    CCLN, LLC v. Florida Gaming Corporation, Miami-Dade County Circuit Court, Action No. 2011-4658-CA-01.

6.    Patricia D. Malcom, Walton County Tax Commissioner v. Tara Club Estates, Inc., Walton County Superior Court, Action No. 190017, judgment in the amount of $486.52.

7.    Perez v. Florida Gaming Centers, Inc., et. al, Miami-Dade County Circuit Court, Action No. 2010-61585-CA-01.

8.    Dames v. Florida Gaming Centers, Inc., Miami-Dade County Circuit Court, Action No. 2011-5272-CA-01.

## Schedule III

**Certificates of Good Standing**

# State of Florida
## Department of State

I certify from the records of this office that FLORIDA GAMING CENTERS, INC. is a corporation organized under the laws of the State of Florida, filed on October 17, 1996.

The document number of this corporation is P96000085895.

I further certify that said corporation has paid all fees due this office through December 31, 2010, that its most recent annual report was filed on April 23, 2010, and its status is active.

I further certify that said corporation has not filed Articles of Dissolution.

*Given under my hand and the Great Seal of Florida, at Tallahassee, the Capital, this the Fifteenth day of March, 2011*

**Secretary of State**



Authentication ID: **200198038972-031511-P96000085895**

To authenticate this certificate, visit the following site, enter this ID, and then follow the instructions displayed.
**https://efile.sunbiz.org/certauthver.html**

# Delaware

PAGE 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "FLORIDA GAMING CORPORATION" IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-FOURTH DAY OF MARCH, A.D. 2011.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "FLORIDA GAMING CORPORATION" WAS INCORPORATED ON THE SIXTH DAY OF FEBRUARY, A.D. 1976.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE BEEN FILED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE BEEN PAID TO DATE.

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 8645849

DATE: 03-24-11

0821026   8300

110335013

You may verify this certificate online
at corp.delaware.gov/authver.shtml



*The First State*

PAGE  1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "FREEDOM HOLDING, INC." IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE FIFTEENTH DAY OF MARCH, A.D. 2011.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "FREEDOM HOLDING, INC." WAS INCORPORATED ON THE TWENTY-FIRST DAY OF DECEMBER, A.D. 1992.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE BEEN PAID TO DATE.

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION:  8624391

2320626   8300

110300133

DATE:  03-15-11

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Control No.   **K802985**

# STATE OF GEORGIA
## Secretary of State
Corporations Division
315 West Tower
#2 Martin Luther King, Jr. Dr.
Atlanta, Georgia 30334-1530

# CERTIFICATE
# OF
# EXISTENCE

I, Brian P. Kemp, Secretary of State and the Corporations Commissioner of the state of Georgia, hereby certify under the seal of my office that

## TARA CLUB ESTATES, INC.

### Domestic Profit Corporation

was formed or was authorized to transact business on 01/14/1998 in Georgia. Said entity is in compliance with the applicable filing and annual registration provisions of Title 14 of the Official Code of Georgia Annotated and has not filed articles of dissolution, certificate of cancellation or any other similar document with the office of the Secretary of State.

This certificate relates only to the legal existence of the above-named entity as of the date issued. It does not certify whether or not a notice of intent to dissolve, an application for withdrawal, a statement of commencement of winding up or any other similar document has been filed or is pending with the Secretary of State.

This certificate is issued pursuant to Title 14 of the Official Code of Georgia Annotated and is prima-facie evidence that said entity is in existence or is authorized to transact business in this state.



WITNESS my hand and official seal of the City of Atlanta and the State of Georgia on 16th day of March, 2011

*B. P. Kemp*

Brian P. Kemp
Secretary of State

Certification Number: 6907576-1    Reference: 545265
Verify this certificate online at http://corp.sos.state.ga.us/corp/soskb/verify.asp



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFICATE OF CORPORATE EXISTENCE

I, John Walsh, Acting Comptroller of the Currency, do hereby certify that:

1. The Comptroller of the Currency, pursuant to Revised Statutes 324, et seq., as amended, 12 U.S.C. 1, et seq., as amended, has possession, custody and control of all records pertaining to the chartering, regulation and supervision of all National Banking Associations.

