IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:                                     Chapter 11

FLORIDA GAMING CENTERS,                    Case No. 13-29597-RAM
INC., et al.,[1]
                                           (Jointly Administered)
Debtors.

### Application For Entry Of An Order Authorizing Retention And Employment of Guggenheim Securities, LLC As Investment Banker To The Debtors, *Nunc Pro Tunc* To November 8, 2013

Debtors, Florida Gaming Centers, Inc., Florida Gaming Corporation, Tara Club Estates, Inc., and Freedom Holding, Inc. (collectively, **"Miami Jai-Alai"**), apply for the entry of an order, pursuant to Bankruptcy Code Sections 327(a) and 328(a), Bankruptcy Rules 2014 and 2016, and Local Rules 2016-1 and 9075-1, authorizing the employment and retention of Guggenheim Securities, LLC (**"Guggenheim"**), as investment banker to Miami Jai-Alai (the "**Application**"). The facts and circumstances supporting this Application are set forth herein and in the Affidavit of Alex C. Fisch (the "**Fisch Affidavit**") attached hereto as **Exhibit "A**." In support of this Application, Miami Jai-Alai respectfully states:

### Preliminary Statement

1.      Miami Jai-Alai seeks authority to retain and employ Guggenheim as its investment banker to assist Miami Jai-Alai in evaluating, among other things, its strategic options with respect to a sale of Debtor, Florida Gaming Centers, Inc.'s business and related assets.

---

[1] The debtors in these chapter 11 cases and the last four digits of their federal tax identification number are: Florida Gaming Corporation (0533), Florida Gaming Centers, Inc. (5893), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

2.    On October 28, 2013, this Court issued the *Final Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protections; and (III) Granting Other Related Relief* entered in the main case on October 28, 2013 (ECF No. 201) (the **"Final Cash Collateral Order"**), in connection with Miami Jai-Alai's use of cash collateral.

3.    The Final Cash Collateral Order establishes various obligations, deadlines and milestones in order for Miami Jai-Alai to continue to be authorized to use cash collateral.  Among other things, Miami Jai-Alai must "file with the Court by November 8, 2013 a motion to retain an investment banker to conduct a sale of Centers' assets pursuant to section 363 of the Bankruptcy Code."  See Final Cash Collateral Order at ¶ 12(h)(1), page 14.

4.    Miami Jai-Alai has selected Guggenheim as its investment banker pursuant to the terms of the Final Cash Collateral Order and, for the reasons set forth herein, submits that Guggenheim has the required qualifications, experience, resources and capabilities to serve as investment banker to Miami Jai-Alai in these Chapter 11 cases.

## JURISDICTION

5.    The Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

6.    The predicates for the relief requested herein are 11 U.S.C. § 327(a) and 328(a) and Bankruptcy Rules 2014 and 2016.

## BACKGROUND

7.    On August 19, 2013, Miami Jai-Alai, along with three affiliated entities, commenced these voluntary Chapter 11 cases.  Miami Jai-Alai is authorized to continue to operate its businesses and manage its properties as debtor-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

2

8.      On September 9, 2013, the Office of the United States Trustee appointed the Joint Committee of Creditors Holding Unsecured Claims (ECF No. 90) as to debtors Florida Gaming Centers, Inc., Case No. 13-29597-RAM, and Florida Gaming Corporation, Case No. 13-29598-RAM.

## RELIEF REQUESTED

9.      Miami Jai-Alai seeks entry of an order, pursuant to Bankruptcy Code Section 327(a) and Bankruptcy Rules 2014 and 2016, authorizing Guggenheim's retention and employment as investment banker, and obtaining approval of the terms under which Guggenheim will be compensated, as an expense of Miami Jai-Alai's estates pursuant to Bankruptcy Code Section 328(a) and on substantially the same terms set forth in the Engagement Letter, dated November 8, 2013, between Miami Jai-Alai and Guggenheim (the "**Engagement Letter**").  A copy of the Engagement Agreement is attached hereto as **Exhibit "B**."

## BASIS FOR RELIEF

10.     Under Bankruptcy Code Sections 327 and 328, a debtor-in-possession may employ professionals that do not hold or represent an interest adverse to the estate and that are disinterested persons, to assist the debtors in carrying out their duties under the Bankruptcy Code.  Specifically, Bankruptcy Code Section 328(a) provides that:

> The [Debtor] . . . with the court's approval, may employ or authorize the employment of a professional person under Section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a).  Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, and any other party in interest, their respective attorneys and accountants, the United States Trustee, or any other person employed in the office of the United States Trustee.

Fed. R. Bankr. Proc. 2014.

11.     By this Application, Miami Jai-Alai requests that the Court approve the compensation arrangements described in the Engagement Letter pursuant to Bankruptcy Code Section 328(a).  The compensation arrangements contained in the Engagement Letter (which are described below in Section D of this Application) are highly beneficial to Miami Jai-Alai's estates as they provide certainty and proper inducement for Guggenheim to act expeditiously and prudently with respect to the matters for which it will be employed, and provide an incentive structure such that if or as Miami Jai-Alai receives greater consideration in transactions, the fee will be higher as well.

## A.    RETENTION OF GUGGENHEIM SECURITIES IS NECESSARY

12.     Miami Jai-Alai has chosen Guggenheim to act as their investment banker post-petition because Guggenheim has substantial expertise in sale, financing, and restructuring transactions of the type contemplated here, and is well qualified to perform these services and assist Miami Jai-Alai in these Chapter 11 cases.  Without the services of Guggenheim, Miami Jai-Alai will be unable to accomplish a sale or other transaction through a canvassing of the market and any development of alternatives.

## B.    GUGGENHEIM IS WELL QUALIFIED FOR THIS ENGAGEMENT

13.     Guggenheim is a full service investment banking firm with a dedicated financial restructuring practice specializing in providing restructuring

4

and advisory services.  Guggenheim provides a full range of advisory services to clients involved in mergers and acquisitions, restructurings, securities offerings, debt and equity transactions, and other complex situations requiring sophisticated financial expertise.  As a registered FINRA broker-dealer, services provided by Guggenheim include mergers and acquisitions, restructuring, and obtaining financing for companies of all sorts.

## C.    SERVICES TO BE RENDERED BY GUGGENHEIM

14.    Miami Jai-Alai contemplates that Guggenheim either will provide some, if not all, of the following services:

a.    *General Financial Advisory and Investment Banking Services*.  Guggenheim will:

(i)    To the extent it deems necessary, appropriate and feasible, review and analyze the Company's[2] business, financial condition and prospects;

(ii)    If the Company determines to undertake any Restructuring Transaction,[3] any Financing Transaction and/or any Sale Transaction, advise and assist the Company in structuring and effecting the financial aspects of any such Transaction or Transactions (each as defined below), subject to the terms and conditions of this Agreement.

b.    *Restructuring Services*.  If the Company determines to pursue or effect any Restructuring Transaction, Guggenheim will:

(iii)    Provide financial advice and assistance to the Company in developing and seeking approval of any such Restructuring Transaction, including a plan of reorganization or liquidation (as the same may be modified from time to time, a **"Plan"**), which may be a plan under chapter 11 (**"Chapter 11"**) of the Bankruptcy Code confirmed in connection with these cases;

---

[2] The Engagement Letter defines "the Company" collectively as Miami Jai-Alai.

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the Engagement Letter.



(iv)     If requested by the Company in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under the Plan;

(v)     If requested by the Company, assist the Company and/or participate in negotiations with any entities or groups affected by the Plan; and

(vi)     If requested by the Company, participate in hearings before this Court with respect to the matters upon which Guggenheim has provided advice, including, as relevant, coordinating with the Company's legal counsel with respect to testimony in connection therewith.

        c.     ***Financing Services***.  If the Company determines to pursue or effect any Financing Transaction, Guggenheim:

(i)     Provide financial advice and assistance to the Company in structuring and effecting any such Financing Transaction, identify potential investors (**"Investors"**) with respect to such Financing Transaction and, at the Company's request, solicit such Investors;

(ii)     If Guggenheim and the Company deem it advisable, assist the Company in developing and preparing Offering Materials (as defined in the Annex) to be used in soliciting Investors with respect to any Financing Transaction, and

(iii)     If requested by the Company, assist the Company and/or participate in negotiations with Investors.

        d.     ***Sale Services***.  If the Company determines to pursue or effect any Sale Transaction, Guggenheim will:

(i)     Provide financial advice and assistance to the Company in connection with any such Sale Transaction, identify Acquirors with respect to such Sale Transaction and, at the Company's request, solicit such Acquirors;

(ii)     If Guggenheim and the Company deem it advisable, assist the Company in developing and preparing Offering Materials to be used in soliciting Acquirors with respect to any Sale Transaction; and

(iii)     If requested by the Company, assist the Company and/or participate in negotiations with Acquirors.



### D.    GUGGENHEIM'S PROPOSED COMPENSATION

15.    Under this engagement, Guggenheim is to receive the following monthly fees.  First, Miami Jai-Alai will pay a non-refundable cash financial advisory fee of $100,000 (the "**Initial Fee**").  Second, Miami Jai-Alai will pay Guggenheim a non-refundable cash fee of $50,000 per month (each, the "**Monthly Fee**" and collectively, the "**Monthly Fees**"), which will be due and paid by the Company in advance beginning April 1, 2014 and thereafter on the first day of each month during the term of this Agreement.  Whether or not any Restructuring Transaction, Financing Transaction, or Sale Transaction has taken place or will take place, Guggenheim will earn and be paid the Initial Fee, and then also each Monthly Fee from April 1, 2014 onward, every month during the term of this Agreement.

16.    In addition, subject to the Court's approval, and under Bankruptcy Code Section 328(a), Guggenheim will earn a Sale Transaction Fee,[4] depending on the identity of a stalking horse bidder as follows:

a.    <u>**Sale Transaction Fee if any entity other than Silvermark is Stalking Horse Bidder**</u>**:**  If at any time during the Fee Period, (A) any Sale Transaction is consummated or (B) (I) an agreement in principle, definitive agreement or Plan to effect a Sale Transaction is entered into and (II) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Sale is consummated, the Company will pay Guggenheim one or more cash fees (each, a **"Sale Transaction Fee"**) in an amount based on the Aggregate Sale Consideration (as defined in the Engagement Letter and calculated as follows:

i.  (X)  1.000% of the Aggregate Sale Consideration up to $120,000,000 plus (Y)

---

[4] This is a summary only, and the precise terms of the Engagement Letter will control.

2.000% of the Aggregate Sale Consideration, if any, between $120,000,000 and $140,000,000 plus (Z) 3.000% of the Aggregate Sale Consideration, if any, in excess of $140,000,000

b. **Sale Transaction Fee if Silvermark is Stalking Horse Bidder:** If Silvermark is the stalking horse bidder, Guggenheim's Sale Transaction Fee will be calculated as follows:

i. (X) .5% of the Aggregate Sale Consideration up to $130,000,000 plus (Y) 5.000% of the Aggregate Sale Consideration, if any, between $130,000,000 and $160,000,000 plus (Z) 3.000% of the Aggregate Sale Consideration, if any, in excess of $160,000,000

17. The overall compensation structure described above is comparable to compensation generally charged by investment banking firms of similar stature to Guggenheim for comparable engagements, both in- and out-of-court. Guggenheim's bankruptcy expertise, as well as its capital markets knowledge, financing skills, and merger and acquisition capabilities, some or all of which may be required by the Debtors during the term of Guggenheim's engagement, were important factors in Guggenheim's determination of the amount of its fees, and the Debtors believe that the ultimate benefit to the Debtors of Guggenheim's services hereunder cannot be measured merely by reference to the number of hours to be expended by Guggenheim's professionals in the performance of services.

E.   GUGGENHEIM'S PROPOSED REIMBURSEMENT OF EXPENSES

18. In addition to the fees described above, and regardless of whether any Sale Transaction is consummated, the Engagement Letter provides for Guggenheim to be reimbursed by Miami Jai-Alai on a monthly basis for all reasonable, documented, out-of-pocket expenses incurred by Guggenheim in connection with providing the services specified in the Engagement Letter. Such

8

expenses include (a) travel, lodging, meals, duplicating, related out-of-pocket costs, messenger charges, and telephone charges, all of which shall be charged at cost in accordance with the then effective Guggenheim policy, without regard to volume-based or similar rebates or credits Guggenheim may receive, and (b) research costs, database and similar information charges, production costs, and other client-related services not capable of being identified with, or charged to, a particular client or engagement, based on a uniformly applied monthly assessment.    Any request for reimbursement of expenses shall be under Bankruptcy Code Section 330.

## F.    GUGGENHEIM PROPOSED INDEMNIFICATION

19.    The Engagement Letter also contains an indemnity provision relating to Guggenheim's services.

## G.    WAIVER OF TIMEKEEPING REQUIREMENT

20.    Miami Jai-Alai requests modifying the fee application and information requirements contained in Local Rule 2016-1 incorporating the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases (the "**Fee Guidelines**").    Bankruptcy Rule 2016 and Local Rule 2016-1 require retained professionals to submit applications for payment of compensation in chapter 11 cases in accordance with the Fee Guidelines.

21.    Pursuant to Local Rule 2016-1(B)(1), the Fee Guidelines apply in all chapter 11 cases and require retained professionals to submit detailed time entries that set forth, among other things: (i) a detailed description of each activity performed, (ii) the amount of time spent on that activity (in tenth of an hour increments), (iii) the subject matter of the activity, and (iv) the parties involved with the activity at issue.    However, the Fee Guidelines allow a retained professional to request a variance from these guidelines, for cause.

22.     Based on Guggenheim's representations to Miami Jai-Alai, it is Miami Jai-Alai's understanding that Guggenheim and other investment banking firms do not engage in the general practice of maintaining detailed time records similar to those customarily kept by professionals who are compensated on an hourly basis.

## H.    GUGGENHEIM'S DISINTERESTEDNESS

23.     To the best of Miami Jai-Alai's knowledge, information, and belief, and based upon the Fisch Affidavit, Guggenheim is a "disinterested person" as that term is defined in Bankruptcy Code Section 101(14).

24.     As described in detail in the Fisch Affidavit, Guggenheim has, among other things, searched its client databases to determine whether it represents, or has represented, certain of Miami Jai-Alai's creditors or other parties in interest in these proceedings, and/or matters wholly unrelated to these proceedings.  Due to the size of Guggenheim and the number of creditors and other parties in interest involved in these cases, however, Guggenheim may have represented certain of Miami Jai-Alai's creditors or other parties in interest in matters wholly unrelated to the Chapter 11 cases.  Except as may be described in the Fisch Affidavit, Guggenheim does not, to its knowledge, represent any party with an interest materially adverse to Miami Jai-Alai or these estates.

