IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| FLORIDA GAMING CENTERS, INC., *ET AL.*, | CASE NO. 13-29597-RAM |
| DEBTORS. / | (JOINTLY ADMINISTERED) |

| | |
|---|---|
| FLORIDA GAMING CENTERS, INC., A FLORIDA CORPORATION AND FLORIDA GAMING CORPORATION, A DELAWARE CORPORATION, | Adversary No. |
| PLAINTIFFS, | |
| v. | |
| ABC FUNDING, LLC, AS ADMINISTRATIVE AGENT FOR SUMMIT PARTNERS SUBORDINATED DEBT FUND IV-A, L.P., SUMMIT PARTNERS SUBORDINATED DEBT FUND IV-B, L.P., JPMORGAN CHASE BANK, N.A., LOCUST STREET FUNDING LLC, CANYON VALUE REALIZATION FUND, L.P., CANYON VALUE REALIZATION MASTER FUND, L.P., CANYON DISTRESSED OPPORTUNITY MASTERFUND, L.P., AND CANYON-GRF MASTER FUND II, L.P.,; SUMMIT PARTNERS SUBORDINATED DEBT FUND IV-A, L.P.; SUMMIT PARTNERS SUBORDINATED DEBT FUND IV-B, L.P.; FS INVESTMENT CORPORATION; CANYON VALUE REALIZATION FUND, L.P. | |
| DEFENDANTS. / | |

**FLORIDA GAMING CENTERS, INC. AND FLORIDA
GAMING CORPORATION'S: (A) COMPLAINT AGAINST
ABC FUNDING, LLC, AS ADMINISTRATIVE AGENT AND
THE WARRANT HOLDERS; AND (B) OBJECTIONS TO CLAIM**

Plaintiffs, Florida Gaming Centers, Inc. (**"Florida Gaming Centers"**) and Florida Gaming Corporation (**"Florida Gaming Corp.,"** and together with Florida Gaming Centers, **"Miami Jai-Alai" or "Florida Gaming"**) file this Complaint against (i) ABC Funding, LLC (**"ABC Funding"**), as administrative agent; and warrant holders (ii) Summit Partners Subordinated Debt Fund IV-A, L.P.; (iii) Summit Partners Subordinated Debt Fund IV-B, L.P.; (iv) FS Investment Corporation; and (v) Canyon Value Realization Fund, L.P., and state as follows:

## PRELIMINARY STATEMENT

1.      Miami Jai-Alai brings this action against ABC Funding and the Warrant Holders (defined below) for: (i) mandatory equitable subordination of the ABC Funding Warrant Claim (defined below) pursuant to Bankruptcy Code Section 510(b); (ii) usury; (iii) equitable subordination of all of ABC Funding's claims pursuant to Bankruptcy Code Section 510(c); and (iv) an objection to ABC Funding's claims.

2.      **ABC FUNDING'S PURPORTED EQUITY INTEREST MUST BE SUBORDINATED.**  As part of a lending relationship and Credit Agreement between ABC Funding and Miami Jai-Alai discussed in more detail below, ABC Funding required that Florida Gaming Centers execute a Warrant Agreement on April 25, 2011 (the "**Warrant Agreement**").  A true and correct copy of the Warrant Agreement is attached hereto as **Exhibit "A."**  Certain of the Syndicated Lenders (defined below) are the counterparties and Warrant Holders under that agreement.  Upon information and belief, the Warrant Holders are Defendants (i) Summit Partners Subordinated Debt Fund IV-A, L.P.; (ii) Summit Partners Subordinated Debt Fund IV-B, L.P.; (iii) FS Investment Corporation; and (iv) Canyon Value Realization Fund, L.P. (the **"Warrant Holders"**).

3.      Pursuant to the Warrant Agreement, a "trigger event" occurred when Florida Gaming Centers negotiated an agreement for the sale of

substantially all its assets.  The trigger event required a valuation of Miami Jai-Alai in order to determine the repurchase price of the Warrants.  The ultimate valuation report valued Miami Jai-Alai at over $180 million.  Thus, under the terms of the Warrant Agreement, the Repurchase Price that would be due the Warrant Holders was approximately $26,845,000 as later increased due to the opening of Hialeah Park Casino, the **"ABC Funding Warrant Claim."**

4.    Because the ABC Funding Warrant Claim arises from the purchase or sale of a security of the debtor, Miami Jai-Alai seeks to subordinate the full amount pursuant to the mandates of Bankruptcy Code Section 510(b).

5.    **THE CRIMINALLY USURIOUS TRANSACTION**.  What is more, when the payments made pursuant to the Credit Agreement (defined below) are combined with the Repurchase Obligations under the Warrant Agreement, the total interest rate amounts to an astounding and criminally usurious 33% per annum.    And while ABC Funding argued in state court that the Warrant Agreement is governed by New York law and is not subject to Florida's usury laws, such an argument is readily debunked by the fact that (i) the Mortgage securing performance under the Credit Agreement also explicitly and undeniably secures the Warrant Agreement; (ii) the Warrant Agreement provides that "the validity of this Agreement and the Warrants … shall be governed by the laws of the State of Florida," and (iii) this Court can apply New York law to usury **only** if New York has a normal relation to the transaction, which is not the case here since neither ABC Funding nor the Lenders have the requisite connection to New York.

6.    **ABC FUNDING'S INEQUITABLE CONDUCT**.  In addition, to the foregoing, Miami Jai-Alai brings this action to preserve the rights and interests of all stakeholders and parties in interest in the face of a purposeful, unlawful, and inequitable scheme by ABC Funding to acquire Florida Gaming Center's assets through the mechanism of a "loan to own" Credit Agreement between Miami Jai-Alai and ABC Funding (as administrative agent for the Lenders).

7.    ABC Funding crafted and managed the "loan" to ensure that

Miami Jai-Alai would default quickly and that ABC Funding would own and/or control the valuable Casino.  The Credit Agreement, when combined with the Warrant Agreement, provided ABC Funding a clear path to ultimately wrest control of the Miami Jai-Alai Casino from its owners and a vehicle through which ABC Funding could charge criminally usurious interest rates.

