IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:                                    Chapter 11

                                          Case No. 13-29597-RAM
FLORIDA GAMING CENTERS,                   (Jointly Administered)
INC., et al.,[1]

_____ Debtors.   /

**Debtors' Motion For Entry Of (I) An Order
(A) Authorizing And Approving Sale Procedures
For The Sale Of Substantially All The Debtors' Assets;
(B) Approving Debtors' Entry Into And Form Of Asset
Purchase Agreement, Including A Break-Up Fee And Expense
Reimbursement; (C) Scheduling An Auction And Final
Hearing To Consider Approval Of The Sale; (D) Approving
Form And Manner Of Notice Of Sale Procedures, Auction
And Sale Hearing; (II) An Order Authorizing Assumption
And Assignment Of Certain Executory Contracts And
Unexpired Leases; And (III) Approving The Compromise and
Settlement Of Claims Between Parties To The November 25,
2012 Stock Purchase Agreement**

Debtors, Florida Gaming Centers, Inc. and Florida Gaming Corporation (collectively, **"Miami Jai-Alai"** or the **"Debtors"**) file this *Motion for Entry of (I) an Order (A) Authorizing and Approving Sale Procedures for the Sale of Substantially All the Debtors' Assets; (B) Approving Debtors' Entry Into and Form of Asset Purchase Agreement, Including a Break-Up Fee and Expense Reimbursement; (C) Scheduling an Auction and Final Hearing to Consider Approval of the Sale; (D) Approving Form and Manner of Notice of Sale Procedures, Auction and Sale Hearing and (II) an Order Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Approving The Compromise And Settlement Of Claims*

---

[1] The debtors in these chapter 11 cases and the last four digits of their federal tax identification number are: Florida Gaming Corporation (0533), Florida Gaming Miami Jai-Alai, Inc. (5893), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

*Between Parties To The November 25, 2012 Stock Purchase Agreement* (the **"Motion"**).  The Motion seeks the entry of an Order:

> (i)    authorizing and approving (a) certain bidding and sale procedures (the **"Sale Procedures"**), substantially in the form annexed to the Sale Procedures Order, a proposed copy of which is attached hereto as **Exhibit "A,"** to govern the sale (the **"Sale"**) of substantially all of Miami Jai-Alai's assets; (b) approving form of asset purchase agreement, including a Break-Up Fee and Expense Reimbursement (each as defined and described below); (c) scheduling an auction and hearing to consider approval of the Sale (the **"Sale Hearing"**); and (d) approving the form and manner of notice of the Sale Procedures, Auction, and Sale Hearing;

> (ii)    authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases as provided in the Agreement (**"Assumed Contracts"**), including authorizing and approving procedures for identification of defaults to be cured (**"Cure Amount"**) and for providing notice to contracting parties with an opportunity to object to such assumption and assignment, the Cure Amount, or both as provided in the Agreement (**"Contracting Parties Notice"**); and

> (iii)    approving the compromise and settlement of all claims arising between the parties to the November 25, 2012 Stock Purchase Agreement.

### Jurisdiction And Venue

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).  Venue of this case and this Motion is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2.    The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105(a) and 363 and Bankruptcy Rules 2002, 6004 and 9019.

## BACKGROUND

3.    On August 19, 2013, Miami Jai-Alai, along with three affiliated entities, commenced these voluntary Chapter 11 cases.  Miami Jai-Alai is authorized to continue to operate its businesses and manage its properties as debtor-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

4.    On September 9, 2013, the Office of the United States Trustee appointed the Joint Committee of Creditors Holding Unsecured Claims (the **"Committee"**) (ECF No. 90) as to debtors Florida Gaming Miami Jai-Alai, Inc., Case No. 13-29597-RAM, and Florida Gaming Corporation, Case No. 13-29598-RAM.

## CONCISE STATEMENT UNDER LOCAL RULE 6004-1

4.    In accordance with Local Bankruptcy Rule 6004-1, below is a summary of the nature of Miami Jai-Alai's request, qualified in all respect by the Sales Procedures attached hereto and subject to further modification and amendment prior to the final hearing on this Motion:

   (a)    **Identity of the Purchaser**. As set forth herein, the Milestones in the Final Cash Collateral Order (defined below) have precluded Miami Jai-Alai from finalizing a stalking horse asset purchase agreement by the date of this Motion.  In any event, Miami Jai-Alai has been engaged in, and is continuing to negotiate a stalking horse Asset Purchase Agreement (the **"APA"**) with Silvermark, LLC (**"Silvermark"**), and intends to file a version of the APA before the hearing on this Motion.   If Miami Jai-Alai does not enter into the APA with Silvermark, these Sale Procedures will be revised to reflect Miami Jai-Alai's entry into an asset purchase agreement with an alternative stalking horse bidder, or determination to pursue the sale of its Assets (as defined below) without a stalking horse bidder, in either case after consulting with the Official Committee of Unsecured Creditors (the "**Committee**") and ABC Funding, LLC ("**ABC**").

   (b)    **Sale Terms**.

      i.    Purchase Price: The cash Purchase Price is $115,000,00.00 (the **"Purchase Price"**).

3



ii.      Assumed Liabilities: As additional consideration for the purchase of the Assets, on the Closing Date (as defined in the APA), Silvermark shall assume, and become solely and exclusively liable for, the Assumed Liabilities (as defined in the APA).

iii.     Included Contracts: On the Closing Date, pursuant to Bankruptcy Code Section 365, Miami Jai-Alai shall assume and assign to Silvermark, and Silvermark shall accept assignment of, the Included Contracts (as defined in the APA).

iv.     A final APA containing the sale terms will be disclosed and filed if/when Miami Jai-Alai finalizes the APA with Silvermark or an alternative stalking horse bidder.

(c)    **Auction Terms**.

i.     Auction Date: March 25, 2014

ii.     Auction Location: Salazar Jackson, LLP, 201 South Alhambra Circle, Suite 1205, Coral Gables, Florida 33134, or such other location as shall be timely communicated to all entities entitled to attend the Auction.

iii.     Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a **"Subsequent Bid"**) and (ii) Miami Jai-Alai determines, after consultation with ABC Funding, LLC (**"ABC"**) and the Committee, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).  The Auction may include individual negotiations by Miami Jai-Alai with Qualified Bidders.

iv.     For the purpose of evaluating Subsequent Bids, Miami Jai-Alai may require a Qualified Bidder

4

submitting a Subsequent Bid to submit to Miami Jai-Alai as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to Miami Jai-Alai in its sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction at the amount of the Subsequent Bid. Miami Jai-Alai, after consultation with the Committee and ABC, may adopt rules for the Auction at or prior to the Auction that will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Sale Procedures Order; provided that the Sale Procedures may not be modified such that they limit ABC's right to credit bid.

v.   Miami Jai-Alai may, in its sole and absolute discretion, evaluate Bids on various grounds including, but not limited to, any delay, additional risks (including closing risks) and added costs to Miami Jai-Alai. In consultation with ABC and the Committee, Miami Jai-Alai shall make a determination, in its sole and absolute discretion, whether a Bid is or is not a Qualified Bid; provided, however, that to constitute a Qualified Bid, a Bid must comply with all the requirements sets forth in the "Qualified Bid" section above. Miami Jai-Alai shall notify each bidder as to whether its Bid has been determined to be a Qualified Bid by no later than 5:00 p.m. (prevailing Eastern Time) on the day that is two business days after the Bid Deadline.

vi.  Initial Bid Increment: Each incremental bid at the Auction shall provide net value to the estate of at least $250,000 over the Starting Bid or the Leading Bid, as the case may be.

vii. Credit Bidding: Only ABC (or its nominee or designee) shall be permitted to submit a credit bid at the Auction, and ABC will notify Miami Jai-Alai, the Committee and the Stalking Horse of its intention to potentially credit bid no later than the Bid Deadline, or such early date as may be agreed to

5

or required by Court Order. ABC (or its nominee or designee) shall be permitted to credit bid the total allowed amount of its secured claim outstanding at the time of the Auction under that certain Credit Agreement dated April 27, 2011 and related documents which constitute "Obligations" under the Credit Agreement. The allowed amount of the ABC Claim shall be determined prior to the Bid Deadline by order of the Bankruptcy Court pursuant to the claim determination scheduling stipulation attached as an exhibit to the Sale Procedures Order, which schedule shall be approved by the Bankruptcy Court

(d)    **Requirements of Competing Bidders**.

    i.     Minimum Good Faith Deposit: 5% of the Purchase Price.

    ii.    Documentation Requirements: duly authorized and executed APA (as modified by the bidder to reflect the terms and conditions of its bid) as well as copies of additional ancillary agreements as may be required by the bidder with all exhibits and schedules thereto redlined to show those amendments and modifications to the APA and such ancillary agreements.

    iii.   Other Qualifying Conditions: (i) written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction; (ii) written evidence demonstrating its eligibility for gaming license and permit approval and that it has timely commenced and is seeking any such necessary regulatory approval; (iii) it fully discloses the identity of each entity that will be bidding for the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation.

(e)    **Bid Deadline**.

    i.     All Competing Bidders must submit their bids and all required information and documents on or before

6

March 19, 2014 at 5:00 p.m. (Prevailing Eastern Time).

(e)    **Purchaser Protections Not Otherwise Described**.

　　　　i.    Miami Jai-Alai may, after consultation with ABC and the Committee, employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (a) not inconsistent with these Sale Procedures, the Sale Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any other order of the Bankruptcy Court entered in connection herewith and (b) disclosed to each Qualified Bidder.

　　　　ii.    Proposed Breakup Fee: $4,000,000.00.

## SUMMARY OF RELIEF REQUESTED

5.    Miami Jai-Alai has been engaged in negotiating, and is continuing to negotiate, a final stalking horse APA with Silvermark and expects to file the resulting finalized APA before the final hearing on this Motion. Additionally, the terms of the Sales Procedures continue to be negotiated among the Miami Jai-Alai, ABC, and the Committee, and Miami Jai-Alai intends to file any modifications to the Sales Procedures prior to the final hearing on this Motion.

6.    In the meantime, pursuant to this Court's *Final Order Granting Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Use Cash Collateral; (II) Granting Adequate Protections; and (III) Granting Other Related Relief* entered on October 28, 2013 (ECF No. 201) (the **"Final Cash Collateral Order"**), Miami Jai-Alai is required to comply with certain Milestones (as defined in the Final Cash Collateral Order), including but not limited to filing this Motion by no later than November 22, 2013. See Final Cash Collateral Order at ¶ 12(h)(2), page 14. ABC consented to the filing of this Motion by

7

November 11, 2013.  Miami Jai-Alai therefore files this Motion to comply with that Final Cash Collateral Order and in furtherance of its sale efforts.

7.      If Miami Jai-Alai does not receive any Qualified Bids other than the APA and ABC indicates in the Credit Bid Notification that it does not wish to credit bid at the Auction, the Auction shall be cancelled and Miami Jai-Alai shall report the same to the Bankruptcy Court and seek approval of the Sale to the Silvermark (or an alternative Stalking Horse, if applicable).

8.      Under the Silvermark APA, Miami Jai-Alai will reserve the right to accept a superior proposal on, and subject to, the terms set forth in the Sale Procedures.    Accordingly, Miami Jai-Alai requests a hearing (the **"Sale Procedures Hearing"**) for the Court to consider entry of an order (the **"Sale Procedures Order"**) (i) approving the Sale Procedures substantially in the form of Exhibit 2, attached to the Sale Procedures Order for additional bidding on the Assets; (ii) Setting Bid Deadline, Auction and Sale Approval Hearing Dates; (iii) approving Miami Jai-Alai's entry into and form of APA, including a Break-Up Fee and Expense Reimbursement; (iv) Establishing Notice Procedures And Approving Forms of Notice; and (iv) Approving Procedures Related to Assumption and Assignment of Executory Contracts and Unexpired Leases.

9.      Miami Jai-Alai intends to consummate the Sale as promptly as possible, consistent with (i) the Milestones set forth in the Final Cash Collateral Order; (ii) the due process requirements pursuant to Bankruptcy Code Sections 363 and 365; and (iii) the sale process under the Sale Procedures.  By this Motion, Miami Jai-Alai seeks approval and implementation of a three-step sales process, as follows:

(a)      "Sale Procedures Hearing" at which Miami Jai-Alai will seek approval of the Sale Procedures, as described below. Pursuant to the Final Cash Collateral Order, Miami Jai-Alai requests that the Sale Procedures Hearing take place on or before December 13, 2013;

(b)      an "Auction" to be conducted in accordance with the Sale Procedures, following a confirmatory due diligence period for other interested parties, assuming one or more "Qualified Bids" are timely

received as provided in the Sale Procedures. Miami Jai-Alai proposes to conduct the Auction (if necessary) on or before March 25, 2014; and

(c)     a "Sale Hearing" proposed to be held on March 26, 2014, at __:00 a.m./p.m. (prevailing Eastern Time), before the Honorable Robert A. Mark in the United States Bankruptcy Court for the Southern District of Florida, Claude Pepper Federal Building, 51 SW First Avenue, Room 1406, Miami, Florida 33130, at which time Miami Jai-Alai will seek entry of an order (i) authorizing the Sale; (ii) authorizing and approving the APA executed by the Successful Bidder or any stalking horse APA (if applicable); (iii) approving the assumption and assignment of executory contracts and unexpired leases; and (iv) granting related relief (the **"Sale Order"**).

