UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

In re:

Florida Gaming Center, et al            Case No. 13-29597 RAM
                                           Chapter 11
                                           (Jointly Administered)

_____/

UNITED STATES TRUSTEE'S LIMITED OBJECTION TO DEBTORS' MOTION
FOR THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS
AND OTHER RELIEF (ECF 228)[1]

COMES NOW the United States Trustee for Region 21, in furtherance of the administrative responsibilities imposed pursuant to 28 U.S.C. §586(a), and submits the following objections to the Debtors proposed bid procedures and sale (the "Sale Motion")(ECF 228) in the above-styled Chapter 11 proceedings and in support thereof states as follows:

1. The Sale Motion seeks Court approval to sell substantially all of the Debtors' assets to Silvermark LLC ("Silvermark" or "Stalking Horse Bidder") for a purchase price of $115 Million plus certain assumed liabilities.

2. The Sale Motion further seeks approval for bidding procedures, should other interested parties seek to bid on the assets. The bid procedures, as contained in the Sale Motion, provide for a breakup fee of approximately 3% of the Purchase Price ($4,000,000) plus an additional $250,000 in overbid protection for a total initial overbid of $4,250,000. The Motion

---

[1] In Paragraph 30 of the Debtors'' Motion, the Debtors state that the break-up fee is also a settlement between Silvermark and the Debtors' of all claims between them and all parties to the November 25, 2012 Stock Purchase Agreement. Initially the UST was not opposed to the amount of the break-up fee given the 9019 aspect of the motion and additional aspects of the proposed payment, however, late on December 9, 2013, Silvermark filed an Objection to the sale procedures in the form of a Reservation of Rights stating that some of the terms were still in negotiations (ECF 239). In light of that filing by Silvermark, the UST files this objection to the Break up fee and other relief. The UST intended to raise the other issues identified below at the hearing , as those are the types of issues resolved at the hearing to approve the bid procedures without the need for a formal written objection, but given the late filing by Silvermark and the disclosures made, the UST filed this written objection.

1

provides that any subsequent bid shall be in increments of $250,000$^2$.

3. The breakup fee and overbid is excessive and not in the best interests of the estates and its creditors. The proposed bid protection represents over 3.25% of the Purchase Price, if you include the assumed liabilities, or 3.7% of the cash Purchase Price in paragraph (b)(i) of the Motion.

4. The "beak-up fee" is unreasonable and should be reduced.  A break-up fee, "is an incentive payment to a prospective purchaser with which a company fails to consummate a transaction." In re S.N.A. Nut Company, 186 B.R. 98, 101(Bankr. N.D. Ill.1995) (quoting In re Integrated Resources, Inc., 147 B.R. 650, 653 (S.D.N.Y.1992)). Break-up fees exist to reimburse a "stalking horse's" out of pocket expenses related to a proposed purchase when the "stalking horse" is not the successful bidder. See In re APP Plus, Inc., 233  B.R. 870 (Bankr. E.D.N.Y. 1998). Bankruptcy Courts should  scrutinize proposed breakup fees to determine whether the breakup fee inappropriately burdens the bankruptcy estate or fails to protect the rights of interested parties.  See In re America West Airlines, Inc., 166 BR 908 (Bankr. D. Ariz. 1994).  Generally, breakup fees are allowed in sales of assets within a bankruptcy estate as long as they "enhance" the bidding.  See S.N.A., 186 B.R. at 102.  However, when a debtor conducts a sale of estate assets, the debtor has an obligation to maximize revenues for the estate. Id.at 104.

5. The appropriate analysis under the Bankruptcy Code for the allowance of a break-up fee is based on a "best interest of the estate" test. See S.N.A., 186 B.R. at 104; In re O'Brien Environmental Energy, Inc., 181 F.3d 527 (3d Cir.1999); see also In re Hupp Industries, Inc., 140 B.R. 191, 196 (Bankr. N.D. Ohio 1992) (analysis of the proposed break-up fee must be analyzed to protect the Debtor's estate and the rights of all the parties in interest); America West, 166 B.R. at 912-13 (determining whether the proposed break-up fee makes economic sense and is in the best

interest of the bankruptcy estate, its creditors, bondholders and shareholders).

6. The "best interest of the estate" test centers on the protection of the estate and all parties involved under the circumstances of each case. In S.N.A, the Court based its analysis on "whether the interests of all concerned parties are best served by such a fee." 186 B.R. at 104; see also America West, 166 B.R. at 912; In re Hupp Industries, Inc., 140 B.R. 191, 194-96 (Bankr.N.D.Ohio 1992). The Court further stated that "bankruptcy courts should carefully scrutinize breakup fees to be sure that, following the underlying policy guiding § 363, revenues will be maximized." S.N.A., 186 B.R. at 104.

