IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:                                          Chapter 11

                                                Case No. 13-29597-RAM
FLORIDA GAMING CENTERS, INC.,                   (Jointly Administered)
*et al.*,

                              Debtors.      /
_____

### NOTICE OF FILING OF FINAL SALES PROCEDURES

  Debtors, Florida Gaming Centers, Inc. and Florida Gaming Corporation ("**Miami Jai-Alai**") give notice of filing the Final Sale Procedures which replaces Exhibit A of the *Motion for Entry of (I) an Order (A) Authorizing and Approving Sale Procedures for the Sale of Substantially All the Debtors' Assets; (B) Approving Debtors' Entry Into and Form of Asset Purchase Agreement, Including a Break-Up Fee and Expense Reimbursement; (C) Scheduling an Auction and Final Hearing to Consider Approval of the Sale; (D) Approving Form and Manner of Notice of Sale Procedures, Auction and Sale Hearing and (II) an Order Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Approving The Compromise And Settlement Of Claims Between Parties To The November 25, 2012 Stock Purchase Agreement* (ECF No. 228) filed by Miami Jai-Alai on November 25, 2013 (**Exhibit A**).

Dated:  December 17, 2013   Respectfully submitted,

           **SALAZAR JACKSON, LLP**
           *Counsel for Florida Gaming Centers, Inc.,*
           *Florida Gaming Corporation, Tara Club*
           *Estates, Inc., and Freedom Holding, Inc.*
           Two South Biscayne Boulevard, Suite 3760
           Miami, FL 33131
           Telephone: (305) 374-4848
           Facsimile:  (305) 397-1021
           Email:  Salazar@SalazarJackson.com
              Honaker@SalazarJackson.com
       By:_____
           Luis Salazar
           Florida Bar No. 147788
           Aaron P. Honaker
           Florida Bar No. 48749



**C**ERTIFICATE **O**F **S**ERVICE

I hereby certify that on December 17, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all parties identified on the Master Service List attached to the original hereof, either via transmission of Notices of Electronic Filing generated by CM/ECF and/or by first class U.S. mail, or Electronic mail for those parties who are not registered to receive notices electronically as indicated thereon.

/s/  Luis Salazar
Luis Salazar

**MASTER SERVICE LIST AS OF December 13, 2013**
**Florida Gaming Centers, Inc. *et al.***

### Debtors

Florida Gaming Centers, Inc.
Florida Gaming Corporation
Freedom Holding, Inc.
Tara Club Estates, Inc.
Attn: W. Bennett Collett, Jr.
3500 NW 37th Avenue
Miami, FL 33142

### Debtors Counsel / Professionals

Luis Salazar, Esq.
Linda Worton Jackson, Esq.
Aaron P. Honaker, Esq.
SALAZAR JACKSON, LLP
Two S. Biscayne Blvd., Suite 3760
Miami, FL 33131
Email: Salazar@SalazarJackson.com
Email: Jackson@SalazarJackson.com
Email: Honaker@SalazarJackson.com
*Counsel for Debtors*

VIA EMAIL ONLY
Robert W. Hudson, Esq.
HUDSON & CALLEJA, LLC
3211 Ponce de Leon Boulevard, Suite 102
Coral Gables, FL 33134
Email: rhudson@hudsoncalleja.com
*Special Counsel for Debtors*

VIA EMAIL ONLY
R. James Straus, Esq.
FROST BROWN TODD LLC
400 West Market Street, Suite 3200
Louisville, KY 40202-3363
Email: jstraus@fbtlaw.com
*Special Counsel for Debtors*

Alex C Fisch
c/o GUGGENHEIM SECURITIES, LLC
330 Madison Ave
New York, NY 10017

VIA EMAIL ONLY
Soneet Kapila
c/o Kapila & Company
1000 South Federal Highway
Suite 200
Fort Lauderdale, FL 33316
*Special Counsel for Debtors*

### US Trustee

Office of the United States Trustee
51 Southwest First Avenue, Room 1204
Miami, FL 33130
Email: USTPRegion21.MM.ECF@usdoj.gov

### Receiver

VIA EMAIL ONLY
David Jonas
4 Overlook Ct. Medford, NJ 8055
Email: davesjonas@gmail.com

VIA EMAIL ONLY
Etan Mark, Esq.
BERGER SINGERMAN, LLP
1450 Birckell Avenue, Suite 1900
Miami, FL 33131
Email: emark@bergersingerman.com
*Counsel for David Jonas*

VIA EMAIL ONLY
Christopher A. Jarvinen, Esq.
BERGER SINGERMAN, LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
E-mail: cjarvinen@bergersingerman.com
*Counsel for David Jonas*

1

**MASTER SERVICE LIST AS OF December 13, 2013**
**Florida Gaming Centers, Inc. *et al.***

**Secured Creditors**

Drew Dillworth
150 West Flagler Street
Miami, FL 33130
Email: ddillworth@stearnsweaver.com
*Local Counsel for ABC Funding, LLC*

Marissa D. Kelley, Eq.
Stearns Weaver Miller Weissler Alhadeff &
Sitterson, P.A.
200 East Las Olas Blvd., Suite 2100
Fort Lauderdale, FL 33301
Email: mkelley@stearnsweaver.com
*Counsel for ABC Funding, LLC*

Andrew F. O'Neill
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Email: aoneill@sidley.com
*Counsel for ABC Funding, LLC*

Dennis M. Twomey
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Email: dtwomey@sidley.com
*Counsel for ABC Funding, LLC*

