

**ORDERED in the Southern District of Florida on December 29, 2013.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

IN RE:

FLORIDA GAMING CENTERS,
INC., *ET AL.*,[1]

_____ DEBTORS.   /

CHAPTER 11

CASE NO. 13-29597-RAM
(JOINTLY ADMINISTERED)

**ORDER (I)(A) AUTHORIZING AND APPROVING SALE PROCEDURES
FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS,
(B) APPROVING DEBTORS' ENTRY INTO AND FORM OF ASSET
PURCHASE AGREEMENT, INCLUDING A SETTLEMENT/BREAK-UP
FEE, (C) SCHEDULING AN AUCTION AND FINAL HEARING TO
CONSIDER APPROVAL OF THE SALE, AND (D) APPROVING FORM
AND MANNER OF NOTICE OF SALE PROCEDURES, AUCTION AND
SALE HEARING; (II) AUTHORIZING PROCEDURES FOR THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (III) APPROVING THE
COMPROMISE AND SETTLEMENT OF CLAIMS BETWEEN PARTIES TO
THE NOVEMBER 25, 2012 STOCK PURCHASE AGREEMENT**

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are: Florida Gaming Corporation (0533), Florida Gaming Miami Jai-Alai, Inc. (5893), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

This matter came before the Court on December 11, 16 and 18, 2013 (collectively, the **"Sale Procedure Hearing"**) on the Debtors', Florida Gaming Centers, Inc. and Florida Gaming Corporation's (collectively, **"Miami Jai-Alai"**) *Motion for Entry of (I) an Order (A) Authorizing and Approving Sale Procedures for the Sale of Substantially All the Debtors' Assets; (B) Approving Debtors' Entry Into and Form of Asset Purchase Agreement, Including a Break-Up Fee and Expense Reimbursement; (C) Scheduling an Auction and Final Hearing to Consider Approval of the Sale; (D) Approving Form and Manner of Notice of Sale Procedures, Auction and Sale Hearing and (II) an Order Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Approving the Compromise and Settlement of Claims Between the Parties to the November 25, 2012 Stock Purchase Agreement* (the **"Motion"**).    The Motion seeks the entry of an Order: (i) authorizing and approving (a) certain bidding and sale procedures to govern the sale (the **"Sale"**) of substantially all of Miami Jai-Alai's assets; (b) approving the asset purchase agreement by and between Miami Jai Alai and Silvermark, LLC, dated as of December 17, 2013 (the "APA"), the form of which APA was filed with the Court under a Notice of Filing [ECF No.250], (c) approving the Settlement/Break-up Fee (as defined below); (d) scheduling an auction and hearing to consider approval of the Sale; and (e) approving the form and manner of notice of the Sale Procedures,[2] Auction, and Sale Hearing; (ii) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases as provided in the APA, including authorizing and approving procedures for identification of defaults to be cured and for providing notice to contracting parties with an opportunity to object to such assumption and assignment, the Cure Amount, or both as provided in the APA; and (iii) approving the compromise and settlement of all claims arising between the parties to the November 25, 2012 Stock Purchase Agreement, as modified on the record at the Sale Procedure Hearing (the **"Settlement"**).

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion or the Sale Procedures attached hereto as Exhibit 2.

The Court having reviewed the Motion, having reviewed the APA, having determined that the relief requested in the Motion, as modified on the record at the Sale Procedure Hearing and as set forth herein, is in the best interests of Miami Jai-Alai, their estates and creditors; finding due and proper notice of the Motion having been given; and it appearing that no other or further notice is required; and upon the record of the Sale Procedure Hearing; and all of the proceedings before the Court; and after due deliberation, and sufficient cause appearing therefor,

HEREBY FINDS AND DETERMINES THAT:

A.      This Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334. Venue of these Chapter 11 cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant 28 U.S.C. § 157(b)(2)(A), (N), and (O).

B.      Miami Jai-Alai has provided due and proper notice of the Motion and the Sale Procedures Hearing, and no further notice is necessary.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Sale Procedures, the Settlement,  the Sale Notice, the Notice of Assignment and Cure, all as defined below) has been afforded to all interested parties, including but not limited to the Notice Parties (defined below).

C.      Miami Jai-Alai's proposed (i) notice of Bid Deadline, Auction and the Sale Hearing in the form attached hereto as Exhibit 1 (the **"Sale Notice"**), (ii) bidding and sale procedures (the **"Sale Procedures"**) in the form attached hereto as Exhibit 2, and (iii) the notice of assignment and assignment and cure amounts attached hereto as Exhibit 3 (the **"Notice of Assignment and Cure"**) are, and in each case substantially in the forms attached hereto, appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the matters set forth therein, including but not limited to the Sale Procedures, the Auction (as defined below), the Sale, the Sale Hearing (as defined below), objection and bid deadlines, and the assumption and assignment

of unexpired leases and executory contracts, and no other or further notice is required.

D.    The Sale Procedures, the Settlement, and the APA were negotiated in good faith and at arm's length, are fair and appropriate under the circumstances, and are in the best interests of Miami Jai-Alai's estates and all parties in interest.  In connection with the Settlement, Miami Jai Alai and Silvermark, LLC negotiated in good faith to include in the APA release provisions that, subject to effectiveness on the terms and conditions set forth in the APA, are intended to resolve any claims the Miami Jai Alai bankruptcy estates and Silvermark, LLC might otherwise have against one another in connection with the Stock Purchase Agreement November 25, 2012 (the **"SPA"**)

E.    The Court further finds that the Settlement contained in the Motion as modified on the record at the Sale Procedure Hearing is (i) fair and reasonable, (ii) falls well above the lowest point in the range of reasonableness, (iii) meets the standards for approval set forth by the Eleventh Circuit Court of Appeals in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), (iv) is proper pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and (v) therefore is in the best interests of Miami Jai Alai's estates and all creditors of Miami Jai Alai's estates.

F.    As reflected on the record at the Sale Procedure Hearing, the Settlement shall not constitute a release of any claims, or rights that William B. Collett, Sr. or William B. Collett, Jr., in their individual capacities, or any defenses they have or may have against the Silvermark or its assignee in connection with the November 25, 2012 Stock Purchase Agreement, and shall not affect any claim for indemnification or subrogation that William B. Collett, Sr. or William B. Collett, Jr. may have against the Miami Jai-Alai bankruptcy estates with respect to an claims asserted against them in connection with the November 25, 2012 Stock Purchase Agreement.

G.    As reflected in the APA, the Settlement shall not constitute a release or waiver in any manner of any claims or rights Silvermark, LLC may have

against William B. Collett, Sr. or William B. Collett, Jr. in their respective individual capacities (collectively, the **"Principals"**), including without limitation any claims or rights that arise from or are related in any way to the Guarantee and Joinder made and entered into as of November 25, 2012 by the Principals in favor of Silvermark, LLC.

H.    Miami Jai-Alai has demonstrated a compelling and sound business justification for the Court to enter this Order and thereby: (a) approve of the Sale Procedures; (b) set the dates of the Bid Deadline (as defined below), Auction and Sale Hearing; (c) establish notice procedures and approve the forms of notice; and (d) approve the Settlement; and (e) approve the procedures related to assumption and assignment of executory contracts and unexpired leases.

I.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.

J.    Entry of this Order is in the best interests of Miami Jai-Alai and the estates, creditors, interest holders, and all other parties in interest, and therefore,

### IT IS ORDERED THAT:

1.    The Motion is **GRANTED**, as provided herein.

2.    Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn or resolved are **OVERRULED** in all respects on the merits.

3.    The Settlement, as modified on the record at the Sale Procedure Hearing and as set forth herein, is **APPROVED** in all respects; provided, however, that the timing and effectiveness of the Settlement shall be governed by the terms and conditions set forth in the APA.