2. "City National Bank of Florida," Miami, Florida, (Charter No. 15977), is a National Banking Association formed under the laws of the United States and is authorized thereunder to transact the business of banking on the date of this Certificate.

IN TESTIMONY WHERE OF, I have

hereunto subscribed my name and caused

my seal of office to be affixed to these

presents at the Treasury Department, in the

City of Washington and District of

Columbia, this March 17, 2011.



John Walsh

_____

Acting Comptroller of the Currency

EXHIBIT B-2

FORM OF OPINION OF INFANTE, ZUMPANO, HUDSON & MILOCH, LLC, HOLDINGS'
AND BORROWER'S FLORIDA COUNSEL

Attached.

# INFANTE, ZUMPANO, SALAZAR & MILOCH, LLC.

500 SOUTH DIXIE HIGHWAY, SUITE 302, CORAL GABLES, FLORIDA 33146
T: 305.503.2990  F: 305.774.5908  W: www. InfanteZumpano.com

April 25, 2011

ABC Funding, LLC as Administrative Agent, and
the below-defined Lenders

Ladies and Gentlemen:

Reference is hereby made to the Credit Agreement, dated as of April 25, 2011, by and among Florida Gaming Centers, Inc. (the "Borrower"), Florida Gaming Corporation ("Holdings"), the Lenders from time to time party thereto (the "Lenders"), and ABC Funding, LLC, as Administrative Agent (the "Agent"). Each capitalized term used herein and not defined herein shall have the meaning ascribed thereto in the Credit Agreement.

We have acted as special Florida legal counsel to the Borrower in connection with the $87,000,000 term loan credit facility evidenced by the Credit Agreement. This opinion has been delivered to the Agent and Lenders pursuant to Section 4.01(c) of the Credit Agreement.

In connection with such representation, we have examined and are familiar with the following documents and instruments, each executed and dated as of the date of this letter unless otherwise noted below:

1.      Credit Agreement.

2.      Disbursement Agreement.

3.      Credit Party Guaranty made in favor of the Administrative Agent by Freedom Holding, Inc. ("Freedom Holding"), Tara Club Estates, Inc. ("Tara"), Holdings, and City National Bank of Florida, a national banking corporation, as trustee of Trust Number 5003471 under that certain Land Trust Agreement dated January 3, 1979 ("Trust"; together with Holdings, Freedom Holding, and Tara, the "Guarantors"; the "Guarantors", together with the Borrower, the "Borrowing Entities").

4.      Pledge and Security Agreement (the "Security Agreement").

5.      Term Loan Notes made by the Borrower in favor of the Lenders (the "Notes").

6.      Freedom Pledge Agreement.

7.     Holdings Pledge Agreement made by Freedom Holding in favor of the Administrative Agent.

8.     Mortgage, Absolute Assignment of Rents, Security Agreement, and Fixture Filing by Trust and Borrower in favor of the Agent against real property located in Miami-Dade County, Florida (the "Borrower Mortgage").

9.     Mortgage, Absolute Assignment of Rents, Security Agreement, and Fixture Filing by Trust in favor of Agent against real property located in Miami-Dade County, Florida.

10.     Mortgage, Absolute Assignment of Rents, Security Agreement, and Fixture Filing by Holdings in favor of Agent against real property located in St. Lucie, Florida.

11.     Mortgage, Absolute Assignment of Rents, Security Agreement, and Fixture Filing by Borrower in favor of Agent against real property located in St. Lucie, Florida.

12.     Collateral Assignment of Beneficial Interest Under Land Trust Agreement, from Borrower to and for the benefit of the Agent.