## I.    *NUNC PRO TUNC* RELIEF IS WARRANTED

25.     Finally, Miami Jai-Alai requests approval of the employment of Guggenheim *nunc pro tunc* to November 8, 2013.  Such relief is warranted by the circumstances presented by this case; all parties wish Guggenheim to begin work immediately, and Guggenheim is willing to do so, prior to a hearing on approval of this retention.  When there is "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.  *See In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986); *see also In re Indian River Homes, Inc.*, 108 B.R. 46, 52 (D. Del. 1989), *app. dismissed*, 909 F.2d 1406 (3d Cir. 1990).  The complexity,

intense activity, and speed that are expected to characterize these cases have necessitated that Miami Jai-Alai, Guggenheim, as well as Miami Jai-Alai's and the Committee's other professionals, focus their immediate attention on time-sensitive matters, and promptly devote substantial resources to the affairs of Miami Jai-Alai pending submission and approval of this Application.

**WHEREFORE**, Miami Jai-Alai respectfully requests that the Court enter an Order, substantially in the form attached hereto as **Exhibit "C"**: (i) granting this Application; (ii) authorizing the employment and retention of Guggenheim as investment banker to Miami Jai-Alai in these Chapter 11 cases; (iii) approving the terms substantially on the same terms as the Engagement Agreement dated November 8, 2013, including the proposed fee structure set forth in the Engagement Agreement, subject to the standards set forth in Bankruptcy Code Section 328; and (iv) granting such other and further relief as this Court deems just and proper.

Dated:  November 8, 2013           Respectfully submitted,

                          **SALAZAR JACKSON, LLP**
*Counsel for Florida Gaming Centers, Inc.,*
*Florida Gaming Corporation, Tara Club Estates, Inc.,*
*and Freedom Holding, Inc.*
Two South Biscayne Boulevard, Suite 3760
Miami, Florida 33131
Telephone: (305) 374-4848
Facsimile:  (305) 397-1021
Email:  Salazar@SalazarJackson.com
Email: Honaker@SalazarJackson.com

By:_____/s/  Luis Salazar_____

           Luis Salazar
           Florida Bar No. 147788
           Linda Worton Jackson
           Florida Bar No. 843164
           Aaron P. Honaker
           Florida Bar No. 48749

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties identified on the Master Service List attached to the original hereof, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those parties who are not registered to receive notices electronically.

/s/   Luis Salazar

Luis Salazar

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc. *et al.***

### Debtors

Florida Gaming Centers, Inc.
Florida Gaming Corporation
Freedom Holding, Inc.
Tara Club Estates, Inc.
Attn: W. Bennett Collett, Jr.
3500 NW 37th Avenue
Miami, FL 33142

### Debtors Counsel / Professionals

Luis Salazar, Esq.
Linda Worton Jackson, Esq.
Aaron P. Honaker, Esq.
SALAZAR JACKSON, LLP
Two S. Biscayne Blvd., Suite 3760
Miami, FL 33131
Email: Salazar@SalazarJackson.com
Email: Jackson@SalazarJackson.com
Email: Honaker@SalazarJackson.com
*Counsel for Debtors*

VIA EMAIL ONLY
Robert W. Hudson, Esq.
HUDSON & CALLEJA, LLC
3211 Ponce de Leon Boulevard, Suite 102
Coral Gables, FL 33134
Email: rhudson@hudsoncalleja.com
*Special Counsel for Debtors*

VIA EMAIL ONLY
R. James Straus, Esq.
FROST BROWN TODD LLC
400 West Market Street, Suite 3200
Louisville, KY 40202-3363
Email: jstraus@fbtlaw.com
*Special Counsel for Debtors*

VIA EMAIL ONLY
Soneet Kapila
c/o Kapila & Company
1000 South Federal Highway
Suite 200
Fort Lauderdale, FL 33316
*Special Counsel for Debtors*

### US Trustee

Office of the United States Trustee
51 Southwest First Avenue, Room 1204
Miami, FL 33130
Email: USTPRegion21.MM.ECF@usdoj.gov

### Secured Creditors

Drew Dillworth
150 West Flagler Street
Miami, FL 33130
Email: ddillworth@stearnsweaver.com
*Local Counsel for ABC Funding, LLC*

Marissa D. Kelley, Eq.
Stearns Weaver Miller Weissler Alhadeff &
Sitterson, P.A.
200 East Las Olas Blvd., Suite 2100
Fort Lauderdale, FL 33301
Email: mkelley@stearnsweaver.com
*Counsel for ABC Funding, LLC*

Andrew F. O'Neill
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Email: aoneill@sidley.com
*Counsel for ABC Funding, LLC*

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc. *et al.***

Dennis M. Twomey
 Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Email: dtwomey@sidley.com
*Counsel for ABC Funding, LLC*

ABC Funding, LLC
Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

Canyon Distressed Opportunity Master Fund, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon-GRF Master Fund II, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon Value Realization Fund, L.P.
c/o Canyon Capital Advisors LLC
Attn: Chaney Sheffield
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon Value Realization Master Fund, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

J.P. Morgan Securities LLC
Attn: Jason Kroll
383 Madison Avenue, 3rd Floor
New York, NY 10017

JPMorgan Chase Bank, N.A.
Attn: Jason Kroll
383 Madison Avenue, 3rd Floor
New York, NY 10017

Locust Street Funding LLC
c/o GSO/Blackstone Debt Funds Management
Attn: James Roche
345 Park Avenue, 31st Floor
New York, NY 10154

Summit Partners Subordinated Debt Fund IV-A, L.P.
c/o Summit Partners Credit Advisors, L.P.
 Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

Summit Partners Subordinated Debt Fund IV-A, L.P.
Summit Partners Subordinated Debt Fund IV-B, L.P.
ABC Funding, LLC
Attn: Summit Partners SD IV, L.P.,
Attn: Robin W. Devereux, General Partner
222 Berkeley Street, 18th Floor
Boston, MA 02116

Summit Partners Subordinated Debt Fund IV-B, L.P.
c/o Summit Partners Credit Advisors, L.P.
Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc.** *et al.*

Ileana Cruz
Assistant County Attorney
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, FL 33128-1993
Email: ileanac@miamidade.gov
Email: cao.bkc@miamidade.gov
*Counsel for Miami Dade County-County Tax
Collector*

Miami Dade County Tax Collector
Darely Garcia-Lopez
c/o Miami Dade County Paralegal Unit
Miami Dade Bankruptcy Unit
140 West Flagler Street, Suite 1403
Miami, FL 33130-1575
Email: dgjp@miamidade.gov
Email: MDTCBKC@miamidade.gov

Thomas P. Abbott, Assistant County Attorney
PO Box 025504
Miami, FL 33102-5504
Facsimile: 305-876-7294
Email: TABBOTT@miami-airport.com

**CREDITORS**

Andrew R. Herron, Esq.
Herron Ortiz
255 Alhambra Circle, Suite 1060
Coral Gables, FL 33134
Email: aherron@herronortiz.com
Email: ndrubin@herronortiz.com
*Counsel for Miami Gaming Ventures, LLC*

Howard S. Toland, Esq.
1200 Weston Road, Penthouse
Weston, FL 33326
Email: htoland@mitrani.com
*Counsel for International Sound Corporation*

Glenn D. Moses, Esq.
Genovese Joblove & Battista, P.A.
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
*Counsel for Committee of Unsecured
Creditors*

Solomon B. Genet, Esquire
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Facsimile: (305) 358-1221
Email: sgenet@melandrussin.com
*Counsel for Miami Casino Management, LLC*

Joseph D. Frank
Jeremy C. Kleinman
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile: (312) 276-0035
Email: jfrank@fgllp.com
Email: jkleinman@fgllp.com
*Counsel for Bottling Group, LLC*

Miami Gaming Ventures
Attn: Rodney Barreto, Partner
235 Catalonia Avenue
Coral Gables, FL 33134
Telephone: 305-444-4648
Fcsimile: 305-444-1128
Email: Rodney@barretogroup.com

Florida Lemark Corporation
Attn: Eduardo P. Rodriguez, Vice President
2040 NW 94th Avenue
Doral, FL 33172
Telephone: 305-593-1442
Facsimile: 305-593-0998
Email: Eduardo@FloridaLemark.com

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc. *et al.***

Farmers Bank
P.O. Box 231
Hardinsburg, KY 40143

Freedom Financial Corporation
2669 Charlestown Road #D
New Albany, IN 47150

S. Oden Howell
6800 Shadwell Place
Prospect, KY 40059
Telephone: 502-491-7985
Facsimile: 502-491-1212
Email: SoHowell@aol.com

Kim Tharp
2669 Charlestown Rd #D
New Albany, IN 47150

SHFL Entertainment ( Shuffle Master, Inc.)
Attn: Darrell Horton
6650 El Camino
Las Vegas, NV 89118
Telephone: 702-270-5138
Facsimile: 888-234-3881
Email: DHorton@shfl.com

Tampa Bay Downs, Inc.
Attn: Gregory Gelyon, Vice President of Finance
P.O Box 2007
Oldsmar, FL 34677
Telephone: 813-855-4401
Facsimile: 813-261-1961
Email: greg@tampabaydowns.com,
pnberube@tampabaydowns.com

## GOVERNMENTAL AGENCIES / TAXING AUTHORITIES

Division of Alcoholic Beverages and Tobacco
Attn: Allen Douglas, Director
1940 North Monroe Street
Tallahassee, FL 32399
Facsimile: 850.922.5175

Division of Pari-Mutuel Wagering
Southern Division
1400 West Commercial Boulevard, Suite 165
Ft. Lauderdale, FL 33309-3787

Division of Pari-Mutuel Wagering
Attn: Leon M Biegalski, Director
1940 North Monroe Street
Tallahassee, FL 32399-1035
Facsimile: 850.488.0550

Florida Department of Revenue
Attn: Bankruptcy Unit
P.O Box 6668
Tallahassee, FL 32314-6668

Florida Department of Revenue
c/o Agency Clerk
501 S. Calhoun Street
Room 201, Carlton Building
Tallahassee, FL 32399

Florida Department of Revenue
8175 NW 12th St, Suite 119
Miami Service Center
Miami, FL 33126-1828

Florida Department of Revenue
5050 West Tennessee Street
Tallahassee, FL 32399-0100

Office of Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

4

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc. *et al.***

Internal Revenue Service
Special Procedures- Insolvency
7850 SW 6th Court
Plantation, FL 33324

David Baddley
U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces N.E, Suite 900
Atlanta, GA 30326-1382
Email: atlreorg@sec.gov
*Counsel for U.S. Securities and Exchange*
*Commission*

Securities and Exchange Commission
Eric I Bustillo, Regional Director
801 Brickell Ave., Suite 1800
Miami, FL 33131

Special Asst. U.S. Attorney
P.O. Box 9, Stop 8000
51 SW 1st Avenue, #1114
Miami, FL 33130

Special Asst. U.S. Attorney
IRS District Counsel
1000 S. Pine Island Rd., Ste 340
Plantation, FL 33324-3906

Eric Holder, US Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**Parties in Interest**

VIA EMAIL ONLY
Lance A. Schildkraut, Esq.
DiConza Traurig LLP
630 Third Avenue, 7th Floor
New York, NY 10017
Email: las@dtlawgroup.com

VIA EMAIL ONLY
Gerald D. Kelly, Esq.
Claire E. W. Stewart, Esq.
SIDLEY AUSTIN, LLP
One South Dearborn Street
Chicago, IL 60603
Email: gkelly@sidley.com

VIA EMAIL ONLY
Benjamin R. Nagin, Esq.
Adam McClay, Esq.
SIDLEY AUSTIN, LLP
787 Seventh Avenue
New York, NY 10019
Email: bnagin@sidley.com
Email: amcclay@sidley.com

VIA EMAIL ONLY
Alexander D. Silverman, Member
William S. Kogan, General Counsel
SILVERMARK LLC
430 Park Avenue, 5th Floor
New York, NY 10022
Email: alexs@andalex.com
Email: wkogan@andalex.com

VIA EMAIL ONLY
Craig V. Rasile, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8539
Facsimile: (305) 437-8131
Email: craig.rasile@dlapiper.com
*Local Counsel for Silvermark, LLC*

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc. *et al.***

VIA EMAIL ONLY
Andrew D. Zaron, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8523
Facsimile: (305) 437-8131
Email: andrew.zaron@dlapiper.com
*Local Counsel for Silvermark, LLC*

VIA EMAIL ONLY
Rachel Nanes, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Facsimile: (305) 437-8131
Email: rachel.nanes@dlapiper.com
*Lcoal Counsel for Silvermark, LLC*

Thomas R. Kreller
Milbank, Tweed, Hadley & McCloy LLP
601 South Figuerora Street, 30th Floor
Los Angeles, CA 90017
*Counsel for Silvermark, LLC*

VIA EMAIL ONLY
Linda A. Conahan
GUNSTER, YOAKLEY & STEWART, P.A.
450 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33301
Email: lconahan@gunster.com

VIA EMAIL ONLY
Etan Mark, Esq.
BERGER SINGERMAN, LLP
1450 Birckell Avenue, Suite 1900
Miami, FL 33131
Email: emark@bergersingerman.com
*Counsel for David Jonas*

VIA EMAIL ONLY
Christopher A. Jarvinen, Esq.
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
E-mail: cjarvinen@bergersingerman.com
*Counsel for David Jonas*

VIA EMAIL ONLY
David Jonas
4 Overlook Ct.
Medford, NJ 8055
Email: davesjonas@gmail.com

Wells Fargo Bank Deposits Bankruptcy
Wells Fargo Bank NA
2701 NW Vaughn St, 5th Floor
Portland, OR 97210

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:

FLORIDA GAMING CENTERS,
INC., *et al.*,[1]

Debtors.

Chapter 11

Case No. 13-29597-RAM

(Jointly Administered)

## AFFIDAVIT OF ALEX C. FISCH IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF GUGGENHEIM SECURITIES, LLC AS INVESTMENT BANKER TO THE DEBTORS, *NUNC PRO TUNC* TO NOVEMBER 8, 2013

I, Alex C. Fisch, being duly sworn, hereby declares as follows:

1.      I am over the age of 18 and if called upon to testify, could and would do so.  I submit this affidavit (the **"Affidavit"**) under Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") in support of Miami Jai-Alai's[2] *Application for Entry of an Order Authorizing Retention and Employment of Guggenheim Securities, LLC as Investment Banker to the Debtors, Nunc Pro Tunc to November 8, 2013* (the "**Application**").