8.    The Credit Agreement, the Warrant Agreement, ABC Funding's Warrant Claim, and ABC Funding's pre-contractual conduct as discussed in detail below, form the basis for a judgment in favor of Miami Jai-Alai for: (i) mandatory subordination of the ABC Funding Warrant Claim to a level equal to common stock  of Florida Gaming Corp. pursuant to Bankruptcy Code Section 510(b); (ii) a declaratory judgment that the amounts due under the Credit Agreement, in conjunction with the repurchase price of the Warrants pursuant to the Warrant Agreement exceed 25% in violation of Florida law and constitute criminal usury, thereby rendering the entire Credit Agreement and Warrant Agreement void *ab initio*; and (iii) equitable subordination of the ABC Funding's claims pursuant to Section 510(c).

9.    In short, entry of the relief sought herein will have a profound impact on the contours of the contemplated asset sale and recoveries in these proceedings, and will fundamentally and rightly alter a *status quo* in which ABC Funding's Warrant Claim and other claims are presumed to dominate over unsecured claims, wrongly disenfranchising and usurping unsecured creditors.

10.    **OBJECTION TO ABC FUNDING'S ALLEGED CLAIMS.**  In addition, Miami Jai-Alai objects to ABC Funding's claims pursuant to this Court's *Final Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protections; and (III) Granting Other Related Relief* entered in the main case on October 28, 2013 (Main Case ECF No. 201) (the **"Final Cash Collateral Order"**).

11.    Among other things, Miami Jai-Alai objects to the reasonableness and permissibility of the professional fees, early termination fees and other



components of ABC Funding's purported Prepetition Obligations and/or the Prepetition Liens (as defined in the Final Cash Collateral Order). In addition to being usurious and subject to subordination as set forth herein, ABC Funding's claims and the Prepetition Obligations must be disallowed. Miami Jai-Alai demands strict proof of the allowability, validity, extent, priority, full secured status, amount, and perfection of the mortgage, security interests, and liens comprising ABC Funding's prepetition claims.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(A)and (O), and because this adversary proceeding arises in and is related to the case styled as *In re Florida Gaming Centers, Inc., et al.*, Case No. 13-29597-RAM currently pending in the United States Bankruptcy Court, Southern District of Florida, Miami Division.

13.     Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409(a).

## PROCEDURAL BACKGROUND

14.     On August 19, 2013 (the **"Petition Date"**), Miami Jai-Alai commenced these cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Miami Jai-Alai continues to operate its business and manage its property as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

15.     On September 9, 2013, the Office of the United States Trustee appointed the Joint Committee of Creditors Holding Unsecured Claims (ECF No. 90) as to debtors Florida Gaming Centers, Inc., Case No. 13-29597-RAM, and Florida Gaming Corporation, Case No. 13-29598-RAM.

### The Parties

16.     Florida Gaming Centers is a Florida Corporation with its principal place of business in Miami-Dade County, Florida.  Florida Gaming Centers owns and operates a pari-mutuel gaming facility in Miami-Dade County, Florida known as Casino Miami Jai-Alai (the **"Casino"**).

17.     Florida Gaming Corp. is a Delaware Corporation with its principal place of business in Indiana and is the sole parent company of Florida Gaming Centers.  Florida Gaming Corp. is a publicly owned company.

18.     Defendant ABC Funding is a Delaware limited liability company, organized and existing under the laws of Delaware.  ABC Funding serves as the administrative agent for each of the Prepetition Lenders below and administers the Lenders' rights, duties and obligations under the Credit Agreement.

19.     Defendant Summit Partners Subordinated Debt Fund IV-A, L.P. is a Delaware limited partnership, organized and existing under the laws of Delaware.

20.     Defendant Summit Partners Subordinated Debt Fund IV-B, L.P. is a Delaware limited partnership, organized and existing under the laws of Delaware.

21.     Defendant FS Investment Corporation is a Maryland corporation organized and existing under the laws of Maryland.

22.     Defendant Canyon Value Realization Fund, L.P. is a Delaware limited partnership, organized and existing under the laws of Delaware.

23.     Syndicated lender JPMorgan Chase Bank, N.A. is a national banking association, organized and existing under the laws of the United States.

24.     Syndicated lender Locust Street Funding LLC is a Delaware limited liability company, organized and existing under the laws of Delaware.

25.     Syndicated lender Canyon Value Realization Master Fund, L.P. is a

Cayman Island limited partnership, organized and existing under the laws of the Cayman Islands.

26.    Syndicated lender Canyon Distressed Opportunity Master Fund, L.P. is a Cayman Island limited partnership, organized and existing under the laws of the Cayman Islands.

27.    Syndicated lender Canyon-GRF Master Fund II, L.P. is a Cayman Island limited partnership, organized and existing under the laws of the Cayman Islands.

28.    For ease of reference, below is a chart showing the Syndicated Lenders, the original Lenders under the Credit Agreement, and the Warrant Holders.

| SYNDICATED LENDERS | ORIGINAL LENDERS UNDER THE CREDIT AGREEMENT | WARRANT HOLDERS (AND DEFENDANTS HEREIN) |
|---|---|---|
| Summit Partners Subordinated Debt Fund IV-A, L.P. | Summit Partners Subordinated Debt Fund IV-A, L.P. | Summit Partners Subordinated Debt Fund IV-A, L.P. (12.39349% allocation) |
| Summit Partners Subordinated Debt Fund IV-B, L.P. | Summit Partners Subordinated Debt Fund IV-B, L.P. | Summit Partners Subordinated Debt Fund IV-B, L.P. (5.30766% allocation) |
| Canyon Value Realization Fund, L.P. | Canyon Value Realization Fund, L.P | Canyon Value Realization Fund, L.P (8.045998% allocation) |
| JP Morgan Chase Bank, N.A. | FS Investment Corporation | FS Investment Corporation (9.25287% allocation) |
| Locust Street Funding, LLC | | |
| Canyon Value Realization Master Fund, L.P. | | |
| Canyon Distressed Opportunity Master Fund, L.P. | | |
| Canyon-GRF Masterfund II, L.P. | | |

### STATEMENT OF FACTS

## A.    GENERAL OVERVIEW

29.    **ABOUT MIAMI-JAI.**  Miami Jai-Alai is operated by Florida Gaming Centers, which in turn, is 100% owned by Florida Gaming Corp., a corporation organized under the laws of the state of Delaware.  Florida Gaming Corp. is a public company registered with the United States Securities and Exchange Commission.  Miami Jai-Alai's principal business is owning jai-alai frontons – courts where jai-alai is played – with simulcasting operations in Miami and Ft. Pierce, Florida.  It is one of the largest, if not the largest jai-alai operator in the world.