10.     Miami Jai-Alai expects to be able to meet its burden at the Sale Procedures Hearing and the ultimate Sale Hearing of demonstrating that the sale efforts to date have been appropriately conducted, and that Miami Jai-Alai will have exposed the Assets to a targeted marketing process.  As such, the proposed time frame will appropriately balance Miami Jai-Alai's objective to quickly conclude the Sale in accordance with the Final Cash Collateral Order with the need to thoroughly market the Assets and properly negotiate a transaction.

## Relief Requested

### A.     The Sale Procedures

11.     In order to ensure that Miami Jai-Alai's estate is able to derive maximum value from the Assets, Miami Jai-Alai will retain the right to continue to solicit offers for the Assets, as provided in the Sale Procedures. Miami Jai-Alai seeks to adopt procedures that will foster continued competitive bidding among potential buyers without eliminating or discouraging any qualified bids, including by any entity to be embodied in any potential stalking horse APA.

12.     The entry of the Sale Procedures Order is a condition precedent to the consummation of the Sale.  Miami Jai-Alai believes that the proposed Sale Procedures constitute the best method of maximizing the value of the Assets

9

through the continuation of a competitive sale process that will allow for the solicitation and submission of competitive bids (as set forth in the Sale Procedures, a competitive bid submitted in accordance with these procedures shall be deemed a "Qualified Bid" and such bidder shall constitute a "Qualified Bidder"). Accordingly, Miami Jai-Alai requests that the Court enter the Sale Procedures Order authorizing Miami Jai-Alai to implement the Sale Procedures and schedule the Auction as more fully set forth in the Sale Procedures.

13.    A bid submitted by a Qualified Bidder will be considered a Qualified Bid only if the bid is submitted in the time and manner provided in the Sale Procedures and complies with all of the following (a **"Qualified Bid"**); provided, however, that upon the agreement of Miami Jai-Alai, the Committee, and ABC, any of the following requirements can be waived  (as set forth in more detail in the Sale Procedures):

(a)    it is in writing and offers to purchase all, or substantially all, of the Assets for value to Centers, in Centers' reasonable business judgment, after consultation with the Committee and ABC, that is greater than or equal to the sum of the value offered under the APA, plus (i) the amount of the Break-Up Fee (as defined in the APA), plus (ii) 250,000, subject to the same or better other terms and conditions as are contained in the APA;

(b)    it includes a letter stating that the bidder's offer is and shall remain irrevocable until the selection of the Successful Bidder and, if applicable, the Alternate Bidder (as defined below), provided that if such bidder is selected as the Successful Bidder or the Alternate Bidder, its offer shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Alternate Bidder, and (ii) (x) with respect to the Successful Bidder only, the date on which the obligations under either the APA (if the Successful Bidder is the Stalking Horse) or the respective purchase and sale agreements with the Qualified Bidder who is the Successful Bidder are terminated in accordance with the terms thereof (the APA Termination Date:), subject in all events to the rights of the parties thereunder arising from such termination, and (y) with respect to the Alternate Bidder only, the Alternate Bid Expiration Date (as defined below);

Salazar Jackson, LLP                     S | J                     www.SalazarJackson.com

(c)    it includes (i) a duly authorized and executed APA (as modified by the bidder to reflect the terms and conditions of its bid), including the purchase price for the Assets expressed in U.S. Dollars (the **"Purchase Price"**), together with all exhibits and schedules thereto, including, to the extent required by the terms and conditions of such bid, the other ancillary agreements as described in the APA and such additional ancillary agreements as may be required by the bidder with all exhibits and schedules thereto, and (ii) a redline of such APA and all other such materials marked to show those amendments and modifications to the APA (**"Marked Agreements"**) and such ancillary agreements (the **"Marked Ancillary Agreements"**);

(d)    it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow Centers, after consultation with ABC and the Committee, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreements;

(e)    it includes written evidence demonstrating its eligibility for those gaming licenses, permits, or regulatory approvals necessary to allow it to operate the Assets, together with evidence that it has timely commenced and is seeking any such necessary licenses, permits, or regulatory approval, that will allow Centers, after consultation with ABC and the UCC, to make a reasonable determination as to the Qualified Bidder's ability to timely complete the licensing, permitting, and/or regulatory processes;

(f)    it is not conditioned on (i) the outcome of unperformed due diligence by the bidder (and includes an acknowledgement and representation that the bidder has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer) or (ii) obtaining financing;

(g)    it fully discloses the identity of each entity that will be bidding for the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation.

(h)    it includes an acknowledgment and representation that the bidder will assume Centers' obligations under the executory contracts and unexpired leases proposed to be assumed and assigned pursuant to the APA, contains full details of the bidder's proposal for the treatment of related cure costs; and it identifies with particularity any executory

contract or unexpired lease the assumption and assignment of which is a condition to closing;

(i)    it includes an acknowledgement and representation that the bidder: (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; and (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Marked Agreements or the Marked Ancillary Agreements; and (iii) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

(j)    it includes evidence, in form and substance reasonably satisfactory to Centers, in consultation with ABC and the Committee, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Marked Agreements and Marked Ancillary Agreements;

(k)    it is accompanied by a good faith cash deposit (each, a **"Good Faith Deposit"**) in an amount equal to 5% of the total Purchase Price to be held in escrow by counsel to Centers subject to the terms of the APA and otherwise to be dealt with as provided for under "Good Faith Deposit" herein; and

(l)    it includes evidence of the Potential Bidder's ability to comply with Section 365 of the U.S. Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Potential Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by Centers and assigned or subleased to the Potential Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases.

14.    Notwithstanding the foregoing, Silvermark (or any alternative Stalking Horse) and ABC will be deemed to be Qualified Bidders, and the APA and any credit bid complying with the provisions set forth in the section titled "Credit Bidding" herein will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction and the Sale. The Stalking Horse will provide a Good Faith Deposit of $2.0 million to be held in escrow by counsel to Miami Jai-Alai subject to the terms of the APA.

B.    THE AUCTION

15.    If Miami Jai-Alai receives one or more Qualified Bids, Miami Jai-Alai will conduct an auction (the **"Auction"**) of the Assets at 10:00 a.m. on March 25, 2014 at Salazar Jackson, LLP, 201 South Alhambra Circle, Suite 1205, Coral Gables, Florida 33134, or such other location as shall be timely communicated to all entities entitled to attend the Auction. Copies of all Qualified Bids shall be delivered to ABC and the Committee at such time that such bid is deemed a Qualified Bid. The Auction that shall run in accordance with the following procedures:

(a)    Only Centers, the Stalking Horse, ABC and the UCC (and the advisors to each of the foregoing) and any other Qualified Bidder that has timely submitted a Qualified Bid, or such other persons or entities that Centers reasonably determines, in its sole discretion, shall be permitted to attend the Auction in person, and only Qualified Bidders (including the Stalking Horse and ABC, to the extent that it provided the Credit Bid Notification) will be entitled to make any bids at the Auction.

(b)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

(c)    At least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Centers whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction and (ii) if such bidder is selected as an Alternate Bidder (as defined below), the Alternate Bid Expiration Date. Prior to the Auction, Centers will notify the Stalking Horse and all other Qualified Bidders of each Qualified Bidder and which Qualified Bid it believes, in its reasonable business judgment, after consultation with ABC and the Committee, is the highest or otherwise best offer (the **"Starting Bid"**).

(d)    All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the

13

true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid (including any agreements with any creditors of, or contract parties with, the Debtors) will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(e)    Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a **"Subsequent Bid"**) and (ii) Centers determines, after consultation with ABC and the Committee, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).    The Auction may include individual negotiations by the Debtor with Qualified Bidders.    Each incremental bid at the Auction shall provide net value to the estate of (i) at least $250,000 over the Starting Bid, or (ii)(a) $250,000 over the Leading Bid if the Leading Bid is not that of the Stalking Horse, and (ii) an amount equal to the Break Up fee plus $250,000 if the Leading Bid is from the Stalking Horse. After the first round of bidding and between each subsequent round of bidding, Centers shall announce the bid (and the value of such bid) that it believes (after consultation with the ABC and the UCC) to be the highest or otherwise best offer (the "Leading Bid").    A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.    Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Purchaser), Centers will, on the initial round of bidding, give effect to the Break-Up Fee that may be payable to the Stalking Horse under the APA as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on Centers.

(f)    For the purpose of evaluating Subsequent Bids, Centers may require a Qualified Bidder submitting a Subsequent Bid to submit to Centers, the Committee and ABC, as part of its Subsequent Bid, additional evidence (in the form of financial

14

disclosure or credit-quality support information or enhancement reasonably acceptable to Centers in its sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction at the amount of the Subsequent Bid.  Centers, in consultation with the Committee and ABC, may adopt rules for the Auction at or prior to the Auction that will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Sale Procedures Order; <u>provided</u> that the Sale Procedures may not be modified such that they limit ABC's right to credit bid.

16.     Miami Jai-Alai may, in consultation with ABC and the Committee, employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (a) not inconsistent with these Sale Procedures, the Sale Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any other order of the Bankruptcy Court entered in connection herewith and (b) disclosed to each Qualified Bidder.

## C.     THE SALE PROCEDURES HEARING

17.     Subject to Court approval, the Sale Procedures Hearing shall be held before this Court December 11, 2013.   Objections, if any, to the relief requested in this Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, Miami Division, Claude Pepper Federal Building, 51 SW First Avenue, Room 1406, Miami, Florida 33130, 33401 (or filed electronically via CM/ECF), on or before 4:30 p.m. (prevailing Eastern Time) on the second business day before the hearing on the Sale Procedures (the **"Sale Procedures Objection Deadline"**); and (d) be served upon the Notice Parties (as defined below), in each case, so as to be actually received no later than 4:30 p.m. (prevailing Eastern Time) on the same day.

15

18.     On or before three (3) business days after entry of the Sale Procedures Order, Miami Jai-Alai will cause a notice, substantially in the form attached as Exhibit 1 to the Sale Procedures Order (the **"Sale Notice"**), to be sent by first-class mail, postage prepaid, to the following: (i) all creditors of Miami Jai-Alai; (ii) all persons or entities know to Miami Jai-Alai to have asserted any security interest or other lien on any property of Miami Jai-Alai; (iii) the Florida Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering; (iv) the Environmental Protection Agency; (v) the state environmental agencies in the jurisdictions where Miami Jai-Alai owns real property; (vi) the Florida Attorney General; (vii) all entities known to have expressed a bona fide interest in acquiring all or portions of any of the Miami Jai-Alai's assets; (vii) all applicable state and local taxing authorities or recording offices; (viii) the Office of the United States Trustee; (ix) the Internal Revenue Service; (x) the Securities & Exchange Commission; (xi) the United States Attorney General/Antitrust Division of Department of Justice; (xii) all of Miami Jai-Alai's insurers; (xiii) all non-Debtor parties to contracts or leases (executory or other); (xiv) all parties to any litigation proceedings involving Miami Jai-Alai; (xv) all other known parties-in-interest in these Chapter 11 cases; (xvi) all parties that have executed a confidentiality agreement in connection with Miami Jai-Alai's marketing of its assets during these Chapter 11 cases; and (xvii) the Notice Parties (defined below).   The Notice Parties are: (a) Counsel to Miami Jai-Alai: Luis Salazar, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134; (b) counsel to ABC: Dennis M. Twomey, Sidley Austin, LLP, One South Dearborn, Chicago, Illinois 60603; (c) counsel to the Committee: Glenn D. Moses and Paul J. Battista, Genovese Joblove & Battista, P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131; and (d) all persons who have filed a request for notice under Bankruptcy Rule 2002.

D.    THE SALE HEARING

19.    The sale hearing to authorize Miami Jai-Alai to enter into and consummate the agreements with respect to the Successful Bid (the "**Sale Hearing**") will be held before the Honorable Robert A. Mark in the United States Bankruptcy Court for the Southern District of Florida, located in Miami, Florida, on a date to be scheduled by the court and currently proposed as March 26, 2014, at a time to be set by the Court.  If Miami Jai-Alai does not receive any Qualified Bids other than the APA, Miami Jai-Alai shall proceed as set forth in the "No Qualified Bids" section set forth in the Sale Procedures.

20.    If Miami Jai-Alai receives one or more additional Qualified Bid(s), then, at the Sale Hearing to approve the agreements with respect to the Successful Bid, Miami Jai-Alai will seek approval of the Successful Bid, and, at Miami Jai-Alai's election, after consultation with the Committee and ABC, the next highest or best Qualified Bid (the **"Alternate Bid"** and, such bidder, the **"Alternate Bidder"**).

21.    Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and Miami Jai-Alai will be authorized to effectuate a Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court.  The Alternate Bid shall remain open until the earlier of (a) fifteen (15) days following the entry of the Sale Order or (b) the consummation of the Sale to the Successful Bidder (the **"Alternate Bid Expiration Date"**).  All Qualified Bids (other than the Successful Bid and the Alternate Bid) shall be deemed rejected by Miami Jai-Alai on and as of the date of approval of the Successful Bid and the Alternate Bid by the Bankruptcy Court.