7. When a transaction is out of the ordinary course of business, after notice and a hearing, it falls to the Bankruptcy Court to determine whether to approve the transaction based on the facts and history of the case. 11 U.S.C. 363(b); see also In re America West Airlines, Inc., 166 B.R. 908 (Bankr. D.Ariz.1994) (Mergers and acquisitions which are outside of the ordinary course of business require Court approval in the bankruptcy court.) A court, in its analysis, should insure that revenues are maximized and that the best interests of the debtor's estate, creditors and equity holders are furthered. See Matter of Tiara Motorcoach Corp., 212 B.R. 133 (Bankr. N.D. Ind.1997).

8. The U.S. Trustee submits that requiring an initial competing bid to be at least $4,250,000 higher than the proposed offer is a great hurdle for any interested buyer to overcome to obtain the assets and may have a chilling effect upon other potential bidders. The UST notes that the parties refer to the Break Up Fee as a "Break up Fee and Cost Reimbursement" in paragraph 28 of the Motion, but on page 7, only refer to a $4 million breakup fee. The UST believes the parties are requesting a breakup fee of $4million, which is inclusive of the cost reimbursement component. If this is incorrect, the parties should supplement the pleading and allow the parties sufficient time to respond.

9. The Debtors cite bankruptcy cases from this District as supportive authority or

examples of cases where Break Up Fees and Expense Reimbursements provisions were approved as incentives to stalking horse. See In re Gemini Cargo Logistics, Inc., Case No. 06-10870-BKC-AJC and In re Piccadilly Cafeteria, Case No. 03-27976-BKC-RAM. What the Debtors have failed to advise this Court was that in both of those cases either the proposed incentives such as break-up fees were reduced or were so minimal, it was a non-issue. In Gemini Cargo, the amount of the proposed breakup fee was reduced to the amount equal to the reasonable out of pocket fees and expenses. Case No. 06-10870-BKC-AJC (DE# 78, 191). In Piccadilly Cafeteria, the Debtors cite a September 14, 2004 order (which is not attached to the Sale Motion), but this was a sale of minimal value with a $10,000 break-up fee. However, what the Debtors did not disclose was that the Court in Piccadilly Cafeteria previously entered an Amended Order on December 4, 2003 addressing a $54 million sale, which breakup fee had been changed from the original proposal by eliminating a separate expense reimbursement component. Case No. 03-27976-BKC-RAM (DE# 67, 174).[2] The Debtors also failed to advise the court that the break up fee in Protective Products of America was slightly higher than the norm due to the unique issues involved in that case and the nature of the Debtor's business, regulatory controls and government/defense contracts. The cases cited by Debtors show that the bid protection the Stalking Horse Bidder and the Debtors seek is unreasonable relative to the proposed purchase price and will discourage other interested parties from bidding on the assets and is therefore not in the best interests of the estates. The UST states that string citing examples of cases where bid procedures were approved, without providing the detail about the sales of facts of those cases, should not be considered and those cites should be ignored. As identified above, simply citing cases with unpublished orders without knowing the facts of those cases or whether the bid procures were even at issue, is misleading.

10.     The U.S. Trustee does not object to a <u>reasonable</u> fee to compensate the initial bidder for its costs, subject to Court approval that such fee is reasonable. However, based upon the size of

4

the break up fee and possible expense reimbursement as well as the overbid protection, it appears that the fees in this case will only deter other truly interested parties from bidding on the assets and would not be in the best interests of the estate. The U.S. Trustee submits that the overbid protections including the break up fee and initial overbid as proposed will negatively impact the bidding process and are contrary to the purpose of the break up fee, that the amount is excessive and unreasonable and should be reduced.

11. The Court should not approve the allowance of Administrative expense claim for the break up fee as part of the Bid procedure motion. There should only be a break fee paid in the event of a successful closing. Any claim for an Administrative Expense should not be pre approved at this time.

OTHER OBJECTIONS

12. In addition to the bid procedure/bid protection objection, there are several other concerns that need further clarification and which may make the proposed sale objectionable. First, the sale provides no carve out for unsecured creditors.

13. The sale does not provide a wind down budget for the Debtor and assurances that all post- petition administrative claims, including any "tail" expenses will be satisfied.

14. Next, the sale procedures provide that ABC may bid or even finance another bidders bid, but given all of the "consultation" rights of ABC in the proposed auction procedures there needs to be further clarification as to what and when ABC is entitled to information and consultation.

15. The Debtors need to provide further clarification regarding the liabilities being assumed by the purchaser. Is the purchaser providing any form of security and indemnification to the Debtors for the assumption of the claims? A more thorough analysis and description of

liabilities being assumed must be provided in order to properly determine if the proposed sale is in the best interests of the estate.