ABC Funding, LLC
Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

Canyon Distressed Opportunity Master
Fund, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon-GRF Master Fund II, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon Value Realization Fund, L.P.
c/o Canyon Capital Advisors LLC
Attn: Chaney Sheffield
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

Canyon Value Realization Master Fund, L.P.
c/o Canyon Capital Advisors LLC
2000 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067

J.P. Morgan Securities LLC
Attn: Jason Kroll
383 Madison Avenue, 3rd Floor
New York, NY 10017

JPMorgan Chase Bank, N.A.
Attn: Jason Kroll
383 Madison Avenue, 3rd Floor
New York, NY 10017

Locust Street Funding LLC
c/o GSO/Blackstone Debt Funds Management
Attn: James Roche
345 Park Avenue, 31st Floor
New York, NY 10154

Summit Partners Subordinated
Debt Fund IV-A, L.P.
c/o Summit Partners Credit Advisors, L.P.
Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

Summit Partners Subordinated
Debt Fund IV-A, L.P.
Summit Partners Subordinated
Debt Fund IV-B, L.P.
ABC Funding, LLC
Attn: Summit Partners SD IV, L.P.,
Attn: Robin W. Devereux, General Partner
222 Berkeley Street, 18th Floor
Boston, MA 02116

**MASTER SERVICE LIST AS OF December 13, 2013**
**Florida Gaming Centers, Inc. *et al.***

Summit Partners Subordinated
Debt Fund IV-B, L.P.
c/o Summit Partners Credit Advisors, L.P.
Attn: James Freeland and Adam Britt
222 Berkeley Street, 18th Floor
Boston, MA 02116

Ileana Cruz
Assistant County Attorney
Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, FL 33128-1993
Email: ileanac@miamidade.gov
Email: cao.bkc@miamidade.gov
*Counsel for Miami Dade County-County Tax*
*Collector*

Miami Dade County Tax Collector
Darely Garcia-Lopez
c/o Miami Dade County Paralegal Unit
Miami Dade Bankruptcy Unit
140 West Flagler Street, Suite 1403
Miami, FL 33130-1575
Email: dgjp@miamidade.gov
Email: MDTCBKC@miamidade.gov

Thomas P. Abbott, Assistant County Attorney
PO Box 025504
Miami, FL 33102-5504
Facsimile: 305-876-7294
Email: TABBOTT@miami-airport.com

## Creditors

Andrew R. Herron, Esq.
Herron Ortiz
255 Alhambra Circle, Suite 1060
Coral Gables, FL 33134
Email: aherron@herronortiz.com
Email: ndrubin@herronortiz.com
*Counsel for Miami Gaming Ventures, LLC*

Howard S. Toland, Esq.
1200 Weston Road, Penthouse
Weston, FL 33326
Email: htoland@mitrani.com
*Counsel for International Sound Corporation*

Glenn D. Moses, Esq.
Genovese Joblove & Battista, P.A.
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
*Counsel for Committee of Unsecured*
*Creditors*

Solomon B. Genet, Esquire
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Facsimile: (305) 358-1221
Email: sgenet@melandrussin.com
*Counsel for Miami Casino Management, LLC*

Joseph D. Frank
Jeremy C. Kleinman
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Telephone: (312) 276-1400
Facsimile: (312) 276-0035
Email: jfrank@fgllp.com
Email: jkleinman@fgllp.com
*Counsel for Bottling Group, LLC*

Miami Gaming Ventures
Attn: Rodney Barreto, Partner
235 Catalonia Avenue
Coral Gables, FL 33134
Telephone: 305-444-4648
Fcsimile: 305-444-1128
Email: Rodney@barretogroup.com

**MASTER SERVICE LIST AS OF December 13, 2013**
**Florida Gaming Centers, Inc. *et al.***

Florida Lemark Corporation
Attn: Eduardo P. Rodriguez, Vice President
2040 NW 94th Avenue
Doral, FL 33172
Telephone: 305-593-1442
Facsimile: 305-593-0998
Email: Eduardo@FloridaLemark.com

Farmers Bank
P.O. Box 231
Hardinsburg, KY 40143

Freedom Financial Corporation
2669 Charlestown Road #D
New Albany, IN 47150

S. Oden Howell
6800 Shadwell Place
Prospect, KY 40059
Telephone: 502-491-7985
Facsimile: 502-491-1212
Email: SoHowell@aol.com

Kim Tharp
2669 Charlestown Rd #D
New Albany, IN 47150

SHFL Entertainment ( Shuffle Master, Inc.)
Attn: Darrell Horton
6650 El Camino
Las Vegas, NV 89118
Telephone: 702-270-5138
Facsimile: 888-234-3881
Email: DHorton@shfl.com

Tampa Bay Downs, Inc.
Attn: Gregory Gelyon, Vice President of Finance
P.O Box 2007
Oldsmar, FL 34677
Telephone: 813-855-4401
Facsimile: 813-261-1961
Email: greg@tampabaydowns.com,
pnberube@tampabaydowns.com

**GOVERNMENTAL AGENCIES / TAXING AUTHORITIES**

Division of Alcoholic Beverages and Tobacco
Attn: Allen Douglas, Director
1940 North Monroe Street
Tallahassee, FL 32399
Facsimile: 850.922.5175

Division of Pari-Mutuel Wagering
Southern Division
1400 West Commercial Boulevard, Suite 165
Ft. Lauderdale, FL 33309-3787