4.    The Sale Notice, Sale Procedures, and Notice of Assignment and Cure, attached hereto as Exhibits 1, 2, and 3, respectively, are approved in all respects and shall apply to the Sale.  Miami Jai-Alai is authorized to fill in and complete the Sale Notice and Notice of Assignment and Cure with the

information contemplated by such notices, and to make clarifying or non-material changes thereto.

5.    The Sale Procedures are fully incorporated into this Order, and Miami Jai-Alai is authorized and directed to act in accordance therewith. The failure to specifically include a reference to any particular provision of the Sale Procedures in this Order shall not diminish or impair the effectiveness of such provision. The Settlement/Break-up Fee set forth in the Sale Procedures, and the terms and conditions upon which the Settlement/Break-up Fee are to be paid as set forth in the APA and the Sale Procedures, are hereby approved. The Court approves the Settlement/Break-Up Fee because of the specific circumstances of this case.

6.    Within five (5) business days of this Order, Miami Jai-Alai shall cause the Sale Notice to be sent by first-class mail, postage prepaid, to the following: (i) all creditors of Miami Jai-Alai; (ii) all persons or entities know to Miami Jai-Alai to have asserted any security interest or other lien on any property of Miami Jai-Alai; (iii) the Florida Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering; (iv) the Environmental Protection Agency; (v) the state environmental agencies in the jurisdictions where the Debtor owns real property; (vi) the Florida Attorney General; (vii) all entities known to have expressed a bona fide interest in acquiring all or portions of any of the Miami Jai-Alai's assets; (vii) all applicable state and local taxing authorities or recording offices; (viii) the Office of the United States Trustee; (ix) the Internal Revenue Service; (x) the Securities & Exchange Commission; (xi) the United States Attorney General/Antitrust Division of Department of Justice; (xii) all of Miami Jai-Alai's insurers; (xiii) all non-Debtor parties to contracts or leases (executory or other); (xiv) all parties to any litigation proceedings involving Miami Jai-Alai; (xv) all other known parties-in-interest in these Chapter 11 cases; (xvi) all parties that have executed a confidentiality agreement in connection with Miami Jai-Alai's marketing of its assets during these Chapter 11 cases; and (xvii) the Notice Parties (defined below). The Notice Parties are: (a) Counsel to Miami Jai-Alai: Luis

Salazar, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134; (b) counsel to ABC: Dennis M. Twomey, Sidley Austin, LLP, One South Dearborn Street, Chicago, Illinois 60603; (c) counsel to the Committee: Glenn D. Moses and Paul J. Battista, Genovese Joblove & Battista, P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131; and (d) all persons who have filed a request for notice under Bankruptcy Rule 2002.

7.      To alert all parties who are not known to possess a claim against Miami Jai-Alai, on or about the same date, Miami Jai-Alai is authorized to, but not directed to publish notice of the Sale, in a form determined by Miami Jai-Alai in the National Edition of The Wall Street Journal, or such other publication as Miami Jai-Alai may determine is effective to convey such notice.

8.      All bids for the Assets must be submitted pursuant to the terms and conditions forth in with the Sale Procedures no later than March 19, 2014 at 5:00 p.m. (prevailing Eastern time) (the **"Bid Deadline"**).

9.      For a bid to constitute a Qualified Bid (as defined in the Sale Procedures), it must be received by the Bid Deadline and otherwise comply with the applicable provisions governing Qualified Bids set forth in the Sale Procedures.

10.     If Miami Jai-Alai does not receive any Qualified Bids, other than the APA with Silvermark, LLC, and ABC does not provide a Credit Bid Notification, the Auction shall be cancelled and Miami Jai-Alai shall report the same to the Bankruptcy Court and seek approval of the Sale to Silvermark, LLC pursuant to the APA.

11.     In the event Miami Jai-Alai receives, on or before the Bid Deadline, one or more Qualified Bids (including any credit bid by ABC), in addition to the APA, Miami Jai-Alai shall conduct an auction (the **"Auction"**) to determine the highest and best offer for the Sale.  The Auction shall commence at Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134, on March 25, 2014  at 10:00 a.m. (prevailing Eastern Time), or such later time on

such day or such other place as Miami Jai-Alai shall notify all Qualified Bidders. The Auction shall be conducted in accordance with the Sale Procedures.

12.      On March 26, 2014, at 10:00 a.m. (Eastern Time), a Sale Hearing to approve the Sale to the Successful Bidder shall be held before the Honorable Robert A. Mark in the United States Bankruptcy Court for the Southern District of Florida, Claude Pepper Federal Building, 51 SW First Avenue, Room 1406, Miami, Florida 33130, at which time Miami Jai-Alai will seek entry of an order (i) authorizing the Sale to the Successful Bidder or Stalking Horse; (ii) authorizing and approving the APA or other asset purchase agreement executed by the Successful Bidder other than the Stalking Horse (as appropriate); (iii) approving the assumption and assignment of executory contracts and unexpired leases; and (iv) granting related relief.

13.      Objections to the transactions contemplated by the Sale (a **"Sale Objection"**) shall (i) be filed with this Court and served on the Notice Parties, so as to be received on or before March 15, 2014 (the **"Sale Objection Deadline"**), at noon (prevailing Eastern Time); be in writing and conform to the Federal Rules of Bankruptcy Procedure and the Local Rules the Bankruptcy Court; and (iii) set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against Miami Jai-Alai's estate or properties, the basis for objection and the specific grounds therefore.

14.      The failure to file and serve a Sale Objection by the Sale Objection Deadline in the manner provided herein shall be a bar to the assertion thereof at the Sale Hearing or anytime thereafter.

15.      Not later than seven (7) calendar days prior to the Sale Objection Deadline, Miami Jai-Alai shall cause the Notice of Assignment and Cure to be served by overnight courier or by hand on the counterparties to each executory contract and unexpired lease that are to be assumed and assigned to Successful Bidder, if applicable (the **"Assigned Contracts"**). Miami Jai-Alai shall make a good faith effort to develop assumption procedures for those executory contracts to which Miami-Dade County is a counterparty such that Miami-Dade County

shall have sufficient time to determine whether it consents to such an assignment; provided, however, that nothing in this Order shall be deemed a waiver of any rights Miami Jai-Alai may have to assume and assign any such contract under Section 365, with or without such consent.

16.    The Notice of Assignment and Cure will include (a) the title of the Assigned Contract to be assumed, (b) the name of the counterparty to the Assigned Contract, (c) any applicable cure amounts as determined by Miami Jai-Alai, (d) that the assignee shall be  the Successful Bidder, and (e) the deadline by which any counterparty to the Assigned Contract must object.

17.    Any objection to the assumption and/or assignment of any Assigned Contract identified on a Notice of Assignment and Cure, including to the cure amount set forth on such notice (or with respect to the provision of adequate assurance of future performance), must be in writing, filed with the Court, and be actually received by the Notice Parties no later than March 24, 2014, at noon (prevailing Eastern Time) (the **"Assignment and Cure Objection Deadline"**), and must set forth (a) a specific default under the Assigned Contract, (b) if applicable, claim a specific monetary amount that differs from the amount, if any, specified by Miami Jai-Alai in such Notice of Assignment of Cure to cure all defaults, and (c) the basis for the objection.

18.    If no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, then the assumption and assignment of that Assigned Contract will be authorized pursuant to Bankruptcy Code Section 365 and the cure amount, if any, set forth on the Notice of Assignment and Cure shall be binding upon the non-Debtor party to the Assigned Contract for all purposes and will constitute a final determination (a) that the Assigned Contract may be assumed by Miami Jai-Alai and assigned to the Successful Bidder (or Alternate Bidder), and (b) of the total cure amount required to be paid to the non-Debtor party (or parties) to the Assigned Contract in connection with any potential assignment of such Assigned Contract to the Successful Bidder (or Alternate Bidder).  In addition, if no objection is received by

the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, each non-Debtor party to such Assigned Contract shall be deemed to have consented, and shall be forever barred from objecting, to the assumption and assignment of such Assigned Contract on any grounds, and the cure amount, if any, set forth in the Notice of Assignment and Cure, including, without limitation, the right to assert any additional cure and other amounts with respect to the Assigned Contracts arising or relating to any period prior to such assumption or assignment or the right to demand adequate assurance of future performance. Furthermore, if no objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of an Assigned Contract, the Successful Bidder shall enjoy all of the rights and benefits under such Assigned Contract acquired by such Successful Bidder without the necessity of obtaining any party's written consent to Miami Jai-Alai's assumption and assignment of such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment.