13.     Assignment of Construction and Development Documents, by and between Borrower and Holdings and the Agent.

14.     Collateral Assignment of Development Agreement, by and between Borrower, d/b/a Mimi Jai Alai, Inc. d/b/a W.J.A. Realty, Inc., and the Agent.

15.     Collateral Assignment of Settlement Agreement Documents, by and between Borrower d/b/a Mimi Jai Alai, Inc., d/b/a W.J.A. Realty, Inc. and Trust and the Agent.

16.     Environmental Indemnity Agreement, by and between Borrower and Holdings in favor of the Agent relating to real property located in St. Lucie, Florida.

17.     Environmental Indemnity Agreement, by and between Borrower and Trust, in favor of the Agent relating to real property located in Miami-Dade, Florida.

18.     UCC Fixture Filing naming Borrower and Trustee as debtor and ABC Funding, LLC, as agent, as secured party (Miami-Dade County).

19.  UCC Fixture Filing naming Trustee as debtor and ABC Funding, LLC, as agent, as secured party (Miami-Dade County).

20.  UCC Fixture Filing naming Borrower as debtor and ABC Funding, LLC, as agent, as secured party (St. Lucie County).

21.  UCC Fixture Filing naming Borrower and Holdings as debtor and ABC Funding, LLC, as agent, as secured party (St. Lucie County).

22.  Warrant Agreement dated as of April 25, 2011 (the "Warrant Agreement") among Borrower, Holdings and the Holders named therein and the warrants issued pursuant thereto (the "Warrants")

23.  UCC-1 financing statement naming the Borrower as debtor and the Administrative Agent as secured party for filing with the Florida Secured Transactions Registry, the form of which is attached hereto as Exhibit A (the "FL Financing Statement")

Collectively, items 8-11 above are referred to herein as the "Florida Real Estate Documents". The Mortgages, Absolute Assignment of Rents, Security Agreement and Fixture Filings identified in numbers 8,9,10 and 11 above are collectively referred to hereinafter as the "Mortgages". The UCC Fixture Filings identified in numbers 18, 19, 20, and 21 above are collectively referred to hereinafter as the "Fixture Filings". The real property that is the subject of the Mortgages is hereinafter referred to as the "Florida Real Property". Collectively, the agreements and instruments listed in items 1 - 23 (inclusive), above are referred to herein as the "Transaction Documents".

Scope of Review.

        In rendering our opinion we have reviewed only the Transaction Documents and such provisions of Florida rules, regulations and procedures and Florida Statutes that pertain to the matters stated herein.

Reliance Without Investigation.

        We understand that with respect to title matters, you will be relying on the title insurance policy issued to you by the title insurance company. We have not made any investigation of and do not express an opinion as to, any matters of title to any property (whether real, personal or mixed). We do not opine as to the priority of any lien, claim or other encumbrance on any property (whether real or personal or mixed), whether existing now or in the future. We assume that the Borrowing Entities are the fee simple owners of the property identified in the Florida Real Estate Documents and that correct and proper legal descriptions will be attached to the Mortgages.

INFANTE, ZUMPANO, SALAZAR & MILOCH, LLC.
500 SOUTH DIXIE HIGHWAY, SUITE 302, CORAL GABLES, FLORIDA 33146
T: 305.503.2990  F: 305.774.5908  W: www. InfanteZumpano.com

<u>Assumptions</u>.

In preparing this opinion:

i.      We have assumed the legal competency of all individual signers of documents.

ii.     We have assumed that all signatures of parties to the Transaction Documents (including each of the Borrowing Entities) are genuine.