2.      I am a Managing Director of Guggenheim Securities, LLC ("**Guggenheim Securities**"), an investment banking, securities trading, and brokerage firm with headquarters at 330 Madison Avenue, New York, New York 10017.  Except as otherwise noted below, I have personal knowledge or have relied

---

[1] The debtors in these chapter 11 cases and the last four digits of their federal tax identification number are: Florida Gaming Corporation (0533), Florida Gaming Centers, Inc. (5893), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

[2] Any capitalized terms used but not described herein shall have the meanings ascribed to such terms in the Application.

upon the knowledge of others employed by Guggenheim Securities with respect to the matters set forth herein.[3]

## GUGGENHEIM STRUCTURE

3.     Guggenheim Securities is a leading investment banking, securities trading, and brokerage firm, and a major subsidiary of Guggenheim Partners, LLC ("**Guggenheim Partners**").  Guggenheim Securities is a registered broker dealer with the United States Securities and Exchange Commission, and is a member of the Financial Industry Regulatory Authority.  Guggenheim Partners and its affiliates' businesses include asset management, investment banking and capital markets services, broker-dealer services, and the provision of research, insurance, institutional finance, and investment advisory solutions to institutions, governments and agencies, corporations, investment advisors, family offices, and individuals.   Guggenheim Securities provides financial advisory and investment banking services through its investment banking department (the "**Investment Banking Department**").

4.     The services to be provided to the Debtors in these cases will be provided only by Investment Banking Department personnel, and certain other non-Investment Banking Department personnel who may from time to time be needed to assist the Investment Banking Department in this engagement.   A customary securities "information barrier" (also known as an "**information**

---

[3]  Certain information set forth herein relates to matters (i) contained in Guggenheim Securities' books and records or (ii) within the knowledge of other Guggenheim Securities' employees, and is based on information provided by them.

**wall**") exists between Guggenheim Securities' Investment Banking Department and non-Investment Banking Department personnel both in Guggenheim Securities and throughout Guggenheim Partners and its affiliates, which information barrier is described in greater detail below. This information wall is a long-standing means under applicable securities laws and regulations to ensure that investment bankers do not knowingly deal with third parties due to such parties' other connections with Guggenheim Securities or Guggenheim Partners. The existence of this information wall, as well as the separateness of Investment Banking Department personnel from non-Investment Banking Department personnel, has informed the nature of the conflicts searches performed by Guggenheim Securities and Guggenheim Partners, as discussed below. In addition, if any non-Investment Banking Department personnel are needed to assist the Investment Banking Department in this engagement, such personnel would be brought across the Investment Banking Department's information barrier pursuant to certain procedures described below.

### PROCESS FOR IDENTIFYING CONNECTIONS

5.       In connection with its retention by the Debtors, Guggenheim Securities has requested and obtained from the Debtors' counsel a list of interested parties attached hereto as **Exhibit "A"** (the "**Potential Parties in Interest**"). These Potential Parties in Interest fall within the following categories:

      (a)       the Debtors;

(b)      certain of the Debtors' largest equity holders, and non-debtor affiliates;

(c)      ABC Funding, LLC, which is the administrative agent for the syndicate of Debtors' primary secured lenders, and certain other secured creditors (collectively, the "**Lenders**");

(d)      the Debtors' other bankruptcy professionals;

(e)      the Debtors' current and (to the extent they served during the one year preceding the Petition Date) former directors and officers;

(f)      the Debtors' twenty largest unsecured creditors (the "**Twenty Largest Creditors**");

(g)      Members of the Official Committee of Unsecured Creditors (the "**Committee Members**");

(h)      the Debtors' primary insurers;

(i)      the Debtors' primary banking institutions;

(j)      the Debtors' utilities;

(k)      Significant regulatory agencies having jurisdiction over the Debtors or their operations;

(l)      other parties materially involved in these cases (the "**Other Material Parties**");

(m)      Judges of the United States Bankruptcy Court for the Southern District of Florida;

(n)     Employees of the Office of the United States Trustee Covering the Southern District of Florida; and

(o)     The Clerk of this Court.

Guggenheim Securities has not received from counsel to the Debtors, and does not currently know of, any other persons or entities that are material parties in interest or professionals in these cases, other than the Potential Parties in Interest identified in Exhibit A hereto.

6.      Since the Investment Banking Department will be responsible for providing services to the Debtors in this engagement, and since an information barrier exists between Guggenheim Securities' Investment Banking Department and non-Investment Banking Department personnel throughout Guggenheim and its affiliates, Guggenheim Securities has conducted the following research:

(a)     entered the names of the Potential Parties in Interest into a certain computer database (which contains information since July 2009) containing the names of entities with whom Guggenheim Securities' Investment Banking Department currently has or has had engagements;

(b)     compared the names of the Potential Parties in Interest to a list of the top one-hundred vendors of Guggenheim Partners and its affiliates, as determined by the amount of total payments made to each vendor of Guggenheim Partners and its affiliates (each a "**Material Vendor**") during the one year period prior to the Petition Date (the "**Vendor Assessment Period**")[4];

---

[4] Guggenheim Partners' procurement department serves and maintains records for all divisions of Guggenheim Partners and its affiliates, including the Investment Banking Department.  As such,

(c)    compared the names of the Debtors, the Lenders, the Twenty Largest Creditors, the Committee Members, and the Other Material Parties to a list of lenders to, or borrowers from, Guggenheim Securities;

(d)    compared the names of the Debtors to a computer database of personal securities holdings, outside business interests, and directorships for all Guggenheim Securities personnel (each, a "**Personal Interest**");

(e)    compared the names of the Debtors, the Lenders, the Twenty Largest Creditors, the Committee Members, and the Other Material Parties to a list of current or former customers or clients of Guggenheim Securities (other than the Investment Banking Department); and

(f)    compared the names of all Potential Parties in Interest to lists of companies for which Guggenheim Securities publishes research reports or makes a market in the company's securities.

### IDENTIFIED CONNECTIONS

7.    **Current or Former Clients of the Investment Banking Department**: The inquiry referenced in paragraph 6(a) above resulted in a list of Potential Parties in Interest which the Investment Banking Department (i) currently represents or formerly represented (including provision of unrelated financial advisory services) and/or (ii) has unrelated advisory relationships with. This list of such entities is referred to herein as the "**Client Match List**" and is

---

this search is done for the entirety of Guggenheim Partners and its affiliates.  Neither Guggenheim Partners nor Guggenheim Securities tracks all vendor spending allocable solely to the Investment Banking Department.

annexed hereto as **Exhibit "B"**).[5]  Through the information generated from the computer-inquiry referenced in paragraph 6(a) above, Guggenheim Securities determined that the representation of, or relationship with, the clients listed on the Client Match List concerned matters unrelated to the Debtors.  In particular, to the best of my knowledge and belief, Guggenheim Securities currently advises or formerly advised the entities identified on the Client Match List on matters unrelated to the cases.  As to Potential Parties in Interest not listed on the Client Match List, based on the searches and to the best of my knowledge and subject to the limitations set forth herein, Guggenheim Securities' Investment Banking Department has not employed or been employed by, rendered services to, any such parties since July 2009.

8.      **Vendor Relationships**:   The information generated from the inquiry referenced in paragraph 6(b) above resulted in a list of Potential Parties in Interest that are Material Vendors.  The list of such entities is annexed as **Exhibit "C"** hereto.  None of the services provided by the Material Vendors are or were solely as a result of these cases.

9.      **Other Customers or Clients of Guggenheim Securities**: Through the information generated from the inquiry referenced in paragraph 6(e) above, Guggenheim Securities determined that the parties listed on **Exhibit "D"**

---

[5]   Included in the Client Match List are the names of parties identified during Guggenheim Securities' connections check that appeared to be similar to, or affiliates of, Potential Parties in Interest.  This represents a good faith effort on the part of Guggenheim Securities, but as noted in footnote 1 to Exhibit A hereto, this is not a representation that Guggenheim Securities has determined (or disclosed) if it has any connections with any affiliates, subsidiaries, or parent companies of those entities listed on Exhibit A.

hereto are current or former customers or clients of Guggenheim Securities. Other than as set forth on Exhibit D, none of the Debtors, the Lenders, the Twenty Largest Creditors, the Committee Members, or the Other Material Parties are current or former customers or clients of Guggenheim Securities (other than the Investment Banking Department, which disclosures are addressed in paragraph 7, above).

10.    **Research and Market-Making**:    Through the information generated from the inquiry referenced in paragraph 6(f) above, Guggenheim Securities confirmed that it publishes research reports on those Potential Parties in Interest listed in **Exhibit "E"** hereto.

11.    Guggenheim Securities also compared the names of the Potential Parties in Interest to a list of Guggenheim Partners' affiliates, subsidiaries, and portfolio companies and no matches were identified.  Guggenheim Securities makes the following additional specific disclosures of connections or possible connections it has identified with respect to Potential Parties in Interest in these cases, or facts relevant to Guggenheim Securities' proposed retention:

(a)    The services to be provided to the Debtors will be provided only by Investment Banking Department personnel and certain other non-Investment Banking Department personnel who may from time to time be needed to assist the Investment Banking Department during the course of this engagement.  As described below, a customary securities "information barrier" (or **"information wall"**) exists between Guggenheim Securities Investment Banking Department and the remainder of Guggenheim Securities and Guggenheim Partners and its affiliates.  If the Investment Banking Department needs the assistance of any non-Investment Banking Department personnel during this engagement, such non-Investment Banking Department personnel would be brought within the Investment Banking Department's information barrier group, pursuant to certain procedures designed to maintain the effectiveness of the

information barrier ("**Wall-Crossed Employees**").[6]    Accordingly, except as otherwise set forth herein, Guggenheim Securities has not ascertained or disclosed in this Affidavit whether Guggenheim Partners or its affiliates, subsidiaries, or portfolio companies or their respective partners, directors, officers, or employees (other than Guggenheim Securities and its directors, officers, and employees) has any relationship (or "connection," as that term is used in Bankruptcy Rule 2014(a)) that is relevant and material to Guggenheim Securities' retention in these cases.

(b)    Certain divisions of Guggenheim Securities, other than the Investment Banking Department, regularly enter into transactions in securities, loans, and other financial instruments with or involving other parties as a part of such divisions' or affiliates' daily activities.  These transactions are generally for the accounts of Guggenheim Securities' brokerage customers but may include principal transactions to acquire or sell securities for inventory purposes to facilitate Guggenheim Securities' market-making business.    Guggenheim Securities does not engage in proprietary trading in securities, loans, or other financial instruments for its own account and as of the date hereof Guggenheim Securities holds no equity or debt (including derivative positions) of the Debtors. Guggenheim Securities is not a market-maker in the securities of any Debtor. However, in the course of its business, Guggenheim Securities may, directly or indirectly, hold long or short positions, trade, or otherwise conduct such activities in or with respect to debt or equity securities, or derivative products relating to, other parties in interest in these cases for the accounts of its customers.  It is also possible that one or more of Guggenheim Securities' directors, officers, employees, or customers, or counterparty to a security transaction, may hold a claim or otherwise be a party-in-interest in these cases.  However, to the best of my knowledge, Guggenheim Securities does not currently hold any claim against, or interest in, the Debtors, and no Guggenheim Securities Investment Banking Department professional holds any direct claims against, or interests in, the Debtors.  As a market-maker in equity securities, Guggenheim Securities enters into securities transactions with other registered broker-dealers as part of its daily activities.  Some of these counterparties may be creditors of the Debtors or parties

---

[6]  Guggenheim Securities has implemented reasonable policies and procedures, among other things, to help prevent conflicts of interest and maintain the confidentiality of client information and other confidential information that Guggenheim Securities and its employees receive during the course of their work at Guggenheim Securities.  These policies and procedures include a permanent and monitored information barrier between Guggenheim Securities' Investment Banking Department and the remainder of Guggenheim Securities and its affiliates, and include: (1) physical barriers between the Investment Banking Department and the remainder of Guggenheim Securities and its affiliates, including limited physical access to the Investment Banking Department's office space effected through separate office space with restricted and monitored electronic card-key access; (2) technological barriers within Guggenheim Securities' computer systems; (3) policies and procedures intended to prevent confidential information from being shared between the Investment Banking Department's personnel and other employees of Guggenheim Securities and its affiliates; and (4) compliance and surveillance mechanisms designed to track approved exceptions to the above policies and procedures, and to detect violations of those policies and procedures.

in interest in these cases. Guggenheim Securities believes that none of these business relationships constitutes interests materially adverse to the Debtors' estates in matters upon which Guggenheim Securities is seeking to be employed and that none are in connection with the cases.

(c)    During its engagement in these cases, Guggenheim Securities' Fixed Income Department and Equity Department may continue to buy, sell, or otherwise effect transactions in securities of the Debtors on an unsolicited basis for customer accounts, with Guggenheim Securities acting solely as agent to such clients. Guggenheim Securities will not during its engagement in these cases trade in any securities of the Debtors for its own account. Thus, Guggenheim Securities believes that none of these activities constitute interests materially adverse to the Debtors in matters upon which Guggenheim Securities is to be retained.

(d)    Consistent with applicable legal and regulatory requirements, Guggenheim Securities has adopted policies, procedures, and information barriers to maintain the independence of Guggenheim Securities' research department and personnel. During these cases, Guggenheim Securities' research analysts may hold views, make statements or investment recommendations, or publish research reports with respect to the Debtors and other parties in interest. Such views may or may not differ from the views of Guggenheim Securities' Investment Banking Department personnel.

(e)    Guggenheim Securities is involved in numerous financings, mergers, cases, proceedings, and other transactions involving many different professionals, underwriters, attorneys, accountants, financial consultants, or financial services providers, some of which may represent parties in interest, or otherwise be involved as parties in interest, in these cases. In the ordinary course of its business, Guggenheim Securities also frequently hires many different professionals, attorneys, accountants, financial consultants, and vendors, some of which may represent parties in interest, or otherwise be involved as parties in interest in, these cases.[7] To the best of my knowledge, none of these relationships constitute interests materially adverse to the Debtors in matters upon which Guggenheim Securities is to be employed, and none are in connection with these cases.

(f)    Guggenheim Securities has undertaken a search only for pending litigation in which the Debtors and Guggenheim Securities are adversaries. Our search did not reveal any such litigation.

---

[7] It is possible that some such parties may, during the Vendor Assessment Period, have received a payment from Guggenheim Securities or its affiliates as a vendor in connection with such transactions, without such parties being identified pursuant to procedures described in Paragraph 6(b) above as a vendor.