30.    Up until January 2012, Miami Jai-Alai's activities were limited to conducting live jai alai performances, limited poker games and simulcasting various other pari-mutuel events.

31.    In 2010, the Florida Legislature passed a law allowing the voters in Miami-Dade County to vote on whether to allow slot machines and certain table games at existing pari-mutuel locations in Miami-Dade County.  That measure passed overwhelmingly, thus allowing Miami Jai-Alai to offer to the public slots and certain table games, including blackjack and poker.  Accordingly, Miami Jai-Alai needed additional financing to renovate their premises and retrofit certain areas to serve as a casino.

32.    Due to a decline in the jai-alai industry and the need to bring in additional cash flow to the Miami jai-alai fronton, using loans from the Syndicated Credit Facility (as defined below) Miami Jai-Alai opened *Casino Miami Jai-Alai* in January 2012.  The addition includes a 60,000 square foot state of the art casino with 1058 Class III slot machines, an expanded poker room, electronic blackjack, roulette, dominoes, live shows such as concerts and boxing, a new restaurant and three full-service bars.

33.     Miami Jai-Alai continues to operate a fronton in Ft. Pierce, Florida and owns an inactive jai-alai permit for Tampa, Florida.  The Ft. Pierce location provides inter-track wagering on interstate simulcasting of horse racing, dog racing, and jai-alai from various tracks and frontons in the United States and within the state of Florida.

34.     Collectively, Miami Jai-Alai employs approximately 500 full-time and part-time hourly and salaried employees.

## B.    THE PRE-PETITION LOAN AND WARRANT AGREEMENT

35.     **THE SYNDICATED CREDIT FACILITY.** On April 25, 2011, Florida Gaming Corp. and Florida Gaming Centers entered into a Credit Agreement (the "**Credit Agreement**") with a syndicate of unaffiliated third party lenders, Summit Partners Subordinated Debt Fund IV-A, L.P., Summit Partners Subordinated Debt Fund IV-B, L.P., FS Investment Corporation, and Canyon Value Realization Fund, L.P. (collectively, the "**Syndicated Lenders**[1]"), and ABC Funding, LLC, as administrative agent for the Lenders.   A true and correct copy of the Credit Agreement is attached hereto as **Exhibit "B."**

36.     Pursuant to the Credit Agreement, the Syndicated Lenders agreed to make revolving loans available to Florida Gaming Centers up to $87,000,000 (the "**Syndicated Credit Facility**") to be used by Florida Gaming Centers to pay off existing debt of Miami Jai-Alai, fund the casino project at the Miami Jai-Alai fronton and for working capital.

---

[1]   The "Syndicated Lenders" shall be limited to only those entities comprising the syndicate of third party lenders that are parties to the Credit Agreement as of the Petition Date, which upon information and belief, includes:  Summit Partners Subordinated Debt Fund IV-A, L.P., Summit Partners Subordinated Debt Fund IV-B, L.P., Canyon Value Realization Fund, L.P., Canyon Value Realization Master Fund, L.P., FS Investment Corporation, Canyon Distressed Opportunity Master Fund, L.P., Canyon-GRF Master Fund II, L.P., Locust Street Funding LLC, and JPMorgan Chase Bank, N.A.

37.    Florida Gaming Corp. and certain of its affiliates are guarantors of the Syndicated Credit Facility under the Credit Agreement.  The Syndicated Credit Facility is allegedly secured by first priority liens and security interests (subject only to certain mortgage liens granted in favor of Miami-Dade County) granted by Miami Jai-Alai and certain affiliates of Miami Jai-Alai to ABC Funding, including, but not limited to, all accounts, chattel paper, commercial tort claims, documents, equipment, goods, general intangibles, instruments, inventory, investment property, pledged deposits, letter-of-credit rights and supporting obligations and the real property in Ft. Pierce and Miami.

## C.    THE FLORIDA FORECLOSURE SUIT

38.    On September 5, 2012, ABC Funding filed a Complaint in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida seeking to foreclose the subject mortgage, styled as *ABC Funding, LLC, et al. v. Florida Gaming Centers, Inc., et al.*, Case No. 12-35064 CA 58.

39.    On that same day, ABC Funding also initiated a foreclosure action against Miami Jai-Alai in the Circuit Court of the 19th Judicial Circuit in and for St. Lucie County, Florida, styled as *ABC Funding, LLC, et al. v. Florida Gaming Centers, Inc., et al.*, Case No. 56-2012-CA-003525 AXXXHC.  The St. Lucie matter was later transferred to and consolidated with the Miami-Dade matter on May 8, 2013, and was being heard as one case in the Circuit Court of Miami-Dade County by the Honorable Beatrice Butchko (the **"ABC Florida Action"**) as of the Petition Date.

40.    **THE SILVERMARK TRANSACTION.**  Around the same time that ABC Funding initiated the ABC Florida Action, Florida Gaming Centers was able to negotiate an agreement for the sale of substantially all its assets to Silvermark, LLC (**"Silvermark"**) for $114 million in cash and approximately $15 million in assumed liabilities.  In short, enough to pay ABC Funding's secured claim in full.

Due to ABC Funding's delay tactics as set forth in more detail herein, that deal never closed.

41.    **A "Trigger Event" Under The Warrant Agreement.** The Warrant Agreement required Florida Gaming Centers to pay a repurchase price should certain trigger events arise, including the sale of all the assets to a third party, such as Silvermark. Under the terms of the Warrant Agreement, if the parties cannot agree to a valuation for that Repurchase Price, an investment bank must then be designated to determine the Repurchase Price in the event of a sale of all of the Company (Florida Gaming Centers) assets:

> ***Selected Investment Bank*** means an investment bank, selected by ABC Funding, as Administrative Agent under the Credit Agreement, and reasonably acceptable to the Company [Florida Gaming Centers]. If the investment bank selected by the Administrative Agent is not reasonably acceptable to the Company, and the Administrative Agent and the Company cannot agree on a mutually acceptable investment bank within ten days of the Company being informed of that selection, then the Administrative Agent and the Company shall each choose one investment bank within the next ten days and the respective chosen firms shall jointly select a third investment bank within ten days of the selection of the second such firm (*provided* that if either party shall fail to designate an investment bank within such ten day period, then the investment bank that was designated by one of the parties shall be the Selected Investment Bank), which shall make the determination. Any investment bank selected [under the Warrant Agreement] shall be an independent investment bank of nationally recognized standing and have experience in the valuation of companies similar to the Company.