E.     **ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

22.     In connection with the Sale, the Auction and the entry of the Sale Order (whether the Successful Bidder is any potential Stalking Horse bidder or another Qualified Bidder submitting a Qualified Bid), Miami Jai-Alai requests this Court's approval of the Notice Of Assumption, Assignment And Cure Amount With Respect To Executory Contracts And Unexpired Leases Related To The Sale Of Substantially All Assets Of The Debtor, substantially in the form attached as Exhibit 3 to the Sale Procedures Order (the **"Notice of Assignment and Cure"**), which sets forth the following procedures for the assumption and assignment of certain executory contracts and unexpired leases:

(a)     Not later than seven (7) calendar days prior to the Sale Objection Deadline, Miami Jai-Alai shall cause to be served by overnight courier or hand delivery on the counterparties to each executory contract and unexpired lease that Miami Jai-Alai proposes to be assumed and assigned (the **"Assigned Contracts"**), the Notice of Assignment and Cure.

(b)     The Notice of Assignment and Cure will include (a) the title of the Assigned Contract to be assumed; (b) the name of the counterparty to the Assigned Contract; (c) any applicable cure amounts as determined by Miami Jai-Alai; (d) that the assignee is the Proposed Buyer or its designee, or any other Successful Bidder; and (e) the deadline by which any counterparty to the Assigned Contract must object.

(c)     Any objection to the assumption and/or assignment of any Assigned Contract identified on a Notice of Assignment and Cure, including to the cure amount set forth on such notice (or with respect to the provision of adequate assurance of future performance), must be in writing, filed with the Court, and be actually received by the Notice Parties no later than _____[TBD]_____, at 5:00 p.m. (prevailing Eastern Time) (the **"Assignment and Cure Objection Deadline"**), and must set forth (a) a specific default under the Assigned Contract, (b) if applicable, claim a specific monetary amount that differs from the amount, if any, specified by Miami Jai-Alai in such Notice of Assignment of Cure to cure all defaults, and (c) the basis for the objection.

(d)     If no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an

18

Assigned Contract, then the assumption and assignment of that Assigned Contract will be authorized pursuant to Bankruptcy Code Section 365 and the cure amount, if any, set forth on the Notice of Assignment and Cure shall be binding upon the non- Debtor party to the Assigned Contract for all purposes and will constitute a final determination (a) that the Assigned Contract may be assumed by Miami Jai-Alai and assigned to the Successful Bidder (or any potential Stalking Horse, if applicable), and (b) of the total cure amount required to be paid to the non-Debtor party (or parties) to the Assigned Contract in connection with any potential assignment of such Assigned Contract to the Successful Bidder (or any potential Stalking Horse, if applicable).  In addition, if no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, each non-Debtor party to such Assigned Contract shall be deemed to have consented, and shall be forever barred from objecting, to the assumption and assignment of such Assigned Contract on any grounds, and the cure amount, if any, set forth in the Notice of Assignment and Cure, including, without limitation, the right to assert any additional cure and other amounts with respect to the Assigned Contracts arising or relating to any period prior to such assumption or assignment or the right to demand adequate assurance of future performance. Furthermore, if no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, the Successful Bidder (or any potential Stalking Horse, if applicable), shall enjoy all of the rights and benefits under such Assigned Contract acquired by such Successful Bidder without the necessity of obtaining any party's written consent to Miami Jai-Alai's assumption and assignment of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment.

(e)     If a timely objection is received to the assumption and assignment of an Assigned Contract and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing or, with the agreement of Miami Jai-Alai and the Successful Bidder (or any potential Stalking Horse, if applicable), a later date set by the Court.  The pendency of a dispute relating to cure amounts will not prevent or delay the assumption and assignment of any Assigned Contracts, and Miami Jai-Alai may proceed with the assumption and assignment of the Assigned Contract, retain sufficient funds to cure all defaults claimed by the non-Debtor counterparty, and resolve the dispute regarding the cure amount at a later date as set by the Court.

23.     In addition to the foregoing, as soon as practicable, but in any event no later than 30 business days after the entry of the Sale Procedures Order, Miami

19

Jai-Alai seeks authorization, but not the obligation, to publish the notice of the Sale, in a form determined by Miami Jai-Alai, in the National Edition of The Wall Street Journal and other publications as may promote the sale effectively.

### AUTHORITY FOR RELIEF REQUESTED

24.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g.*, *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . Debtor's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."). To that end, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See id.* (such procedures "encourage biding and maximize the value of the Debtor's assets").

25.     Historically, bankruptcy courts have approved bid protections similar to those proposed pursuant to the Sale Procedures proposed here under the "business judgment rule," under which courts defer to the actions of corporations taken in good faith and in the exercise of honest judgment. *See, e.g.*, *In re 955 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992).

26.     The bid protections set forth herein satisfy the "business judgment rule." The bid protections proposed encourage a potential purchaser to act as a "stalking horse," who invests time, money and effort to negotiate with Miami Jai-Alai despite the risks and uncertainties of the Chapter 11 bankruptcy process.

27.     In order to compensate Silvermark (or an alternative stalking horse bidder) for the time, effort, expense, and risk that it has incurred and will incur in conducting due diligence and negotiating, documenting, and seeking to consummate the Sale, the Sale Procedures also provide that, if a Sale of the Assets

20

to a party other than the Stalking Horse is consummated by Miami Jai-Alai, then Miami Jai-Alai will pay the Stalking Horse the Break-Up Fee and Expense Reimbursement.

28.    To compensate the Silvermark for serving as the "stalking horse," thereby subjecting its bid to higher or better offers, Miami Jai-Alai seeks authority to pay the Break-Up Fee and the Expense Reimbursement if Silvermark is not the Winning Bidder.  Bankruptcy courts in numerous districts, including this District, have routinely approved bidding incentives similar to the requested Break-Up Fee and the Expense Reimbursement under the "business judgment rule," which, as described above, proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment.  *See In re Protective Products of America, Inc., et al.*, No. 10-10711-JKO (Bankr. S.D. Fla. Jan. 19, 2010) (approving 4% break-up fee and expense reimbursement in connection with the sale of substantially all of the debtors' assets); *In re Tousa, Inc., et al.,* No. 08-10928-JKO (Bankr. S.D. Fla. Dec. 21, 2009) (approving break-up fee and payable in connection with exit financing and expense reimbursement of reasonable out-of-pocket expenses); *In re Piccadilly Cafeterias, Inc.*, No. 03-27976 (Bankr. S.D. Fla. Sept. 14, 2004) (approving payment of expense reimbursement as bidder protection); *see also In re Solutia Inc.,* Case No. 03-17949 (PCB) (Bankr. S.D.N.Y. Oct. 19, 2005) (Order Authorizing Solutia to Sell Assets of Astaris LLC) (approving termination fee of $7.5 million (2.94%) and reimbursement of expenses up to $2 million); *In re Magellan Health Servs., Inc.*, Case No. 03- 405115 (PCB) (Bankr. S.D.N.Y. Sept. 8, 2003) (approving termination fee of $4 million (2.6%) and reimbursement of expenses up to $1 million); *In re Genuity Inc.*, Case No. 02-43558 (PCB) (Bankr. S.D.N.Y. Dec. 16, 2002) (approving breakup fee of $10 million (4.1%) and expense reimbursement up to $3 million); *see also In re Integrated Res., Inc.*, 147 B.R. at 658 ("[a] bankruptcy court should uphold a break-up fee which was not tainted by self-dealing and was the product of arm's length negotiations."); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (applicable principal of law for

21

the use of assets pursuant to section 363(b)(1) of the Bankruptcy Code is that it is appropriate in circumstances where a transaction represents a reasonable business judgment on the part of a Debtor.

29.    Indeed, the use of a stalking horse in a public auction process for sales pursuant to Bankruptcy Code Section 363 is an encouraged practice in chapter 11 cases because the use of a stalking horse bid is in many circumstances the best way to maximize value in an auction process by locking in a purchase price "floor" before exposing an asset to auction. As a result, stalking horse bidders virtually always require tipping fees and other forms of bidding protections as an inducement for holding their purchase offer open while it is exposed to overbids in an auction process.  Thus, the use of bidding protections, including break-up fees and expense reimbursements, has become an established practice in chapter 11 cases.  *See, e.g. In re Gemini Cargo Logistics, Inc.*, No. 06-10870 (Bankr. S.D. Fla. Apr. 17, 2006) (approving break-up fee payable in connection with exit financing and expense reimbursement of reasonable out-of-pocket expenses); *In re Piccadilly Cafeterias, Inc.*, No. 03-27976 (Bankr. S.D. Fla. Sept. 14, 2004) (approving payment of expense reimbursement as bidder protection); *see also In re Loral Space & Commc'ns, Ltd.*, Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. Aug. 19, 2003) (approving termination fee and reimbursement of expenses); *Adelphia Bus. Solutions, Inc.*, Case No. 02-11389 (REG) (Bankr. S.D.N.Y. Jan. 24, 2003) (approving termination fee and reimbursement of expenses); *In re Bradlees Stores, Inc.*, Case No. 00-16035 (BRL) (Bankr. S.D.N.Y. Jan. 11, 2001) (approving termination fee and reimbursement of expenses); *In re Integrated Res., Inc.*, 147 B.R. at 662 (approving termination fee and reimbursement of expenses); *In re Marrose Corp.*, 1992 WL 33848 at *5 (Bankr. S.D.N.Y. 1992) (bidding incentives are "meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers."); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding procedures may be "legitimately necessary to convince a white knight to

enter the bidding by providing some form of compensation for the risks it is undertaking.") (citation omitted).

30.     Additionally, the $4 million break-up fee and the parties agreement to enter into the proposed APA constitutes a compromise and settlement of all claims between them and all parties to the November 25, 2012 Stock Purchase Agreement between Miami Jai-Alai and Silvermark. "[A]pproval of a settlement in a bankruptcy proceeding is within the sound discretion of the court…."  *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988), *citing Rivercity v. Herpel (In re Jackson Brewing Co.*), 624 F. 2d 599, 602-03 (5th Cir. 1980), *Anaconda-Ericsson, Inc. v Hessen (In re Teltronics Services Inc.),* 762 F.2d 185, 189 (2d Cir. 1985), and *In re Prudence Co*., 98 F.2d 559 (2d Cir. 1938), *cert. denied sub nom.  Stein v. McGrath*, 306 U.S. 636 (1939).

31.     In assessing whether a proposed settlement should be approved pursuant to Bankruptcy Rule 9019, the court should consider (a) the probability of success in litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.  *In re Justice Oaks II, Ltd*., 898 F. 2d 1544, 1549 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990).

32.     In analyzing the proposed settlement agreement and Stipulation, the applicable test is whether the proposed settlement "falls below the lowest point in the range of reasonableness."  *Anaconda Ericsson, Inc. v. Hessen (In re Teltronics Services Inc.)*, 762 F.2d 185, 189 (2d Cir. 1985); *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2nd Cir.), *cert. denied*, 464 U.S. 822 (1983).  Here, approval of the proposed Break-Up Fee should also be granted as the proposed compromise figure falls well above the lowest point in the range of reasonableness.

33.    The proposed Break-Up Fee and Expense Reimbursement are necessary and provides an actual benefit to Miami Jai-Alai's estates. Specifically, Silvermark has indicated that it is a condition to its obligations under the APA that the Sale Procedures, including payment of a Break-Up Fee and Expense Reimbursement, as proposed in this Motion, be approved by the Court. Unless the Sale Procedures proposed herein are approved, Miami Jai-Alai is not confident that the Auction will generate better offers. Moreover, Miami Jai-Alai submits that the willingness of Silvermark to commit to purchase the Assets under the terms and conditions of the APA, subject to higher and better offers, may encourage third parties to submit higher bids for the Assets.

34.    Consistent with the legal standards articulated above, Miami Jai-Alai believes that the Break-Up Fee and the Expense Reimbursement are reasonable and appropriate in view of, among other things, the size and nature of the transactions contemplated by the APA. These protections are a material inducement for, and a condition of, Silvermark's entry into the APA, and cover the costs and expenses incurred as a result of the extensive analysis, due diligence investigation and negotiations undertaken by Silvermark in connection with the Sale. If Silvermark were to decide not to go forward with the Sale because it was not afforded the Sale Protections, Miami Jai-Alai would lose the benefits that would inure to its estate by having the stalking horse bid, including higher bids that, absent such a floor, might not have otherwise been realized.

35.    Pursuant to Section 363(f), a debtor may sell property free and clear of liens, claims, encumbrances and other interests if one of the following conditions is satisfied:

    (a)    applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

    (b)    the [lienholder or claimholder] consents;

    (c)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

24

(d)     such interest is in *bona fide* dispute; or

(e)     [the lienholder] or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See also In re South Florida Heart Group*, 342 B.R. 639, 643 (Bankr. M.D. Fla. 2006). The satisfaction of any one of the five requirements will suffice to warrant approval of the proposed sale. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (stating that court may approve sale "free and clear" provided at least one of the subsections of 363(f) is met); *In re Gulf States*, 285 B.R. 497 (Bankr. N.D. Ala. 2002); *In re 18th Ave. Dev. Corp. v. Modular Paving, Inc.* (*In re 18th Ave. Dev. Corp.*), 14 B.R. 862, 863-4 (Bankr. S.D. Fla. 1981) (stating that section 363(f) indicates that before sale of property may be authorized "free and clear" only one of five conditions must be met).