16.     The Bid procedures also provide for a potential bidder to provide a 5% deposit, which be a minimum of $5,750,000 but allows Silvermark to only post a $2 million deposit. Silvermark should be required to post an additional amount to equal 5% of the bid once it is determined that other bidders are now Qualified Bidders, as that term is used in the Motion.

17.     The proposed bid procedure and auction , provide for breaks between each round of bidding, for consultation between the Debtor, committee and ABC (depending if ABC is a bidder or if ABC is financing another bid), to determine the Leading Bid (presumably the highest and best). This process appears cumbersome and counterproductive to a robust auction.

18.     Consultation rights should not be veto rights for ABC.  And, until ABC declares whether it is credit bidding or funding another bidder, no confidential information or sales strategy should be shared that would compromise the integrity of the auction process or provide an unfair advantage to ABC or its client.

19.      If other considerations are being contemplated to determine the Leading Bid, the parties should be made aware of those considerations and given ample opportunity to increase its bid if bidding party is not considered the Leading Bid at the close of financial bidding.

20.     The UST is not listed as one of the parties entitled to attend the auction, which is scheduled to be a remote site and not in the courtroom. The sale procedures do not state whether a court reporter will be present at the auction.

WHEREFORE, the United States Trustee objects to Debtors' Sale Motion and respectfully requests that the issues raised in this Limited Objection be addressed before an Order is entered granting the Debtors' Sale Motion and to grant such other relief as the Court deems just and proper.

DATED:  December 10, 2013.

        Guy G. Gebhardt
        Acting United States
        Trustee Region 21

        /s/
        Steven D. Schneiderman, Esq.
        Trial Attorney
        U.S. Trustee's Office
        51 SW 1st Ave.
        Miami, FL 33130
        Phone: (305) 536-7285
        Fax: (305) 536-7360

I hereby certify that I am admitted to the Bar of the State of Illinois and the I am excepted from additional qualifications to practice in this Court pursuant to Local Rules 9011-4 and 2090(B)(2)(b) pertaining to attorneys representing the United States government.

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing Motion has been served on the following parties on December 10, 2013, electronically through CM/ECF, on parties having appeared electronically in the instant matter and that a copy hereof shall be served by U.S. Mail, postage prepaid, on parties not appearing electronically as listed on the attached service list:

- David W Baddley    baddleyd@sec.gov
- Paul J. Battista    pbattista@gjb-law.com, gjbecf@gjb-law.com
- Ileana Cruz    cao.bkc@miamidade.gov
- Drew M Dillworth    ddillworth@stearnsweaver.com, mfernandez@stearnsweaver.com;bank@stearnsweaver.com;rross@stearnsweaver.com;dillworthcdp@ecf.epiqsystems.com;cgraver@stearnsweaver.com
- Joseph D Frank    jfrank@fgllp.com, ccarpenter@fgllp.com;rheiligman@fgllp.com;jkleinman@fgllp.com
- Allison L Friedman    ralfriedman@hotmail.com
- Michael A Friedman    mfriedman@gjb-law.com, gjbecf@gjb-law.com
- Solomon B Genet    sgenet@melandrussin.com, ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
- Andrew R Herron    aherron@herronortiz.com, ndrubin@herronortiz.com
- Aaron P. Honaker    honaker@salazarjackson.com, lee-sin@salazarjackson.com
- Christopher A Jarvinen    cjarvinen@bergersingerman.com, efile@bergersingerman.com;mdiaz@bergersingerman.com
- Soneet R. Kapila    mwalker@kapilaco.com
- Miami-Dade County Tax Collector (Darely)    mdtcbkc@miamidade.gov
- Glenn D Moses    gmoses@gjb-law.com, gjbecf@gjb-law.com
- Craig V. Rasile    craig.rasile@dlapiper.com, monica.tucker@dlapiper.com,jacqueline.figueroa@dlapiper.com,rachel.nanes@dlapiper.com
- Luis Salazar    salazar@salazarjackson.com, jackson@salazarjackson.com;aguilar@salazarjackson.com;Lee-Sin@SalazarJackson.com;pacetti@salazarjackson.com
- Howard S Toland    htoland@mitrani.com

    Alex C Fisch
    c/o Guggenheim Securities, LLC
    330 Madison Ave
    New York, NY 10017

    Robert W Hudson
    Hudson & Calleja LLC
    3211 Ponce De Leon Blvd #102
    Coral Gables, FL 33134

Thomas R Kreller
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa St, 30th floor
Los Angeles, CA 90017

Daniel Stermer
200 S Biscayne Blvd. #1818
Miami, FL 33131

R James Straus
400 W Market St #3200
Louisville, KY 40202-3363

/s/
Steven D. Schneiderman , Esq.
Trial Attorney