Division of Pari-Mutuel Wagering
Attn: Leon M Biegalski, Director
1940 North Monroe Street
Tallahassee, FL 32399-1035
Facsimile: 850.488.0550

Florida Department of Revenue
Attn: Bankruptcy Unit
P.O Box 6668
Tallahassee, FL 32314-6668

Florida Department of Revenue
c/o Agency Clerk
501 S. Calhoun Street
Room 201, Carlton Building
Tallahassee, FL 32399

Florida Department of Revenue
8175 NW 12th St, Suite 119
Miami Service Center
Miami, FL 33126-1828

Florida Department of Revenue
5050 West Tennessee Street
Tallahassee, FL 32399-0100

4

**MASTER SERVICE LIST AS OF December 13, 2013**
**Florida Gaming Centers, Inc. *et al.***

Office of Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
Special Procedures- Insolvency
7850 SW 6th Court
Plantation, FL 33324

David Baddley
U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces N.E, Suite 900
Atlanta, GA 30326-1382
Email: atlreorg@sec.gov
*Counsel for U.S. Securities and Exchange Commission*

Securities and Exchange Commission
Eric I Bustillo, Regional Director
801 Brickell Ave., Suite 1800
Miami, FL 33131

Special Asst. U.S. Attorney
P.O. Box 9, Stop 8000
51 SW 1st Avenue, #1114
Miami, FL 33130

Special Asst. U.S. Attorney
IRS District Counsel
1000 S. Pine Island Rd., Ste 340
Plantation, FL 33324-3906

Eric Holder, US Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**PARTIES IN INTEREST**

VIA EMAIL ONLY
Lance A. Schildkraut, Esq.
DiConza Traurig LLP
630 Third Avenue, 7th Floor
New York, NY 10017
Email: las@dtlawgroup.com

VIA EMAIL ONLY
Gerald D. Kelly, Esq.
Claire E. W. Stewart, Esq.
SIDLEY AUSTIN, LLP
One South Dearborn Street
Chicago, IL 60603
Email: gkelly@sidley.com

VIA EMAIL ONLY
Benjamin R. Nagin, Esq.
Adam McClay, Esq.
SIDLEY AUSTIN, LLP
787 Seventh Avenue
New York, NY 10019
Email: bnagin@sidley.com
Email: amcclay@sidley.com

VIA EMAIL ONLY
Alexander D. Silverman, Member
William S. Kogan, General Counsel
SILVERMARK LLC
430 Park Avenue, 5th Floor
New York, NY 10022
Email: alexs@andalex.com
Email: wkogan@andalex.com

5

**MASTER SERVICE LIST AS OF December 13, 2013**
**Florida Gaming Centers, Inc.** *et al.*

VIA EMAIL ONLY
Craig V. Rasile, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8539
Facsimile: (305) 437-8131
Email: craig.rasile@dlapiper.com
*Local Counsel for Silvermark, LLC*

VIA EMAIL ONLY
Andrew D. Zaron, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8523
Facsimile: (305) 437-8131
Email: andrew.zaron@dlapiper.com
*Local Counsel for Silvermark, LLC*

VIA EMAIL ONLY
Rachel Nanes, Esq.
DLA Piper LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8563
Facsimile: (305) 437-8131
Email: rachel.nanes@dlapiper.com
*Local Counsel for Silvermark, LLC*

Thomas R. Kreller
Milbank, Tweed, Hadley & McCloy LLP
601 South Figuerora Street, 30th Floor
Los Angeles, CA 90017
*Counsel for Silvermark, LLC*

VIA EMAIL ONLY
Linda A. Conahan
GUNSTER, YOAKLEY & STEWART, P.A.
450 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, FL 33301
Email: lconahan@gunster.com

VIA EMAIL ONLY
Etan Mark, Esq.
BERGER SINGERMAN, LLP
1450 Birckell Avenue, Suite 1900
Miami, FL 33131
Email: emark@bergersingerman.com
*Counsel for David Jonas*

VIA EMAIL ONLY
Christopher A. Jarvinen, Esq.
BERGER SINGERMAN, LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
E-mail: cjarvinen@bergersingerman.com
*Counsel for David Jonas*

Wells Fargo Bank Deposits Bankruptcy
Wells Fargo Bank NA
2701 NW Vaughn St, 5th Floor
Portland, OR 97210

Daniel Stermer
200 S Biscayne Blvd. #1818
Miami, FL 33131

Allison L. Friedman, Esq.
Allison L. Friedman, P.A.
20533 Biscayne Blvd., Suite 4-435
Aventura, Florida 33180
Telephone: 305-905-2679
Email: ralfriedman@gmail.com
*Counsel for Aristocrat Technologies, Inc.*

6

# EXHIBIT "A"

## SALE PROCEDURES

In order to obtain the highest and best offer for the Assets (as defined below), the Sellers (as defined below) propose the bidding and sale procedures (the **"Sale Procedures"**) set forth below to be employed with respect to the proposed sale of all or substantially all of the assets of Florida Gaming Centers, Inc. (**"Centers"**) and certain assets of Florida Gaming Corporation ("**Corp.**", together with Centers, the "**Sellers**"), along with the assumption of certain associated liabilities (collectively, the **"Sale"**) as set forth in the asset purchase agreement (the "**APA**") to be entered into by and between the Sellers and Silvermark LLC (the "**Stalking Horse**"), or alternatively as set forth in the relevant sale agreements with respect to a Successful Bidder (as defined below) other than the Stalking Horse.  In the event that the Sellers do not enter into the APA with Silvermark LLC, these Sale Procedures will be revised to reflect the Sellers' entry into an asset purchase agreement with an alternative stalking horse bidder, or their determination to pursue the sale of their Assets (as defined below) without a stalking horse bidder, in either case after approval from the Joint Official Committee of Unsecured Creditors (the "**Committee**") and ABC Funding, LLC ("**ABC**"), as Agent for the Lenders under the Credit Agreement (as defined below), or as may be provided by later order of the Bankruptcy Court (as defined below).  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA.