19.    If a timely objection is received to the assumption and assignment of an Assigned Contract and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing or, with the agreement of Miami Jai-Alai and the Successful Bidder at a later date set by the Court.  The pendency of a dispute relating to the cure amount will not prevent or delay the assumption and assignment of any Assigned Contract, and Miami Jai-Alai may proceed with the assumption and assignment of the Assigned Contract provided that it or the Successful Bidder (whichever part is responsible for the payment of cure amounts), retain sufficient funds to cure all defaults claimed by the non-Debtor counterparty, and resolve the dispute regarding the cure amount at a later date as set by the Court.

20.    The Settlement shall not constitute a release of any claims, or rights that William B. Collett, Sr. or William B. Collett, Jr., in their individual capacity, or any defenses they have or may have against the Silvermark or its

assignee in connection with the November 25, 2012 Stock Purchase Agreement, and shall not affect any claim for indemnification or subrogation that William B. Collett, Sr. or William B. Collett, Jr. may have against the Miami Jai-Alai estates with respect to an claims asserted against them in connection with the November 25, 2012 Stock Purchase Agreement.

21.     The Settlement shall not constitute a release or waiver in any manner of any claims or rights Silvermark, LLC may have against William B. Collett, Sr. or William B. Collett, Jr. in their respective individual capacities (collectively, the **"Principals"**), including without limitation any claims or rights that arise from or are related in any way to the Guarantee and Joinder made and entered into as of November 25, 2012 by the Principals in favor of Silvermark, LLC.

22.     The Debtors shall provide Silvermark, LLC with the proposed Exhibits and Schedules to the APA by December 24, 2013, and shall file a fully executed APA, with all Exhibits and Schedules, by December 30, 2013.

23.     Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

24.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

25.     To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 cases, the terms of this Order shall govern.

26.     The Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.

# # #

Submitted by

Luis Salazar, Esq.
**SALAZAR JACKSON, LLP**
One Biscayne Tower, Suite 3760
Two South Biscayne Boulevard
Miami, FL 33131
Telephone:    (305) 374-4848
Facsimile:    (305) 397-1021
Email: salazar@salazarjackson.com

*(Attorney Salazar shall serve a copy of this order upon all interested parties upon receipt and file a certificate of service)*

# Exhibit "1"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

IN RE:                                      CHAPTER 11

                                            CASE NO. 13-29597-RAM
FLORIDA GAMING CENTERS,                     (JOINTLY ADMINISTERED)
INC., ET AL.,[1]
                        DEBTORS.    /

## NOTICE OF BID DEADLINE, AUCTION, AND SALE HEARING IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

**NOTICE IS HEREBY GIVEN**, as follows:

1.      On November 25, 2013, Debtors, Florida Gaming Centers, Inc. and Florida Gaming Corporation (the **"Debtors"**), filed a motion seeking approval of, and authorization for, among other things (i) the bidding and sale procedures (the **"Sale Procedures"**) to be used in connection with the sale (the **"Sale"**) of substantially all of the Debtor's assets; (ii) the dates of the Bid Deadline, Auction (if needed) and Sale Hearing (all as defined below), (iii) entry into and form of asset purchase agreement, (iv) payment of a breakup fee; (v) the form and manner of notice of the Sale Procedures, Auction, and Sale Hearing; (vi) approving the compromise and settlement of all claims arising between the parties to the November 25, 2012 Stock Purchase Agreement; and (vii) related relief (the **"Sale Procedures Motion"**), on the docket of the Debtors' chapter 11 cases, currently pending in United States Bankruptcy Court for the Southern District of Florida (the **"Bankruptcy Court"**).    By Order dated December __, 2013, the Bankruptcy Court approved the Sale Procedures and granted the Sale Procedures Motion in accordance with such order (the **"Sale Procedures Order"**).    A copy of the Sale Procedures Order, together with the Sale Procedures, is enclosed

---

[1] The Debtors in these chapter 11 cases and the last four digits of their federal tax identification number are: Florida Gaming Corporation (0533), Florida Gaming Miami Jai-Alai, Inc. (5893), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

herewith.  In the event of any inconsistency between the Sale Procedures Order (or the Sale Procedures) and this Notice, the Sale Procedures Order (or the Sale Procedures) shall control.

2.      The Debtors entered into an asset purchase agreement on terms they deemed reasonable, with Silvermark, LLC (the **"Stalking Horse"**), for the sale, free and clear of all liens, claims, liabilities, and other interests, to the maximum extent permitted by section 363 of the Bankruptcy Code, of substantially all assets (the "Assets") of the Debtors (the **"Stalking Horse APA"**).   As set forth in the Sale Procedures, the sale of the Debtors' Assets remains subject to competing offers from any prospective qualified bidder.

3.      All interested parties are invited to become a Qualified Bidder (as defined in the Sale Procedures Order) and to make offers to purchase the Debtors' Assets in accordance with the terms of the Sale Procedures and the Sale Procedures Order.  The deadline to submit competing bids is March 19, 2014 at 5:00 p.m. (prevailing Eastern Time).

4.      Interested bidders requesting information about the qualification process, including a description of the Assets, the form of the asset purchase agreement, and/or information in connection with due diligence should contact:

**Guggenheim Securities, LLC**
**330 Madison Ave**
**New York, NY 10017**
**Attention:**

| | |
|---|---|
| James Decker | Alexander Fisch |
| 212-518-9939 | 212-518-9940 |
| Jim.Decker@guggenheimpartners.com | Alex.Fisch@guggenheimpartners.com |

5.      Requests by all other parties for a copy of the Stalking Horse APA, the Sale Procedures or for any other information concerning the Sale can be obtained by written request to counsel to the Debtors, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134, Attention: Luis Salazar.

6.      Pursuant to the Sale Procedures Order, the Debtor may conduct an auction (the **"Auction"**) for the sale of the Assets at the offices of Salazar

Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134, commencing on March 25, 2014 at 10:00 a.m. (prevailing Eastern Time), or at such other place and time as the Debtors shall notify all Qualified Bidders. Only the authorized representatives of each of the Qualified Bidders shall be eligible to participate in the Auction.

7.     At a hearing on March 26, 2014 at 10:00 a.m. (prevailing Eastern time) or such other time as the Bankruptcy Court shall determine (the **"Sale Hearing"**), the Debtors intend to seek the Bankruptcy Court's approval of the sale of the Debtors' Assets to the qualified bidder who submits the highest, or otherwise best, offer (the **"Successful Bidder"**) or, if there is no Auction pursuant to the Sale Procedures, then to the Stalking Horse pursuant to any Stalking Horse APA. The Sale Hearing will be held before the Honorable Robert A. Mark in the United States Bankruptcy Court for the Southern District of Florida, Claude Pepper Federal Building, 51 SW First Avenue, Room 1406, Miami, Florida 33130.