iii.    Other than as set forth in opinion paragraph numbers 1-4, we have assumed (a) that all parties to the Transaction Documents (including each of the Borrowing Entities) are duly organized, validly existing and in good standing under the laws of their respective jurisdictions of formation; (b) that all parties to the Transaction Documents (including each of the Borrowing Entities) have the power and authority to enter into and to execute, deliver and perform their respective obligations under the Transaction Documents to which they are a party; (c) that the Transaction Documents have been duly authorized, executed and delivered by each of the parties thereto (including each of the Borrowing Entities); (d) that the persons who executed, acknowledged and delivered the Transaction Documents on behalf of each of the parties thereto (including each of the Borrowing Entities) were duly authorized to do so by each such party; (e) that the Transaction Documents are valid, binding and enforceable against the Lenders and any other parties; and (f) that the Lenders have advanced Loans or are obligated to do so, or have otherwise given "value" as defined in the Uniform Commercial Code sufficient to support the attachment of the Administrative Agent's security interest.

iv.     In those cases where we have examined copies of documents, we have assumed that those copies are complete and accurate.  We have also assumed that all public records are accurate and complete.

v.      We have assumed that the Borrower and each of the Guarantors holds the requisite title and rights to the Florida Real Property and the collateral identified in each of their respective Mortgages, the Security Agreement, and the FL Financing Statement to which they are a party.

vi.     We have assumed that there has not been any mutual mistake of fact or misunderstanding, fraud, duress or undue influence.

vii.    We have assumed that the conduct of the parties to the Loans has complied with any requirement of good faith, fair dealing and conscionability.

viii.   We have assumed that the Transaction Documents accurately reflect the complete understanding of the parties with respect to the transactions contemplated thereby and the rights and obligations of the parties thereunder and there are no

agreements or understandings among the parties, written or oral, and there is no usage of trade or course of prior dealing among the parties that would, in either case, define, supplement or qualify the terms of the Transaction Documents.

ix.    We have assumed that the Mortgages and the FL Financing Statement have been or will be duly recorded and/or filed and indexed in all places necessary (if and to the extent necessary) to create the encumbrance and lien as provided therein.

x.    We have assumed that the Transaction Documents have been signed by each party thereto with the intention to be presently binding upon the respective parties.

xi.    We have relied to the extent we deemed such reliance proper upon the representations and warranties of the parties to the Transaction Documents, certificates of public officers and certificates and other written statements of officers of the Borrower and the Guarantors, including without limitation, the Officer's Certificate, Unanimous Written Consent of the Board of Directors of Florida Gaming Centers, Inc. and Trustee Affidavit supporting Infante, Zumpano, Salazar & Miloch, LLC opinion attached hereto as Exhibit "B".

Opining Jurisdiction

We express no opinion with respect to the laws of any jurisdiction other than the law of the State of Florida.

Opinions

Based upon the foregoing and subject to the qualifications stated herein, we are of the opinion that, as of the date hereof:

1.    Borrower is a corporation organized under the laws of the State of Florida and its corporate status is active.

2.    Borrower has the corporate power to execute, deliver and perform its obligations under the Transaction Documents to which it is a party.

3.    Borrower has taken all necessary corporate action to authorize its execution and delivery of, and performance of its obligations under, the Transaction Documents to which it is a party.

4.    Each Transaction Document to which Borrower is a party has been duly executed and delivered on behalf of Borrower.  Each of the Transaction Documents to which

Borrower is a party, to the extent that such Transaction Document is governed by the laws of Florida, constitutes a valid and binding obligation of Borrower enforceable against Borrower in accordance with its terms.

5.    Each Borrowing Entity's execution, delivery and performance of the Transaction Documents to which it is a party will not violate any law, statute or regulation of the State of Florida (including, without limitation, any usury laws).  For purposes of this opinion, we have assumed that the effective interest rate under the Loans together and any individual Loan (taking into account all sums, however labeled, that are reserved, charged or taken for the use of money) will not at any time exceed twenty-five percent (25%) per annum, calculated on the basis of a year of 365 days (or 366 days, as applicable).

6.    Each of the Mortgages to which Borrower or the Trust are a party constitutes the legal, valid and binding obligation of such entities, enforceable against such entities in accordance with its terms.