(g)     As of the date hereof Guggenheim Partners and its affiliates have over 2,000 employees worldwide. It is possible that certain of Guggenheim Partners and its affiliates' respective directors, officers, and employees may have had in the past, may currently have, or may in the future have business associations with, or interests in or adverse to (i) the Debtors, (ii) parties in interest in these cases, or (iii) funds or other investment vehicles that may own debt or securities of the Debtors or parties in interest. To the best of my knowledge, and except as otherwise disclosed herein, the Guggenheim Securities Investment Banking Department professionals that will be responsible for this engagement and other members of the Investment Banking Department do not have any material business associations with, or hold any material interests in or adverse to, the Debtors or parties in interest in these cases.

(h)     Certain affiliates of Guggenheim Securities (the "**Investment Advisor Affiliates**") serve as managers for a number of funds and other investment vehicles (the "**Managed Funds**"). The Managed Funds are intended principally for investments by third parties unrelated to Guggenheim Securities. However, such investors may also include financial institutions (some of which may be parties in interest in these cases), or affiliates of Guggenheim Securities and various of its directors, officers, and employees (some of which may include Investment Banking Department employees and any Wall-Crossed Employees providing services in connection with these cases). Neither Investment Banking Department employees nor any Wall-Crossed Employees would have any control over investment decisions or business decisions made for the Managed Funds. With respect to the Managed Funds, Guggenheim Securities makes the following additional disclosures:

(i)     Among other things, the Managed Funds are (a) active investors in a number of portfolio companies (the "**Equity Investments**"), and (b) investors in a variety of debt instruments and mezzanine loans or similar securities (the "**Debt Investments**" and together with the Equity Investments, the "**Fund Investments**"); and

(ii)     The Guggenheim portfolio managers with fund management responsibilities for the Managed Funds maintain investment discretion and control over investment decisions with respect to the Fund Investments unless such investment discretion is outsourced to a third-party fund manager unrelated to Guggenheim Partners. Many financial institutions and parties in interest who may be involved in these cases may also be investors in the Managed Funds. Moreover, the Managed Funds may invest from time to time in Fund Investments of or relating to the Debtors or parties in interest in these cases. To comply with securities laws, and to avoid any appearance of impropriety, the employees of

- 11 -

the Managed Funds are strictly separated from the employees of Guggenheim Securities, including Guggenheim Securities' professionals expected to assist the Debtors, by an information barrier as described in Paragraph 11(a) above. Consequently, as no confidential information is permitted to be communicated to or received from any Investment Advisor Affiliate by the Guggenheim Securities Investment Banking Department, Guggenheim Securities does not believe that the relationships outlined above constitute adverse interests, render Guggenheim Securities not disinterested in the cases, or represent connections to be disclosed under Bankruptcy Rule 2014(a).

(i)    An affiliate of Guggenheim Securities provides funding solutions for financial institutions as the manager of a series of debt programs (the "**Institutional Finance Group**"). Many financial institutions and parties in interest who may be involved in the cases may also be clients of the Institutional Finance Group and/or investors in one or more of the Institutional Finance Group's debt programs. In order to comply with securities laws, and to avoid any appearance of impropriety, the employees of the Institutional Finance Group are strictly separated from the employees of Guggenheim Securities, including Guggenheim Securities' professionals expected to assist the Debtors in these cases, by an information barrier as described in Paragraph 11(a) above. Consequently, as no confidential information is permitted to be communicated to or received from the Institutional Finance Group by the Guggenheim Securities Investment Banking Department, Guggenheim Securities does not believe that the relationships outlined above constitute adverse interests, render Guggenheim Securities not disinterested in the cases, or represent connections to be disclosed under Bankruptcy Rule 2014(a).

(j)    Certain affiliates of Guggenheim Securities are insurance companies that may invest in securities or other financial instruments for their own account (the "**Insurance Company Affiliates**"). The Insurance Company Affiliates may also retain the services of investment advisors to manage their investment portfolios, which may then invest on behalf of the relevant Insurance Company Affiliate for its account. Such investment advisors may include the Investment Advisor Affiliates, which receive a fee for providing such services from the relevant Insurance Company Affiliate. Such investments may from time to time include securities or other financial instruments of or relating to the Debtors or parties in interest in these cases. In order to comply with securities laws, and to avoid any appearance of impropriety, the employees of the Insurance Company Affiliates are strictly separated from the employees of Guggenheim Securities, including Guggenheim Securities' professionals expected to assist the Debtors in these cases, by an information barrier as described in Paragraph 11(a) above. Consequently as no confidential information is permitted to be communicated to or received from the Insurance Company Affiliates by

Guggenheim Securities Investment Banking personnel, Guggenheim Securities does not believe that the relationships outlined above constitute adverse interests, render Guggenheim Securities not disinterested in the cases, or represent connections to be disclosed under Bankruptcy Rule 2014(a).

## WORK UNRELATED TO THESE CASES

12.    To the best of my knowledge, Guggenheim Securities has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these cases.  If this Court approves the Application, Guggenheim Securities will not accept engagement or perform any services in these cases for any entity or person other than the Debtors.

13.    Guggenheim Securities and its affiliates may, however, continue to provide (or in the future provide) professional services to, or engage in commercial, professional, or investment relationships with, entities or persons that may be creditors of the Debtors, business competitors with (or otherwise adverse to) the Debtors, or parties in interest in these cases; provided, however, that such services do not and will not relate to, or have any direct connection with these cases.  Likewise, Guggenheim Securities has been and is certainly involved in other matters in which the professionals herein are involved; the restructuring and financial advisory universe is small.  Guggenheim Securities does not have any way to track (or hence, disclose) such "connections to connections," to the extent Bankruptcy Rule 2014(a) requires such.  However, to the extent any party in interest wishes Guggenheim Securities to do or research more, such additional requests will always be considered.

## GUGGENHEIM SECURITIES IS A DISINTERESTED PERSON

14.     To the best of my knowledge based on the inquiries described above, and except to the extent otherwise set forth herein, Guggenheim Securities is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, in that Guggenheim Securities, its directors, officers, and employees:

(a)     are not creditors, equity security holders, or insiders of the Debtors;

(b)     are not and were not within 2 years before the Petition Date, a director, officer, or employee of the Debtors; and

(c)     do not have an interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

15.     Despite the efforts described above to identify and disclose connections with parties in interest in these cases, because the Debtors and Guggenheim Securities are large enterprises with numerous creditors and other relationships, Guggenheim Securities is unable to state with certainty that every client representation or other connection of Guggenheim Securities' Investment Banking Department with parties in interest in these cases has been disclosed herein.  Guggenheim Securities recognizes that it has an ongoing obligation to review and disclose relevant and material information with respect to the matters

contained herein.    If and when additional information becomes available on Guggenheim Securities' centralized computer systems with respect to any other relationships that may exist between Guggenheim Securities and the Potential Parties in Interest that may affect these cases, Guggenheim Securities will file supplemental declarations describing such information with this Court.

16.    Guggenheim Securities will not share any of its compensation for its services to the Debtors with any other person, other than with a principal or employee of Guggenheim Securities, as permitted by section 504 of the Bankruptcy Code.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

Alex C. Fisch

Sworn to and subscribed before
me this 8th day of November 2013.

Notary Public

My Commission expires: 01/06/2015

## Exhibit A to Affidavit of Alex C. Fisch

Potential Parties in Interest:  Entities and Individuals Searched by Category[1]

**Debtors**
Florida Gaming Centers, Inc.
Florida Gaming Corporation
Tara Club Estates, Inc.
Freedom Holding, Inc.


**Equity Holders, Including those Holding More than 5%/Affiliates**
William Bennett Collett, Sr.
William Bennett Collett, Jr.
Hurd Family Limited Partnership (owned by Robert L. Hurd)
City National Bank of Florida, as Trustee under a Land Trust Agreement


**Lenders/Secured Creditors**
ABC Funding, LLC
Summit Partners Subordinated Debt Fund IV-A, L.P.
Summit Partners Subordinated Debt Fund IV-B, L.P.
Canyon Value Realization Fund, L.P.
Canyon Value Realization Master Fund, L.P.
Canyon Distressed Opportunity Master Fund, L.P.
Canyon-GRF Master Fund II, L.P.
Locust Street Funding LLC
JPMorgan Chase Bank, N.A.
Miami-Dade County, Florida


**Debtors' Other Bankruptcy Professionals**
Salazar Jackson LLP
Kapila & Company
Hudson & Calleja, LLC
Frost Brown Todd, LLC

---

[1]  Guggenheim Securities has limited its search to the parties in interest listed above, which were supplied by counsel to the Debtors.  Affiliates, subsidiaries, or parent companies of the parties listed above have **not** been searched unless specifically noted.

**Debtors' Officers and Directors**
Daniel Laccardi (officer)
Kimberly Tharp (officer)
Jennifer Chong (officer)
George Galloway (director)
James Varella
David Dodd
Phillip Skipp
Beatriz Perez
Billie J. Moriatiz
Kenneth Lewis
William Haden (director; recently passed away)

**Debtors' Twenty Largest Unsecured Creditors**
Allied Health Plans
American Gaming Systems, LLC
Aristocrat Technologies
Cousins, Chipman, and Brown
Dania Jai-Alai
Derby Lane
Edmunds Direct Mail, Inc.
Florida Legislative Consultants, Inc.
Gulfstream Park
Hudson and Calleja
IGT-Eastern Operating
International Sound Corporation
Miami Casino Management, LLC
Miami Gaming Ventures, LLC
Palm Beach Kennel
Roberts Communication Network, Inc.
SHFL Entertainment, Inc.
Sportech, Inc.
Tampa Bay Downs, Inc.

**Members of the Debtors' Official Committee of Unsecured Creditors (Not Included in Debtors' Twenty Largest Unsecured Creditors)**
Florida Lemark Corporation
S. Oden Howell, Jr.

**Debtors' Primary Insurers**
Allstate Insurance Company
Alterra Excess & Surplus Insurance Company (Member of Alterra Capital Holdings Limited)
Aspen Specialty Insurance Company
AvMed Health Plans
Colony Insurance Company
Crum & Forster Holding, Inc.
Fidelity National Indemnity Insurance Company
Florida Workers' Compensation Joint Underwriting Association, Inc.
The Hartford Steam Boiler Inspection and Insurance Company
Illinois National Insurance Company
Landmark American Insurance Company
Lexington Insurance Company
Lexon Insurance Company
Lloyd's of London
National Union Fire Insurance Company of Pittsburgh, PA
The North River Insurance Company
Philadelphia Indemnity Insurance Co. (Member of Tokio Marine Group)
Steadfast Insurance Company
Travelers (The Standard Fire Insurance Company)
Zurich American Insurance Company


**Debtors' Primary Banking Institutions**
Wells Fargo, N.A.
Bank of America, N.A.
TD Bank, N.A.
PNC Bank


**Debtors' Utility Providers**
Duke Energy
ADT Security System, Inc.
AT&T
AT&T Uverse
Comcast
Dallman Systems, Inc.
Deltacom 1058
DirectTV
Dish
Duke Energy
Earthlink, Inc.
ECG Long Distance

Florida City Gas
Florida Power & Light
Fort Pierce Utilities Authority
Miami Dade County Stormwater Utility
Miami Dade Water & Sewer
Rumpke
Vectren Energy
Waste Management of Dade County

**Regulatory Agencies**
Florida Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering

**Other Material Parties**
Silvermark, LLC

**Judges of the United States Bankruptcy Court for the Southern District of Florida**
Honorable Paul G. Hyman, Chief Judge
Honorable A. Jay Cristol
Honorable Laurel M. Isicoff
Honorable Erik P. Kimball
Honorable Robert A. Mark
Honorable John K. Olson
Honorable Raymond B. Ray

**Employees of the Office of the United States Trustee Covering the Southern District of Florida**
Steven R. Turner
Johanna P. Armengol
Heather Barfus
Roland Del Forn
Diane M. DeZinno
Heidi A. Feinman
Lynn M. Fernandez
Myriam A. Fernandez
Charles A. Fordham
Benedicto J. Gonzalez-Leon
Sofia Kesep
Keith H. Kronin

Sonia Lebron
Lupe M. Martinez
Hugo L. Paiz
Ariel Rodriguez
Damaris D. Rosich-Schwartz
Zana M. Scarlett
Steven D. Schneiderman
Katherine E. Simons
Diana M. Vidal


**<u>Clerk of the US Bankruptcy Court for the Southern District of Florida</u>**
Katherine Gould Feldman

### Exhibit B to Affidavit of Alex C. Fisch

**Client Match List**

The following are Potential Parties-in-Interest that are current or former clients of, or have other connections to the Investment Banking Department of Guggenheim Securities:

| Party | Relationship |
|---|---|
| Wells Fargo, N.A. | Wells Fargo & Co. is a former client of Investment Banking Department on a matter unrelated to this case. |

### Exhibit C to Affidavit of Alex C. Fisch

**Vendor Match List**

The following are Potential Parties-in-Interest which are amongst the top one hundred vendors to Guggenheim Partners, calculated by the total amount paid to such vendors by Guggenheim Partners and its affiliates during the twelve month period from November 7, 2012 to November 7, 2013:

| | |
|---|---|
| AT&T | AT&T MOBILITY is a vendor providing services unrelated to the current case. |
| Wells Fargo, N.A. | Wells Fargo Advisors LLC- 1 North Jefferson Avenue-St. Louis, MO is a vendor providing services unrelated to the current case. |
| Sidley & Austin | Sidley & Austin is a vendor providing legal services to Guggenheim Partners and its affiliates, unrelated to the current case. |

Additional note:  the law firm of Sidley & Austin also provides legal services to Guggenheim Partners and its affiliates.