*See* Section 1(b), pages 5-6 of Warrant Agreement.

42.    After a protracted battle with ABC Funding, including a full day of mediation, Miami Jai-Alai and ABC Funding's investment bankers jointly selected Jefferies, LLC to serve as the Selected Investment Bank to provide services to Miami Jai-Alai, including, without limitation, valuation services and reports as required under the terms of the Warrant Agreement.

43.     Jefferies ultimately issued its valuation report, valuing Miami Jai-Alai at **_over $180 million_**.  As set forth above, the appraisal meant that the Repurchase Price that would be due the Warrant Holders was approximately $26,845,000.

44.     In addition to the foregoing, based on its stall tactics employed in the prepetition foreclosure litigation with Miami Jai-Alai (as set forth more fully below), ABC Funding has argued that it is entitled to an additional and significant increase in Warrants by virtue of a nearby competitor, Hialeah Race Track Casino, beginning slot operations, which occurred on or about August 14, 2013.  This may entitle the Warrant Holders to up to $7 million more under the Warrant Agreement.  But it would only be by virtue of ABC Funding's underhandedness that they would receive this.

45.     **ABC FUNDING'S DELAY OF THE ABC FLORIDA ACTION.** Despite the fact that Miami Jai-Alai had a buyer in Silvermark, ABC Funding continuously delayed the sale process in a blatant attempt to run up their ultimate pay-off in the process while simultaneously rendering it impossible to close the Silvermark transaction.

46.     It was in ABC Funding's interest to delay the sale for at least two reasons.  First, ABC Funding charged nearly $45,000 a day in interest, or nearly $1 million a month for a total of over $10 million during the pendency of the foreclosure action alone.  During the pendency of the foreclosure action, Miami Jai-Alai actually paid that interest every month – with some agreed upon exceptions – despite being declared in default.

47.     Second, and as noted above, by stonewalling and delaying the sale and the ABC Florida Action, ABC Funding has argued that it is entitled to an additional and significant increase in Warrants on account of Hialeah Race Track Casino beginning slot operations.  The Warrant Holders will now allege that they are entitled to up to $7 million more in Repurchase Obligations.

48.     Miami Jai-Alai sought a ruling from the Florida Court that the Warrant Agreement is governed by Florida law, and, therefore, the total amount due under the Warrant Agreement, when combined with the interest payable under the Syndicated Credit Facility, may not exceed 25%. In dollars and cents, this means that the amount due under the Warrant Agreement (the Repurchase Obligations) may not exceed between $7 to $9 million dollars. This argument, and the calculations for amounts possibly due under the Warrant Agreement, is set forth in *Amended Emergency Motion for a Determination and Seeking Summary Judgment that Amounts Due Under the Loan Documents, Including the Warrant Agreement, May Not Exceed a 25% Interest Rate* that Miami Jai-Alai filed in the ABC Florida Action and attached hereto as **Exhibit "C,"** and incorporated herein by reference.

49.     **MORE DELAYS: THE ABC NEW YORK ACTION.** Apparently unhappy with the Florida Court's assistance in obtaining a Selected Investment Banker and the idea that it may decide the usury issues, on May 20, 2013, ABC Funding filed a two-count Complaint in the Supreme Court of the State of New York seeking declaratory relief and an injunction (the **"ABC New York Action"**). Specifically, the Complaint sought a declaratory judgment (i) declaring the Warrant Agreement valid, enforceable and not usurious; (ii) requiring Miami Jai-Alai to negotiate in good faith to designate an investment bank to determine an appraisal value pursuant to the Warrant Agreement; and (iii) to declare ABC Funding's choice of investment bank to be "qualified" under the Warrant Agreement. A true and correct copy of the ABC New York Complaint is attached hereto as **Exhibit "D."**

50.     ABC Funding, as administrative agent to the Lenders under the Syndicated Credit Facility, has no connection or ties to New York. Specifically, the Lenders are incorporated or have their principal place of business in Delaware and the Cayman Islands. In a deliberate attempt to evade the Florida Court's application of Florida's usury laws, ABC Funding attempted to fragment the

Credit Agreement into separate transactions by instituting the ABC New York Action and alleging that the Warrant Agreement was not part of the Credit Agreement and not subject to Florida law.

51.     **EVEN MORE DELAY: REFUSAL TO COOPERATE WITH THE SILVERMARK DEAL AND THE PAYOFF AND ESTOPPEL ISSUES.** At one point in time, Silvermark had agreed to close the transaction to purchase substantially all of Miami Jai-Alai's assets and pay the full amount due and owing to ABC Funding under the Loan Documents, including the Repurchase Price under the Warrant Agreement and all professional fees incurred to date by ABC Funding.

52.     On July 9, 2013, after repeated requests and a hearing on Miami Jai-Alai's *Motion to Compel ABC Funding to Provide Estoppel Letter*, a true and correct copy of which is attached hereto as **Exhibit "E,"** ABC Funding provided Florida Gaming with an estoppel letter purporting to comply with Florida Statute Section 701.04. A true and correct copy of the estoppel letter is attached hereto as **Exhibit "F."**

53.     Pursuant to the estoppel letter, the unpaid balance due and owing under the Loan Documents was $90,302,907.27, which included principal, interest and an anticipated payoff of July 22, 2013. On July 11, 2013, ABC Funding sent a letter to Miami Jai-Alai setting forth the amounts allegedly due and owing – $3,126,242.97 – on account of professional fees incurred by ABC Funding. A true and correct copy of that letter is attached hereto as **Exhibit "G."**

## D.    ABC FUNDING'S BAD ACTS AND INEQUITABLE CONDUCT

54.     **MIAMI JAI-ALAI HIRES INNOVATION.** In order to explore financing alternatives to retrofit the Miami Jai-Alai premises into a casino, Miami Jai-Alai hired Innovation Capital, LLC (**"Innovation"**) to serve as their investment advisor. A copy of the October 21, 2010 letter agreement between

Innovation and Florida Gaming Centers is attached as **Exhibit "H."**  As indicated in paragraph 1 of the Agreement, Florida Gaming Centers retained Innovation as its "exclusive financial advisor and sole placement agent" for purposes of obtaining this financing.