36.     Here, the APA satisfies several of the requirements under Bankruptcy Code Section 363(f). Miami Jai-Alai believes that holders of liens, claims or encumbrances will consent to the terms of the APA pursuant to Section 363(f)(2). Further, Miami Jai-Alai believes that all holders of liens, claims or encumbrances on the Assets could be compelled to accept a money satisfaction of their interests in legal or equitable proceedings in accordance with Section 363(f)(5), to the extent that such interests are sought to be discharged in the order approving the relief sought in this motion. Such legal or equitable proceedings include proceedings to confirm a plan of reorganization, under which the holder of a lien may be compelled to accept payment in satisfaction of its lien pursuant to Section 1129(b)(2)(a) of the Bankruptcy Code. Accordingly, Miami Jai-Alai submits that any existing encumbrances will attach to the net proceeds recognized at the sale of the Assets.

37.     Based on the above, Miami Jai-Alai submits that the Sale free and clear of liens, claims, and encumbrances as contemplated under the APA should

be approved by the Court upon the terms requested under Bankruptcy Code Section 363(f).

38.    Pursuant to Section 365, a debtor may assume and/or assign executory contracts or unexpired leases if (a) it assumes the contract or lease in accordance with the provisions set forth therein and (b) there is adequate assurance of future performance by the assignee.

39.    Here, Miami Jai-Alai submits that the assumption and assignment of designated executory contracts and unexpired leases contemplated in the APA complies in all respects and should be approved by the Court under the terms requested under Bankruptcy Code Section 365.

## CONCLUSION

40.    Miami Jai-Alai believes that the Sale Procedures provide a necessary and actual benefit to Miami Jai-Alai's estate.   The Sale Procedures establish the parameters under which the value of the Assets may be tested at a public auction.   The terms and conditions of the Auction will enable Miami Jai-Alai to realize the maximum value of the Assets, and thus ensure that the Auction is in the best interests of Miami Jai-Alai, its estates, and its creditors.

**WHEREFORE**, Miami Jai-Alai requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, (i) approving the Sale Procedures set forth herein; (ii) setting Bid Deadline, Auction and Sale Approval Hearing Dates; (iii) approving Miami Jai-Alai's entry into and form of the APA for the sale of substantially all of Miami Jai-Alai's assets free and clear of all liens, claims, and encumbrances; (iv) establishing Notice Procedures And Approving Forms of Notice; (v) approving the Procedures Related to Assumption and Assignment Executory Contracts and Unexpired Leases; (vi) approving the compromise and settlement of all claims arising between the parties to the November 25, 2012 Stock Purchase Agreement; and (vii) granting such other and further relief as this Court deems just and proper.

26

Dated:  November 25, 2013          Respectfully submitted,

**SALAZAR JACKSON, LLP**
*Counsel for Florida Gaming Miami Jai-Alai, Inc.,*
*Florida Gaming Corporation, Tara Club Estates, Inc.,*
*and Freedom Holding, Inc.*
Two South Biscayne Boulevard, Suite 3760
Miami, Florida 33131
Telephone: (305) 374-4848
Facsimile:  (305) 397-1021
Email:  Salazar@SalazarJackson.com
Email: Honaker@SalazarJackson.com

By:_____/s/  Luis Salazar_____

      Luis Salazar
      Florida Bar No. 147788
      Aaron P. Honaker
      Florida Bar No. 48749

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties identified on the Master Service List attached to the original hereof, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those parties who are not registered to receive notices electronically.

               /s/  Luis Salazar

               Luis Salazar

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc.** *et al.*

### Debtors

Florida Gaming Centers, Inc.
Florida Gaming Corporation
Freedom Holding, Inc.
Tara Club Estates, Inc.
Attn: W. Bennett Collett, Jr.
3500 NW 37th Avenue
Miami, FL 33142

### Debtors Counsel / Professionals

Luis Salazar, Esq.
Linda Worton Jackson, Esq.
Aaron P. Honaker, Esq.
SALAZAR JACKSON, LLP
Two S. Biscayne Blvd., Suite 3760
Miami, FL 33131
Email: Salazar@SalazarJackson.com
Email: Jackson@SalazarJackson.com
Email: Honaker@SalazarJackson.com
*Counsel for Debtors*

VIA EMAIL ONLY
Robert W. Hudson, Esq.
HUDSON & CALLEJA, LLC
3211 Ponce de Leon Boulevard, Suite 102
Coral Gables, FL 33134
Email: rhudson@hudsoncalleja.com
*Special Counsel for Debtors*

VIA EMAIL ONLY
R. James Straus, Esq.
FROST BROWN TODD LLC
400 West Market Street, Suite 3200
Louisville, KY 40202-3363
Email: jstraus@fbtlaw.com
*Special Counsel for Debtors*

VIA EMAIL ONLY
Soneet Kapila
c/o Kapila & Company
1000 South Federal Highway
Suite 200
Fort Lauderdale, FL 33316
*Special Counsel for Debtors*

### US Trustee

Office of the United States Trustee
51 Southwest First Avenue, Room 1204
Miami, FL 33130
Email: USTPRegion21.MM.ECF@usdoj.gov

### Secured Creditors

Drew Dillworth
150 West Flagler Street
Miami, FL 33130
Email: ddillworth@stearnsweaver.com
*Local Counsel for ABC Funding, LLC*

Marissa D. Kelley, Eq.
Stearns Weaver Miller Weissler Alhadeff &
Sitterson, P.A.
200 East Las Olas Blvd., Suite 2100
Fort Lauderdale, FL 33301
Email: mkelley@stearnsweaver.com
*Counsel for ABC Funding, LLC*

Andrew F. O'Neill
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Email: aoneill@sidley.com
*Counsel for ABC Funding, LLC*

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc. *et al.***

Dennis M. Twomey
 Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Email: dtwomey@sidley.com
*Counsel for ABC Funding, LLC*

ABC Funding, LLC
Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

Canyon Distressed Opportunity Master Fund, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon-GRF Master Fund II, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon Value Realization Fund, L.P.
c/o Canyon Capital Advisors LLC
Attn: Chaney Sheffield
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon Value Realization Master Fund, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

J.P. Morgan Securities LLC
Attn: Jason Kroll
383 Madison Avenue, 3rd Floor
New York, NY 10017

JPMorgan Chase Bank, N.A.
Attn: Jason Kroll
383 Madison Avenue, 3rd Floor
New York, NY 10017

Locust Street Funding LLC
c/o GSO/Blackstone Debt Funds Management
Attn: James Roche
345 Park Avenue, 31st Floor
New York, NY 10154

Summit Partners Subordinated Debt Fund IV-A, L.P.
c/o Summit Partners Credit Advisors, L.P.
 Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

Summit Partners Subordinated Debt Fund IV-A, L.P.
Summit Partners Subordinated Debt Fund IV-B, L.P.
ABC Funding, LLC
Attn: Summit Partners SD IV, L.P.,
Attn: Robin W. Devereux, General Partner
222 Berkeley Street, 18th Floor
Boston, MA 02116

Summit Partners Subordinated Debt Fund IV-B, L.P.
c/o Summit Partners Credit Advisors, L.P.
Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc. *et al.***

Ileana Cruz
Assistant County Attorney
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, FL 33128-1993
Email: ileanac@miamidade.gov
Email: cao.bkc@miamidade.gov
*Counsel for Miami Dade County-County Tax
Collector*

Miami Dade County Tax Collector
Darely Garcia-Lopez
c/o Miami Dade County Paralegal Unit
Miami Dade Bankruptcy Unit
140 West Flagler Street, Suite 1403
Miami, FL 33130-1575
Email: dgjp@miamidade.gov
Email: MDTCBKC@miamidade.gov

Thomas P. Abbott, Assistant County Attorney
PO Box 025504
Miami, FL 33102-5504
Facsimile: 305-876-7294
Email: TABBOTT@miami-airport.com

### Creditors

Andrew R. Herron, Esq.
Herron Ortiz
255 Alhambra Circle, Suite 1060
Coral Gables, FL 33134
Email: aherron@herronortiz.com
Email: ndrubin@herronortiz.com
*Counsel for Miami Gaming Ventures, LLC*

Howard S. Toland, Esq.
1200 Weston Road, Penthouse
Weston, FL 33326
Email: htoland@mitrani.com
*Counsel for International Sound Corporation*

Glenn D. Moses, Esq.
Genovese Joblove & Battista, P.A.
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
*Counsel for Committee of Unsecured
Creditors*

Solomon B. Genet, Esquire
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Facsimile: (305) 358-1221
Email: sgenet@melandrussin.com
*Counsel for Miami Casino Management, LLC*

Joseph D. Frank
Jeremy C. Kleinman
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile: (312) 276-0035
Email: jfrank@fgllp.com
Email: jkleinman@fgllp.com
*Counsel for Bottling Group, LLC*

Miami Gaming Ventures
Attn: Rodney Barreto, Partner
235 Catalonia Avenue
Coral Gables, FL 33134
Telephone: 305-444-4648
Fcsimile: 305-444-1128
Email: Rodney@barretogroup.com

Florida Lemark Corporation
Attn: Eduardo P. Rodriguez, Vice President
2040 NW 94th Avenue
Doral, FL 33172
Telephone: 305-593-1442
Facsimile: 305-593-0998
Email: Eduardo@FloridaLemark.com

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc. *et al.***

Farmers Bank
P.O. Box 231
Hardinsburg, KY 40143

Freedom Financial Corporation
2669 Charlestown Road #D
New Albany, IN 47150

S. Oden Howell
6800 Shadwell Place
Prospect, KY 40059
Telephone: 502-491-7985
Facsimile: 502-491-1212
Email: SoHowell@aol.com

Kim Tharp
2669 Charlestown Rd #D
New Albany, IN 47150

SHFL Entertainment ( Shuffle Master, Inc.)
Attn: Darrell Horton
6650 El Camino
Las Vegas, NV 89118
Telephone: 702-270-5138
Facsimile: 888-234-3881
Email: DHorton@shfl.com

Tampa Bay Downs, Inc.
Attn: Gregory Gelyon, Vice President of Finance
P.O Box 2007
Oldsmar, FL 34677
Telephone: 813-855-4401
Facsimile: 813-261-1961
Email: greg@tampabaydowns.com,
pnberube@tampabaydowns.com

## Governmental Agencies / Taxing Authorities

Division of Alcoholic Beverages and Tobacco
Attn: Allen Douglas, Director
1940 North Monroe Street
Tallahassee, FL 32399
Facsimile: 850.922.5175

Division of Pari-Mutuel Wagering
Southern Division
1400 West Commercial Boulevard, Suite 165
Ft. Lauderdale, FL 33309-3787

Division of Pari-Mutuel Wagering
Attn: Leon M Biegalski, Director
1940 North Monroe Street
Tallahassee, FL 32399-1035
Facsimile: 850.488.0550

Florida Department of Revenue
Attn: Bankruptcy Unit
P.O Box 6668
Tallahassee, FL 32314-6668

Florida Department of Revenue
c/o Agency Clerk
501 S. Calhoun Street
Room 201, Carlton Building
Tallahassee, FL 32399

Florida Department of Revenue
8175 NW 12th St, Suite 119
Miami Service Center
Miami, FL 33126-1828

Florida Department of Revenue
5050 West Tennessee Street
Tallahassee, FL 32399-0100

Office of Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

4

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc.** *et al.*

Internal Revenue Service
Special Procedures- Insolvency
7850 SW 6th Court
Plantation, FL 33324

David Baddley
U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces N.E, Suite 900
Atlanta, GA 30326-1382
Email: atlreorg@sec.gov
*Counsel for U.S. Securities and Exchange Commission*

Securities and Exchange Commission
Eric I Bustillo, Regional Director
801 Brickell Ave., Suite 1800
Miami, FL 33131

Special Asst. U.S. Attorney
P.O. Box 9, Stop 8000
51 SW 1st Avenue, #1114
Miami, FL 33130

Special Asst. U.S. Attorney
IRS District Counsel
1000 S. Pine Island Rd., Ste 340
Plantation, FL 33324-3906

Eric Holder, US Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**Parties in Interest**

VIA EMAIL ONLY
Lance A. Schildkraut, Esq.
DiConza Traurig LLP
630 Third Avenue, 7th Floor
New York, NY 10017
Email: las@dtlawgroup.com

VIA EMAIL ONLY
Gerald D. Kelly, Esq.
Claire E. W. Stewart, Esq.
SIDLEY AUSTIN, LLP
One South Dearborn Street
Chicago, IL 60603
Email: gkelly@sidley.com

VIA EMAIL ONLY
Benjamin R. Nagin, Esq.
Adam McClay, Esq.
SIDLEY AUSTIN, LLP
787 Seventh Avenue
New York, NY 10019
Email: bnagin@sidley.com
Email: amcclay@sidley.com

VIA EMAIL ONLY
Alexander D. Silverman, Member
William S. Kogan, General Counsel
SILVERMARK LLC
430 Park Avenue, 5th Floor
New York, NY 10022
Email: alexs@andalex.com
Email: wkogan@andalex.com