The APA shall set forth the terms and conditions under which the Stalking Horse will acquire the Assets.  The transactions contemplated by the APA and any ancillary agreements discussed therein (collectively, the **"Transaction"**) shall be subject to competitive bidding as set forth herein.  In addition, the transfer of the Sellers' rights, title and interests in and to the Assets shall, except for certain assumed liabilities, be free and clear of the Claims and Interests (as defined below) and shall be subject to approval by the United States Bankruptcy Court for the

Southern District of Florida (the "**Bankruptcy Court**") pursuant to Sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the **"Bankruptcy Code"**).

The Sale Procedures contemplate the following timetable:

- Entry of an order authorizing and approving the Sale Procedures Motion (the "**Sale Procedures Order**") by December 19, 2013.

- Bid Deadline:  5:00 pm Eastern Time on March 19, 2014.

- Auction (if necessary):  March 25, 2014.

- Sale Hearing (as defined below):  March 26, 2014.

**Any interested potential bidder should contact the Sellers' investment banker, Guggenheim Securities, LLC ("Guggenheim") as soon as practical:**

**Guggenheim Securities, LLC**
**330 Madison Ave**
**New York, NY 10017**
**Attention:**

James Decker
212-518-9939
Jim.Decker@guggenheimpartners.com

Alexander Fisch
212-518-9940
Alex.Fisch@guggenheimpartners.com

### BIDDING PROCESS

The Sale Procedures set forth herein describe, among other things, the Assets available for sale, the manner in which prospective bidders may gain access to or continue to have access to Diligence Materials (as defined below), the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, the receipt and negotiation of bids received, the

conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder and the Alternate Bidder (as defined below), and the Bankruptcy Court's approval thereof (collectively, the **"Bidding Process"**).

## ASSETS TO BE SOLD

Centers proposes to sell all (or substantially all) of its assets, and Corp. proposes to sell certain of its assets, on the terms and conditions set forth in the APA (the **"Assets"**).  Further information and due diligence materials regarding the Assets (the "**Diligence Materials**") will be made available only to those other prospective purchasers that execute a confidentiality agreement with the Sellers, in form and substance reasonably satisfactory to the Sellers, after consultation with the Committee and ABC; provided, however, that any confidentiality agreement to be signed by ABC in its capacity as potential credit bidder shall not (a) be any more restrictive than the confidentiality provisions set forth in the Credit Agreement, or (b) prohibit any discussions, offer or agreement to provide financing to a Potential Bidder or Qualified Bidder in connection with the Sale, subject to the provisions of the "Financing Notification" section below.

## "AS IS, WHERE IS"

The sale of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates, except, with respect to a Successful Bidder (as defined below), to the extent set forth in the relevant sale agreements of such Successful Bidder.

## FREE OF ANY AND ALL CLAIMS AND INTERESTS

All of the rights, title and interests of the Sellers in and to the Assets, or any portion thereof, to be acquired by the Stalking Horse or the Successful Bidder will be acquired free and clear of all pledges, liens, security interests, encumbrances,

claims, charges, options, and interests thereon and there against (collectively, the **"Claims and Interests"**) pursuant to Sections 363 and 365 of the Bankruptcy Code, such Claims and Interests shall attach to the proceeds of the Sale (without prejudice to any claims or causes of action regarding the extent, priority, validity and/or enforceability thereof), subject to further order of the Bankruptcy Court, including with respect to or regarding the extent, priority, validity, and/or enforceability of such Claims and Interests.

## PARTICIPATION REQUIREMENTS

In order to participate in the Bidding Process, each person or entity who wishes to participate in the Bidding Process other than the Stalking Horse and ABC (each, a **"Potential Bidder"**) must, prior to the Bid Deadline, deliver to the Notice Parties (as defined below) at the addresses provided below:

(a)    an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder), to be prepared by the Sellers, in form and substance reasonably satisfactory to the Sellers, after consultation with the Committee and ABC and the rights of the Sellers thereunder shall inure to the benefit of the Stalking Horse, or other Successful Bidder, following the close of the Sale; and

(b)    full description of the Potential Bidder and current financial information for the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current financial information for the equity holders and/or guarantors  of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Sellers and their respective financial advisors, in consultation with the Committee and ABC, to make a

4

reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a potential transaction.

A Potential Bidder that delivers the information described above, and that the Sellers determine, in their reasonable business judgment and in consultation with ABC and the Committee, is likely to be able to consummate a potential transaction will be deemed a **"Qualified Bidder"**. After the Sellers notify the Potential Bidder (as promptly as practicable) that it is a Qualified Bidder, the Sellers will provide the APA to the Qualified Bidder in Microsoft Word format and allow the Qualified Bidder to begin or continue to conduct due diligence as provided in the following paragraph with respect to the Assets. For the avoidance of doubt, the Stalking Horse and ABC (subject to the credit bidding procedures set forth herein) shall be deemed Qualified Bidders for purposes of these Sale Procedures.