8.     At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of these Chapter 11 cases. Objections, if any, to the sale of the Assets or the assumption and assignment of executory contracts (a **"Sale Objection"**) pursuant to the terms of the asset purchase agreement reached with the Successful Bidder or, if applicable, the Stalking Horse APA with the  Stalking Horse, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of Florida, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estates or properties, the basis for the objection and the specific grounds therefor, and shall be filed with the Bankruptcy Court and be served upon the following parties, so as to be actually received on or before March 15, 2014 at 5:00 p.m. (Prevailing Eastern Time) (the **"Objection Deadline"**): (a) counsel to Miami Jai-Alai: Luis Salazar, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables,

Florida 33134; (b) counsel to ABC: Dennis M. Twomey, Sidley Austin, LLP, One South Dearborn, Chicago, Illinois 60603; (c) counsel to the Committee: Glenn D. Moses and Paul J. Battista, Genovese Joblove & Battista, P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131; and (d) all persons who have filed a request for notice under Bankruptcy Rule 2002. On or before the date that is seven (7) calendar days before the Objection Deadline, the Debtors will send a separate notice to counterparties to executory contracts and unexpired leases that the Debtors propose to be assumed and assigned to the Successful Bidder (or the Stalking Horse, if applicable).

9.      This notice is qualified in its entirety by the Sale Procedures Order and the Sale Procedures, and all persons and entities are urged to read the hose filing and the provisions thereof carefully.

**PLEASE TAKE NOTICE THAT THE FAILURE TO ABIDE BY THE SALES PROCEDURES AND DEADLINES SET FORTH IN THE SALE PROCEDURES ORDER MAY RESULT IN THE DISQUALIFICATION OF A BID AND THE FAILURE OF THE BANKRUPTCY COURT TO CONSIDER A SALE OBJECTION.**

Dated: December 23, 2013          Respectfully submitted,

SALAZAR JACKSON, LLP
*Counsel for Debtors.*
Two South Biscayne Boulevard, Suite 3760
Miami, Florida 33131
Telephone: (305) 374-4848
Facsimile: (305) 397-1021
Email: Salazar@SalazarJackson.com
Email: Honaker@SalazarJackson.com

By:_____
          Luis Salazar
          Florida Bar No. 147788
          Aaron P. Honaker
          Florida Bar No. 48749

# Exhibit "2"

## SALE PROCEDURES

In order to obtain the highest and best offer for the Assets (as defined below), the Sellers (as defined below) propose the bidding and sale procedures (the **"Sale Procedures"**) set forth below to be employed with respect to the proposed sale of all or substantially all of the assets of Florida Gaming Centers, Inc. (**"Centers"**) and certain assets of Florida Gaming Corporation ("**Corp.**", together with Centers, the "**Sellers**"), along with the assumption of certain associated liabilities (collectively, the **"Sale"**) as set forth in the asset purchase agreement (the "**APA**") to be entered into by and between the Sellers and Silvermark LLC (the "**Stalking Horse**"), or alternatively as set forth in the relevant sale agreements with respect to a Successful Bidder (as defined below) other than the Stalking Horse.  These Sales Procedures have been developed by the Sellers, the Joint Official Committee of Unsecured Creditors (the "**Committee**") and ABC Funding, LLC ("**ABC**"), as Agent for the Lenders under the Credit Agreement (as defined below), or as may be provided by later order of the Bankruptcy Court (as defined below).  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA.

The APA shall set forth the terms and conditions under which the Stalking Horse will acquire the Assets.  The transactions contemplated by the APA and any ancillary agreements discussed therein (collectively, the **"Transaction"**) shall be subject to competitive bidding as set forth herein.  In addition, the transfer of the Sellers' rights, title and interests in and to the Assets shall, except for certain assumed liabilities, be free and clear of the Claims and Interests (as defined below) and shall be subject to approval by the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**") pursuant to Sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the **"Bankruptcy Code"**).

The Sale Procedures contemplate the following timetable:

- Entry of an order authorizing and approving the Sale Procedures Motion (the "**Sale Procedures Order**") by December 19, 2013.

- Bid Deadline: 5:00 pm Eastern Time on March 19, 2014.

- Auction (if necessary): March 25, 2014.

- Sale Hearing (as defined below): March 26, 2014 at 10:00 a.m., at 51 S. W. 1st Ave. Room 1404 Miami, FL 33130.

**Any interested potential bidder should contact the Sellers' investment banker, Guggenheim Securities, LLC ("Guggenheim") as soon as practical:**

**Guggenheim Securities, LLC**
**330 Madison Ave**
**New York, NY 10017**
**Attention:**

James Decker
212-518-9939
Jim.Decker@guggenheimpartners.com

Alexander Fisch
212-518-9940
Alex.Fisch@guggenheimpartners.com

### BIDDING PROCESS

The Sale Procedures set forth herein describe, among other things, the Assets available for sale, the manner in which prospective bidders may gain access to or continue to have access to Diligence Materials (as defined below), the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder and the Alternate Bidder (as defined below), and the Bankruptcy Court's approval thereof (collectively, the **"Bidding Process"**).

### ASSETS TO BE SOLD

Centers proposes to sell all (or substantially all) of its assets, and Corp. proposes to sell certain of its assets, on the terms and conditions set forth in the APA (the **"Assets"**).  Further information and due diligence materials regarding the Assets (the "**Diligence Materials**") will be made available only to those other prospective purchasers that execute a confidentiality agreement with the Sellers, in form and substance reasonably satisfactory to the Sellers, after consultation with the Committee and ABC; provided, however, that any confidentiality agreement to be signed by ABC in its capacity as potential credit bidder shall not (a) be any more restrictive than the confidentiality provisions set forth in the Credit Agreement, or (b) prohibit any discussions, offer or agreement to provide financing to a Potential Bidder or Qualified Bidder in connection with the Sale, subject to the provisions of the "Financing Notification" section below.

### "AS IS, WHERE IS"

The sale of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates, except, with respect to a Successful Bidder (as defined below), to the extent set forth in the relevant sale agreements of such Successful Bidder.

### FREE OF ANY AND ALL CLAIMS AND INTERESTS

All of the rights, title and interests of the Sellers in and to the Assets, or any portion thereof, to be acquired by the Stalking Horse or the Successful Bidder will be acquired free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the **"Claims and Interests"**) pursuant to Sections 363 and 365 of the Bankruptcy Code, such Claims and Interests shall attach to the proceeds of the Sale (without prejudice to any claims or causes of action regarding the extent, priority, validity

3

and/or enforceability thereof), subject to further order of the Bankruptcy Court, including with respect to or regarding the extent, priority, validity, and/or enforceability of such Claims and Interests.

## PARTICIPATION REQUIREMENTS

In order to participate in the Bidding Process, each person or entity who wishes to participate in the Bidding Process other than the Stalking Horse and ABC (each, a **"Potential Bidder"**) must, prior to the Bid Deadline, deliver to the Notice Parties (as defined below) at the addresses provided below:

(a)     an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder), to be prepared by the Sellers, in form and substance reasonably satisfactory to the Sellers, after consultation with the Committee and ABC and the rights of the Sellers thereunder shall inure to the benefit of the Stalking Horse, or other Successful Bidder, following the close of the Sale; and

(b)     full description of the Potential Bidder and current financial information for the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current financial information for the equity holders and/or guarantors  of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Sellers and their respective financial advisors, in consultation with the Committee and ABC, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a potential transaction.

A Potential Bidder that delivers the information described above, and that the Sellers determine, in their reasonable business judgment and in consultation

with ABC and the Committee, is likely to be able to consummate a potential transaction will be deemed a **"Qualified Bidder"**.  After the Sellers notify the Potential Bidder (as promptly as practicable) that it is a Qualified Bidder, the Sellers will provide the APA to the Qualified Bidder in Microsoft Word format and allow the Qualified Bidder to begin or continue to conduct due diligence as provided in the following paragraph with respect to the Assets.  For the avoidance of doubt, the Stalking Horse and ABC (subject to the credit bidding procedures set forth herein) shall be deemed Qualified Bidders for purposes of these Sale Procedures.