7.    Except for the filing of the FL Financing Statement and the Fixture Filings, the recordation requirements described in Paragraph 9 herein, and consents, approvals, licenses, permits and other authorizations required due to the nature of the Borrowing Entities' business, no consent, approval or authorization of, or registration, filing or declaration with any Florida state governmental authority or other Florida regulatory agency is required under any Florida law, statute or regulation for the valid execution or delivery by any Borrowing Entity of the Transaction Documents to which it is a party or the performance by such Borrowing Entity of its obligations thereunder, except any such consent, approval, authorization, registration, filing or declaration which has been obtained or made and remains in effect.

8.    The FL Financing Statement is in an acceptable form for filing with the Florida Secured Transaction Registry (the "Filing Office").  Assuming the Security Agreement creates, in favor of the Agent, a valid security interest in the "Collateral" under and as defined in the Security Agreement, upon the proper filing with the Filing Office of the FL Financing Statement, the Agent will have a perfected security interest in such portion of the Collateral in which, and only to the extent that a security interest therein may be perfected by the filing of a financing statement in the State of Florida under Article 9 of the Florida Uniform Commercial Code.

9.    Each Mortgage is in appropriate form for recordation as a mortgage on the Florida Real Property in the State of Florida, and upon proper recordation and indexing with the Office of the County Records, Miami-Dade County, Florida and Office of the County Records, St. Lucie County, Florida, as applicable ("Recording Office").  Each Mortgage will create a valid and perfected lien of record on the Florida Real Property to which it refers in favor of Agent as security for the Obligations.

10.    Each Mortgage is sufficient to create a security interest under the Florida UCC in that portion of the Property (as defined in such Mortgage) that consists of personal

property in which a security interest may be created under Article 9 of the Florida UCC. Our opinions in this paragraph 10 regarding the creation of security interests are limited to Article 9 of the Uniform Commercial Code in effect in Florida, and therefore, the opinions do not address laws of jurisdictions other than Florida, nor laws of Florida other than Article 9 of the Florida Uniform Commercial Code, nor collateral of a type that is not subject to Article 9 of said Uniform Commercial Code, nor the ability to foreclose any secured interest in the Property.

11. The Fixture Filings, when properly recorded and indexed in the applicable Recording Office, will constitute and be effective to create under the laws of the State of Florida a valid and perfected lien of record in favor of Agent, as agent for the Lenders, on the portion of the Property constituting fixtures under Florida law.

12. Except for the recordation and filing described in Paragraph 9 above, no recordations or filings need be made, nor other action taken, in order to perfect the lien of the Mortgages against the Florida Real Property located in the county of recordation of such Mortgages.

13. Pursuant to Section 201.08(1)(b), Florida Statutes, documentary stamp taxes are imposed upon a new mortgage at the rate of $0.35 per $100.00 (or fraction thereof). Pursuant to Section 199.133(1), Florida Statutes, non-recurring intangible taxes are imposed upon a note which is secured by a mortgage upon real property situated in the state of Florida at the rate of $0.20 per $100.00. Other than the payment of the documentary stamp taxes and non-recurring intangible taxes, as described above, and nominal recording fees, there are no other charges that need to be paid to place the Mortgages of record. No such documentary stamp taxes or non-recurring intangible taxes are required to be paid with respect to any other Transaction Document.

14. Agent is not required to be qualified to do business, or file any designation for service of process, or file any reports with, or pay any taxes to, the State of Florida solely by reason of the holding of the Mortgages.

15. Assuming that enough shares of common stock of the Borrower have been duly authorized and reserved for issuance upon exercise of the Warrants, such shares, when issued and paid for upon such exercise in accordance with the terms of the Warrants, will be validly issued, fully paid and nonassessable.

16. The Credit Agreement and the Notes (the "Relevant Agreements") provide that the Relevant Agreements shall be governed by the laws of the State of New York. Based on the assumption that the Relevant Agreements have a "normal and reasonable relation" (as such phrase has been interpreted by Florida courts) to the laws of the State of New York and although the issue is not free from doubt, it is our opinion that if the matter were presented today to a court in Florida having jurisdiction, and assuming the interpretation of the relevant law on a basis consistent with existing authority, it is more likely than not that a Florida court (or a Federal court applying Florida choice of law rules) would conclude that the designation of the laws of State of New York as the governing law of the Relevant Documents with respect to usury laws would be upheld.