## Exhibit D to Affidavit of Alex C. Fisch

**Other Customers or Clients of Guggenheim Securities**

The following are Potential Parties-In-Interest that are current or former customers or clients of Guggenheim Securities (other than the Investment Banking Department):

| Party (as included in the Potential Parties-In-Interest list) | Relationship |
|---|---|
| Wells Fargo, N.A. | Current or former Customer or Client of the Sales and Trading Department |
| Lloyds of London | Current or former Customer or Client of the Sales and Trading Department |
| Comcast | Current or former Customer or Client of the Sales and Trading Department |
| Allstate Insurance Company | Current or former Customer or Client of the Sales and Trading Department |
| Travelers | Current or former Customer or Client of the Sales and Trading Department |
| Bank of the West | Current or former Customer or Client of the Sales and Trading Department |
| PNC Bank, NA | Current or former Customer or Client of the Sales and Trading Department |

### Exhibit E to Affidavit of Alex C. Fisch

**Research and Market-Making Match List**

The following are Potential Parties-In-Interest which Guggenheim Securities Equity Research Department publishes research reports on:

| | |
|---|---|
| JPMorgan Chase & Co. | Guggenheim Securities publishes research on JPMorgan Chase & Co. |
| Bank of America | Guggenheim Securities publishes research on Bank of America |
| Comcast | Guggenheim Securities publishes research on Comcast Corporation |
| Wells Fargo, NA | Guggenheim Securities publishes research on Wells Fargo. |
| Direct TV | Guggenheim Securities publishes research on Directv. |

# EXHIBIT "B"

**GUGGENHEIM**

GUGGENHEIM SECURITIES, LLC
330 MADISON AVENUE
NEW YORK, NEW YORK 10017
GUGGENHEIMPARTNERS.COM

November 8, 2013

Florida Gaming Corporation
3500 NW 37th Avenue
Miami, Florida  33142

Attention:        Mr. W. Bennett Collett, Jr.
                  President and Chief Executive Officer

Ladies and Gentlemen:

This letter agreement (together with the Annex and the Indemnification Provisions attached hereto, this "Agreement") confirms the agreement between Florida Gaming Corporation (collectively with its subsidiaries and affiliates and as more fully described below, the "Company") and Guggenheim Securities, LLC ("Guggenheim Securities") as follows:

1.  The Company hereby engages Guggenheim Securities to act, on an exclusive basis, as the Company's financial advisor and investment banker in connection with any Restructuring Transaction (as hereinafter defined), any Financing Transaction (as hereinafter defined) and/or any Sale Transaction (as hereinafter defined).

2.  Guggenheim Securities hereby accepts the engagement and, in that connection, to the extent requested by the Company and appropriate under the circumstances, agrees to assist the Company with respect to the following:

    (a)  *General Financial Advisory and Investment Banking Services.*  Guggenheim Securities will:

         (i)   To the extent it deems necessary, appropriate and feasible, review and analyze the Company's business, financial condition and prospects;

         (ii)  If the Company determines to undertake any Restructuring Transaction, any Financing Transaction and/or any Sale Transaction, advise and assist the Company in structuring and effecting the financial aspects of any such Transaction or Transactions (each as defined below), subject to the terms and conditions of this Agreement.

    (b)  *Restructuring Services.*  If the Company determines to pursue or effect any Restructuring Transaction, Guggenheim Securities will:

         (i)   Provide financial advice and assistance to the Company in developing and seeking approval of any such Restructuring Transaction, including a plan of reorganization or liquidation (as the same may be modified from time to time, a "Plan"), which may be a plan under chapter 11 ("Chapter 11") of title 11 of the United States Code, 11 U.S.C.

Florida Gaming Corporation
November 8, 2013
Page 2

§§ 101 *et. seq.* (the "Bankruptcy Code") confirmed in connection with the bankruptcy cases commenced under the Bankruptcy Code in the United States Bankruptcy Court, Southern District of Florida (Miami) (the "Bankruptcy Court") by the Company and its subsidiaries and affiliates, whether individually or on a consolidated basis (a "Bankruptcy Case"), identified as case numbers 13-29597-RAM, 13-29598-RAM, 13-29603-RAM and 13-29607-RAM;

(ii) If requested by the Company in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under the Plan;

(iii) If requested by the Company, assist the Company and/or participate in negotiations with any entities or groups affected by the Plan; and

(iv) If requested by the Company, participate in hearings before the Bankruptcy Court with respect to the matters upon which Guggenheim Securities has provided advice, including, as relevant, coordinating with the Company's legal counsel with respect to testimony in connection therewith.

(c) *Financing Services.*    If the Company determines to pursue or effect any Financing Transaction, Guggenheim Securities will:

(i) Provide financial advice and assistance to the Company in structuring and effecting any such Financing Transaction, identify potential investors ("Investors") with respect to such Financing Transaction and, at the Company's request, solicit such Investors;

(ii) If Guggenheim Securities and the Company deem it advisable, assist the Company in developing and preparing Offering Materials (as defined in the Annex) to be used in soliciting Investors with respect to any Financing Transaction, and

(iii) If requested by the Company, assist the Company and/or participate in negotiations with Investors.

(d) *Sale Services.*    If the Company determines to pursue or effect any Sale Transaction, Guggenheim Securities will:

(i) Provide financial advice and assistance to the Company in connection with any such Sale Transaction, identify Acquirors (as defined below) with respect to such Sale Transaction and, at the Company's request, solicit such Acquirors;

(ii) If Guggenheim Securities and the Company deem it advisable, assist the Company in developing and preparing Offering Materials to be used in soliciting Acquirors with respect to any Sale Transaction; and

(iii) If requested by the Company, assist the Company and/or participate in negotiations with Acquirors.

Florida Gaming Corporation
November 8, 2013
Page 3

(e) *Certain Caveats and Limitations.*  In providing its services to the Company pursuant to this Agreement, Guggenheim Securities is not assuming any responsibility for the Company's underlying business and financial decision to pursue, endorse, support or effect (or not to pursue, endorse, support or effect) any business or financial strategy or to effect or not to effect any Restructuring Transaction, any Financing Transaction, any Sale Transaction and/or any other transaction.  The Company agrees that Guggenheim Securities will not have any obligation or responsibility to provide, nor will Guggenheim Securities be deemed to have provided, any (i) legal, accounting, audit, tax, actuarial or other specialist advice for or to the Company, (ii) "crisis management" or business consultant services for or to the Company, (iii) professional services related to designing or implementing operational, organizational, administrative, cash management or liquidity improvements related to the Company or (iv) fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any Transaction.  The Company confirms that it will rely on its own legal counsel, accountants, tax advisors, actuaries and similar expert advisors for all legal, accounting, audit, tax, actuarial and other similar advice.

(f) *Additional Services.*  Finally, Guggenheim Securities agrees to provide such other financial advisory and investment banking services as may be agreed upon by Guggenheim Securities and the Company in writing during the term of this engagement.

3.  For purposes herein:

(a) The term "Company" includes affiliates of the Company and any entity that the Company or its affiliates may form or invest in to consummate any Restructuring Transaction, any Financing Transaction and/or any Sale Transaction and will also include any successor to or assignee of all or a portion of the assets and/or businesses of the Company whether pursuant to a Plan or otherwise.

(b) The term "Restructuring Transaction" means and includes any restructuring, reorganization, rescheduling, recapitalization, reduction, cancellation, elimination, retirement, refinancing, purchase, repurchase and/or a material modification or amendment of all or any material portion of the Company's debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, unfunded pension and retiree medical liabilities, lease obligations, trade credit facilities, contract or tort obligations, joint venture interests and/or partnership interests), preferred stock, common stock and/or hybrid securities, however such result is achieved, including without limitation through any one or more of the following means, whether in one or a series of transactions:  (i) a Plan confirmed in connection with a Bankruptcy Case and/or (ii) an exchange offer, a consent solicitation, a solicitation of waivers, acceptances or authorizations, covenant relief, the rescheduling of debt maturities, a change in interest rates, the settlement or forgiveness of debt, the conversion of debt into equity and/or other amendments to the terms, conditions or covenants of the Company's debt instruments.

(c) The term "Financing Transaction" means and includes one or a series of transactions in which the Company raises, sells, places, or issues, including through a rights offering, any

Florida Gaming Corporation
November 8, 2013
Page 4

(i) secured or unsecured debt (including, without limitation, any loan, debentures, bonds, notes, asset-backed debt, financing, other structured debt securities, instruments or obligations and/or any "debtor-in-possession financing" or "exit financing" in connection with a Bankruptcy Case) (any of the foregoing, a "Debt Financing") or (ii) equity interests including, without limitation, any preferred stock or common stock, any equity-linked securities, any convertible debt or equity securities, or any options, warrants or other rights to acquire equity interests in the Company or any of its subsidiaries or affiliates (any of the foregoing, an "Equity Financing"), in all cases whether effected pursuant to a Plan confirmed in connection with a Bankruptcy Case, outside of a Bankruptcy Case or otherwise.

(d)  The term "Sale Transaction" means and includes any transaction or series of related transactions whereby, directly or indirectly, a significant portion of the equity securities of the Company held by the equity security holders of the Company or a significant portion of any of the Company's or its subsidiaries' businesses or assets are transferred to, disposed of, or combined with one or more persons, groups of persons, partnerships, corporations or any other entity (including, without limitation, one or more of the Company's creditors acquiring such businesses or assets through a credit bid) (any of the foregoing, including any potential acquiror, each an "Acquiror" and collectively "Acquirors" and, together with Investors and any parties asserting claims against or equity interests in the Company, "Transaction Counterparties"), including without limitation via (i) a sale, acquisition, purchase or exchange of stock (including shares issuable upon conversion of any securities or debt convertible into stock) or options, (ii) the acquisition of all or any significant portion of the assets, properties or businesses of the Company or any of its subsidiaries by way of a direct or indirect acquisition, purchase, exchange, joint venture, partnership, other business combination or other means, including, without limitation, transactions under Section 363 of the Bankruptcy Code (including, without limitation, one or more of the Company's creditors acquiring such businesses or assets through a credit bid), (iii) a lease or license of assets (with or without a purchase option), (iv) a joint venture or (v) a merger, reverse merger, consolidation, reorganization, scheme of arrangement, tender offer, exchange offer, leveraged buyout, recapitalization or any other such corporate transaction or business combination involving the Company.

(e)  The terms "Transaction" and "Transactions" may be used herein to refer to any or all of a Restructuring Transaction, a Financing Transaction and/or a Sale Transaction.

4.  In consideration of Guggenheim Securities' services pursuant to this Agreement, the Company agrees to pay Guggenheim Securities the cash fees as outlined below:

(a)  *Initial Fee.*  The Company will pay Guggenheim Securities a non-refundable cash financial advisory fee of $100,000 (the "Initial Fee"), which will be due and paid by the Company upon the execution of this Agreement.  Whether or not any Restructuring Transaction, Financing Transaction or Sale Transaction has taken place or will take place, Guggenheim Securities will earn and be paid the Initial Fee.

Florida Gaming Corporation
November 8, 2013
Page 5

    (b)  *Monthly Fees:*

        (i)   The Company will pay Guggenheim Securities a non-refundable cash fee of $50,000 per month (each, the "Monthly Fee" and collectively, the "Monthly Fees"), which will be due and paid by the Company in advance beginning April 1, 2014 and thereafter on the first day of each month during the term of this Agreement.

        (ii)  Whether or not any Restructuring Transaction, Financing Transaction or Sale Transaction has taken place or will take place, Guggenheim Securities will earn and be paid each Monthly Fee every month through the Termination Date.

    (c)  *Restructuring Transaction Fee(s):*

If at any time during the term of this engagement or within the twenty-four full months following the expiration or termination of this engagement (including the term of this engagement, the "Fee Period"), (A) any Restructuring Transaction is consummated or (B) (I) an agreement in principle, definitive agreement or Plan to effect a Restructuring Transaction is entered into and (II) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Restructuring Transaction is consummated, the Company will pay Guggenheim Securities a cash fee (a "Restructuring Transaction Fee") in an amount based on the Aggregate Restructuring Value (as defined below) and calculated as follows: (X) 1.000% of the Aggregate Restructuring Value up to $120,000,000 plus (Y) 2.000% of the Restructuring Value, if any, between $120,000,000 and $140,000,000 plus (Z) 3.000% of the Restructuring Value, if any, in excess of $140,000,000.  Notwithstanding the foregoing, in the event Silvermark LLC is the "stalking horse" for a majority of the Company's assets and if at any time during the Fee Period, (A) any Sale Transaction is consummated or (B) (I) an agreement in principle, definitive agreement or Plan to effect a Sale Transaction is entered into and (II) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Sale is consummated, the Company will pay Guggenheim Securities one or more cash fees (each, a "Sale Transaction Fee") in an amount based on the Aggregate Sale Consideration (as defined below) and calculated as follows: (X) 0.500% of the Aggregate Sale Consideration up to $130,000,000 plus (Y) 5.000% of the Aggregate Sale Consideration, if any, between $130,000,000 and $160,000,000 plus (Z) 3.000% of the Aggregate Sale Consideration, if any, in excess of $160,000,000.

        (i)

        (ii)  Any such Restructuring Transaction Fee will be payable promptly upon the consummation of any Restructuring Transaction.

        (iii)  Notwithstanding the foregoing, if a Restructuring Transaction is to be effectuated pursuant to Section 3(a)(9) of the Securities Act of 1933, as amended (the "Securities Act"), any Restructuring Transaction Fee (the "Section 3(a)(9) Transaction Fee") will be fully earned and payable on the date that definitive offer documents for any exchange offer under Section 3(a)(9) of the Securities Act are first distributed to creditors whose claims would be affected thereby, and such Section 3(a)(9)

Florida Gaming Corporation
November 8, 2013
Page 6

Transaction Fee will be payable without regard to the results of such offer or any other contingency.  For the avoidance of doubt, Guggenheim Securities will not earn a Restructuring Transaction Fee other than the Section 3(a)(9) Transaction Fee with respect to any Restructuring Transaction pursuant to Section 3(a)(9) of the Securities Act.

(iv) For purposes hereof, the term "Aggregate Restructuring Value" will mean and include the aggregate (A) principal or face amount of all of the Company's outstanding indebtedness (including accrued and unpaid interest) and existing but undrawn credit facilities and/or lines of credit, (B) liquidation preference of the Company's preferred stock (including any accrued and unpaid dividends) and (C) face amount of all other obligations (including, without limitation, any capital leases), in all such cases whether such indebtedness, credit facilities, preferred stock, and other obligations are restructured, recapitalized (including without limitation, through any exchange, conversion, cancellation, forgiveness, retirement and/or material modification or amendment to the terms, conditions or covenants thereof), refinanced, replaced, refunded, extended, defeased, assumed, acquired, retired, redeemed or repaid (directly or indirectly) in connection with the Restructuring Transaction or whether they remain on the Company's financial statements upon consummation of the Restructuring Transaction.

(d) *Financing Fee(s):*

(i) If at any time during the Fee Period, (x) any Financing Transaction is consummated, (y) (I) an agreement in principle, definitive agreement or Plan to effect a Financing Transaction is entered into and (II) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Financing Transaction is consummated and/or (z) the Company receives and accepts written commitments (which, for purposes hereof, will include the execution by the Company and any Investor of any commitment letter, securities purchase agreement, backstop agreement or other such definitive commitment documentation) in connection with one or more Financing Transactions, the Company will pay Guggenheim Securities one or more cash fees (each, a "Financing Fee") in an amount equal to the sum of:

A. One hundred fifty basis points (1.50%) of the aggregate face amount of any new debt obligations issued or raised by the Company in any Debt Financing that is secured by a first lien, plus

B. Three hundred basis points (3.00%) of the aggregate face amount of any new debt obligations issued or raised by the Company in any Debt Financing that is secured by a second or more junior lien, plus

C. Three hundred basis points (3.00%) of the aggregate face amount of any new debt obligations issued or raised by the Company in any Debt Financing that is unsecured and/or subordinated, plus

    D.  Six hundred basis points (6.00%) of the aggregate amount or stated value of any new capital issued or raised by the Company in any Equity Financing; plus

    E.  With respect to any other securities or indebtedness issued that is not otherwise covered by Sections 4(d)(i)A to 4(d)(i)D above, such financing fees, underwriting discounts, placement fees or other compensation as customary under the circumstances and mutually agreed in advance by the Company and Guggenheim Securities.