55.    **INNOVATION AND SUMMIT FUNDING**.  Several funding options were made known to Innovation during the course of its attempts to locate financing options.  In addition to the financing option presented by Summit Partners, LP, and related entities, Summit Master Company, LLC, (collectively, the **"Summit Entities"**) and James Freeland (**"Freeland"**), the Managing Director of the Summit Entities, Innovation also became aware of two other possible funding sources, one with Och-Ziff Capital Management Group, LLC (**"Och-Ziff"**) and one with Penn National Gaming, Inc. (**"Penn Gaming"**).

56.    Innovation, however, failed to pursue and negotiate with either Och-Ziff or Penn Gaming to the fullest extent possible and in accordance with their fiduciary duties.  Instead, and despite the fact that the Och-Ziff or Penn Gaming financing alternatives likely would have offered far better terms than the onerous, one-sided loan-to-own document presented by the Summit Entities, and instead of further exploring these other possible financing opportunities with the level of detail and thoroughness required by an investment advisor acting in a fiduciary capacity, Innovation created false "comparisons" wherein they purported to make a good faith comparison of the other financing proposals to the Summit Entities' proposal.

57.    Further, in numerous oral and other communications made between 2009 and April 25, 2011, Innovation continued to misrepresent the true characteristics and problems with the Summit proposal and the benefits of the other proposals, including the Och-Ziff and Penn Gaming proposals.

58.    Innovation strongly recommended the option memorialized in the Credit Agreement and repeatedly advised Miami Jai-Alai that this option was the best option for them.  Innovation advised that Miami Jai-Alai should accept it and

obtain funding from the Summit Entities.

59.    Innovation misrepresented and concealed the true nature of all investment options (including those from Och-Ziff and Penn Gaming) to induce Miami Jai-Alai to accept financing from the Summit Entities.  Miami Jai-Alai learned that Innovation had perpetrated similar schemes with Freeland when Freeland worked for Guggenheim Investment Management (**"Guggenheim"**) so that Freeland could enter into "loan-to-own" agreements and ultimately wrest control over parimutuel gaming facilities from their owners, the exact scheme Freeland attempted here.

60.    As but one example, Freeland and Innovation similarly induced the owners of Jumer's Casino and Hotel (**"Jumer's"**) in Illinois to enter into a credit agreement which Freeland administered.  Jumer's had been a family owned business for years.  However, the Jumer family was eventually forced to sell the casino.  This result is the same result sought by ABC Funding in this instance.

61.    To be clear, upon information and belief, ABC Funding, and its representatives, directed and colluded with the Innovation Parties in deceiving Miami Jai-Alai.

62.    In reliance on Innovation's material misrepresentations, on April 25, 2011, Miami Jai-Alai entered into the Credit Agreement, which provided $84,000,000 in financing from the Summit Entities and other lenders, with ABC Funding, through Freeland, acting as the administrative agent for the Lenders.

63.    The Summit proposal, as memorialized in the Credit Agreement, was and is a one-sided, "loan-to-own" agreement, designed to allow ABC Funding to call a default against Miami Jai-Alai at any time.

64.    The intent of these provisions is not to ensure repayment to the lenders under the Credit Agreement.  Instead, the intent is so that Freeland, directly or through ABC Funding, can attempt to take control of Miami Jai-Alai. Freeland has formed a new company, Fronton Holdings, and applied for a gaming

license with the State of Florida Division of Parimutuel Wagering in an attempt to secure a gaming license and seize control of Miami Jai-Alai through administrative procedures, which has always been his intent.

65.    ABC Funding and Freeland worked in conjunction with the Innovation Parties to perpetrate this scheme.  Freeland, as the person who acts on behalf of ABC Funding with respect to the Credit Agreement, purported to accelerate the Credit Agreement by foreclosing on the loan in an attempt to wrest control over Miami Jai-Alai for his own benefit.  Indeed, no other reason exists for the formation of Fronton Holdings and applying for a gaming license.

66.    **ABC FUNDING'S PURPOSEFUL EFFORTS TO HARM MIAMI JAI-ALAI.** Despite ABC Funding's conduct, Miami Jai-Alai was able to renovate their facility and open the Casino in January 2012.  Since that time, the Casino has been extremely profitable.  However, the Summit Entities and their agent, Freeland (individually and through ABC Funding), continued to take actions to cause financial distress and claim some event of default.

67.    For example, the Summit Entities and Freeland insisted on artificial expenditures to increase the loan amount, such as demanding that Florida Gaming Centers and Florida Gaming Corp. pay for their gaming license in May 2011 rather than the due date of December 2011.  By forcing Florida Gaming Centers and Florida Gaming Corp. to obtain this license in May rather than eight months later in December (for no legitimate reason), Florida Gaming Centers and Florida Gaming Corp. lost almost $2 million, as the license sat dormant until the Casino opened in January 2012.  This financial loss contributed to the basis for ABC Funding, on behalf of the Summit Entities, accelerating the loan.

68.    Freeland and the Summit Entities also demanded certain capital improvements, then refused to fund those improvements despite being (through ABC Funding) contractually obligated to do so under the Syndicated Credit Facility.  These acts caused the contractors to place liens on the Casino, after which, ABC Funding and the Summit Entities claimed Miami Jai-Alai to be in

default because of the existence of liens even though the sole reason any such lien existed was because ABC Funding and the Summit Entities refused to fund the expenditures that they were obligated to fund.

69.    Freeland and the Summit Entities also knew of the existence of a $1.3 million mortgage on the Casino, which would have been foreclosed upon had an interest payment not been made.  The Summit Entities and Freeland, through ABC Funding, declared Miami Jai-Alai to be in default for making the required mortgage payment even though the Credit Agreement mandates that Miami Jai-Alai keep the Casino free of any foreclosure proceedings.  Thus, Freeland/ABC Funding/Summit Entities would have declared a default regardless of the course of action Miami Jai-Alai took.

70.    Freeland/ABC Funding/Summit Entities also demanded that interest be paid on the loan at 365 days per annum even though the agreement called for it to be calculated at 360 days; refused to allow funds to be placed in interest bearing bank accounts which resulted in substantial lost revenue; forced Miami Jai-Alai to hire an "owner's representative" during the construction of the Casino that Summit hand-picked and who reported to Summit, not Miami Jai-Alai, even though these entities paid the "owner's" representative.

71.    The foregoing are only examples of ABC Funding's/Summit Entities' "loan-to-own" scheme perpetrated by ABC Funding and Freeland so that they could wrest control of the Casino by constantly keeping Miami Jai-Alai in a state of default.