VIA EMAIL ONLY
Craig V. Rasile, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8539
Facsimile: (305) 437-8131
Email: craig.rasile@dlapiper.com
*Local Counsel for Silvermark, LLC*

**MASTER SERVICE LIST AS OF October 28, 2013**
**Florida Gaming Centers, Inc.** *et al.*

VIA EMAIL ONLY
Andrew D. Zaron, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8523
Facsimile: (305) 437-8131
Email: andrew.zaron@dlapiper.com
*Local Counsel for Silvermark, LLC*

VIA EMAIL ONLY
Rachel Nanes, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Facsimile: (305) 437-8131
Email: rachel.nanes@dlapiper.com
*Lcoal Counsel for Silvermark, LLC*

Thomas R. Kreller
Milbank, Tweed, Hadley & McCloy LLP
601 South Figuerora Street, 30th Floor
Los Angeles, CA 90017
*Counsel for Silvermark, LLC*

VIA EMAIL ONLY
Linda A. Conahan
GUNSTER, YOAKLEY & STEWART, P.A.
450 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33301
Email: lconahan@gunster.com

VIA EMAIL ONLY
Etan Mark, Esq.
BERGER SINGERMAN, LLP
1450 Birckell Avenue, Suite 1900
Miami, FL 33131
Email: emark@bergersingerman.com
*Counsel for David Jonas*

VIA EMAIL ONLY
Christopher A. Jarvinen, Esq.
Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
E-mail: cjarvinen@bergersingerman.com
*Counsel for David Jonas*

VIA EMAIL ONLY
David Jonas
4 Overlook Ct.
Medford, NJ 8055
Email: davesjonas@gmail.com

Wells Fargo Bank Deposits Bankruptcy
Wells Fargo Bank NA
2701 NW Vaughn St, 5th Floor
Portland, OR 97210

6

# EXHIBIT "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

IN RE:                                          CHAPTER 11

                                                CASE NO. 13-29597-RAM
FLORIDA GAMING CENTERS,                         (JOINTLY ADMINISTERED)
INC., *ET AL.*, [1]

_____ DEBTORS.   /

**ORDER (A) AUTHORIZING AND APPROVING SALE PROCEDURES
FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS;
(B) APPROVING DEBTORS' ENTRY INTO AND FORM OF ASSET
PURCHASE AGREEMENT, INCLUDING A BREAK-UP FEE AND
EXPENSE REIMBURSEMENT; (C) SCHEDULING AN AUCTION AND
FINAL HEARING TO CONSIDER APPROVAL OF THE SALE; (D)
APPROVING FORM AND MANNER OF NOTICE OF SALE PROCEDURES,
AUCTION AND SALE HEARING; (II) AUTHORIZING ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; AND (III) APPROVING THE COMPROMISE AND SETTLEMENT
OF CLAIMS BETWEEN PARTIES TO THE NOVEMBER 25, 2012
STOCK PURCHASE AGREEMENT**

---

[1] The debtors in these chapter 11 cases and the last four digits of their federal tax identification number are: Florida Gaming Corporation (0533), Florida Gaming Miami Jai-Alai, Inc. (5893), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

This matter came before the Court on Debtors, Florida Gaming Centers, Inc. and Florida Gaming Corporation's (collectively, **"Miami Jai-Alai"**) *Motion for Entry of (I) an Order (A) Authorizing and Approving Sale Procedures for the Sale of Substantially All the Debtors' Assets; (B) Approving Debtors' Entry Into and Form of Asset Purchase Agreement, Including a Break-Up Fee and Expense Reimbursement; (C) Scheduling an Auction and Final Hearing to Consider Approval of the Sale; (D) Approving Form and Manner of Notice of Sale Procedures, Auction and Sale Hearing and (II) an Order Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Approving the Compromise and Settlement of Claims Between the Parties to the November 25, 2012 Stock Purchase Agreement* (the **"Motion"**).  The Motion seeks the entry of an Order: (i) authorizing and approving (a) certain bidding and sale procedures, substantially in the form set forth herein, to govern the sale (the **"Sale"**) of substantially all of Miami Jai-Alai's assets; (b) approving form of asset purchase agreement, including a Break-Up Fee and Expense Reimbursement; (c) scheduling an auction and hearing to consider approval of the Sale; and (d) approving the form and manner of notice of the Sale Procedures,[2] Auction, and Sale Hearing; (ii) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases as provided in the Agreement, including authorizing and approving procedures for identification of defaults to be cured and for providing notice to contracting parties with an opportunity to object to such assumption and assignment, the Cure Amount, or both as provided in the Agreement; and (iii) approving the compromise and settlement of all claims arising between the parties to the November 25, 2012 Stock Purchase Agreement.

The Court having reviewed the Motion and determined that the relief requested in the Motion is in the best interests of Miami Jai-Alai, its estate and creditors; and due and proper notice of the Motion having been given; and it appearing that no other or further notice is required; and upon the record of the

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Sale Procedure Hearing; and all of the proceedings before the Court; and after due deliberation, and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      This Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334. Venue of these Chapter 11 cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant 28 U.S.C. § 157(b)(2)(A), (N), and (O).

B.      Miami Jai-Alai has provided due and proper notice of the Motion, and the relief sought therein and the Sale Procedures Hearing, and no further notice is necessary.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Sale Procedures, the Sale Notice, the Notice of Assignment and Cure, all as defined below) has been afforded to all interested parties, including but not limited to the Notice Parties (defined below).

C.      Miami Jai-Alai's proposed (i) notice of Bid Deadline, Auction and the Sale Hearing in the form attached hereto as Exhibit 1 (the **"Sale Notice"**), (ii) bidding and sale procedures (the **"Sale Procedures"**) in the form attached hereto as Exhibit 2, and (iii) the notice of assignment and assignment and cure amounts attached hereto as Exhibit 3 (the **"Notice of Assignment and Cure"**) are, and in each case substantially in the forms attached hereto, appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the matters set forth therein, including but not limited to the Sale Procedures, the Auction (as defined below), the Sale, the Sale Hearing (as defined below), objection and bid deadlines, and the assumption and assignment of unexpired leases, license agreements and executory contracts, and no other or further notice is required.

D.      The Sale Procedures were negotiated in good faith and at arm's length, are fair and appropriate under the circumstances, and are in the best interests of Miami Jai-Alai's estate and all parties in interest.

E.      Miami Jai-Alai has demonstrated a compelling and sound business justification for the Court to enter this Order and thereby: (a) approve of the Sale Procedures; (b) set the dates of the Bid Deadline (as defined below), Auction (if needed) and Sale Hearing; (c) establish notice procedures and approve the forms of notice; and (d) approve the procedures related to assumption and assignment of executory contracts and unexpired leases.

F.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.

G.      Entry of this Order is in the best interests of Miami Jai-Alai and its estate, creditors, interest holders, and all other parties in interest, and therefore,

**IT IS ORDERED THAT:**

1.      The Motion is **GRANTED**, as provided herein.

2.      Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn or resolved are overruled in all respects on the merits.

3.      The Sale Notice, Sale Procedures, and Notice of Assignment and Cure, attached hereto as Exhibits 1, 2, and 3, respectively, are approved in all respects and shall apply to the Sale.  Miami Jai-Alai is authorized to fill in and complete the Sale Notice and Notice of Assignment and Cure with the information contemplated by such notices, and to make clarifying or non-material changes thereto.

4.      The Sale Procedures are fully incorporated into this Order, and Miami Jai-Alai is authorized and directed to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Sale Procedures in this Order shall not diminish or impair the effectiveness of such provision.

5.      Within five (5) business days of this Order, Miami Jai-Alai shall cause the Sale Notice to be sent by first-class mail, postage prepaid, to the following: (i) all creditors of Miami Jai-Alai; (ii) all persons or entities know to

Miami Jai-Alai to have asserted any security interest or other lien on any property of Miami Jai-Alai; (iii) the Florida Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering; (iv) the Environmental Protection Agency; (v) the state environmental agencies in the jurisdictions where the Debtor owns real property; (vi) the Florida Attorney General; (vii) all entities known to have expressed a bona fide interest in acquiring all or portions of any of the Miami Jai-Alai's assets; (vii) all applicable state and local taxing authorities or recording offices; (viii) the Office of the United States Trustee; (ix) the Internal Revenue Service; (x) the Securities & Exchange Commission; (xi) the United States Attorney General/Antitrust Division of Department of Justice; (xii) all of Miami Jai-Alai's insurers; (xiii) all non-Debtor parties to contracts or leases (executory or other); (xiv) all parties to any litigation proceedings involving Miami Jai-Alai; (xv) all other known parties-in-interest in these Chapter 11 cases; (xvi) all parties that have executed a confidentiality agreement in connection with Miami Jai-Alai's marketing of its assets during these Chapter 11 cases; and (xvii) the Notice Parties (defined below).  The Notice Parties are: (a) Counsel to Miami Jai-Alai: Luis Salazar, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134; (b) counsel to ABC: Dennis M. Twomey, Sidley Austin, LLP, One South Dearborn, Chicago, Illinois 60603; (c) counsel to the Committee: Glenn D. Moses and Paul J. Battista, Genovese Joblove & Battista, P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131; and (d) all persons who have filed a request for notice under Bankruptcy Rule 2002.

6.      To alert all parties who are not known to possess a claim against Miami Jai-Alai, on or about the same date, Miami Jai-Alai is authorized to, but not directed to publish notice of the Sale, in a form determined by Miami Jai-Alai, for ____ consecutive business days in the National Edition of The Wall Street Journal, or such other publication as Miami Jai-Alai may determine is effective to convey such notice.

7.      All bids for the Assets must be submitted in writing so that they are received in accordance with the Sale Procedures no later than March 19, 2014 at 5:00 p.m. (prevailing Eastern time) (the **"Bid Deadline"**).

8.      For a bid to constitute a Qualified Bid (as defined in the Sale Procedures), it must be received by the Bid Deadline and otherwise comply with all provisions of the Sale Procedures.

9.      If Miami Jai-Alai does not receive any Qualified Bids, the Auction shall be cancelled and Miami Jai-Alai shall report the same to the Bankruptcy Court.

10.      In the event Miami Jai-Alai receives, on or before the Bid Deadline, one or more Qualified Bids, Miami Jai-Alai shall conduct an auction (the **"Auction"**) to determine the highest and best offer for the Sale.  The Auction shall commence at Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134, on March 25, 2014  at 10:00 a.m. (prevailing Eastern Time), or such later time on such day or such other place as Miami Jai-Alai shall notify all Qualified Bidders.  The Auction shall be conducted in accordance with the Sale Procedures.

11.      On March  __, 2014, at  __:__ a.m./p.m.  a Sale Hearing to approve the Sale to the Successful Bidder shall be held before the Honorable Robert A. Mark in the United States Bankruptcy Court for the Southern District of Florida, Claude Pepper Federal Building, 51 SW First Avenue, Room 1406, Miami, Florida 33130, at which time Miami Jai-Alai will seek entry of an order (i) authorizing the Sale (assuming there is a Successful Bidder); (ii) authorizing and approving the APA executed by the Successful Bidder or any stalking horse APA (if applicable); (iii) approving the assumption and assignment of executory contracts and unexpired leases; and (iv) granting related relief.

12.      Objections to the transactions contemplated by the Sale (a **"Sale Objection"**) shall (i) be filed with this Court and served on the Notice Parties, so as to be received on or before March __, 2014 (the **"Sale Objection Deadline"**), at 5:00 p.m. (prevailing Eastern Time); be in writing and conform to the Federal

Rules of Bankruptcy Procedure and the Local Rules the Bankruptcy Court; (iii) set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against Miami Jai-Alai's estate or properties, the basis for objection and the specific grounds therefore; and (iv) be served so as to be received by the Sale Objection Deadline on all Notice Parties.

13.      The failure to file and serve a Sale Objection by the Sale Objection Deadline shall be a bar to the assertion thereof at the Sale Hearing or anytime thereafter.

14.      Not later than seven (7) calendar days prior to the Sale Objection Deadline, Miami Jai-Alai shall cause the Notice of Assignment and Cure to be served by overnight courier or by hand on the counterparties to each executory contract and unexpired lease that Miami Jai-Alai proposes to be assumed and assigned to Successful Bidder, if applicable (the **"Assigned Contracts"**).

15.      The Notice of Assignment and Cure will include (a) the title of the Assigned Contract to be assumed, (b) the name of the counterparty to the Assigned Contract, (c) any applicable cure amounts as determined by Miami Jai-Alai, (d) that the assignee is the Successful Bidder, and (e) the deadline by which any counterparty to the Assigned Contract must object.

16.      Any objection to the assumption and/or assignment of any Assigned Contract identified on a Notice of Assignment and Cure, including to the cure amount set forth on such notice (or with respect to the provision of adequate assurance of future performance), must be in writing, filed with the Court, and be actually received by the Notice Parties no later than March __, 2014, at 5:00 p.m. (prevailing Eastern Time) (the **"Assignment and Cure Objection Deadline"**), and must set forth (a) a specific default under the Assigned Contract, (b) if applicable, claim a specific monetary amount that differs from the amount, if any, specified by Miami Jai-Alai in such Notice of Assignment of Cure to cure all defaults, and (c) the basis for the objection.