**DUE DILIGENCE**

The Sellers may, in their reasonable business judgment, and subject to competitive and other business considerations, afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed a confidentiality agreement with the Sellers access to such Diligence Materials as the Sellers deem appropriate. Diligence Materials and access may include management presentations as may be scheduled by the Sellers, access to physical or electronic data rooms, reasonable on-site inspections, and other matters which a Qualified Bidder may reasonably request and as to which the Sellers agree, in their reasonable business judgment.

The Sellers, with the assistance of Guggenheim, will coordinate all reasonable requests for Diligence Materials from Qualified Bidders. No additional due diligence for any party other than the Stalking Horse or a Qualified Bidder who has submitted a Qualified Bid will continue after the Bid Deadline (as defined below). Other than as provided herein, neither the Sellers nor any of their affiliates

5

(or any of their respective representatives) will be obligated to furnish any Diligence Materials or other information relating to the Assets to any person other than to a Qualified Bidder. For the avoidance of doubt, the Stalking Horse, ABC, and the Committee shall be provided prompt access to all Diligence Materials, including without limitation any management presentations, reasonable on-site inspections, and other information provided to any Qualified Bidder that were not previously made available to them. In addition, (a) the Sellers and Guggenheim shall consult with the Committee and ABC and their respective advisors regarding materials produced in connection with the Sale, including without limitation the form of confidentiality agreement and any marketing materials or information memoranda or "teasers", and (b) Guggenheim shall hold weekly Sale update conferences with the financial advisors to the Committee and ABC.

### BID DEADLINE

A Qualified Bidder that desires to make a bid will deliver written copies of its bid **SO AS TO BE RECEIVED NO LATER THAN MARCH 19, 2014 AT 5:00 P.M. EASTERN TIME** (the **"Bid Deadline"**) to the following parties (collectively, the **"Notice Parties"**): (i) counsel to Sellers: Luis Salazar, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134, salazar@salazarjackson.com; (ii) investment banker to Sellers:  Jim Decker, Guggenheim Securities, LLC, 330 Madison Avenue, New York, New York 10017, Jim.Decker@guggenheimpartners.com (iii) counsel to ABC:  Dennis M. Twomey, Sidley Austin, LLP, One South Dearborn, Chicago, Illinois 60603, dtwomey@Sidley.com; and (iv) counsel to Committee: Glenn D. Moses and Paul J. Battista, Genovese Joblove & Battista, P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131 pbattista@gjb-law.com.  The Bid Deadline can be changed without further order of the Bankruptcy Court upon the agreement of the Sellers, the Committee, ABC and the Stalking Horse.

**QUALIFIED BID**

A bid submitted by a Qualified Bidder will be considered a Qualified Bid only if the bid is submitted in the time and manner provided in the previous section and complies with all of the following (a **"Qualified Bid"**); provided, however, that Qualified Bidders are not required to provide the information described in clause (d) below to ABC (which information shall be provided to ABC by the Debtors if ABC does not provide a Notification (as defined below); provided, further, that the Sellers may, in the reasonable exercise of their business judgment, waive one or more of the following requirements, after consultation with the Committee and ABC:

(a)    is in writing and offers to purchase all, or substantially all, of the Assets upon the terms and conditions substantially as set forth in the APA for value to Sellers which, in Sellers' reasonable business judgment, after consultation with the Committee and ABC, is greater than or equal to the sum of the value offered under the APA, plus (i) the amount of the Break-Up Fee (as defined in the APA), plus (ii) $250,000, subject in all events to the same or better other terms and conditions as are contained in the APA;

(b)    it includes a letter stating that the Qualified Bidder's offer is and shall remain irrevocable until the selection of the Successful Bidder and, if applicable, the Alternate Bidder (as defined below), provided that if such Qualified Bidder is selected as the Successful Bidder or the Alternate Bidder pursuant to these Sale Procedures, then such Qualified Bidder agrees that its bid shall remain open and irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Alternate Bidder, and (ii) (x) with respect to the Successful Bidder only, the date on which the obligations under either the APA (if the Successful Bidder is the Stalking Horse) or the respective purchase and sale agreements with the Qualified

7

Bidder who is the Successful Bidder are terminated in accordance with the terms thereof (the "**APA Termination Date**"), subject in all events to the rights of the parties thereunder arising from such termination, and (y) with respect to the Alternate Bidder only, the Alternate Bid Expiration Date (as defined below);

(c)    it includes (i) a duly authorized and executed APA (as modified by the Qualified Bidder to reflect the terms and conditions of its bid), including the purchase price for the Assets expressed in U.S. Dollars (the "**Purchase Price**"), together with all exhibits and schedules thereto, including, to the extent required by the terms and conditions of such bid, the other ancillary agreements as described in the APA and such additional ancillary agreements as may be required by the Qualified Bidder with all exhibits and schedules thereto, and (ii) redlines of (x) such APA to show those amendments and modifications to the APA ("**Marked APA**") and (y) all other such materials and ancillary agreements (the "**Marked Ancillary Agreements**", together with the Marked APA, the "**Marked Agreements**");

(d)    it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Sellers, after consultation with ABC and the Committee, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreements;

(e)    it includes written evidence demonstrating its (and its principals') eligibility for those gaming licenses, permits, or regulatory approvals necessary to allow it to operate the Assets, together with evidence that it has timely commenced and is seeking any such necessary licenses, permits, or regulatory approval, that will allow the Sellers, after

8

consultation with ABC and the Committee, to make a reasonable determination as to the Qualified Bidder's ability to timely complete the licensing, permitting, and/or regulatory approval processes;

(f)    it is not conditioned on (i) the outcome of unperformed due diligence by the Qualified Bidder (and includes an acknowledgement and representation that the Qualified Bidder has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer) or (ii) obtaining financing;

(g)    it fully discloses the identity of each entity that will be bidding for the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation.