## DUE DILIGENCE

The Sellers may, in their reasonable business judgment, and subject to competitive and other business considerations, afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed a confidentiality agreement with the Sellers access to such Diligence Materials as the Sellers deem appropriate.  Diligence Materials and access may include management presentations as may be scheduled by the Sellers, access to physical or electronic data rooms, reasonable on-site inspections, and other matters which a Qualified Bidder may reasonably request and as to which the Sellers agree, in their reasonable business judgment.

The Sellers, with the assistance of Guggenheim, will coordinate all reasonable requests for Diligence Materials from Qualified Bidders.  No additional due diligence for any party other than the Stalking Horse or a Qualified Bidder who has submitted a Qualified Bid will continue after the Bid Deadline (as defined below).  Other than as provided herein, neither the Sellers nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any Diligence Materials or other information relating to the Assets to any person other than to a Qualified Bidder.  For the avoidance of doubt, the Stalking Horse, ABC, and the Committee shall be provided prompt access to all Diligence Materials,

including without limitation any management presentations, reasonable on-site inspections, and other information provided to any Qualified Bidder that were not previously made available to them. In addition, (a) the Sellers and Guggenheim shall consult with the Committee and ABC and their respective advisors regarding materials produced in connection with the Sale, including without limitation the form of confidentiality agreement and any marketing materials or information memoranda or "teasers", and (b) Guggenheim shall hold weekly Sale update conferences with the financial advisors to the Committee and ABC.

### Bid Deadline

A Qualified Bidder that desires to make a bid will deliver written copies of its bid **SO AS TO BE RECEIVED NO LATER THAN MARCH 19, 2014 AT 5:00 P.M. EASTERN TIME** (the **"Bid Deadline"**) to the following parties (collectively, the **"Notice Parties"**): (i) counsel to Sellers: Luis Salazar, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134, salazar@salazarjackson.com; (ii) investment banker to Sellers: Jim Decker, Guggenheim Securities, LLC, 330 Madison Avenue, New York, New York 10017, Jim.Decker@guggenheimpartners.com (iii) counsel to ABC: Dennis M. Twomey, Sidley Austin, LLP, One South Dearborn, Chicago, Illinois 60603, dtwomey@Sidley.com; and (iv) counsel to Committee: Glenn D. Moses and Paul J. Battista, Genovese Joblove & Battista, P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131 pbattista@gjb-law.com.  The Bid Deadline can be changed subject to (a) order of the Bankruptcy Court and (b) the agreement of the Sellers, the Committee, and ABC and the Stalking Horse.

### Qualified Bid

A bid submitted by a Qualified Bidder will be considered a Qualified Bid only if the bid is submitted in the time and manner provided in the previous section and complies with all of the following (a **"Qualified Bid"**); provided, however, that Qualified Bidders are not required to provide the information described in

clause (d) below to ABC (which information shall be provided to ABC by the Debtors if ABC does not provide a Notification (as defined below); underlined provided, further, that the Sellers may, in the reasonable exercise of their business judgment, waive one or more of the following requirements, after consultation with the Committee and ABC:

(a)     is in writing and offers to purchase all, or substantially all, of the Assets upon the terms and conditions substantially as set forth in the APA for value to Sellers which, in Sellers' reasonable business judgment, after consultation with the Committee and ABC, is greater than or equal to the sum of the value offered under the APA of the Purchase Price, plus (i) the Assumed Liabilities, plus (ii) the amount of the Settlement/Break-Up Fee (as defined in the APA), plus (iii) $250,000, subject in all events to the same or better other terms and conditions as are contained in the APA;

(b)     it includes a letter stating that the Qualified Bidder's offer is and shall remain irrevocable until the selection of the Successful Bidder and, if applicable, the Alternate Bidder (as defined below), provided that if such Qualified Bidder is selected as the Successful Bidder or the Alternate Bidder pursuant to these Sale Procedures, then such Qualified Bidder agrees that its bid shall remain open and irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Alternate Bidder, and (ii) (x) with respect to the Successful Bidder only, the date on which the obligations under either the APA (if the Successful Bidder is the Stalking Horse) or the respective purchase and sale agreements with the Qualified Bidder who is the Successful Bidder are terminated in accordance with the terms thereof (the "**APA Termination Date**"), subject in all events to the rights of the parties thereunder arising from such termination, and (y) with respect to the Alternate Bidder only, the Alternate Bid Expiration Date (as defined below);

(c)     it includes (i) a duly authorized and executed APA (as modified by the Qualified Bidder to reflect the terms and conditions of its bid), including the purchase price for the Assets expressed in U.S. Dollars (the **"Purchase Price"**), together with all exhibits and schedules thereto, including, to the extent required by the terms and conditions of such bid, the other ancillary agreements as described in the APA and such additional ancillary agreements as may be required by the Qualified Bidder with all exhibits and schedules thereto, and (ii) redlines of (x) such APA to show those amendments and modifications to the APA (**"Marked APA"**) and (y) all other such materials and ancillary agreements (the **"Marked Ancillary Agreements"**, together with the Marked APA, the "**Marked Agreements**");

(d)     it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Sellers, after consultation with ABC and the Committee, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreements;

(e)     it includes written evidence demonstrating its (and its principals') eligibility for those gaming licenses, permits, or regulatory approvals necessary to allow it to operate the Assets, together with evidence that it has timely commenced and is seeking any such necessary licenses, permits, or regulatory approval, that will allow the Sellers, after consultation with ABC and the Committee, to make a reasonable determination as to the Qualified Bidder's ability to timely complete the licensing, permitting, and/or regulatory approval processes;

(f)     it is not conditioned on (i) the outcome of unperformed due diligence by the Qualified Bidder (and includes an acknowledgement and

8

representation that the Qualified Bidder has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer) or (ii) obtaining financing;

(g)     it fully discloses the identity of each entity that will be bidding for the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation.

(h)     it includes an acknowledgment and representation that the Qualified Bidder will assume the Sellers' obligations under the executory contracts and unexpired leases proposed to be assumed and assigned pursuant to the Marked Agreements, contains full details of the Qualified Bidder's proposal for the treatment of related cure costs; and it identifies with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing;

(i)     it includes an acknowledgement and representation that the Qualified Bidder:  (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; and (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Marked Agreements; and (iii) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

(j)     it includes evidence, in form and substance reasonably satisfactory to the Sellers, in consultation with ABC and the Committee, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the transaction pursuant to the Marked Agreements;

(k)    it is accompanied by a good faith cash deposit (each, a **"Good Faith Deposit"**) in an amount equal to 5% of the total Purchase Price to be held in escrow by counsel to the Sellers subject to the terms of the APA and otherwise to be dealt with as provided for under "Good Faith Deposit" herein; and

(l)    it includes evidence of the Qualified Bidder's ability to comply with Section 365 of the U.S. Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Sellers and assigned or subleased to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases.

Notwithstanding the foregoing, the Stalking Horse and ABC (subject to the credit bidding procedures set forth herein) will be deemed to be Qualified Bidders, and the APA and any credit bid complying with the provisions set forth in the section titled "Credit Bidding" herein will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction and the Sale.

### EVALUATION OF COMPETING BIDS

The Sellers shall, after consulting with ABC (unless ABC has given a Notification (as defined below)) and the Committee, evaluate bids on various grounds including, but not limited to, any delay, additional risks (including closing risks) and added costs to the Sellers' estates, including any additional cure payments attributable to, or rejection damages claims against, the Sellers. After consultation with ABC and the Committee, the Sellers shall make a determination, in their reasonable discretion, whether a bid (other than any credit bid by ABC pursuant to the credit bidding procedures set forth herein or the Stalking Horse bid embodied by the APA) is or is not a Qualified Bid; provided, however, that in order to constitute a Qualified Bid, a bid must, in the Sellers' business judgment, comply

10

with all the requirements set forth in the "Qualified Bid" section above. The Sellers shall notify each Qualified Bidder in writing as to whether its bid has been determined to be a Qualified Bid at least 48 hours prior to the commencement of the Auction.