## Qualifications

Notwithstanding any provision in this opinion to the contrary, each of the opinions and confirmations set forth in this opinion is subject to the following additional qualifications:

A.    No opinions should be implied beyond those expressly stated in this opinion.  Without limiting the generality of the preceding sentence, unless explicitly addressed in this opinion, the opinions and confirmations set forth in this opinion do not address any of the following legal issues, and we specifically express no opinion with respect thereto:

i.      securities laws and regulations administered by the Securities and Exchange Commission (other than the Public Utility Holding Company Act of 1935), state "Blue Sky" laws and regulations, and laws and regulations relating to commodity (and other) futures and indices and other similar instruments;

ii.     Federal Reserve Board margin regulations;

iii.    Pension and employee benefit laws and regulations (*e.g.*, ERISA);

iv.    Antitrust and unfair competition laws and regulations;

v.     Laws and regulations concerning filing and notice requirements (*e.g.*, Hart-Scott-Rodino and Exon-Florio), other than requirements applicable to charter-related documents such as a certificate of merger;

vi.    Compliance with fiduciary duty requirements;

vii.   Environmental laws and regulations;

viii.  Zoning, land use, condominium, cooperative, subdivision, construction and other development laws and regulations;

ix.    Tax laws and regulations;

x.     Patent, copyright and trademark, state trademark, and other Federal and state intellectual property laws and regulations;

xi.    Racketeering laws and regulations (*e.g.*, RICO);

xii.   Health and safety laws and regulations (*e.g.*, OSHA);

xiii.  Labor laws and regulations;

xiv.   Laws, regulations and policies concerning (i) national and local emergency, (ii) possible judicial deference to acts of sovereign states, and (iii) criminal and civil forfeiture laws;

xv.    Laws, regulations and policies concerning gaming pari-mutuel, gambling, slot machines and liquor laws, including without limitation, any local ordinances, restrictions or other provisions;

xvi.    The validity, enforceability or legality of the provisions of the Florida Real Estate Documents pertaining to late charges or fees, forfeitures, liquidated or other pre-measured damages or limitations thereon, and usury laws (except in Paragraph 5 above) or any prepayment premiums or charges;

xvii.    The validity, enforceability or legality of the provisions of the Florida Real Estate Documents pertaining to transfer, assignment, encumbrance or foreclosure of an interest in any property, tangible or intangible, that is prohibited from being transferred, assigned, encumbered or foreclosed under any governmental or contractual statute, regulation, rule or other prohibition;

xviii.    Title to any property, the characterization of any property as real property, personal property or fixtures, or the accuracy or sufficiency of any description of collateral or other property; and

xix.    Rank or priority of any lien or security interest, the efficacy of the Mortgage in encumbering any after-acquired real property.


B.    Each of the opinions and confirmations set forth in this opinion is subject to the effect of generally applicable rules of law that:

i.    Provide the obligations of good faith, fair dealing, diligence, and reasonableness;

ii.    Provide that forum selection clauses in contracts are not necessarily binding on the court(s) in the forum selected;

iii.    Limit the availability of a remedy under certain circumstances where another remedy has been elected;

iv.    Limit the right of a creditor to use force or cause a breach of the peace in enforcing rights;

v.    Relate to the sale or disposition of collateral or the requirements of a commercially reasonable sale, including, without limitation, statutory cure provisions and rights of reinstatement and limitations on deficiency judgments and the inability to secure or dispose of certain types of collateral;

vi.    Limit the enforceability of provisions releasing, exculpating or exempting a party from, or requiring indemnification of a party for, liability for its own action or inaction, to the extent the action or inaction involves gross negligence, recklessness, willful misconduct or unlawful conduct;