(ii)  Any such Financing Fees will be payable promptly upon the receipt of any written commitment for a Financing Transaction described above or, if no such written commitment is received, the Financing Fee will be payable promptly upon the closing of each Financing Transaction.

(iii)  The Company expressly acknowledges and agrees that a separate Financing Fee will be payable to Guggenheim Securities with respect to each Financing Transaction in the event that more than one Financing Transaction is effected or occurs.

(iv)  Notwithstanding anything to the contrary in this Section 4(d) and in addition to any other Financing Fee due hereunder, if at any time during the Fee Period, the Company obtains a written commitment for a debtor-in-possession financing, Guggenheim Securities will be entitled to receive a Financing Fee of 100 basis points (1.00%) of the aggregate amount of such commitment, which fee will be due and payable at the signing of such commitment.

(e)  *Sale Transaction Fee(s):*

(i)  If at any time during the Fee Period, (A) any Sale Transaction is consummated or (B) (I) an agreement in principle, definitive agreement or Plan to effect a Sale Transaction is entered into and (II) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Sale is consummated, the Company will pay Guggenheim Securities one or more cash fees (each, a "Sale Transaction Fee") in an amount based on the Aggregate Sale Consideration (as defined below) and calculated as follows: (X) 1.000% of the Aggregate Sale Consideration up to $120,000,000 plus (Y) 2.000% of the Aggregate Sale Consideration, if any, between $120,000,000 and $140,000,000 plus (Z) 3.000% of the Aggregate Sale Consideration, if any, in excess of $140,000,000.

(ii)  Any such Sale Transaction Fee will be payable promptly upon the consummation of any Sale Transaction.

(iii)  The Company expressly acknowledges and agrees that a separate Sale Transaction Fee will be payable to Guggenheim Securities respect to each Sale Transaction in the event that more than one Sale Transaction is effected or occurs.

(iv)  For purposes hereof, the term "Aggregate Sale Consideration" will mean and include (A) the total amount of cash and the fair market value of all securities and/or other

property or consideration in any form paid or to be paid, directly or indirectly, by the Acquiror to the Company and/or its contract parties, claim holders, security holders and employees in connection with the Sale Transaction or any transaction related thereto (including, without limitation, the face amount of any indebtedness, securities or other property "credit bid" in any Sale Transaction and amounts paid by the Acquiror (I) pursuant to covenants not to compete, employment contracts, employee benefit plans or other similar arrangements of the Company and (II) to holders of any warrants, stock purchase rights, convertible securities or similar rights of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested) plus (B) the amount of any liabilities (including the principal amount of any indebtedness for borrowed money and any obligations relating to any capitalized leases) or preferred stock assumed, acquired, redeemed or repaid (directly or indirectly) following the execution of definitive documents with respect to a Sale Transaction or in connection with the Sale Transaction or related transaction or which remains on the Company's financial statements at the time of the Sale Transaction plus (C) only to the extent greater than zero, (I) the value of any current assets not sold to the Acquiror minus (II) the value of any current liabilities not assumed by the Acquiror, each such value as of the closing date of the Sale Transaction and as determined by Guggenheim Securities in good faith plus (D) to the extent in connection with or in contemplation of the Sale Transaction or any related transaction, any (I) amounts paid into escrow, (II) consideration that is contingent upon the occurrence of some future event (*e.g.,* the net present value of any expected future earnout payments, milestone payments or royalties on future sales), (III) the aggregate amount of any dividends or other distributions declared by the Company (other than regularly scheduled dividends) and (IV) amounts paid by the Company to repurchase any securities of the Company (other than pre-existing, ordinary course repurchase programs).  In calculating "Aggregate Sale Consideration," any shares issuable upon exercise of "in-the-money" options, warrants or other "in-the-money" rights of conversion, whether or not vested, will be deemed to be acquired by such Acquiror for the same consideration paid or to be paid with respect to such shares. As used in this Agreement, the terms "payment," "paid" or "payable" will be deemed to include, as applicable, the issuance or delivery of securities or other property other than cash.

(v)     In the event that a Sale Transaction takes the form of a recapitalization of the Company (including, without limitation, an extraordinary dividend, a spin-off, split-off or similar transaction), Aggregate Consideration will also include the fair market value of (i) the equity securities of the Company retained by the Company's security holders and/or creditors following the consummation of such Transaction and (ii) any cash, securities (including securities of subsidiaries) or other consideration received by the Company's security holders and/or creditors in exchange for or with respect to any securities of and/or claims against the Company in connection with such Transaction (all such cash, any such securities or and/or claims against other consideration received by such security holders and/or creditors being deemed to have been paid to such security holders and/or creditors in such Transaction).

Florida Gaming Corporation
November 8, 2013
Page 9

(vi)  If any portion of the Aggregate Sale Consideration is paid in the form of securities, the value of such securities, for purposes of calculating the Sale Transaction Fee, will be determined based on the average of the closing price for such securities on the five trading days ending three trading days prior to the date of the closing.  If such securities do not have an existing trading market, the value of the securities will be the fair market value on the day prior to the closing as determined by Guggenheim Securities in good faith.

(f)  *Miscellaneous.*  The Company expressly acknowledges and agrees that more than one fee and more than one type of fee may be payable to Guggenheim Securities hereunder in connection with any single Transaction or a series of Transactions, and in each case, each such fee will be paid to Guggenheim Securities.  No fee or compensation payable to any third party by the Company or any other person or entity in connection with the subject matter of this engagement will reduce or otherwise affect any fee payable by the Company to Guggenheim Securities hereunder.

5.  In addition to any fees payable by the Company to Guggenheim Securities hereunder, the Company will, whether or not any Transaction contemplated by this Agreement will be proposed or consummated, reimburse Guggenheim Securities on a monthly basis for its travel and all other reasonable out-of-pocket expenses incurred in connection with or arising out of this Agreement, including Guggenheim Securities' entering into this Agreement, Guggenheim Securities' activities under or contemplated by this Agreement or Guggenheim Securities' enforcing its rights hereunder, including all fees, disbursements and other charges of any legal counsel retained by Guggenheim Securities (without the requirement that the retention of such legal counsel be approved by the Bankruptcy Court) and any other consultants and advisors retained by Guggenheim Securities.  Guggenheim Securities bills its clients for its reasonable out-of-pocket expenses including, but not limited to, (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Guggenheim Securities may receive from, or fixed fee arrangements made with, travel agents, airlines or other vendors on a periodic basis and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Guggenheim Securities.  The Company will also reimburse Guggenheim Securities, at such times as Guggenheim Securities will request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to or contemplated by, this Agreement.  Such reimbursements will be made promptly upon submission by Guggenheim Securities of customary statements for such expenses.

6.  The Company's obligation to pay any fee, expense or indemnity set forth herein will be absolute and unconditional and will not be subject to any reduction by way of setoff, recoupment or counterclaim.

The Company acknowledges and agrees that (i) Guggenheim Securities' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions

Florida Gaming Corporation
November 8, 2013
Page 10

capabilities, some or all of which may be required during the term of Guggenheim Securities' engagement hereunder, were important factors in determining the nature and amount of the various fees set forth herein and (ii) the ultimate benefit of Guggenheim Securities' services hereunder cannot be measured merely by reference to the number of hours to be expended by Guggenheim Securities' professionals in the performance of such services.  The Company also acknowledges and agrees that (i) the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial professional commitment of time and effort will be required of Guggenheim Securities and its professionals in connection with this complex engagement, (ii) such commitment may foreclose other business opportunities for Guggenheim Securities and (iii) the actual time and commitment required of Guggenheim Securities and its professionals to perform its services hereunder may vary substantially from week to week or month to month, thereby creating potential "peak load" issues for Guggenheim Securities. Given the numerous and complex issues that may arise in engagements of this nature, the aforementioned issues with Guggenheim Securities' commitment to the variable level of time and effort necessary to address all such complex issues as they arise, the expertise and capabilities of Guggenheim Securities that will be required for this engagement and the market prices for professionals of Guggenheim Securities' stature and reputation for engagements of this nature, each of the Company and Guggenheim Securities agrees that the fee and expense arrangements hereunder are just and reasonable under all applicable legal standards and provide the requisite certainty to the Company.

7.  The Company and Guggenheim Securities agree to the following provisions with respect to the Bankruptcy Case:

(a)  The Company will apply promptly to the Bankruptcy Court for the approval, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, of this Agreement (including, without limitation, the compensation, expense and indemnification provisions hereof) and Guggenheim Securities' retention by the Company under the terms of this Agreement pursuant to, and subject to the standards of review set forth in, Section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in Section 330 of the Bankruptcy Code or any other standard of review), *nunc pro tunc* to the date first written above (or, if later, the date the Bankruptcy Case is commenced) and will use its best efforts to obtain an interim and final order of the Bankruptcy Court for authorization thereof. The Company will supply Guggenheim Securities and its legal counsel with a draft of such application and the proposed orders authorizing Guggenheim Securities' retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order (as the case may be) to enable Guggenheim Securities and its legal counsel to review and comment thereon.  The retention application and the proposed interim and final orders authorizing Guggenheim Securities' retention must be acceptable to Guggenheim Securities in its sole discretion. Prior to commencing a Bankruptcy Case, the Company will pay all amounts then earned and payable to Guggenheim Securities pursuant to this Agreement in cash.  In agreeing to seek Guggenheim Securities' retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that (i) it believes that Guggenheim Securities' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities will inure to the benefit of the Company, (ii) the value to the

Florida Gaming Corporation
November 8, 2013
Page 11

    Company of Guggenheim Securities' services derives in substantial part from that experience and expertise and (iii) accordingly, the structure and amount of the fees set forth in Section 4 herein are reasonable, regardless of the number of hours expended by Guggenheim Securities' professionals in the performance of the services to be provided hereunder.

(b)    Guggenheim Securities hereby notifies the Company that it does not keep time records as part of its normal business practice for engagements of this nature. Each of the Company and Guggenheim Securities acknowledges and agrees that Guggenheim Securities will have no obligation to keep any such time records and will have no obligation to provide services under this Agreement if it will be required to alter its normal time-keeping practices. If Guggenheim Securities is requested or required to alter is normal time-keeping practices, then Guggenheim Securities may terminate this Agreement, and the Company will be obligated to reimburse Guggenheim Securities for all fees, compensation and expenses incurred prior to the date of termination.

(c)    Guggenheim Securities will have no obligation to provide services under this Agreement or any other agreement unless Guggenheim Securities' retention under this Agreement or such other agreement is approved by a final order of the Bankruptcy Court acceptable to Guggenheim Securities in its sole discretion, which final order must also approve the Indemnification Provisions attached hereto and will not be subject to appeal, rehearing, reconsideration or petition for *certiorari* under Section 328(a) of the Bankruptcy Code (the "Retention Order"), within 60 days of the date first written above. If such Retention Order is not obtained within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, then Guggenheim Securities may terminate this Agreement, and the Company will be obligated to reimburse Guggenheim Securities for all fees and expenses incurred prior to the date of termination. Following entry of the interim order authorizing the retention of Guggenheim Securities, the Company will pay to Guggenheim Securities as promptly as possible all fees and expenses due pursuant to this Agreement, as approved by the Bankruptcy Court and in accordance with the terms of this Agreement, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and any applicable local rules and guidelines.

(d)    The Company agrees that Guggenheim Securities' post-petition fees as set forth herein, payments made pursuant to the expense reimbursement provisions of this Agreement and the Indemnification Provisions attached hereto will be entitled to priority as expenses of administration under Sections 503(b)(1)(A), 503(b)(2) and 507(a)(2) of the Bankruptcy Code and will be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs will be adequate to enable the Company to pay promptly Guggenheim Securities the fees and expense reimbursements contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect pursuant to one or more financing orders entered by the Bankruptcy Court. The Company will use its best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in such Chapter 11 case or cases (i) permits the use of cash collateral and financing proceeds for the full and prompt payment of all of Guggenheim Securities' fees and expenses contemplated hereby

Florida Gaming Corporation
November 8, 2013
Page 12

(including, without limitation, all fees contingent upon the occurrence of Transactions) and (ii) contains the agreements by the Company's lenders (or parties whose cash collateral is being used) that Guggenheim Securities' fees and expenses will be paid at the times and from the sources specified herein.  The Company also agrees to assist Guggenheim Securities in preparing, filing and serving all required monthly fee and expense statements, interim fee applications and a final fee application.  The Company agrees to support Guggenheim Securities' fee and expense applications during any Bankruptcy Court hearing regarding such applications, so long as the fees and expenses sought by Guggenheim Securities therein are consistent with this Agreement.

(e)   The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed Plan in the Bankruptcy Case contains typical and customary release provisions (both from the Company and from third parties) and exculpation provisions releasing, waiving and forever discharging Guggenheim Securities and any of its divisions and affiliates, any of Guggenheim Securities' and/or its affiliates' current and former directors, officers, partners, members, agents and employees, and any person controlling Guggenheim Securities and/or its affiliates from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities related to the Company or the engagement described in this Agreement.

(f)   The terms of this Section 7 are solely for the benefit of Guggenheim Securities and may be waived, in whole or in part, only by Guggenheim Securities in its sole discretion.

8.   The Company and Guggenheim Securities agree to the following termination and tail provisions:

(a)   Guggenheim Securities' engagement pursuant to this Agreement will extend until the earliest of the (i) effective date of a Plan confirmed in the Bankruptcy Cases, (ii) conversion of the Bankruptcy Cases to Chapter 7 of the Bankruptcy Code, (iii) appointment of a Chapter 11 trustee or an examiner with expanded powers in the Bankruptcy Cases, (iv) dismissal of the Bankruptcy Cases and (v) consummation of the last Restructuring Transaction, Financing Transaction and/or Sale Transaction (or any combination thereof), as agreed upon by Guggenheim Securities and the Company; *provided, however,* that this Agreement may be (i) terminated earlier, with or without cause, either by the Company or by Guggenheim Securities upon 10 business days' prior written notice thereof to the other party, (ii) terminated earlier as provided elsewhere herein or (iii) extended as may be agreed in writing by the Company and Guggenheim Securities.