### E.    THE FINAL CASH COLLATERAL ORDER

72.    The Final Cash Collateral Order – which was entered with the input and agreement of Miami Jai-Alai, ABC Funding and the Joint Committee of Creditors Holding Unsecured Claims – authorizes Miami Jai-Alai to "object to or

challenge in any way the Prepetition Obligations and/or the Prepetition Liens," to seek "subordination … of any and all of the Prepetition Obligations and/or Prepetition Liens," and to "assert any claims or causes of action against the Prepetition Agent and/or the Prepetition Lenders, including but not limited to in respect of the Prepetition Obligations and/or Prepetition Liens" by no later than November 8, 2013.  See ¶ 16, Final Cash Collateral Order.

73.     Miami Jai-Alai brings this action to exercise its right to Challenge (as defined in the Final Cash Collateral Order) ABC Funding's claims pursuant to the terms of the Final Cash Collateral Order.


### COUNT I – OBJECTION TO ABC FUNDING'S PREPETITION CLAIMS

74.     Miami Jai-Alai adopts and alleges paragraphs 1 through 73 of this Complaint as if set forth fully herein.

75.     Pursuant to the Final Cash Collateral Order, Miami Jai-Alai objects to ABC Funding's alleged Prepetition Obligations and Prepetition Liens, including but not limited to the reasonableness of professional fees, the permissibility of the early termination fee and other components of ABC Funding's alleged claims.

76.     In addition to being usurious and subject to subordination as set forth herein, Miami Jai-Alai objects to the allowability, validity, extent, priority, full secured status, amount, and perfection of the mortgage, security interests, and liens of ABC Funding's claims and the Prepetition Obligations and demands strict proof of ABC Funding's entitlement to its alleged claims on account of the Prepetition Obligations and/or Prepetition Liens.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered in its favor and against ABC Funding (i) ordering that ABC Funding's prepetition claims be disallowed; and (ii) granting such other and further relief as the Court deems just and equitable.

## COUNT II – OBJECTION TO ABC FUNDING'S "PRE-PAYMENT" PREMIUM PORTION OF ITS PREPETITION CLAIM

77.    Miami Jai-Alai adopts and alleges paragraphs 1 through 73 of this Complaint as if set forth fully herein.

78.    Miami Jai-Alai further objects to the "pre-payment premium" portion of ABC Funding's alleged prepetition claim, including without limitation the $1,744,512.23, plus interest thereon, improperly asserted by ABC Funding in connection with the alleged prepetition defaults under the Credit Agreement.

79.    Any payment made by Miami Jai-Alai after ABC Funding's purported acceleration of the Credit Agreement is not a "pre-payment." Rather, the purported acceleration would only have the effect of moving forward the maturity date under the Credit Agreement, thus rendering the acceleration date as the new alleged maturity date.

80.    ABC Funding confuses the notion of its alleged right to a "pre-payment" premium with the fact that it demanded early payment by virtue of calling a default under the Credit Agreement and accelerating the maturity date thereunder.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered in its favor and against ABC Funding (i) ordering that ABC Funding's prepetition claims be disallowed; and (ii) granting such other and further relief as the Court deems just and equitable.

## COUNT III – OBJECTION TO ABC FUNDING'S ORIGINAL ISSUE DISCOUNT PORTION OF ITS PREPETITION CLAIM

81.    Miami Jai-Alai adopts and alleges paragraphs 1 through 73 of this Complaint as if set forth fully herein.

82.    As part of the Credit Agreement, the parties executed that certain

Transaction Fee Letter, dated April 25, 2011, a copy of which is attached hereto as **Exhibit "I."**

83.     The Transaction Fee Letter sets forth the operative terms and mechanics of the funding of the loans made by ABC Funding pursuant to the Credit Agreement.

84.     The Transaction Fee Letter contains an "original issue discount" of 98%, with ABC Funding "ratably sharing the 2% that is not funded based on their respective Commitments." See Exhibit I, page 1.

85.     The original issue discount is treated for all purposes (i.e., tax, accounting and bankruptcy) as interest that is amortized over the life of the loan.

86.     The portion of the original issue discount that is unaccrued as of the Petition Date is deemed unmatured interest that must be disallowed under Bankruptcy Code Section 502(b)(2).

87.     To the extent ABC Funding's prepetition claims against Miami Jai-Alai includes any amounts purportedly due under the original issue discount, such amounts constitute unmatured interest and therefore must be disallowed.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered in its favor and against ABC Funding (i) ordering that ABC Funding's prepetition claims be disallowed; and (ii) granting such other and further relief as the Court deems just and equitable.

## COUNT IV – SUBORDINATION OF ABC FUNDING'S WARRANT CLAIM PURSUANT TO SECTION 510(B)

88.     Miami Jai-Alai adopts and alleges paragraphs 1 through 73 of this Complaint as if set forth fully herein.

89.     Pursuant to Bankruptcy Code Section 510(b) "for the purposes of distribution…a claim…for damages arising from the purchase or sale of … **a**

**security** [of the debtor]…shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock." 11 U.S.C. § 510(b) (emphasis added).

90.     A warrant is included in the Bankruptcy Code's definition of "security."  Section 101(49)(A)(xv) states: "The term security – includes … warrant or right to subscribe to or purchase or sell, a security ..."

91.     The ABC Funding Warrant Claim and the Repurchase Obligation arise from the purchase or sale of a security of Florida Gaming Centers.

92.     The ABC Funding Warrant Claim, arising from the Warrant Agreement, is a claim based solely on "the issuance of warrants to purchase shares of common stock…of [Florida Gaming Centers]…" *See* Whereas clause of Warrant Agreement, Exhibit A, page 1.

93.     To the extent the ABC Funding Warrant Claim is a valid claim, it is based on the common stock of Florida Gaming Centers and is an equity interest in Florida Gaming Centers.

94.     The ABC Funding Warrant Claim is subject to mandatory subordination under Section 510(b) and must be subordinated to a level equal to the common stock of Florida Gaming Centers.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered in its favor and against ABC Funding, ordering that to the extent it is a valid claim, the ABC Funding Warrant Claim is an equity interest in Florida Gaming Centers and must be subordinated to a level of equity in Florida Gaming Centers pursuant to Section 510(b); and (ii) granting such other and further relief as the Court deems just and equitable.