17.      If no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract,

then the assumption and assignment of that Assigned Contract will be authorized pursuant to Bankruptcy Code Section 365 and the cure amount, if any, set forth on the Notice of Assignment and Cure shall be binding upon the non-Debtor party to the Assigned Contract for all purposes and will constitute a final determination (a) that the Assigned Contract may be assumed by Miami Jai-Alai and assigned to the Successful Bidder, and (b) of the total cure amount required to be paid to the non-Debtor party (or parties) to the Assigned Contract in connection with any potential assignment of such Assigned Contract to the Successful Bidder.  In addition, if no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, each non-Debtor party to such Assigned Contract shall be deemed to have consented, and shall be forever barred from objecting, to the assumption and assignment of such Assigned Contract on any grounds, and the cure amount, if any, set forth in the Notice of Assignment and Cure, including, without limitation, the right to assert any additional cure and other amounts with respect to the Assigned Contracts arising or relating to any period prior to such assumption or assignment or the right to demand adequate assurance of future performance. Furthermore, if no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, the Successful Bidder shall enjoy all of the rights and benefits under such Assigned Contract acquired by such Successful Bidder without the necessity of obtaining any party's written consent to Miami Jai-Alai's assumption and assignment of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment.

18.    If a timely objection is received to the assumption and assignment of an Assigned Contract and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing or, with the agreement of Miami Jai-Alai and the Successful Bidder at a later date set by the Court.  The pendency of a dispute relating to the cure amount will not prevent or

delay the assumption and assignment of any Assigned Contract, and Miami Jai-Alai may proceed with the assumption and assignment of the Assigned Contract, retain sufficient funds to cure all defaults claimed by the non-Debtor counterparty, and resolve the dispute regarding the cure amount at a later date as set by the Court.

19.    Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

20.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21.    To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 cases, the terms of this Order shall govern.

22.    The Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.

# # #


Submitted by

Luis Salazar, Esq.
**SALAZAR JACKSON, LLP**
One Biscayne Tower, Suite 3760
Two South Biscayne Boulevard
Miami, FL 33131
Telephone:     (305) 374-4848
Facsimile:     (305) 397-1021
Email: salazar@salazarjackson.com


*(Attorney Salazar shall serve a copy of this order upon all interested parties upon receipt and file a certificate of service)*

# Exhibit "1"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:                                          Chapter 11

                                                Case No. 13-29597-RAM
FLORIDA GAMING CENTERS,                         (Jointly Administered)
INC., *et al.*,[1]

                        Debtors.  /
_____

### NOTICE OF BID DEADLINE, AUCTION, AND SALE HEARING IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

**NOTICE IS HEREBY GIVEN**, as follows:

1.      On November 25, 2013, Debtors, Florida Gaming Centers, Inc. and Florida Gaming Corporation (the **"Debtors"**) filed a motion seeking approval of, and authorization for, among other things (i) the bidding and sale procedures (the **"Sale Procedures"**) to be used in connection with the sale (the **"Sale"**) of substantially all of the Debtor's assets; (ii) the dates of the Bid Deadline, Auction (if needed) and Sale Hearing (all as defined below), (iii) entry into and form of asset purchase agreement and breakup fee and expense reimbursement; (iv) approving the form and manner of notice of the Sale Procedures, Auction, and Sale Hearing; (v) approving the compromise and settlement of all claims arising between the parties to the November 25, 2012 Stock Purchase Agreement; and (vi) related relief (the **"Sale Procedures Motion"**), on the docket of the Debtors' chapter 11 cases, currently pending in United States Bankruptcy Court for the Southern District of Florida (the **"Bankruptcy Court"**).  By Order dated December ____, 2013, the Bankruptcy Court approved the Sale Procedures and the Sale Procedures Motion (the **"Sale Procedures Order"**).  A copy of the Sale Procedures Order, together with the Sale Procedures, is enclosed herewith.  In the

---

[1] The debtors in these chapter 11 cases and the last four digits of their federal tax identification number are: Florida Gaming Corporation (0533), Florida Gaming Miami Jai-Alai, Inc. (5893), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

event of any inconsistency between the Sale Procedures Order (or the Sale Procedures) and this Notice, the Sale Procedures Order (or the Sale Procedures) shall control.

2.     The Debtors entered into an asset purchase agreement on terms it deems reasonable, with Silvermark, LLC (the **"Proposed Buyer"**), for the sale, free and clear of all liens, claims, liabilities, and other interests, to the maximum extent permitted by section 363 of the Bankruptcy Code, of substantially all assets of the Debtor (the **"Stalking Horse APA"**).   This notice shall be notice of the hearing to consider such motion.  As set forth in the Sale Procedures, the Sale of the Debtors' assets remains subject to competing offers from any prospective qualified bidder.

3.     All interested parties are invited to become a Qualified Bidder (as defined in the Sale Procedures Order) and to make offers to purchase the Debtors' Assets in accordance with the terms of the Sale Procedures and the Sale Procedures Order.  The deadline to submit competing bids is March __, 2014 at 5:00 p.m. (prevailing Eastern time).

4.     Interested bidders requesting information about the qualification process, including a description of the assets, the forms of asset purchase agreement, and/or information in connection with due diligence should contact:

**Guggenheim Securities, LLC**
**330 Madison Ave**
**New York, NY 10017**
**Attention:**

James Decker                                    Alexander Fisch
212-518-9939                                    212-518-9940
Jim.Decker@guggenheimpartners.com               Alex.Fisch@guggenheimpartners.com

5.     Requests by all other parties for a copy of the Stalking Horse APA, the Sale Procedures, the Sale Procedures Motion or for any other information concerning the Sale can be obtained by written request to counsel to the Debtors, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134, Attention: Luis Salazar.

6.      Pursuant to the Sale Procedures Order, the Debtor may conduct an auction the **"Auction"**) for the Sale of the assets at the offices of Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134, commencing on March 25, 2014 at 10:00 a.m. (prevailing Eastern Time), or at such other place and time as the Debtors shall notify all Qualified Bidders.  Only the authorized representatives of each of the Qualified Bidders shall be eligible to participate in the Auction.

7.      At a hearing on March 26, 2014 at ___:___ _.m. (prevailing Eastern time) or such other time as the Bankruptcy Court shall determine (the **"Sale Hearing"**), the Debtors intend to seek the Bankruptcy Court's approval of the Sale to the for authority to sell the Debtors' assets to any bidder submitting the highest, or otherwise best, offer (the **"Successful Bidder"**) or, if applicable, the Proposed Buyer pursuant to any Stalking Horse APA.  The Sale Hearing will be held before the Honorable Robert A. Mark in the United States Bankruptcy Court for the Southern District of Florida, Claude Pepper Federal Building, 51 SW First Avenue, Room 1406, Miami, Florida 33130.

8.      At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of these Chapter 11 cases  Objections, if any, to the transactions contemplated by the Sale (a **"Sale Objection"**) pursuant to the terms of the agreements reached with the Successful Bidder  or any Proposed Buyer, or any others including but not limited to objections to the assumption and assignment of executory contracts and unexpired leases, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of Florida, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtor's estate or properties, the basis for the objection and the specific grounds therefor, and shall be filed with the Bankruptcy Court and be served upon the following parties, so as to be actually received on or before March ___, 2014 at 5:00 p.m. (Prevailing Eastern Time) (the **"Objection Deadline"**): (a) counsel to

Miami Jai-Alai: Luis Salazar, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134; (b) counsel to ABC: Dennis M. Twomey, Sidley Austin, LLP, One South Dearborn, Chicago, Illinois 60603; (c) counsel to the Committee: Glenn D. Moses and Paul J. Battista, Genovese Joblove & Battista, P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131; and (d) all persons who have filed a request for notice under Bankruptcy Rule 2002. On or before the date that is seven (7) calendar days before the Objection Deadline, the Debtor will send a separate notice to counterparties to executory contracts and unexpired leases that the Debtor proposes to be assumed and assigned to the Successful Bidder (or any Proposed Buyer, if applicable).

      9.    This notice is qualified in its entirety by the Sale Procedures Motion, Sale Procedures Order and the Sale Procedures, and all persons and entities are urged to read the hose filing and the provisions thereof carefully.

**PLEASE TAKE NOTICE THAT THE FAILURE TO ABIDE BY THE PROCEDURES AND DEADLINES SET FORTH IN THE SALE PROCEDURES MOTION AND SALE PROCEDURES ORDER MAY RESULT IN THE DISQUALIFICATION OF A BID AND THE FAILURE OF THE BANKRUPTCY COURT TO CONSIDER A SALE OBJECTION.**

Dated: November 25, 2013      Respectfully submitted,

                          SALAZAR JACKSON, LLP
                          *Counsel for Debtors.*
                          Two South Biscayne Boulevard, Suite 3760
                          Miami, Florida 33131
                          Telephone: (305) 374-4848
                          Facsimile: (305) 397-1021
                          Email: Salazar@SalazarJackson.com
                          Email: Honaker@SalazarJackson.com

                          By:_____
                                Luis Salazar
                                Florida Bar No. 147788
                                Aaron P. Honaker
                                Florida Bar No. 48749

# Exhibit "2"

## SALE PROCEDURES

In order to obtain the highest and best offer for the Assets (as defined below), the Debtors propose the bidding and sale procedures (the **"Sale Procedures"**) set forth below to be employed with respect to the proposed sale of all or substantially all of the assets of Florida Gaming Centers, Inc. (**"Centers"**), along with the assumption of certain associated liabilities (collectively, the **"Sale"**) as set forth in the asset purchase agreement (the "**APA**") to be entered into by and between Centers and Silvermark LLC (the "**Stalking Horse**"), or alternatively as set forth in the relevant sale agreements with respect to a Successful Bidder (as defined below) other than the Stalking Horse. In the event that the Debtors do not enter into the APA with Silvermark LLC, these Sale Procedures will be revised to reflect Centers' entry into an asset purchase agreement with an alternative stalking horse bidder, or determination to pursue the sale of its Assets (as defined below) without a stalking horse bidder, in either case after consultation with the Official Committee of Unsecured Creditors (the "**Committee**") and ABC Funding, LLC ("**ABC**"), as Agent for the Lenders under the Credit Agreement (as defined below). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA.

The APA shall set forth the terms and conditions under which the Stalking Horse will acquire the Assets. The transactions contemplated by the APA and any ancillary agreements discussed therein (collectively, the **"Transaction"**) shall be subject to competitive bidding as set forth herein. In addition, the transfer of Centers' rights, title and interests in and to the Assets is subject to approval by the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**") pursuant to Sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the **"Bankruptcy Code"**).

The Sale Procedures contemplate the following timetable:

- Motion for Entry of (I) an Order (A) Authorizing and Approving Sale Procedures for the Sale of Substantially All the Debtors' Assets; (B) Approving Debtors' Entry Into and Form of Asset Purchase Agreement, Including a Break-Up Fee and Expense Reimbursement; (C) Scheduling an Auction and Final Hearing to Consider Approval of the Sale; (D) Approving Form and Manner of Notice of Sale Procedures, Auction and Sale Hearing and (II) an Order Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (the **"Sale Procedures Motion"**) filed by November 25, 2013.[1]

- Entry of an Order authorizing and approving the Sale Procedures Motion (the "**Sale Procedures Order**") by December 13, 2013.

- Bid Deadline:  5:00 pm Eastern Time on March 19, 2014.

- Auction (if necessary):  March 25, 2014.

- Sale Hearing (defined below):  March 26, 2014.

**Any interested potential bidder should contact Centers' investment banker, Guggenheim Securities, LLC ("Guggenheim") as soon as practical:**

**Guggenheim Securities, LLC**
**330 Madison Ave**
**New York, NY 10017**
**Attention:**

James Decker                                       Alexander Fisch
212-518-9939                                       212-518-9940
Jim.Decker@guggenheimpartners.com                  Alex.Fisch@guggenheimpartners.com

---

[1] The deadline set forth in the Final Cash Collateral Order of November 22, 2013 was extended through and including November 25, 2013, with the consent of ABC.

2

## Bidding Process

The Sale Procedures set forth herein describe, among other things, the assets available for sale, the manner in which prospective bidders may gain access to or continue to have access to Diligence Materials (as defined below), the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder and Alternate Bidder (as defined below), and the Bankruptcy Court's approval thereof (collectively, the **"Bidding Process"**).

## Assets To Be Sold

Centers proposes to sell all (or substantially all) of its assets on the terms and conditions set forth in the APA (the **"Assets"**). Further information and due diligence materials regarding the Assets (the "**Diligence Materials**") will be made available only to those other prospective purchasers that execute a confidentiality agreement with Centers; in form and substance reasonably satisfactory to the Debtors, after consultation with the Committee and ABC.

## "As Is, Where Is"

The sale of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by Centers, their agents, or estates, except, with respect to a Successful Bidder (as defined below), to the extent set forth in the relevant sale agreements of such Successful Bidder.

## Free Of Any And All Claims And Interests

All of the rights, title and interests of Centers in and to the Assets, or any portion thereof, to be acquired by the Stalking Horse or the Successful Bidder will acquired free and clear of all pledges, liens, security interests, encumbrances,

3

claims, charges, options, and interests thereon and there against (collectively, the **"Claims and Interests"**) pursuant to Sections 363 and 365 of the Bankruptcy Code, such Claims and Interests shall attach to the net proceeds of the sale of such Assets (without prejudice to any claims or causes of action regarding the priority, validity or enforceability thereof), subject to further order of the Bankruptcy Court, including with respect to or regarding the extent, priority, validity, and/or extent of such Claims and Interests.