(h)    it includes an acknowledgment and representation that the Qualified Bidder will assume the Sellers' obligations under the executory contracts and unexpired leases proposed to be assumed and assigned pursuant to the Marked Agreements, contains full details of the Qualified Bidder's proposal for the treatment of related cure costs; and it identifies with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing;

(i)    it includes an acknowledgement and representation that the Qualified Bidder:  (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; and (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Marked Agreements; and (iii) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

(j)      it includes evidence, in form and substance reasonably satisfactory to the Sellers, in consultation with ABC and the Committee, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the transaction pursuant to the Marked Agreements;

(k)      it is accompanied by a good faith cash deposit (each, a **"Good Faith Deposit"**) in an amount equal to 5% of the total Purchase Price to be held in escrow by counsel to the Sellers subject to the terms of the APA and otherwise to be dealt with as provided for under "Good Faith Deposit" herein; and

(l)      it includes evidence of the Qualified Bidder's ability to comply with Section 365 of the U.S. Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Sellers and assigned or subleased to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases.

Notwithstanding the foregoing, the Stalking Horse and ABC (subject to the credit bidding procedures set forth herein) will be deemed to be Qualified Bidders, and the APA and any credit bid complying with the provisions set forth in the section titled "Credit Bidding" herein will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction and the Sale.

### EVALUATION OF COMPETING BIDS

The Sellers shall, after consulting with ABC (unless ABC has given a Notification (as defined below)) and the Committee, evaluate bids on various grounds including, but not limited to, any delay, additional risks (including closing risks) and added costs to the Sellers' estates, including any additional cure

10

payments attributable to, or rejection damages claims against, the Sellers.  After consultation with ABC and the Committee, the Sellers shall make a determination, in their reasonable discretion, whether a bid (other than any credit bid by ABC pursuant to the credit bidding procedures set forth herein or the Stalking Horse bid embodied by the APA) is or is not a Qualified Bid; provided, however, that in order to constitute a Qualified Bid, a bid must, in the Sellers' business judgment, comply with all the requirements set forth in the "Qualified Bid" section above.  The Sellers shall notify each Qualified Bidder in writing as to whether its bid has been determined to be a Qualified Bid at least 48 hours prior to the commencement of the Auction.

### CREDIT BIDDING

Only ABC (or its nominee or designee) shall be permitted to submit a credit bid at the Auction, and ABC will notify the Sellers, the Committee and the Stalking Horse of its intention to potentially credit bid (a **"Credit Bid Notification"**) no later than the Bid Deadline.  To the extent ABC delivers a Credit Bid Notification, it shall not receive the consultation rights described above in the "Evaluation of Competing Bids" section or below in the "Auction", "Selection of Successful Bid" or "Sale Hearing" sections.

ABC (or its nominee or designee) shall be permitted to credit bid the total allowed amount of its secured claim outstanding at the time of the Auction under that certain Credit Agreement dated April 25, 2011 (the "**Credit Agreement**") and related documents which constitute "Obligations" under the Credit Agreement (the "**ABC Claim**"), unless otherwise provided herein or pursuant to further Bankruptcy Court order.  The Debtors (in consultation with the Committee) and ABC shall use their best efforts to cause the allowed amount of the ABC Claim to be determined prior to the Bid Deadline by order of the Bankruptcy Court, including pursuant to the claim determination scheduling stipulation attached as an exhibit to the Sale Procedures Order, which schedule

shall be approved by the Bankruptcy Court. In the unanticipated event that the ABC Claim is not fixed pursuant to order of the Bankruptcy Court prior to the Bid Deadline, ABC shall be permitted to credit bid its entire asserted secured claim amount, subject to further order of the Bankruptcy Court.

In the event ABC (or its nominee or designee) submits a credit bid at the Auction, then it shall, prior to the Auction, comply with the requirements set forth in the "Qualified Bid" section above other than clauses (d), (k) and (l); provided, that in the event that ABC (or its nominee or designee) submits a credit bid at the Auction, it shall provide in its Marked APA for the payment in cash of the Break-Up Fee to Stalking Horse to the extent the Break-Up Fee is required to be paid to the Stalking Horse pursuant to the terms of the these Sale Procedures.

### FINANCING NOTIFICATION

If ABC intends to provide financing to any Qualified Bidder in connection with such Qualified Bidder's Qualified Bid, ABC will notify the Sellers, the Committee and the Stalking Horse of its intention to potentially provide such financing (a **"Financing Notification"**; either a Financing Notification or a Credit Bid Notification shall be a "**Notification**") no later than the earlier of (a) entry by ABC into a commitment letter or other binding commitment to provide such financing, and (b) the Bid Deadline. In connection with providing a Financing Notification, ABC will provide the Sellers and the Committee, on an advisors' eyes only, confidential basis, with a description of the terms of such financing. To the extent ABC delivers a Financing Notification, it shall not receive the consultation rights described above in the "Evaluation of Competing Bids" section or below in the "Auction", "Selection of Successful Bid" or "Sale Hearing" sections. For the avoidance of doubt, a mere offer or agreement to provide financing by ABC to a Qualified Bidder in connection with the Sale shall not alone be deemed to be engagement in collusion, subject to the requirements of this section.