### CREDIT BIDDING

Only ABC (or its nominee or designee) shall be permitted to submit a credit bid at the Auction, and ABC will notify the Sellers, the Committee and the Stalking Horse of its intention to potentially credit bid (a **"Credit Bid Notification"**) no later than the Bid Deadline. To the extent ABC delivers a Credit Bid Notification, it shall not receive the consultation rights described above in the "Evaluation of Competing Bids" section or below in the "Auction", "Selection of Successful Bid" or "Sale Hearing" sections.

ABC (or its nominee or designee) shall be permitted to credit bid the total allowed amount of its secured claim outstanding at the time of the Auction under that certain Credit Agreement dated April 25, 2011 (the "**Credit Agreement**") and related documents which constitute "Obligations" under the Credit Agreement (the "**ABC Claim**"), unless otherwise provided herein or pursuant to further Bankruptcy Court order. The Debtors (in consultation with the Committee) and ABC shall use their best efforts to cause the allowed amount of the ABC Claim to be determined prior to the Bid Deadline by order of the Bankruptcy Court, including pursuant to the claim determination scheduling stipulation attached as an exhibit to the Sale Procedures Order, which schedule shall be approved by the Bankruptcy Court. In the unanticipated event that the ABC Claim is not fixed pursuant to order of the Bankruptcy Court prior to the Bid Deadline, ABC shall be permitted to credit bid its entire asserted secured claim amount, subject to further order of the Bankruptcy Court.

In the event ABC (or its nominee or designee) submits a credit bid at the Auction, then it shall, prior to the Auction, comply with the requirements set forth

in the "Qualified Bid" section above other than clauses (d), (k) and (l); provided, that in the event that ABC (or its nominee or designee) submits a credit bid at the Auction, it shall provide in its Marked APA for the payment in cash of the Settlement/Break-Up Fee to Stalking Horse to the extent the Settlement/Break-Up Fee is required to be paid to the Stalking Horse pursuant to the terms of the these Sale Procedures.

## FINANCING NOTIFICATION

If ABC intends to provide financing to any Qualified Bidder in connection with such Qualified Bidder's Qualified Bid, ABC will notify the Sellers, the Committee and the Stalking Horse of its intention to potentially provide such financing (a **"Financing Notification"**; either a Financing Notification or a Credit Bid Notification shall be a "**Notification**") no later than the earlier of (a) entry by ABC into a commitment letter or other binding commitment to provide such financing, and (b) the Bid Deadline.  In connection with providing a Financing Notification, ABC will provide the Sellers and the Committee, on an advisors' eyes only, confidential basis, with a description of the terms of such financing.  To the extent ABC delivers a Financing Notification, it shall not receive the consultation rights described above in the "Evaluation of Competing Bids" section or below in the "Auction", "Selection of Successful Bid" or "Sale Hearing" sections.  For the avoidance of doubt, a mere offer or agreement to provide financing by ABC to a Qualified Bidder in connection with the Sale shall not alone be deemed to be engagement in collusion, subject to the requirements of this section.

## NO QUALIFIED BIDS

If the Sellers do not receive any Qualified Bids other than the APA and ABC does not provide a Credit Bid Notification, the Auction shall be cancelled and the Sellers shall report the same to the Bankruptcy Court and seek approval of the Transaction.

## AUCTION

If the Sellers receive one or more Qualified Bids in addition to the APA with the Stalking Horse, they will conduct an auction (the **"Auction"**) of the Assets at 10:00 a.m. on March 25, 2014 at the offices of the Sellers' counsel, Salazar Jackson, LLP, or such other location as shall be timely communicated to all entities entitled to attend the Auction.  The Auction shall run in accordance with the following procedures:

(a)    Only the Sellers, the Stalking Horse, ABC, the US Trustee, and the Committee and any other Qualified Bidder (and the representatives and advisors to each of the foregoing) that has submitted a Qualified Bid, or such other persons or entities that the Sellers reasonably determine, in their discretion, shall be permitted to attend the Auction in person, and only Qualified Bidders (including the Stalking Horse and ABC, to the extent that ABC provides a Credit Bid Notification) will be entitled to bid at the Auction.

(b)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale; however, that for the avoidance of doubt, the mere offer or agreement to provide financing by ABC or any Lender under the Credit Agreement to a Potential Bidder or Qualified Bidder in connection with the Sale shall not alone be deemed to be engagement in collusion.

(c)    At least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction and (ii) if such bidder is selected as an

13

Alternate Bidder (as defined below), the Alternate Bid Expiration Date. Prior to the Auction, the Sellers will notify the Stalking Horse and all other Qualified Bidders of each Qualified Bidder and which Qualified Bid it believes, in its reasonable business judgment, after consultation with ABC and the Committee, is the highest or otherwise best offer (the **"Starting Bid"**).

(d)    All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid (including any agreements with any creditors of, or contract parties with, the Sellers) will be fully disclosed to all other Qualified Bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(e)    Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a **"Subsequent Bid"**) and (ii) the Sellers determine, after consultation with ABC and the Committee, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).  The Auction may include individual negotiations by the Sellers with Qualified Bidders.  Each incremental bid at the Auction shall provide net value to the estate of (i) at least $250,000 over the Starting Bid, or (ii)(a) $250,000 over the Leading Bid if the Leading Bid is not that of the Stalking Horse, and (ii)(b) an amount equal to the Settlement/Break-Up

14

Fee plus $250,000 if the Leading Bid is from the Stalking Horse. After the first round of bidding and between each subsequent round of bidding, the Sellers shall announce the bid (and at the option of the Sellers, the value of such bid) that it believes (after consultation with the ABC and the Committee) to be the highest or otherwise best offer (the **"Leading Bid"**). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.  Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Stalking Horse), the Sellers will give effect to the Settlement/Break-Up Fee that may be payable to the Stalking Horse under the APA as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Sellers and the effect on the Sellers and their estates of any additional rejection damage claims and/or cure claims..

(f)     For the purpose of evaluating Subsequent Bids, the Sellers may require a Qualified Bidder submitting a Subsequent Bid to submit to the Sellers, the Committee and ABC, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Sellers) demonstrating such Qualified Bidder's ability to close the proposed transaction at the amount of the Subsequent Bid.   The Sellers, in consultation with the Committee and ABC, may adopt rules for the Auction at or prior to the Auction that will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Sale Procedures Order; provided that the Sale Procedures may not be modified such that they limit ABC's right to credit bid.

The Sellers may, in consultation with ABC and the Committee, employ and announce at the Auction additional procedural rules that are reasonable under the

circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (a) not inconsistent with these Sale Procedures, the Sale Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any other order of the Bankruptcy Court entered in connection herewith and (b) disclosed to each Qualified Bidder; provided that additional procedural rules may not be added such that they limit ABC's right to credit bid. The Sellers, in consultation with the Committee and ABC, shall have the right to reject any bid made at the Auction that does not and is not in strict conformity with these Sale Procedures. Any such non-conforming bid, at the election of the Sellers as provided herein, shall not constitute a bid for purposes of the Auction or the determination of the Successful Bid or Alternate Bid hereunder.

### SELECTION OF SUCCESSFUL BID

Prior to the conclusion of the Auction, the Sellers, in consultation with ABC and the Committee will (a) review each Qualified Bid that is either the Leading Bid or submitted subsequent to and as an improvement to the submission of the Leading Bid (except in the event that there is no Leading Bid, in which case the Qualified Bids to be considered will be the Starting Bid and any bids submitted subsequent and as an improvement to the Starting Bid) on the basis of financial and contractual terms and the factors relevant to the sale process, including, among other things, the proposed revisions to the transaction documents, the counterparties to such transactions, the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to be created by such bid in relation to other bids (including the added costs of any cure or rejection damages), other factors affecting the speed, certainty and value of the Sale (including any regulatory approvals or other requirements or conditions required to close the proposed transaction), the Assets included or excluded from the bid, the transition services required from the Sellers post-closing and any related restructuring costs, and the

16

likelihood and timing of consummating such transaction, each as determined by the Sellers, in consultation with ABC and the Committee, (b) identify the highest or otherwise best offer for the Assets received at the Auction (such bid, the **"Successful Bid"** and the bidder making such bid, the **"Successful Bidder"**), and (c) communicate to Qualified Bidders the identity of the Successful Bidder, the Alternate Bidder, if any, and the details of the Successful Bid and Alternate Bid (as defined below), if any. The determination of the Successful Bid and Alternate Bid by the Sellers, after consultation with ABC and the Committee, at the conclusion of the Auction, shall be final, subject to approval by the Bankruptcy Court, and the Auction shall be closed and concluded upon such Court approval.