(b)   Notwithstanding the foregoing, in the event of any expiration or termination of Guggenheim Securities' engagement pursuant to this Agreement, Guggenheim Securities will continue to be entitled to payment by the Company (or its bankruptcy estates) of (i) any unpaid fees pursuant to Section 4 of this Agreement and (ii) any unreimbursed expenses pursuant to Section 5 of this Agreement that were incurred by Guggenheim Securities as a result of services rendered prior to the date of such expiration or termination, all of which amounts will become immediately payable by the Company (or its bankruptcy estates) in full.  Furthermore, Sections 5 through 13 inclusive, and the Annex

Florida Gaming Corporation
November 8, 2013
Page 13

and the Indemnification Provisions attached hereto, will survive any expiration or termination of Guggenheim Securities' engagement hereunder.

(c) If, at any time prior to the expiration of the Fee Period (i) any Restructuring Transaction, Financing Transaction or Sale Transaction (or any combination thereof) is consummated or (ii) (A) an agreement in principle, definitive agreement or Plan to effect a Restructuring Transaction, Financing Transaction or Sale Transaction (or any combination thereof) is entered into and (II) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any such Transaction is consummated, then Guggenheim Securities will receive the appropriate fee specified in Section 4 above upon the earlier of the time period specified in Section 4 or immediately upon the closing of such Transaction.

9. The Company agrees to indemnify Guggenheim Securities and certain related persons in accordance with the Indemnification Provisions attached hereto. The Company acknowledges and agrees that the Annex and the Indemnification Provisions are integral parts of this Agreement, and the provisions thereof are incorporated by reference herein in their entirety. Such Annex and Indemnification Provisions will survive any termination or completion of Guggenheim Securities' engagement hereunder.

10. THE COMPANY ACKNOWLEDGES AND AGREES THAT (I) GUGGENHEIM SECURITIES WILL ACT SOLELY AS THE COMPANY'S FINANCIAL ADVISOR AND INVESTMENT BANKER IN CONNECTION WITH ANY TRANSACTION AND (II) THIS AGREEMENT DOES NOT CONSTITUTE AN EXPRESS OR IMPLIED COMMITMENT OR UNDERTAKING ON THE PART OF GUGGENHEIM SECURITIES AND/OR ITS AFFILIATES TO UNDERWRITE, PROVIDE OR PLACE ALL OR ANY PART OF ANY FINANCING TRANSACTION AND DOES NOT ENSURE OR GUARANTEE THE SUCCESSFUL ARRANGEMENT, PLACEMENT OR COMPLETION OF ANY RESTRUCTURING TRANSACTION, FINANCING TRANSACTION OR ANY PORTION THEREOF OR ANY SALE TRANSACTION.

11. EACH OF GUGGENHEIM SECURITIES AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY LAW, ON BEHALF OF ITS RESPECTIVE EQUITY HOLDERS AND CREDITORS) HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED UPON, ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

12. This Agreement will be deemed to be made in the State of New York. This Agreement and all controversies arising hereunder or directly or indirectly relating hereto will be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. If any term, provision, covenant or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, or against public policy, the remainder of the terms, provisions, covenants and restrictions contained herein will remain in full force and effect and will in no way be affected, impaired or invalidated. Both parties agree to the exclusive jurisdiction of the Bankruptcy Court to govern all aspects of this Agreement,

Florida Gaming Corporation
November 8, 2013
Page 14

including without limitation, any claims that are related to the Agreement.

13.  For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto, each of which will be an original instrument and all of which taken together will constitute one and the same Agreement.  Delivery of a signed counterpart of this Agreement by e-mail or facsimile transmission will constitute valid and sufficient delivery thereof.

✱               ✱               ✱

Florida Gaming Corporation
November 8, 2013
Page 15

We are delighted to accept this engagement and look forward to working with you on this important assignment.  Please confirm that the foregoing is in accordance with your understanding by signing in the space provided below and returning to us a duplicate of this Agreement, which will thereupon constitute a binding agreement between Guggenheim Securities and the Company.

Very truly yours,

GUGGENHEIM SECURITIES, LLC

By: _____

James D. Decker

Senior Managing Director

ACCEPTED AND AGREED TO:

FLORIDA GAMING CORPORATION

By: _____

r. W. Bennett Collett, Jr.

resident and Chief Executive Officer

# ANNEX

## Additional Provisions

Capitalized terms used herein without definition will have the meanings ascribed thereto in the letter agreement dated as of November 6, 2013 (as amended from time to time, the "Agreement") between Florida Gaming Corporation (collectively with its subsidiaries and affiliates and as further defined in the Agreement, the "Company") and Guggenheim Securities, LLC ("Guggenheim Securities").

A.  During the period of Guggenheim Securities' engagement hereunder, the Company will furnish or arrange to have furnished to Guggenheim Securities all industry, business, financial, legal, regulatory, tax, accounting, actuarial and other information concerning the Company (including, without limitation, its assets, businesses, operations, financial condition and prospects) and any Transaction, and, to the extent within the Company's control, any Transaction Counterparty that Guggenheim Securities reasonably deems appropriate for purposes of this engagement (collectively, the "Information") and will provide Guggenheim Securities with access to the Company's and, to the extent within the Company's control, any such Transaction Counterparty's officers, directors, employees, affiliates, appraisers, independent accountants, legal counsel and other agents, consultants and advisors (collectively with respect to any such party, "Representatives").  In addition, the Company agrees promptly to advise Guggenheim Securities of any material event or change in the business, affairs and/or condition (financial or otherwise) of the Company and, to the extent within the Company's knowledge, any Transaction Counterparty that occurs during the term of this Agreement.

The Company represents and warrants that all Information (i) made available by the Company or its Representatives to Guggenheim Securities or any Transaction Counterparty, (ii) contained in any offering or sales memorandum, offering circular or similar disclosure document for any Transaction and/or posted on any online data-room in connection with any Transaction (as amended and supplemented from time to time, any "Offering Materials"), (iii) contained in any filing by the Company with (a) the Bankruptcy Court (including, without limitation, any Plan) or (b) any governmental or regulatory agency or commission or any rating agency (each of the foregoing, an "Agency") with respect to any Transaction in all such cases will, at all times during the period of the engagement of Guggenheim Securities hereunder, be true, complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which such statements are made, not misleading.  The Company further represents and warrants that any projections or other information provided by the Company or its Representatives to Guggenheim Securities, any Transaction Counterparty, the Bankruptcy Court and/or any Agency, or contained in any Offering Materials, will have been prepared in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable.

B.  The Company acknowledges, agrees and confirms that the Company will be solely responsible for the contents of any Offering Materials and that, in providing its services pursuant to this Agreement, Guggenheim Securities (i) is and will be entitled to rely upon and assume the accuracy, completeness and reasonableness of all Information furnished by or discussed with the Company, any Transaction Counterparty and their respective Representatives, or available

from public sources, data suppliers and other parties; (ii) does not and will not assume responsibility, obligation or liability (whether direct or indirect, in contract or tort or otherwise) for the accuracy, completeness, reasonableness or achievability of any such Information; (iii) will have no responsibility or obligation to independently verify such Information or to conduct any independent evaluation or appraisal of the assets or liabilities (including any contingent, derivative or off-balance sheet assets and liabilities) of the Company, any Transaction Counterparty or any other party; (iv) will assume that all financial projections, synergy estimates, other estimates and other forward-looking information (all of the foregoing, "Forward-Looking Information") that may be furnished by or discussed with the Company or any Transaction Counterparty and their respective Representatives will have been reasonably prepared and reflect the best then-currently available estimates and judgments of the Company's and/or such Transaction Counterparty's senior management (as the case may be) as to the expected future performance of the relevant company or entity and the realization of any such synergies; (v) will express no view, opinion, representation, guaranty or warranty (in each case, express or implied) regarding the reasonableness or achievability of such Forward-Looking Information; and (vi) will have no responsibility or obligation to evaluate the solvency of the Company, any Transaction Counterparty or any other party under any US federal or state laws relating to bankruptcy, insolvency or similar matters. Guggenheim Securities' role in connection with any due diligence investigation will be limited solely to performing such review as it will deem necessary to support its own financial advice and analyses and will not be on behalf of the Company or any other party.

C. The Company hereby authorizes Guggenheim Securities to use and distribute the Offering Materials and other Information and documents provided by the Company pursuant to this Agreement to solicit Transaction Counterparties in connection with any Transaction. The Company further authorizes the negotiation and execution by Guggenheim Securities of confidentiality agreements (in a form approved by the Company) on the Company's behalf with Transaction Counterparties in connection with any Transaction.

The Company understands and acknowledges that in connection with this Agreement and any Transaction, Guggenheim Securities will communicate electronically, by e-mail and other such media, with the Company, Transaction Counterparties, their respective Representatives and/or other participants in any such Transaction and that Information belonging to the Company may be stored electronically on Guggenheim Securities' information systems. The Company further understands and acknowledges that (i) any such electronic communication could be intercepted, corrupted, lost, destroyed, infected by virus or otherwise be adversely affected or unsafe to use, (ii) the security or integrity of any such electronic communications cannot be guaranteed by Guggenheim Securities and (iii) Guggenheim Securities will not be liable for any damages resulting from unauthorized access, misuse or alteration of such Information by persons not acting on its behalf, provided that Guggenheim Securities exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's Information that it exercises with regard to its most sensitive proprietary information.

In the event that, during the period of the engagement of Guggenheim Securities hereunder, the Company and/or any of its Representatives is/are contacted by or on behalf of any party concerning the possibility of a Transaction, the Company will promptly so inform Guggenheim Securities so that it can evaluate such party and its interest and assist the Company in any subsequent discussions. The Company also will disclose any discussions, negotiations or

inquiries with respect to the Company and/or any Transaction that have occurred during the one year period prior to the date of this Agreement.  In addition, the Company also will promptly inform Guggenheim Securities in the event that the Company retains any legal counsel, consultant or other advisor or Representative in connection with any Transaction.  The Company will keep confidential and will not disclose or distribute to any person (other than its Representatives) the Offering Materials or any other materials related to any Transaction, or otherwise advertise to or solicit Transaction Counterparties with respect to any Transaction without Guggenheim Securities' prior consent.

D.   All advice (written or oral) provided by Guggenheim Securities in connection with Guggenheim Securities' engagement (i) is intended solely for the benefit and use of the Company's Board of Directors (solely in its capacity as such) and senior management and (ii) is not intended for the benefit and use by, and with respect to any Transaction will not constitute any recommendation to, the Company's controlling stockholders or other stockholders, creditors or any other constituency.  The Company agrees that, notwithstanding any expiration or termination of Guggenheim Securities' engagement, no such advice will be used or relied upon for any other purpose or by any other person or entity, be disclosed publicly or made available to third parties or be reproduced, disseminated, quoted from or referred to at any time, in any manner or for any purpose, nor will any public references to Guggenheim Securities be made by the Company, in each case without Guggenheim Securities' prior written consent

E.   The Company hereby acknowledges that Guggenheim Securities and its affiliates engage in a wide range of financial services activities for their own accounts and the accounts of customers, including asset and investment management, investment banking, corporate finance, mergers and acquisitions, restructuring, merchant banking, fixed income and equity sales, trading and research, derivatives, foreign exchange and futures.  In the ordinary course of these activities, Guggenheim Securities or its affiliates may (i) provide such financial services to the Company and/or any Interested Party (as defined below), for which services Guggenheim Securities or certain of its affiliates has received, and may receive, compensation and (ii) directly or indirectly, hold long or short positions, trade and otherwise conduct such activities in or with respect to certain debt or equity securities, bank debt and derivative products of or relating to the Company and/or any Interested Party.  In particular, certain asset management affiliates of Guggenheim Securities and accounts managed by such affiliates may arrange or participate in financing for or by any Transaction Counterparty or the Company in connection with any Transaction.  Furthermore, Guggenheim Securities' affiliates, directors, officers and employees may have investments in the Company and/or any Interested Party.

For purposes hereof, the term "Interested Party" includes, without limitation, the Company's stockholders and creditors, any Transaction Counterparty, other participants in any Transaction or any of the foregoing parties' respective affiliates, subsidiaries, investment funds and portfolio companies.

At any given time, Guggenheim Securities and/or its affiliates may be engaged by one or more entities that may be competitors with, or otherwise adverse to, the Company in connection with matters unrelated to any Transaction.  As a result, it is possible that Guggenheim Securities and/or its affiliates may from time to time be involved in one or more capacities that, directly or indirectly, may be or may be perceived as being adverse to the Company's interests in the context of a potential Transaction or otherwise.  Moreover, Guggenheim Securities and/or its

affiliates may, in the course of other client relationships, have or in the future acquire or come into possession of information material to the Company's interests in the context of a potential or actual Transaction or otherwise which, by virtue of such other client relationships, Guggenheim Securities and/or its affiliates is/are not or will not be at liberty to disclose to the Company.

Consistent with applicable legal and regulatory guidelines, Guggenheim Securities has adopted certain policies and procedures to establish and maintain the independence of its research departments and personnel.  As a result, Guggenheim Securities' research analysts may hold views, make statements or investment recommendations and/or publish research reports with respect to the Company, any Interested Party and/or any Transaction that differ from the views of Guggenheim Securities' investment banking personnel.

Any financing, derivative or other transactions executed by Guggenheim Securities and/or any of its affiliates arising out of or relating to any Transaction or otherwise, including any commitment to underwrite, place or purchase any financing or securities, will be set forth in a separate underwriting, placement agency or other appropriate agreement and will be negotiated, entered into and performed on an arm's length basis independent of this engagement.  Nothing herein will constitute an express or implied agreement or commitment of any kind by Guggenheim Securities and/or its affiliates with respect to any such financing, derivative or other transactions.  The Company, on its own behalf and on behalf of its affiliates, hereby expressly confirms that it and its affiliates will independently make their own analyses and decisions with respect to any such financing, derivative or other transactions based on such information as they deem appropriate and without reliance upon this engagement or any services or advice provided by Guggenheim Securities hereunder.

F.   Guggenheim Securities may, at its option and expense, include the Company's name and logo and a description of Guggenheim Securities' role in connection with any Transaction in such websites, newspapers, periodicals, annual reports and other public marketing materials as it may choose.  If requested by Guggenheim Securities, the Company agrees to use its commercially reasonable efforts to include a mutually acceptable reference to Guggenheim Securities and its role as the Company's financial advisor and investment banker in any press release or other public announcement which may be issued in connection with the matters described in this Agreement.