### Count V – Subordination Of ABC Funding's Warrant Claim To The Level Of Common Stock in Florida Gaming Corporation Pursuant To Section 510(b)

95.     Miami Jai-Alai adopts and alleges paragraphs 1 through 73 of this Complaint as if set forth fully herein.

96.     Pursuant to Bankruptcy Code Section 510(b) "for the purposes of distribution…a claim…for damages arising from the purchase or sale of … **a security** [of the debtor] **or of an affiliate of the debtor**…shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock." 11 U.S.C. § 510(b) (emphasis added).

97.     A warrant is included in the Bankruptcy Code's definition of "security." Section 101(49)(A)(xv) states: "The term security – includes … warrant or right to subscribe to or purchase or sell, a security …"

98.     The ABC Funding Warrant Claim and the Repurchase Obligation arise from the purchase or sale of a security of Florida Gaming Centers.

99.     The ABC Funding Warrant Claim, arising from the Warrant Agreement, is a claim based solely on "the issuance of warrants to purchase shares of common stock…of [Florida Gaming Centers]…" *See* Whereas clause of Warrant Agreement, Exhibit A, page 1.

100.     To the extent the ABC Funding Warrant Claim is a valid claim, it is based on the common stock of Florida Gaming Centers and is an equity interest in Florida Gaming Centers.

101.     The ABC Funding Warrant Claim is subject to mandatory subordination under Section 510(b) and must be subordinated to a level equal to the common stock of Florida Gaming Corp.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered in its favor and against ABC Funding, ordering that to the extent it is a

valid claim, the ABC Funding Warrant Claim is an equity interest in Florida Gaming Centers and must be subordinated to a level of equity in Florida Gaming Corp. pursuant to Section 510(b); and (ii) granting such other and further relief as the Court deems just and equitable.

## COUNT VI – EQUITABLE SUBORDINATION OF ABC FUNDING'S CLAIMS PURSUANT TO SECTION 510(C)

102.    Miami Jai-Alai adopts and alleges paragraphs 1-73 of this Complaint as if set forth fully herein.

103.    ABC Funding's claims in this case arise wholly from its inequitable conduct as described herein and should be subordinated to the claims of other creditors and equity holders of Miami Jai-Alai.

104.    Moreover, ABC Funding's conduct caused injury to Miami Jai-Alai's other creditors and conferred an unfair advantage on ABC Funding.

105.    Under principles of equitable subordination, all claims asserted against either Florida Gaming Centers or Florida Gaming Corp. by, on behalf of or for the benefit of ABC Funding, should be subordinated for purposes of distribution pursuant to Bankruptcy Code Sections 510(c) and 105(a).

106.    During negotiations with Florida Gaming Centers and Florida Gaming Corp. prior to entering into the Syndicated Credit Facility, ABC Funding fraudulently misrepresented that its desire in entering into the Syndicated Credit Facility was to provide financing for Miami Jai-Alai so that Miami Jai-Alai could successfully operate the Casino. ABC Funding presented to Miami Jai-Alai erroneous, misleading and false financial revenue projections and budgets to mislead Miami Jai-Alai into believing that ABC Funding's financing plan would allow Miami Jai-Alai to operate the Casino and be successful.

107.    These representations were false and known by ABC Funding to be false when made, as ABC Funding intended at all times to induce Miami Jai-Alai

into entering into the Syndicated Credit Facility, then act in bad faith so that they could declare Miami Jai-Alai to be in default, accelerate the loan balance, and take over the Casino for their own benefit. ABC Funding, however, continually assured Miami Jai-Alai that their intention was for Miami Jai-Alai to succeed in operating the Casino when in fact, the opposite was true.

108.    ABC Funding knew their conduct was fraudulent yet induced Florida Gaming Centers and Florida Gaming Corp. to enter into the Syndicated Credit Facility under the guise that they wanted Miami Jai-Alai to succeed when at all times, they planned for Miami Jai-Alai to fail so that they could seize control over the business. Miami Jai-Alai detrimentally and justifiably relied on these fraudulent misrepresentations in deciding to enter into the Syndicated Credit Facility.

109.    As a result of ABC Funding's fraudulently inducing Miami Jai-Alai to sign the Syndicated Credit Facility, Miami Jai-Alai has suffered severe damages by accepting a loan with a higher principal balance and higher interest rate and thus higher payments then alternative loans and financing arrangements, being forced to spend unwarranted and unnecessary sums to comply with the one-sided onerous Syndicated Credit Facility, and now being declared in default and having ABC Funding accelerate the loan balance.

110.    In addition, ABC Funding's conduct as set forth above was undertaken with no regard to Miami Jai-Alai's ability to repay or for the impact that such conduct would have on other creditors of Miami Jai-Alai. The exorbitant amounts advanced by Miami Jai-Alai on account of the Syndicated Credit Facility injured other creditors because funds that would have otherwise gone to those creditors were diverted to ABC Funding in respect of the Syndicated Credit Facility. Those creditors did nothing to contribute to the risk of non-payment or the onerous terms of the Syndicated Credit Facility and should not be punished by ABC Funding's misconduct.

111.    Equitable subordination as requested herein is consistent with the

provisions and purposes of the Bankruptcy Code.

WHEREFORE, Miami Jai-Alai respectfully requests that (i) judgment be entered against ABC Funding ordering that its claims against Miami Jai-Alai be equitably subordinated to the claims of other creditors or denied due to ABC Funding's inequitable conduct and bad faith in negotiating, administering and foreclosing on the Syndicated Credit Facility, (ii) requiring the disgorgement of all payments and consideration received by ABC Funding on account of the Credit Agreement; (iii) and granting such other and further relief as the Court deems just and equitable.

### COUNT VII – USURY AND ACTION SEEKING CANCELLATION OF ALL SUMS DUE ON USURIOUS LOAN AND RECOVERY OF ALL PAYMENTS OF PRINCIPAL AND INTEREST ON USURIOUS LOAN AS PROPERTY OF MIAMI JAI-ALAI'S BANKRUPTCY ESTATE PURSUANT TO 11 U.S.C. § 542

112.    Miami Jai-Alai adopts and alleges paragraphs 1-73 of this Complaint as if set forth fully herein.

113.    ABC Funding put the Warrant Agreement at issue in the ABC Florida Action by including a count for mortgage foreclosure in its *Amended Complaint*. Specifically, Count III of ABC Funding's *Amended Complaint* seeks to foreclose the Mortgage, which secures, *inter alia,* the Warrant Agreement. A true and correct copy of ABC Funding's Complaint initiating the ABC Florida Action is attached hereto as **Exhibit "J."**

114.    Section 1.2(a)(iv) of the Mortgage defines the "Secured Obligations" as "[p]ayment and performance of any obligations of [Miami Jai-Alai] under the other Loan Documents …" The Mortgage is part of, and annexed to, the Credit Agreement attached as Exhibit A hereto.