## PARTICIPATION REQUIREMENTS

In order to participate in the Bidding Process, each person or entity who wishes to participate in the Bidding Process other than the Stalking Horse and ABC (each, a **"Potential Bidder"**) must, prior to the Bid Deadline, deliver to the Notice Parties (as defined below) at the addresses provided below:

      (a)     an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by Centers to a Potential Bidder), to be prepared by Centers, in form and substance reasonably satisfactory to the Debtors, after consultation with the Committee and ABC and the rights of Centers thereunder shall inure to the benefit of the Stalking Horse, or other Successful Bidder, following the close of the Transaction; and

      (b)     Full description of the Potential Bidder and current financial information for the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current financial information for the equity holders or guarantor of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow Centers and their respective financial advisors, in consultation with the Committee and ABC, to make a reasonable determination as to the

4

Potential Bidder's financial and other capabilities to consummate the Transaction.

A Potential Bidder that delivers the information described above, and that Centers determines, in its reasonable business judgment and in consultation with ABC and the Committee, is likely to be able to consummate the Transaction will be deemed a **"Qualified Bidder"**.  After Centers notifies the Potential Bidder (as promptly as practicable) that it is a Qualified Bidder, Centers will provide the APA to the Qualified Bidder in Microsoft Word format and allow the Qualified Bidder to begin or continue to conduct due diligence as provided in the following paragraph with respect to the Assets.  For the avoidance of doubt, the Stalking Horse and ABC (subject to the allowance of its Secured Claim) shall be deemed Qualified Bidders for purposes of these Sale Procedures.

## DUE DILIGENCE

Centers may in its reasonable business judgment, and subject to competitive and other business considerations, afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed a confidentiality agreement with Centers such Diligence Materials as Centers deems appropriate. Diligence Materials and access may include management presentations as may be scheduled by Centers, access to physical or electronic data rooms, reasonable on-site inspections, and other matters which a Qualified Bidder may reasonably request and as to which Centers, in its reasonable business judgment.

Centers, with the assistance of Guggenheim, will coordinate all reasonable requests for Diligence Materials from Qualified Bidders.  No additional due diligence for any party other than a Qualified Bidder who has submitted a Qualified Bid will continue after the Bid Deadline (as defined below).  Neither Centers nor any of its affiliates (or any of their respective representatives) will be obligated to furnish any Diligence Materials or other information relating to the Assets to any person other than to Qualified Bidders.  For the avoidance of doubt, the Stalking

Horse, ABC, and the UCC shall be provided prompt access to all Diligence Materials, including without limitation any management presentations, reasonable on-site inspections, and other information provided to any Qualified Bidder that were not previously made available to them.

## BID DEADLINE

A Qualified Bidder that desires to make a bid will deliver written copies of its bid **SO AS TO BE RECEIVED NO LATER THAN MARCH 19, 2014 AT 5:00 P.M. EASTERN TIME** (the **"Bid Deadline"**) to the following parties (collectively, the **"Notice Parties"**):  (i) counsel to Centers: Luis Salazar, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134; (ii) investment banker to Centers:  Jim Decker, Guggenheim Securities, LLC, 330 Madison Avenue, New York, New York 10017, (iii) counsel to ABC:  Dennis M. Twomey, Sidley Austin, LLP, One South Dearborn, Chicago, Illinois 60603; and (iv) counsel to Committee: Glenn D. Moses and Paul J. Battista, Genovese Joblove & Battista, P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131. The Bid Deadline can be changed without further order of the Bankruptcy Court upon the agreement of Centers, the Committee, ABC and the Stalking Horse.

## QUALIFIED BID

A bid submitted by a Qualified Bidder will be considered a Qualified Bid only if the bid is submitted in the time and manner provided in the previous section and complies with all of the following (a **"Qualified Bid"**); provided, however, that Centers can waive the following requirements, after consultation with the Committee and ABC:

(a)    it is in writing and offers to purchase all, or substantially all, of the Assets for value to Centers, in Centers' reasonable business judgment, after consultation with the Committee and ABC, that is greater than or equal to the sum of the value offered under the APA, plus (i) the

6

amount of the Break-Up Fee (as defined in the APA), plus (ii) [250,000], subject to the same or better other terms and conditions as are contained in the APA;

(b)     it includes a letter stating that the bidder's offer is and shall remain irrevocable until the selection of the Successful Bidder and, if applicable, the Alternate Bidder (as defined below), provided that if such bidder is selected as the Successful Bidder or the Alternate Bidder, its offer shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Alternate Bidder, and (ii) (x) with respect to the Successful Bidder only, the date on which the obligations under either the APA (if the Successful Bidder is the Stalking Horse) or the respective purchase and sale agreements with the Qualified Bidder who is the Successful Bidder are terminated in accordance with the terms thereof (the APA Termination Date:), subject in all events to the rights of the parties thereunder arising from such termination, and (y) with respect to the Alternate Bidder only, the Alternate Bid Expiration Date (as defined below);

(c)     it includes (i) a duly authorized and executed APA (as modified by the bidder to reflect the terms and conditions of its bid), including the purchase price for the Assets expressed in U.S. Dollars (the **"Purchase Price"**), together with all exhibits and schedules thereto, including, to the extent required by the terms and conditions of such bid, the other ancillary agreements as described in the APA and such additional ancillary agreements as may be required by the bidder with all exhibits and schedules thereto, and (ii) a redline of such APA and all other such materials marked to show those amendments and modifications to the APA (**"Marked Agreements"**) and such ancillary agreements (the **"Marked Ancillary Agreements"**);

7

(d)    it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow Centers, after consultation with ABC and the Committee, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreements;

(e)    it includes written evidence demonstrating its eligibility for those gaming licenses, permits, or regulatory approvals necessary to allow it to operate the Assets, together with evidence that it has timely commenced and is seeking any such necessary licenses, permits, or regulatory approval, that will allow Centers, after consultation with ABC and the UCC, to make a reasonable determination as to the Qualified Bidder's ability to timely complete the licensing, permitting, and/or regulatory processes;

(f)    it is not conditioned on (i) the outcome of unperformed due diligence by the bidder (and includes an acknowledgement and representation that the bidder has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer) or (ii) obtaining financing;

(g)    it fully discloses the identity of each entity that will be bidding for the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation.

(h)    it includes an acknowledgment and representation that the bidder will assume Centers' obligations under the executory contracts and unexpired leases proposed to be assumed and assigned pursuant to the APA, contains full details of the bidder's proposal for the treatment of related cure costs; and it identifies with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing;

8

(i)      it includes an acknowledgement and representation that the bidder: (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; and (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Marked Agreements or the Marked Ancillary Agreements; and (iii) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

(j)      it includes evidence, in form and substance reasonably satisfactory to Centers, in consultation with ABC and the Committee, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery  and closing of the Marked Agreements and Marked Ancillary Agreements;

(k)      it is accompanied by a good faith cash deposit (each, a **"Good Faith Deposit"**) in an amount equal to 5% of the total Purchase Price to be held in escrow by counsel to Centers subject to the terms of the APA and otherwise to be dealt with as provided for under "Good Faith Deposit" herein; and

(l)      it includes evidence of the Potential Bidder's ability to comply with Section 365 of the U.S. Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Potential Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by Centers and assigned or subleased to the Potential Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases.

9

Notwithstanding the foregoing, the Stalking Horse and ABC (subject to Court Order allowing its claim) will be deemed to be Qualified Bidders, and the APA and any credit bid complying with the provisions set forth in the the section titled "Credit Bidding" herein will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction and the Sale.  The Stalking Horse will provide a Good Faith Deposit of $2.0 million to be held in escrow by counsel to Centers subject to the terms of the APA.

## EVALUATION OF COMPETING BIDS

Centers may in its sole reasonable discretion, after consulting with ABC (unless ABC has given the Credit Bid Notification) and the UCC, evaluate Qualified Bids on various grounds including, but not limited to, any delay, additional risks (including closing risks) and added costs, including the added costs of any cure or rejection damages,  to Centers.  After consultation with ABC and the UCC, Centers shall make a determination, in its sole reasonable discretion, whether a Bid is or is not a Qualified Bid; provided, however, that to constitute a Qualified Bid, a Bid must in Debtor's business judgment comply with all the requirements sets forth in the "Qualified Bid" section above.  Centers shall notify each bidder as to whether its Bid has been determined to be a Qualified Bid by no later the commencement of the Auction.

## CREDIT BIDDING

Only ABC (or its nominee or designee) shall be permitted to submit a credit bid at the Auction, and ABC will notify Centers, the Committee and the Stalking Horse of its intention to potentially credit bid 30 days prior to the Bid Deadline (the **"Credit Bid Notification"**).  To the extent ABC indicates in the Credit Bid Notification that it does intend to potentially credit bid at the Auction, it shall not receive the consultation rights described above in the "Evaluation of Competing Bids" section or below in the "Auction" or "Selection of Successful Bid" sections.

10

Subject to further order of the Bankruptcy Court, ABC (or its nominee or designee) shall be permitted to credit bid the total allowed amount of its secured claim outstanding at the time of the Auction under that certain Credit Agreement dated April 25, 2011 (the "**Credit Agreement**") and related documents which constitute "Obligations" under the Credit Agreement (the "**ABC Claim**"). The allowed amount of the ABC Claim shall be determined prior to the Bid Deadline by order of the Bankruptcy Court pursuant to the claim determination scheduling stipulation attached as an exhibit to the Sale Procedures Order, which schedule shall be approved by the Bankruptcy Court.

In the event ABC (or its nominee or designee) submits a credit bid at the Auction, then it shall comply with the requirements set forth in the "Qualified Bid" section above, provided that ABC shall not be required to provide evidence of financing or financial ability to close the Transaction and shall not be required to submit a Good Faith Deposit; provided, further, that in the event that ABC (or its nominee or designee) submits a credit bid at the Auction, it shall provide in its Marked Agreement for the payment in cash of the Break-Up Fee to Stalking Horse to the extent the Break-Up Fee is required to be paid to the Stalking Horse pursuant to the terms of the APA, and shall provide for the payment of the fees owed to the Debtors' investment banker, Guggenheim Securities, LLC.

## NO QUALIFIED BIDS

If Centers does not receive any Qualified Bids other than the APA and ABC indicates in the Credit Bid Notification that it does not wish to credit bid at the Auction, the Auction shall be cancelled and Centers shall report the same to the Bankruptcy Court and seek approval of the Sale to the Stalking Horse.

## AUCTION

If Centers receives one or more Qualified Bids, Centers will conduct an auction (the **"Auction"**) of the Assets at 10:00 a.m. on March 25, 2014 at the

11

offices of Debtors' counsel, Salazar Jackson, LLP, or such other location as shall be timely communicated to all entities entitled to attend the Auction.  The Auction shall run in accordance with the following procedures:

(a)     Only Centers, the Stalking Horse, ABC and the UCC (and the advisors to each of the foregoing) and any other Qualified Bidder that has timely submitted a Qualified Bid, or such other persons or entities that Centers reasonably determines, in its sole discretion, shall be permitted to attend the Auction in person, and only Qualified Bidders (including the Stalking Horse and ABC, to the extent that it provided the Credit Bid Notification) will be entitled to make any bids at the Auction.

(b)     Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

(c)     At least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Centers whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction and (ii) if such bidder is selected as an Alternate Bidder (as defined below), the Alternate Bid Expiration Date. Prior to the Auction, Centers will notify the Stalking Horse and all other Qualified Bidders of each Qualified Bidder and which Qualified Bid it believes, in its reasonable business judgment, after consultation with ABC and the Committee, is the highest or otherwise best offer (the **"Starting Bid"**).

(d)     All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each

12

Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid (including any agreements with any creditors of, or contract parties with, the Debtors) will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(e)      Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a **"Subsequent Bid"**) and (ii) Centers determines, after consultation with ABC and the Committee, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).  The Auction may include individual negotiations by the Debtor with Qualified Bidders.  Each incremental bid at the Auction shall provide net value to the estate of (i) at least $250,000 over the Starting Bid, or (ii)(a) $250,000 over the Leading Bid if the Leading Bid is not that of the Stalking Horse, and (ii) an amount equal to the Break Up fee plus $250,000 if the Leading Bid is from the Stalking Horse. After the first round of bidding and between each subsequent round of bidding, Centers shall announce the bid (and the value of such bid) that it believes (after consultation with the ABC and the UCC) to be the highest or otherwise best offer (the "Leading Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.  Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid

13

by the Purchaser), Centers will, on the initial round of bidding, give effect to the Break-Up Fee that may be payable to the Stalking Horse under the APA as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on Centers.

(f)    For the purpose of evaluating Subsequent Bids, Centers may require a Qualified Bidder submitting a Subsequent Bid to submit to Centers, the Committee and ABC, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to Centers in its sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction at the amount of the Subsequent Bid. Centers, in consultation with the Committee and ABC, may adopt rules for the Auction at or prior to the Auction that will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Sale Procedures Order; provided that the Sale Procedures may not be modified such that they limit ABC's right to credit bid.