### NO QUALIFIED BIDS

If the Sellers do not receive any Qualified Bids other than the APA and ABC does not provide a Credit Bid Notification, the Auction shall be cancelled and the Sellers shall report the same to the Bankruptcy Court and seek approval of the Transaction.

### AUCTION

If the Sellers receive one or more Qualified Bids in addition to the APA with the Stalking Horse, they will conduct an auction (the **"Auction"**) of the Assets at 10:00 a.m. on March 25, 2014 at the offices of the Sellers' counsel, Salazar Jackson, LLP, or such other location as shall be timely communicated to all entities entitled to attend the Auction.  The Auction shall run in accordance with the following procedures:

(a)    Only the Sellers, the Stalking Horse, ABC, the US Trustee, and the Committee and any other Qualified Bidder (and the representatives and advisors to each of the foregoing)  that has submitted a Qualified Bid, or such other persons or entities that the Sellers reasonably determine, in their discretion, shall be permitted to attend the Auction in person, and only Qualified Bidders (including the Stalking Horse and ABC, to the extent that ABC provides a Credit Bid Notification) will be entitled to bid at the Auction.

(b)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale; however, that for the avoidance of doubt, the mere offer or agreement to provide financing by ABC or any Lender under the Credit Agreement to a Potential Bidder or Qualified Bidder in connection with the Sale shall not alone be deemed to be engagement in collusion.

(c)    At least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the

13

Sellers whether it intends to attend the Auction; <u>provided</u> that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction and (ii) if such bidder is selected as an Alternate Bidder (as defined below), the Alternate Bid Expiration Date. Prior to the Auction, the Sellers will notify the Stalking Horse and all other Qualified Bidders of each Qualified Bidder and which Qualified Bid it believes, in its reasonable business judgment, after consultation with ABC and the Committee, is the highest or otherwise best offer (the **"Starting Bid"**).

(d)    All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid (including any agreements with any creditors of, or contract parties with, the Sellers) will be fully disclosed to all other Qualified Bidders throughout the entire Auction; <u>provided</u> that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(e)    Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a **"Subsequent Bid"**) and (ii) the Sellers determine, after consultation with ABC and the Committee, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid

14

(as defined below).  The Auction may include individual negotiations by the Sellers with Qualified Bidders.  Each incremental bid at the Auction shall provide net value to the estate of (i) at least $250,000 over the Starting Bid, or (ii)(a) $250,000 over the Leading Bid if the Leading Bid is not that of the Stalking Horse, and (ii)(b) an amount equal to the Break-Up Fee plus $250,000 if the Leading Bid is from the Stalking Horse. After the first round of bidding and between each subsequent round of bidding, the Sellers shall announce the bid (and at the option of the Sellers, the value of such bid) that it believes (after consultation with the ABC and the Committee) to be the highest or otherwise best offer (the "Leading Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.  Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Stalking Horse), the Sellers will give effect to the Break-Up Fee that may be payable to the Stalking Horse under the APA as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Sellers and the effect on the Sellers and their estates of any additional rejection damage claims and/or cure claims..

(f)      For the purpose of evaluating Subsequent Bids, the Sellers may require a Qualified Bidder submitting a Subsequent Bid to submit to the Sellers, the Committee and ABC, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Sellers) demonstrating such Qualified Bidder's ability to close the proposed transaction at the amount of the Subsequent Bid.   The Sellers, in consultation with the Committee and ABC, may adopt rules for the Auction at or prior to the Auction that will better promote the goals of the Auction

15

and that are not inconsistent with any of the provisions of the Sale Procedures Order; provided that the Sale Procedures may not be modified such that they limit ABC's right to credit bid.

The Sellers may, in consultation with ABC and the Committee, employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (a) not inconsistent with these Sale Procedures, the Sale Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any other order of the Bankruptcy Court entered in connection herewith and (b) disclosed to each Qualified Bidder; provided that additional procedural rules may not be added such that they limit ABC's right to credit bid. The Sellers, in consultation with the Committee and ABC, shall have the right to reject any bid made at the Auction that does not and is not in strict conformity with these Sale Procedures. Any such non-conforming bid, at the election of the Sellers as provided herein, shall not constitute a bid for purposes of the Auction or the determination of the Successful Bid or Alternate Bid hereunder.

## SELECTION OF SUCCESSFUL BID

Prior to the conclusion of the Auction, the Sellers, in consultation with ABC and the Committee will (a) review each Qualified Bid that is either the Leading Bid or submitted subsequent to and as an improvement to the submission of the Leading Bid (except in the event that there is no Leading Bid, in which case the Qualified Bids to be considered will be the Starting Bid and any bids submitted subsequent and as an improvement to the Starting Bid) on the basis of financial and contractual terms and the factors relevant to the sale process, including, among other things, the proposed revisions to the transaction documents, the counterparties to such transactions, the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the

bidder) provided by such bid, the claims likely to be created by such bid in relation to other bids (including the added costs of any cure or rejection damages), other factors affecting the speed, certainty and value of the Sale (including any regulatory approvals or other requirements or conditions required to close the proposed transaction), the Assets included or excluded from the bid, the transition services required from the Sellers post-closing and any related restructuring costs, and the likelihood and timing of consummating such transaction, each as determined by the Sellers, in consultation with ABC and the Committee, (b) identify the highest or otherwise best offer for the Assets received at the Auction (such bid, the **"Successful Bid"** and the bidder making such bid, the **"Successful Bidder"**), and (c) communicate to Qualified Bidders the identity of the Successful Bidder, the Alternate Bidder, if any, and the details of the Successful Bid and Alternate Bid (as defined below), if any. The determination of the Successful Bid and Alternate Bid by the Sellers, after consultation with ABC and the Committee, at the conclusion of the Auction, shall be final, subject to approval by the Bankruptcy Court, and the Auction shall be closed and concluded upon such Court approval.