The Sellers will sell the Assets to the Successful Bidder pursuant to the terms of the Successful Bid (or, under certain circumstances described herein, the Alternate Bidder) upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing (as defined below).

### SALE HEARING

The hearing to authorize the Sellers to consummate the agreements with respect to the Successful Bid (the **"Sale Hearing"**) will be held before the Honorable Robert A. Mark in the United States Bankruptcy Court for the Southern District of Florida, located in Miami, Florida, on a date to be scheduled by the court and currently proposed as March 26, 2014, at 10:00 a.m. 51 S. W. 1st Ave. Room 1404 Miami, FL 33130 (Eastern Time).

If the Sellers do not receive any Qualified Bids other than the APA, the Sellers shall proceed as set forth in the "No Qualified Bids" section above. If the Sellers receive one or more additional Qualified Bid(s), then, at the Sale Hearing the Sellers will seek approval of the Successful Bid, and, at their election, after consultation with the Committee and ABC, the next highest or best Qualified Bid (the **"Alternate Bid"** and, such bidder, the **"Alternate Bidder"**). Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to

17

consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Sellers will be authorized to effectuate a Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court. The Alternate Bid shall remain open until the earlier of (a) five (5) Business Days following the APA Termination Date or (b) the consummation of the Sale to the Successful Bidder (the **"Alternate Bid Expiration Date"**). All Qualified Bids (other than the Successful Bid and the Alternate Bid) shall be deemed rejected by the Sellers on and as of the date of approval of the Successful Bid and the Alternate Bid by the Bankruptcy Court.

### APPROVAL AND PAYMENT OF SETTLEMENT/BREAK-UP FEE

As provided for in the APA, in the event the Stalking Horse is not in default under the APA, has not terminated the APA pursuant to the terms thereof and is ready, willing, and able to close on the purchase of the Assets in the Sale, and should Sellers accept a higher or better offer to sell the Assets to another purchaser (**"Alternative Purchaser"**), which sale is approved by the Bankruptcy Court in the Bankruptcy Case, then Seller agrees that the Stalking Horse shall be entitled to receive Four Million and No/100 Dollars ($4,000,000.00) as a break-up fee to reimburse the Stalking Horse for the value of its time, costs, and expenses incurred in connection with this transaction and in partial consideration of the settlement of certain claims (the **"Settlement/Break-Up Fee"**); provided, however, that if the Successful Bidder fails to close and thereafter the Sellers close the Sale with the Stalking Horse, whether as the Back-Up Bidder or otherwise, then the Stalking Horse shall not be entitled to the Settlement/Break-Up Fee. The Settlement/Break-Up Fee shall be entitled to status as an administrative expense under Bankruptcy Code section 503(b)(1), shall be secured by a Lien on the deposit of the Alternative Purchaser or the closing proceeds in the event the transaction with the Alternative Purchaser closes and shall be paid solely and exclusively from such forfeited deposit or closing proceeds.

In the event the APA is terminated by Seller for any reason or circumstance other than termination due to the material and uncured default or breach by the Stalking Horse when Seller is not in default or breach and has satisfied all conditions to Closing, and Seller consummates a sale of the Assets to any Alternative Purchaser for a price higher than the Purchase Price within six months of such termination, then the Stalking Horse shall be entitled to payment from Seller of the Settlement/Break Up Fee (to the extent of such increased Purchase Price (the **"Excess Proceeds"**)), and the Stalking Horse's right to payment thereof shall be protected and secured with a Lien upon the proceeds of the Alternative Purchaser's forfeited deposit or Excess Proceeds and shall be paid solely and exclusively from such forfeited deposit or Excess Closing Proceeds; provided, however, that if such transaction with the Alternative Purchaser does not close and the Sellers thereafter close the sale with the Stalking Horse, then the Stalking Horse shall not be entitled to the Settlement/Break-Up Fee.

The Settlement/Break-Up Fee shall be inclusive of, and not in addition to, all third-party professional fees, costs and expenses incurred by the Stalking Horse in connection with the conduct of due diligence and drafting and negotiation of the APA and other documents or otherwise in connection with the Transaction, whether before or after the filing of these bankruptcy cases. Notwithstanding anything herein to the contrary, it shall be a condition precedent to the Stalking Horse's right to payment of the Settlement/Break-Up Fee that the Stalking Horse shall have executed the APA.

### GOOD FAITH DEPOSITS

The Good Faith Deposits of Qualified Bidders not selected as either the Successful Bidder or Alternate Bidder shall be returned to such bidders within five (5) Business Days of the Sale Hearing.  The Good Faith Deposit of any Alternate Bidder shall be retained by the Sellers until the Alternate Bid Expiration Date and

returned to the Alternate Bidder within two (2) Business Days thereafter or, if the Alternate Bid becomes the Successful Bid, shall be applied to the purchase price to be paid by the Alternate Bidder in accordance with the terms of the Alternate Bid.

### INSIDER PARTICIPATION

To the extent any insider of the Sellers or any of their affiliates, or any person or entity controlled by any insider of the Sellers or their affiliates, chooses to submit a bid at the Bid Deadline, and such bid is deemed a Qualified Bid, such insider shall be expressly prohibited from participating in any manner in the "Evaluation of Competing Bids", "Auction" (other than in his or her capacity as a Qualified Bidder), "Selection of Successful Bid" and "Sale Hearing" sections as described above.

# EXHIBIT "3"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:                                            Chapter 11

                                                  Case No. 13-29597-RAM
FLORIDA GAMING CENTERS,                           (Jointly Administered)
INC., *et al.*, [1]

                    Debtors.   /
_____

**NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE
AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS
AND UNEXPIRED LEASES RELATED TO THE SALE OF
<u>SUBSTANTIALLY ALL ASSETS OF THE DEBTOR</u>**

**NOTICE IS HEREBY GIVEN**, as follows:

1.      On November 25, 2013, Debtors, Florida Gaming Centers, Inc. and Florida Gaming Corporation (collectively, the **"Debtors"**), filed a motion (the **"Sale Procedures Motion"**), seeking approval of, and authorization for, among other things (i) authorizing and approving (a) certain bidding and sale procedures (the **"Sale Procedures"**), to govern the sale (the **"Sale"**) of substantially all of the Debtors' assets; (b) the form of asset purchase agreement (the Stalking Horse APA (defined herein), (c) the payment of a Break-Up Fee; (d) the scheduling of an auction and hearing to consider approval of the Sale (the **"Sale Hearing"**); and (e) the form and manner of notice of the Sale Procedures, Auction, and Sale Hearing; and (ii) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases as provided in the Stalking Horse APA (the **"Assumed Contracts"**), including authorizing and approving procedures for identification of defaults to be cured (the **"Cure Amount"**) and for providing notice to contracting parties with an opportunity to object to such

---

[1] The debtors in these chapter 11 cases and the last four digits of their federal tax identification number are: Florida Gaming Corporation (0533), Florida Gaming Miami Jai-Alai, Inc. (5893), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

assumption and assignment, the Cure Amount, or both as provided in the Stalking Horse APA (the **"Contracting Parties Notice"**); and (iii) related relief on the docket of the Debtors' chapter 11 case, currently pending in United States Bankruptcy Court for the Southern District of Florida (the **"Bankruptcy Court"**). By order dated December __, 2013 (the **"Sale Procedures Order"**), the Bankruptcy Court approved the Sale Procedures and granted the Sale Procedures Motion in accordance with the Sale Procedures Order. A copy of the Sale Procedures Order, together with the Sale Procedures, is enclosed herewith. In the event of any inconsistency between the Sale Procedures Order (or the Sale Procedures) and this Notice, the Sale Procedures Order shall control.