G.   To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing such business.  Accordingly, the Company will provide Guggenheim Securities upon request with certain identifying information or documents sufficient to verify the Company's identity, including a government-issued identification number (*e.g.,* a US taxpayer identification number) and certain other information or documents necessary to verify the Company's identity (*e.g.,* a certificate of incorporation, a government-issued business license, a partnership agreement or a trust instrument).

H.   The Company represents to the best of its knowledge that none of (i) the Company, (ii) any person controlling or controlled by the Company, (iii) any person having a beneficial ownership interest in the Company and (iv) any person for whom the Company acts as an agent or

nominee is (x) a country, territory, individual or entity named on the US Treasury Department's Office of Foreign Assets Control ("OFAC") list, (y) a person or entity prohibited under the programs administered by OFAC ("OFAC Programs") or according to other US government regulatory or enforcement agencies or (z) a country, territory, individual or entity named on another international sanctions list.  The Company further represents that, to the best of its knowledge, none of the proceeds of any Transaction will be derived from or used for any purpose prohibited under the OFAC Programs or other international sanctions programs.

I.  Notwithstanding any agreement or representation, written or oral, by either the Company or Guggenheim Securities in connection with any Transaction, the Company and its Representatives will have no obligation to Guggenheim Securities to maintain the confidentiality of the tax treatment and tax structure of any Transaction or any materials of any kind (including opinions or other analyses) that are provided to the Company relating to such tax treatment and tax structure.  As required by US Treasury Regulations, Guggenheim Securities hereby informs the Company that (i) any discussion of federal tax issues contained or referred to in any materials prepared by Guggenheim Securities in connection with its engagement hereunder is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code and (ii) such discussion is written to support the promotion or marketing of the matters addressed therein.  Guggenheim Securities does not provide legal, tax, accounting or actuarial advice.  The Company will consult its own legal, tax, accounting and/or actuarial advisors in connection with any Transaction.

J.  Each of the Company and Guggenheim Securities irrevocably (i) submits to the jurisdiction of any court of the State of New York located in the Borough of Manhattan and/or the United States District Court for the Southern District of New York for the purpose of any suit, action or other proceeding arising out of this Agreement or any of the agreements or transactions contemplated hereby (each, a "Proceeding"), (ii) agrees that all claims in respect of any Proceeding may be heard and determined in any such court, (iii) waives, to the fullest extent permitted by law, any immunity from jurisdiction of any such court or from any legal process therein, (iv) agrees that such courts will have exclusive jurisdiction over any claims in any Proceeding, (v) agrees not to commence any Proceeding other than in such courts and (vi) waives, to the fullest extent permitted by law, any claim that such Proceeding is brought in an inconvenient forum or venue that is otherwise improper.

The Company hereby irrevocably consents to the service of process of any of the aforementioned courts in any such Proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Company at its address set forth above, such service to become effective ten (10) business days after such mailing.

K.  The Company hereby acknowledges and agrees that Guggenheim Securities will act under this Agreement as an independent contractor with obligations solely to the Company and is not being retained hereunder to advise the Company as to the underlying business and/or financial decision to consummate any Transaction or with respect to any related financing, derivative or other transaction.  Nothing in this Agreement or the nature of Guggenheim Securities' services will be deemed to create a fiduciary or agency relationship between Guggenheim Securities and the Company or its stockholders, creditors, employees or any other party in connection with any Transaction or otherwise.  The Company acknowledges that Guggenheim Securities is not

the agent of and is not authorized to bind the Company with respect to any action or decision. Other than as set forth in the Indemnification Provisions attached hereto or with respect to the Covered Persons (as defined and discussed below), nothing in this Agreement is intended to confer upon any other person (including stockholders, creditors or employees of the Company) any rights or remedies hereunder or related hereto. The Company agrees that Guggenheim Securities and its affiliates, each of its and their controlling persons (within the meaning of the US federal securities laws), members, stockholders, directors, officers, managers, employees, consultants, legal counsel and agents and each of its and their respective heirs, successors and assigns (all of the foregoing, "Covered Persons") will not have any liability (including without limitation, liability for any losses, claims, damages, obligations, penalties, judgments, awards, liabilities, costs, expenses or disbursements) in contract, tort or otherwise to the Company or to any person claiming through the Company or in the Company's right in connection with the engagement of Guggenheim Securities pursuant to this Agreement, the matters contemplated hereby or any Transaction or conduct in connection therewith, except where such liability is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence or willful misconduct of such Covered Person. The Company further agrees that Guggenheim Securities will have no responsibility for any act or omission by any of the Company's other Representatives.

L.   Subject to the approval of the Bankruptcy Court, the Company has all requisite power and authority to enter into this Agreement and perform its obligations hereunder. This Agreement has been duly and validly authorized by all necessary action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their legal counsel. There will be no construction of any provision against Guggenheim Securities because this Agreement was drafted by Guggenheim Securities, and the parties waive any statute or rule of law to that effect.

M.   This Agreement (including this Annex and the Indemnification Provisions attached thereto) embodies the entire agreement and understanding of the Company and Guggenheim Securities with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof. The provisions of this Agreement may not be waived, modified, amended or supplemented except in writing executed by the Company and Guggenheim Securities. This Agreement will inure to the benefit of, and be binding upon, the parties hereto and their respective successors and assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan).

## INDEMNIFICATION PROVISIONS

Capitalized terms used herein without definition will have the meanings ascribed thereto in the letter agreement dated as of November 8, 2013 (as amended from time to time, the "Agreement") between Florida Gaming Corporation (collectively with its subsidiaries and affiliates, the "Company") and Guggenheim Securities, LLC. As used in these Indemnification Provisions, the term "Guggenheim Securities" will be deemed to refer to and include each of Guggenheim Securities, LLC and its affiliates, each of its and their controlling persons (within the meaning of the US federal securities laws), members, stockholders, directors, officers, managers, employees, consultants, legal counsel and agents and each of its and their respective heirs, successors and assigns.

The Company hereby agrees to (a) indemnify and hold harmless Guggenheim Securities, to the fullest extent permitted by law, from and against any and all losses, claims, damages, obligations, penalties, judgments, awards and other liabilities as and when incurred by Guggenheim Securities (collectively, "Liabilities") and (b) fully reimburse Guggenheim Securities for any and all fees, costs, expenses and disbursements (in all such cases, whether legal or otherwise) as and when incurred by Guggenheim Securities (collectively, "Expenses"), including those of investigating, preparing for (including, without limitation, preparing, reviewing or furnishing documents), participating in, defending against or giving testimony with respect to any private, regulatory, self-regulatory or governmental requests, inquiries, investigations, actions, claims, interrogatories, subpoenas, suits, litigation, proceedings or injunctions, whether or not in connection with any threatened or actual litigation, arbitration or other dispute resolution process and whether or not Guggenheim Securities is a direct party thereto (collectively, "Actions"), in the case of each of the foregoing clauses (a) and (b) whether directly or indirectly caused by, relating to, based upon, arising out of or in connection with any of the following: (w) any advice or services requested of, or rendered or to be rendered by, Guggenheim Securities pursuant to the Agreement, (x) any actions or inactions by Guggenheim Securities with respect to the Agreement, (y) any Transaction in connection with or related to the Agreement or (z) the determination and enforcement by Guggenheim Securities of its rights pursuant to the Agreement (including, without limitation, these Indemnification Provisions); *provided, however*, such indemnification agreement will not apply to any portion of any such Liability or Expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence or willful misconduct of Guggenheim Securities.

If any Action is commenced as to which Guggenheim Securities proposes to demand indemnification hereunder, it will notify the Company with reasonable promptness; *provided, however*, that any failure by Guggenheim Securities to notify the Company will not relieve the Company from its obligations hereunder. Guggenheim Securities will have the right to retain legal counsel of its own choice to represent it, and the Company will pay the Expenses of such legal counsel; and such legal counsel will, to the extent it believes consistent with its professional responsibilities, cooperate with the Company and any legal counsel designated by the Company. The Company will be liable for any settlement of any claim against Guggenheim Securities made with the Company's written consent, which consent will not be unreasonably withheld. The Company will not, without the prior written consent of Guggenheim Securities, (a) settle or compromise any claim, (b) permit a default or (c) consent to any settlement or other such agreement or the entry of any judgment, in all of the foregoing cases in connection with or related to any Action with respect to which indemnification or contribution may be sought hereunder (whether or not Guggenheim Securities is an actual or

potential party to such Action) or as to which any allegation of wrongful acts or omissions by Guggenheim Securities is not denied.

In order to provide for just and equitable contribution, if a claim for indemnification pursuant to these Indemnification Provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification is unavailable, in whole or in part, for any reason, even though the express provisions hereof provide for indemnification in such case, then the Company, on the one hand, and Guggenheim Securities, on the other hand, will contribute to the Liabilities and Expenses to which the indemnified persons may be subject (a) in accordance with the relative benefits received (or anticipated to be received) by the Company, on the one hand, and Guggenheim Securities, on the other hand, in connection with Guggenheim Securities' engagement pursuant to the Agreement or (b) if the allocation provided by clause (a) immediately above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a), but also the relative fault of the Company, on the one hand, and Guggenheim Securities, on the other hand, in connection with the statements, acts or omissions which resulted in such Liabilities and Expenses.  The Company agrees for purposes of this paragraph that the relative benefits to the Company and Guggenheim Securities of any contemplated Transaction (whether or not consummated) will be deemed to be in the same proportion as the total value paid, received or issued or contemplated to be paid, received or issued to or by the Company and its stockholders, claim holders or contract parties in connection with such Transaction bears to the fees paid or payable to Guggenheim Securities pursuant to the Agreement.  Notwithstanding the foregoing, Guggenheim Securities will not be obligated to contribute any amount pursuant to this paragraph that exceeds the amount of fees previously received by Guggenheim Securities pursuant to the Agreement.  Each of the Company and Guggenheim Securities hereby agrees that it would not be just and equitable if contribution pursuant to this paragraph were determined by pro rata allocation or by any other method which does not take into account the considerations referred to in this paragraph.

The Company's indemnification, contribution, reimbursement and other obligations pursuant to these Indemnification Provisions will be in addition to any liability that the Company may otherwise have, at common law or otherwise, to Guggenheim Securities and will be binding on the Company's successors and assigns.  These Indemnification Provisions will (a) apply to Guggenheim Securities' engagement pursuant to the Agreement, any activities or actions of Guggenheim Securities relating to such engagement occurring prior to the date of such Agreement and any subsequent modification of or amendment to such Agreement and (b) remain in full force and effect following the termination or expiration of Guggenheim Securities' engagement pursuant to the Agreement.

# EXHIBIT "C"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:                                          Chapter 11

                                                Case No. 13-29597-RAM
                                                (Jointly Administered)
FLORIDA GAMING CENTERS,
INC., *et al.*,[1]

_____ Debtors.   /

### ORDER AUTHORIZING THE RETENTION OF GUGGENHEIM SECURITIES, LLC AS INVESTMENT BANKER TO THE DEBTORS, *NUNC PRO TUNC* TO NOVEMBER 8, 2013

This matter came before the Court on the Debtors' Florida Gaming

Centers, Inc., Florida Gaming Corporation, Tara Club Estates, Inc., and

Freedom Holding, Inc. (collectively, **"Miami Jai-Alai"**), *Application for Entry of*

---

[1] The debtors in these chapter 11 cases and the last four digits of their federal tax identification number are: Florida Gaming Corporation (0533), Florida Gaming Centers, Inc. (5893), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

an Order Authorizing Retention and Employment of Guggenheim Securities, LLC as Investment Banker to the Debtors, Nunc Pro Tunc to November 8, 2013 (the "**Application**") (ECF No. _____)[2] filed on November 8, 2013, and upon the Affidavit of Alex Fisch (the "**Fisch Affidavit**") in support, and based on the engagement letter dated as of November 8, 2013 attached to the Application as Exhibit B (the "**Engagement Letter**").  The Application requests entry of an order authorizing the employment and retention of Guggenheim, *nunc pro tunc* to the November 8, 2013.

The Court having reviewed the Application, the Fisch Affidavit and the Engagement Letter, and having heard the statements of counsel at a hearing on the Application (the "**Hearing**"); and the Court finding that: (a) it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the reference from the District Court pursuant to 28 U.S.C. § 157; (b) notice of the Application was sufficient under the circumstances; (c) Guggenheim is a "disinterested person" pursuant to Bankruptcy Code Section 101(14); and (d) the Court having determined that the legal and factual bases set forth in the Application and the Fisch Affidavit establish just cause for the relief granted herein;

**IT IS ORDERED THAT:**

1.    The Application shall be, and hereby is, **GRANTED**.

2.    Miami Jai-Alai is authorized to retain and employ Guggenheim as investment banker at the expense of the chapter 11 estates, pursuant to

---

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

Bankruptcy Code Sections 327(a) and 328(a), on the terms set forth in the Engagement Letter, as modified by this Order, *nunc pro tunc* to November 8, 2013.

3.     Guggenheim shall be compensated in accordance with Bankruptcy Code Sections 328, 330, and 331, the Bankruptcy Rules, the Local Rules, U.S. Trustee Guidelines, and such procedures as may be fixed by order of this Court. Subject to final approval by this Court, Guggenheim's fees and expenses shall be paid in the amounts, at the times, and in the manner described in the Application and Engagement Letter.

4.     Guggenheim's fees shall not be subject to challenge except under the standard of review set forth in Bankruptcy Code Section 328(a).

5.     Guggenheim shall be reimbursed for its expenses in accordance with Bankruptcy Code Section 330, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable orders of this Court.

6.     Notwithstanding Local Rule 2016-1 and the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases, Guggenheim shall be excused from maintaining time records in connection with the services to be rendered pursuant to the Engagement Letter.

7.     To the extent there are any conflicts between this Order and the Application, the Engagement Letter, or the Fisch Affidavit, the terms of this Order shall govern.

8.     Miami Jai-Alai and Guggenheim are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

9.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, and 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order, and notwithstanding anything to the contrary in the Engagement Letter, this Court shall retain exclusive jurisdiction over all matters relating to the Guggenheim's retention and the Engagement Letter, including, without limitation, any proceedings relating to any claim for indemnity under the Engagement Letter.

# # #

Submitted by

Luis Salazar, Esq.
**SALAZAR JACKSON, LLP**
One Biscayne Tower, Suite 3760
Two South Biscayne Boulevard
Miami, FL 33131
Telephone:    (305) 374-4848
Facsimile:     (305) 397-1021
Email: salazar@salazarjackson.com

*(Attorney Salazar shall serve a copy of this order upon all interested parties upon receipt and file a certificate of service)*