115.    "Loan Documents," in turn are defined in the Credit Agreement as "…the Warrant Agreement and warrants to be issued pursuant thereto…" Page 15, Credit Agreement.

116.    The Warrant Agreement provides that "with respect to **the validity of this Agreement** and the Warrants, the issuance of Common Stock upon exercise of the Warrants … shall be governed by the laws of the State of Florida."

117.    The question of usury in connection with the terms of the Warrant Agreement goes to the heart of the "validity of [the Warrant] Agreement and the Warrants, the issuance of Common Stock upon exercise of the Warrants," and is therefore to be construed under Florida law.

118.    And Section 7.6 of the Mortgage, Absolute Assignment of Rents, Security Agreement and Fixture Filing that secures the Loan Documents – including Miami Jai-Alai's obligations thereunder – states that "[t]he creation, perfection and enforcement of the lien of this Mortgage shall be governed by the law of the State of Florida …"

119.    Miami Jai-Alai's obligations to repurchase the Warrants pursuant to the Warrant Agreement, along with any legal issues that may be implicated by those obligations, unquestionably fall within the ambit of "enforcement of the lien" created by the Mortgage and Loan Documents.

120.    Accordingly, Florida law governs all issues related to Miami Jai-Alai's repurchase of the warrants as set forth herein, including the statutorily prescribed maximum interest rate of 25%.

121.    The Warrant Agreement is structured in such a fashion so as to guarantee the repurchase of the Warrants thereunder under any number of "Trigger Events."   The question was never <u>if</u> ABC Funding would receive anything on account of the Warrants, but <u>when</u> it would receive such value.

122.    As but one example, a "Trigger Event" under the Warrant Agreement is "the Maturity Date."   *See, e,g.,* the "Trigger Events" set forth in Section 1, page 6 of the Warrant Agreement.

123.    And as noted above, another "Trigger Event" is when the Silvermark sale was approved at a Florida Gaming Corporation board of directors



meeting which the principals of ABC Funding attended.

124.    There is no contingency or set of circumstances under which ABC Funding would not receive value in consideration of the Warrant Agreement. Stated differently, ABC Funding was guaranteed to receive consideration under the Warrant Agreement.

125.    The Warrant Agreement falls outside the scope of Section 687.03(4), Florida Statutes, and cannot be construed as a "contingent" arrangement.

126.    Moreover, the value of the warrants do not "substantially depend … on the success of the venture in which are used the proceeds of that loan" as required under Section 687.03(4), Florida Statutes.

127.    Accordingly, there is no "contingency" here that would serve to remove the repurchase obligations under the Warrant Agreement from the provisions of Florida's usury statutes.

128.    As noted above, ABC Funding, as administrative agent to the Lenders under the Syndicated Credit Facility, has no connection or ties to New York.  Specifically, the Lenders are incorporated or have their principal place of business in Delaware and the Cayman Islands. The transaction between the parties has no normal relation to New York State.

129.    The total payments due under the Syndicated Credit Facility and the total amounts allegedly due under the Warrant Agreement constituted a loan of money as defined in Section 687, Florida Statutes.

130.    There was an understanding between the parties as memorialized in the Syndicated Credit Facility and the Warrant Agreement that the money loaned would be repaid in the amount set forth therein.

131.    The total amount due under the Warrant Agreement plus regular interest payments under the Syndicated Credit Facility exceeded the lawful interest rate of 25% per annum, simple interest.

132.    ABC Funding harbored a corrupt or criminal intent at the time the Syndicated Credit Facility and Warrant Agreement were made to extract from Miami Jai-Alai an amount of interest that exceeded the legal rate and in fact to extract a rate that constituted criminal usury under Florida law.

133.    Section 687.071(7) of the Florida Statutes provides that "[n]o extension of credit made in violation of any of the provisions of [Section 687.071(7)] shall be an enforceable debt…"

134.    Because the effective interest rate of the Syndicated Credit Facility and Warrant Agreement exceeds the permissible rate under Section 687.071, Florida Statutes, those agreements are unenforceable.

135.    Because the Syndicated Credit Facility and Warrant Agreement are unenforceable pursuant to Section 687.071, Florida Statutes, ABC Funding is required to forfeit all payments made by Miami Jai-Alai on account of the Syndicated Credit Facility.

136.    Accordingly, all payments made by Miami Jai-Alai and received by ABC Funding on account of the Syndicated Credit Facility are deemed forfeited and create a debt that is property of Miami Jai-Alai's bankruptcy estate and is matured, payable on demand, or payable on order pursuant to Bankruptcy Code Section 542(b).

137.    ABC Funding has failed to turn over or repay any of the forfeited payments made by Miami Jai-Alai and received by ABC Funding on account of the Syndicated Credit Facility.

WHEREFORE, Miami Jai-Alai respectfully requests that judgment be entered against ABC Funding ordering (i) that the Syndicated Credit Facility is void *ab initio*; (ii) that the Warrant Agreement is void *ab initio*; (iii) that Miami Jai-Alai is entitled to an award of damages twice the actual amount of the principal and interest collected in connection with the Syndicated Credit Facility; (iv) that ABC Funding must be required to disgorge all payments and consideration

received on account of the Syndicated Credit Facility because such payments are deemed forfeited; (v) that ABC Funding turn over to Miami Jai-Alai all payments made by Miami Jai-Alai and received by ABC Funding on account of the Syndicated Credit Facility;  (vi) that Miami Jai-Alai is entitled to an award of its fees and costs; and (vii) such other and further relief as the Court deems just and equitable.

Dated:  November 8, 2013

> SALAZAR JACKSON, LLP
> *Counsel for Florida Gaming Centers, Inc..,*
> *Florida Gaming Corporation, Tara Club*
> *Estates, Inc., and Freedom Holding, Inc.*
> 2 South Biscayne Boulevard, Suite 3760
> Miami, Florida 33131
> Phone:  (305) 374-4848
> Fax:  (305) 397-1021
> Email:  Salazar@SalazarJackson.com
> Email:  Honaker@SalazarJackson.com
>
> By:    /s/ Luis Salazar
>           Luis Salazar
>           Florida Bar No. 147788
>           Aaron P. Honaker
>           Florida Bar No. 48749