Centers may, in consultation with ABC and the Committee, employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (a) not inconsistent with these Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any other order of the Bankruptcy Court entered in connection herewith and (b) disclosed to each Qualified Bidder.

### SELECTION OF SUCCESSFUL BID

Prior to the conclusion of the Auction, Centers, in consultation with ABC and the Committee will (a) review each Qualified Bid that is either the Leading Bid or submitted subsequent to and as an improvement to the submission of the Leading Bid (except in the event that there is no Leading Bid, in which case the

14

Qualified Bids to be considered will be the Starting Bid and any bids submitted subsequent and as an improvement to the Starting Bid) on the basis of financial and contractual terms and the factors relevant to the sale process, including, among other things, the proposed revisions to the transaction documents, the counterparties to such transactions, the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to be created by such bid in relation to other bids, other factors affecting the speed, certainty and value of the Sale (including any regulatory approvals or other requirements or conditions required to close the Transaction), the Assets included or excluded from the bid, the transition services required from Centers post-closing and any related restructuring costs, and the likelihood and timing of consummating such transaction, each as determined by Centers, in consultation with ABC and the Committee, (b) identify the highest or otherwise best offer for the Assets received at the Auction (such bid, the **"Successful Bid"** and the bidder making such bid, the **"Successful Bidder"**), and (c) communicate to Qualified Bidders the identity of the Successful Bidder, the Alternate Bidder, if any, and the details of the Successful Bid and Alternate Bid (as defined below), if any.  The determination of the Successful Bid and Alternate Bid by Centers, after consultation with ABC and the UCC, at the conclusion of the Auction, shall be final, subject to approval by the Bankruptcy Court, and the Auction shall be closed and concluded upon such Court approval.

Centers will sell the Assets to the Successful Bidder pursuant to the terms of the Successful Bid (or, under certain circumstances described herein, the Alternate Bidder) upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing.

## SALE HEARING

The sale hearing to authorize Centers to enter into and consummate the agreements with respect to the Successful Bid (the "**Sale Hearing**") will be held

before the Honorable Robert A. Mark in the United States Bankruptcy Court for the Southern District of Florida, located in Miami, Florida, on a date to be scheduled by the court and currently proposed as March 26, 2014, at _____[TBD]_____ (Eastern Time).  If Centers does not receive any Qualified Bids other than the APA, Centers shall proceed as set forth in the "No Qualified Bids" section above.  If Centers receives one or more additional Qualified Bid(s), then, at the Sale Hearing to approve the agreements with respect to the Successful Bid, Centers will seek approval of the Successful Bid, and, at Centers' election, after consultation with the Committee and ABC, the next highest or best Qualified Bid (the **"Alternate Bid"** and, such bidder, the **"Alternate Bidder"**).  Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and Centers will be authorized to effectuate a Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court.  The Alternate Bid shall remain open until the earlier of (a) fifteen (15) days following the entry of the Sale Order or (b) the consummation of the Sale to the Successful Bidder (the **"Alternate Bid Expiration Date"**).  All Qualified Bids (other than the Successful Bid and the Alternate Bid) shall be deemed rejected by Centers on and as of the date of approval of the Successful Bid and the Alternate Bid by the Bankruptcy Court.

## GOOD FAITH DEPOSITS

The Good Faith Deposits of Qualified Bidders not selected as either the Successful Bidder or Alternate Bidder shall be returned to such bidders within five (5) Business Days of the Sale Hearing.  The Good Faith Deposit of any Alternate Bidder shall be retained by Centers until the Alternate Bid Expiration Date and returned to the Alternate Bidder within two (2) Business Days thereafter or, if the Alternate Bid becomes the Successful Bid, shall be applied to the purchase price to be paid by the Alternate Bidder in accordance with the terms of the Alternate Bid. In the event that the Stalking Horse is not the Successful Bidder, the Good Faith

16

Deposit of the Successful Bidder will be applied, in accordance with the terms of the Sale Procedures Order, to pay the Break-Up Fee to the Stalking Horse.

# EXHIBIT "3"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:                                          Chapter 11

                                                Case No. 13-29597-RAM
FLORIDA GAMING CENTERS,                         (Jointly Administered)
INC., *et al.*, [1]

_____ Debtors.   /

### NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED TO THE SALE OF <u>SUBSTANTIALLY ALL ASSETS OF THE DEBTOR</u>

**NOTICE IS HEREBY GIVEN**, as follows:

1.     On November 25, 2013, Debtors, Florida Gaming Centers, Inc. and Florida Gaming Corporation (collectively, the **"Debtors"**) filed a motion (the **"Sale Procedures Motion"**), seeking approval of, and authorization for, among other things (i) authorizing and approving (a) certain bidding and sale procedures (the **"Sale Procedures"**), to govern the sale (the **"Sale"**) of substantially all of Florida Gaming Centers, Inc.'s assets; (b) approving form of asset purchase agreement, including a Break-Up Fee and Expense Reimbursement; (c) scheduling an auction and hearing to consider approval of the Sale (the **"Sale Hearing"**); and (d) approving the form and manner of notice of the Sale Procedures, Auction, and Sale Hearing; (ii) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases as provided in the Agreement (**"Assumed Contracts"**), including authorizing and approving procedures for identification of defaults to be cured (**"Cure Amount"**) and for providing notice to contracting parties with an opportunity to object to

---

[1] The debtors in these chapter 11 cases and the last four digits of their federal tax identification number are: Florida Gaming Corporation (0533), Florida Gaming Miami Jai-Alai, Inc. (5893), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

such assumption and assignment, the Cure Amount, or both as provided in the Agreement (**"Contracting Parties Notice"**); and (iii) related relief on the docket of the Debtors' chapter 11 case, currently pending in United States Bankruptcy Court for the Southern District of Florida (the **"Bankruptcy Court"**).  By order dated December ___, 2013 (the **"Sale Procedures Order"**), the Bankruptcy Court approved the Sale Procedures and the Sale Procedures Motion.  A copy of the Sale Procedures Order, together with the Sale Procedures, is enclosed herewith.  In the event of any inconsistency between the Sale Procedures Order (or the Sale Procedures) and this Notice, the Sale Procedures Order shall control.

2.    To effectuate the Sale, the Debtors entered into an asset purchase agreement, on terms it deems reasonable, with Silvermark, LLC (the **"Proposed Buyer"**), for the sale, free and clear of all liens, claims, liabilities, and other interests, to the maximum extent permitted by Bankruptcy Code Section 363, of substantially all assets of Florida Gaming Centers, Inc. (the **"Stalking Horse APA"**).  The Debtors will file with the Bankruptcy Court the Stalking Horse APA on the docket of the Debtors' chapter 11 cases once it is finalized and executed.  As set forth in the Sale Procedures, the Sale of Florida Gaming Centers, Inc.'s assets remains subject to competing offers from any prospective qualified bidder.  The Sale Procedures and the Stalking Horse APA (when signed), can be obtained from the official website for the Bankruptcy Court, www.flsb.uscourts.gov, by registered users of the Bankruptcy Court's electronic case filing system, or upon written request by a interested party from Debtors' Investment Banker — Guggenheim Securities, LLC, 330 Madison Avenue, New York, New York 10017, Attention: James Decker, 212-518-9939, Jim.Decker@guggenheimpartners.com, or Alexander Fisch, 212-518-9940, Alex.Fisch@guggenheimpartners.com.

3.    **The deadline for competing bidders to submit competing bids in accordance with the Bidding Procedures is March 19, 2014 at 5:00 p.m. (prevailing Eastern time).**

4.    At a hearing on a date and time to be determined by the Bankruptcy Court (the **"Sale Hearing"**), the Debtors intend to seek the

Bankruptcy Court's approval of the Sale to the Proposed Buyer or, if applicable, for authority to sell the Debtors' assets to any other bidder submitting the highest, or otherwise best offer through the bidding/sale process described in the Sale Procedures (the **"Successful Bidder"**).  The Sale Hearing will be held before the Honorable Robert A. Mark in the United States Bankruptcy Court for the Southern District of Florida, located in Miami, Florida, currently proposed as March 26, 2014.  The deadline to object to the Sale (the **"Sale Objection Deadline"**) is **March ___, 2014 at 5:00 p.m. (Prevailing Eastern Time.)**

5.      As a component of the Sale, the Debtors have sought authorization to assume and assign to the Proposed Buyer or to any other Successful Bidder certain executory contacts and unexpired leases relating to the Debtors' assets to be sold as part of the Sale upon consummation thereof (the **"Assigned Contracts"**).

**6.      YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE A PARTY TO AN ASSIGNED CONTRACT (OR REPRESENT A PARTY TO AN ASSIGNED CONTRACT).**

7.      **Exhibit "A"** attached to this Notice contains (a) the title of each Assigned Contract(s) to be assumed to which you may be a party (or a representative of such party), (b) the name of the non-Debtor counterparty to the Assigned Contract(s), and (c) any amounts as determined by the Debtors necessary to cure any default under such Assigned Contract(s) required to be cured in connection with the assumption and assignment of the Assigned Contract(s) (the **"Cure Amounts"**).  Notwithstanding anything to the contrary contained herein, any executory contract or unexpired lease may be added or deleted to the list of Assigned Contacts at any time up to the closing of Sale (or thereafter) in accordance with the Stalking Horse APA.

8.      Any objections to the assumption and/or assignment of any Assigned Contract(s) (**"Objections"**), including to the Cure Amount(s) (or with respect to the provision of adequate assurance of future performance by the Proposed Buyer or other Successful Bidder), **must be in writing, filed with the**

**Bankruptcy Court, and be actually received by the Notice Parties (defined below) no later than _____, 2014, at 5:00 p.m. (prevailing Eastern Time)** (the **"Assignment and Cure Objection Deadline"**), and must set forth (a) a specific default under the Assigned Contracts and (b) if applicable, claim a specific monetary amount that differs from the amount, if any, for the proposed cure of all defaults required to be cured specified in Exhibit A.  Objections must also be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and set forth the name of the objecting party, the basis for the objection and the specific grounds therefore.

9.      The Notice Parties are: (a) counsel to Miami Jai-Alai: Luis Salazar, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134; (b) counsel to ABC: Dennis M. Twomey, Sidley Austin, LLP, One South Dearborn, Chicago, Illinois 60603; (c) counsel to the Committee: Glenn D. Moses and Paul J. Battista, Genovese Joblove & Battista, P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131; and (d) all persons who have filed a request for notice under Bankruptcy Rule 2002.

10.      If a timely Objection is received to the assumption and assignment of an Assigned Contract and such Objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such Objection at the Sale Hearing or with the agreement of the Debtors and Proposed Buyer (or Successful Bidder, if applicable) at such later date set by the Bankruptcy Court.  The pendency of a dispute relating to Cure Amounts will not prevent or delay the assumption and assignment of your respective Assigned Contract(s), and the Debtors may proceed with the assumption and assignment of your respective Assigned Contract(s) by retaining sufficient funds to cure any claimed default, and resolve the dispute regarding the Cure Amount at a later date as set by the Bankruptcy Court.

11.      If the Debtors receive qualified bids from bidders other than the Proposed Buyer, the Debtors will conduct an auction (the **"Auction"**) in accordance with the Sale Procedures commencing on March 25, 2014.  If the Proposed Buyer is not the successful bidder at the Auction, then by not less than

one (1) business day prior to the Sale Hearing, you may file an additional Objection based solely on the ability of the Successful Bidder (other than the Proposed Buyer) to perform its obligations under your respective Assigned Contract. You may obtain the name of any Successful Bidder other than the Proposed Buyer following the Auction upon request from the Investment Banker.

12.     If no Objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of your Assigned Contract(s), then the assumption and assignment of your Assigned Contract(s) will be authorized pursuant to Bankruptcy Code Section 365 and the Cure Amount(s), if any, set forth in this Notice shall be binding for all purposes and will constitute a final determination (a) that the Assigned Contract may be assumed by the Debtors and assigned to the Proposed Buyer (or Successful Bidder, if applicable), and (b) of the total Cure Amounts required to be paid to you in connection with any potential assignment of such Assigned Contract to the Proposed Buyer (or Successful Bidder, if applicable). In addition, if no timely objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of your Assigned Contract(s), you shall be deemed to have consented, and shall be forever barred from objecting to the assumption and assignment of such Assigned Contract on any grounds, including, without limitation, any requirement for the provision of adequate assurance of future performance by the Proposed Buyer (or Successful Bidder, if applicable).


**[Remainder of Page Intentionally Left Blank]**

Dated:  November 25, 2013          Respectfully submitted,

**SALAZAR JACKSON, LLP**
*Counsel for Florida Gaming Miami Jai-Alai, Inc.,*
*Florida Gaming Corporation, Tara Club Estates, Inc.,*
*and Freedom Holding, Inc.*
Two South Biscayne Boulevard, Suite 3760
Miami, Florida 33131
Telephone: (305) 374-4848
Facsimile:  (305) 397-1021
Email:  Salazar@SalazarJackson.com
Email:  Honaker@SalazarJackson.com

By:_____
          Luis Salazar
          Florida Bar No. 147788
          Aaron P. Honaker
          Florida Bar No. 48749