The Sellers will sell the Assets to the Successful Bidder pursuant to the terms of the Successful Bid (or, under certain circumstances described herein, the Alternate Bidder) upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing (as defined below).

### SALE HEARING

The hearing to authorize the Sellers to consummate the agreements with respect to the Successful Bid (the "**Sale Hearing**") will be held before the Honorable Robert A. Mark in the United States Bankruptcy Court for the Southern District of Florida, located in Miami, Florida, on a date to be scheduled by the court and currently proposed as March 26, 2014, at _____[TBD]_____ (Eastern Time).

If the Sellers do not receive any Qualified Bids other than the APA, the Sellers shall proceed as set forth in the "No Qualified Bids" section above. If the Sellers receive one or more additional Qualified Bid(s), then, at the Sale Hearing the Sellers will seek approval of the Successful Bid, and, at their election, after consultation with the Committee and ABC, the next highest or best Qualified Bid (the **"Alternate Bid"** and, such bidder, the **"Alternate Bidder"**). Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Sellers will be authorized to effectuate a Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court. The Alternate Bid shall remain open until the earlier of (a) five (5) Business Days following the APA Termination Date or (b) the consummation of the Sale to the Successful Bidder (the **"Alternate Bid Expiration Date"**). All Qualified Bids (other than the Successful Bid and the Alternate Bid) shall be deemed rejected by the Sellers on and as of the date of approval of the Successful Bid and the Alternate Bid by the Bankruptcy Court.

## APPROVAL AND PAYMENT OF BREAK-UP FEE

As provided for in the APA, in the event the Stalking Horse is not in default under the APA, has not terminated the APA pursuant to the terms thereof and is ready, willing, and able to close on the purchase of the Assets in the Sale, and should Sellers accept a higher or better offer to sell the Assets to another purchaser ("Alternative Purchaser"), which sale is approved by the Bankruptcy Court in the Bankruptcy Case, then Seller agrees that the Stalking Horse shall be entitled to receive Four Million and No/100 Dollars ($4,000,000.00) as a break-up fee to reimburse the Stalking Horse for the value of its time, costs, and expenses incurred in connection with this transaction (the "Break-Up Fee"); provided, however, that if the Successful Bidder fails to close and thereafter the Sellers close the Sale with the Stalking Horse, whether as the Back-Up Bidder or otherwise, then the Stalking Horse shall not be entitled to the Break-Up Fee. The Break-Up Fee shall be

18

entitled to status as an administrative expense under Bankruptcy Code section 501(b)(1), shall be secured by a Lien on the deposit of the Alternative Purchaser or the closing proceeds in the event the transaction with the Alternative Purchaser closes and shall be paid solely and exclusively from such forfeited deposit or closing proceeds.

In the event the APA is terminated by Seller for any reason or circumstance other than termination due to the material and uncured default or breach by the Stalking Horse when Seller is not in default or breach and has satisfied all conditions to Closing, and Seller consummates a sale of the Assets to any Alternative Purchaser for a price higher than the Purchase Price within six months of such termination, then the Stalking Horse shall be entitled to payment from Seller of the Break Up Fee (to the extent of such increased Purchase Price (the "Excess Proceeds")), and the Stalking Horse's right to payment thereof shall be protected and secured with a Lien upon the proceeds of the Alternative Purchaser's forfeited deposit or Excess Proceeds and shall be paid solely and exclusively from such forfeited deposit or Excess Closing Proceeds; provided, however, that if such transaction with the Alternative Purchaser does not close and the Sellers thereafter close the sale with the Stalking Horse, then the Stalking Horse shall not be entitled to the Break-Up Fee.

The Break-Up Fee shall be inclusive of, and not in addition to, all third-party professional fees, costs and expenses incurred by the Stalking Horse in connection with the conduct of due diligence and drafting and negotiation of the APA and other documents or otherwise in connection with the Transaction, whether before or after the filing of these bankruptcy cases. Notwithstanding anything herein to the contrary, it shall be a condition precedent to the Stalking Horse's right to payment of the Break-Up Fee that the Stalking Horse shall have executed the APA.

### GOOD FAITH DEPOSITS

The Good Faith Deposits of Qualified Bidders not selected as either the Successful Bidder or Alternate Bidder shall be returned to such bidders within five (5) Business Days of the Sale Hearing.  The Good Faith Deposit of any Alternate Bidder shall be retained by the Sellers until the Alternate Bid Expiration Date and returned to the Alternate Bidder within two (2) Business Days thereafter or, if the Alternate Bid becomes the Successful Bid, shall be applied to the purchase price to be paid by the Alternate Bidder in accordance with the terms of the Alternate Bid.

### INSIDER PARTICIPATION

To the extent any insider of the Sellers or any of their affiliates, or any person or entity controlled by any insider of the Sellers or their affiliates, chooses to submit a bid at the Bid Deadline, and such bid is deemed a Qualified Bid, such insider shall be expressly prohibited from participating in any manner in the "Evaluation of Competing Bids", "Auction" (other than in his or her capacity as a Qualified Bidder), "Selection of Successful Bid" and "Sale Hearing" sections as described above.

20