2.      The Debtors entered into an asset purchase agreement, on terms they deemed reasonable, with Silvermark, LLC (the **"Stalking Horse"**), for the sale, free and clear of all liens, claims, liabilities, and other interests, to the maximum extent permitted by Bankruptcy Code Section 363, of substantially all assets (the "Assets") of the Debtors (the **"Stalking Horse APA"**). The Debtors will file with the Bankruptcy Court the fully executed Stalking Horse APA on the docket of the Debtors' chapter 11 cases on or before December 30, 2013. As set forth in the Sale Procedures, the Sale remains subject to competing offers from any prospective qualified bidder. The Sale Procedures and the Stalking Horse APA can be obtained from the official website for the Bankruptcy Court, www.flsb.uscourts.gov, by registered users of the Bankruptcy Court's electronic case filing system, or upon written request by a interested party from Debtors' Investment Banker — Guggenheim Securities, LLC, 330 Madison Avenue, New York, New York 10017, Attention: James Decker, 212-518-9939, Jim.Decker@guggenheimpartners.com, or Alexander Fisch, 212-518-9940, Alex.Fisch@guggenheimpartners.com (the "Investment Banker").

3.      **The deadline for competing bidders to submit competing bids in accordance with the Bidding Procedures is March 19, 2014 at 5:00 p.m. (prevailing Eastern time).**

4.      At a hearing on a date and time to be determined by the Bankruptcy Court (the **"Sale Hearing"**), the Debtors intend to seek the Bankruptcy Court's approval of the Sale to the Stalking Horse or, if applicable, for authority to sell the  Assets to any other bidder submitting the highest, or otherwise best, offer through the bidding/sale process described in the Sale Procedures (the **"Successful Bidder"**).  The Sale Hearing will be held before the Honorable Robert A. Mark in the United States Bankruptcy Court for the Southern District of Florida, located in Miami, Florida, on March 26, 2014 at 10:00 a.m.  The deadline to object to the Sale (the **"Sale Objection Deadline"**) is **March 15, 2014 at 5:00 p.m. (Prevailing Eastern Time.)**

5.      As a component of the Sale, the Debtors have sought authorization to assume and assign to the Stalking Horse or to any other Successful Bidder certain executory contacts and unexpired leases relating to the Assets to be sold as part of the Sale upon consummation thereof (the **"Assigned Contracts"**).

**6.      YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE A PARTY TO AN ASSIGNED CONTRACT (OR REPRESENT A PARTY TO AN ASSIGNED CONTRACT).**

7.      **Exhibit "A"** attached to this Notice contains (a) the title of each Assigned Contract(s) to be assumed to which you may be a party (or a representative of such party), (b) the name of the non-debtor counterparty to the Assigned Contract(s), and (c) any amounts as determined by the Debtors necessary to cure any default under such Assigned Contract(s) required to be cured in connection with the assumption and assignment of the Assigned Contract(s) (the **"Cure Amounts"**).  Notwithstanding anything to the contrary contained herein, any executory contract or unexpired lease may be added or deleted to the list of Assigned Contacts at any time up to the closing of Sale (or thereafter) in accordance with the Stalking Horse APA.

8.      Any objections to the assumption and/or assignment of any Assigned Contract(s) (an **"Objection"**), including to the Cure Amount(s) (or with respect to the provision of adequate assurance of future performance by the

Proposed Buyer or other Successful Bidder), **must be in writing, filed with the Bankruptcy Court, and be actually received by the Notice Parties (defined below) no later than March 15 2014, at 5:00 p.m. (prevailing Eastern Time)** (the **"Assignment and Cure Objection Deadline"**), and must set forth (a) a specific default under the Assigned Contracts and (b) if applicable, claim a specific monetary amount that differs from the amount, if any, for the proposed cure of all defaults required to be cured specified in Exhibit A. The Objection must also be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and set forth the name of the objecting party, the basis for the objection and the specific grounds therefore.

9.      The Notice Parties are: (a) counsel to Miami Jai-Alai: Luis Salazar, Salazar Jackson, LLP, 201 Alhambra Circle, Suite 1205, Coral Gables, Florida 33134; (b) counsel to ABC: Dennis M. Twomey, Sidley Austin, LLP, One South Dearborn, Chicago, Illinois 60603; (c) counsel to the Committee: Glenn D. Moses and Paul J. Battista, Genovese Joblove & Battista, P.A., 100 Southeast Second Street, 44th Floor, Miami, Florida 33131; and (d) all persons who have filed a request for notice under Bankruptcy Rule 2002.

10.     If a timely Objection is received to the assumption and assignment of an Assigned Contract and such Objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such Objection at the Sale Hearing or with the agreement of the Debtors and Proposed Buyer (or Successful Bidder, if applicable) at such later date set by the Bankruptcy Court. The pendency of a dispute relating to Cure Amounts will not prevent or delay the assumption and assignment of your respective Assigned Contract(s), and the Debtors may proceed with the assumption and assignment of your respective Assigned Contract(s) by retaining sufficient funds to cure any claimed default, and resolve the dispute regarding the Cure Amount at a later date as set by the Bankruptcy Court.

11.     If the Debtors receive qualified bids from bidders other than the Stalking Horse, the Debtors will conduct an auction (the **"Auction"**) in accordance with the Sale Procedures commencing on March 25, 2014. If the

Stalking Horse is not the successful bidder at the Auction, then by not less than one (1) business day prior to the Sale Hearing, you may file an additional Objection based solely on the ability of the Successful Bidder (other than the Proposed Buyer) to perform its obligations under your respective Assigned Contract. You may obtain the name of any Successful Bidder other than the Stalking Horse following the Auction upon request from the Investment Banker.

       12.    If no Objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of your Assigned Contract(s), then the assumption and assignment of your Assigned Contract(s) will be authorized pursuant to Bankruptcy Code Section 365 and the Cure Amount(s), if any, set forth in this Notice shall be binding for all purposes and will constitute a final determination (a) that the Assigned Contract may be assumed by the Debtors and assigned to the Stalking Horse (or Successful Bidder, if applicable), and (b) of the total Cure Amounts required to be paid to you in connection with any potential assignment of such Assigned Contract to the Stalking Horse (or Successful Bidder, if applicable). In addition, if no timely objection is received by the Assignment and Cure Objection Deadline with respect to the assumption and assignment of your Assigned Contract(s), you shall be deemed to have consented, and shall be forever barred from objecting to the assumption and assignment of such Assigned Contract on any grounds, including, without limitation, any requirement for the provision of adequate assurance of future performance by the Stalking Horse (or Successful Bidder, if applicable).

**[Remainder of Page Intentionally Left Blank]**

[11158-001/2085452/1]

Dated:  December 23, 2013          Respectfully submitted,

**SALAZAR JACKSON, LLP**
*Counsel for Florida Gaming Miami Jai-Alai, Inc.,*
*Florida Gaming Corporation, Tara Club Estates, Inc.,*
*and Freedom Holding, Inc.*
Two South Biscayne Boulevard, Suite 3760
Miami, Florida 33131
Telephone: (305) 374-4848
Facsimile:  (305) 397-1021
Email:  Salazar@SalazarJackson.com
Email: Honaker@SalazarJackson.com

By: _____

       Luis Salazar
       Florida Bar No. 147788
       Aaron P. Honaker
       Florida Bar No. 48749