

**ORDERED in the Southern District of Florida on April 7, 2014.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| Florida Gaming Centers, Inc., *et al.*,[1] | Case No. 13-29597 (RAM) |
| | Jointly Administered |
| Debtors. | |
| _____/ | |

**ORDER UNDER 11 U.S.C §§ 105, 363 AND FED. R. BANKR. P. 2002, 6004, 6006, 9007, 9019, AND 9014 APPROVING (A) SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS TO SUCCESSFUL BIDDER, AND (C) RELATED RELIEF**

Upon the motion, as amended from time to time, dated November 25, 2013 [Docket No.

228] (the "Sale Motion") of Florida Gaming Centers, Inc. ("Centers"), Florida Gaming

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number are: Florida Gaming Centers, Inc. (5893) ("Centers"), Florida Gaming Corporation (0533) ("Holdings"), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929) ("Freedom Holding") (collectively, the "Debtors").

Corporation ("Holdings" and collectively with their affiliates, the "Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"),[2] for entry of an order, under sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving (i) that certain Asset Purchase Agreement,[3] dated as March 28, 2014 a copy of which is attached hereto as Exhibit A (including all schedules, exhibits, and attachments thereto), to be entered into by and among the parties as contemplated therein (the "APA"), by and among Fronton Holdings, LLC (the "Purchaser"), and certain of the Debtors as reflected in the APA as Sellers (collectively, the "Sellers", and each individually, a "Seller"); (ii) the sale and all related transactions, in accordance with the APA and this Order (the "Sale") of all of the Debtors' right, title and interest in, to and under the Assets (as defined in the APA) to be sold to the Purchaser under the APA (the "Sale Assets") free and clear of all claims, liens, encumbrances, or other interests (including without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code and any rights or claims based on any successor or transferee liability) other than those specifically provided for in the APA, including, to the extent set forth in the APA, the Assumed Liabilities and Permitted Liens (collectively, all such claims, liens, encumbrances and other interests other than the Assumed Liabilities and the Permitted Liens as set forth in the APA, the "Interests"), (iii) the assumption by the Sellers and the assignment by the Sellers to the Purchaser of certain executory contracts

---

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the APA and, where indicated, the Sale Motion or the Sale Procedures Order (as defined below).

[3] Included with the APA, all other agreements, documents and instruments necessary to effect the transactions contemplated hereby, collectively the "Transaction Documents."

and unexpired leases included as "Included Contracts" under the APA (the "Assumed Contracts") pursuant to section 365 of the Bankruptcy Code (together with the Sale and other transactions to be consummated pursuant to the APA, the "Transactions") and the fixing and satisfaction by the Seller of Cure Amounts relating thereto, and (iv) granting related relief; and upon the proffer of Alexander Fisch of Guggenheim Securities, LLC ("Guggenheim Securities") in support of the Transactions (the "Fisch Proffer") and the proffer of Daniel Licciardi in support of the Transactions (the "Licciardi Proffer" and together with the Fisch Proffer, the "Proffers"); the Order Pursuant to Fed. R. Bankr. P. 9019(a) Approving Settlement and Compromise by and Among the Debtors and Their Respective Estates, William B. Collett, William B. Collett, Jr., ABC Funding, LLC and the Official Joint Committee of Unsecured Creditors (the "Committee"), dated March 20, 2014 (the "Settlement Order" which approved the settlement agreement referred to therein, the "Settlement Agreement") [Docket No. 387]; and the Court having entered its order, dated December 30, 2013 (the "Sale Procedures Order") [Docket No. 261], authorizing and approving the Sale Procedures, notice of the Sale, and the hearing to consider approval of the Transactions (the "Sale Hearing"); and an Auction having been held in accordance with the Sale Procedures Order and the Sale Procedures appended thereto (as such Sale Procedures were modified from time to time in accordance with the Sale Procedures); and at the conclusion of the Auction, the Purchaser was chosen as the Successful Bidder (as defined in the Sale Procedures Order) in accordance with the Sale Procedures Order and the Sale Procedures; and the Sale Hearing having been held on March 26, 2014 to consider the relief requested in the Sale Motion; upon the record of the Sale Hearing, and all of the other proceedings before the Court; and the Court having reviewed the Sale Motion and any objections

3

thereto (the "Objections"); and all parties in interest having been afforded an opportunity to be heard with respect to the Sale Motion and all of the relief related thereto; and it appearing that the relief requested by the Sale Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**[4]

A.      **Jurisdiction and Venue.**  This Court has jurisdiction over the Sale Motion and the Transactions pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and of the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.      **Statutory Predicates.**  The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.  The consummation of the Transactions contemplated by the APA and this Order is legal, valid and properly authorized under all such provisions of the Bankruptcy Code and Bankruptcy Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of the Transactions.

C.      **Notice.**  As evidenced by the certificates of service and notice previously filed with the Court and based on the representations of counsel at the hearing to approve the Sale Procedures and the Sale Hearing, proper, timely, adequate, and sufficient notice of the Sale

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Motion, the Sale Procedures, the Sale, the Auction, and the Sale Hearing have been provided in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a), 6004(a), 6006(c), 9007 and 9014 to all interested persons and entities including: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to ABC; (d) counsel to the Colletts; (e) counsel to Silvermark, LLC ("Silvermark"); (f) those parties who have requested notice pursuant to Bankruptcy Rule 2002; (g) all known creditors of the Debtors and all entities known to have asserted any claims against the Debtors and other entities known to have asserted a lien, interest or encumbrance in or upon any of the Sale Assets; and (h) all known entities that have previously expressed a bona fide interest in purchasing the Sale Assets from the date of the Bid Procedure Motion (the parties referenced in clauses (a)-(h) above, collectively, the "Notice Parties").   The Debtors provided notice of the assumption and assignment of Assumed Contracts and any cure amounts related thereto (the "Cure Amounts") to all contract counterparties of such Assumed Contracts in accordance with the Sale Procedures Order [Docket No. 343].  Such notice placed these persons on notice that their failure to object to the Debtors' assumption and assignment of the Assumed Contracts or to the Cure Amounts would be deemed consent to the assumption and assignment of the Assumed Contracts and the Cure Amounts.  The notice described in this Paragraph C is good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of any of the Assumed Contracts, the Cure Amounts, the APA, the Sale, the other Transactions and this Order is or shall be required.  With respect to parties who may have claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors, the publication of the Sale Notice was sufficient and reasonably calculated under

5

the circumstances to reach such parties, and such publication notice is good, sufficient and valid notice to, and binding upon, all Persons and entities (as defined in section 101(15) of the Bankruptcy Code) in accordance with Bankruptcy Rule 2002(l).

D.      **Business Justification.**      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the sale of the Sale Assets.   In light of the circumstances of these Chapter 11 Cases and the risk of deterioration in the going concern value of the Sale Assets pending the Sale, time is of the essence in (i) consummating the Sale, (ii) preserving the viability of the Debtors' businesses as going concerns, and (iii) minimizing the widespread and adverse economic consequences for the Debtors, their estates, their creditors and employees and other parties in interest.

E.      **Sale Procedures Order.**  On December 30, 2013, this Court entered the Sale Procedures Order approving Sale Procedures for the Sale of the Sale Assets.   The Sale Procedures provided a full, fair and reasonable opportunity for any entity or entities to make an offer to purchase the Sale Assets.

F.      **Adequate Marketing; Highest and Best Offer.**   As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, including the Proffers, and (ii) the representations of counsel made on the record at the Sale Hearing, (a) the Debtors have adequately marketed the Sale Assets and conducted the sale process in compliance with the Sale Procedures Order and the Sale Procedures (as modified from time to time in accordance with the Sale Procedures); (b) a reasonable opportunity has been given to any interested party to make a higher or better offer for the Sale Assets; (c) the consideration provided for in the APA constitutes the highest and best offer for the Sale Assets; (d) the consideration provided for in the

6

APA provides fair and reasonable consideration for the Sale Assets and constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia; (e) the Sale will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative, including liquidation under chapters 7 or 11 of the Bankruptcy Code; (f) taking into consideration all relevant factors and circumstances, no other entities have offered to purchase the Sale Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination (in consultation with the Committee) that the APA constitutes the highest or best offer for the Sale Assets constitutes a valid and sound exercise of the Debtors' business judgment. The Sale is fair and reasonable and supported by sound business reasons and there is no bona fide basis for any claims or actions against the Debtors, ABC Funding, LLC, the Committee, or the Purchaser, arising out of their participation in the negotiation of or consent to the Sale or related matters. In entering into, or consenting to the Sale, such parties have exercised their respective rights and powers, and used the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances.

G.       **Opportunity to Object.**  A reasonable opportunity to object or be heard with respect to the Sale Motion, the relief requested therein and the Cure Amounts has been afforded to all interested Persons, including the Notice Parties.

H.       **Sale in Best Interests.**  The actions to be taken by the Sellers and the Purchaser are appropriate under the circumstances of these Chapter 11 Cases and are in the best interests of the Debtors, their estates and creditors, and other parties in interest. Approval of the APA and of

7

the Sale and other Transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

I.       **No *Sub Rosa* Plan.**  In the event the Transactions are approved under section 363 of the Bankruptcy Code, the consummation of the Transactions outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The Transactions do not constitute a *sub rosa* plan of reorganization.

J.       **Arm's-Length Sale.**  The APA and the Transactions were negotiated, proposed, and entered into by the Sellers (in consultation with the Committee) and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Sellers, their insiders and affiliates, nor the Committee, nor the Purchaser have engaged in any conduct that would cause or permit the APA, the Sale, or any part of the Transactions thereby to be avoided or subject to avoidance under section 363(n) of the Bankruptcy Code.

K.       **Good Faith Purchaser.**  The Purchaser is a good faith Purchaser under section 363(m) of the Bankruptcy Code and, as such, the Purchaser is entitled to all of the protections afforded thereby.

L.       **Prompt Consummation.**  The Sale and the other Transactions must be approved and consummated as promptly as practicable in order to preserve the viability of the business.

M.       **Corporate Authority.**  Each Debtor (i) has full corporate power and authority to execute the APA and all other documents contemplated thereby, and the sale of the Sale Assets has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the Transactions

contemplated by the APA, (iii) has taken all corporate action necessary to authorize and approve the APA and the consummation by the Debtors of the Transactions contemplated thereby, and (iv) needs no additional consents or approvals (or such applicable consents or approvals have been waived), other than those expressly provided for in the APA to consummate such Transactions.

N.      **Binding and Valid Transfer.**  The transfer of the Sale Assets to the Purchaser will be a legal, valid, and effective transfer of the Sale Assets and will vest the Purchaser with all right, title, and interest of the Sellers to the Sale Assets free and clear of all Interests, including (i) rights or claims based on any successor or transferee liability (ii) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Sellers' or the Purchaser's interests in the Sale Assets, or any similar rights, (iii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Sale Assets prior to the closing, (iv) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership and (b) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether occurring or arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by

agreement, understanding, law, equity or otherwise, including, but not limited to, claims otherwise arising under doctrines of successor or transferee liability, and any indemnification claims or liabilities relating to any act or omission of the Sellers or any other Person prior to the Closing Date, and (v) any employments rights and claims (except those specifically assumed), pension rights and claims, or any other claims arising out of the National Labor Relations Act (29 U.S.C § 151, *et seq.*), the Employee Retirement Income Security Act, as amended (29 U.S.C. § 1001, *et seq.*), or the WARN Act (29 U.S.C. § 2101 *et seq.*).

O.    **Satisfaction of 363(f) Standards.**  The Sellers may sell the Sale Assets free and clear of all Interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests, including rights or claims based on any successor or transferee liability, and non-debtor parties to the Assumed Contracts who did not object, or who withdrew their Objections, to the Transactions or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  In all cases, each such Person with Interests in the Sale Assets is enjoined from taking any action against the Purchaser, the Purchaser's Affiliates or any agent of the foregoing to recover any such Interest.

P.    **Necessity of Order.**  The Purchaser would not have entered into the APA and would not consummate the Transactions without all of the relief provided for in this Order.  The consummation of the Transactions pursuant to this Order and the APA is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in

interest.  The Purchaser has agreed to these Transactions with the intent of purchasing the Sale Assets and does not and would not agree to assume anything other than the Assumed Liabilities.

Q.      **Assumed Contracts.**  The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assumed Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assumed Contracts being assigned to the Purchaser are an integral part of the Sale Assets being purchased by the Purchaser, and, accordingly, such assumption and assignment of the Assumed Contracts and liabilities are reasonable and an enhancement to the value of the Debtors' estates.  Nothing contained in this Order shall prejudice the right of the Debtors to reject their respective obligations under all other executory contracts and unexpired leases which are not Assumed Contracts, whether pursuant to a plan or by separate motion.

R.      **Cure/Adequate Assurance.**  The Seller will be assuming and assigning the Assumed Contracts, and paying all Cure Amounts pursuant to the terms of the APA.  The Seller has demonstrated its ability to cure any default with respect to any act or omission that occurred prior to the Closing under any of the Assumed Contracts within the meaning of section 365(b)(1)(A) of the of the Bankruptcy Code.  The Cure Amounts are deemed the amounts necessary to "cure" within the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under such Assumed Contracts.  The Purchaser's promises to perform the obligations under the Assumed Contracts after the Closing Date shall constitute adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy

11

Code. All counterparties of the Assumed Contracts who did not or do not timely file an objection to the assumption and assignment of the Assumed Contract(s) to which they are counterparty, are deemed to consent to the assumption by the Debtors of their respective Assumed Contract(s) and the assignment thereof to the Purchaser. The objections of all contract counterparties to Assumed Contracts that did file a timely objection to the assumption and assignment of such counterparties' respective Assumed Contract(s) or Cure Amount(s) relating thereto were heard at the Sale Hearing are overruled on the merits with prejudice. The Court finds that with respect to all such Assumed Contracts, the payment of the Cure Amounts by the Seller is appropriate and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code. Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to the Purchaser, of each of the Assumed Contracts. To the extent any Assumed Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of this Order that are applicable to the Sale Assets, and the Purchaser shall have no liability or obligation for any (a) defaults or breaches under such agreement that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the date of the entry of this Order, and (b) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including without limitation, any right of recoupment) with respect to such Assumed Contract, that relate to any acts or omissions that arose or occurred prior to the date of the entry of this Order. Notwithstanding any other provision in this Order, the Debtors may assume and assign any

Assumed Contract following the entry of this Order, as may be provided in this Order or in the APA.

S.    **Unenforceability of Anti-Assignment Provisions.**  Anti-assignment provisions in any Assumed Contract do not restrict, limit or prohibit the assumption, assignment, and sale of the Assumed Contracts and should be deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

T.    **Transfer Taxes**.  The Sale shall be free from transfer taxes if and to the extent permissible under section 1146(a) of the Bankruptcy Code or otherwise applicable law.

U.    **Settlement Order Findings**.  All of the findings of fact and conclusions of law contained in the Settlement Order in respect of the approval of the Settlement Agreement are incorporated herein by reference.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.    **Sale Motion is Granted.**  The Sale Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as further described herein.

2.    **Objections Overruled.**  Any objections to the entry of this Order or the relief granted herein and requested in the Sale Motion, including any objections to Cure Amounts or the assumption and assignment of Assumed Contracts, that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby denied and overruled on the merits with prejudice.

13

3.    **Approval.**   The APA and all Transaction Documents, and all the terms and conditions thereof, are approved.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under, and comply with the terms of, the APA and the Transaction Documents and consummate the Transactions pursuant to, and in accordance with, the terms and conditions of the APA and this Order.  The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the APA and the Transaction Documents, together with all additional instruments and documents that the Sellers or the Purchaser deem necessary or appropriate to implement the APA and effectuate the Transactions, and to take all further actions as may reasonably be required by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to Purchaser's possession the Sale Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

4.    **Highest and Best Offer.**   The Purchaser's offer for the Sale Assets, as embodied in the APA, represents the highest and best offer for the respective Sale Assets and is hereby approved.

5.    **Binding Effect of Order.**   This Order and the APA shall be binding in all respects upon all known and unknown creditors of, and equity security interests in, any Debtor, including any holders of Interests (including holders of rights or claims based on any successor or transferee liability), all counterparties to the Assumed Contracts, all successors and assigns of the Purchaser, each Seller and their Affiliates and subsidiaries, the Sale Assets, and any trustees subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to cases

14

under Chapter 7 of the Bankruptcy Code, and this Order shall not be subject to amendment or modification and the APA shall not be subject to rejection by any subsequently appointed trustee. Nothing contained in any chapter 11 plan confirmed in the Debtors' Chapter 11 Cases or in the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the APA or this Order; provided, however, that the provisions of Section 13.09 of the APA as they relate to the retention of jurisdiction by this Court may be modified by further order of the Court upon the closing of these Chapter 11 Cases.

      6.    **Injunctions.**

      (i)    <u>Sale Assets</u>.  All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Sale Assets to the Purchaser in accordance with the APA and this Order.  Following the Closing, except with respect to Assumed Liabilities and Permitted Liens, all Persons (including, but not limited to, the Debtors and/or their respective successors (including any trustee), creditors, investors, borrowers, current and former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) holding any Interests in the Sale Assets or against the Debtors in respect of the Sale Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Interests of any kind or nature whatsoever against the Purchaser or any Affiliate of the Purchaser or any of their respective property, successors and assigns, or the Sale Assets, as an alleged successor or on any other grounds.  For the avoidance of doubt, no Person

15

shall assert, and the Purchaser and the Sale Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), liabilities, claims and Interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Purchaser or the Debtors, or any obligation of any other party, under or with respect to, any Sale Assets (including, without limitation, any Assumed Contract), with respect to any act or omission that occurred prior to the Closing or with respect to any other agreement or any obligation of Debtors that is not an Assumed Liability.

(ii)    Assumed Contracts.  Upon the transfer or assignment of the Assumed Contracts to the Purchaser, each contract counterparty of an Assumed Contract is hereby forever barred, estopped, and permanently enjoined from asserting against the Sale Assets, the Purchaser, their Affiliates or their respective property (a) any setoff, defense, recoupment, claim, Interest, counterclaim or default asserted or assertable against, or otherwise delay, defer or impair any rights of the Purchaser with respect to the Sale Assets with respect to an act or omission of, the Debtors, or (b) any rent acceleration, assignment fee, default, breach or claim, or pecuniary loss or condition to assignment or transfer, arising under or related to an Assumed Contract existing as of the Closing, or arising by reason of the Closing.

(iii)    Liens, Claims and Interests.  Except for the Assumed Liabilities and Permitted Liens, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all persons and entities, including, without limitation, the Sellers, the Sellers' affiliates, all equity security holders, the Sellers' employees or former employees, governmental, tax, and regulatory authorities, lenders, trade and other creditors asserting or holding any liens, claims and interests, in or with respect to the Sellers or the Sale Assets (whether legal or equitable, secured or

16

unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Sellers, the Sale Assets, the operation of the Sellers' businesses prior to the Closing Date under the APA or the transfer of the Sale Assets to the Purchaser, shall, following the Closing, be forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such liens, claims and interests against the Purchaser or any affiliate, successor or assign thereof, or the Sale Assets, including claims under section 365(n) of the Bankruptcy Code against the Purchaser with respect to the Sale Assets.

7.      **General Assignment.**  Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Sellers' interests in the Sale Assets (or such Assumed Contract, if applicable) and a bill of sale transferring good and marketable title in the Sale Assets (or such Assumed Contract, if applicable) to the Purchaser.  Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions.

8.      **Transfer Free and Clear.**  Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Sale Assets shall be transferred to the Purchaser as required under the APA, and such transfer shall be free and clear of all Interests of any Person and any and all rights and claims under any bulk transfer statutes and similar laws, whether arising by agreement, by statute or otherwise and whether occurring or arising before, on or after the date on which these Chapter 11 Cases were commenced, whether known or unknown, occurring or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable

17

to the property against or in which the holder of a claim or Interest claims or may claim a claim or Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Sellers may possess with respect thereto.

9.    **No Liability of Purchaser**.  The Purchaser shall not be liable in any way for any claims against the Sellers, other than with respect to the Assumed Liabilities and the Permitted Liens.  Any and all valid and enforceable liens, claims and interests on, against or in the Sale Assets, other than the Assumed Liabilities and the Permitted Liens, shall be transferred, affixed and attached to any net proceeds of the Sale Assets with the same validity, priority, force and effect such liens, claims and interests had on the Sale Assets immediately prior to the Sale and subject to the rights, claims, defenses and objections, if any, of the Sellers and all interested parties with respect to any such asserted liens, claims and interests. The Sale to the Purchaser shall vest the Purchaser with all the right, title and interest of the Sellers to the Sale Assets free and clear of all Interests.

10.    **Self-Executing Order**.  The provisions of this Order authorizing the sale of the Sale Assets free and clear of all Interests shall be self-executing, and neither the Sellers nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments to effectuate, consummate and implement the provisions of this Order.  However, the Sellers and the Purchaser, and each of their respective officers, employees and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Sellers or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the APA and this Order.

18

11.    **Release of Interests**. This Order is and shall be effective as a determination that, upon Closing, Interests existing in the Sale Assets conveyed to the Purchaser have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated.

12.    **Claims Extinguished Against the Debtors**. To the extent a liability has been assumed by the APA, and such related claim has been asserted against one or all of the Debtors, such claim or claims are deemed extinguished as to the Debtors.

13.    **Valid Transfer.** The transfers of the Sale Assets to the Purchaser pursuant to the APA constitutes a legal, valid, and effective transfer of the Sale Assets and shall vest the Purchaser with all right, title, and interest of the Sellers in and to the Sale Assets free and clear of all Interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability.

14.    **Direction to Release Interests.** Upon the Closing, except with respect to the Assumed Liabilities and Permitted Liens, as applicable, each of the Sellers' creditors and any other holder of an Interest, including rights or claims based on any successor or transferee liability, is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interest in the Sale Assets, if any, as such Interest may have been recorded. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing an Interest in the Sellers or the Sale Assets shall not have delivered to the Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests, which the person or entity has with respect to the Sellers or the Sale Assets or otherwise, then (i) the Sellers are authorized and directed to execute and file such

19

statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Sellers or the Sale Assets, and (ii) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever in the Sellers or the Sale Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA, including, without limitation, recordation of this Order. This Order shall be binding upon and shall govern the acts of all Persons including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests.

15.    **No Interference**. Following the Closing of the Sale, no holder of any Interest shall interfere with the Purchaser's title to, or use and enjoyment of, the Sale Assets based on, or related to, any such Interest, or based on any actions the Debtors may take in their Chapter 11 Cases.

16.    **No Discriminatory Treatment.** To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Sellers with respect to the

20

Sale Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Purchaser as of the Closing Date.

17.    **Assumption and Assignment of Assumed Contracts.**    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and subject to and conditioned upon the Closing of the Sale, the Debtors' assumption and assignment to the Purchaser of the Assumed Contracts is approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.  The Purchaser has demonstrated adequate assurance of future performance with respect to all Assumed Contracts.

(i)    Free and Clear.  The Debtors are authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (i) assume and assign to the Purchaser, effective as of the Closing, as provided by, and in accordance with, the Sale Procedures Order and the APA, the Assumed Contracts free and clear of all Interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, and (ii) execute and deliver to the Purchaser such documents or other instruments as the Purchaser reasonably deem may be necessary to assign and transfer the Assumed Contracts to the Purchaser.

(ii)    Consent.  Any party having the right to consent to the assumption and assignment of an Assumed Contract that failed to object to such assumption and assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code; provided, for the avoidance of doubt, that Miami-Dade County reserves its rights to assert a right to consent to the assumption and/or assignment of any contracts to which

it is a counterparty. The Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

(iii)    Anti-Assignment Provisions. The Assumed Contracts shall be transferred and assigned to, pursuant to the Sale Procedures Order and the APA, and thereafter remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. The Sellers shall be relieved from any further liability (but not including the Cure Amounts, which are to be paid by the Seller out of the proceeds of the Sale under the APA) with respect to the Assumed Contracts after such assumption and assignment to the applicable Purchaser.

(iv)    Cure Amounts. All defaults and all other obligations or liabilities under any Assumed Contract occurring, arising or accruing prior to the date of the assignment or transfer to the Purchaser shall be deemed cured or satisfied upon payment of the applicable Cure Amount, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in section 365(b)(2) of the Bankruptcy Code whether or not such Assumed Contract is an executory contract within the meaning of section 365 of the Bankruptcy Code. The Cure Amounts to be paid by the Sellers reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Purchaser of the Assumed Contracts. Upon payment of the Cure Amounts and after such assumption and assignment to the Purchaser, the Sellers shall be relieved

22

from any further liability with respect to the Assumed Contracts, and all holders of claims arising from and after Closing under any Assumed Contract are forever barred and estopped from asserting any claims under any Assumed Contract against the Debtors, their successors or assigns, and their estates.

(v)      Miami-Dade County Contracts.  Notwithstanding anything to the contrary in this Order or the APA, assignment to the Purchaser of the Miami-Dade County Promissory Note, Miami-Dade County Parking Loans, the Miami-Dade County Letter Agreement and all other Assumed Contracts with Miami-Dade County set forth in the Schedules to the APA is subject to and contingent upon either (i) receipt by the Purchaser of Miami-Dade County's consent or (ii) further order of this Court approving such assignment to the Purchaser after notice and a hearing; provided, however, in the event of such assignment to the Purchaser, Miami-Dade County's existing first-priority mortgages on Seller's parking lot shall remain in place to the same extent and priority subsequent to the transfer of such parking lot to Purchaser pursuant to the APA.

(vi)     AGS Contracts.  Notwithstanding anything herein to the contrary, this Order shall not modify or affect the rights of American Gaming Systems, Inc. ("AGS") to object to assumption, assignment, adequate assurance of future performance, or potential cure amounts due under their its contract(s). The Debtors (in consultation with the Committee), the Purchaser, and AGS shall work in good faith to consensually resolve its remaining disputes (if any).  This Court shall hear argument based on the AGS objection in the event that the objections are not resolved consensually.

23

(vii)    St. Lucie County and City of Fort Pierce Contracts.    Notwithstanding anything herein to the contrary, cure amounts due under the revenue sharing agreement, dated September 25, 2007, by and between Centers and the City of Fort Pierce and St. Lucie County (the "City/County Revenue Sharing Agreement") shall be $87,378.88 (the "City/County Cure Amount"), which City/County Cure Amount has been paid, or shall be paid, to the City of Fort Pierce and St. Lucie County not later than the Closing Date.  Upon payment of the City/County Cure Amount, the objections filed by St. Lucie County [Docket No. 383] and the City of Fort Pierce [Docket No. 390] shall be, and shall be deemed to be dismissed, and the City/County Revenue Sharing Agreement shall be assumed by the Sellers and assigned to the Purchaser pursuant to the terms of this Order and the APA.

(viii)    Settlement of Objections.    The Debtors (in consultation with the Committee), the Purchaser, and the relevant non-debtor counterparty under each Assumed Contract shall have authority to compromise, settle or otherwise resolve any objections to proposed Cure Amounts without further order of the Bankruptcy Court.  If the Debtors (in consultation with the Committee), the Purchaser, and the non-debtor counterparty under each Assumed Contract determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the Assumed Contract and/or the proposed Cure Amount with respect to such contract or lease will be determined by the Court at the next scheduled hearing or such other date as determined by the Court, unless the Debtors (in consultation with the Committee), the Purchaser, and the non-debtor counterparty agree otherwise.

(ix)    No Waiver.  The failure of the Sellers or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Sellers' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

(x)    Notice of Further Amendment to List of Assumed Contracts.  The Purchaser may amend or supplement the list of Assumed Contracts to be assumed and assigned by the Sellers pursuant to the terms of the APA; provided, however, that notice of such amendment or supplement (a "Supplemental Notice") must be given to all affected non-debtor counterparties to each Assumed Contract.  Each affected non-debtor counterparty shall have the ability to object to the proposed assumption and assignment to the Purchaser, or the proposed Cure Amount, by serving an objection on counsel to the Debtors, the Committee and the Purchaser within seven (7) days of the date of the Supplemental Notice.  Any such objection shall state, with specificity, the nature of such non-debtor counterparty's objection, including the amount of any discrepancy in the Cure Amount.  If an objection is timely received, the Debtors (in consultation with the Committee) and the Purchaser shall engage in good-faith discussions with the objecting non-debtor counterparty to resolve the objection.  If no resolution is reached within seven (7) days of the objection, the Debtors and the objecting non-debtor counterparty shall seek to have the Court determine the merits of the objection (it being understood that such request may be made on an expedited basis).  If no timely objection is received in the manner described herein, any contract or lease subject to a Supplemental Notice shall be assumed and assigned by the Sellers to the Purchaser pursuant to he terms of the APA and this Order, and the non-debtor counterparty shall be deemed to be bound by the terms of this Order.

18.    **No Successor Liability.**  Neither the Purchaser, nor any of its successors or assigns, or any of its respective affiliates shall have any liability for any Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors or is related to the Sale Assets prior to the Closing other than the Purchaser's obligations to the Debtors under the APA and with respect to the Assumed Liabilities and Permitted Liens.  The Purchaser shall not be deemed, as a result of any action taken in connection with the APA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Sale Assets, to: (i) be legal successors, or otherwise be deemed successors to the Debtors; (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.  Without limiting the foregoing, the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, de facto merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated.

19.    **Fair Consideration.**  The consideration provided by the Purchaser for the Sale Assets under the APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale may not be avoided under section 363(n) of the Bankruptcy Code.

20.    **Retention of Jurisdiction.**  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and

enforce the terms and provisions of this Order, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Sale Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order; (iii) protect the Purchaser against any Interests against the Sellers or the Sale Assets of any kind or nature whatsoever, and (iv) enter any order under section 363 and 365 of the Bankruptcy Code.

21.    **Good Faith.**  The Transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the Transactions shall not affect the validity of the Transactions (including the assumption and assignment of any of the Assumed Contracts), unless such authorization is duly stayed pending such appeal.  The Purchaser is a Purchaser in good faith of the Sale Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

22.    **Approval of Alternate Bidder.**  The Court will enter a separate order to approve GLP Capital, L.P. and MGA Holding FL, LLC (together "GLP/MGA") as the Alternate Bidder (as defined in the Sale Procedures Order).

23.    **Settlement Order.**  The provisions contained herein shall be read to comply with the Settlement Order.

24.    **Proceeds.**  The allocation of the sale proceeds shall be in accordance with the allocation set forth in the Settlement Agreement.  For the avoidance of doubt, (i) the Purchase Price includes the outstanding Indebtedness owed by Sellers under the Credit Agreement

27

pursuant to section 363(k) of the Bankruptcy Code, and (ii) the amount of cash to be paid by Purchaser under the APA at Closing shall be reduced by the amounts owing to ABC on behalf of the Lenders or Holders of Repurchase Claims (as defined in the Settlement Agreement) pursuant to the Settlement Agreement.

25.    **Payment of the Settlement/Break-Up Fee.**   In accordance with the Sale Procedures Order:  (a) Silvermark is entitled to payment of the Settlement/Break-Up Fee, and (b) the Settlement/Break-Up Fee is hereby allowed as an administrative expense under Bankruptcy Code section 503(b)(1) and is secured by a lien on the deposit of the Alternate Bidder and on the closing proceeds in the event the Transactions close with either the Purchaser or the Alternate Bidder.  All other rights of Silvermark under the Sale Procedures Order with respect to the Settlement/Break-Up Fee are preserved.   Upon consummation and Closing of the transactions under the APA, or if applicable, the Alternate APA, the Debtors are authorized and directed to pay the Settlement/Break-Up Fee to Silvermark from the cash proceeds received at the Closing from the Purchaser or, if applicable, the Alternate Bidder.  If the Transactions under the APA do not close and there is litigation against or a settlement with Purchaser or its Affiliates in connection therewith, to the extent the Settlement/Break-Up Fee has not otherwise been satisfied, Silvermark shall be, and hereby is, granted a first priority lien on any damages or settlement proceeds recovered by the Debtors in connection with any such litigation or settlement.  If the Transactions under the APA do not close with either the Purchaser or the Alternate Bidder and the deposit of the Alternate Bidder is forfeited to the Debtors, the Debtors are authorized and directed to pay the Settlement/Break-Up Fee to Silvermark from the forfeited deposit funds without further Court order.

28

26.     **Payment of Guggenheim's Fee**.  On the Closing Date, in accordance with this Court's "Order Authorizing the Retention of Guggenheim Securities, LLC as Investment Banker to the Debtors, *Nunc Pro Tunc* to November 8, 2013" [Docket No. 231] and with the Debtors' engagement letter (the "Engagement Letter") with Guggenheim Securities attached thereto, Guggenheim Securities shall be paid from the proceeds of the Sale, on an interim basis and subject in all respects to the filing of a final fee application, its Sale Transaction Fee (as defined in the Engagement Letter).  Guggenheim Securities shall file its final fee application within 30 days of the Closing Date.

27.     **Payment of St. Lucie County Tangible Property and Real Property Taxes**. On or prior to the Closing Date, the St. Lucie County tax collector (the "St. Lucie County Tax Collector") shall be paid due and owing 2013 tangible property and real property taxes.  For the avoidance of doubt, notwithstanding anything herein to the contrary, any lien held by the St. Lucie County Tax Collector securing payment of 2014 tangible property and real property taxes (the "2014 St. Lucie Taxes") shall be a Permitted Lien pursuant to the terms of the APA, and the 2014 Taxes shall be paid to the St. Lucie County Tax Collector in the ordinary course of business by the party owning the Sale Assets when such 2014 St. Lucie Taxes become due and owing.

28.     **Payment of Miami-Dade County Tangible Property and Real Property Taxes**. On or prior to the Closing Date, Miami-Dade County shall be paid due and owing 2013 tangible property and real property taxes.  For the avoidance of doubt, notwithstanding anything herein to the contrary, any lien held by Miami-Dade County securing payment of 2014 tangible property and real property taxes (the "2014 Miami-Dade Taxes") shall be a Permitted Lien

pursuant to the terms of the APA, and the 2014 Miami-Dade Taxes shall be paid to Miami-Dade County in the ordinary course of business by the party owning the Sale Assets when such 2014 Miami-Dade Taxes become due and owing.

29.    **Transfer Taxes.**  The Sale shall be free from transfer taxes if and to the extent permissible under section 1146(a) of the Bankruptcy Code or any applicable law.

30.    **Regulatory Approvals.**  All necessary approvals by state, federal, and local regulatory agencies (and any other applicable regulatory body) have been obtained, or shall be obtained prior to Closing as conditions precedent to such Closing as provided in the APA (unless the requirement for such approvals is waivable and is waived by the party entitled to waive such condition in the APA).

31.    **Subsequent Plan Provisions.**   Nothing contained in any chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in these Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the APA or this Order, and solely with respect to any provision relating the Settlement/Break-Up Fee, Silvermark.

32.    **Failure to Specify Provisions.**  The failure to specifically include any particular provisions of the APA, the other Transaction Documents or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Sellers and the Purchaser that the APA, the other Transaction Documents and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to the Closing Date.

33.    **Non-Material Modifications.** The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have any adverse effect on the Debtors' estates and is not related to the Settlement/Break-Up Fee in any manner.

34.    **Order Binding on Trustee.** The provisions of the APA and this Order may be specifically enforced in accordance with the APA notwithstanding the appointment of any chapter 7 or chapter 11 trustee. The provisions of the APA and this Order shall inure to the benefit of the Purchaser and the Sellers and their respective successors and assigns, and shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with these Chapter 11 Cases or any other or further case involving the Sellers, whether under chapter 7 or chapter 11 of the Bankruptcy Code. From and after the date hereof, each Seller and Purchaser shall act in accordance with the terms of the Transaction Documents and each Seller and Purchaser, to the extent it already has not done so, shall execute each Transaction Document to which it is a party at or prior to Closing.

35.    **Jurisdiction.** The Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

36.    **Service.** The Debtors shall serve a copy of this Order upon all creditors and parties in interest with only Exhibit B attached and shall make copies of the APA available upon request.

### ###

**Submitted by:**
Luis Salazar, Esq.
Linda Worton Jackson, Esq.
SALAZAR JACKSON, LLP
2 South Biscayne Boulevard
Suite 3760
Miami, Florida 33131
Phone:  (305) 374-4848
Fax:  (305) 397-1021
Email:  Salazar@SalazarJackson.com
Email: Jackson@SalazarJackson.com

*(Attorney Salazar shall serve a copy of this Order upon all interested parties upon receipt and file a certificate of service.)*

## EXHIBIT A

**Fronton Asset Purchase Agreement**

EXECUTION VERSION

ASSET PURCHASE AGREEMENT

BY AND BETWEEN

FRONTON HOLDINGS, LLC,
A DELAWARE LIMITED LIABILITY COMPANY,
OR ITS ASSIGNEE(S)

AND

FLORIDA GAMING CENTERS, INC.,
A FLORIDA CORPORATION

AND

FLORIDA GAMING CORPORATION,
A DELAWARE CORPORATION
(solely with respect to Sections 1.01(a), 1.06(a), 1.07, 1.10, 2.13(b), 4.12, 4.13 and
13.15)

DATED AS OF MARCH 28, 2014

EXECUTION VERSION

## TABLE OF CONTENTS

This Table of Contents is not part of the Agreement to which it is attached but is inserted for convenience only.

Page No.

ARTICLE I SALE OF ASSETS AND CLOSING .......................................................................... 1

| | | |
|---|---|---|
| 1.01 | Purchase and Sale of Assets of Seller. .................................................... | 1 |
| 1.02 | Purchase Price, Assumed Liabilities and Included Contracts; Deposit. ............... | 2 |
| 1.03 | Purchaser Modifications to Assets and Included Contracts.................................. | 3 |
| 1.04 | Closing. .................................................................................................... | 3 |
| 1.05 | Purchase Price Adjustments and Deductions; Prorations and Credits.................. | 3 |
| 1.06 | Further Assurances; Post-Closing Cooperation. ....................................... | 4 |
| 1.07 | Third Party Consents. ................................................................................. | 6 |
| 1.08 | Uncashed Tickets. ...................................................................................... | 6 |
| 1.09 | Determination of Cash on Hand at Closing. ................................................. | 6 |

ARTICLE II REPRESENTATIONS AND WARRANTIES OF SELLER ................................. 7

| | | |
|---|---|---|
| 2.01 | Corporate Existence; Capitalization. ........................................................... | 7 |
| 2.02 | Authority. ................................................................................................. | 8 |
| 2.03 | No Conflicts. ............................................................................................ | 8 |
| 2.04 | Governmental Approvals and Filings. .......................................................... | 8 |
| 2.05 | Books and Records. ................................................................................... | 9 |
| 2.06 | Financial Statements and Condition. ........................................................... | 9 |
| 2.07 | No Material Change. .................................................................................. | 10 |
| 2.08 | Liabilities. ................................................................................................ | 10 |
| 2.09 | Taxes. ...................................................................................................... | 10 |
| 2.10 | Legal Proceedings. .................................................................................... | 11 |
| 2.11 | Compliance With Laws and Orders. ............................................................ | 11 |
| 2.12 | Benefit Plans; ERISA. ............................................................................... | 11 |
| 2.13 | Real Property. .......................................................................................... | 12 |
| 2.14 | Tangible Personal Property. ....................................................................... | 14 |
| 2.15 | Intellectual Property Rights. ...................................................................... | 15 |
| 2.16 | Contracts. ................................................................................................ | 15 |

EXECUTION VERSION

2.17    Insurance. .............................................................................. 17

2.18    Affiliate Transactions. .......................................................... 17

2.19    Licenses; Environmental Matters. ....................................... 17

2.20    Inventory; Accounts Receivable. .......................................... 19

2.21    Vehicles. ................................................................................ 19

2.22    Entire Business. ..................................................................... 19

2.23    Labor Matters. ....................................................................... 19

2.24    Compliance with WARN Act. .................................................. 21

2.25    Brokers. ................................................................................. 21

2.26    Disclosure of All Material Facts. .......................................... 21

2.27    Suppliers. ............................................................................... 21

2.28    Immigration Matters. ........................................................... 21

2.29    Jai Alai Performances. .......................................................... 22

2.30    Break-Up Fee. ....................................................................... 22

2.31    Intangible Personal Property. ............................................... 22

ARTICLE III REPRESENTATIONS AND WARRANTIES OF PURCHASER ..................... 22

3.01    Existence. ............................................................................... 22

3.02    Authority. .............................................................................. 22

3.03    No Conflicts. ......................................................................... 22

3.04    Governmental Approvals and Filings. ................................. 23

3.05    Legal Proceedings. ................................................................ 23

3.06    Brokers. ................................................................................. 23

3.07    Independent Investigation. .................................................. 23

3.08    Alternative Purchasers. ........................................................ 24

3.09    Resources. ............................................................................. 24

3.10    Licensing. .............................................................................. 24

ARTICLE IV COVENANTS OF SELLER .................................................................. 24

4.01    Regulatory and Other Approvals. ........................................ 24

4.02    HSR Filings. ........................................................................... 25

4.03    Investigation by Purchaser. .................................................. 25

4.04    Conduct of Business. ............................................................ 27

4.05    Employee Matters. ................................................................ 27

EXECUTION VERSION

4.06    Certain Restrictions................................................................................. 27

4.07    Delivery of Books and Records, Etc.; Removal of Property............................ 29

4.08    Fulfillment of Conditions........................................................................ 29

4.09    Notice and Cure..................................................................................... 30

4.10    Employees.............................................................................................. 30

4.11    Transition Cooperation............................................................................ 31

4.12    Conveyance of Portions of the Real Property............................................... 31

4.13    Submission for Court Approvals................................................................. 31

ARTICLE V COVENANTS OF PURCHASER .................................................................. 33

5.01    Regulatory and Other Approvals............................................................... 33

5.02    HSR Filings............................................................................................ 33

5.03    Fulfillment of Conditions........................................................................ 34

5.04    Termination of Agreements with Competing Bidders..................................... 34

5.05    Financing Commitment............................................................................ 34

ARTICLE VI CONDITIONS TO OBLIGATIONS OF PURCHASER ....................................... 34

6.01    Representations and Warranties.................................................................. 34

6.02    Performance............................................................................................ 34

6.03    Orders and Laws..................................................................................... 34

6.04    Regulatory Consents and Approvals............................................................ 35

6.05    Consents................................................................................................ 35

6.06    Absence of Changes................................................................................ 35

6.07    FIRPTA Certificate.................................................................................. 35

6.08    Sale Order............................................................................................. 36

ARTICLE VII CONDITIONS TO OBLIGATIONS OF SELLER............................................. 36

7.01    Representations and Warranties.................................................................. 36

7.02    Performance............................................................................................ 36

7.03    Orders and Laws..................................................................................... 36

7.04    Regulatory Consents and Approvals............................................................ 36

7.05    Sale Order............................................................................................. 36

ARTICLE VIII NO SURVIVAL.................................................................................... 37

8.01    No Survival of Representations and Warranties............................................. 37

8.02    "AS-IS" TRANSACTION........................................................................... 37

-iii-

EXECUTION VERSION

ARTICLE IX TAX MATTERS AND POST-CLOSING TAXES ............................................. 37

    9.01    Transfer Taxes. ........................................................................................ 37

ARTICLE X BANKRUPTCY COURT MATTERS ........................................................... 38

    10.01    Competing Transaction. ........................................................................ 38

    10.02    Bankruptcy Court Actions. .................................................................... 38

    10.03    [Intentionally Omitted]. ........................................................................ 39

ARTICLE XI TERMINATION .......................................................................................... 39

    11.01    Termination. ........................................................................................... 39

    11.02    Effect of Termination. .......................................................................... 40

ARTICLE XII DEFINITIONS ............................................................................................ 41

    12.01    Defined Terms. ....................................................................................... 41

    12.02    Construction of Certain Terms and Phrases. ........................................ 53

ARTICLE XIII MISCELLANEOUS ................................................................................... 53

    13.01    Notices. .................................................................................................. 53

    13.02    Entire Agreement. ................................................................................. 55

    13.03    Waiver. ................................................................................................... 55

    13.04    Amendment. ........................................................................................... 55

    13.05    No Third Party Beneficiary. ................................................................... 55

    13.06    Assignment; Binding Effect. ................................................................. 55

    13.07    Headings. ................................................................................................ 56

    13.08    Invalid Provisions. ................................................................................. 56

    13.09    Consent to Jurisdiction and Venue. ...................................................... 56

    13.10    Governing Law. ...................................................................................... 56

    13.11    Attorneys' Fees. ..................................................................................... 56

    13.12    Time of the Essence. ............................................................................. 56

    13.13    Counterparts. .......................................................................................... 56

    13.14    Remedies Cumulative. ........................................................................... 57

    13.15    Releases. ................................................................................................. 57

EXECUTION VERSION

## **SCHEDULES**

Schedule I ........................................................................................ Real Property
Schedule II ................................................................................ Included Contracts
Schedule III ........................................................................Tangible Personal Property
Schedule IV ........................................................................Intangible Personal Property
Schedule V ................................................................................................Surveys
Schedule VI ..........................................................................................Other Assets
Schedule VII ................................................................................ Excluded Contracts
Schedule IX .................................................................. Prepaid Deposits and Expenses
Schedule X .........................................................................Ordinary Course Payables
Schedule 1.09 ...................................................................................Cash on Hand
Schedule 2.01(a) .......................................................................... Corporate Matters
Schedule 2.01(c) .......................................................................... Ownership of Assets
Schedule 2.03(b) ..............................................Seller - Approvals, Consents/Conflicts
Schedule 2.06(b) ...........................................................................Indebtedness
Schedule 2.07 .........................................................................No Material Change
Schedule 2.09(a) ...................................................................................... Taxes
Schedule 2.10 ..............................................................................Legal Proceedings
Schedule 2.11 .........................................................................Compliance With Laws
Schedule 2.12(a) ......................................................................... Benefit Plans; ERISA
Schedule 2.13(a) .......................................................................... Real Property
Schedule 2.13(b) .........................................................................Real Property Issues
Schedule 2.13(d) ......................................................... Insurance Claims/Notice of Defects
Schedule 2.13(e) .........................................................................Notice of Violations
Schedule 2.13(m) .......................................................................... Percentage Payments
Schedule 2.16(a) ................................................................................ Contracts
Schedule 2.16(c) .......................................... Contracts- Rights to Terminate as a Result of Sale
Schedule 2.17 ................................................................................Insurance
Schedule 2.18 .........................................................................Affiliate Transactions
Schedule 2.19(a) .........................................................................Environmental Matters
Schedule 2.20 ..............................................................................Inventory Matters
Schedule 2.23 ...................................................................... Shared Facilities/Services
Schedule 2.24 ..............................................................................Employees
Schedule 2.25 ..............................................................................Brokers
Schedule 2.27 ..............................................................................Suppliers
Schedule 3.03(b) ...................................................... Purchaser - Approvals, Consents/Conflicts

EXECUTION VERSION

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT dated as of March 28, 2014 (the "Effective Date") is made and entered into by and among FRONTON HOLDINGS, LLC, a Delaware limited liability Company or its assignee(s) pursuant to Section 14.06 (as applicable, "Purchaser"), and FLORIDA GAMING CENTERS, INC., a Florida corporation ("Seller") and FLORIDA GAMING CORPORATION, a Delaware corporation ("Parent"), solely with respect to Sections 1.01(a), 1.06(a), 1.07, 1.10, 2.13(b), 4.12, 4.13 and 13.15. Capitalized terms not otherwise defined herein have the meanings set forth in Section 13.01.

WHEREAS, Seller is engaged in the business of the operation of jai alai, slot machines and related gaming and other ancillary businesses, including poker, domino, cards and inter-track wagering, in Miami, Florida (d/b/a Miami Jai Alai) and Ft. Pierce, Florida (d/b/a Ft. Pierce Jai Alai), and holds, and operates under, the Gaming Licenses (collectively, the "Business"); and

WHEREAS, Parent owns certain real estate and is a party to certain contracts related to the Business (collectively, the "Parent Assets"); and

WHEREAS, Seller, Parent and certain of their affiliates are debtors in possession under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"), having filed voluntary petitions for relief under chapter 11 on August 19, 2013 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"); and Seller's chapter 11 case is Case No. 13-29598-RAM (the "Bankruptcy Case"); and

WHEREAS, Seller and Parent, as applicable, desire to sell, transfer and assign to Purchaser, and Purchaser desires to purchase, acquire and/or assume from Seller and Parent, as applicable, all of the Assets, Parent Assets, Included Contracts and Assumed Liabilities, "AS-IS" and "WHERE-IS," free and clear of any and all Liens (other than Permitted Liens), pursuant to Bankruptcy Code sections 105, 363 and 365 and subject to the terms and conditions set forth in this Agreement; and

WHEREAS, Seller and Purchaser have agreed that this Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher or better competing offers for the Assets, solely to the extent any such offers are submitted and considered in accordance with the Sale Procedures Order.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

ARTICLE I

SALE OF ASSETS AND CLOSING

1.01    Purchase and Sale of Assets of Seller.

EXECUTION VERSION

(a)    On the terms and subject to the conditions set forth in this Agreement, at the Closing, Seller and Parent, with respect to the Parent Assets, will sell, transfer, convey, assign and deliver to Purchaser, and Purchaser will purchase, acquire, accept and pay for, all of the Assets of Seller and the Parent Assets, free and clear of any and all Liens (other than Permitted Liens) (the "Sale").

(b)    From and after the Effective Date, Seller shall use its best efforts to obtain from the Bankruptcy Court the Sale Order. The foregoing shall include Seller's obligation to request and use its best efforts to obtain entry of the Sale Order by March 30, 2014. In the event that the Bankruptcy Court does not enter the Sale Order by March 30, 2014, then Seller shall continue to use its reasonable best efforts to obtain the same, but provided that, if Purchaser is then ready, willing and able to consummate the transactions contemplated by this Agreement, each condition set forth at Article VII of this Agreement (other than that set forth at Section 7.05) has been satisfied, and Purchaser is not then in default hereunder, Purchaser shall have the right and option, which may be exercised by Purchaser in its reasonable discretion, to terminate this Agreement by written notice to Seller. Upon any such termination, neither Purchaser nor any of its Representatives shall have any Liability or obligation whatsoever to any party hereto or any other Person under or pursuant to this Agreement, any of the Ancillary Agreements or applicable Law.

1.02    Purchase Price, Assumed Liabilities and Included Contracts.

(a)    Purchase Price. (a) Subject to the terms and conditions of this Agreement, the purchase price for the Assets is One Hundred Forty Million Dollars ($140,000,000) (the "Purchase Price"). The Purchase Price consists of (i) $99,907,336 of outstanding Indebtedness owed by Parent and Seller under the Credit Agreement pursuant to section 363(k) of the Bankruptcy Code (the "Debt Purchase Price"), and (ii) $40,092,664 in cash (the "Cash Purchase Price"). The Purchase Price shall be adjusted based on prorations and credits hereunder and shall be payable to Seller at the Closing in the manner provided in Section 1.04, with the Cash Purchase Price (less amounts owing to ABC on behalf of the Lenders or Holders of Repurchased Claims (as defined in the Settlement Agreement) pursuant to the Settlement Agreement) paid in immediately available United States funds; provided that the "Settlement/Break-Up Fee" as defined in the Sale Procedures shall be paid to Silvermark from the Cash Purchase Price paid to the Seller at the Closing.

(b)    Assumed Liabilities. As additional consideration for the purchase of the Assets, on the Closing Date, Purchaser shall assume, and become solely and exclusively liable for, the Assumed Liabilities. Notwithstanding anything in this Agreement to the contrary, Purchaser shall not assume, and shall be deemed not to have assumed, any liabilities or any obligations or liabilities of Seller or any of its Affiliates or the Business, other than the Assumed Liabilities.

(c)    Included Contracts. On the Closing Date, pursuant to Bankruptcy Code section 365, Seller shall assume and assign to Purchaser, and Purchaser shall accept assignment of, the Included Contracts.

(d)    [Intentionally Omitted].

2

1.03    <u>Purchaser Modifications to Assets and Included Contracts</u>.  Within 30 days after the Effective Date, Purchaser may, without the approval of the Seller: (i) designate any Assets as Excluded Assets, or (ii) designate any contract as an Included Contract, provided, that Seller shall give notice to all applicable parties as required by Law with respect to any contract that is subsequently designated as an Included Contract.

1.04    <u>Closing</u>.  The Closing will take place at the offices of Seller's counsel or such other location as agreed to by Purchaser and Seller, at 10:00 A.M. Eastern time on the Closing Date or at such other time and place as may be mutually agreed upon by the parties. At the Closing, Purchaser will pay the Purchase Price, as adjusted based on prorations and credits under this Agreement, to Seller, with the Cash Purchase Price (as adjusted by Section 1.02 and as adjusted based on prorations and credits under this Agreement) paid by wire transfer of immediately available funds to such accounts as Seller may reasonably direct by written notice delivered to Purchaser at least two (2) Business Days before the Closing Date. Notwithstanding anything in this Agreement to the contrary, the amount of cash to be paid by Purchaser to Seller under this Agreement shall be reduced by the amounts owing to ABC on behalf of the Lenders or Holders of Repurchased Claims (as defined in the Settlement Agreement) pursuant to the Settlement Agreement.  At the Closing, there shall also be delivered to Purchaser and Seller all contracts, documents, certificates, and instruments required to be delivered under <u>Article VI</u> and <u>Article VII</u>.

1.05    <u>Purchase Price Adjustments and Deductions; Prorations and Credits</u>.

(a)    The Assets shall include Cash on Hand (to be verified by procedures set forth in <u>Section 1.09</u> below) up to a maximum of $2,100,000 subject to the last sentence of this Section 1.05(a).  Any amount of Cash on Hand in excess of $2,100,000 shall be retained by Seller as an Excluded Asset; provided, however, that to the extent the amount of assumed Ordinary Course Payables exceeds $2,610,000, then any excess Cash on Hand that would otherwise constitute an Excluded Asset shall first be applied to satisfy such amount of assumed Ordinary Course Payables, with only the remaining balance to constitute an Excluded Asset.  If the total Cash on Hand is less than $2,100,000 for any reason, the Purchase Price shall be decreased in the amount of such deficiency.

(b)    The Purchase Price shall be decreased by an amount equal to the amount of the total Liabilities of Seller associated with Uncashed Tickets, in the manner set forth in <u>Section 1.08</u> of this Agreement.

(c)    The Purchase Price shall also be adjusted (upwards or downwards) as a result of the following prorations and credits relating to the Assets and the ownership and operation of the Business as of the Closing Date and reflected in the Operations Settlement Statement, with Seller liable to Purchaser for such items to the extent such items relate to any time period on or prior to the Closing Date, and Purchaser being liable to the extent such items relate to periods subsequent to the Closing Date or are Assumed Liabilities; <u>provided</u> <u>however</u> that with respect to third parties payment of any such items to such third parties shall be the responsibility of Purchaser after the Closing Date. For the avoidance of doubt, any Taxes (other than Income Taxes and Transfer Taxes) relating to any period shall be paid in full to the Tax Authority by the party owning the Assets as of the date such Taxes become due and payable;

3

provided <u>however</u>; that the foregoing is intended for the benefit of the relevant Tax Authority and shall not affect the adjustments and prorations between Seller and Purchaser described herein.

(i)    Real estate taxes on or with respect to the Assets;

**(ii)**    Rents, lease amounts, additional rents, taxes and other items payable by Seller under the Operating Agreements;

(iii)T    he amount of rents, taxes and charges for sewer, water, telephone, electricity and other utilities relating to the Real Property and the real property subject to any Real Property Leases;

(iv)    All other Taxes (except for Income Taxes and Transfer Taxes) on or with respect to the Assets and/or the Business;

(v)    All prepaid expenses of Seller existing on the Closing Date (the "<u>Prepaid Expenses</u>");

(vi)    All prepaid deposits of Seller in connection with the Business existing on the Closing Date listed on <u>Schedule IX</u> of Seller Disclosure Schedule (the "<u>Prepaid Deposits</u>");

(vii)    All accrued expenses under the Operating Agreements; and

(viii)    Such other items as are mutually agreed by the parties.

(d)    Except as otherwise agreed by the parties, the net amount of all such prorations and credits will be settled and paid by Seller, on the one hand, or Purchaser, on the other hand, as applicable, on the Closing Date, and: (x) if the real estate tax bill for the year of this Agreement has not yet been issued then the proration shall be based on the prior year's taxes; (y) all taxes and real estate assessments will be prorated as of 12:01 A.M. on the Closing Date on the basis of a 365-day year or a 366-day year, as the case may be. If, on the Closing Date, the current real property tax bill with respect to the Business or the Assets is not available, the amount of real property taxes will be apportioned based on the current year's millage applied to that portion of the Purchase Price allocated to the Real Property. If the current year's millage is not fixed, taxes will be apportioned in the same manner based upon the immediately prior year's millage.

(e)    Any adjustments to the Purchase Price shall be made by adjusting the Cash Purchase Price.

1.06    <u>Further Assurances; Post-Closing Cooperation</u>.

(a)    Subject to the terms and conditions of this Agreement, at any time or from time to time after the Closing, at Purchaser's request and without further consideration, Seller or Parent, as applicable, shall execute and deliver to Purchaser such other instruments of sale, transfer, conveyance, assignment and confirmation, provide such materials and

4

information and take such other actions as Purchaser may reasonably deem necessary or desirable in order to effectively transfer, convey and assign to Purchaser, and to confirm Purchaser's title to, all of the Assets, and, to the full extent permitted by Law, to put Purchaser in actual possession and operating control of the Business and the Assets and to assist Purchaser in exercising all rights with respect thereto, and otherwise confer upon Purchaser the benefits of this Agreement. Without limiting the foregoing, Seller or Parent, as applicable, shall cooperate (unless it ceases to exist or is incapable of doing so) with any reasonable request of Purchaser, at Purchaser's expense:  (i) to assume and assign to Purchaser any Contract that Purchaser hereafter discovers is necessary to the conduct of the Business but that is not listed on Schedule II (Included Contracts) or Schedule VII (Excluded Contracts), and (ii) with respect to any Included Contract as to which assumption and assignment requires consent of the non-debtor party but such consent has not been granted, cooperate in any reasonable and lawful arrangement that enables Purchaser to receive the benefits of such Included Contract until such consent has been obtained or Purchaser has obtained the benefits of such contract by other means

(b)    Following the Closing, each party will afford the other party, its counsel and its accountants, during normal business hours, reasonable access to the books, records and other data relating to the Business, Seller and/or the Assets with respect to periods prior to the Closing and the right to make copies and extracts therefrom, to the extent that such access may be reasonably required by the requesting party in connection with (i) the preparation of Tax Returns, (ii) compliance with the requirements of any Governmental or Regulatory Authority, (iii) the determination or enforcement of the rights and obligations of such other party to this Agreement and the transactions contemplated hereby, (iv) in connection with any actual or threatened Action or Proceeding, and (v) to enable the Seller or the Committee, or any successor to the Seller in the Bankruptcy Case, together with professionals engaged by the Seller, the Committee or any such successor, to complete the administration and winding down of the Bankruptcy Case.

(c)    If, in order to prepare its Tax Returns, other documents or reports required to be filed with Governmental or Regulatory Authorities or its financial statements or to fulfill its obligations hereunder, it is necessary that a party be furnished with additional information, documents or records relating to the Business, Seller and/or the Assets, and such information, documents or records are in the possession or control of any other party to this Agreement, such other party shall use its reasonable best efforts to furnish or make available such information, documents or records (or copies thereof) at the recipient's request, cost and expense.  Any information obtained by a party in accordance with this Section shall be held confidentially by it.

(d)    Notwithstanding anything to the contrary contained in this Section 1.06, if Seller, on the one hand, and Purchaser, on the other hand, are in an adversarial relationship in litigation or arbitration, the furnishing of information, documents or records in accordance with subsections (b) and (c) of this Section shall be subject to applicable rules relating to discovery.

(e)    In the event that any party hereto collects or receives, after the Closing, funds belonging to any other party, the party receiving such funds shall be deemed to have collected or received such funds in trust for the benefit of the other party, and shall promptly

5

deliver the amounts to the party entitled thereto, and the parties will cooperate to minimize any such misdirected funds.

1.07    Third Party Consents.    To the extent that the consummation of the transactions contemplated under this Agreement or the Ancillary Agreements will result in or give rise to any conflict, violation, breach, default, termination, cancellation, acceleration or modification or require the consent, approval or notice of the type described in Section 2.03(c) below, in any such case in a manner that is not resolved in the Sale Order (or other order of the Bankruptcy Court) to the reasonable satisfaction of Purchaser, in or with respect to any Included Contract to which Seller or Parent is a party or by which any of their assets and properties is bound, and which is material to or necessary for the operation of the Business. Seller shall, at its sole cost and expense, use its reasonable best efforts to obtain the consent or waiver of the other party or parties to such Included Contract so that the transactions contemplated hereby may be consummated without resulting or giving rise to such conflict, violation, breach, default, termination, cancellation, acceleration or modification.    The provisions of this Section 1.07 shall not impair or impede the right of Purchaser to refuse to consummate the transactions contemplated by this Agreement if Section 6.05 has not been satisfied.

1.08    Uncashed Tickets.    At the Closing, Seller shall make a cash payment to or in favor of Purchaser in an amount equal to, or the Purchase Price shall be decreased by an amount equal to, the amount of the total Liabilities of Seller associated with uncashed, unclaimed or abandoned tickets, gaming chips, tokens and similar gaming Liabilities outstanding (collectively, "Uncashed Tickets") on the Closing Date made by wagers for bets placed at the Business on live events held at the Business.  In addition, at the Closing, Seller shall make a cash payment to Purchaser in an amount equal to the aggregate dollar amount of Uncashed Tickets from inter-track wagers placed on live events held at the Business prior to the Closing (the "Offsite Wagering") which are outstanding on the Closing Date.

1.09    Determination of Cash on Hand at Closing.    The amount of Seller's cash on hand at the Facilities as of the close of business (i.e., 11:59 P.M., E.T.) on the Closing Date (the "Cash on Hand") up to a maximum of $2,100,000 shall be included in the Assets. Seller represents that (i) approximately $2,000,000 in Cash on Hand is maintained at the Miami Jai Alai Facility in the Ordinary Course of Business and used in connection with the daily operations of the Business; and approximately $100,000 in Cash on Hand is maintained at the Ft. Pierce Jai Alai Facility in the Ordinary Course of Business and used in connection with the daily operations of the Business.  Seller and Purchaser will mutually designate individuals who will jointly count and mutually agree on the balance of the Cash on Hand, as determined in accordance with the calculation set forth on Schedule 1.09.  If the parties are unable to agree upon the amount of the Cash on Hand, the parties will mutually designate an independent certified public accounting firm that will determine the Cash on Hand and resolve any disputes between the parties as to the Cash on Hand.  Within two (2) Business Days after the written determination of such Cash on Hand by such independent certified public accounting firm, the parties will settle the allocation of Cash on Hand in accordance with Section 1.05(a).

1.10    Reorganization. If Purchaser determines, in its reasonable discretion, that the transfer of the Assets to Purchaser may qualify as a "reorganization" within the meaning of Section 368(a)(1)(G) of the Code and that such treatment is desirable, Parent and Seller shall take any steps requested by Purchaser that are necessary or desirable to obtain such treatment so long as there are no significant adverse consequences to Parent or Seller (or any adverse impact on the amount or timing of the payments to Seller's or Parent's creditors pursuant to the terms of the Settlement Agreement), including, without limitation, (a) Seller adopting a plan of complete liquidation, (b) reordering or modifying the transactions or steps contemplated by this Agreement (including, by way of example, causing the portion of the Purchase Price being paid through the Debt Purchase Price to instead be paid with equity of the Purchaser which is then distributed to the holders of the debt constituting the Debt Purchase Price in satisfaction of such debt), (c) agreeing to file Tax Returns consistent with qualification of the transactions contemplated hereunder as a reorganization, and (d) amending this Agreement as necessary to effectuate any of the foregoing.

ARTICLE II

REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Purchaser, as of the Effective Date and as of the Closing Date, that[1]:

2.01    Corporate Existence; Capitalization.

(a)    Seller. Seller is a corporation duly incorporated, validly existing and in good standing under the Laws of the State of Florida, and has full corporate power and authority to conduct its business as and to the extent conducted and, subject to authorization as is required by the Bankruptcy Court, to own, operate, use and lease its Assets, and to execute and deliver this Agreement and the Ancillary Agreements to which Seller is a party, to perform its obligations thereunder and hereunder and to consummate the transactions contemplated thereby and hereby. Seller is legally qualified to transact business as a foreign corporation, and is in good standing as such, in each of the jurisdictions in which the nature of its properties and/or the conduct of its business requires such qualification. Schedule 2.01(a) sets forth (i) each of the jurisdictions in which Seller is legally qualified to transact business as a foreign corporation and (ii) each of the names under which Seller has at any time done business. Seller has fully complied in all material respects with all of the requirements of any Law governing the use and registration of fictitious names, and has the legal right to use the names under which it operates its business. Except as set forth on Schedule 2.01(a), Seller has not changed its name or used any assumed or fictitious name other than those listed on Schedule 2.01(a), or been the surviving entity in a merger, acquired any businesses or changed its principal place of business or chief executive office, in each case, since the date of its organization.

(b)    Subsidiaries. Seller does not have any equity investment in any entity, nor does it own any other securities with respect to any entity.

---

[1]    Notwithstanding any other provision of this Agreement or Seller Disclosure Schedule, each exception set forth in such Seller Disclosure Schedule will be deemed to qualify any other representation and warranty set forth in this Agreement to which such exception would be applicable.

(c)      Ownership of Assets.    Seller owns the Assets, and, except as set forth on Schedule 2.01(c), Seller owns the Assets free and clear of all Liens of any kind.

2.02    Authority.    Except for such authorization as is required by the Bankruptcy Court (as hereinafter provided for), Seller has all requisite power, authority and legal capacity to execute, deliver and perform this Agreement and has all requisite power, authority and legal capacity to execute, deliver and perform the Ancillary Agreements, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.  The execution, delivery and performance of this Agreement and the Ancillary Agreements and the consummation of the transactions contemplated hereby and thereby have been duly authorized and requires no other approvals by Seller.  This Agreement has been, and each of the Ancillary Agreements will be at or prior to the Closing, duly and validly executed and delivered by Seller and (assuming the due authorization, execution and delivery by Purchaser, the entry of the Sale Order), this Agreement constitutes, and each of the Ancillary Agreements when so executed and delivered will constitute, legal, valid and binding obligations of Seller enforceable against Seller in accordance with their respective terms.

2.03    No Conflicts.  The execution, delivery and performance by Seller of this Agreement does not and the execution and delivery by Seller of the applicable Ancillary Agreements to which it is a party, the performance by Seller of its obligations under this Agreement and such Ancillary Agreements, and the consummation of the transactions contemplated hereby and thereby, will not:

(a)      conflict with or result in a violation or breach of any of the terms, conditions or provisions of the articles of incorporation, bylaws or other comparable charter documents of Seller, as applicable;

(b)      subject to obtaining the consents, approvals and actions, making the filings and giving the notices with respect to the HSR Act, applicable liquor license laws and regulations, applicable Bankruptcy laws and applicable Gaming Laws or as set forth in Schedule 2.03(b) of Seller Disclosure Schedule, conflict with or result in a violation or breach of any term or provision of any Law or Order applicable to any of Seller, any of its Affiliates, or any of the assets and properties of Seller or any of its Affiliates; or

(c)      except as set forth in Schedule 2.03(b) of Seller Disclosure Schedule, (i) conflict with or result in a violation or breach of, (ii) constitute (with or without notice or lapse of time or both) a default under, (iii) require any of Seller or any of its Affiliates to obtain any consent, approval or action of, make any filing with or give any notice to any Person as a result or under the terms of, (iv) result in or give to any Person any right of termination, cancellation, acceleration or modification in or with respect to, or (v) result in the creation or imposition of any Lien upon any of Seller or any of its Assets under any contract or license to which any of Seller or any such Affiliate is a party or by which any of the Assets is bound.

2.04    Governmental Approvals and Filings.  Except as set forth in Schedule 2.03(b) of Seller Disclosure Schedule, no consent, approval, action, order or authorization of, or registration, declaration or filing with or notice to any Governmental or Regulatory

Authority on the part of Seller is required in connection with the execution, delivery and performance of this Agreement or any of the Ancillary Agreements or the consummation of the transactions contemplated hereby or thereby.

2.05    <u>Books and Records</u>. None of the Books and Records is recorded, stored, maintained, operated or otherwise wholly or partly dependent upon or held by any means (including any electronic, mechanical or photographic process, whether computerized or not) which (including all means of access thereto and therefrom) is not under the direct control of one or more Employees. All Books and Records have been properly and accurately kept, and there are no material inaccuracies or discrepancies contained therein. The minute books for Seller, which shall be made available as reasonably requested by Purchaser for its review at any time prior to the Closing, are and shall continue to be correct, accurate and complete in all material respects at all times, such minute books contain and shall continue to contain true and accurate copies or the executed originals of documents, instruments and certificates with true signatures of the persons purporting to have signed them, and each such minute book contains and shall continue to contain an accurate record of all corporate actions of the shareholders and directors (and any committees thereof) of Seller taken by written consent or at a meeting since the date of its organization. All corporate actions taken by Seller have been duly authorized or ratified. At the Closing, the Books and Records will be delivered to Purchaser.

2.06    <u>Financial Statements and Condition</u>.

(a)    Seller has made available to Purchaser (i) Seller's Annual Report Pursuant to the Uniform Reporting System Prescribed for Pari-Mutuel Permit Holders, audited by a certified public accountant as required by Florida Law, (ii) Seller's audited financial statements (including balance sheet, income statement and statement of cash flows) as of the end of the most recently completed last three (3) fiscal years prior to the latest date on which this representation is deemed to be made and for the twelve-month period ended on such date, (iii) unaudited consolidated financial statements of Seller (including balance sheet, income statement and statement of cash flows) for the portion of the current fiscal year ended on the last day of the calendar month that is no less than 30 days preceding the Effective Date, and (iv) unaudited and unconsolidated  financial statements of Seller (including balance sheet, income statement and statement of cash flows) for the portion of the current fiscal year ended on the last day of the calendar month that is no less than 30 days preceding the Effective Date (collectively, "<u>Financial Statements</u>"). The Financial Statements are complete and correct in all material respects and have been prepared in accordance with GAAP, except that the unaudited financial statements do not contain footnotes and are subject to year-end audit adjustments made in accordance with GAAP. Seller maintains and will continue to maintain a standard system of accounting established and administered in accordance with GAAP. Seller has maintained the Books and Records for the past five (5) years in a manner sufficient to permit the preparation of financial statements in accordance with GAAP.

(b)    Except as set forth on <u>Schedule 2.06(b)</u> of Seller Disclosure Schedule and except for Indebtedness reflected in the Financial Statements, Seller does not have any Indebtedness outstanding at the date hereof, other than Indebtedness incurred in the Ordinary Course of Business.  Seller is not in material default with respect to any outstanding Indebtedness or any instrument relating thereto, except for: (a) such defaults that are disclosed

on Schedule 2.06(b) of Seller Disclosure Schedule; and (b) any failure of Seller as a result of the filing of the Bankruptcy Case to pay any unsecured obligations that were due or accrued at the Petition Date.

2.07    No Material Change.  Except as disclosed in Schedule 2.07 of Seller Disclosure Schedule and Seller's commencement of the Bankruptcy Case, since the date of the latest Financial Statements, no change has occurred that individually or in the aggregate could reasonably be expected to have a Material Adverse Change and no event has occurred or circumstance exists that may result in such a Material Adverse Change.

2.08    Liabilities.  Seller does not know of any material contingent liabilities that are required under GAAP to be disclosed in the Financial Statements and which are not disclosed in the Financial Statements, except current liabilities incurred in the Ordinary Course of Business subsequent to the date of the latest Financial Statements.

2.09    Taxes.

(a)    Except as set forth on Schedule 2.09(a) of Seller Disclosure Schedule, Seller and any consolidated, combined, unitary or aggregate group for Tax purposes of which Seller is or has been a member (collectively, the "Seller's Group") have duly completed and timely filed all Tax Returns required to be filed by them for the previous five (5) years from the date hereof.  All such Tax Returns are correct and complete in all material respects.  Seller does not expect any Tax Authority to assess any additional Taxes for any period.  Except as set forth on Schedule 2.09(a) to Seller Disclosure Schedule, there is (i) no claim for Taxes that is or could be a Lien against the Assets, other than Liens for Taxes not yet due and payable, (ii) no audit of any Tax Return of Seller's Group which has been or which, to Seller's Knowledge, is being conducted by a Tax Authority, and (iii) Seller has no Knowledge of any outstanding or unresolved dispute or claim concerning any Tax Liability of Seller.  No claim has ever been made by a Tax Authority in a jurisdiction where Seller does not file Tax Returns that Seller is or may be subject to taxation by that jurisdiction.

(b)    Except as set forth on Schedule 2.09(a) of Seller Disclosure Schedule, Seller has withheld and paid all material Taxes required by Law to be withheld and paid by Seller with respect to any amounts paid or owing by Seller to any Employee, independent contractor, creditor, shareholder or other third party.  Seller has paid to the appropriate Tax Authorities all amounts so withheld or otherwise due in connection with employment by Seller of such service providers, and has timely filed all requisite Tax Returns with the Tax Authorities with respect to such Taxes.  Seller is not a party to any Tax Proceedings with respect to the withholding of Taxes and/or payment to the Tax Authorities of withholding Taxes or other dues or Taxes with respect to the rendering of services to Seller or otherwise.  To Seller's Knowledge, no investigation is being conducted against Seller by any Tax Authority with respect to any withholding, payment, filing or any other obligations in connection with the above.

(c)    Seller has not waived any statute of limitations in respect of Taxes or agreed to any extension of time with respect to a Tax assessment or deficiency.  Seller has made or will make available to Purchaser all Federal, state, local, and foreign income Tax Returns

filed (for the five (5) year period prior to the date of this Agreement) with respect to Seller and such of those Tax Returns that have been audited.  Seller has delivered or will make available to Purchaser correct and complete copies of all income Tax Returns, examination reports, and statements of deficiencies assessed against or agreed to by Seller (for the five (5) year period prior to the date of this Agreement).

(d)    Seller is not a party to any Tax allocation or sharing agreement, other than this Agreement.

(e)    Seller is not a foreign corporation or other foreign entity subject to Code Sections 897 or 1446 with respect to the sale of the Assets hereunder.

2.10    Legal Proceedings.  Except as set forth on Schedule 2.10 of Seller Disclosure Schedule, there are no Orders outstanding and no Actions or Proceedings pending or, to Seller's Knowledge, threatened, against, relating to or affecting Seller or any of the Assets.  Except as set forth on Schedule 2.10 of Seller Disclosure Schedule, there are no facts or circumstances known to Seller that could be expected to give rise to any such Orders, Actions or Proceedings.

2.11    Compliance With Laws and Orders.  Except as set forth on Schedule 2.11 of Seller Disclosure Schedule, Seller is not, nor has it at any time within the last three (3) years been, nor has Seller received any notice that Seller is or has at any time within the last three (3) years been in violation of or in default under, in any respect, any Law or Order applicable to Seller, the Business, or any of the Assets (including any Gaming License). Neither Seller nor, to Seller's Knowledge, any of its directors, executive officers, representatives, agents or Employees (a) has used or is using any corporate funds for any illegal contributions, gifts, entertainment or other unlawful expenses relating to political activity, (b) has used or is using any corporate funds for any direct or indirect unlawful payments to any foreign or domestic governmental officials or employees, (c) has violated or is violating any provision of the Foreign Corrupt Practices Act of 1977, (d) has established or maintained, or is maintaining, any unlawful fund of corporate monies or other properties or (e) has made any bribe, unlawful rebate, payoff, influence payment, kickback or other unlawful payment of any nature.

2.12    Benefit Plans; ERISA.

(a)    Schedule 2.12(a) of Seller Disclosure Schedule lists all (i) "employee benefit plans" within the meaning of Section 3(3) of ERISA (including any "individual retirement accounts" or "individual retirement annuities" within the meaning of Section 408 of the Code), sponsored by Seller and by each member of any trade or business (whether or not incorporated) that would be treated as a single employer with Seller under Section 4001 of ERISA or Section 414(b), (c), (m) or (o) of the Code (an "ERISA Affiliate"); (ii) employment agreements, including, but not limited to, any individual benefit arrangement, policy or practice with respect to any current or former employee or director of Seller or an ERISA Affiliate, and (iii) other employee benefit, bonus or other incentive compensation, stock option, stock purchase, stock appreciation, severance pay, lay-off or reduction in force, change in control, sick pay, vacation pay, salary continuation, retainer, leave of absence, educational assistance,

service award, employee discount, fringe benefit plans, arrangements, policies or practices, whether formal or informal, oral or written, legally binding or not, which Seller or any ERISA Affiliate maintains, to which any of them contributes, or for which any of them has any obligation or Liability. All such plans, agreements, programs, policies and arrangements shall be collectively referred to as the "Seller Plans."

(b)    With respect to each Seller Plan to Seller's Knowledge, true, correct and complete copies of all documents creating or evidencing each Seller Plan have been delivered or will be made available to Purchaser, and true, correct and complete copies of all reports, forms and other documents required to be filed with any Governmental or Regulatory Authority Entity or furnished to employees, former employees or beneficiaries (including, without limitation, summary plan descriptions, Forms 5500 and summary annual reports for all plans subject to ERISA, but excluding individual account statements and tax forms) within the past five (5) years of the Effective Date have been delivered to Purchaser. There are no negotiations, demands or proposals which are pending or have been made which concern matters now covered, or that would be covered, by the type of agreements required to be listed in Schedule 2.12 (a) of Seller Disclosure Schedule.

2.13    Real Property.

(a)    The Real Property includes all of the real property used in connection with the Business and any other real property owned by Seller. Schedule 2.13(a) of Seller Disclosure Schedule contains a true and correct list of (i) each parcel of real property owned by Seller or used or held for use by Seller in connection with the Business, (ii) each parcel of real property leased by Seller (as lessor or lessee) that is used or held for use in connection with the Business, and (iii) each other parcel of real property included in the Real Property, whether or not the same is owned or leased by Seller.

(b)    Seller, Parent and City National Bank (all as indicated on Schedule 2.13(a)) own and have good and marketable fee simple title to the Real Property, free and clear of all Liens other than Permitted Liens. Except as set forth on Schedule 2.13(b) of Seller Disclosure Schedule, title to the Real Property is insured pursuant to a valid title insurance policy. The Real Property does not rely on any other real property for vehicular or pedestrian ingress or egress to and from such Real Property (other than public roads and thoroughfares) and such Real Property does not rely on any other real property for parking or other easements or rights of way except as set forth on Schedule 2.13(b) of Seller Disclosure Schedule. Except as set forth on Schedule 2.13(b), none of the Real Property, or the Improvements or the use thereof contravenes or violates any building, administrative, environmental, zoning, other land use, occupational safety and health or other applicable Law (whether or not permitted on the basis of prior nonconforming use, waiver or variance) in any material respect. Schedule 2.13(a) of Seller Disclosure Schedule contains a true and complete list of all of the Real Property Leases and true and complete copies thereof, together with all amendments and supplements thereto and all waivers of any terms thereof, have been delivered to Purchaser prior to the execution of this Agreement. Except for the Real Property Leases, there are no other leases, subleases, occupancy or concession agreements in effect with respect to the Real Property. Each Real Property Lease, if any, is a legal, valid and binding agreement, enforceable in accordance with its terms, of Seller and of each other Person that is a party thereto, and there is

no, nor has Seller or Seller received any notice of any, default (or any condition or event which, after notice or lapse of time or both, would constitute a default) by Seller nor by any other Person thereunder.  There are no brokerage commissions due with respect to any such leased space.  Seller shall not modify, amend or terminate any Real Property Leases prior to the Closing without Purchaser's prior written consent.

       (c)    Seller has delivered or will make available to Purchaser true and complete copies of all deeds, leases, mortgages, deeds of trust, certificates of occupancy, title insurance policies, title reports, surveys and similar documents, and all amendments thereof, with respect to the Real Property that are within the possession, or control, of Seller or their respective agents (e.g., surveyors).

       (d)    Except as provided in Schedule 2.13(d) of Seller Disclosure Schedule, the Improvements are in operating condition and in a state of operable maintenance and repair, ordinary wear and tear excepted, and are adequate and suitable for the purposes for which they are presently being used; and, except as provided in Schedule 2.13(d), to Seller's Knowledge, there are no condemnation or appropriation, environmental, zoning or other land use regulation proceedings or investigations pending or threatened against any of the Real Property, the Improvements, Seller or City National Bank which would materially affect the value of the Real Property, the Improvements, or Seller or the use and operation of Real Property and the Improvements as a jai alai facility or slot machine facility, nor are there any assessments affecting the Real Property, the Improvements, or Seller.  Seller has received all final sign-offs, inspections, certificates of occupancy and any other licenses, permits, approvals and consents required by applicable Governmental Authorities with respect to the completion of construction and installation of all of the Improvements and the ability of Seller to legally use the same in the operation of its Business.

       (e)    None of the Real Property or the Improvements, or the use and operation thereof, contravenes or violates any building, zoning, subdivision, land use, administrative, occupational safety and health or other applicable Law, including Environmental Law, in any material respect (whether or not permitted on the basis of prior nonconforming use, waiver or variance).  Except as set forth on Schedule 2.13(e), Seller has received no notice from any Governmental or Regulatory Authority advising Seller of (i) a violation of any such Laws (whether now existing or which will exist under Existing Laws with the passage of time) or (ii) any action which must be taken to avoid a violation thereof.

       (f)    Except as provided in Schedule 2.13(d) of Seller Disclosure Schedule, there are no outstanding Contracts made by Seller or, to Seller's Knowledge, City National Bank for the construction or repair of any improvements to the Real Property which have not been fully paid for.

       (g)    There are no material physical defects in the Real Property or the Improvements.

       (h)    The Surveys, plans and specifications, warranties, and all other Contracts or documents required to be delivered to Purchaser pursuant to this Agreement, are true, correct

and complete copies, and are in full force and effect, without default by any party and without any right of setoff.

(i)      All water, sewer, gas, electric, telephone, and drainage facilities and all other utilities required by Law for Seller's continued use and operation of the Real Property as a jai alai facility (and with respect to the Miami Jai Alai Facility, as a jai alai facility and a slot machine facility) are installed, or may be installed without additional consent of any third party, across public property or valid easements to the boundary lines of the Real Property.

(j)      The zoning and land use designation of the Real Property permit the operation of the Business and the Improvements in connection therewith.  Seller has obtained all licenses, permits, easements, and rights-of-way, including a use permit, required from all Governmental or Regulatory Authorities having jurisdiction over the Real Property or from private parties (i) for the use and operation of the Real Property as a jai alai facility (and with respect to the Miami Jai Alai Facility, as a jai alai facility and a slot machine facility) as presently conducted, (ii) for the use of the Real Property for commercial purposes, and (iii) to assure vehicular and pedestrian ingress to and egress from the Real Property.

(k)      Seller has not received any notice from any insurance carrier of any defects or inadequacies in the Real Property, or in any portion thereof, which would adversely affect the insurability thereof or the cost of such insurance.  Except as set forth on Schedule 2.13(d) of Seller Disclosure Schedule, there are no pending insurance claims relating to the Real Property.

(l)      Seller is not a "foreign person" within the meaning of Sections 1445(f)(3) or 1446(e) of the Code.

(m)      There is no default by any of the parties under the Revenue Sharing Agreements and no event has occurred which with notice and/or lapse of time would cause a default to occur thereunder. Seller shall not amend, modify, terminate or waive any provision of the Revenue Sharing Agreements prior to the Closing without Purchaser's consent.  Attached hereto as Schedule 2.13(m) is a list of the "Percentage Payments" or any other payments that have been made by Seller under the Revenue Sharing Agreements.

(n)      Seller owns all of the beneficial interests of the trust pursuant to which City National Bank, as trustee, owns portions of the Real Property (as such ownership is indicated on Schedule 2.13(a)).

2.14    Tangible Personal Property.  Seller is in possession of and has good title to, or has valid leasehold interests in or valid rights under contract to use, all the Tangible Personal Property.  As of the Closing Date, Seller shall be in possession of and have good and valid title to all such Tangible Personal Property.  All the Tangible Personal Property is free and clear of all Liens, other than Permitted Liens, and is in good working order and condition, ordinary wear and tear, maintenance and replacement excepted, and its use complies in all material respects with all applicable Laws.

2.15    <u>Intellectual Property Rights</u>.

(a)    Seller has interests in or uses only the Intellectual Property disclosed in <u>Schedule IV</u> of Seller Disclosure Schedule in connection with the conduct of the Business, each of which Seller either has all right, title and interest in or a valid and binding right to use. No other Intellectual Property is used or necessary in the conduct of the Business as presently conducted.

(b)    Seller has the exclusive right to use the Intangible Personal Property.

(c)    All registrations with and applications to Governmental or Regulatory Authorities in respect of such Intellectual Property are valid and in full force and effect and are not subject to the payment of any past-due Taxes or maintenance fees or the taking of any other actions by Seller to maintain their validity or effectiveness.

(d)    No material conflict, violation, breach, default, termination, cancellation, acceleration or modification will result with respect to any Contract in respect of such Intangible Personal Property from the consummation of any of the transactions contemplated under this Agreement or any of the Ancillary Agreements.

(e)    Seller has delivered or will make available to Purchaser documentation with respect to any and all computer programs or other know-how or trade secret included in such Intangible Personal Property (including casino, gaming and accounting software used in the operation of the Business, and the contents thereof), which documentation is accurate and sufficient in detail and content to identify and explain such invention, process, design, computer program or other know-how or trade secret and to facilitate its full and proper use without reliance on the special knowledge or memory of any Person.

(f)    Seller is not, nor has it received any notice that it is, in default (or with the giving of notice or lapses of time or both, would be in default) under any Contract to use such Intangible Personal Property. To Seller's Knowledge, no such Intangible Personal Property is being infringed by any other Person. Seller has not received notice that Seller is infringing any Intellectual Property of any other Person, to Seller's Knowledge, no claim is pending or has been made to such effect, and to Seller's Knowledge, Seller is not infringing any Intellectual Property of any other Person.

2.16    <u>Contracts</u>.

(a)    <u>Schedule 2.16(a)</u> of Seller Disclosure Schedule (with paragraph references corresponding to those set forth below) contains a true and complete list of each of the following Contracts or other arrangements which is currently in existence and to which Seller is a party or by which any of the Assets are bound:

(i)    (A) all Contracts providing for a commitment of employment or consultation services for a specified term and payments or unspecified term to, or otherwise relating to employment or the termination of employment of, any Employee, the name, position and rate of compensation of each Employee party to such a Contract and the expiration date of each such Contract; and (B) any written or unwritten representations, commitments, promises,

communications or courses of conduct (excluding any such Contracts referred to in clause (A)) involving an obligation of Seller to make payments in any year to any Employee;

(ii)    all Contracts with any Person containing any provision or covenant prohibiting or limiting the ability of Seller to engage in any business activity or compete with any Person or prohibiting or limiting the ability of any Person to compete with Seller;

(iii)    all     partnership, joint venture, shareholders' or other similar Contracts with any Person;

(iv)    all    Contracts    with    distributors,    dealers,    manufacturer's representatives, sales agencies or franchises with whom Seller deals;

(v)    all Contracts relating to Indebtedness of Seller;

(vi)    all Contracts (other than this Agreement) providing for (A) the future disposition or acquisition of any assets or properties, including the Assets, and (B) any merger or other business combination;

(vii)    all Contracts between Seller, on the one hand, and any Affiliate of Seller, on the other hand;

(viii)    all Contracts (other than this Agreement) that limit or contain restrictions on the ability of Seller to incur Indebtedness or incur or suffer to exist any Lien, or to purchase or sell any Assets or to change the Business;

(ix)    all collective bargaining or similar union contracts covering an Employee or the Jai Alai players; and

(x)    all other Contracts that (A) involve the future payment or potential future payment, pursuant to the terms of any such Contract, by or to Seller of more than Twenty Five Thousand Dollars ($25,000) annually or (B) cannot be terminated within thirty (30) days after giving notice of termination without resulting in any cost or penalty to Seller.

(b)    Each Contract required to be disclosed in Schedule 2.16(a) of Seller Disclosure Schedule is in full force and effect and constitutes a legal, valid and binding agreement, enforceable in accordance with its terms, of each party thereto, and neither Seller nor any other party to such Contract is, or has received notice that it is, in violation or breach of or default under any such Contract (or with notice or lapse of time or both, would be in violation or breach of or default under any such Contract).

(c)    Except as set forth on Schedule 2.16(c) of Seller Disclosure Schedule, the execution, delivery and performance by a Seller Party of this Agreement and the Ancillary Agreements, and the consummation of the transactions contemplated hereby and thereby, will not (A) result in or give to any Person any right of termination, cancellation, acceleration or modification in or with respect to, (B) result in or give to any Person any additional rights or entitlement to increased, additional, accelerated or guaranteed payments under, or (C) result in

16

the creation or imposition of any Lien upon either Seller Party or any of its assets and properties under any Contract.

2.17    Insurance.  Schedule 2.17 of Seller Disclosure Schedule contains a true and complete list (including the names and addresses of the insurers, the names of the Persons to whom such policies have been issued, the expiration dates thereof, the annual premiums and payment terms thereof, whether it is a "claims made" or an "occurrence" policy and a brief description of the interests insured thereby) of all liability, property, workers' compensation and other insurance policies currently in effect that insure Seller, the Business, the Employees or the Assets.  Each such insurance policy is valid and binding and in full force and effect, no premiums due thereunder have not been paid, and Seller has not received any notice of cancellation or termination in respect to any such policy or is in default thereunder.  Neither Seller nor the Person to whom such policy has been issued has received notice that any insurer under any policy referred to in this Section is denying Liability with respect to a claim thereunder or defending under a reservation of rights clause.

2.18    Affiliate Transactions.  Except as set forth on Schedule 2.18 of Seller Disclosure Schedule, (i) no officer, director, partner, shareholder or Affiliate of Seller provides or causes to be provided any assets, services or facilities used or held for use by Seller or in connection with the Business; and neither Seller nor the Business provides or causes to be provided any assets, services or facilities to any such officer, director, partner, shareholder or Affiliate; and (ii) Seller has not entered into or is party to any other transaction with any officer, director, partner, shareholder or Affiliate of Seller or any Affiliate of such Person.

2.19    Licenses; Environmental Matters.

(a)    Seller holds and is in compliance with all environmental permits and Licenses (the "Environmental Permits") and with all other permits and Licenses that are required in order to own and operate the Business and the Assets, including all Gaming Licenses.  Each such License is valid, binding, and in full force and effect, and neither the execution and delivery of this Agreement or any of the Ancillary Agreements nor the consummation of the transactions contemplated hereby or thereby, including the purchase and sale and/or transfer of the Assets hereunder, will result in any impairment, conflict, violation, breach, default, termination, cancellation, acceleration or modification of any such License. There are no revocation proceedings by any Governmental or Regulatory Authority pending regarding the Licenses and nothing has occurred that would give rise to any such revocation. Seller is not, nor has it received any notice that it is, in default (or with the giving of notice or lapse of time or both, would be in default under) any License, including the Gaming Licenses and the Environmental Permits.  Each Environmental Permit is listed in Schedule 2.19(a) of Seller Disclosure Schedule.

(b)    The Assets and all Real Property owned, operated or leased by Seller has been and are in compliance with all applicable Environmental Laws.

(c)    Seller has not been notified by any Governmental or Regulatory Authority or third party of any pending or threatened claim, cause of action, proceeding, or

17

investigation arising under Environmental Laws (an "Environmental Claim") against the Assets, the Business or Seller.

(d)     Seller has not been notified by any Governmental or Regulatory Authority or third party of any pending or threatened claim that, or investigation to determine whether, either the Assets, the Business or Seller may be a potential responsible party for environmental contamination or any Release of Hazardous Material, nor has Seller been notified that any site or facility now or previously owned, operated or leased by Seller is listed or proposed for listing on the NPL or any similar state or local list of sites requiring investigation or clean-up.

(e)     Seller has not entered into or agreed to any consent decree or order relating to compliance with any Environmental Law, to claims of property or natural resource damage, injury, nuisance or trespass under any Environmental Law or to investigation or cleanup of Hazardous Material under any Environmental Law.

(f)     Except for small above-ground tanks necessary to hold fuel for on-site generators, there are no aboveground or underground storage tanks located on, in or under any properties currently or formerly owned, operated or leased by Seller or any predecessor of the Business or Seller.

(g)     Except for any Release of Hazardous Material caused by the use of the Real Property in the past as a cabinet shop and auto repair facility, no Releases of Hazardous Material have occurred at, from, in, on, to or under any property currently or formerly owned, operated or leased by Seller or any predecessor of the Business or Seller, and, based on the Phase II Environmental Site Assessment prepared by EE&G Environmental Services, LLC dated April 8, 2011 (the "Site Assessment"), no Hazardous Material is present in, on or about or is migrating to or from any such property that could give rise to an Environmental Claim by a Governmental or Regulatory Authority or third party against or any Liability or Losses to the Assets, the Business, or Seller. The Seller has delivered the Site Assessment to the Purchaser.

(h)     Neither Seller nor, to Seller's Knowledge, any predecessors thereof has transported or arranged for the treatment, storage, handling, disposal, recycling or transportation of any Hazardous Material to any location that could result in an Environmental Claim against or any Liability or Losses to the Assets, the Business or Seller.

(i)     There is no material amount of asbestos, urea-formaldehyde material, polychlorinated biphenyl containing equipment or lead paint containing materials in, at or on any property owned, leased or operated by Seller.

(j)     Except for any Release of Hazardous Material caused by the use of the Real Property in the past as a cabinet shop and auto repair facility, or as described in the Site Assessment, there are no other circumstances involving environmental conditions that could give rise to an Environmental Claim against or any Liability or Losses to the Assets, the Business or Seller.

(k)     There have been no environmental investigations, studies, audits or tests that are in the possession, or control, of Seller, or its agents, with respect to any property

18

currently or formerly owned, leased or operated by Seller which have not been delivered to Purchaser prior to execution of this Agreement.

2.20    Inventory; Accounts Receivable.

(a)    All the inventory of Seller (i) is accounted for at the lower of cost or market with cost as determined by using the First-In First-Out method, in accordance with GAAP, (ii) consists of a quality and quantity useable and salable in the Ordinary Course of Business consistent with past practice, subject to normal and customary allowances in the industry for spoilage, damage and outdated items. Except as set forth on Schedule 2.20 of Seller Disclosure Schedule, all items included in the inventory are the property of Seller, free and clear of any Lien other than Permitted Liens, have not been pledged as collateral, are not held by Seller on consignment from others and conform in all material respects to all standards applicable to such inventory or its use or sale imposed by Governmental or Regulatory Authorities.

(b)    All Accounts Receivable that are reflected on the balance sheet contained in Seller's most recent Financial Statements or on the accounting records of Seller as of the Closing Date represent or will represent valid obligations arising from sales actually made or services actually performed by Seller in the Ordinary Course of Business. To Seller's Knowledge, there is no contest, claim, defense or right of setoff, other than returns in the Ordinary Course of Business of Seller, under any Contract with any account debtor of an Account Receivable relating to the amount or validity of such Account Receivable.

2.21    Vehicles. Schedule VI of Seller Disclosure Schedule contains a true and complete list of all motor vehicles (the "Vehicles") owned or leased by Seller. Seller has good and valid title to, and has valid leasehold interests in or valid rights to use, each Vehicle, free and clear of all Liens other than Permitted Liens.

2.22    Entire Business. The Assets constitute all of the assets necessary for the conduct of the Business as it is currently being conducted. The Sale will effectively convey to Purchaser ownership of Seller and control of the entire Business and the Assets (free and clear of all Liabilities and Liens except for Assumed Liabilities and Permitted Liens), including all of the tangible and intangible property used by Seller (whether owned, leased or held under license by Seller) in connection with the conduct of the Business as heretofore conducted by Seller. Except as set forth in Schedule 2.23 of Seller Disclosure Schedule, there are no shared facilities or services relating to the Business, which are used in connection with any business or operations of Seller or any of its Affiliates.

2.23    Labor Matters.

(a)    Schedule 2.24 sets forth the name, address and current rate of compensation of each of the Employees. Seller is, and has at all times during the previous five (5) years been, in compliance with all applicable Laws respecting employment and employment practices, terms and conditions of employment, wages, hours of work and occupational safety and health, and is not engaged in any unfair labor practices as defined in the National Labor Relations Act or other applicable Law, ordinance or regulations.

19

(b)    There is no labor strike, dispute, slowdown, stoppage or lockout pending or threatened against or affecting the Business or Seller, and during the past three (3) years there has not been any such action.

(c)    No union represents any of the Employees other than the International Jai Alai Players Association, U.A.W. Local ("IJAPA" or "Jai Alai Players Association") that represents jai alai players that perform and compete at the Miami Jai Alai and the Ft. Pierce Jai Alai frontons.

(d)    Seller is not a party to nor bound by any collective bargaining or similar agreement with any labor organization, or work rules or practices agreed to with any labor organization or employee association applicable to the Employees, other than the Union Agreement.

(e)    None of the Employees is represented by any labor organization in their capacities as employees of Seller and, to Seller's Knowledge, there are no current union organizing activities among the Employees, nor, to Seller's Knowledge, does any question concerning representation exist concerning such Employees other than the Jai Alai Players Association.

(f)    Seller has delivered or will make available to Purchaser a copy of all material written personnel policies, rules or procedures applicable to Employees.

(g)    Seller has not received notice of any unfair labor practice charge or complaint related to the conduct of the Business pending or threatened before the National Labor Relations Board or any other Governmental or Regulatory Authority.

(h)    Seller has not received notice of any grievance arising out of any collective bargaining agreement or other grievance procedure against either of such entities.

(i)    Seller has not received notice of any charges with respect to or relating to any of such entities pending before the Equal Employment Opportunity Commission or any other Governmental or Regulatory Authority responsible for the prevention of unlawful employment practices.

(j)    Seller has not received notice of the intent of any Governmental or Regulatory Authority responsible for the enforcement of labor or employment laws to conduct an investigation relating to the Business or otherwise of Seller.

(k)    Seller has not received notice of any complaints, lawsuits or other proceedings pending or threatened in any forum by or on behalf of any present or former employee, any applicant for employment or classes of the foregoing alleging breach of any express or implied contract of employment, any Law governing employment or the termination thereof or other discriminatory, wrongful or tortious conduct in connection with the employment relationship with Seller.

(l)    The execution of, and performance of the transactions contemplated in, this Agreement will not (either alone or upon the occurrence of any additional or subsequent

events) constitute an event under any Benefit Plan, policy, arrangement or agreement or any trust or loan that will or may result in any payment, acceleration, forgiveness of indebtedness, vesting, distribution, increases in benefits or obligation to fund benefits with respect to any Employee.

2.24    <u>Compliance with WARN Act</u>.    Neither Seller nor the Business has effectuated (i) a "plant closing" (as defined in the WARN Act) affecting any site of employment or one or more facilities or operating units within any site of employment or facility of any of such entities or (ii) a "mass layoff" (as defined in the WARN Act) affecting any site of employment or facility of any of such entities, nor has any of such entities been affected by any transaction or engaged in layoffs or employment terminations sufficient in number to trigger application of any similar Law.  None of the Employees has suffered an "employment loss" (as defined in the WARN Act).

2.25    <u>Brokers</u>.    Except as set forth on <u>Schedule 2.25</u> of Seller Disclosure Schedule, all negotiations relative to this Agreement and the transactions contemplated hereby have been carried out by Seller directly with Purchaser without the intervention of any other Person on behalf of Seller in such manner as to give rise to any valid claim by any Person for a finder's fee, brokerage commission or similar payment.  All fees, commissions and payments due to the parties described on Schedule 2.25 are the sole and exclusive obligation of Seller, and not the obligation of Purchaser.

2.26    <u>Disclosure of All Material Facts</u>.    No representation or warranty to Purchaser contained herein, and no statement contained in any certificate, schedule, list or other writing furnished to any of Purchaser pursuant to the provisions of this Agreement, when considered in the context of the other representations, warranties, statements and information so delivered, contains any untrue statement of a material fact or omits to state a material fact which is necessary in order to make the information given by or on behalf of Seller to Purchaser or its representatives not misleading.

2.27    <u>Suppliers</u>.    <u>Schedule 2.27</u> of Seller Disclosure Schedule contains a true and complete list of the names and addresses of the twenty (20) largest suppliers (indicating approximate dollar volume for each) of products and services to Seller in connection with the Business during the twelve (12) months ended prior to the date hereof, indicating the existing contractual arrangements, if any, for continued supply from each such firm.  Seller has not received any notice of, and none of Seller knows of any reasonable basis for, any development which threatens to affect adversely Seller's arrangements with its suppliers.

2.28    <u>Immigration Matters</u>.    Seller has complied with all relevant provisions of Section 274A of the Immigration and Nationality Act, as amended (the "<u>Immigration Act</u>"). Without limiting the foregoing: (a) each "employee" (as that term is defined in the Immigration Act) of Seller is permitted to be so employed in the United States under the Immigration Act; (b) Seller has examined (and made copies of, if applicable) the documents presented by such employee to establish appropriate employment eligibility under the Immigration Act; (c) Seller has completed and required each employee hired on or since November 11, 1986 to complete a Form I-9 verifying employment eligibility under the Immigration Act; (d) Seller has retained each such respective completed Form I-9 for the length of time required under the Immigration

Act; and (e) no monetary penalties have been assessed against Seller for violation of Section 274A of the Act.

2.29    Jai Alai Performances.  Seller conducted a "full schedule of live racing or games" (as such term is defined in Section 550.002(11), Florida Statutes) at each of Miami Jai Alai and Ft. Pierce Jai Alai in each of the three (3) years preceding the Effective Date.

2.30    Break-Up Fee.  Seller and, to the Seller's knowledge, the Committee, believe that as of the Effective Date there are no reasonable grounds for challenging payment of the "Break-Up Fee" as such term is defined in the Asset Purchase Agreement, dated as of December 17, 2013, by and among Silvermark LLC, Seller and Parent.

2.31    Intangible Personal Property.  Seller owns all of the Intangible Personal Property, free and clear of any and all Liens except for Permitted Liens.

ARTICLE III

REPRESENTATIONS AND WARRANTIES OF PURCHASER

Except as set forth in disclosure schedules delivered to Seller on or prior to the execution of this Agreement, Purchaser hereby represents and warrants to Seller Party as follows:

3.01    Existence.  Purchaser is a limited liability company duly formed, validly existing and in good standing under the Laws of the State of Delaware.  Purchaser has full limited liability company power and authority to execute and deliver this Agreement and the Ancillary Agreements and to perform its obligations thereunder and hereunder and to consummate the transactions contemplated thereby and hereby.

3.02    Authority.  The execution and delivery by Purchaser of this Agreement, and the performance by Purchaser of its obligations hereunder, have been duly and validly authorized by the members and the managers of Purchaser, no other limited liability company action on the part of any of Purchaser being necessary.  This Agreement has been duly and validly executed and delivered by Purchaser and constitutes a legal, valid and binding obligation of Purchaser enforceable against Purchaser in accordance with its terms, except to the extent such enforceability (a) may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar Laws relating to creditors' rights generally and (b) is subject to general principles of equity.

3.03    No Conflicts.   The execution and delivery by Purchaser of this Agreement and the Ancillary Agreements do not and the consummation of the transactions contemplated hereby will not:

(a)    conflict with or result in a violation or breach of any of the terms, conditions or provisions of the articles of organization or operating agreement of Purchaser;

(b)    subject to obtaining the consents, approvals and actions, making the filings and giving the notices with respect to HSR Act and applicable Gaming Laws, and except

as set forth in <u>Schedule 3.03(b)</u>, conflict with or result in a violation or breach of any term or provision of any Law or Order applicable to Purchaser (other than such conflicts, violations or breaches which could not in the aggregate reasonably be expected to materially and adversely affect the validity or enforceability of this Agreement); or

(c)     except as set forth in <u>Section 3.03(b)</u> or <u>Schedule 3.03(b)</u> or as could not, individually or in the aggregate, reasonably be expected to materially and adversely affect the ability of Purchaser to consummate the transactions contemplated hereby or to perform its obligations thereunder or hereunder, (i) conflict with or result in a violation or breach of, (ii) constitute (with or without notice or lapse of time or both) a default under, (iii) require Purchaser to obtain any consent, approval or action of, make any filing with or give any notice to any Person as a result or under the terms of, or (iv) result in the creation or imposition of any Lien upon Purchaser or any of its assets or properties under, any material Contract or License to which Purchaser is a party or by which any of its assets and properties is bound.

3.04    <u>Governmental Approvals and Filings</u>.    Except as set forth in <u>Section 3.03(b)</u> or <u>Schedule 3.03(b)</u>, no consent, approval, action, order or authorization of, or registration, declaration or filing with or notice to any Governmental or Regulatory Authority on the part of Purchaser is required in connection with the execution, delivery and performance of this Agreement or the consummation of the transactions contemplated hereby, except where the failure to obtain any such consent, approval or action, to make any such filing or to give any such notice could not reasonably be expected to materially and adversely affect the ability of Purchaser to consummate the transactions contemplated by this Agreement or to perform its obligations hereunder.

3.05    <u>Legal Proceedings</u>.    There are no Orders outstanding and no Actions or Proceedings pending or, to the Knowledge of Purchaser, threatened against Purchaser which could reasonably be expected to result in the issuance of an Order restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement.

3.06    <u>Brokers</u>.    All negotiations relative to this Agreement and the transactions contemplated hereby have been carried out by Purchaser directly with Seller and Seller without the intervention of any Person on behalf of Purchaser in such manner as to give rise to any valid claim by any Person against any of Seller for a finder's fee, brokerage commission or similar payment.

3.07    <u>Independent Investigation</u>.    In making the decision to enter into this Agreement and any Ancillary Agreements and to consummate the transactions contemplated hereby and thereby, other than reliance on the representation, warranties, covenants and obligations of the Seller set forth in this Agreement and in the Ancillary Agreements, Purchaser has relied solely on its own independent investigation, analysis and evaluation of Seller (including Purchaser's own estimate and appraisal of the value of the business, financial condition, Assets, Liabilities, operations and prospects of Seller). Purchaser confirms to Seller that Purchaser is sophisticated and knowledgeable in the businesses of Seller and is capable of evaluating the matters set forth above.

3.08   <u>Alternative Purchasers</u>.   None of Purchaser or any of its Affiliates is or has been a party to any Contract of any nature, including any confidentiality agreement, nondisclosure agreement or any Contract of a like nature, with any third party that would, in any way, prevent or inhibit that party from entering a Competing Bid or becoming an Alternative Purchaser.

3.09   <u>Resources</u>.   Purchaser has internal resources or financing commitments from responsible financial institutions (the "<u>Financing Commitments</u>") available in connection with the acquisition of the Assets that are in an aggregate amount sufficient to consummate the transactions contemplated hereby.  The Financing Commitments are in full force and effect and are legal, valid and binding obligations of Purchaser and the other parties thereto in accordance with their terms.   There are no conditions precedent or other contingencies related to the funding of the full amounts set forth in the Financing Commitments other than as expressly set forth in the Financing Commitments.  As of the date hereof, Purchaser has no reason to believe that it will be unable to satisfy on a timely basis any term or condition of closing to be satisfied by it contained in the Financing Commitments.

3.10   <u>Licensing</u>.   Certain principals of the Purchaser have been issued Slot Combo Professional licenses by the Department of Business & Professional Regulation, Division of Pari-Mutuel Wagering (the "<u>Department</u>") and will file any additional or necessary forms requested by the Department for licensing purposes.  Purchaser will promptly inform Seller as to any discussions with the Department and the status of the licensing process.

ARTICLE IV

COVENANTS OF SELLER

Seller covenants and agrees with Purchaser that, at all times from and after the Effective Date until the Closing, Seller will comply with all covenants and provisions of this <u>Article IV</u> and other provisions of this Agreement, except to the extent:   (a) Purchaser may otherwise consent in writing; or (b) Seller's court-appointed receiver takes any action (or fails to take any action ) on Seller's behalf that Seller does not have authority to prevent (or, in the case of a failure to act, to compel).

4.01   <u>Regulatory and Other Approvals</u>.   Seller will, promptly after the Effective Date, or, for those actions, requests or filings that would require Seller to identify Purchaser as the transferee of any Assets, promptly following entry of the Sale Order, at Seller's sole cost and expense:

(a)   take all commercially reasonable steps necessary or desirable to obtain all consents, approvals, actions, orders or authorizations of, or make all registrations, declarations or filings with and give all notices to Governmental or Regulatory Authorities or any other Person required of any of Seller, as applicable, to consummate the transactions contemplated hereby and by the Ancillary Agreements, and will diligently and in good faith strive to consummate the transactions contemplated hereby, and timely file any and all applications with the Division of Pari-Mutuel Wagering (jointly with Purchaser, if necessary), and take any and all other commercially reasonable steps necessary or reasonably required by Purchaser to obtain

all consents, approvals, actions, orders or authorizations that may be required under the Gaming Laws in order to (x) permit Purchaser to obtain each of the Gaming Licenses that are held by Seller, (y) permit Purchaser to operate the Business, and (z) permit Purchaser to obtain the Slot Machine Licenses and to retain, install and operate slot machines at the Miami Jai Alai Facility, in each case, upon and after the consummation of the transactions contemplated hereby, including the purchase and sale of the Assets hereunder (collectively, the "Gaming License Approvals");

(b)    provide such other information and communications to such Governmental or Regulatory Authorities or other Persons as Purchaser or such Governmental or Regulatory Authorities or other Persons may reasonably request in connection therewith;

(c)    cooperate with Purchaser in connection with the performance of its obligations under Sections 5.01 and 5.02 below;

(d)    provide, or cause to be provided, prompt notification to Purchaser when any such consent, approval, action, order, authorization, registration, declaration, filing or notice referred to in clause (a) above is obtained, taken, made or given, as applicable, and will advise Purchaser of any communications (and, unless precluded by Law, provide copies of any such communications that are in writing) with any Governmental or Regulatory Authority or other Person regarding any of the transactions contemplated by this Agreement or any of the Ancillary Agreements; and

(e)    coordinate and cooperate with Purchaser in connection with determining whether any action by or in respect of, or filing with, any Governmental or Regulatory Authority is required, or any actions are required to be taken under, or consents, approvals or waivers are required to be obtained from parties to, Seller Material Contracts, in connection with the Sale or the other transactions contemplated by this Agreement.

4.02    HSR Filings.  In addition to and not in limitation of Seller' covenants contained in Section 4.01 above, Seller will (a) take promptly all actions necessary to make the filings required of it or its Affiliates under the HSR Act, (b) comply at the earliest practicable date with any request for additional information received by it or its Affiliates from the Federal Trade Commission or the Antitrust Division of the Department of Justice pursuant to the HSR Act, (c) cooperate with Purchaser in connection with Purchaser's filing under the HSR Act and in connection with resolving any investigation or other inquiry concerning the transactions contemplated by this Agreement commenced by either the Federal Trade Commission or the Antitrust Division of the Department of Justice or state attorneys general and (d) upon Purchaser's request, request early termination of the waiting period with respect to the Sale under the HSR Act.

4.03    Investigation by Purchaser.

(a)    Upon Purchaser's entry into appropriate confidentiality arrangements with Seller, Seller will (i) provide Purchaser and its principals, affiliates, officers, directors, employees, agents, counsel, accountants, financial advisors, lenders, consultants and other representatives (together, "Representatives") with full access, upon reasonable prior notice and

during normal business hours and subject to Seller's reasonable supervision, to its officers, agents and accountants and the Business, Assets and Books and Records, and (ii) furnish Purchaser and such Representatives with all such information and data (including, without limitation, copies of Contracts, Licenses, Benefit Plans and other Books and Records) concerning the Assets, the Business, the Assumed Liabilities and Seller as Purchaser or any of such Representatives reasonably may request in connection with such investigation.

(b)     Seller will deliver to Purchaser promptly after they become available and in any case within twenty (20) days after the end of each calendar month, an unaudited balance sheet of Seller as of the end of such month and unaudited statements of income of Seller for the one (1) month period then ending and the period since September 30, 2013.  Such balance sheets and statements of income shall be consistent with GAAP (except for the exclusion of footnote disclosures and subject to year-end audit adjustments made in accordance with GAAP).  All such balance sheets and statements of income shall be prepared in good faith, consistent with prior periods and derived from the Books and Records of Seller.

(c)     Seller will provide Purchaser with the following reporting for each of Seller's business segments (Miami Jai-Alai Casino, Fort Pierce Jai-Alai and Summer Jai-Alai): Monthly Statement of Operations, Monthly Income Statement, Monthly/Weekly Cash Flow Statement, Monthly/Year To Date Balance Sheet; Monthly/Year To Date Trial Balance, Daily Cash Position Report, Daily Revenue Report (including gaming revenue statistics), and Monthly Accounts Payables Report.

(d)     Seller will deliver to Purchaser monthly reports setting forth all hirings of, terminations of and resignations by any Employees of Seller, which reports shall specify (i) the age, gender and race (if known) of each such Employee; (ii) the date of termination or resignation; and (iii) the stated reason or cause (if known) for such termination or resignation.

(e)     Prior to Closing, Seller shall permit Purchaser to enter upon, inspect and examine, the Real Property and other Assets and to have such inspections thereof performed as Purchaser shall desire, as determined in Purchaser's sole discretion, including, without limitation, inspections, tests and assessments pertaining to environmental matters, title, survey, zoning, land use, the physical condition of the Real Property and Improvements including structural and roof inspections, engineering studies, and otherwise do that which is necessary or desirable to determine the condition of the Real Property, the Assets and/or any part thereof and to make all necessary or desirable tests of the Real Property, the Assets and/or any part thereof including but not limited to, environmental assessments of the Real Property (the "Inspections"), provided that any Inspections shall not be disruptive to the Business.  Purchaser shall pay for all costs and expenses of the Inspections (excepting therefrom the Surveys).

(f)     As promptly as practicable, Seller will deliver copies of all governmental License applications and other filings made between the Effective Date and the Closing Date by Seller with any Governmental or Regulatory Authority in connection with the operation of the Business or otherwise.

4.04   Conduct of Business.  Seller shall conduct and operate the Business only in the Ordinary Course of Business.  In addition, from the Effective Date through and including the Closing Date, Seller shall:

(a)   preserve and maintain all Licenses, including all Gaming Licenses;

(b)   preserve the goodwill of those suppliers and customers having material business relationships with Seller and the Business;

(c)   to the extent available, maintain policies of insurance with substantially the same insurance coverage as exists as of the Effective Date against loss or damage to the Assets and as regulated by applicable Law;

(d)   maintain the Assets, in the aggregate, in a condition comparable to their current condition, reasonable wear, tear and depreciation excepted, and except for Tangible Personal Property disposed of, sold or consumed in the Ordinary Course of Business; and

(e)   pay all undisputed post-petition ordinary course payables as they come due and make all undisputed post-petition payments related to Assumed Contracts that become or became due or payable pursuant to the terms thereof or otherwise in accordance with the Bankruptcy Court.

4.05   Employee Matters.

(a)   Seller shall administer each Benefit Plan, or cause the same to be so administered, in all material respects in accordance with the applicable provisions of the Code, ERISA and all other applicable Laws.  Seller shall promptly notify Purchaser in writing of each receipt by Seller (and furnish Purchaser with copies) of any notice of investigation or administrative proceeding by the IRS, Department of Labor, PBGC or other Person involving any Benefit Plan.

(b)   Seller shall fully comply with all Laws governing and/or regulating the termination of the employment relationship and satisfy all obligations arising on or prior to the Closing Date as an employer, including, without limitation, those imposed by the WARN Act, ERISA, COBRA, IRCA, OSHA, Title VII, the NLRA and any state or Federal law and/or regulation regulating wages, hours and/or working conditions of current and/or former employees, including, without limitation, applicants, retirees and those who in the future could be classified as such.  Seller will deliver any and all appropriate notices required under the WARN Act no later than five (5) days after the date of this Agreement (or such other date as Purchaser shall approve in its reasonable discretion).

4.06   Certain Restrictions.  From the Effective Date through and including the Closing Date, Seller shall not:

(a)   acquire or dispose of, or create any Lien other than a Permitted Lien on, any material Assets or waive, cancel, compromise or release any rights with respect to any material Assets or Included Contracts;

27

(b)    engage in any merger or other business combination;

(c)    enter into, amend, modify, terminate (partially or completely), reject, grant any waiver under or give any consent with respect to any Included Contract without Purchaser's prior written consent, which shall not be unreasonably withheld or delayed;

(d)    enter into, amend, replace, modify, supplement, terminate (partially or completely), grant any waiver under or give any consent with respect to any Approved Gaming Contract or the Union Agreement without Purchaser's prior written consent, which shall not be unreasonably withheld or delayed;

(e)    violate, breach or default under, or take or fail to take any action that (with or without notice or lapse of time or both) would constitute a violation or breach of, or default under, any term or provision of any Contract relating to the Business, the Assets or Seller;

(f)    incur, purchase, cancel, prepay or otherwise provide for a complete or partial discharge in advance of a scheduled payment date with respect to, or waive any right of Seller under, any Liability of or owing to Seller without Purchaser's prior written consent, which shall not be unreasonably withheld or delayed;

(g)    engage in any transaction with any officer, director or Affiliate of Seller without Purchaser's prior written consent, which shall not be unreasonably withheld or delayed;

(h)    except as reasonably necessary to install a sprinkler system and emergency lighting at the Miami Jai Alai Facility, as required by the City of Miami and described in Schedule 2.13(d), make capital expenditures or commitments for additions to property, plant or equipment constituting capital assets in an amount exceeding Fifty Thousand Dollars ($50,000) with respect to any one project or related projects or in an amount exceeding Two Hundred Fifty Thousand Dollars ($250,000) in the aggregate in any twelve (12) month period;

(i)    materially increase the salary, bonus or other compensation of any Employees of Seller, as applicable, other than pursuant to bonus plans that have been approved prior to the Effective Date and increases pursuant to employment agreements entered into prior to the Effective Date;

(j)    amend its articles of incorporation or bylaws or adopt any corporate action in any manner that would have an adverse effect on any of the transactions contemplated hereby;

(k)    fail to preserve intact the existing relationships with its material suppliers, customers and Employees and others with whom Seller has business relationships, and Seller shall cause Seller to (and Seller shall) continue marketing programs, billboard advertisements, promotions, advertising, player tournaments and events, bus programs and similar activities in the Ordinary Course of Business consistent with past practice and as permissible pursuant to Seller's cash collateral budget applicable in the Bankruptcy Case. In that regard, Seller will not curtail marketing expenditures from historic levels, and will preserve billboard leases,

marketing Contracts and bus programs.  In the event a billboard, marketing Contract or bus program is subject to renewal, Seller will notify Purchaser and will consult with Purchaser as to whether such a Contract or program should be renewed;

(l)    change any of Seller's current policies or practices relating to the extension of credit to customers or the collection from customers of receivables arising from gaming operations;

(m)    make or adopt any change in their accounting practices or policies;

(n)    make any adjustment to the Books and Records other than in respect of the conduct of Business in the Ordinary Course of Business;

(o)    issue, sell, pledge, transfer, dispose of, encumber or lease, or authorize the issuance, sale, pledge, transfer, disposition or lease of, or grant of an encumbrance on, any Asset or Included Contract of Seller (except to Purchaser in accordance with the provisions of this Agreement);

(p)    declare, set aside, make or pay any dividend or other distribution, payable in cash, stock, property or otherwise, of or with respect to its capital stock, partnership interests or other securities; or

(q)    acquire any interest in any corporation, partnership or other business organization or division thereof, or make any investment either by purchase of stock or securities, contributions of capital or property transfer.

4.07    Delivery of Books and Records, Etc.; Removal of Property.

(a)    On the Closing Date, Seller will deliver to Purchaser all of the Books and Records and will deliver or make available to Purchaser at the location at which the Business is conducted all other Assets as are in such Person's possession at other locations, and if at any time after the Closing, Seller discovers in its possession or under its control any other Books and Records or other Assets, it will forthwith deliver such Books and Records or other Assets to Purchaser.

(b)    Unless otherwise agreed to in writing, within sixty (60) days after the Closing Date, Seller shall remove all items of tangible Excluded Assets from the Real Property and Improvements.  Such removal shall be at the sole cost and risk of Seller, including risk of loss and damage to such assets and properties.  Purchaser shall have any Liability to Seller with respect to such removal and transportation.  Seller shall be responsible for all repairs to the Real Property and Improvements due to any damage caused by any of them and their employees and agents in connection with the removal of such assets and properties.

4.08    Fulfillment of Conditions.  Seller (a) will execute and deliver at the Closing each Ancillary Agreement, certificate, document and instrument that it is hereby required to execute and deliver as a condition to Closing, (b) will take all commercially reasonable steps necessary or desirable and proceed diligently and in good faith (i) to satisfy each condition to the obligations of Purchaser contained in this Agreement and (ii) to

consummate all of the transactions contemplated by this Agreement, and (c) will not take or fail to take any action that, in either case, could reasonably be expected to result in the nonfulfillment of any obligation of any of Seller or Purchaser contained in this Agreement.

4.09    Notice and Cure.    Seller will notify Purchaser in writing of, and contemporaneously will provide Purchaser with true and complete copies of any and all information or documents relating to, and will use all commercially reasonable efforts to cure before the Closing, any event, transaction or circumstance, promptly after it becomes known to it, occurring after the date of this Agreement that causes any covenant or agreement of Seller under this Agreement to be breached or that renders untrue any representation or warranty of Seller contained in this Agreement as if the same were made on or as of the date of such event, transaction or circumstance.  No notice or update given pursuant to this Section shall have any effect on the representations, warranties, covenants or agreements contained in this Agreement for purposes of determining satisfaction of any condition contained herein or shall in any way limit Purchaser's rights and remedies against Seller with respect to such breach or inaccuracy.

4.10    Employees.

(a)    Promptly following entry of the Sale Order, Seller shall provide Purchaser with access to all Employees upon the terms and conditions set forth in this Agreement.  Purchaser shall be entitled to conduct one-on-one meetings with select employees employed by Seller in connection with the Business on or after the entry of the Sale Order at such times as Purchaser shall reasonably request, and at such location in Miami, Florida and Ft. Pierce, Florida as shall be reasonably acceptable to Purchaser and Seller.  In connection therewith, Seller shall provide Purchaser with access to complete personnel files of all employees employed by Seller, provided such access and disclosure does not violate any Laws. Following entry of the Sale Order, the parties may mutually agree that Seller provide Purchaser with space at the Real Property upon which Purchaser may establish an information center to be staffed and equipped by Purchaser at its sole cost and expense.  After entry of the Sale Order, Purchaser shall also be entitled to make general distributions to all Employees of newsletters, brochures and other information relating to this transaction and their operations and the operations of their Affiliates.  Such distributions may include distributions through the information center or by direct mail to the Employees.  Within fifteen (15) days prior to the Closing, Purchaser shall provide Seller (i) a written list of all Employees of Seller that Purchaser intends to continue to employ immediately after the Closing (collectively, the "Continuing Employees"); and (ii) a written list of all Employees that Purchaser does not intend to retain as of the Closing (collectively, the "Affected Employees").  Seller shall not be liable for any severance, vacation pay, or accrued compensation relating to any Continuing Employees or Affected Employees for services rendered prior to the Closing Date.  While it is the current intention of Purchaser to continue to employ the Continuing Employees on an at-will basis following the Closing, the parties acknowledge and agree that Purchaser shall have the right to terminate any such Continuing Employee at any time at or after the Closing.  Seller shall not interfere or compete with Purchaser with respect to the employment of any Employee by Purchaser after the Closing, and shall cooperate with Purchaser with respect to the employment of Employees by Purchaser.

(b)    Notwithstanding anything to the contrary in this Article IV, Purchaser agrees to continue the employment of a certain amount of Employees of Seller at the Closing so that a WARN Act notification shall not be required to be issued by Seller.  Seller shall provide to Purchaser, (i) within twenty (20) days but no later than ten (10) days prior to the Closing; and (ii) on the Closing Date, a list of all full time employees (as such term is defined under the WARN Act) of Seller whose employment has been terminated during the ninety (90) day period prior to each such date.

(c)    On or as soon as reasonably practicable after the Closing Date, Seller shall (i) cause the trustee of the Seller 401(k) Plan (the "Seller 401(k) Plan") to segregate the assets of the Seller 401(k) Plan representing the full account balances of Continuing Employees as of the Closing Date, (ii) make any and all filings and submissions to the appropriate Governmental or Regulatory Authorities arising in connection with such segregation of assets and (iii) make all necessary amendments to the Seller 401(k) Plan and related trust agreement to provide for such segregation of assets and the transfer of assets as described below.  As soon as practicable (but no later than thirty (30) days) after the Closing Date, Purchaser shall establish or designate an individual account plan for the benefit of Continuing Employees (the "Purchaser 401(k) Plan"), shall use commercially reasonable efforts to take all necessary action, if any, to qualify such plan under the applicable provisions of the Code and make any and all filings and submissions to the appropriate Governmental or Regulatory Authorities required to be made by it in connection with the transfer of assets described below.  As soon as practicable (but no later than sixty (60) days) following the Closing Date, Seller shall cause the trustee of the Seller 401(k) Plan to transfer in the form of cash the full account balances of the Continuing Employees under the Seller 401(k) Plan (which account balances will have been credited with appropriate earnings attributable to the period from the Closing Date to the date of transfer described herein), reduced by any necessary benefit or withdrawal payments to or in respect of Continuing Employees occurring during the period from the Closing Date to the date of transfer described herein, to the appropriate trustee as designated by Purchaser under the trust agreement forming a part of Purchaser 401(k) Plan.

4.11    Transition Cooperation.  It is the intention of Purchaser that Purchaser be in a position to operate the Business immediately following the Closing.  Seller agrees to cooperate with Purchaser to effect the orderly transition at Closing from Seller's accounting, payroll, human resources, general ledger, point of sale and similar information technology/information systems to those of Purchaser.  In that regard, Seller agrees to cooperate with Purchaser prior to Closing in effecting such system conversions including any necessary testing, installations, run through, data input and the like on Purchaser's communications equipment, human resources, data lines, information technology/information, network, inventory, accounts receivable, payroll and any other systems or networks to effect a smooth transition of the Business as of the Closing.

4.12    Conveyance of Portions of the Real Property.  Seller and Parent each covenant that on or before the Closing, it shall cause the portions of the Real Property that are currently owned by Seller or Parent (as indicated on Schedule 2.13(a)) to be conveyed to Purchaser.

4.13    Submission for Court Approvals.

(a)     At least 48 hours prior to serving or filing any motion, application, pleading, schedule, report and other paper (including memoranda, exhibits, supporting affidavits and evidence and other supporting documentation) in the Bankruptcy Case relating to or affecting this Agreement, or any pleading related to the motion to approve the sale (the "Sale Motion") or seeking subsequent relief related thereto, Seller shall provide a draft thereof to Purchaser and its counsel, and provide Purchaser with a reasonable opportunity to consult within such 48 hour period with Seller with respect to any and all such motions, applications, pleadings, schedules, reports and other papers.

(b)     Seller and Parent shall take all actions reasonably required to assume and assign the Included Contracts to Purchaser, including taking all actions reasonably required to obtain a Bankruptcy Court order containing a finding that the proposed assumption and assignment of the Included Contracts to Purchaser satisfies all applicable requirements of section 365 of the Bankruptcy Code.

(c)     Promptly upon the execution of this Agreement, Seller shall use reasonable best efforts to obtain as soon as possible, but subject to the full notice requirements of the Bankruptcy Code, the Bankruptcy Rules and the Sale Order.  The Sale Order shall be in form and substance satisfactory to Purchaser.

(d)     If the Sale Order shall be appealed by any Person (or if any petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing, reargument or leave to appeal shall be filed with respect to any such order), Seller and Purchaser will cooperate in taking steps to reasonably diligently defend such appeal, petition or motion and use reasonable best efforts to obtain an expedited resolution of any such appeal, petition or motion.

(e)     Supplement to Seller Disclosure Schedule. From time to time before the Closing, Seller shall have the right (but not the obligation) to supplement or amend the Seller Disclosure Schedule with respect to any matter hereafter arising or of which it becomes aware after the date hereof (each a "Schedule Supplement"); provided that any such Schedule Supplement shall not affect the condition to Purchaser's obligations under this Agreement pursuant to Section 6.06 which shall be determined without regard to any Schedule Supplement. Any disclosure in any such Schedule Supplement shall not be deemed to have cured any inaccuracy in or breach of any representation or warranty contained in this Agreement, including for purposes of the termination rights contained in this Agreement or of determining whether or not the conditions set forth in Article VI have been satisfied.  Purchaser shall have the right to terminate this Agreement within five (5) Business Days of its receipt of such Schedule Supplement in the event any Schedule Supplement reflects a Material Adverse Change.  Purchaser shall be deemed to have irrevocably waived any right to terminate this Agreement with respect to such matter if notice of Purchaser's election to terminate is not delivered to Seller within five (5) Business Days after Purchaser's receipt of the applicable Schedule Supplement.

EXECUTION VERSION

## ARTICLE V

## COVENANTS OF PURCHASER

Purchaser covenants and agrees with Seller that, at all times from and after the date hereof until the Closing, it will comply with all covenants and provisions of this Article V, except to the extent Seller may otherwise give its affirmative consent in a separate writing.

5.01    Regulatory and Other Approvals.    Purchaser will as promptly as practicable, at its sole cost and expense:

(a)    take all commercially reasonable steps necessary or desirable to obtain all consents, approvals, actions, orders or authorizations of, or make all registrations, declarations or filings with and give all notices to Governmental or Regulatory Authorities or any other Person required of Purchaser to consummate the transactions contemplated hereby and by the Ancillary Agreements, excluding the licensing of Affiliates or institutional equity owners of Purchaser (who, based on the advice of counsel to Purchaser, should not be required by Governmental or Regulatory Authorities to be licensed or otherwise be subject to regulatory inquiry), but including without limitation, promptly but no more than ten (10) days after the later to occur of (1) the Effective Date, or (2) the date on which the applicable Seller provide to Purchaser all information, documentation, plans and other items that are required under applicable Law to be submitted by such Seller, file any and all applications with the Division of Pari-Mutuel Wagering (jointly, with Seller, if necessary) that may be necessary or reasonably required of Purchaser to obtain all Gaming License Approvals;

(b)    provide such other information and communications to such Governmental or Regulatory Authorities or other Persons as such Governmental or Regulatory Authorities or other Persons may reasonably request in connection therewith; and

(c)    provide reasonable cooperation to Seller in connection with the performance of its obligations under Section 4.01(a) and Section 4.02 above.

(d)    Purchaser will provide, or cause to be provided, notification to Seller when any such consent, approval, action, order, authorization, registration, declaration, filing or notice referred to in clause (a) above is obtained, taken, made or given, as applicable, and will advise Seller of any communications (and, unless precluded by Law, provide copies of any such communications that are in writing) with any Governmental or Regulatory Authority regarding any of the transactions contemplated by this Agreement.

5.02    HSR Filings.    In addition to and not in limitation of Purchaser's covenants contained in Section 5.01 above, Purchaser will (a) take promptly all actions necessary to make the filings required of it or its Affiliates under the HSR Act, (b) comply at the earliest practicable date with any request for additional information received by it or its Affiliates from the Federal Trade Commission or the Antitrust Division of the Department of Justice pursuant to the HSR Act and (c) cooperate with Seller in connection with Seller' filing under the HSR Act and in connection with resolving any investigation or other inquiry concerning the transactions contemplated by this Agreement commenced by either the Federal

Trade Commission or the Antitrust Division of the Department of Justice or state attorneys general.

5.03    Fulfillment of Conditions.  Purchaser (a) will execute and deliver at the Closing each Ancillary Agreement, certificate, document and instrument that it is hereby required to execute and deliver as a condition to the Closing, (b) will take all commercially reasonable steps necessary or desirable and proceed diligently and in good faith (i) to satisfy each condition to the obligations of Seller contained in this Agreement, and (ii) to consummate all of the transactions contemplated in this Agreement, and (c) will not take or fail to take any action that could reasonably be expected to result in the nonfulfillment of any obligation of any of Seller or Purchaser contained in this Agreement.

5.04    Termination of Agreements with Competing Bidders.  Purchaser will, and will cause its Affiliates, to terminate, effective as of the Effective Date, any Contract of any nature, including any confidentiality agreement, nondisclosure agreement or any Contract of a like nature, with any third party that would, in any way, prevent or inhibit that third party from entering a Competing Bid or becoming an Alternative Purchaser.

5.05    Financing Commitment.    Purchaser will have the necessary financing available and ability to consummate the transactions contemplated by this Agreement, at or before the Closing.

ARTICLE VI

CONDITIONS TO OBLIGATIONS OF PURCHASER

The obligations of Purchaser hereunder to purchase the Assets and to consummate the transactions contemplated hereunder are subject to the fulfillment, at or before the Closing, of each of the following conditions (all or any of which may be waived in whole or in part by Purchaser in its sole discretion):

6.01    Representations and Warranties.    All of the representations and warranties made by Seller in this Agreement (considered collectively), and each of these representations and warranties (considered individually), shall have been true and correct as of the Effective Date (except that those representations and warranties that address matters only as of a specified date shall be true and correct in all respects as of that specified date), and shall be true and correct on and as of the Closing Date as though made on and as of the Closing Date.

6.02    Performance.  Seller shall have performed and complied with, in all material respects, each agreement, covenant and obligation required by this Agreement to be so performed or complied with by it, at or before the Closing (including, without limitation, the delivery by Seller of all of the documents and other instruments required to be so delivered at the Closing).

6.03    Orders and Laws.  There shall not be in effect on the Closing Date any Order or Law restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement or any of the

34

Ancillary Agreements or which could reasonably be expected to otherwise result in a material diminution of the benefits of the transactions contemplated by this Agreement or any of the Ancillary Agreements to Purchaser, and there shall not be pending on the Closing Date any Action or Proceeding in, before or by any Governmental or Regulatory Authority which could reasonably be expected to result in the issuance of any such Order or the enactment or promulgation of any such Law or which could reasonably be deemed applicable to Purchaser or the transactions contemplated by this Agreement or any of the Ancillary Agreements.

6.04    Regulatory Consents and Approvals.  All consents, approvals, actions, orders or authorizations of, all registrations, declarations or filings with and all notices to any Governmental or Regulatory Authority necessary to permit Purchaser and each of Seller to perform their respective obligations under this Agreement and the Ancillary Agreements and to consummate the transactions contemplated hereby and thereby shall have been duly obtained, made or given, shall be in form and substance satisfactory to Purchaser in its sole and absolute discretion, shall be in full force and effect, shall not be subject to any condition that has not been satisfied or waived and not subject to any condition or contingency and all terminations or expirations of waiting periods imposed by any Governmental or Regulatory Authority necessary for the consummation of the transactions contemplated by this Agreement and the Ancillary Agreements, including under the HSR Act, shall have occurred.  Without limiting the generality of the foregoing, Purchaser shall have received evidence, satisfactory to Purchaser in its reasonable discretion, of the issuance of all consents, approvals, actions, orders or authorizations (or in lieu thereof waivers) under Gaming Laws described in Section 4.01(a) or Section 5.01(a) (which include the Gaming License Approvals), and evidence of effectiveness of each Gaming License as of the Closing Date.  As of the Closing Date, each of Seller's Gaming Licenses, including the Slot Machine Licenses, shall be valid and binding, Seller shall not be in default under Seller' Gaming Licenses, including the Slot Machine Licenses, there shall be no revocation proceedings by any Governmental or Regulatory Authority pending regarding Seller's Gaming Licenses, including the Slot Machine Licenses, and nothing shall have occurred that would give rise to any such revocation.

6.05    Consents.  Unless waived in writing by Purchaser, any consents to the performance by Purchaser or Seller of their obligations under this Agreement and the Ancillary Agreements or to the consummation of the transactions contemplated hereby and thereby as are required under any Contract to which any such Person is a party or by which any of their respective assets and properties are bound (a) shall have been obtained, (b) shall be in form and substance satisfactory to Purchaser in its sole and absolute discretion, (c) shall not be subject to the satisfaction of any condition that has not been satisfied or waived, and (d) shall be in full force and effect.

6.06    Absence of Changes.  From the Effective Date through the Closing Date, there shall have been no Material Adverse Change, or any event or development, which individually or together with other such events, could be reasonably expected to result in a Material Adverse Change.

6.07    FIRPTA Certificate.  Purchaser shall have received from Seller an affidavit (the "FIRPTA Affidavit") in the form required by the Treasury Regulations issued pursuant to Section 1445 of the Code.  Notwithstanding anything to the contrary set forth

35

herein, if Seller fails to provide Purchaser with such affidavit, Purchaser shall be entitled to waive the requirement above for a FIRPTA Affidavit and withhold the requisite amounts from the Purchase Price payments in accordance with Section 1445 of the Code.

6.08    Sale Order. The Bankruptcy Court shall have entered the Sale Order, the Sale Order shall have become a Final Order and the Sale Order shall not have been terminated, revoked, reversed, stayed or modified without Purchaser's written consent.

ARTICLE VII

CONDITIONS TO OBLIGATIONS OF SELLER

The obligations of Seller hereunder to sell the Assets are subject to the fulfillment, at or before the Closing, of each of the following conditions (all or any of which may be waived in whole or in part by Seller in its sole discretion):

7.01    Representations and Warranties.    The representations and warranties made by Purchaser in this Agreement shall be true and correct in all material respects on and as of the Closing Date as though made on and as of the Closing Date (except that those representations and warranties that address matters only as of a specified date shall be true and correct in all material respects as of that specified date).

7.02    Performance. Purchaser shall have performed and complied with, in all material respects, the agreements, covenants and obligations required by this Agreement to be so performed or complied with by Purchaser at or before the Closing.

7.03    Orders and Laws. There shall not be in effect on the Closing Date any Order or Law restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement.

7.04    Regulatory Consents and Approvals.    All consents, approvals and actions of, filings with and notices to any Governmental or Regulatory Authority necessary to permit Purchaser and to perform their respective obligations under this Agreement and to consummate the transactions contemplated hereby, shall have been duly obtained, made or given, and shall be in full force and effect and all terminations or expirations of waiting periods imposed by any Governmental or Regulatory Authority necessary for the consummation of the transactions contemplated by this Agreement and the Ancillary Agreements, including under the HSR Act, shall have occurred.

7.05    Sale Order. The Bankruptcy Court shall have entered the Sale Order in a form and substance reasonably satisfactory to Seller and the Sale Order shall not have been terminated, revoked, reversed, stayed or modified.

## ARTICLE VIII

## NO SURVIVAL

8.01    <u>No Survival of Representations and Warranties</u>.    The parties hereto agree that the representations and warranties contained in this Agreement shall not survive the Closing hereunder, and none of the parties shall have any liability to each other after the Closing for any breach thereof.  The parties hereto agree that the covenants contained in this Agreement to be performed at or after the Closing shall survive the Closing hereunder, and each party hereto shall be liable to the other after the Closing for any breach thereof.

8.02    "AS-IS" TRANSACTION.    PURCHASER    HEREBY ACKNOWLEDGES AND AGREES THAT, FROM AND AFTER THE CLOSING DATE, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE PROPERTY OR BUSINESS INCLUDING INCOME TO BE DERIVED OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE PROPERTY, THE PHYSICAL CONDITION OF ANY PERSONAL PROPERTY COMPRISING A PART OF THE PROPERTY OR WHICH IS THE SUBJECT OF ANY OTHER LEASE OR CONTRACT TO BE ASSUMED BY PURCHASER AT THE CLOSING, THE ENVIRONMENTAL CONDITION OR OTHER MATTER RELATING TO THE PHYSICAL CONDITION OF ANY REAL PROPERTY OR IMPROVEMENTS WHICH ARE THE SUBJECT OF ANY REAL PROPERTY LEASE TO BE ASSUMED BY PURCHASER AT THE CLOSING, THE ZONING OF ANY SUCH REAL PROPERTY OR IMPROVEMENTS, THE VALUE OF THE PROPERTY (OR ANY PORTION THEREOF), THE TRANSFERABILITY OF PROPERTY, THE TERMS, AMOUNT, VALIDITY OR ENFORCEABILITY OF ANY ASSUMED LIABILITIES. THE TITLE OF THE PROPERTY (OR ANY PORTION THEREOF), THE MERCHANTABILITY OR FITNESS OF THE PERSONAL PROPERTY OR ANY OTHER PORTION OF THE PROPERTY FOR ANY PARTICULAR PURPOSE, OR ANY OTHER MATTER OR THING RELATING TO THE PROPERTY OR BUSINESS OR ANY PORTION THEREOF. WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLER HEREBY DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE PROPERTY. ACCORDINGLY, IF THE CLOSING OCCURS, PURCHASER WILL ACCEPT THE PROPERTY AND THE BUSINESS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

## ARTICLE IX

## TAX MATTERS AND POST-CLOSING TAXES

9.01    <u>Transfer Taxes</u>.  Purchaser shall pay all of the sales, use, value added, transfer, stamp, documentary, registration, recording, stock transfer and other similar taxes and fees in connection with the transactions contemplated hereby (collectively, "<u>Transfer Taxes</u>"), and shall indemnify, defend, and hold harmless Seller with respect to such Transfer Taxes. At Seller's option, which may be exercised by Seller in its sole and absolute discretion, Seller may file all necessary documentation and Tax Returns with respect to such Transfer Taxes, together

with payment of such Taxes, if applicable, provided that in such case, Purchaser shall furnish to Seller such Taxes prior to the time required for payment, and provided further that to the extent required by law, Purchaser will file such Tax Returns and pay such Taxes or will join in the execution of any such Tax Returns.   Seller and Purchaser shall cooperate and use reasonable best efforts to utilize Bankruptcy Code section 1146(a) to minimize the amount of any Transfer Taxes that may be incurred in connection with the Sale.

       9.02   Purchase Price Allocation.  Within sixty (60) days following the Closing, Purchaser shall deliver to Seller a proposed allocation of the Purchase Price (including the Assumed Liabilities and any other amounts properly treated as consideration for Tax purposes) among the Assets in accordance with Section 1060 of the Code and Treasury Regulations thereunder (and any similar provision of state, local or foreign law, as applicable).  Seller shall have thirty (30) days following receipt of Purchaser's proposed allocation to review and comment on such proposed allocation and Purchaser shall consider such comments in good faith. Thereafter, Purchaser shall provide Seller with Purchaser's final allocation schedule (the  "Final Allocation").  Seller and Purchaser agree to cooperate with each other in preparing IRS Form 8594 (including any subsequent adjustments required thereto) in a manner consistent with such Final Allocation, and to furnish the other with a copy of such form prepared in draft form within a reasonable period before its filing due date.   Neither Purchaser nor Seller shall take any position in any Tax Returns that is inconsistent with such allocation unless such allocation is challenged by a Taxing Authority. The Purchase Price allocation determined in connection with this Section 9.02 shall be utilized for Tax reporting purposes only.  For the avoidance of doubt, such allocation shall not be binding upon any party for purposes other than Tax reporting or used as evidence, or for any other purpose, in connection with any dispute regarding valuation or allocation of the Purchase Price and/or Assumed Liabilities.  The provisions of this Section 9.02 shall not apply if Purchaser determines to treat the transfer of the Assets as a "reorganization" in accordance with Section 1.10 herein.

       9.03   Broker Fees and Commissions.    Purchaser shall have no liability whatsoever in respect of any such fees, commissions and payments or any other similar obligations incurred by Seller or Parent.

## ARTICLE X

## BANKRUPTCY COURT MATTERS

       10.01   Competing Transaction.   This Agreement is subject to approval by the Bankruptcy Court and the consideration by Seller of higher or better competing bids (each a "Competing Bid") solely in accordance with the procedures specified in the Sale Procedures Order.

       10.02   Bankruptcy Court Actions.   Promptly following the Effective Date, Seller shall file with the Bankruptcy Court all papers and take all actions reasonably necessary to obtain entry of the Sale Order.  Without limiting the foregoing, Sellers shall provide actual notice of the relief sought to be obtained through entry of the Sale Order, in form and substance reasonably acceptable to Purchaser, to (a) Governmental Bodies who have asserted or, in the Seller's or Purchaser's reasonable judgment, could assert claims against Seller, and

(b) any other Person who has asserted or, in the Seller's or Purchaser's reasonable judgment, could assert claims against Seller.

10.03  [Intentionally Omitted].

# ARTICLE XI

# TERMINATION

11.01  Termination.  This Agreement may be terminated, and the transactions contemplated hereby may be abandoned:

(a)  at any time before the Closing, by mutual written agreement of Seller, on the one hand, and Purchaser, on the other; or

(b)  at any time before the Closing, by Purchaser, on the one hand, or Seller, on the other hand, in the event that any (i) final non-appealable Order of any Governmental or Regulatory Authority, or (ii) Law becomes effective, in either case restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by this Agreement, upon notification by the terminating party to the non-terminating party provided that the terminating party is not then in material breach of this Agreement and, with respect to any Order described in clause (i) above, such Order shall not have been initiated or caused, in whole or in part, by the terminating party; or

(c)  at any time before the Closing, by Seller, on the one hand, or Purchaser, on the other, (i) in the event of a material breach of this Agreement by the non-terminating party if such non-terminating party fails to cure such breach within twenty (20) Business Days following notification thereof by the terminating party; provided, however, that neither party shall have a right to terminate this Agreement based upon or arising out of any inaccuracy in or breach of any of the representations or warranties contained in this Agreement if the other party had Knowledge of such inaccuracy or breach before the Effective Date, and provided further that Purchaser's right to terminate this Agreement for Seller's breach of the representations and warranties made at Section 2.26 shall only become effective upon a ruling by the Bankruptcy Court that such breach would give rise to a Material Adverse Change, or (ii) upon notification by the terminating party to the non-terminating party, if any of the conditions to the terminating party's obligations under this Agreement as set forth in Article VI or Article VII shall not have been fulfilled on or before such time as is set forth in such provision, or if no time is set forth in such provision, by 11:59 P.M., E.T. on April 30, 2014 (or such later date as the parties may agree upon in writing) (the "Expiration Time"), or if any of such conditions will be impossible or impracticable, with the use of commercially reasonable efforts, to be fulfilled by the Expiration Time if the failure of such condition to be satisfied is not caused by a breach hereof by the terminating party; or

(d)  at any time after the Expiration Time, by Seller, on the one hand, or Purchaser, on the other, upon notification by the terminating party to the non-terminating party, if the Closing shall not have occurred on or before such date and such failure to consummate is not caused by a breach of this Agreement by the terminating party; or

(e)    at any time before the Closing by Purchaser in the event that any of the Gaming Licenses has been cancelled, terminated, suspended or modified in any material respect; or

(f)    [Intentionally Omitted]; or

(g)    Automatically, if:

(i)    at the conclusion of the Bankruptcy Court's hearing to approve the Sale (the "Sale Hearing") Purchaser is not determined by the Bankruptcy Court to be the Successful Bidder or the backup bidder; or

(ii)    the Bankruptcy Court enters any order approving a Competing Bid and the Purchaser has not been determined to be the backup bidder; or

(h)    By Purchaser upon written notice given to Seller

(i)    [Intentionally Omitted]

(ii)    unless, on or prior to March 30, 2014, the Bankruptcy Court has entered the Sale Order;

(iii)if    Seller seeks to have the Bankruptcy Court enter an order dismissing the Bankruptcy Case or converting it to a case under Chapter 7 of the Bankruptcy Code, or appointing a trustee in the Bankruptcy Case or appointing a responsible officer or an examiner with enlarged powers relating to the operation of Sellers' businesses (beyond those set forth in Section 1106(a)(3) or (4) of the Bankruptcy Code) under Bankruptcy Code Section 1106(b), or such an order of dismissal, conversion or appointment is entered for any reason and is not be reversed or vacated within three days after the entry thereof; or

(iv)    if the Sale Order has been revoked, rescinded or modified in any material respect and the order revoking, rescinding or modifying such order(s) shall not be reversed or vacated within three days after the entry thereof; provided that Purchaser shall have the right to designate any later date for this purpose in its sole discretion.

11.02  Effect of Termination.  If this Agreement is validly terminated pursuant to Section 11.01 above, then, except as set forth in this Section 11.02, this Agreement will forthwith become null and void and neither Seller nor Purchaser (nor any of their respective officers, directors, employees, agents or other Representatives or Affiliates) shall have any Liability or further obligation under this Agreement, except that the provisions of Article XIII and any other provision of this Agreement which specifically provides that it will survive termination will continue to apply in accordance with their terms following any such termination.  Notwithstanding any other provision in this Agreement to the contrary, (i) upon termination of this Agreement by Purchaser pursuant to clauses (b), (c), (d), (e), (f) or (h) of Section 11.01 above, Seller will remain liable to Purchaser for any breach of this Agreement by Seller existing at the time of such termination, and (ii) upon termination of this Agreement by Seller pursuant to clauses (b), (c) or (d) of Section 11.01 above, Purchaser will remain liable to Seller for any breach of this Agreement by Purchaser existing at the time of such termination,

and in either such case, Seller or Purchaser, as the case may be, may seek such remedies, including damages and costs and expenses, against the other with respect to any such breach as are provided in this Agreement or as are otherwise available at Law or in equity.

ARTICLE XII

DEFINITIONS

12.01   Defined Terms.  As used in this Agreement, the following defined terms have the meanings indicated below:

"ABC" means ABC Funding, LLC.

"Accounts Receivable" has the meaning ascribed to it in the definition of "Assets" set forth below.

"ACSM" means the American Congress on Surveying and Mapping.

"Actions or Proceedings" means any action, suit, investigation, proceeding, or arbitration, including but not limited to any action, suit, investigation, proceeding, or arbitration by any Governmental or Regulatory Authority.

"Advance Reservations" has the meaning ascribed to it in the definition of "Assets" set forth below.

"Affected Employees" has the meaning ascribed to it in Section 4.12.

"Affiliate" means any Person that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with the Person specified. For purposes of this definition, control of a Person means the power, direct or indirect, to direct or cause the direction of the management and policies of such Person whether by Contract or otherwise and, in any event and without limitation of the previous sentence, any Person owning ten percent (10%) or more of the voting securities of another Person shall be deemed to control that Person.

"Agreement" means this Asset Purchase Agreement and the Exhibits, Seller Disclosure Schedule, any Purchaser disclosure schedules delivered under Article III, any other schedules hereto and the certificates delivered in accordance with Section 7.01, as the same shall be amended from time to time.

"Ancillary Agreement" means each of those agreements necessary to Close this transaction, including the FIRPTA Affidavit, Seller's affidavits, and such other documents, instruments, or agreements reasonably requested by any party.

"Assets" means, collectively, all of the properties, assets and rights of every nature, kind and description, tangible and intangible (including goodwill), whether real, personal or mixed, whether accrued, contingent or otherwise, and whether now existing or hereafter acquired (other than the Excluded Assets) used or held for use in connection with the Business or

41

otherwise owned by Seller, free and clear of all Liens except for Permitted Liens, including but not limited to such properties, assets and rights in the following:

(a)    The Real Property.  The real property described in Schedule I of Seller Disclosure Schedule, and all of the rights arising out of the ownership thereof or appurtenant thereto (including, without limitation, any and all easements relating thereto) (the "Real Property"), together with all buildings, structures, facilities, fronton, fixtures and other improvements thereto (the "Improvements") and all licenses, permits, approvals, entitlements, land use/zoning rights and qualifications relating to the Real Property issued to Seller by any Governmental or Regulatory Authority;

(b)    Included Contracts.  Subject to Section 1.07, the following contracts (collectively the "Included Contracts"): (A) each of the player contracts between Seller and the Jai Alai players set forth on Schedule II of Seller Disclosure Schedule (collectively, the "Player Contracts"); (B) the Union Agreement; (C) the Operating Agreements; and (D) such other contracts as set forth on Schedule II of Seller Disclosure Schedule;

(c)    Tangible Personal Property.  All furniture, fixtures, slot machines, gaming equipment, other equipment, machinery, appliances, consumables, inventory, merchandise, liquor, food, supplies, spare and replacement parts, computers, radio frequencies, gaming and betting tables and paraphernalia, inventory, cards, wagering tickets, chips and tokens and other related wagering equipment, point of sale equipment, maintenance equipment, signs and signage, cleaning supplies, uniforms, jai alai sports equipment and paraphernalia, silverware, glassware, chinaware, pots, pans and utensils and supplies used or held for use in connection with the operation of the Business, and other tangible personal property owned by Seller, including, without limitation, the items listed in Schedule III of Seller Disclosure Schedule (the "Tangible Personal Property");

(d)    Other Rights.  All third party guarantees, warranties, indemnities and similar rights in favor of Seller or with respect to any Asset;

(e)    Reservations Customer Credit Files and Telephone Numbers.  All advance reservations, bookings, security deposits and payments made to Seller on or prior to the Closing Date with regard to any reservations for events following the Closing Date (the "Advance Reservations"), and original customer credit files with respect to the conduct of the Business and any telephone numbers used exclusively in connection with the Business;

(f)    Books and Records.  All Books and Records, including customer lists and customer databases relating to the Business (the "Business Customer Lists") and all Books and Records required by Law to be maintained at the Business;

(g)    Intangible Personal Property.  All (i) Gaming Licenses (including Seller's Slot Machine License), (ii) other Licenses relating or pertaining to the Intellectual Property, the Business or the Assets, (iii) Intellectual Property used or held for use and necessary to conduct the Business as it is presently conducted (including, without limitation, player tracking systems, the URLs and http://www.fla-gaming.com/miami/index.html, http://www.jaialai.net/, http://www.casinomiami.net, http://www.casinomiamijaialai.com and any other websites used

42

in connection with the Business, including the design and content thereof, cashless wagering systems and intangible associated equipment, and all goodwill associated therewith), and all rights, privileges, claims, causes of action and options relating or pertaining to the Intellectual Property, the Business or the Assets, including without limitation the Intangible Personal Property listed in <u>Schedule IV</u> of Seller Disclosure Schedule (collectively, the "<u>Intangible Personal Property</u>");

        (h)    <u>Surveys</u>.  All surveys, as-built surveys, plans and specifications in the possession, or control, of Seller or its agents (e.g., surveyors) relating to the Real Property as set forth on <u>Schedule V</u> of Seller Disclosure Schedule (the "<u>Surveys</u>");

        (i)    <u>Accounts Receivable</u>.  All accounts receivable and other rights to payment of Seller resulting from the operation of the Business prior to the Closing, and the full benefit of all security for such accounts or rights to payment, including all trade accounts receivable representing amounts receivable in respect of goods shipped or products sold or services rendered by Seller; all other accounts or notes receivable of Seller and the full benefit of all security for such accounts or notes; and any claim, remedy or other right related to any of the foregoing;

        (j)    Cash on Hand, insurance proceeds and condemnation awards with respect to Assets;

        (k)    <u>Other Assets</u>.  All other assets and properties, other than the Excluded Assets, of Seller used or held for use in connection with the Business, including but not limited to those set forth on <u>Schedule VI</u> of Seller Disclosure Schedule (the "<u>Other Assets</u>");

        (l)    <u>Credits</u>.  The Tax Credits; and

        (m)    <u>Assigned Avoidance Actions</u>.  The Assigned Avoidance Actions.

"<u>Assigned Avoidance Actions</u>" means any Avoidance Actions (i) against Purchaser or any of its Affiliates; (ii) related to Assumed Liabilities or Included Contracts or against parties holding Assumed Liabilities of counter-parties to Included Contracts; or (iii) in connection with any setoffs related to Acquired Assets.

"<u>Assumed Liabilities</u>" means:

    a.    Miami-Dade County Promissory Note.

    b.    Miami-Dade County Parking Loans.

    c.    Miami-Dade County Letter Agreement.

    d.    Accounts payable for goods and services outstanding as of the Petition Date that were incurred in the ordinary course of Seller's business as set forth on <u>Schedule X</u> of Seller Disclosure Schedule (collectively, "<u>Ordinary Course Payables</u>").  Ordinary Course Payables will not include: (a) any intercompany payables or other amounts due to any of Seller's insiders,

43

Affiliates, or Affiliates of any insiders; (b) any payable or other amounts due that were not incurred in the ordinary course of Seller's business; or (c) any claims relating to Seller's rejection or termination of any contract or lease, including its contract with Miami Casino Management, LLC.

e.   Included Contracts.  Subject to the provisions of Section 1.07, all obligations of Seller under the Included Contracts arising and to be performed on or after the Closing Date, and excluding any such obligations arising or to be performed prior to the Closing Date;

f.   Reservations.  All obligations of Seller with respect to Advance Reservations; and

g.   Uncashed Tickets.  Subject to Section 1.09, Liabilities for Uncashed Tickets.

"Avoidance Actions" means any claim, right or cause of action of Seller arising under sections 544 through 553 of the Bankruptcy Code.

"Bankruptcy Case" has the meaning ascribed to it in the forepart of this Agreement.

"Bankruptcy Code" has the meaning ascribed to it in the forepart of this Agreement.

"Bankruptcy Court" has the meaning ascribed to it in the forepart of this Agreement.

"Benefit Plan" means any Plan established by Seller, or any predecessor or Affiliate of Seller, existing at the Closing Date or prior thereto, to which Seller contributes or has contributed, or under which any employee, former employee or director of Seller or any dependent or beneficiary thereof is covered, is eligible for coverage or has benefit rights.

"Books and Records" means all files, documents, instruments, papers, books and records relating to the Business, Assets, Indebtedness, Liabilities, Seller, or condition of Seller, including, without limitation, lists of suppliers, books of accounts, financial statements, Tax Returns and related work papers and letters from accountants, budgets, pricing guidelines, ledgers, journals, deeds, title policies, minute books, stock certificates and books, stock transfer ledgers, stock transfer books, corporate seals, Contracts, Licenses, customer lists, computer files and programs, retrieval programs, operating data and plans, environmental studies, audits, plans, surveys, designs, models and specifications, whether contained in an electronic database or any other form.

"Business" has the meaning ascribed to it in the forepart of this Agreement.

"Business Customer Lists" has the meaning ascribed to it in the definition of "Assets" set forth above.

"Business Day" means a day other than Saturday, Sunday or any day on which banks located in the State of Florida or the State of New York are authorized or obligated to close.

"Cash on Hand" has the meaning ascribed to it in Section 1.09.

"CERCLA" means the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, and the rules and regulations promulgated thereunder.

"Closing" means the closing of the transactions contemplated by Section 1.02.

"Closing Date" means (a) the second (2nd) Business Day after the day on which the last of the conditions described in Articles VI and VII hereof has been satisfied or waived, or (b) such other date as Purchaser and Seller mutually agree upon in writing.

"Code" means the Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder.

"Committee" means the Official Joint Committee of Unsecured Creditors appointed in the Bankruptcy Case.

"Condition of the Business" means the business, financial condition, results of operations, Assets and Properties and prospects of the Business and Seller.

"Continuing Employees" has the meaning ascribed to it in Section 4.10.

"Contract" means any written, oral, implied or other agreement, lease, license, evidence of Indebtedness, mortgage, indenture, security agreement, understanding, arrangement, instrument, guaranty, indemnity, warranty, deed, assignment, power of attorney, certification, purchase order, work order, insurance policy, Plan, commitment, covenant, assurance, or other contract of any nature to which such Person is a party or by which it or its properties may be bound or affected or under which it or its respective business, properties or assets receive benefits.

"Credit Agreement" means that certain Credit Agreement, dated April 25, 2011, by and among ABC, as administrative agent, Seller, as Borrower, Parent, as Holdings, and the lenders from time to time thereunder as it may have been amended, restated, supplemented and/or modified from time to time pursuant to the terms thereof.

"Division of Pari-Mutuel Wagering" shall mean the Division of Pari-Mutuel Wagering within the Department of Business and Professional Regulation of the State of Florida, together with any other state or local body with oversight of gaming or gambling in the State of Florida.

"Effective Date" has the meaning ascribed to it in the forepart of this Agreement.

"Employee" means each employee, officer or consultant of Seller.

45

"Environmental Claim" has the meaning ascribed to it in Section 2.19(c).

"Environmental Law" means any Federal, state, or local Law (including common law), statute, code, ordinance, order, rule, regulation, judgment, decree, injunction, writ, edict, award, authorization, or other legally binding and enforceable requirement by any Governmental or Regulatory Authority relating to any environmental, health or safety matters.

"Environmental Permits" has the meaning ascribed to it in Section 2.19(a).

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated thereunder.

"ERISA Affiliate" has the meaning ascribed to it in Section 2.12(a).

"Excluded Assets" means, collectively, the following assets and properties of Seller:

(a)    Cash and Investments.  All cash (including checks received prior to the close of business on the Closing Date, whether or not deposited or cleared prior to the Closing Date), including, without limitation, cage cash, drop boxes, valet register, commercial paper, certificates of deposit and other bank deposits and other cash equivalents, except for Cash on Hand, insurance proceeds and condemnation awards with respect to Assets;

(b)    Excluded Contracts.  The rights of Seller in, to and under any Contract that is not an Included Contract (collectively, the "Excluded Contracts"), including the MCM Agreements and those Contracts listed in Schedule VII of Seller Disclosure Schedule; and

(c)    Additional Excluded Assets.  The rights of Seller in and to those other Excluded Assets listed on Schedule IX of Seller Disclosure Schedule, including without limitation, that the personal property owned by Seller's Employees (as listed on Schedule IX of Seller Disclosure Schedule) that may currently be located at the Real Property.

(d)    Avoidance Actions.  The Avoidance Actions, other than the Assigned Avoidance Actions.

(e)    D&O Claims.  Any all claims and causes of action of the Seller or Florida Gaming Corporation and their respective bankruptcy estates against any of the current or former officers or directors of the Seller or Florida Gaming Corporation, derivatively or otherwise, including without limitation any claims or causes of action alleged and set forth in the Shareholder Derivative Complaint captioned *Herbert Silverberg v. W. Bennett Collett, et al.,* Case No. 8292-VN, and, notwithstanding any Included Contracts, any policies of insurance maintained by the Seller or Florida Gaming Corporation insuring against such claims and causes of action and the proceeds thereof.

(f)    [Intentionally Omitted].

"Excluded Contracts" has the meaning ascribed to it in the definition of "Excluded Assets" set forth above.

46

"Expiration Time" has the meaning ascribed to it in Section 11.01(c).

"Facilities" means each of the Miami Jai Alai Facility and the Ft. Pierce Jai Alai Facility.

"Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, the implementation or operation or effect of which has not been stayed, and as to which the time to appeal or petition for certiorari, has expired and as to which no appeal or petition for certiorari, shall then be pending or in the event that an appeal or writ of certiorari thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, shall have been denied and the time to take any further appeal or petition for certiorari shall have expired.

"Financial Statements" has the meaning ascribed to it in Section 2.06(a).

"FIRPTA Affidavit" has the meaning ascribed to it in Section 6.08.

"Freedom Holding" means Freedom Holding, Inc.

"Ft. Pierce Jai Alai Facility" shall mean the Ft. Pierce Jai Alai pari-mutuel location currently operated by Seller.

"GAAP" means generally accepted accounting principles, consistently applied throughout the specified period and in the immediately prior comparable period.

"Gaming Laws" means the Chapter 550, the Chapter 551 and Section 849.086, Florida Statutes, and the rules and regulations promulgated thereunder and any additional gaming laws of any jurisdiction to which either Seller Party is subject as a result of the operation of its Assets and/or Business.

"Gaming License Approvals" has the meaning ascribed to it in Section 4.01(a).

"Governmental or Regulatory Authority" means any Bankruptcy Court, tribunal, arbitrator, authority, administrative or other agency, commission, gaming authority, official or other authority or instrumentality of the United States, any foreign country or any domestic or foreign state, county, city or other political subdivision. Without limiting the generality of the foregoing, the term "Governmental or Regulatory Authority" shall include the Division of Pari-Mutuel Wagering.

"Hazardous Material" means any waste, chemical, or other material, or substance defined or regulated under any Environmental Law including, without limitation, any which are defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," "infectious waste," "extremely hazardous wastes," "restricted hazardous wastes," "toxic substances" or "toxic pollutants" under any Environmental Law, and including, without limitation, petroleum, petroleum products or derivatives, asbestos, radon, lead or mold.

47

"HSR Act" means Section 7A of the Clayton Act (Title II of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended) and the rules and regulations promulgated thereunder.

"IJAPA" has the meaning ascribed to it in Section 2.24(c).

"Immigration Act" has the meaning ascribed to it in Section 2.29.

"Improvements" has the meaning ascribed to it in the definition of "Assets" set forth above.

"Included Contracts" has the meaning ascribed to it in the definition of "Assets" set forth above.

"Income Taxes" means any and all Taxes based upon or measured by gross or net income, receipts (other than sales and use taxes), capital or net worth.

"Indebtedness" of any Person means all obligations of such Person (i) for borrowed money, (ii) evidenced by notes, bonds, debentures or similar instruments, (iii) for the purchase price of goods or services, (iv) under capital leases and (v) in the nature of guarantees of the obligations described in clauses (i) through (iv) above of any other Person.

"Inspections" has the meaning ascribed to it in Section 4.03(f).

"Intangible Personal Property" has the meaning ascribed to it in the definition of "Assets" set forth above.

"Intellectual Property" means all patents and patent rights, trademarks and trademark rights, trade names and trade name rights, service marks and service mark rights, service names and service name rights, brand names, inventions, processes, formulae, copyrights and copyright rights, trade dress, business and product names, logos, slogans, trade secrets, industrial models, processes, designs, methodologies, computer programs (including all source codes) and related documentation, technical information, manufacturing, engineering and technical drawings, know-how and all pending applications for and registrations of patents, trademarks, service marks, copyrights, trade secrets and other intellectual property rights.

"IRS" means the Internal Revenue Service.

"Jai Alai Players Association" shall have the meaning ascribed to it in Section 2.24(c).

"Knowledge" an individual will be deemed to have "Knowledge" of a particular fact or other matter if: (a) such individual is actually aware of such fact or other matter; or (b) a prudent individual would be expected to discover or otherwise become aware of such fact or other matter in the ordinary course, including after conducting a reasonably comprehensive investigation concerning the existence of such fact or other matter if such an inspection would be conducted by a prudent individual in the ordinary course. A Person (other than an individual) will be deemed to have "Knowledge" of a particular fact or other matter if any individual who is

serving, or who has at any time during the thirty six (36) months preceding the Effective Date served, as a director, officer, division or department head, manager, partner, executor, or trustee of such Person (or in any similar capacity) (including, with respect to Seller, William B. Collett, Sr., William B. Collett, Jr. and Daniel Licciardi) has, or at any time had, Knowledge (as defined in clauses (a) and (b) above) of such fact or other matter.

"Laws" means all laws, statutes, rules, regulations, ordinances and other pronouncements having the effect of law of the United States, any foreign country or any state, county, city or other political subdivision or of any Governmental or Regulatory Authority.

"Liabilities" means all Indebtedness, obligations and other liabilities of a Person (whether absolute, accrued, contingent, fixed or otherwise, or whether due or to become due).

"Licenses" means all licenses, permits, certificates of authority, authorizations, approvals, registrations, franchises and similar consents granted or issued by any Governmental or Regulatory Authority, including without limitation, with respect to Seller, the jai alai, slot machine and other pari-mutuel and gaming permits and licenses of Seller described in Schedule IV hereto (collectively, the "Gaming Licenses"). Without limiting the foregoing, the Gaming Licenses of Seller include the Miami Pari-Mutuel Permit Number 273, the Fort Pierce Pari-Mutuel Permit Number 278, the Tampa Pari-Mutuel Permit Number 272, the Miami Pari-Mutuel Operating License Number 273, the Fort Pierce Pari-Mutuel Operating License Number 278, the Miami Slot Machine Operating License Number 273, the Miami Card Room Operating License Number 273 and the Fort Pierce Card Room Operating License Number 278.

"Liens" means any mortgage, pledge, assessment, security interest, lease, lien, adverse claim, levy, charge, hypothecation, mortgage, equity, trust, equitable report, claim, preference, right of possession, lease, tenancy, license, enrichment, covenant, infringement, interference, Order, proxy, option, warrant, right of first refusal, preemptive right, community property interest, defect, exception, limitation, impairment, imperfection of title, condition, restriction or other encumbrance of any kind (including any restriction on use, voting, transfer, receipt of income, or exercise of any other attribute of ownership), or any conditional sale Contract, title retention Contract or other Contract to give any of the foregoing.

"Loss" or "Losses" means any and all damages, fines, penalties, deficiencies, losses, costs and expenses (which term shall include, without limitation interest, Bankruptcy Court costs, reasonable fees of attorneys, paralegals, accountants and other experts or other reasonable expenses of litigation or other proceedings or investigations or of any claim, default or assessment or costs of environmental investigation, monitoring, containment, clean-up, removal, restoration, remedial work or natural resource damages (collectively, the "Costs and Expenses" or the "Cost and Expense")).

"Material Adverse Change" shall mean changes, events or effects, that are materially adverse to (i) the Business, the Condition of the Business, the Assets, Seller, the Liabilities, or the Gaming Licenses, or any part or component thereof, or (ii) the ability of Seller to perform its respective obligations under this Agreement or to consummate the transactions contemplated by this Agreement, *provided, that,* if such Material Adverse Change can be

quantified to a dollar amount, such amount shall not be less than Two Hundred Thousand Dollars ($200,000).

"Miami Jai Alai Facility" shall mean the Miami Jai Alai pari-mutuel location currently operated by Seller.

"NPL" means the National Priorities List under CERCLA.

"Offsite Wagering" has the meaning ascribed to it in Section 1.08.

"Operating Agreements" means each service contract, equipment lease, billboard lease, software license agreement, sign lease, Real Property Leases and other Contract affecting the Real Property, Assets or the Business that (i) Purchaser has agreed to accept as an Included Contract, and (ii) Purchaser has otherwise consented to in writing pursuant to the terms of this Agreement.

"Operations Settlement Statement" means a final accounting, as of the Closing Date, prepared by Seller accountants and reviewed by and acceptable to Purchaser and Purchaser accountants in the period between 11:59 P.M., E.T. on the day immediately preceding the Closing Date and 9:00 A.M., E.T. on the Closing Date, the results of which shall be incorporated into a written Operations Settlement Statement which shall be executed by Seller and Purchaser.

"Order" means any writ, judgment, decree, injunction or similar order of any Governmental or Regulatory Authority (in each such case whether preliminary or final).

"Ordinary Course of Business" means an action recurring in nature, consistent with the Person's past practices and taken in the ordinary course of the Person's normal day-to-day operations, taken in accordance with sound and prudent business practices, not required to be authorized by the Person's Board of Directors or shareholders and similar in nature and amount to actions customarily taken, without any separate or special authorization, in the ordinary course of the normal day-to-day operations of other Persons that are engaged in business similar to the Business and, as it relates to the Assets, the maintenance and repair of such Assets, ordinary wear and tear excepted, consistent with past practice.

"Other Assets" has the meaning ascribed to it in the definition of "Assets" set forth above.

"Permitted Lien" means (i) any Lien for Taxes not yet due or delinquent, (ii) any statutory Lien arising in the Ordinary Course of Business by operation of Law with respect to a Liability that is not yet due or delinquent and (iii) any minor imperfection of title, or similar Liens which individually or in the aggregate with other such Liens do not materially impair the value of the property subject to the Lien or the value of such property in the conduct of the Business.

"Person" means any natural person, corporation, limited liability Seller, general partnership, limited partnership, limited liability limited partnership, proprietorship, other business organization, trust, union, association or Governmental or Regulatory Authority.

"Plan" means any bonus, incentive compensation, deferred compensation, pension, profit sharing, retirement, stock purchase, stock option, stock ownership, stock appreciation rights, phantom stock, leave of absence, layoff, vacation, day or dependent care, legal services, cafeteria, life, health, accident, disability, workers' compensation or other insurance, severance, separation or other employee Benefit Plan, practice, policy or arrangement of any kind, whether written or oral, including, but not limited to, any "employee benefit plan" within the meaning of Section 3(3) of ERISA.

"Player Contracts" has the meaning ascribed to it in the definition of "Assets" set forth above.

"Predecessor Entity" means any predecessor to Seller.

"Prepaid Deposits" has the meaning ascribed to it in Section 1.05(c)(vi).

"Prepaid Expenses" has the meaning ascribed to it in Section 1.05(c)(v).

"Purchase Price" has the meaning ascribed to it in Section 1.02(a).

"Purchaser" has the meaning ascribed to it in the forepart of this Agreement.

"Real Property" has the meaning ascribed to it in the definition of "Assets" set forth above.

"Real Property Leases" means leases, subleases, occupancy and concession agreements with respect to the Real Property described in of Schedule 2.13(a).

"Release" means any release, spill, emission, leaking, pumping, injection, deposit, disposal, discharge, dispersal, leaching or migration into the indoor or outdoor environment.

"Representatives" has the meaning ascribed to it in Section 4.03(a).

"Sale" has the meaning ascribed to it in Section 1.01(a).

"Sale Hearing" has the meaning ascribed to it in Section 11.01(g)(i).

"Sale Motion" has the meaning ascribed to it in Section 4.13(a).

"Sale Order" means an order or orders of the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code and in form and substance acceptable to Purchaser that, as of the Closing Date, shall not have been stayed, vacated or otherwise rendered ineffective, which order or orders shall approve, authorize and direct the Seller to consummate this Agreement, the transactions contemplated hereby and all of the terms and conditions hereof. Without limiting the generality of the foregoing, such order(s) shall find, acknowledge and/or otherwise provide, among other things, that (i) the Assets sold by Seller to Purchaser pursuant to this Agreement shall be transferred to Purchaser free and clear of all Liens (other than Permitted Liens); (ii) Purchaser has "acted in good faith" within the meaning of Section 363(m) of the Bankruptcy Code; (iii) Purchaser is acquiring the Assets in exchange for reasonably equivalent

value; (iv) this Agreement was negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's length bargaining positions; (v) Purchaser shall not be a successor to Seller by reason of any theory of Law or equity and shall not have any successor or transferee Liability of any kind, nature or character, including Liabilities arising or resulting from or relating to the transactions contemplated hereby or by the Sale Order(s); and (vi) the transactions consummated pursuant to this Agreement or the Sale Order(s) shall not constitute a de facto merger, or a merger, as between Seller and Purchaser under applicable Law.

"Sale Procedures" means the sale procedures attached to the Sale Procedures Order as Exhibit "2".

"Sale Procedures Order" means the sale procedures order previously entered by the Bankruptcy Court.

"Seller" has the meaning ascribed to it in the forepart of this Agreement.

"Seller Disclosure Schedule" has the meaning ascribed to it in the first paragraph of Article II.

"Seller Plans" has the meaning ascribed to it in Section 2.12(a).

"Seller's Group" has the meaning ascribed to it in Section 2.09(a).

"Settlement Agreement" means that certain Settlement Agreement (including any adjustments to the amount of the Credit Bid for post-March 31, 2014 fees, expenses and interest on the Loan Claim), dated March 18, 2014, by and among (a) Seller, Parent, Freedom Holding and Tara Club, on behalf of themselves and their respective chapter 11 bankruptcy estates, (b) the Committee, (3) ABC, in its capacity as agent under the Credit Agreement, and (d) William B. Collett and William B. Collett, Jr.

"Silvermark" means Silvermark, LLC.

"Slot Machine License" shall mean the slot machine licenses contemplated in Chapter 551, Florida Statutes, including without limitation, Section 551.104, Florida Statutes. With respect to Seller, the term Slot Machine License shall include the Miami Slot Machine Operating License Number 273 issued to Seller with respect to the Miami Jai Alai Facility.

"Surveys" has the meaning ascribed to it in the definition of "Assets" set forth above.

"Tangible Personal Property" has the meaning ascribed to it in the definition of "Assets" set forth above.

"Tara Club" means Tara Club Estates, Inc.

"Tax" means any Federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under Code §59A), customs duties, capital stock, franchise,

profits, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

"Tax Authority" means any governmental entity, domestic or foreign, responsible for the imposition of any Taxes.

"Tax Credit" means the aggregate amount of all pari-mutuel tax credit carryforwards related to the Business as of the Closing, including all future pari-mutuel tax credit carryforwards related to the Business equal to the amount of pari-mutuel taxes incurred in excess of the Business' current year's operating profit (as defined in F.S. 550.09511(1)(b)).

"Tax Return" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"Transfer Taxes" has the meaning ascribed to it in Section 9.01.

"Uncashed Tickets" has the meaning ascribed to it in Section 1.08.

"Union Agreement" means that certain Agreement, dated on or about October 16, 2007 by and between Seller and the International Jai Alai Players Association.

"Vehicles" has the meaning ascribed to it in Section 2.21.

"WARN Act" means the Worker Adjustment Retraining and Notification Act of 1988.

12.02  Construction of Certain Terms and Phrases.  Unless the context of this Agreement otherwise requires, (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; and (iv) the terms "Article" or "Section" refer to the specified Article or Section of this Agreement.  Whenever this Agreement refers to a number of days, such number shall refer to calendar days unless Business Days are specified.  All accounting terms used herein and not expressly defined herein shall have the meanings given to them under GAAP.  As used in this Agreement, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, but rather shall be deemed to be followed by the words "without limitation."

ARTICLE XIII

MISCELLANEOUS

13.01  Notices.  Unless otherwise provided herein, all notices or other communications required or permitted by this Agreement shall be in writing and shall be deemed to have been duly given on the date of actual delivery if delivered personally to the

party to whom notice is given, on the same day if sent by confirmed facsimile transmission, on the date of actual delivery if sent by email transmission or on the date of actual delivery if sent by or overnight commercial courier or by first-class mail, registered or certified, with postage prepaid, and in each case, properly addressed to the party at its address set forth below, or at any other address that any party may from time to time designate by written notice to the others:

If to Purchaser (and to Seller after the Closing occurs), to:

Fronton Holdings, LLC
c/o ABC Funding, LLC
222 Berkeley Street, 18th floor
Boston, MA 02116
Attn:  James Freeland and Adam Britt
Facsimile No.:  (617) 598-4902
Email:  JFreeland@summitpartners.com
           ABritt@summitpartners.com

with a copy to:
Sidley Austin LLP
1 S. Dearborn Street
Chicago, IL 60625
Attn:  Dennis Twomey
Facsimile No.:  (312) 853-7036
Email:  dtwomey@sidley.com

If to Seller, to:

Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Attn:  William B. Collett, Jr.
Facsimile No.:  (305) 634-1712
Email:  bcollett@casinomiami.net

with a copy to:
Frost Brown Todd LLC
400 West Market Street
Suite 3200
Louisville, KY 40202-3363
Attn:  R. James Straus, Esq.
Facsimile No.:  (502) 581-1087
Email:  jstraus@fbtlaw.com

          and

If to the Committee, to:

EXECUTION VERSION

Genovese Joblove & Battista, P.A.
100 S.E. Second Street, 44th Floor
Miami, FL 33131
Attn: Paul J. Battista, Esq.
Facsimile No.: (305) 349-2310
Email: pbattista@gjb-law.com

Any party from time to time may change its address, facsimile number, email address or other information for the purpose of notices to that party by giving notice specifying such change to the other party hereto.

13.02  Entire Agreement.   This Agreement and Ancillary Agreements supersede all prior discussions and agreements between the parties with respect to the subject matter hereof and contains the sole and entire agreement between the parties hereto with respect to the subject matter hereof.

13.03  Waiver.  Any term or condition of this Agreement may be waived at any time by the party that is entitled to the benefit thereof, but no such waiver shall be effective unless set forth in a written instrument duly executed by or on behalf of the party waiving such term or condition.  No waiver by any party of any term or condition of this Agreement, in any one or more instances, shall be deemed to be or construed as a waiver of the same or any other term or condition of this Agreement on any future occasion.  All remedies, either under this Agreement or by Law or otherwise afforded, will be cumulative and not alternative.

13.04  Amendment.   This Agreement may be amended, supplemented or modified only by a written instrument duly executed by Purchaser (on behalf of itself and, after the Closing, Seller), on the one hand, and Seller (on behalf of itself and, prior to the Closing, Seller), on the other hand.

13.05  No Third Party Beneficiary.   The terms and provisions of this Agreement are intended solely for the benefit of each party hereto and their respective successors or permitted assigns, and it is not the intention of the parties to confer third-party beneficiary rights upon any other Person other than any and all Affiliates of Purchaser under Section 13.06.

13.06  Assignment; Binding Effect. This Agreement and the rights hereunder may not be assigned by a party to any other Person without the mutual written consent of all parties, which consent may be unreasonably withheld by any party; provided however that notwithstanding the foregoing or anything contained in this Agreement or any Ancillary Agreement to the contrary, this Agreement and the rights and/or obligations of Purchaser hereunder may be assigned and/or delegated, as applicable, by Purchaser to one or more Affiliates of Purchaser that is able to demonstrate that it is ready, willing and able to consummate the transactions contemplated herein on the same terms and conditions as Purchaser and that assumes all of Purchaser's obligations hereunder without any consent or requirement for consent by any party, and upon such assignment and/or delegation, Purchaser

55

shall be released of any and all Liabilities hereunder and such assignee(s) shall be deemed to be the "Purchaser" as such term is defined in this Agreement.

13.07 <u>Headings</u>.  The headings used in this Agreement have been inserted for convenience of reference only and do not define or limit the provisions hereof.

13.08 <u>Invalid Provisions</u>.  If any provision of this Agreement is held to be illegal, invalid or unenforceable under any present or future Law, and if the rights or obligations of any party hereto under this Agreement will not be materially and adversely affected thereby, (a) such provision will be fully severable, (b) this Agreement will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof, and (c) the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.

13.09 <u>Consent to Jurisdiction and Venue</u>.  Each party hereby irrevocably submits to the exclusive jurisdiction of the United States Bankruptcy Court for the Southern District of Florida in any action, suit or proceeding arising out of or relating to this Agreement, the Ancillary Agreements or any of the transactions contemplated hereby or thereby, and agrees that any such action, suit or proceeding shall be brought only in such Bankruptcy Court; *provided, however*, that such consent to jurisdiction is solely for the purpose referred to in this <u>Section 13.09</u> and shall not be deemed to be a general submission to the jurisdiction of said Bankruptcy Courts or in the State of Florida other than for such purpose.  Each party hereby irrevocably waives, to the fullest extent permitted by Law, any objection that it may now or hereafter have to the laying of the venue of any such action, suit or proceeding brought in such a Bankruptcy Court.  Each party further irrevocably waives and agrees not to plead or claim that any such action, suit or proceeding brought in such a Bankruptcy Court has been brought in an inconvenient forum.

13.10 <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the Laws of the State of Florida applicable to a Contract executed and performed in such State, without giving effect to the conflicts of laws principles thereof.

13.11 <u>Attorneys' Fees</u>.  In the event of a dispute between the parties hereto relating to this Agreement, the prevailing party to such dispute will be entitled to recover its reasonable attorneys' fees and other Costs and Expenses relating to such dispute from the non-prevailing party.

13.12 <u>Time of the Essence</u>.  Time is of the essence in performing covenants and agreements hereunder as to which time is relevant.

13.13 <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, and by the different parties hereto on the same or separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  The exchange or delivery of copies of this Agreement and of signature pages by facsimile or email transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes.

The signature of a party transmitted by facsimile or email shall be deemed to be its original signature for all purposes.

13.14 <u>Remedies Cumulative</u>.  Except as herein expressly provided, the remedies provided herein shall be cumulative and shall not preclude assertion by any party hereto of any other rights or the seeking of any other remedies against any other party hereto. The parties hereto agree that the Business is a unique asset and that damages suffered by Purchaser as a result of a breach of this Agreement by Seller would be impracticable to determine.  Accordingly, the parties hereto agree that Purchaser shall be entitled to seek specific performance of the terms of this Agreement in the event of a breach of the terms of this Agreement.

13.15 <u>Releases</u>.

(a)    <u>Purchaser Release of Seller and Parent</u>:

(i) Subject to the effectiveness provisions contained in <u>Section 13.15(b)(i)</u> immediately below, as a material inducement to Seller's and Parent's entry into this Agreement, Purchaser, for itself and each of its Affiliates, officers, directors, members, representatives, and agents, hereby fully and finally **RELEASES, REMISES, ACQUITS and FOREVER DISCHARGES** Seller, Parent, and each of their respective officers, directors, representatives and agents, solely in their capacities as such and not personally or in any other capacity, from any and all actions, causes of action, damages, demands, liens, debts, claims, liabilities, suits, sums of money, accounts, reckonings, contracts, controversies, torts, agreements, promises, costs, and attorneys' fees, of whatsoever kind or nature, whether direct or indirect, absolute or contingent, due or to become due, liquidated or unliquidated, express or implied, known or unknown, in law or in equity.

(ii) The Purchaser Release of Seller and Parent contained in this <u>Section 13.15(a)(i)</u> shall only become effective and binding on Purchaser upon (a) Seller and Parent receiving Bankruptcy Court approval to grant the Estates' Releases of Purchaser contained in <u>Section 13.15(b)(i)</u> below, and (b) the occurrence of any of the following:

(A) The Closing occurs;

or

(B) This Agreement is terminated by Seller under <u>Section 11.01(c)</u> as a result of a material, uncured breach by Purchaser.  For the avoidance of doubt, the Purchaser Release of Seller and Parent hereunder would not become effective upon a termination of this Agreement solely for a failure of condition precedent.

(b)    <u>Estates' Releases of Purchaser</u>:

(i) Subject to the effectiveness provisions contained in <u>Section 13.15(b)(ii)</u> immediately below, as a material inducement to Purchaser's entry into this Agreement, Seller and Parent, for themselves and their respective estates and for each of the

respective Affiliates, officers, directors, members, representatives, and agents of each of Seller and Parent hereby fully and finally **RELEASE, REMISE, ACQUIT and FOREVER DISCHARGE** Purchaser and each of its officers, directors, representatives and agents, solely in their capacities as such, from any and all actions, causes of action, damages, demands, liens, debts, claims, liabilities, suits, sums of money, accounts, reckonings, contracts, controversies, torts, agreements, promises, costs, and attorneys' fees, of whatsoever kind or nature, whether direct or indirect, absolute or contingent, due or to become due, liquidated or unliquidated, express or implied, known or unknown, in law or in equity.

(ii) The Estates' Releases of Purchaser contained in Section 13.15(b)(i) above shall only become effective and binding on Seller and Parent upon (a) Seller and Parent receiving Bankruptcy Court approval to grant the Estates' Releases of Purchaser, and (b) the occurrence of any of the following:

(A) The Closing occurs;

or

(B) The Agreement is terminated by Purchaser under Section 11.01(c) as a result of a material, uncured breach by Seller or Parent (other than for any breach of the representations or warranties made at Section 2.26 of this Agreement); provided however, that the Estates' Releases of Purchaser contained in Section 13.15(b)(i) will not become effective if the Agreement is terminated by Purchaser solely because Purchaser is unable to obtain consents to the assignment of any Included Contract. For the avoidance of doubt, the Estates' Release of Purchaser hereunder would not become effective upon a termination of this Agreement solely for a failure of condition precedent.

For the avoidance of doubt, nothing in this Section 13.15 shall (i) affect the releases granted under the Settlement Agreement, (ii) release any of the obligations of the parties to the Settlement Agreement under the terms of the Settlement Agreement, or (iii) release any of the obligations of the parties under this Agreement.

EXECUTION VERSION

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the duly authorized officer of each party hereto as of the date first above written.

**"PURCHASER":**

FRONTON HOLDINGS, LLC,
a Delaware limited liability company

By: Summit Partners Subordinated Debt Fund IV-
A, L.P.
Its: Manager

By: Summit Partners SD IV, L.P.
Its: General Partner

By: Summit Partners SD IV, LLC
Its: General Partner

By: _____

Name: _Tom Roberts_____

Title: _Authorized Signatory_____

**"SELLER":**

FLORIDA GAMING CENTERS, INC.,
a Florida corporation

By: _____

Name: _____

Title: _____

**"PARENT":**

FLORIDA GAMING CORPORATION,
a Delaware corporation

By: _____

Name: _____

Title: _____

59

EXECUTION VERSION

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the duly authorized officer of each party hereto as of the date first above written.

**"PURCHASER":**

FRONTON HOLDINGS, LLC,
a Delaware limited liability company

By: Summit Partners Subordinated Debt Fund IV-A, L.P.
Its: Manager

By: Summit Partners SD IV, L.P.
Its: General Partner

By: Summit Partners SD IV, LLC
Its: General Partner

By: _____
    Name: _____
    Title: _____

**"SELLER":**

FLORIDA GAMING CENTERS, INC.,
a Florida corporation

By: _____
    Name: William B Collett Jr
    Title: CEO

**"PARENT":**

FLORIDA GAMING CORPORATION,
a Delaware corporation

By: _____
    Name: William B Collett Jr
    Title: CEO

59

## SCHEDULE I

### Real Property

### Owned Property

| | Owner | Folio # | Street Address | Summary Legal Description |
|---|---|---|---|---|
| 1. | City National Bank of Florida | 01-3129-015-0010 | 3500 NW 37th Ave., Miami, FL 33142 | Fronton Heights Addn PB 90-20, City of Miami |
| 2. | City National Bank of Florida | 30-3129-015-0020 | 3500 NW 37th Ave, Miami, FL 33142 | Fronton Heights Addn PB 90-20, Dade County |
| 3. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1910 | 3695 NW 35th St., Miami, FL 33142 | Melrose Hgts 5th Sec. PB 17-22, Lots 24-29 BLK 71 |
| 4. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1970 | 3695 NW 35th St., Miami, FL 33142 | Melrose Hgts 5th Sec. PB 17-22, Lot 30, BLK 71 |
| 5. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1980 | 3695 NW 35th St., Miami, FL 33142 | Melrose Hgts, 5th Sec. PB 17-22, Lot 31, BLK 71 |
| 6. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1990 | 3695 NW 35th St., Miami, FL 33142 | Melrose Hgts 5th Sec. PB 17-22, Lot 32, BLK 71 |
| 7. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-2000 | 3601 NW 35th St., Miami, FL 33142 | Melrose Hgts 5th Sec. PB 17-22, Lots 33-36, BLK 71 |
| 8. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1290 | | Melrose Hgts 5th Sec. PB 17-22, Lots 1-17 inc. & 21-26 inc. BLK 69 |
| 9. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1460 | 3663 NW 33rd St., Miami, FL 33142 | Melrose Hgts. 5th Sec. PB 17-22, Lots 18-19  BLK 69 |
| 10. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1540 | | Melrose Hgts. 5th Sec. PB 17-22, Lots 1-18 & 25 & 26 BLK 70 & N1/2 34 ST S of LTS 16-17-18 |
| 11. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1720 | 3655 NW 34th St., Miami, FL 33142 | Melrose Hgts. 5th Sec. PB 17-22, Lots 19-22 Inc.  BLK 70 & N ½ of NW 34th St Lyg S & Adj. |
| 12. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1730 | 3635 NW 34th St., Miami, FL 33142 | Melrose Hgts. 5th Sec. PB 17-22, Lots 23 & 24 Blk 70 & N ½ of NW 34 St. Lyg. S. & Adj. Closed Per |
| 13. | Florida Gaming Centers, Inc. | 2313-233-0001-000/0 | 1750 S. Kings Hwy., Ft. Pierce, FL 34945 | |
| 14. | Florida Gaming Corporation | 2313-233-0002-000/7 | 1776 Kings Hwy., Ft. Pierce, FL 34945 | |
| 15. | Florida Gaming Corporation | 2313-233-0003- | 1790 Kings Hwy., Ft. | |

|  | | 000/4 | Pierce, FL 34945 |
|---|---|---|---|
| 16. | Florida Gaming Centers, Inc. | 2313-322-0012-000/3 | 0 Kings Hwy, Ft. Pierce, FL 34945 |

## Leased Property

|  | Lessee | Name of Lease | Facility |
|---|---|---|---|
| 1. | Casino Café | Food Services Management Agreement (Florida Gaming Corporation as Landlord) | Miami |
| 2. | Summer Jai Alai Partners | Lease (Seller as Landlord) | Miami |

2

## SCHEDULE II
## INCLUDED CONTRACTS

| | Company | Service/Product | Property | Contract Date | Exp Date | Amount | Frequency |
|---|---|---|---|---|---|---|---|
| 1. | Sportech Racing LLC f/k/a Scientific Games Racing, LLC | Parimutuel Wagering Equipment and Service | Ft Pierce | Mar. 23, 2009 | Month to Month | $1,800 | Weekly |
| a. | | Amendment to Services Agreement | Ft. Pierce | Dec. 22, 2010 | | | |
| b. | | Second Amendment to Services Agreement | Ft. Pierce | Nov. 9, 2011 | | | |
| c. | | Third Amendment to Services Agreement | Ft. Pierce | Dec. 26, 2012 | | | |
| d. | | Fourth Amendment to Services Agreement | Ft. Pierce | July 1, 2013 | | | |
| e. | | Fifth Amendment to Services Agreement | Ft. Pierce | Aug. 28, 2013 | | | |
| f. | | Sixth Amendment to Services Agreement | Ft. Pierce | Oct. 30, 2013 | | | |
| 2. | Sportech Racing LLC f/k/a Scientific Games Racing, LLC | Parimutuel Wagering Equipment and Service | Miami | Nov. 23, 2009 | Month to Month | $2,850 | Weekly |
| a. | | Amendment to Services Agreement | Miami | Dec. 22, 2010 | | | |
| b. | | Letter | Miami | Dec. 23, 2010 | | | |
| c. | | Second Amendment to Services Agreement | Miami | Jan. 13, 2012 | | | |
| d. | | Third Amendment to Services Agreement | Miami | Dec. 26, 2012 | | | |
| e. | | Fourth Amendment to Services Agreement | Miami | June 2013 | | | |
| f. | | Fifth Amendment to Services Agreement | Miami | Aug. 28, 2013 | | | |
| g. | | Sixth Amendment to Services Agreement | Miami | Oct. 30, 2013 | | | |
| 3. | Teleview Racing Patrol, Inc. (now owned by International Sound Corp) | Televising Pari-mutuel Wagering | Miami | Feb. 16, 2011 | Feb. 15, 2016 | $331 | Daily - Live |
| 4. | Teleview Racing Patrol, Inc. (now owned by International Sound | Televising Pari-mutuel Wagering | Miami | Feb. 16, 2011 | Feb. 15, 2016 (Not in effect right | $50 | Daily – Simulcast |

3

| | | | | | now because do not need simulcast) | | |
|---|---|---|---|---|---|---|---|
| | Corp.) | | | | | | |
| 5. | Teleview Racing Patrol, Inc. (now owned by International Sound Corp.) | Surveillance Equipment | Ft Pierce | Oct. 20, 2008 | Dec. 31, 2013 (now Month to Month) | $62.10 | Daily - 360 dy/yr |
| 6. | Teleview Racing Patrol, Inc. (now owned by International Sound Corp.) | Surveillance Equipment | Ft Pierce | Mar. 27, 2008 | Dec. 31, 2013 (now Month to Month) | $31.50 | Daily - 360 dy/yr |
| 7. | Teleview Racing Patrol, Inc. (now owned by International Sound Corp.) | Surveillance Equipment | Ft Pierce | Feb. 25, 2008 | Dec. 31, 2013 (now Month to Month) | $4.37 | Daily - 360 dy/yr |
| 8. | Teleview Racing Patrol, Inc. (now owned by International Sound Corp.) | Surveillance Equipment | Ft Pierce | Feb. 18, 2008 | Dec. 31, 2013 (now Month to Month) | $167.90 | Daily - 360 dy/yr |
| 9. | Teleview Racing Patrol, Inc. (now owned by International Sound Corp.) | LCD TV's | Ft Pierce | Jan. 29, 2008 | Dec. 31, 2013 (now Month to Month) | $82.28 | Daily - 360 dy/yr |
| 10. | Glory (U.S.A.) Inc. | Service -Ticket Redemption Units | Miami | Apr. 9, 2012 | Apr. 20, 2014 (Renews annually) | $27,146.80 | Annual |
| 11. | Cummins Allison Corp. | Service Currency Counting Equipment | Miami | May 1, 2012 | Apr. 30, 2014 (then month to month) | $16,784.01 | Annual |
| 12. | Konica-Minolta | Copier Leases | Miami | Oct. 17, 2011 | Oct. 17, 2016 | $2,640 | Monthly |
| 13. | Horizon Software, Inc. | Jai-Alai Player statistics and handicapping system | Miami | Aug. 26, 2011 | Dec. 31, 2014 (Renews annually) | $600 | Monthly |
| 14. | Loomis | Armored Car | Miami | Nov. 2011 | Oct. 2014 (Renews annually) | $868.26 (approx. $2,000 with | Monthly |

4

| | | | | | Extends | (fees) | |
|---|---|---|---|---|---|---|---|
| 15. | Otis Elevator | Elevator Service Contract (3) elevators | Miami | Dec. 6, 1991 | automaticall y for 5 year terms | $6,366 | Quarterly |
| 16. | Orkin Pest Control | Pest control services | Miami | May 21, 1997, as amended by Addendum on Apr. 6, 2012 | Month to Month | $246 | Weekly |
| 17. | Royal Cool | Air Conditioning maintenance/service | Miami | Apr. 24, 2012 | Month to Month | $1,720 | Monthly |
| 18. | Cisco Capital | Phone system lease/purchase | Miami | Oct. 19, 2011 | Oct. 18, 2014 | $1,469 | Monthly |
| 19. | Bally Gaming, Inc. d/b/a Bally Technologies | Software/Hardware Maintenance | Miami | Apr. 23, 2012 | Apr. 22, 2014 (Renews annually) | $23,115 | Monthly |
| 20. | CTP Reporting | Report writing system | Miami | Dec. 1, 2011 | Nov. 30, 2014 (Renews annually) | $350 | Monthly |
| 21. | Racetrack Television Network, LLC (Robert Communications)[1] | Satellite service for jai-alai signal | Miami | Jan. 1, 2011 | Dec. 31, 2014 (Renews annually) | $550 | Per performa nce |
| 22. | DiTronics Financial Services | Cash Access Services – ATM service - revenue share – cash advances | Miami | Aug. 22, 2011, as amended by Addendum on Sept. 12, 2012 | Sept. 14, 2014 | Commission Fee Structure | Monthly |
| 23. | DiTronics Financial Services | ATM operator application and agreement | Ft. Pierce | Jun. 14, 2013 | | | |
| 24. | DiTronics Financial Services | Cash Access Services – ATM service – revenue share – cash advances | Ft. Pierce | Jul. 18, 2013 | Feb. 14, 2017 | Commission Fee Structure | Monthly |
| 25. | Casino Café | Food Services Management Agreement (Seller as Landlord) | Miami | Nov. 2011 | Jan. 2015 | No rent | |
| 26. | Summer Jai Alai Partners | Lease (Seller as Landlord) | Miami | Sept. 30, 2010 | Jan. 22, 2019 | $7,500 x 47 of performances | |

[1] Terms set forth in this Schedule on based on an unsigned contract.

5

| | | | | | | paid to FGC | |
|---|---|---|---|---|---|---|---|
| 27. | Summer Jai Alai Partners | Amended and Rested Permit Use Agreement | Miami | Sept. 30, 2010 | Jan. 22, 2019 | | |
| 28. | Miami-Dade County, Florida | Promissory Note in the face amount of $3,013,586.10 | Miami | Mar. 27, 2009 | Apr. 1, 2024 | See Amortization schedule attached to the Note | Monthly |
| 29. | Miami-Dade County, Florida | Mortgage and Security Agreement to Miami-Dade County, Florida, recorded in Book 26817, Page 2713. | Miami | Apr. 6, 2009 | | | |
| 30. | Miami-Dade County, Florida | Promissory Note in the face amount of $12,054,344.00 | Miami | Jun. 17, 2011 | Jun. 15, 2026 | See Amortization Schedule attached to the Note | Monthly |
| 31. | Miami-Dade County, Florida | Mortgage and Security Agreement to Miami-Dade County, Florida, recorded in Book 27728 at Page 1880 | Miami | Jun. 17, 2011 | | | |
| 32. | Miami-Dade County, Florida | Settlement Agreement | Miami | Feb. 3, 2009 | | | |
| 33. | Miami-Dade County, Florida | Letter Agreement | Miami | Feb.16, 2011 | | $430,000 due if notice of commencement is filed | |
| 34. | American Gaming System | Slot machine leases | Miami | Jan. 21, 2011 | Jul. 22, 2014 | $175,500 | Monthly |
| 35. | American Gaming System | Slot machine leases | Miami | Jan. 21, 2011 | Jan. 22, 2014 (now Month to Month) | $41,880 | Monthly |
| 36. | IGT | Slot machine leases | Miami | Sept. 9, 2011 | Month to Month | $19,902 | Monthly |
| 37. | Bally Gaming, Inc. d/b/a Bally Technologies | Slot machine leases | Miami | Sept. 12, 2011 | Sept 11, 2014 (Renews annually) | $13,500 | Monthly |
| 38. | Aristocrat Technologies, Inc. | Slot machine leases | Miami | Oct. 18, 2012 | Month to Month | $19,581 | Monthly |
| 39. | Shufflemaster (now | Blackjack | Miami | Aug. 18, 2011 | Month to | $15,000 | Monthly |

| | | | | (with new table added on July 25, 2012) | Month | | |
|---|---|---|---|---|---|---|---|
| | owned by Bally) | | | | | | |
| 40. | Shufflemaster (now owned by Bally) | Card shufflers | Miami | Oct. 31, 2011 | Month to Month | $8,520 | Monthly |
| 41. | L & M Leasing | (3) Golf cart rentals | Miami | Sept. 21, 2012 | Month to Month | $1,204 | Monthly |
| 42. | City National Bank of Florida | Land Trust Agreement, as assigned | Miami | Jan. 3, 1972 and assigned on Dec. 31, 1996 | | | |
| 43. | United Fire Protection, Inc. | Fire System Inspections | Miami | Jan. 1, 2012 | Dec. 31, 2014 (Renews annually) | $13,555 | Annual |
| 44. | All Mobile Video | Decoders | Ft. Pierce | Dec. 31, 2013 | Month to Month | $100 | Monthly |
| 45. | The New York Racing Association | Decoder | Ft. Pierce | Feb. 10, 2014 | Month to Month | $250 | Monthly |
| 46. | DigiDeal Corporation | Electronic blackjack dealers | Miami | Oct. 27, 2011 | Oct. 15, 2014 | $2,000 | Monthly |

Player Contracts – Miami:

| | Playing Name | Legal Name | Monthly Salary | Expiration Date |
|---|---|---|---|---|
| 47. | Aitzol | Aitzol Erquiaga | $2,400 | Dec. 31, 2014 |
| 48. | Aizarna | Ruben Gonzalez | $2,600 | Dec. 31, 2014 |
| 49. | Aizpitarte | Jon Aizpitarte | $2,100 | Dec. 31, 2014 |
| 50. | Aldazabal | Inaki Aldazabal | $3,000 | Dec. 31, 2014 |
| 51. | Alejandro | Alejandro Sandoval | $2,100 | Dec. 31, 2014 |
| 52. | Areitio | Alberto Mandiola | $3,100 | Dec. 31, 2014 |
| 53. | Aritz | Aritz Erkiaga | $3,400 | Dec. 31, 2014 |

| 54. | Arrasate | Igor Arrasate | $2,800 | Dec. 31, 2014 |
|---|---|---|---|---|
| 55. | Arriza | Teodoro J. Echaburu | $2,600 | Dec. 31, 2014 |
| 56. | Benat | Benat Flores | $2,500 | Dec. 31, 2014 |
| 57. | Bereikua | Yulen Bereikua | $3,100 | Dec. 31, 2014 |
| 58. | Chauderon | Richard Chauderon | $2,600 | Dec. 31, 2014 |
| 59. | Cisneros | Jose L. Cisneros | $3,000 | Dec. 31, 2014 |
| 60. | Enrique | Enrique Brisenos | $2,400 | Dec. 31, 2014 |
| 61. | Erkiaga | Jose M. Erkiaga | $3,300 | Dec. 31, 2014 |
| 62. | Garro | Aitor Garrogerricaechebarria | $2,700 | Dec. 31, 2014 |
| 63. | Goicoetxea | Inaki Osa | $5,200 | Dec. 31, 2014 |
| 64. | Guisasola | Julian Guisasola | $2,100 | Dec. 31, 2014 |
| 65. | Duke | Jonathan Hernandez | $2,500 | Dec. 31, 2014 |
| 66. | Irastorza | Eric Irastorza | $4,500 | Dec. 31, 2014 |
| 67. | Jabi | Javier Salaberria | $3,500 | Dec. 31, 2014 |
| 68. | Jon | Jon Mugartegui | $2,500 | Dec. 31, 2014 |
| 69. | Ladurke | Emmanuel Laduche | $3,000 | Dec. 31, 2014 |
| 70. | Lejardi | Fernando Lejardi | $3,400 | Dec. 31, 2014 |
| 71. | Lopez | Imanol Lopez | $4,500 | Dec. 31, 2014 |
| 72. | Luis | Luis Osa | $3,300 | Dec. 31, 2014 |
| 73. | Manuel | Victor M. Ramirez | $2,100 | Dec. 31, 2014 |
| 74. | Patrick | Patrick Bouzet | $3,000 | Dec. 31, 2014 |
| 75. | Patxi | Patxi Tambourinedeguy | $2,400 | Dec. 31, 2014 |
| 76. | Rekalde | Alexander Recalde | $3,600 | Dec. 31, 2014 |
| 77. | Ricky | Ricardo Ruiz Vazquez | $3,000 | Dec. 31, 2014 |
| 78. | Santiso | Benat Santiso | $2,200 | Dec. 31, 2014 |
| 79. | Tevin | Leon Shepard | $3,200 | Dec. 31, 2014 |
| 80. | Tico | Roberto Barrios | $2,500 | Dec. 31, 2014 |
| 81. | Zinkunegi | Unai Cincunegui | $3,000 | Dec. 31, 2014 |
| 82. | Zuri | Juan M. Furdazuri | $2,900 | Dec. 31, 2014 |

8

| | TOTAL | | $105,900 |
|---|---|---|---|

Players Contracts – Ft. Pierce: 16 players to be contracted in January

Revenue Sharing Agreements and Collective Bargaining Agreements:

| 83. | Jai-Alai Players | Collective Bargaining Agreement | 1.75% of Slot Revenue |
|---|---|---|---|
| 84. | Miami-Dade County | Development Agreement | 1.5% of Slot Revenue |
| 85. | City of Miami | Development Agreement | 1.5% of Slot Revenue |
| 86. | City of Ft. Pierce and St. Lucie County | Revenue Sharing Agreement | 3.0% of Slot Revenue (split equally) of poker rake |

Licenses:

See Schedule IV.

Warranties:

All active warranties relating to Tangible Personal Property set forth in Schedule II.

Insurance Policies:

See Schedule 2.17.

9

**SCHEDULE III**
**TANGIBLE PERSONAL PROPERTY**

[SEE ATTACHED]

The Slot Machine List was included in the Intralinks data room created in connection with Seller's bankruptcy auction and Purchaser acknowledges receipt thereof.

10

2/7/2014
1:18:44 PM

FLORIDA GAMING CORPORATION
3500 NW 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE      00001
1

LOCATION      1 - MIAMI JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | LAND (1500) | | | | | | | | | |
| 1011002 | 3500 NW 37 AVENUE, MIAMI, FL | | 01/01/1997 | ** Y | 99.00 | | 2,181,754.00 | .00 | .00 | .00 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1011003 | LOT 23 BLK 71 MELROSE HEIGHTS | | 01/01/1997 | ** Y | 99.00 | | 121,003.00 | .00 | .00 | .00 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1011004 | LAND DOCUMENTARY STAMPS | N | 02/11/1997 | ** Y | 99.00 | | 122,088.59 | .00 | .00 | .00 |
| | PNC#2211 GREENBERG TRAURIG TR | | | | | | | | | |
| 1011005 | Parking Lot | N | 03/31/2009 | ** Y | 99.00 | | 3,400,285.02 | .00 | .00 | .00 |
| 1011006 | Parking Lot-Phase II | N | 06/15/2011 | ** Y | 99.00 | | 13,621,537.49 | .00 | .00 | .00 |
| | | | | | | | | | | |
| TOTAL LAND (1500) | | | | | | | 19,446,668.10 | | .00 | .00 |
| | | | | | | | | | | |
| 10 | LAND IMPROVEMENTS (1510) | | | | | | | | | |
| 1103001 | AUGER/WELLS/DRAINAGE | U | 01/01/1997 | AP Y | 15.00 | | 1,024.00 | .00 | 1,024.00 | .00 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1103003 | GUARD RAILING | U | 01/01/1997 | AP Y | 15.00 | | 11,725.56 | .00 | 11,725.56 | .00 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1103004 | LANDSCAPING | U | 01/01/1997 | AP Y | 15.00 | | 6,275.25 | .00 | 6,275.25 | .00 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1103006 | PARKING LOT PAVING | U | 01/01/1997 | AP Y | 15.00 | | 75,370.00 | .00 | 75,370.00 | .00 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1103007 | VALET SAFETY STEPS & GATE | U | 01/01/1997 | AP Y | 15.00 | | 891.84 | .00 | 891.84 | .00 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1103008 | SEWERAGE | U | 01/01/1997 | AP Y | 15.00 | | 2,119.47 | .00 | 2,119.47 | .00 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1103011 | Fence Repairs | N | 01/01/2007 | AP Y | 15.00 | | 36,560.00 | .00 | 16,053.50 | 2,157.04 |
| 1103012 | Signs-Oroz Signs Corp. | N | 01/01/2008 | DB200 | 15.00 | | 8,346.00 | .00 | 3,872.88 | 596.42 |
| 1103013 | Lights-Laser Supplies | N | 01/01/2008 | DB200 | 15.00 | | 3,081.60 | .00 | 1,429.99 | 220.21 |
| 1103014 | Parking Lighting-MV Professio | N | 01/01/2008 | DB200 | 15.00 | | 1,680.00 | .00 | 779.59 | 120.05 |
| 1103015 | Power Systems-Line Burial | N | 09/18/2008 | DB200 | 15.00 | | 60,580.64 | .00 | 28,111.87 | 4,329.17 |
| 1103016 | Neon Sign-Transformers | N | 06/09/2009 | AP Y | 7.00 | | 5,893.50 | .00 | 4,052.37 | 526.29 |
| 1103017 | Parking Lot East - Restriping | N | 01/01/2013 | SL N | 10.00 | | 52,054.53 | .00 | .00 | 5,205.45 |
| | Florida LeMark | | | | | | | | | |
| | | | | | | | | | | |
| TOTAL LAND IMPROVEMENTS (1510) | | | | | | | 265,602.39 | | 151,706.32 | 13,154.63 |
| | | | | | | | | | | |
| 20 | BUILDING & IMPROVEMENTS (1520) | | | | | | | | | |
| 1202001 | ACQUISITION OF BUILDINGS | U | 01/01/1997 | SR Y | 39.00 | | 2,441,285.73 | .00 | 998,903.02 | 62,594.57 |

2/7/2014
1:18:44 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

PAGE 00001
2

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

LOCATION    1 - MIAMI JAI-ALAI

| GL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | WORLD JAI-ALAI | | | | | | | | | |
| 1202002 | ACQUIS. OF BLDGS - EXCESS PUR. | U | 01/01/1987 | SR Y | 39.00 | | 798,481.47 | .00 | 326,738.56 | 20,473.06 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1202003 | ACQ. OF BLDGS - AUDIT ADJ | U | 01/01/1997 | SR Y | 39.00 | | 150,528.00 | .00 | 61,596.07 | 3,859.54 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1202004 | 15 CRYSTAL CHANDELIERS | N | 03/28/1997 | AP Y | 7.00 | | 43,070.65 | .00 | 43,070.65 | .00 |
| | RUEFF LIGHTING | | | | | | | | | |
| 1202006 | POKER ROOM RENOVATIONS | N | 06/20/1997 | SL Y | 15.00 | | 994,466.80 | .00 | 994,466.80 | .00 |
| 1202007 | POKER ROOM SIGNS | N | 08/01/1997 | SL Y | 15.00 | | 5,800.16 | .00 | 5,800.16 | .00 |
| | SIGNS SYSTEMS | | | | | | | | | |
| 1202014 | ELEVATOR OIL LINE - OTIS | N | 04/16/1998 | SR Y | 39.00 | | 7,679.00 | .00 | 2,886.15 | 196.89 |
| 1202020 | POKER ROOM RENOVATION-SETTLEMT | N | 04/01/1999 | SL Y | 15.00 | | 15,000.00 | .00 | 13,500.00 | 1,000.00 |
| 1202022 | 7.5 HP SEWAGE PUMP-DADE PUMP | N | 02/12/2002 | SX Y | 7.00 | | 3,914.62 | .00 | 3,914.62 | .00 |
| 1202027 | POKER ROOM RENOVATIONS | N | 08/30/2003 | SL Y | 15.00 | | 13,005.66 | .00 | 10,621.26 | 433.53 |
| 1202029 | ROOF-CENTIMARK CK#17965 | N | 04/29/2004 | SR Y | 39.00 | | 9,953.35 | .00 | 2,222.85 | 255.20 |
| 1202031 | Carpet-VIP Court Area-Rugbeete | N | 01/01/2006 | AP Y | 7.00 | | 932.00 | .00 | 890.44 | 41.56 |
| 1202032 | Carpet-Blue-Upstairs & Hallway | N | 02/09/2006 | AP Y | 7.00 | | 2,282.00 | .00 | 2,180.21 | 101.79 |
| 1202033 | Roof | N | 01/01/2007 | SR Y | 39.00 | | 258,851.54 | .00 | 39,555.08 | 6,836.95 |
| 1202034 | Main Playing Court | N | 01/01/2007 | SR Y | 39.00 | | 138,786.90 | .00 | 21,208.05 | 3,558.50 |
| 1202035 | Air Conditioning | N | 01/01/2007 | SR Y | 39.00 | | 23,969.25 | .00 | 3,662.73 | 614.57 |
| 1202036 | Crystal Cardroom Ceiling Tiles | N | 01/01/2007 | SR Y | 38.00 | | 25,949.43 | .00 | 3,965.32 | 665.34 |
| 1202037 | Locker Rm/Shipping & Receiving | N | 01/01/2007 | SR Y | 39.00 | | 69,278.50 | .00 | 10,586.44 | 1,776.30 |
| 1202038 | Roof - Players Locker Room | N | 01/01/2007 | SR Y | 39.00 | | 55,030.09 | .00 | 8,409.14 | 1,410.97 |
| 1202039 | Smoking Room | N | 01/01/2007 | SR Y | 39.00 | | 11,733.36 | .00 | 1,792.96 | 300.84 |
| 1202040 | Roof-Rocio's Roof | N | 01/01/2008 | SR Y | 39.00 | | 53,020.31 | .00 | 6,742.69 | 1,359.44 |
| 1202041 | Roof-Restaurant+Centimark | N | 01/01/2008 | SR Y | 39.00 | | 56,661.66 | .00 | 7,205.64 | 1,452.80 |
| 1202042 | Roof-Player Locker Room | N | 01/01/2008 | SR Y | 39.00 | | 5,500.00 | .00 | 699.44 | 141.02 |
| | Florida Lemark | | | | | | | | | |
| 1202043 | Stucco Repair 2007 | N | 01/01/2008 | SR Y | 39.00 | | 57,423.60 | .00 | 7,302.55 | 1,472.34 |
| | Florida Lemark | | | | | | | | | |
| 1202044 | Kitchen Hood-North Lounge | N | 01/01/2008 | SR Y | 39.00 | | 26,675.49 | .00 | 3,392.32 | 683.96 |
| | Hood Mart | | | | | | | | | |
| 1202045 | Crystal Room Restoration | N | 01/01/2008 | SR Y | 39.00 | | 26,821.35 | .00 | 3,410.87 | 687.70 |
| | Florida Lemark | | | | | | | | | |
| 1202046 | Restroom Restoration | N | 01/01/2008 | SR Y | 39.00 | | 29,850.00 | .00 | 3,796.01 | 765.35 |
| | Florida Lemark | | | | | | | | | |
| 1202047 | Air Conditioning-Crystal Room | N | 01/01/2008 | SR Y | 39.00 | | 65,488.00 | .00 | 8,328.10 | 1,679.11 |

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

LOCATION    1 - MIAMI JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | Florida Lemark | | | | | | | | | |
| 1202048 | Metal Door Replacement | N | 01/01/2008 | SR Y | 39.00 | | 9,840.00 | .00 | 1,251.36 | 252.30 |
| | Florida Lemark | | | | | | | | | |
| 1202049 | Electric Wiring-Courtview Kitc | N | 01/01/2008 | SR Y | 39.00 | | 4,394.45 | .00 | 568.83 | 112.67 |
| | Calex Electric | | | | | | | | | |
| 1202050 | Crystal Room-New Carpet | N | 01/01/2008 | SX Y | 7.00 | | 34,558.00 | .00 | 28,847.76 | 3,084.10 |
| | Rugbeaters | | | | | | | | | |
| 1202051 | Installation of Downspouts | N | 01/01/2008 | SX Y | 7.00 | | 1,366.00 | .00 | 1,061.23 | 121.91 |
| | Florida Lemark | | | | | | | | | |
| 1202052 | Sprinler Heads-Wiginton Fire | N | 03/01/2008 | SR Y | 39.00 | | 10,079.00 | .00 | 1,238.63 | 258.43 |
| 1202053 | Structural Repairs | N | 02/15/2008 | SR Y | 39.00 | | 47,135.26 | .00 | 5,893.43 | 1,208.57 |
| | Florida Lemark | | | | | | | | | |
| 1202054 | Fire System-United Fire Prot. | N | 04/21/2008 | SR Y | 39.00 | | 256,841.39 | .00 | 32,221.08 | 6,841.81 |
| 1202055 | 2 Doors -Vault Room | N | 10/25/2008 | SL Y | 15.00 | | 9,900.00 | .00 | 2,970.00 | 660.00 |
| 1202056 | Fire System-United Fire Prot. | N | 05/14/2009 | SR Y | 39.00 | | 16,400.00 | .00 | 1,524.72 | 420.50 |
| 1202057 | A/C Condensor Unit-Royal Cool | N | 06/04/2009 | AP Y | 7.00 | | 16,250.00 | .00 | 11,173.52 | 1,451.13 |
| 1202058 | Valet Tunnel Renovation | N | 07/08/2009 | SL Y | 10.00 | | 27,975.00 | .00 | 9,682.26 | 2,761.17 |
| 1202059 | Building Painting | N | 08/20/2009 | SL Y | 10.00 | | 27,790.00 | .00 | 9,618.23 | 2,742.91 |
| 1202060 | Fire Alarm-Power Supply | N | 01/01/2011 | AP Y | 7.00 | | 3,876.61 | .00 | 1,503.35 | 678.02 |
| | United Fire | | | | | | | | | |
| 1202061 | Air Handler-Players | N | 01/01/2011 | AP Y | 7.00 | | 1,800.00 | .00 | 698.04 | 314.82 |
| 1202062 | Roof- Auditorium | N | 01/01/2011 | SR Y | 39.00 | | 963,810.00 | .00 | 48,431.45 | 24,712.09 |
| 1202063 | Maple Floor-Player's Court | N | 01/01/2011 | SR Y | 39.00 | | 46,104.76 | .00 | 2,316.77 | 1,182.13 |
| 1202064 | Casino Construction | N | 01/15/2012 | SR Y | 39.00 | | 20,257,388.82 | .00 | 498,534.34 | 519,399.45 |
| 1202065 | Carpeting - Milliken & Co. | N | 01/15/2012 | SL N | 7.00 | | 65,000.00 | .00 | 9,288.50 | 9,285.71 |
| 1202066 | Casino Sinage | N | 01/15/2012 | SL N | 7.00 | | 112,457.50 | .00 | 16,070.18 | 16,065.35 |
| 1202067 | HV AC Unit MBF Rm-Royal Cool | N | 01/15/2012 | SL N | 7.00 | | 3,900.00 | .00 | 557.31 | 557.14 |
| 1202068 | HV AC Unit -ITF Rm-Royal Cool | N | 01/15/2012 | SL N | 7.00 | | 4,604.00 | .00 | 657.91 | 657.71 |
| 1202069 | Signage-American Tropical Sign | N | 08/03/2012 | SL N | 7.00 | | 3,408.00 | .00 | 487.00 | 486.85 |
| 1202070 | Doors - Man Trap & Cart Storag | N | 01/01/2013 | SL N | 10.00 | | 12,728.00 | .00 | .00 | 1,272.80 |
| 1202071 | Electrical - Signeage | N | 03/18/2013 | SL N | 10.00 | | 8,625.61 | .00 | .00 | 678.07 |
| 1202072 | Porcelain Tiles | N | 03/27/2013 | SL N | 10.00 | | 7,398.00 | .00 | .00 | 563.07 |
| | Cafeteria & Ticket Counters | | | | | | | | | |
| | TOTAL BUILDING & IMPROVEMENTS (1520) | | | | | | 27,355,070.02 | .00 | 3,279,443.73 | 707,930.04 |
| 30 | MACHINERY AND EQUIPMENT (1530) | | | | | | | | | |
| 1304004 | 3,795 AUDITORIUM CHAIRS | U | 01/01/1997 | AP Y | 7.00 | | 106,050.12 | .00 | 106,050.12 | .00 |

2/7/2014
1:16:44 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

PAGE    4
00001

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

LOCATION    1 - MIAMI JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | WORLD JAI-ALAI | | | | | | | | | |
| 1304011 | MISC. MAINTENANCE EQUIPMENT | U | 01/01/1997 | AP Y | 7.00 | | 5,968.43 | .00 | 5,968.43 | .00 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1304021 | 5 PRIVATE PHONES | U | 01/01/1997 | AP Y | 7.00 | | 1,901.84 | .00 | 1,901.84 | .00 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1304027 | DOT MATRIX SCOREBOARD | U | 01/01/1997 | AP Y | 7.00 | | 196,404.89 | .00 | 196,404.89 | .00 |
| | WORLD JAI-ALAI | | | | | | | | | |
| 1304043 | A/C RESTAURANT-ROYAL COOL | N | 08/10/1999 | AP Y | 7.00 | | 4,752.03 | .00 | 4,752.03 | .00 |
| 1304049 | CPS 400 COMBO-MEDICAL VALUES | N | 03/28/2001 | AP Y | 7.00 | | 2,763.68 | .00 | 2,763.68 | .00 |
| 1304110 | Time & Attendance System-Sierr | N | 01/01/2012 | AP Y | 7.00 | | 19,022.72 | .00 | 2,718.35 | 4,658.66 |
| 1304118 | 2-PROTEL 7000 PUBLIC PHONES | N | 12/02/2004 | SX Y | 7.00 | | 1,330.00 | .00 | 1,330.00 | .00 |
| | G-TEL ENTERPRISES, INC. | | | | | | | | | |
| 1304119 | 6 Work Tables-Lumar & Ass. | N | 01/01/2006 | AP Y | 7.00 | | 3,496.36 | .00 | 3,340.42 | 155.94 |
| 1304120 | Satellite Dish,Teleview Rec.Pat | N | 01/07/2006 | AP Y | 7.00 | | 14,385.42 | .00 | 13,743.84 | 641.58 |
| 1304121 | 12-15 Gal.Waste Receptacles | N | 06/07/2007 | AP Y | 7.00 | | 1,572.41 | .00 | 1,361.86 | 140.42 |
| 1304122 | 12 Crowd Control Barriers | N | 06/13/2007 | AP Y | 7.00 | | 1,847.57 | .00 | 1,686.79 | 173.92 |
| 1304123 | Rane CP52 Mixer-Teleview | N | 07/14/2007 | AP Y | 7.00 | | 624.79 | .00 | 541.13 | 55.79 |
| 1304124 | 2 Credit Card Machines-Suntrus | N | 07/27/2007 | AP Y | 7.00 | | 1,923.66 | .00 | 1,666.25 | 171.80 |
| 1304125 | Biometric Timeclock-Carpenters | N | 10/03/2007 | AP Y | 7.00 | | 2,193.50 | .00 | 1,894.08 | 195.88 |
| 1304126 | Dryer(Plyrs Laundry)-Steiner | N | 11/05/2007 | AP Y | 7.00 | | 3,445.40 | .00 | 2,994.06 | 307.57 |
| 1304127 | LCD Projector-Best Buy | N | 01/18/2007 | AP Y | 7.00 | | 802.49 | .00 | 695.04 | 71.66 |
| 1304128 | Rolling Cocktail Tables-PxCC | N | 01/01/2008 | SX Y | 7.00 | | 648.65 | .00 | 503.53 | 57.89 |
| 1304129 | Scrubber-Model TS-Tennant Sale | N | 02/28/2008 | SX Y | 7.00 | | 12,432.32 | .00 | 9,658.54 | 1,109.51 |
| 1304130 | Results Line-Answering Machine | N | 07/09/2009 | AP Y | 7.00 | | 2,230.55 | .00 | 1,534.00 | 199.22 |
| 1304131 | Surveillance System-Cobco | N | 01/01/2010 | AP Y | 7.00 | | 1,069.99 | .00 | 602.08 | 133.64 |
| 1304150 | Fingerprint System | N | 01/15/2012 | SL N | 7.00 | | 15,307.76 | .00 | 2,187.48 | 2,186.82 |
| | Cross Match Technologies | | | | | | | | | |
| 1304151 | Electronic Keyboxes | N | 01/15/2012 | SL N | 7.00 | | 18,075.68 | .00 | 2,583.04 | 2,582.26 |
| | Secure Tech Systems | | | | | | | | | |
| 1304152 | Auditorium Seating Renovations | N | 01/15/2012 | SL N | 7.00 | | 73,930.35 | .00 | 10,564.65 | 10,561.47 |
| 1304153 | Currency Counters – Cummins | N | 01/15/2012 | SL N | 7.00 | | 150,780.28 | .00 | 21,546.50 | 21,540.04 |
| 1304154 | Drop Carts & Cash Carts-Reldom | N | 01/15/2012 | SL N | 7.00 | | 50,659.00 | .00 | 7,239.17 | 7,237.00 |
| 1304155 | Drop Boxes | N | 01/15/2012 | SL N | 7.00 | | 5,703.60 | .00 | 815.04 | 814.80 |
| 1304156 | Misc Computer Equip | N | 01/15/2012 | SL N | 3.00 | | 10,321.63 | .00 | 3,440.20 | 3,440.54 |
| 1304157 | Security Radios-Wireless Infot | N | 01/01/2012 | SL N | 7.00 | | 17,290.24 | .00 | 2,470.78 | 2,470.03 |
| 1304158 | Network Gear-Great Lakes Compu | N | 01/15/2012 | SL N | 7.00 | | 88,147.26 | .00 | 12,596.24 | 12,592.46 |
| 1304159 | Parking Equipment- Global Ind. | N | 01/15/2012 | SL N | 7.00 | | 3,573.39 | .00 | 510.84 | 510.48 |

2/7/2014
1:16:44 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE 5
00001

LOCATION   1 - MIAMI JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1304160 | Video Surveillance System Aware Digital | N | 01/15/2012 | SL N | 7.00 | | 1,610,512.34 | .00 | 230,142.21 | 230,073.19 |
| 1304161 | Satellite Wiring & Cables System of Security Service | N | 04/10/2012 | SL N | 7.00 | | 8,934.50 | .00 | 1,276.74 | 1,276.35 |
| 1304162 | Auditorium Seating Renovations Seatmasters | N | 04/26/2012 | SL N | 7.00 | | 30,237.13 | .00 | 4,320.89 | 4,319.59 |
| 1304163 | Sierra Time Clock | N | 05/31/2012 | SL N | 7.00 | | 2,191.20 | .00 | 313.12 | 313.02 |
| 1304164 | Great Lakes Computer | N | 07/30/2012 | SL Y | 6.00 | | 7,802.35 | .00 | 633.53 | 1,238.90 |
| 1304165 | Auditorium Screens | N | 02/26/2013 | SL N | 10.00 | | 3,830.52 | .00 | .00 | 324.53 |
| TOTAL MACHINERY AND EQUIPMENT (1530) | | | | | | | 2,452,064.85 | | 662,741.59 | 309,555.06 |
| **40** | **CONC./SNACK/BAR EQUIP. (1540)** | | | | | | | | | |
| 1405021 | 3 Keg Beer Dispense-MJR Rest | N | 10/05/2006 | AP Y | 7.00 | | 1,931.35 | .00 | 1,845.22 | 86.13 |
| 1405022 | Horizontal Cooler-Miami Bar & | N | 08/03/2007 | AP Y | 7.00 | | 1,331.86 | .00 | 1,153.52 | 118.94 |
| 1405023 | Scotsman Ice Machine w/Bin | N | 06/19/2008 | SX Y | 7.00 | | 5,760.88 | .00 | 4,475.57 | 514.12 |
| 1405024 | Baker's Pride-Oven-Model P18S | N | 09/21/2008 | SX Y | 7.00 | | 1,304.80 | .00 | 1,013.69 | 116.44 |
| 1405025 | Wells Model F676.Fryer | N | 09/21/2008 | SX Y | 7.00 | | 1,616.17 | .00 | 1,255.59 | 144.23 |
| 1405026 | Concessions Freezer | N | 08/30/2009 | AP Y | 7.00 | | 1,282.92 | .00 | 882.14 | 114.56 |
| 1405030 | Remote Draft System - Markham | N | 01/15/2012 | SL N | 7.00 | | 9,469.50 | .00 | 1,353.19 | 1,352.78 |
| 1405031 | POS - Micros | N | 01/15/2012 | SL N | 7.00 | | 60,548.02 | .00 | 8,652.31 | 8,649.71 |
| TOTAL CONC./SNACK/BAR EQUIP. (1540) | | | | | | | 83,245.50 | | 20,631.23 | 11,096.91 |
| **60** | **OFFICE EQUIPMENT (1560)** | | | | | | | | | |
| 1607039 | Computer Cardroom-Best Buy | N | 07/15/2007 | AP Y | 5.00 | | 818.50 | .00 | 818.50 | .00 |
| 1607040 | Computer -JV-Tiger Direct | N | 11/12/2007 | AP Y | 5.00 | | 754.32 | .00 | 754.32 | .00 |
| 1607041 | 2 XP Computers-Next Generation | N | 05/31/2008 | SX Y | 5.00 | | 2,799.83 | .00 | 2,638.56 | 161.27 |
| 1607042 | 3 Computers - Office | N | 10/10/2008 | SX Y | 5.00 | | 2,222.82 | .00 | 2,094.78 | 128.04 |
| 1607043 | KONICA 750 & LANIER COPIERS | N | 03/01/2010 | AP Y | 7.00 | | 19,838.80 | .00 | 11,163.29 | 2,477.87 |
| 1607050 | Accounting System | N | 01/01/2012 | SL N | 7.00 | | 35,189.52 | .00 | 5,028.58 | 5,027.07 |
| 1607051 | Computers - Deli Marketing | N | 01/01/2012 | SL N | 3.00 | | 23,046.33 | .00 | 7,681.34 | 7,662.11 |
| TOTAL OFFICE EQUIPMENT (1560) | | | | | | | 84,670.12 | | 30,179.37 | 15,476.36 |
| **70** | **CASINO EQUIPMENT (1570)** | | | | | | | | | |
| 1708003 | SLOT MACHINES | N | 01/15/2012 | SL N | 7.00 | | 11,653,390.04 | .00 | 1,665,269.44 | 1,664,770.00 |

2/7/2014.
1:16:44 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE     00001
6

LOCATION     1 - MIAMI JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1708004 | Slot Stools & Bases-Majestic | N | 01/15/2012 | SL  N | 7.00 | | 251,681.02 | .00 | 35,965.22 | 35,954.43 |
| 1708005 | Ticket Redemption Units-Glory | N | 01/15/2012 | SL  N | 7.00 | | 219,139.50 | .00 | 31,315.03 | 31,305.64 |
| 1708006 | Computer System-Bally Tech | N | 01/15/2012 | SL  N | 7.00 | | 3,260,234.62 | .00 | 465,887.53 | 465,747.80 |
| 1708007 | Slot Machine Switches-Cisco Sy | N | 01/15/2012 | SL  N | 7.00 | | 144,036.57 | .00 | 20,582.83 | 20,576.65 |
| 1708008 | Casino Kiosk - Glory USA | N | 03/16/2012 | SL  N | 7.00 | | 36,696.40 | .00 | 5,243.92 | 5,242.34 |
| 1708009 | Boxsoft Casino Tools | N | 06/25/2012 | SL  N | 7.00 | | 20,000.00 | .00 | 2,858.00 | 2,857.14 |
| 1708010 | (2) 70" Vizio TVs | N | 01/27/2013 | SL  N | 10.00 | | 3,614.86 | .00 | .00 | 335.37 |
| 1708011 | (2) 70" LCD TVs | N | 01/01/2013 | SL  N | 10.00 | | 3,810.66 | .00 | .00 | 381.06 |

TOTAL CASINO EQUIPMENT (1570)

| | | | | | | | 15,592,603.67 | | 2,227,121.97 | 2,227,170.43 |
|---|---|---|---|---|---|---|---|---|---|---|

80
1809001

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | CARDROOM EQUIPMENT (1580) | | | | | | | | | |
| 1809001 | 40 DEALER CHAIRS | N | 02/27/1997 | AP  Y | 7.00 | | 7,220.70 | .00 | 7,220.70 | .00 |
| 1809002 | PINNACLE FURN.CK1533,4615,5403<br>330 POKER CHAIRS | N | 02/27/1997 | AP  Y | 7.00 | | 38,483.78 | .00 | 38,483.78 | .00 |
| 1809003 | PINNACLE FURN.CK1533,4615,5403<br>15-30" BAR STOOLS | N | 03/31/1997 | AP  Y | 7.00 | | 2,540.03 | .00 | 2,540.03 | .00 |
| 1809004 | PINNACLE FURN. CK# 3915,6375<br>150 POKER CHAIRS | N | 03/31/1997 | AP  Y | 7.00 | | 17,492.62 | .00 | 17,492.62 | .00 |
| 1809005 | PINNACLE FURN. CK #3915,6375<br>30 DEALER CHAIRS | N | 03/31/1997 | AP  Y | 7.00 | | 5,415.53 | .00 | 5,415.53 | .00 |
| 1809006 | PINNACLE FURN. CK #3915,6375<br>12 SWIVEL BAR STOOLS | N | 06/09/1997 | AP  Y | 7.00 | | 2,319.57 | .00 | 2,319.57 | .00 |
| 1809014 | PINNACLE FURNISHINGS CK.6375<br>STATUES - GREAT GASBY'S | N | 06/12/1997 | AP  Y | 7.00 | | 17,586.87 | .00 | 17,586.87 | .00 |
| 1809017 | 60 POKER TABLES | N | 06/20/1997 | AP  Y | 7.00 | | 56,110.80 | .00 | 56,110.80 | .00 |
| | GAMING MANAGEMENT SYSTEMS | | | | | | | | | |
| 1809018 | COCKTAIL TABLES - POKER ROOM | N | 10/23/1997 | AP  Y | 7.00 | | 3,674.25 | .00 | 3,674.25 | .00 |
| 1809019 | STATUES - GREAT GASBY'S | N | 12/01/1997 | AP  Y | 7.00 | | 11,730.00 | .00 | 11,730.00 | .00 |
| 1809020 | ELKAY WATER COOLER-LASER SUPPL | N | 03/21/2005 | AP  Y | 7.00 | | 582.49 | .00 | 582.49 | .00 |
| 1809021 | 8 BAR STOOLS-ONE WAY FURNITURE | N | 05/18/2005 | AP  Y | 7.00 | | 877.99 | .00 | 877.99 | .00 |
| 1809022 | TABLE TOPS-SUPERIOR PRODUCTS | N | 05/28/2005 | AP  Y | 7.00 | | 2,386.10 | .00 | 2,386.10 | .00 |
| 1809023 | FOLDING TABLES-HOME DEPOT | N | 07/12/2005 | AP  Y | 7.00 | | 2,715.08 | .00 | 2,715.08 | .00 |
| 1809024 | Chips/Trays-Quality Gaming | N | 06/15/2007 | AP  Y | 7.00 | | 6,858.70 | .00 | 5,940.33 | 612.48 |
| 1809025 | 45 Drop Boxes-Quality Gaming | N | 06/15/2007 | AP  Y | 7.00 | | 6,124.68 | .00 | 5,304.58 | 546.93 |
| 1809026 | Security Cabinet-Global Equip. | N | 06/18/2007 | AP  Y | 7.00 | | 1,252.73 | .00 | 1,084.99 | 111.87 |
| 1809027 | 32 Domino Tables-M.Mateo | N | 06/29/2007 | AP  Y | 7.00 | | 11,084.30 | .00 | 9,600.12 | 969.83 |

2/7/2014
1:16:44 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE    7

00001

LOCATION    1 - MIAMI JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1809028 | Tables/Bases/Util Carts | N | 06/30/2007 | AP Y | 7.00 | | 1,576.37 | .00 | 1,365.29 | 140.77 |
| 1809029 | Wide. Area Vacuum-Clean Equip. | N | 06/27/2007 | AP Y | 7.00 | | 1,554.65 | .00 | 1,346.48 | 138.83 |
| 1809030 | 42"LCD TV-Cotsco | N | 10/07/2007 | AP Y | 7.00 | | 1,283.98 | .00 | 1,112.06 | 114.66 |
| 1809031 | (2) Podiums-Mabel Mateo | N | 10/17/2007 | AP Y | 7.00 | | 2,292.70 | .00 | 1,985.71 | 204.74 |
| 1809032 | Vizio LCD TV -Cardroom | N | 01/13/2008 | SX Y | 7.00 | | 1,359.37 | .00 | 1,056.08 | 121.32 |
| 1809050 | Furniture & Equipment | N | 01/15/2012 | SL N | 7.00 | | 63,652.70 | .00 | 9,095.97 | 9,093.24 |
| 1809051 | Poker Chips - Royal Gaming Pro | N | 01/15/2012 | SL N | 5.00 | | 49,786.14 | .00 | 9,569.99 | 9,957.22 |

TOTAL CARDROOM EQUIPMENT (1580)    315,962.13    216,597.41    22,031.89

TOTAL LOCATION    MIAMI JAI-ALAI    65,625,886.78    6,588,421.62    3,306,415.32

2/7/2014
1:16:45 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

PAGE    8
00001

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

LOCATION    7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | **LAND (1500)** | | | | | | | | | |
| 1 | | | | | | | | | | |
| 7011001 | 35 ACRES, ST. LUCIE COUNTY, FL | N | 02/01/1994 | ** Y | 99.00 | | 900,000.00 | .00 | .00 | .00 |
| 7011002 | LAND STAMP TAX (RIV. CK#6791) | N | 01/01/1997 | ** Y | 99.00 | | 9,955.50 | .00 | .00 | .00 |
| 21011001 | BECKER PROPERTY, 8+ ACRES | N | 05/05/1994 | ** Y | 99.00 | | 64,857.00 | .00 | .00 | .00 |
| 21011002 | WAGONER LAND 1.1 ACRE PURCHASE | N | 07/31/1994 | ** Y | 99.00 | | 70,000.00 | .00 | .00 | .00 |
| | **TOTAL LAND (1500)** | | | | | | 1,044,812.50 | | .00 | .00 |
| | | | | | | | | | | |
| 10 | **LAND IMPROVEMENTS (1510)** | | | | | | | | | |
| 7103044 | FENCE-SOUTH FLA MAINTENANCE | N | 02/28/2005 | AP Y | 15.00 | | 12,037.50 | .00 | 6,706.10 | 711.42 |
| 7103045 | PARKING LOT LIGHT POLES | N | 04/12/2005 | AP Y | 15.00 | | 44,939.19 | .00 | 25,035.62 | 2,655.91 |
| 7103046 | Well Abandonment-Persson South | N | 09/14/2006 | AP Y | 15.00 | | 25,305.00 | .00 | 12,604.44 | 1,493.00 |
| | Miranda Sales & Service | | | | | | | | | |
| 7103047 | Fire Pump Controller-J&J Fire | N | 09/21/2006 | AP Y | 15.00 | | 36,116.76 | .00 | 15,782.27 | 2,130.89 |
| 7103048 | 4" Shallow Well-Persson South | N | 01/08/2007 | AP Y | 15.00 | | 4,750.00 | .00 | 2,085.74 | 280.25 |
| 7103049 | 2HP Shallow Well Pump-Persson | N | 04/30/2007 | AP Y | 15.00 | | 1,750.00 | .00 | 768.44 | 103.25 |
| 7103050 | Parking Lot Lighting | N | 01/22/2008 | DB200 | 15.00 | | 4,310.94 | .00 | 2,000.46 | 308.06 |
| | Kasper Electric | | | | | | | | | |
| 7103051 | Concrete Slabs(Dumpsters) | N | 02/01/2008 | DB200 | 15.00 | | 2,700.00 | .00 | 1,252.91 | 192.95 |
| | George Thomas Tractor Serv. | | | | | | | | | |
| 7103052 | Chain Link Fence-Harris Bros | N | 02/25/2008 | DB200 | 15.00 | | 4,200.00 | .00 | 1,948.97 | 300.14 |
| 7103053 | Sprinkler System | N | 04/11/2008 | DB200 | 15.00 | | 8,200.00 | .00 | 3,805.13 | 585.98 |
| | St.Lucie Water & pump | | | | | | | | | |
| 7103054 | Landscaping-Jon Schmidt | N | 04/28/2008 | DB200 | 15.00 | | 25,724.60 | .00 | 11,937.26 | 1,838.31 |
| | Haupt Roberts Nursery | | | | | | | | | |
| 7103055 | Precision Paving/Cobra Pavers | N | 04/28/2008 | DB200 | 15.00 | | 232,553.00 | .00 | 107,914.01 | 16,618.53 |
| 7103056 | Parking Lot Striping | N | 04/28/2008 | DB200 | 15.00 | | 13,485.05 | .00 | 6,257.81 | 963.66 |
| | Gene's Striping | | | | | | | | | |
| 7103057 | Roadwork Inspection | N | 04/28/2008 | DB200 | 15.00 | | 9,900.00 | .00 | 4,594.00 | 707.47 |
| 7103058 | Pump-Fl.Detroit Diesel-Allison | N | 01/15/2009 | AP Y | 15.00 | | 43,052.32 | .00 | 13,238.59 | 2,983.53 |
| | **TOTAL LAND IMPROVEMENTS (1510)** | | | | | | 469,024.36 | | 215,931.55 | 31,873.35 |
| | | | | | | | | | | |
| 20 | **BUILDING & IMPROVEMENTS (1520)** | | | | | | | | | |
| 7202001 | ACQUISITION OF BLDG/IMPROVE | U | 02/01/1994 | SR Y | 39.00 | | 500,000.00 | .00 | 242,517.67 | 12,820.00 |
| 7202121 | CARPET (BAR & FRONT ENTRANCE) | N | 01/01/2005 | AP Y | 7.00 | | 3,614.61 | .00 | 3,614.61 | .00 |
| | CARPETS BY FIVE-FOUR | | | | | | | | | |

2/7/2014
1:16:45 PM
FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE 9
00001

LOCATION    7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 7202122 | CARPET-MAIN OFFICE & SECURITY CARPETS BY FIVE-FOUR | N | 01/01/2005 | AP Y | 7.00 | | 2,194.97 | .00 | 2,194.97 | .00 |
| 7202123 | OUTDOOR FLUORESCENT FIXTURES EAGLE ELECTRIC | N | 01/31/2005 | AP Y | 7.00 | | 3,212.50 | .00 | 3,212.50 | .00 |
| 7202124 | LENNOX 7.5TON A/C-MIRANDA SALE | N | 01/01/2005 | SL Y | 15.00 | | 13,333.00 | .00 | 6,666.51 | 888.87 |
| 7202125 | PUMP GEAR DRIVE-MWI/YAVORSKY | N | 01/01/2005 | AP Y | 7.00 | | 8,638.16 | .00 | 8,638.16 | .00 |
| 7202126 | 5 TON CONDENSER UNIT-MIRANDA | N | 02/19/2005 | AP Y | 7.00 | | 2,950.00 | .00 | 2,950.00 | .00 |
| 7202127 | 5 TON TRANE ROOFTOP A/C-MIRAND | N | 02/19/2005 | AP Y | 7.00 | | 5,800.00 | .00 | 5,800.00 | .00 |
| 7202128 | 2-TRANE 25 TON A/C-MIRANDA SAL | N | 02/19/2005 | SL Y | 15.00 | | 65,000.00 | .00 | 32,499.99 | 4,333.33 |
| 7202129 | ROOF-BOB HILSON & COMPANY | N | 02/21/2005 | SR Y | 39.00 | | 609,459.00 | .00 | 123,080.25 | 15,626.53 |
| 7202130 | WALL PANELS-BOB HILSON & CO | N | 02/21/2005 | SR Y | 39.00 | | 53,550.00 | .00 | 10,814.41 | 1,373.02 |
| 7202131 | CEILING TILE REPLACEMENT | N | 04/01/2005 | SR Y | 39.00 | | 120,845.92 | .00 | 23,887.46 | 3,098.47 |
| 7202132 | CARPETS BY 5-4-BETTING AREA | N | 05/16/2005 | AP Y | 7.00 | | 2,486.78 | .00 | 2,486.78 | .00 |
| 7202133 | CARPETS BY 5-4-BAR BETTING AREA | N | 04/04/2005 | AP Y | 7.00 | | 2,422.88 | .00 | 2,422.88 | .00 |
| 7202134 | CARPETS BY 5-4-BAR BET LOUNGE | N | 06/16/2005 | AP Y | 7.00 | | 1,664.60 | .00 | 1,664.60 | .00 |
| 7202135 | MAPLE WOOD FLOORING & SUB FLOO ALL COAST CONSTRUCTION | N | 06/15/2005 | SR Y | 39.00 | | 27,036.00 | .00 | 5,228.47 | 693.20 |
| 7202136 | PHASE 1 & 2-GENERAL REPAIRS SOUTH FLORIDA MAINTENANCE | N | 06/15/2005 | SL Y | 10.00 | | 62,358.60 | .00 | 46,768.95 | 6,235.86 |
| 7202137 | CONTRACTOR OVERSIGHT | N | 08/10/2006 | SL Y | 10.00 | | 59,217.03 | .00 | 44,412.77 | 5,921.70 |
| 7202138 | CARPETS BY 5-4-DEEP NAVY | N | 06/23/2006 | AP Y | 7.00 | | 2,055.45 | .00 | 2,055.45 | .00 |
| 7202139 | 7.5 TON A/C-MIRANDA SALES | N | 06/30/2006 | SL Y | 15.00 | | 13,333.00 | .00 | 6,666.51 | 888.87 |
| 7202140 | CARPETS BY 5-4-REST. BET AREA | N | 08/22/2006 | AP Y | 7.00 | | 5,617.99 | .00 | 5,617.99 | .00 |
| 7202141 | LENNOX AIR HANDLER-MUTUELS MIRANDA SALES & SERV. CK#52156 | N | 07/02/2005 | SL Y | 15.00 | | 12,425.00 | .00 | 6,212.49 | 828.33 |
| 7202142 | Carpet-WBC,JR Office Carpet by Five-Four | N | 01/06/2006 | AP Y | 7.00 | | 1,050.09 | .00 | 1,003.26 | 46.83 |
| 7202143 | Carpet Vend Mach Area Carpet by Five-Four | N | 01/06/2006 | AP Y | 7.00 | | 1,145.94 | .00 | 1,094.82 | 51.12 |
| 7202144 | A/C-50 Ton Unit-Miranda Sales | N | 01/11/2006 | SL N | 15.00 | | 38,456.00 | .00 | 17,874.90 | 2,563.73 |
| 7202145 | Gutter-Splits & Modified | N | 03/31/2006 | SR Y | 39.00 | | 2,171.37 | .00 | 378.16 | 55.67 |
| 7202146 | Misc-Wilma Panels/Cond.Coils Electrical/Miranda Sales | N | 05/31/2006 | SL Y | 15.00 | | 33,300.00 | .00 | 14,430.00 | 2,220.00 |
| 7202147 | 2nd Floor Drainage Southern Plumb & AAA Concrete | N | 01/07/2008 | SR Y | 39.00 | | 12,659.00 | .00 | 1,609.96 | 324.58 |
| 7202148 | Fronton Painting-Sun Tech Serv | N | 01/28/2008 | SL Y | 10.00 | | 30,300.00 | .00 | 13,635.00 | 3,030.00 |
| 7202149 | D.William Beebe(Cdrm Architect | N | 04/28/2008 | SR Y | 39.00 | | 63,234.66 | .00 | 7,635.60 | 1,621.34 |

2/7/2014
1:16:45 PM

PAGE   00001
10

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

LOCATION   7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 7202150 | Presidential Construction/Cdrm | N | 04/28/2008 | SR Y | 39.00 | | 1,220,180.60 | .00 | 147,336.81 | 31,285.43 |
| 7202151 | 2nd.Floor Deck Awning East Coast | N | 06/13/2008 | SX Y | 7.00 | | 6,000.00 | .00 | 4,861.34 | 535.45 |
| 7202152 | 4 Crystal Chandeliers Horchow Collection | N | 07/10/2008 | SX Y | 7.00 | | 3,881.40 | .00 | 3,015.42 | 346.39 |
| 7202153 | Trane 5 Ton Rooftop A/C Altman Brothers | N | 04/24/2012 | SL N | 7.00 | | 7,100.00 | .00 | 1,014.59 | 1,014.28 |
| **TOTAL BUILDING & IMPROVEMENTS (1520)** | | | | | | | 2,996,693.65 | | 803,103.18 | 95,803.01 |
| 30 | MACHINERY AND EQUIPMENT (1530) | | | | | | | | | |
| 7304118 | JETSONS TV | N | 03/02/2005 | AP Y | 7.00 | | 3,093.75 | .00 | 3,093.75 | .00 |
| 7304119 | GENERATOR & GAS TANK | N | 01/01/2005 | AP Y | 7.00 | | 1,069.98 | .00 | 1,069.98 | .00 |
| 7304120 | 2 SATELLITE DISHES-TELEVIEW | N | 01/01/2005 | AP Y | 7.00 | | 21,534.70 | .00 | 21,534.70 | .00 |
| 7304121 | OUTDOOR LED MATRIX DISPLAY-DAKTRONICS/LANKO SIGNS&GRAPHIC | N | 04/04/2005 | AP Y | 7.00 | | 43,480.65 | .00 | 43,480.65 | .00 |
| 7304123 | Lighting/Signs-Ferrin Signs | U | 01/10/2006 | AP Y | 7.00 | | 18,667.67 | .00 | 17,835.09 | 832.58 |
| 7304124 | Lighting/Signs-Ferrin Signs | N | 04/28/2008 | SX Y | 7.00 | | 51,119.60 | .00 | 39,714.30 | 4,562.12 |
| 7304125 | Credit Card Machine-SunTrust | N | 06/27/2008 | SX Y | 7.00 | | 531.44 | .00 | 412.87 | 47.43 |
| 7304126 | 10 Modulators-Teleview | N | 06/01/2008 | SX Y | 7.00 | | 6,382.38 | .00 | 4,958.41 | 569.59 |
| 7304127 | Sign-Transformer-Kaiser Elect. | N | 02/15/2010 | AP Y | 7.00 | | 4,790.00 | .00 | 2,695.33 | 598.27 |
| **TOTAL MACHINERY AND EQUIPMENT (1530)** | | | | | | | 150,670.17 | | 134,795.08 | 6,609.99 |
| 40 | CONC./SNACKBAR EQUIP. (1540) | | | | | | | | | |
| 7405089 | Walk-in Cooler-Ted's Refrigera | N | 06/26/2007 | AP Y | 7.00 | | 10,000.00 | .00 | 8,661.00 | 893.00 |
| 7405090 | Cdrm Bottle Cooler/Keg Cooler Complete Rest.Equip.& Supp. | N | 04/28/2008 | SX Y | 7.00 | | 7,090.26 | .00 | 5,508.35 | 632.76 |
| 7405091 | 100 Stacking Chairs Complete Rest.Equip.& Supp. | N | 04/28/2008 | SX Y | 7.00 | | 23,749.50 | .00 | 18,450.74 | 2,119.50 |
| 7405092 | 12 Bar Stools | N | 04/28/2008 | SX Y | 7.00 | | 2,526.16 | .00 | 1,962.55 | 225.44 |
| 7405093 | Crowd Control Equip. | N | 04/28/2008 | SX Y | 7.00 | | 2,102.01 | .00 | 1,633.03 | 187.59 |
| 7405094 | Ice Maker-Complete Rest. | N | 06/03/2008 | SX Y | 7.00 | | 2,268.47 | .00 | 1,762.36 | 202.44 |
| 7405095 | Keg Cooler-Agustin Vidal | N | 09/09/2008 | SX Y | 7.00 | | 1,100.00 | .00 | 854.58 | 98.17 |
| 7405096 | Hot Dog Machine-Gold Metal Pro | N | 01/28/2009 | AP Y | 7.00 | | 1,207.97 | .00 | 830.60 | 107.87 |
| **TOTAL CONC./SNACKBAR EQUIP. (1540)** | | | | | | | 50,044.37 | | 39,663.21 | 4,466.77 |

2/7/2014
1:16:45 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

PAGE
00001
11

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

LOCATION        7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW/USED | ACQ/DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 60 | OFFICE EQUIPMENT (1560) | | | | | | | | | |
| 7607059 | Toshiba Phone System | N | 05/22/2008 | SX Y | 7.00 | | 7,212.75 | .00 | 5,603.51 | 643.70 |
| | Oceanside Communications | | | | | | | | | |
| 7607060 | 2 Softbyte Computers | N | 09/12/2008 | SX Y | 5.00 | | 3,107.40 | .00 | 2,928.41 | 178.99 |
| 7607061 | Computer Hard Drive | N | 02/15/2013 | SL N | 5.00 | | 1,765.14 | .00 | .00 | 309.87 |
| TOTAL OFFICE EQUIPMENT (1560) | | | | | | | 12,085.29 | | 8,531.92 | 1,132.56 |
| 80 | CARDROOM EQUIPMENT (1580) | | | | | | | | | |
| 7809003 | 26 Tier Lockers-Grainger | N | 01/17/2008 | SX Y | 7.00 | | 1,503.53 | .00 | 1,168.07 | 134.18 |
| 7809004 | Brother Printer-Staples | N | 02/15/2008 | SX Y | 7.00 | | 756.12 | .00 | 587.42 | 67.48 |
| 7809005 | HP Compaq Desktop | N | 02/25/2008 | SX Y | 5.00 | | 829.22 | .00 | 781.46 | 47.76 |
| 7809006 | Lenovo Laptop Computer | N | 03/13/2008 | SX Y | 5.00 | | 1,493.99 | .00 | 1,407.94 | 86.05 |
| 7809007 | Chairs/Desks | N | 03/24/2008 | SX Y | 7.00 | | 5,141.05 | .00 | 3,994.03 | 458.81 |
| | Discount Office Furniture | | | | | | | | | |
| 7809008 | 28 Refurbished Poker Tables | N | 04/11/2008 | SX Y | 7.00 | | 19,910.90 | .00 | 15,468.11 | 1,776.88 |
| | Quality Gaming | | | | | | | | | |
| 7809009 | 47 Drop Boxes | N | 04/11/2008 | SX Y | 7.00 | | 12,367.62 | .00 | 9,608.28 | 1,103.74 |
| | Quality Gaming | | | | | | | | | |
| 7809010 | HD-150 Protex Burglary Safe | N | 04/14/2008 | SX Y | 7.00 | | 1,598.00 | .00 | 1,241.47 | 142.61 |
| 7809011 | Ameranth Poker Rm Manager | N | 04/15/2008 | SX Y | 5.00 | | 50,634.54 | .00 | 47,717.99 | 2,916.55 |
| | Queve OS Gaming | | | | | | | | | |
| 7809012 | 2 Acrylic Signs-Signcraft | N | 04/17/2008 | SX Y | 7.00 | | 1,850.00 | .00 | 1,437.25 | 165.10 |
| 7809013 | Desk/Chair/File Cabinet | N | 04/23/2008 | SX Y | 5.00 | | 618.43 | .00 | 582.81 | 35.62 |
| | Disc.Office Furniture | | | | | | | | | |
| 7809014 | Compac SR 541/Acer LCD | N | 04/25/2008 | SX Y | 5.00 | | 617.66 | .00 | 582.08 | 35.58 |
| | Staples | | | | | | | | | |
| 7809015 | Cummins Money Counter | N | 04/25/2008 | SX Y | 7.00 | | 457.64 | .00 | 355.54 | 40.84 |
| 7809016 | 12 Storage Cabinets | N | 04/28/2008 | SX Y | 7.00 | | 3,165.14 | .00 | 2,458.97 | 282.47 |
| 7809017 | 12 Receptacles-Cokes | N | 04/28/2008 | SX Y | 7.00 | | 1,832.86 | .00 | 1,423.93 | 163.57 |
| 7809018 | Misc.Furn.& Equip.-Cokes | N | 05/22/2008 | SX Y | 7.00 | | 3,304.40 | .00 | 2,557.16 | 294.90 |
| 7809019 | Furniture-True Treasures | N | 07/20/2008 | SX Y | 7.00 | | 4,787.77 | .00 | 3,719.57 | 427.28 |
| 7809020 | 2 "Crystal Card Room" Signs | N | 07/29/2008 | SX Y | 7.00 | | 4,452.00 | .00 | 3,458.71 | 397.32 |
| 7809021 | DISCOUNT FURNITURE | N | 08/08/2008 | SX Y | 7.00 | | 2,569.86 | .00 | 1,996.50 | 215.01 |
| 7809022 | Discount Furniture | N | 08/25/2008 | SX Y | 7.00 | | 3,689.70 | .00 | 2,866.49 | 329.28 |

2/7/2014
1:16:45 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

PAGE    00001
        12

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

LOCATION    7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL CARDROOM EQUIPMENT (1580) | | | | | | | 121,579.83 | | 103,423.78 | 9,121.03 |
| TOTAL LOCATION | FT. PIERCE JAI-ALAI | | | | | | 4,844,710.17 | | 1,305,448.72 | 149,006.71 |
| TOTAL SCHEDULE | | | | | | | 70,470,696.95 | | 7,893,870.34 | 3,455,422.03 |

2/7/2014
1:16:47 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULE SUMMARY
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE 1

| | COST OR OTHER BASIS | REDUCTION IN BASIS DUE TO ITC | DEPRECIABLE BASIS | PRIOR ACCUMULATED DEPRECIATION | CURRENT DEPRECIATION | ACCUMULATED DEPRECIATION |
|---|---|---|---|---|---|---|
| LOCATION 001 - MIAMI JAI-ALAI | | | | | | |
| CLASS 1 LAND (1500) | 19,446,668.10 | .00 | 19,446,668.10 | .00 | .00 | .00 |
| CLASS 10 LAND IMPROVEMENTS (1510) | 265,602.39 | .00 | 265,602.39 | 151,706.32 | 13,154.63 | 164,860.95 |
| CLASS 20 BUILDING & IMPROVEMENTS (1520) | 27,355,070.02 | .00 | 27,355,070.02 | 3,279,443.73 | 707,930.04 | 3,987,373.77 |
| CLASS 30 MACHINERY AND EQUIPMENT (1530) | 2,482,064.85 | .00 | 2,482,064.85 | 662,741.59 | 309,555.06 | 972,296.65 |
| CLASS 40 CONC./SNACK/BAR EQUIP. (1540) | 83,245.50 | .00 | 83,245.50 | 20,631.23 | 11,096.91 | 31,728.14 |
| CLASS 60 OFFICE EQUIPMENT (1560) | 84,670.12 | .00 | 84,670.12 | 30,179.37 | 15,476.36 | 45,655.73 |
| CLASS 70 CASINO EQUIPMENT (1570) | 15,592,603.67 | .00 | 15,592,603.67 | 2,227,121.97 | 2,227,170.43 | 4,454,292.40 |
| CLASS 80 CARDROOM EQUIPMENT (1580) | 315,962.13 | .00 | 315,962.13 | 216,597.41 | 22,031.89 | 238,629.30 |
| LOCATION 1 TOTAL | 65,625,886.78 | .00 | 65,625,886.78 | 6,588,421.62 | 3,306,415.32 | 9,894,836.94 |
| LOCATION 007 - FT. PIERCE JAI-ALAI | | | | | | |
| CLASS 1 LAND (1500) | 1,044,612.50 | .00 | 1,044,612.50 | .00 | .00 | .00 |
| CLASS 10 LAND IMPROVEMENTS (1510) | 469,024.36 | .00 | 469,024.36 | 215,931.55 | 31,873.35 | 247,804.90 |
| CLASS 20 BUILDING & IMPROVEMENTS (1520) | 2,996,693.65 | .00 | 2,996,693.65 | 803,103.18 | 95,803.01 | 898,906.19 |
| CLASS 30 MACHINERY AND EQUIPMENT (1530) | 150,670.17 | .00 | 150,670.17 | 134,795.08 | 6,609.99 | 141,405.07 |
| CLASS 40 CONC./SNACK/BAR EQUIP. (1540) | 50,044.37 | .00 | 50,044.37 | 39,663.21 | 4,466.77 | 44,129.98 |
| CLASS 60 OFFICE EQUIPMENT (1560) | 12,085.29 | .00 | 12,085.29 | 8,531.92 | 1,132.56 | 9,664.48 |
| CLASS 80 CARDROOM EQUIPMENT (1580) | 121,579.83 | .00 | 121,579.83 | 103,423.78 | 9,121.03 | 112,544.81 |
| LOCATION 7 TOTAL | 4,844,710.17 | .00 | 4,844,710.17 | 1,305,448.72 | 149,006.71 | 1,454,455.43 |

2/7/2014
1:16:47 PM
FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

PAGE    1
2

FINAL
DEPRECIATION SCHEDULE SUMMARY
SCHEDULE 01 - BOOK
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

LOCATION  007 - FT. PIERCE JAI-ALAI

| | COST OR OTHER BASIS | REDUCTION IN BASIS DUE TO ITC | DEPRECIABLE BASIS | PRIOR ACCUMULATED DEPRECIATION | CURRENT DEPRECIATION | ACCUMULATED DEPRECIATION |
|---|---|---|---|---|---|---|
| SCHEDULE  1  TOTAL | 70,470,596.95 | .00 | 70,470,596.95 | 7,893,870.34 | 3,455,422.03 | 11,349,292.37 |

Ken Pruitt
Property Appraiser SLC
2300 Virginia Ave. Room 121
Fort Pierce, FL 34982-5632
772-460-3340 www.paslc.org

DBA: Fort Pierce Jai-Alai
Acct Number: 009691
Real Prop. ID: 2313-233-0001-000-0
Location: 1750 KINGS HWY

2 - 1593

FLORIDA GAMING CENTERS INC
3500 NW 37TH AVE
MIAMI FL  33142-4923

**TANGIBLE PERSONAL PROPERTY TAX RETURN**

CONFIDENTIAL

DR-405, R. 12/11
Rule 12D-16.002, F.A.C.

Return to property appraiser by April 1 to avoid penalty.

| SAINT LUCIE COUNTY | Tax Year 2014 |
|---|---|

Business name (DBA-Doing Business As) and mailing address:

Spreadsheets and signed DR-405's
may be emailed to tpp@paslc.org

Federal Employer Identification Number: 6 5 - 0 7 0 5 8 9 3

NAICS: 7 1 1 2 1 9

If name and address is incorrect, please make needed corrections.

| | |
|---|---|
| 1. Owner or person in charge W.B. Collett, Jr. | 6. Type or nature of your business Pari-Mutuel Wagering - Jai-Alai |
| Business/corporate name Florida Gaming Centers Inc. d/b/a Ft. Pierce | Trade levels (check all that apply) ☒ Retail ☐ Wholesale |
| Phone (305) 633-6400                    Jai-Alai | ☐ Manufacturing ☐ Professional ☐ Service ☐ Agricultural |
| 2. Physical location (no PO boxes) 1750 S. Kings Highway, Ft. Pierce, FL 34945 | ☐ Leasing/rental ☐ Other, specify: |
| 3. Do you file a TPP tax return under any other name? ☐ Yes ☒ No | 7. Did you file a TPP return in this county last year? ☒ Yes ☐ No |
| Name on most recent return or tax bill Florida Gaming Centers, Inc. | Name and Florida Gaming Centers, Inc., d/b/a Ft. Pierce Jai-Alai location St. Lucie County |
| 4. Date you began business in this county 02/01/94 | 8. Former owner of business WJA Realty Limited Partnership |
| 5. Fiscal year end date ____ If before 12/31 last year, does this return reflect additions/deletions through Dec 31? ☐ Yes ☐ No | 9. If sold, to whom? ____ Date sold ____ |

| Personal Property Summary Schedule - Enter totals from page 2 or from an attached itemized list or depreciation schedule with original cost and date of acquisition. | Taxpayer's Estimate of Fair Market Value | Original installed Cost | Appraiser's Use Only |
|---|---|---|---|
| 10 Office furniture, office machines, and library | 5,120 | 66,679 | |
| 11 EDP equipment, computers, and word processors | | | |
| 12 Store, bar and lounge, and restaurant furniture, equipment, etc. | 56,730 | 334,438 | |
| 13 Machinery and manufacturing equipment | 44,311 | 554,783 | |
| 14 Farm, grove, and dairy equipment | | | |
| 15 Professional, medical, dental, and laboratory equipment | | | |
| 16 Hotel, motel, and apartment complex | | | |
| 16a Rental units (stove, refrigerator, furniture, drapes, and appliances) | | | |
| 17 Mobile home attachments (carport, utility building, cabana, porch, etc.) | | | |
| 18 Service station and bulk plant equipment (underground tanks, lifts, tools) | | | |
| 19 Signs (billboard, pole, wall, portable, directional, etc.) | | | |
| 20 Leasehold improvements - grouped by type, year of installation, and description | | | |
| 21 Pollution control equipment | | | |
| 22 Equipment owned by you but rented, leased or held by others | | | |
| 23 Supplies not held for resale | | | |
| 24 Other, specify: | | | |
| **TOTAL PERSONAL PROPERTY** | 106,161 | 955,900 | |

I declare I have read this tax return and the accompanying schedules and statements. The facts in them are true. If prepared by someone other than the taxpayer, the preparer signing this return certifies that this declaration is based on all information he or she has knowledge of.

| | | |
|---|---|---|
| Signature taxpayer *Jennifer Chong* | Jennifer Chong — Print name | Controller — Title  3/26/14 — Date |
| Signature preparer | Print name | Preparer ID    Date |
| Address | | Phone |

| | |
|---|---|
| ☐ $25,000 | Less exemptions |
| ☐ Widowed | |
| ☐ Blind | Taxable Value |
| ☐ Total disability | |
| ☐ Other, specify | Penalties |
| Signature, deputy | Date |

Sign and date your return, send the original to the county property appraiser's office by April 1. Unsigned returns cannot be accepted by the appraiser's office.
If you are entitled to a widow's, widower's, or disability exemption on personal property (not already claimed on real estate), consult your appraiser.

Continued on page 2

## TANGIBLE PERSONAL PROPERTY

DR-405, R. 12/11 , Page 2

Report all property owned by you including fully depreciated items still in use.

### ASSETS PHYSICALLY REMOVED DURING THE LAST YEAR

| Description | Age | Year Acquired | Taxpayer's Estimate of Fair Market Value | Original Installed Cost | Disposed, sold, or traded and to whom? |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### LEASED, LOANED, OR RENTED EQUIPMENT — Complete if you hold equipment belonging to others.

| Name and Address of Owner or Lessor | Description | Year Acquired | Year of Manufacture | Monthly Rent | Original Installed Cost | Lease Purchase Option Yes No |
|---|---|---|---|---|---|---|
| Schedule Attached | | | | | | ☐ ☐ |
| | | | | | | ☐ ☐ |
| | | | | | | ☐ ☐ |

### SCHEDULE FOR LINE 22 PAGE 1 — Equipment owned by you but rented, leased, or held by others. Enter total on page 1.

| Lease Number | Name/address of lessee Actual physical location | Description | Age | Year Acquired | Monthly Rent | Term | Taxpayer's Estimate of Fair Market Value | Cond* | Original Installed Cost New |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |

### SCHEDULE FOR PAGE 1 LINES 10, 12, AND 13

| Enter line number from page 1. Description | Age | Year Acquired | Taxpayer's Estimate of Fair Market Value | Cond* | Original Installed Cost | APPRAISER'S USE ONLY Cond Value |
|---|---|---|---|---|---|---|
| Lines 10, 12, & 13. Schedule attached | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Enter totals on page 1. | | TOTAL | | TOTAL | | TOTAL |

| Enter line number from page 1. Description | Age | Year Acquired | Taxpayer's Estimate of Fair Market Value | Cond* | Original Installed Cost | Cond Value |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Enter totals on page 1. | | TOTAL | | TOTAL | | TOTAL |

| Enter line number from page 1. Description | Age | Year Acquired | Taxpayer's Estimate of Fair Market Value | Cond* | Original Installed Cost | Value |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Enter totals on page 1. | | TOTAL | | TOTAL | | TOTAL |

*Condition: enter good, avg (average), or poor.          Add pages, if needed.          See instructions on pages 3 and 4.

Florida Gaming Centers, Inc.                              d/b/a Ft. Pierce Jai-Alai
3500 NW 137 Avenue, Miami, FL 33142

Leased, Loaned & Rented Equipment

| Name & Address | Description | Yr. Acq. | Year of Manufact. | Approx. Mo. Rental | Cost if Purchased New |
|---|---|---|---|---|---|
| Sportech Racing, LLC<br>600 Long Wharf Drive<br>New Haven, CT 06511 | Tote Equipment | 1994 | Unknown | 8,283 | Unknown |
| International Sound Corp.<br>7130 Milford Industrial Rd.<br>Pikesville, MD 21208 | Television Cameras<br>Projectors<br>Surveillance Sys. | 2008 | Unknown | 11,789 | Unknown |
| Pitney Bowes<br>P.O. Box 371887<br>Pittsburgh, PA 15250-7887 | Mailing System | 2007 | Unknown | 180 | Unknown |
| Konica Minolta<br>21146 Network Place<br>Chicago, IL 60673 | Copy Machine | 2011 | Unknown | 860 | Unknown |
| Roberts Communications Network<br>4175 Cameron Street, Suite B10<br>Las Vegas, NV 89103 | Decoders | 2013 | Unknown | 500 | Unknown |
| All Mobile Video<br>221 W. 26 Street<br>New York, NY 10001 | Decoders | 2013 | Unknown | 200 | Unknown |
| The New York Racing Association<br>P.O. Box 95000-3820<br>Philadelphia, PA 19195-0001 | Decoder | 2013 | Unknown | 250 | Unknown |

Florida Gaming Centers, Inc.                    d/b/a Ft. Pierce Jai-Alai
3500 NW 137 Avenue, Miami, FL 33142

Depreciation Summary (Page 1 of 2)

| Description | Yr. Acq. | Age | Original Cost | Accumulated Depreciation | Fair Market Value |
|---|---|---|---|---|---|
| Office Furniture & Equipment | 1994 | Various* | 40,730.00 | 40,569.92 | 160.08 |
| Office Furniture & Equipment | 1995 | 19 yrs | 4,635.00 | 4,635.00 | 0.00 |
| Office Furniture & Equipment | 1996 | 18 yrs | 2,370.52 | 2,370.52 | 0.00 |
| Office Furniture & Equipment | 1999 | 15 yrs | 904.27 | 904.27 | 0.00 |
| Office Furniture & Equipment | 2000 | 14 yrs | 1,663.14 | 1,663.14 | 0.00 |
| Office Furniture & Equipment | 2001 | 13 yrs | 1,100.60 | 1,100.60 | 0.00 |
| Office Furniture & Equipment | 2002 | 12 yrs | 2,523.59 | 2,523.59 | 0.00 |
| Office Furniture & Equipment | 2004 | 10 yrs | 666.15 | 666.15 | 0.00 |
| Office Furniture & Equipment | 2008 | 6 yrs | 10,320.15 | 6,815.46 | 3,504.69 |
| Office Furniture & Equipment | 2013 | 1 yr | 1,765.14 | 309.87 | 1,455.27 |
| | | | | | |
| Total | | | 66,678.56 | 61,558.52 | 5,120.04 |
| | | | | | |
| Cardroom Equipment | 1996 | 18 yrs | 3,146.00 | 3,146.00 | 0.00 |
| Cardroom Equipment | 1997 | 17 yrs | 3,522.51 | 3,522.51 | 0.00 |
| Cardroom Equipment | 2008 | 6 yrs | 121,579.83 | 86,491.06 | 35,088.77 |
| Concession/Snack/Bar Equipment | 1994 | Various* | 74,066.00 | 74,066.00 | 0.00 |
| Concession/Snack/Bar Equipment | 1995 | 19 yrs | 1,396.00 | 1,396.00 | 0.00 |
| Concession/Snack/Bar Equipment | 1997 | 17 yrs | 3,253.15 | 3,253.15 | 0.00 |
| Concession/Snack/Bar Equipment | 2002 | 12 yrs | 4,203.92 | 4,203.92 | 0.00 |
| Concession/Snack/Bar Equipment | 2003 | 11 yrs | 250.00 | 250.00 | 0.00 |
| Concession/Snack/Bar Equipment | 2007 | 7 yrs | 10,000.00 | 6,500.00 | 3,500.00 |
| Concession/Snack/Bar Equipment | 2008 | 6 yrs | 38,836.40 | 21,360.04 | 17,476.36 |
| Concession/Snack/Bar Equipment | 2009 | 5 yrs | 1,207.97 | 543.60 | 664.37 |
| Restaurant Equipment | 1994 | Various* | 45,322.00 | 45,322.00 | 0.00 |
| Restaurant Equipment | 1995 | 19 yrs | 22,990.00 | 22,990.00 | 0.00 |
| Restaurant Equipment | 1996 | 18 yrs | 1,796.00 | 1,796.00 | 0.00 |
| Restaurant Equipment | 1999 | 15 yrs | 1,176.83 | 1,176.83 | 0.00 |
| Restaurant Equipment | 2001 | 13 yrs | 570.50 | 570.50 | 0.00 |
| Restaurant Equipment | 2002 | 12 yrs | 1,121.10 | 1,121.10 | 0.00 |
| | | | | | |
| Total | | | 334,438.21 | 277,708.71 | 56,729.50 |

* Approximately 20 to 34 yrs

Florida Gaming Centers, Inc.                          d/b/a Ft. Pierce Jai-Alai
3500 NW 137 Avenue, Miami, FL 33142

Depreciation Summary (Page 2 of 2)

| Description | Yr. Acq. | Age | Original Cost | Accumulated Depreciation | Fair Market Value |
|---|---|---|---|---|---|
| Machinery & Equipment | 1994 | Various* | 195,219.00 | 195,219.00 | 0.00 |
| Machinery & Equipment | 1995 | 19 yrs | 72,415.00 | 72,415.00 | 0.00 |
| Machinery & Equipment | 1996 | 18 yrs | 73,469.00 | 73,469.00 | 0.00 |
| Machinery & Equipment | 1997 | 17 yrs | 3,377.27 | 3,377.27 | 0.00 |
| Machinery & Equipment | 1999 | 15 yrs | 18,153.00 | 18,153.00 | 0.00 |
| Machinery & Equipment | 2000 | 14 yrs | 2,044.80 | 2,044.80 | 0.00 |
| Machinery & Equipment | 2001 | 13 yrs | 905.25 | 905.25 | 0.00 |
| Machinery & Equipment | 2002 | 12 yrs | 22,176.80 | 22,176.80 | 0.00 |
| Machinery & Equipment | 2003 | 11 yrs | 14,785.81 | 14,785.81 | 0.00 |
| Machinery & Equipment | 2004 | 10 yrs | 1,567.00 | 1,527.82 | 39.18 |
| Machinery & Equipment | 2005 | 9 yrs | 69,179.08 | 58,802.23 | 10,376.85 |
| Machinery & Equipment | 2006 | 8 yrs | 18,667.67 | 14,000.76 | 4,666.91 |
| Machinery & Equipment | 2008 | 6 yrs | 58,033.42 | 31,918.39 | 26,115.03 |
| Machinery & Equipment | 2010 | 4 yrs | 4,790.00 | 1,676.50 | 3,113.50 |
| Total | | | 554,783.10 | 510,471.63 | 44,311.47 |
| Grand Total | | | 955,899.87 | 849,738.86 | 106,161.01 |

* Approximately 20 to 34 yrs

2/7/2014
1:17:01 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 03 - ACE DEPRECIATION
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE    00001
12

LOCATION    7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---------|-------------|----------|-----------|--------|----------|-------------|---------------------|---------|--------------------|-----------------------|
| 30 | MACHINERY AND EQUIPMENT (1530) | | | | | | | | | |
| 7304001 | 2,178 AUDITORIUM CHAIRS | U | 02/01/1994 | SL Y | 10.00 | | 46,809.00 | .00 | 46,809.00 | .00 |
| 7304002 | 8' WORK COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 394.00 | .00 | 394.00 | .00 |
| 7304003 | 48' BETTING COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 1,541.00 | .00 | 1,541.00 | .00 |
| 7304004 | 42' BETTING COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 1,577.00 | .00 | 1,577.00 | .00 |
| 7304005 | PERRY TURNSTILES | U | 02/01/1994 | SL Y | 10.00 | | 492.00 | .00 | 492.00 | .00 |
| 7304006 | PERRY TURNSTILES | U | 02/01/1994 | SL Y | 10.00 | | 492.00 | .00 | 492.00 | .00 |
| 7304007 | PERRY TURNSTILES | U | 02/01/1994 | SL Y | 10.00 | | 492.00 | .00 | 492.00 | .00 |
| 7304008 | PERRY TURNSTILES | U | 02/01/1994 | SL Y | 10.00 | | 494.00 | .00 | 494.00 | .00 |
| 7304009 | NCR 126 (8) 2X CASH REGISTER | U | 02/01/1994 | SL Y | 10.00 | | 465.00 | .00 | 465.00 | .00 |
| 7304010 | 30 SWIVEL CHAIRS | U | 02/01/1994 | SL Y | 10.00 | | 2,069.00 | .00 | 2,069.00 | .00 |
| 7304011 | SOUND SYSTEM UPDATING | U | 02/01/1994 | SX Y | 10.00 | | 423.00 | .00 | 423.00 | .00 |
| 7304012 | EMERGENCY LIGHTING SYSTEM | U | 02/01/1994 | SL Y | 10.00 | | 3,842.00 | .00 | 3,842.00 | .00 |

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 03 - ACE DEPRECIATION
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

LOCATION    7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | 24 SWIVEL CHAIRS | | | | | | | | | |
| 7304013 | 1 - BOGAN C100 AMPLIFIER | U | 02/01/1994 | SL Y | 10.00 | | 1,702.00 | .00 | 1,702.00 | .00 |
| 7304014 | 1 - CAN MIXER PREAMPLIFIER | U | 02/01/1994 | SL Y | 10.00 | | 165.00 | .00 | 165.00 | .00 |
| 7304015 | 1 - BOGAN C100 AMPLIFIER | U | 02/01/1994 | SX Y | 10.00 | | 95.00 | .00 | 95.00 | .00 |
| 7304016 | 1 - BOGAN C100 AMPLIFIER | U | 02/01/1994 | SL Y | 10.00 | | 165.00 | .00 | 165.00 | .00 |
| 7304017 | 1 - CAN MIXER PREAMPLIFIER | U | 02/01/1994 | SL Y | 10.00 | | 165.00 | .00 | 165.00 | .00 |
| 7304018 | 1 - KENWOOD KX - 1030 | U | 02/01/1994 | SL Y | 10.00 | | 147.00 | .00 | 147.00 | .00 |
| 7304019 | 1 - BIC T-05 | U | 02/01/1994 | SL Y | 10.00 | | 283.00 | .00 | 283.00 | .00 |
| 7304020 | ZEP AZ-12 FLOOR MACHINE | U | 02/01/1994 | SL Y | 10.00 | | 119.00 | .00 | 119.00 | .00 |
| 7304021 | 1 - CABINET & BENCH | U | 02/01/1994 | SL Y | 10.00 | | 262.00 | .00 | 262.00 | .00 |
| 7304022 | NEW TRIFECTA BOARD | U | 02/01/1994 | SL Y | 10.00 | | 151.00 | .00 | 151.00 | .00 |
| 7304023 | 1 - POWER TENNIS-ISER | U | 02/01/1994 | SL Y | 10.00 | | 27,172.00 | .00 | 27,172.00 | .00 |
| 7304024 | 1 - D2P DOUBLE KNEE | U | 02/01/1994 | SL Y | 10.00 | | 183.00 | .00 | 183.00 | .00 |
| 7304025 | 1 - TOTALISATOR | U | 02/01/1994 | SL Y | 10.00 | | 586.00 | .00 | 586.00 | .00 |
| 7304026 | 72X18 STEEL CABINET (PLYRS) | U | 02/01/1994 | SL Y | 10.00 | | 16,402.00 | .00 | 16,402.00 | .00 |
| 7304027 | WHIRLPOOL UNIT | U | 02/01/1994 | SL Y | 10.00 | | 95.00 | .00 | 95.00 | .00 |
| 7304028 | ALL LEVEL COT | U | 02/01/1994 | SL Y | 10.00 | | 1,379.00 | .00 | 1,379.00 | .00 |
| 7304029 | FLOOR MACHINE K-205 20" | U | 02/01/1994 | SL Y | 10.00 | | 416.00 | .00 | 416.00 | .00 |
| 7304031 | 10 LAMPBOXES | U | 02/01/1994 | SL Y | 10.00 | | 503.00 | .00 | 503.00 | .00 |
| 7304032 | HOIST ON FRONTON ROOF | U | 02/01/1994 | SL Y | 10.00 | | 835.00 | .00 | 835.00 | .00 |
| 7304033 | RESULTS BOARD EXTENSION | U | 02/01/1994 | SL Y | 10.00 | | 4,857.00 | .00 | 4,857.00 | .00 |
| 7304034 | SOUND SYSTEM | U | 02/01/1994 | SL Y | 10.00 | | 452.00 | .00 | 452.00 | .00 |
| 7304036 | TRACTOR W/MOWER | U | 02/01/1994 | SL Y | 10.00 | | 716.00 | .00 | 716.00 | .00 |
| 7304037 | 3 - WATER COOLERS | U | 02/01/1994 | SL Y | 10.00 | | 4,731.00 | .00 | 4,731.00 | .00 |
| 7304039 | CHAIRS & TABLE (JUDGES ROOM) | U | 02/01/1994 | SL Y | 10.00 | | 1,244.00 | .00 | 1,244.00 | .00 |
| 7304040 | PARKING LOT SWEEPER | U | 02/01/1994 | SL Y | 10.00 | | 527.00 | .00 | 527.00 | .00 |
| 7304042 | PLAYERS ICE MACHINE | U | 02/01/1994 | SL Y | 10.00 | | 12,045.00 | .00 | 12,045.00 | .00 |
| 7304043 | PLAYERS - 49 LOCKERS | U | 02/01/1994 | SL Y | 10.00 | | 1,414.00 | .00 | 1,414.00 | .00 |
| 7304044 | PLAYERS - FLATWORK IRONER | U | 02/01/1994 | SL Y | 10.00 | | 5,821.00 | .00 | 5,821.00 | .00 |
| 7304045 | PLAYERS - 2 MODEL L DRYERS | U | 02/01/1994 | SL Y | 10.00 | | 4,079.00 | .00 | 4,079.00 | .00 |
| 7304046 | PLAYERS - 2 20LB CAP WASHERS | U | 02/01/1994 | SL Y | 10.00 | | 1,958.00 | .00 | 1,958.00 | .00 |
| 7304047 | CASH SELL SYSTEM (SCOREBOARD) | U | 02/01/1994 | SL Y | 10.00 | | 4,059.00 | .00 | 4,059.00 | .00 |
| 7304049 | 1 CREATIVE DISPLAY | U | 02/01/1994 | SL Y | 10.00 | | 20,655.00 | .00 | 20,655.00 | .00 |
| 7304050 | STIMULATOR W/ULTRA SOUND UNIT | U | 02/01/1994 | SL Y | 10.00 | | 4,601.00 | .00 | 4,601.00 | .00 |
| 7304052 | 3 TEEC 215 CASH REGISTERS | U | 02/01/1994 | SL Y | 10.00 | | 1,694.00 | .00 | 1,694.00 | .00 |
| 7304053 | STEAM PRESS MACHINE | U | 02/01/1994 | SL Y | 10.00 | | 1,334.00 | .00 | 1,334.00 | .00 |
| 7304054 | PORTABLE GRAPHIC | U | 02/01/1994 | SL Y | 10.00 | | 3,100.00 | .00 | 3,100.00 | .00 |
| 7304058 | | U | 02/01/1994 | SL Y | 10.00 | | 2,284.00 | .00 | 2,284.00 | .00 |

2/7/2014
1:17:01 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 03 - ACE DEPRECIATION
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE 00001
14

LOCATION 7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 7304060 | EQUIPMENT | U | 02/01/1994 | SL Y | 10.00 | | 1,125.00 | .00 | 1,125.00 | .00 |
| 7304064 | SECURITY . | N | 04/30/1994 | SL Y | 10.00 | | 4,121.00 | .00 | 4,121.00 | .00 |
| 7304066 | TELEVIEW | N | 04/30/1994 | SL Y | 10.00 | | 2,612.00 | .00 | 2,612.00 | .00 |
| 7304067 | TRI-W RENTAL | N | 09/16/1994 | SL Y | 10.00 | | 1,407.00 | .00 | 1,407.00 | .00 |
| 7304068 | BECO RENTAL INC | N | 08/23/1994 | SL Y | 10.00 | | 488.00 | .00 | 488.00 | .00 |
| 7304069 | LIBERTY COACH/MODIFIED BUS | N | 01/17/1995 | SL Y | 10.00 | | 1,500.00 | .00 | 1,500.00 | .00 |
| 7304070 | LIBERTY COACH/MODIFIED BUS | N | 01/21/1995 | SL Y | 10.00 | | 1,000.00 | .00 | 1,000.00 | .00 |
| 7304071 | LIBERTY COACH/MODIFIED BUS | N | 01/30/1995 | SL Y | 10.00 | | 1,000.00 | .00 | 1,000.00 | .00 |
| 7304072 | GREAT GATSBY BAR 20' | N | 01/31/1995 | SL Y | 10.00 | | 7,500.00 | .00 | 7,500.00 | .00 |
| 7304073 | LIBERTY COACH/MODIFIED BUS | N | 02/02/1995 | SL Y | 10.00 | | 1,639.00 | .00 | 1,639.00 | .00 |
| 7304074 | E.T. REID CK#4099 | N | 03/24/1995 | SL Y | 10.00 | | 225.00 | .00 | 225.00 | .00 |
| 7304075 | ELPEX, INC. CK#4390 | N | 05/03/1995 | SL Y | 10.00 | | 958.00 | .00 | 958.00 | .00 |
| 7304076 | TC1 CABLE SOUND SYSTEM | N | 05/16/1995 | SL Y | 10.00 | | 14,000.00 | .00 | 14,000.00 | .00 |
| 7304077 | TC1 CABLE SOUND SYSTEM | N | 08/29/1995 | SL Y | 10.00 | | 13,739.00 | .00 | 13,739.00 | .00 |
| 7304078 | N. AMERICAN VAN TRANS 922B | N | 07/18/1995 | SL Y | 10.00 | | 896.00 | .00 | 896.00 | .00 |
| 7304079 | SAMS CLUB CK#4967 | N | 08/04/1995 | SL Y | 10.00 | | 318.00 | .00 | 318.00 | .00 |
| 7304081 | CLARK ENTERPRISES CK#5024 | N | 08/10/1995 | SL Y | 10.00 | | 1,181.00 | .00 | 1,181.00 | .00 |
| 7304082 | TENANT PARKING SWEEPER | N | 10/05/1995 | SL Y | 10.00 | | 1,869.00 | .00 | 1,869.00 | .00 |
| 7304085 | GOPHER TRENCHER GHC | N | 11/24/1995 | SL Y | 10.00 | | 5,500.00 | .00 | 5,500.00 | .00 |
| 7304086 | UPS GHC POWER SOURCE | N | 11/24/1995 | SL Y | 10.00 | | 19,500.00 | .00 | 19,500.00 | .00 |
| 7304087 | WASSEWEMAN CASH REGISTER | N | 09/14/1995 | SL Y | 10.00 | | 1,590.00 | .00 | 1,590.00 | .00 |
| 7304088 | ACTION GLASS & MIRROR | N | 02/15/1996 | SL Y | 10.00 | | 360.00 | .00 | 360.00 | .00 |
| 7304089 | MUTUEL LINE STOOLS (12) | N | 03/08/1996 | SL Y | 10.00 | | 1,129.00 | .00 | 1,129.00 | .00 |
| 7304090 | TELEVIEW SATELLITE DISH | N | 03/21/1996 | SL Y | 10.00 | | 3,030.00 | .00 | 3,030.00 | .00 |
| 7304091 | SHARP 27GS560 TV/S (42) | N | 03/21/1996 | SL Y | 10.00 | | 14,647.00 | .00 | 14,647.00 | .00 |
| 7304092 | ZENITH PV6069 TV/S (2) | N | 03/21/1996 | SL Y | 10.00 | | 4,238.00 | .00 | 4,238.00 | .00 |
| 7304093 | SHARP 13GM60 TV/S (20) | N | 03/21/1996 | SL Y | 10.00 | | 2,714.00 | .00 | 2,714.00 | .00 |
| 7304094 | RCA E09301 TV/S (20) | N | 03/21/1996 | SL Y | 10.00 | | 3,583.00 | .00 | 3,583.00 | .00 |
| 7304095 | SHARP 20GM60 TV/S (24) | N | 03/21/1996 | SL Y | 10.00 | | 5,063.00 | .00 | 5,063.00 | .00 |
| 7304096 | SHARP 20GM100 TV/S (8) | N | 03/21/1996 | SL Y | 10.00 | | 1,942.00 | .00 | 1,942.00 | .00 |
| 7304097 | SHARP 20GS100 TV/S (4) | N | 03/21/1996 | SL Y | 10.00 | | 971.00 | .00 | 971.00 | .00 |
| 7304098 | RCA P46731 TV/S (8) | N | 03/21/1996 | SL Y | 10.00 | | 11,024.00 | .00 | 11,024.00 | .00 |
| 7304099 | RCA F35673 TV/S (20) | N | 03/21/1996 | SL Y | 10.00 | | 20,140.00 | .00 | 20,140.00 | .00 |
| 7304100 | MISC. ELECTRONICS/APPLIANCES | N | 04/05/1996 | SL Y | 10.00 | | 3,204.00 | .00 | 3,204.00 | .00 |
| 7304101 | REX TV/S | N | 10/23/1996 | SL Y | 10.00 | | 723.00 | .00 | 723.00 | .00 |
| 7304102 | REX TV/S | N | 11/22/1996 | SL Y | 10.00 | | 701.00 | .00 | 701.00 | .00 |
| 7304103 | REY'S TV EQUIPMENT (RV.#8774) | N | 01/01/1997 | SL Y | 10.00 | | 351.44 | .00 | 351.44 | .00 |

2/7/2014.
1:17:01 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 03 - ACE DEPRECIATION
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE      15

00001

LOCATION     7 - FT. PIERCE JAI-ALAI

| CLITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 7304104 | SATELLITE EQUIPMENT CK#1407 | N | 01/11/1997 | SL Y | 10.00 | | 2,346.36 | .00 | 2,346.36 | .00 |
| 7304105 | TV-REX 203 NBCK#10096 | N | 02/12/1997 | SL Y | 10.00 | | 679.47 | .00 | 679.47 | .00 |
| 7304106 | 1.5 HP BUFFER-ECONOMY CHEMICAL | N | 12/15/2000 | SL Y | 10.00 | | 1,139.55 | .00 | 1,139.55 | .00 |
| 7304107 | 2 MOTOROLA SP-50 RADIOS DAVES COMMUNICATIONS | N | 12/07/2000 | SL Y | 10.00 | | 905.25 | .00 | 905.25 | .00 |
| 7304108 | 2 MOTOROLA SP-50 RADIOS DAVE'S COMMUNICATION | N | 01/12/2001 | SL Y | 10.00 | | 905.25 | .00 | 905.25 | .00 |
| 7304109 | PUB TELEVISION SETS-REX TVS | N | 09/19/2002 | SL Y | 10.00 | | 3,370.50 | .00 | 3,370.50 | .00 |
| 7304110 | SIMULCAST DINING TABLES/CHAIRS TV CARRELS-TRIFECTA GAMING | N | 08/02/2002 | SL Y | 10.00 | | 18,806.30 | .00 | 18,806.30 | .00 |
| 7304111 | 4 TV SETS/LOBBY-JETSON&REX TV | N | 01/01/2003 | SL Y | 10.00 | | 7,539.90 | .00 | 7,276.00 | 263.90 |
| 7304112 | 2-TV-REX TV/ST LUCIE REST. SUP | N | 06/04/2003 | SL Y | 10.00 | | 1,231.14 | .00 | 1,200.36 | 30.78 |
| 7304113 | 38" ZENITH TV-ST LUCIE REST. | N | 07/18/2003 | SL Y | 10.00 | | 495.50 | .00 | 483.11 | 12.39 |
| 7304114 | 2-TV SETS | N | 08/15/2003 | SL Y | 10.00 | | 1,419.26 | .00 | 1,383.78 | 35.48 |
| 7304115 | JETSON TV | N | 12/17/2003 | SL Y | 10.00 | | 2,774.08 | .00 | 2,711.51 | 62.57 |
| 7304116 | TIME CLOCK-SIMPLEX TIME RECORD | N | 12/12/2003 | SL Y | 10.00 | | 1,325.93 | .00 | 1,296.02 | 29.91 |
| 7304117 | GOODMAN AIR HANDLER&-MONEY RM | N | 03/10/2004 | SL Y | 10.00 | | 1,567.00 | .00 | 1,488.65 | 78.35 |
| 7304118 | JETSON'S TV | N | 03/02/2005 | SL Y | 10.00 | | 3,093.75 | .00 | 2,320.31 | 309.38 |
| 7304119 | GENERATOR & GAS TANK | N | 01/01/2005 | SL Y | 10.00 | | 1,069.98 | .00 | 802.49 | 107.00 |
| 7304120 | 2 SATELLITE DISHES-TELEVIEW | N | 01/01/2005 | SL Y | 10.00 | | 21,534.70 | .00 | 16,151.03 | 2,153.47 |
| 7304121 | OUTDOOR LED MATRIX DISPLAY- DAKTRONICS/LANKO SIGNS&GRAPHIC | N | 04/04/2005 | SL Y | 10.00 | | 43,480.65 | .00 | 32,610.49 | 4,348.06 |
| 7304122 | SECURITY EQUIPMENT LEASE CORP OF AMERICA | N | 07/02/1999 | SL Y | 10.00 | | 18,153.00 | .00 | 18,153.00 | .00 |
| 7304123 | Lighting/Signs-Ferin Signs | U | 01/10/2006 | SL Y | 10.00 | | 18,667.67 | .00 | 12,133.99 | 1,866.77 |
| 7304124 | Lighting/Signs-Ferin Signs | U | 04/28/2008 | SL Y | 10.00 | | 51,119.60 | .00 | 23,003.82 | 5,111.96 |
| 7304125 | Credit Card Machine-SunTrust | N | 05/27/2008 | SL Y | 10.00 | | 531.44 | .00 | 239.14 | 53.15 |
| 7304126 | 10 Modulators-Televew | N | 06/01/2008 | SL Y | 10.00 | | 6,382.38 | .00 | 2,872.06 | 638.24 |
| 7304127 | Sign-Transformer-Kasper Elect. | N | 02/15/2010 | SL Y | 10.00 | | 4,790.00 | .00 | 1,197.50 | 479.00 |
| | **TOTAL MACHINERY AND EQUIPMENT (1530)** | | | | | | 554,783.10 | | 494,891.22 | 15,580.41 |
| 40 | CONC./SNACK/BAR EQUIP. (1540) | | | | | | | | | |
| 7405001 | 4' 3-COMPARTMENT S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 287.00 | .00 | 287.00 | .00 |
| 7405002 | 4' 3-COMPARTMENT S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 287.00 | .00 | 287.00 | .00 |
| 7405003 | 10'X2 1/2'X2 S/S EXHAUST HOOD | U | 02/01/1994 | SL Y | 10.00 | | 789.00 | .00 | 789.00 | .00 |
| 7405004 | 45' SERVICE COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 1,792.00 | .00 | 1,792.00 | .00 |

2/7/2014
1:17:02 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 03 - ACE DEPRECIATION
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE    16
00001

LOCATION    7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 7405005 | 8' WORK COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 430.00 | .00 | 430.00 | .00 |
| 7405006 | 10' WORK COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 538.00 | .00 | 538.00 | .00 |
| 7405007 | 15' WORK COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 789.00 | .00 | 789.00 | .00 |
| 7405008 | MOD GLT-A-32 NUT UPRIGHT COOLER | U | 02/01/1994 | SL Y | 10.00 | | 806.00 | .00 | 806.00 | .00 |
| 7405009 | MOD GLT-A-32 NUT UPRIGHT COOLER | U | 02/01/1994 | SL Y | 10.00 | | 806.00 | .00 | 806.00 | .00 |
| 7405010 | LAZY-MAN GAS GRIDDLE | U | 02/01/1994 | SL Y | 10.00 | | 90.00 | .00 | 90.00 | .00 |
| 7405011 | MODEL 154 ELECTRIC GRIDDLE | U | 02/01/1994 | SL Y | 10.00 | | 143.00 | .00 | 143.00 | .00 |
| 7405012 | MODEL 154 ELECTRIC GRIDDLE | U | 02/01/1994 | SL Y | 10.00 | | 143.00 | .00 | 143.00 | .00 |
| 7405013 | MODEL 154 ELECTRIC GRIDDLE | U | 02/01/1994 | SL Y | 10.00 | | 143.00 | .00 | 143.00 | .00 |
| 7405014 | TOASTMASTER ELECTRIC FRYER | U | 02/01/1994 | SL Y | 10.00 | | 233.00 | .00 | 233.00 | .00 |
| 7405015 | DELFIELD REFRIG,SANDWICH UNIT | U | 02/01/1994 | SL Y | 10.00 | | 842.00 | .00 | 842.00 | .00 |
| 7405016 | TANK MOUNTED PORT AIR COMPRESS | U | 02/01/1994 | SL Y | 16.00 | | 115.00 | .00 | 115.00 | .00 |
| 7405017 | TANK MOUNTED AIR COMPRESSOR | U | 02/01/1994 | SL Y | 10.00 | | 118.00 | .00 | 118.00 | .00 |
| 7405018 | 10'X30'X24' S/S FUME HOOD | U | 02/01/1994 | SL Y | 10.00 | | 645.00 | .00 | 645.00 | .00 |
| 7405019 | 10'X30'X24' S/S FUME HOOD | U | 02/01/1994 | SL Y | 10.00 | | 645.00 | .00 | 645.00 | .00 |
| 7405020 | 10'X30'X24' S/S FUME HOOD | U | 02/01/1994 | SL Y | 10.00 | | 645.00 | .00 | 645.00 | .00 |
| 7405021 | 16' SNACK COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 2,652.00 | .00 | 2,652.00 | .00 |
| 7405022 | 10' SNACK COUNTERS | U | 02/01/1994 | SL Y | 10.00 | | 1,649.00 | .00 | 1,649.00 | .00 |
| 7405023 | CHAIRS | U | 02/01/1994 | SL Y | 10.00 | | 1,290.00 | .00 | 1,290.00 | .00 |
| 7405024 | TABLES | U | 02/01/1994 | SL Y | 10.00 | | 287.00 | .00 | 287.00 | .00 |
| 7405025 | 54' SERVICE COUNTERS | U | 02/01/1994 | SL Y | 10.00 | | 2,186.00 | .00 | 2,186.00 | .00 |
| 7405026 | 54' SERVICE COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 2,186.00 | .00 | 2,186.00 | .00 |
| 7405027 | 16' WORK COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 860.00 | .00 | 860.00 | .00 |
| 7405028 | 16' WORK COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 860.00 | .00 | 860.00 | .00 |
| 7405029 | 8' WORK COUNTERS | U | 02/01/1994 | SL Y | 10.00 | | 430.00 | .00 | 430.00 | .00 |
| 7405030 | 8' WORK COUNTERS | U | 02/01/1994 | SL Y | 10.00 | | 430.00 | .00 | 430.00 | .00 |
| 7405031 | 6' WORK COUNTERS | U | 02/01/1994 | SL Y | 10.00 | | 323.00 | .00 | 323.00 | .00 |
| 7405032 | 6' WORK COUNTERS | U | 02/01/1994 | SL Y | 10.00 | | 323.00 | .00 | 323.00 | .00 |
| 7405033 | 6' WORK COUNTERS | U | 02/01/1994 | SL Y | 10.00 | | 323.00 | .00 | 323.00 | .00 |
| 7405034 | MODEL 355 BUN WARMER | U | 02/01/1994 | SL Y | 10.00 | | 54.00 | .00 | 54.00 | .00 |
| 7405035 | MODEL NSF-18-53C S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 179.00 | .00 | 179.00 | .00 |
| 7405036 | MODEL NSF-18-53C S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 179.00 | .00 | 179.00 | .00 |
| 7405037 | MODEL NSF-18-53C S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 179.00 | .00 | 179.00 | .00 |
| 7405038 | MODEL NSF-18-53C S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 179.00 | .00 | 179.00 | .00 |
| 7405039 | MODEL NSF-18-53 S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 179.00 | .00 | 179.00 | .00 |
| 7405040 | MODEL NSF-18-53C S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 179.00 | .00 | 179.00 | .00 |
| 7405041 | 28' WOOD SERVING COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 1,129.00 | .00 | 1,129.00 | .00 |

2/7/2014
1:17:02 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 03 - ACE DEPRECIATION
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE 17
00601

LOCATION    7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 7405042 | 8' WOOD CABINET BASE COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 430.00 | .00 | 430.00 | .00 |
| 7405043 | 4' WOOD CABINET BASE COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 215.00 | .00 | 215.00 | .00 |
| 7405044 | 4' WOOD CABINET BASE COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 215.00 | .00 | 215.00 | .00 |
| 7405045 | 4' WOOD CABINET BASE COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 215.00 | .00 | 215.00 | .00 |
| 7405046 | 6X2' 3-COMPARTMENT S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 527.00 | .00 | 627.00 | .00 |
| 7405047 | 6X2 1/2X3' COOLER | U | 02/01/1994 | SL Y | 10.00 | | 627.00 | .00 | 627.00 | .00 |
| 7405048 | 6X2 1/2X3' MDL DD58 COOLER | U | 02/01/1994 | SL Y | 10.00 | | 842.00 | .00 | 842.00 | .00 |
| 7405049 | 28' WOOD SERVING COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 842.00 | .00 | 842.00 | .00 |
| 7405050 | 14' WOOD WORKING COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 1,129.00 | .00 | 1,129.00 | .00 |
| 7405051 | 8' WOOD WORKING COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 789.00 | .00 | 789.00 | .00 |
| 7405052 | 10X2 1/2X2 S/S FUME EXH. HOOD | U | 02/01/1994 | SL Y | 10.00 | | 430.00 | .00 | 430.00 | .00 |
| 7405053 | 6X2' 3-COMPARTMENT S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 788.00 | .00 | 788.00 | .00 |
| 7405054 | MODEL 3A81D FOOD WARMER | U | 02/01/1994 | SL Y | 10.00 | | 627.00 | .00 | 627.00 | .00 |
| 7405055 | 2-COMPARTMENT ROLL & FOOD WARM | U | 02/01/1994 | SL Y | 10.00 | | 179.00 | .00 | 179.00 | .00 |
| 7405056 | 35' WOOD SERVING COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 161.00 | .00 | 161.00 | .00 |
| 7405057 | 35' WOOD WORKING COUNTER | U | 02/01/1994 | SL Y | 10.00 | | 1,290.00 | .00 | 1,290.00 | .00 |
| 7405058 | 6X2' 3-COMPARTMENT S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 1,613.00 | .00 | 1,613.00 | .00 |
| 7405059 | TOASTMASTER MODEL 781 GRILL | U | 02/01/1994 | SL Y | 10.00 | | 627.00 | .00 | 627.00 | .00 |
| 7405060 | 6X2 1/2X3' BEER COOLER | U | 02/01/1994 | SL Y | 10.00 | | 179.00 | .00 | 179.00 | .00 |
| 7405061 | 1 CHAR BROILER | U | 02/01/1994 | SL Y | 10.00 | | 842.00 | .00 | 842.00 | .00 |
| 7405062 | 1 WALK-OM COOLER & FREEZER | U | 02/01/1994 | SL Y | 10.00 | | 81.00 | .00 | 81.00 | .00 |
| 7405063 | 12 FIBERGLASS TABLES | U | 02/01/1994 | SL Y | 10.00 | | 3,871.00 | .00 | 3,871.00 | .00 |
| 7405064 | 1 CUSTOM FIXTURE | U | 02/01/1994 | SL Y | 10.00 | | 208.00 | .00 | 208.00 | .00 |
| 7405065 | 2-BACK BAR-CABINETS | U | 02/01/1994 | SL Y | 10.00 | | 1,118.00 | .00 | 1,118.00 | .00 |
| 7405066 | 2X6' PLY SIGN-CONC. AR | U | 02/01/1994 | SL Y | 10.00 | | 322.00 | .00 | 322.00 | .00 |
| 7405067 | 125 MOCHA BROWN STACK CHAIRS | U | 02/01/1994 | SL Y | 10.00 | | 346.00 | .00 | 346.00 | .00 |
| 7405068 | 3 ROLL-A-GRILLS | U | 02/01/1994 | SL Y | 10.00 | | 1,647.00 | .00 | 1,647.00 | .00 |
| 7405069 | MICROWAVE OVEN | U | 02/01/1994 | SL Y | 10.00 | | 1,832.00 | .00 | 1,832.00 | .00 |
| 7405070 | SLICER | U | 02/01/1994 | SL Y | 10.00 | | 321.00 | .00 | 321.00 | .00 |
| 7405071 | TAYLOR FREEZER #8756 | U | 02/01/1994 | SL Y | 10.00 | | 641.00 | .00 | 641.00 | .00 |
| 7405072 | CONCESSION HOOD | U | 02/01/1994 | SL Y | 10.00 | | 9,936.00 | .00 | 9,936.00 | .00 |
| 7405073 | 50' CAMP BAR SINK/FAUCET | U | 02/01/1994 | SL Y | 10.00 | | 3,068.00 | .00 | 3,068.00 | .00 |
| 7405074 | 4 22752 KEG COOLERS | U | 02/01/1994 | SL Y | 10.00 | | 587.00 | .00 | 587.00 | .00 |
| 7405075 | 2-BURNER GAS STOVE | U | 02/01/1994 | SL Y | 10.00 | | 3,505.00 | .00 | 3,505.00 | .00 |
| 7405076 | 3 BUN WARMERS | U | 02/01/1994 | SL Y | 10.00 | | 111.00 | .00 | 111.00 | .00 |
| 7405077 | 3 HOT DOG WARMERS | U | 02/01/1994 | SL Y | 10.00 | | 299.00 | .00 | 299.00 | .00 |
| 7405078 | TEC FX-160 CASH REGISTER | U | 02/01/1994 | SL Y | 10.00 | | 698.00 | .00 | 698.00 | .00 |
| | | | | | | | 945.00 | .00 | 945.00 | .00 |

2/7/2014
1:17:02 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 03 - ACE DEPRECIATION
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE      18

00001

LOCATION      7 - FT. PIERCE JAI-ALAI

| CL.ITEM | DESCRIPTION | NEW/USED | ACQ/DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 7405079 | 10-MA215 CASH REGISTER | U | 02/01/1994 | SL Y | 10.00 | | 4,403.00 | .00 | 4,403.00 | .00 |
| 7405080 | CONCESSION SIGNS | U | 02/01/1994 | SL Y | 10.00 | | 319.00 | .00 | 319.00 | .00 |
| 7405081 | R-22 REFRIGERATION SYSTEM | U | 02/01/1994 | SL Y | 10.00 | | 896.00 | .00 | 896.00 | .00 |
| 7405082 | POPCORN MACHINE - MODEL 208 | U | 02/01/1994 | SL Y | 10.00 | | 429.00 | .00 | 429.00 | .00 |
| 7405083 | JJ SNACK FOODS PIZZA OVEN | N | 01/18/1995 | SL Y | 10.00 | | 596.00 | .00 | 596.00 | .00 |
| 7405084 | SUPERIOR HOT DOG GRILL | N | 03/18/1995 | SL Y | 10.00 | | 800.00 | .00 | 800.00 | .00 |
| 7405085 | BEER BOX - SUPERIOR PRODUCTS | N | 04/24/1997 | SL Y | 10.00 | | 1,684.55 | .00 | 1,684.55 | .00 |
| 7405086 | CONCESSION CABINETS | N | 06/01/1997 | SL Y | 10.00 | | 1,568.60 | .00 | 1,568.60 | .00 |
| 7405087 | PUB CABINETS-INTEGRITY CABINET | N | 09/09/2002 | SL Y | 10.00 | | 4,203.92 | .00 | 4,203.92 | .00 |
| 7405088 | SHELVING/HOT DOG SHIELD | N | 07/18/2003 | SL Y | 10.00 | | 250.00 | .00 | 243.75 | 6.25 |
| 7405089 | Walk-in Cooler-Ted's Refrigera | N | 06/26/2007 | SL Y | 10.00 | | 10,000.00 | .00 | 5,500.00 | 1,000.00 |
| 7405090 | Cdrm Bottle Cooler/Keg Cooler | N | 04/29/2008 | SL Y | 10.00 | | 7,090.25 | .00 | 3,190.62 | 709.03 |
| | Complete Rest.Equip.& Supp. | | | | | | | | | |
| 7405091 | 100 Stacking Chairs | N | 04/23/2008 | SL Y | 10.00 | | 23,749.50 | .00 | 10,687.28 | 2,374.95 |
| | Complete Rest.Equip.& Supp. | | | | | | | | | |
| 7405092 | 12 Bar Stools | N | 04/28/2008 | SL Y | 10.00 | | 2,526.16 | .00 | 1,136.78 | 252.61 |
| 7405093 | Crowd Control Equip. | N | 04/28/2008 | SL Y | 10.00 | | 2,102.01 | .00 | 945.90 | 210.20 |
| 7405094 | Ice Makar-Complete Rest. | N | 06/03/2008 | SL Y | 10.00 | | 2,268.47 | .00 | 1,020.82 | 226.85 |
| 7405095 | Keg Cooler-Agustin Vidal | N | 09/09/2008 | SL Y | 10.00 | | 1,100.00 | .00 | 495.00 | 110.00 |
| 7405096 | Hot Dog Machine-Gold Metal Pro | N | 01/28/2009 | SL Y | 10.00 | | 1,207.97 | .00 | 422.80 | 120.80 |
| | | | | | | | 133,213.44 | | 106,562.02 | 5,010.69 |

TOTAL CONC./SNACK/BAR EQUIP. (1540)

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 50 | RESTAURANT EQUIPMENT (1550) | | | | | | | | | |
| 7506001 | 28 TABLE TOPS 38X48 | U | 02/01/1994 | SL Y | 10.00 | | 1,002.00 | .00 | 1,002.00 | .00 |
| 7506002 | 15 TABLE TOPS | U | 02/01/1994 | SL Y | 10.00 | | 268.00 | .00 | 268.00 | .00 |
| 7506003 | 1 DOUBLE BAY SINK 21X24 | U | 02/01/1994 | SL Y | 10.00 | | 318.00 | .00 | 318.00 | .00 |
| 7506004 | 1 6' S/S TABLE | U | 02/01/1994 | SL Y | 10.00 | | 152.00 | .00 | 152.00 | .00 |
| 7506005 | 1 6' S/S TABLE | U | 02/01/1994 | SL Y | 10.00 | | 152.00 | .00 | 152.00 | .00 |
| 7506006 | 3' TABLE | U | 02/01/1994 | SL Y | 10.00 | | 150.00 | .00 | 150.00 | .00 |
| 7506007 | 3' S/S TABLE | U | 02/01/1994 | SL Y | 10.00 | | 150.00 | .00 | 150.00 | .00 |
| 7506008 | AKT-48 REACH-IN REFRIGERATOR | U | 02/01/1994 | SL Y | 10.00 | | 944.00 | .00 | 944.00 | .00 |
| 7506009 | MT27 REACH-IN REFRIGERATOR | U | 02/01/1994 | SL Y | 10.00 | | 851.00 | .00 | 851.00 | .00 |
| 7506010 | MT27 REACH-IN REFRIGERATOR | U | 02/01/1994 | SL Y | 10.00 | | 851.00 | .00 | 851.00 | .00 |
| 7506011 | WALK-IN FREEZER/COOLER | U | 02/01/1994 | SL Y | 10.00 | | 5,037.00 | .00 | 5,037.00 | .00 |
| 7506012 | DOUBLE BAY SINK | U | 02/01/1994 | SL Y | 10.00 | | 318.00 | .00 | 318.00 | .00 |
| 7506013 | 3-COMPARTMENT S/S SINK | U | 02/01/1994 | SL Y | 10.00 | | 203.00 | .00 | 203.00 | .00 |

2/7/2014
1:17:02 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 03 - ACE DEPRECIATION
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE        19
00091

LOCATION    7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 7506014 | WATER SYSTEM | U | 02/01/1994 | SL Y | 10.00 | | 157.00 | .00 | 157.00 | .00 |
| 7506015 | DISHWASHER | U | 02/01/1994 | SL Y | 10.00 | | 1,903.00 | .00 | 1,903.00 | .00 |
| 7506016 | FRYER | U | 02/01/1994 | SL Y | 10.00 | | 562.00 | .00 | 562.00 | .00 |
| 7506017 | OVEN | U | 02/01/1994 | SL Y | 10.00 | | 1,015.00 | .00 | 1,015.00 | .00 |
| 7506018 | 135 CHROME BASS CHAIRS | U | 02/01/1994 | SL Y | 10.00 | | 4,767.00 | .00 | 4,767.00 | .00 |
| 7506019 | SINGLE COMPARTMENT SINK | U | 02/01/1994 | SL Y | 10.00 | | 130.00 | .00 | 130.00 | .00 |
| 7506020 | MAITRE D' STATION | U | 02/01/1994 | SL Y | 10.00 | | 216.00 | .00 | 216.00 | .00 |
| 7506021 | 2 24X30 1/2 TABLE TOP | U | 02/01/1994 | SL Y | 10.00 | | 36.00 | .00 | 36.00 | .00 |
| 7506022 | 28 #2325 CHROME TABLE BASES | U | 02/01/1994 | SL Y | 10.00 | | 422.00 | .00 | 422.00 | .00 |
| 7506023 | 15 #2315 CHROME TABLE BASES | U | 02/01/1994 | SL Y | 10.00 | | 192.00 | .00 | 192.00 | .00 |
| 7506024 | HOT FOOD TABLE | U | 02/01/1994 | SL Y | 10.00 | | 517.00 | .00 | 517.00 | .00 |
| 7506025 | REFRIGERATOR | U | 02/01/1994 | SL Y | 10.00 | | 508.00 | .00 | 508.00 | .00 |
| 7506026 | 29# DRY CHEMICAL KIDDIE SYSTEM | U | 02/01/1994 | SL Y | 10.00 | | 689.00 | .00 | 689.00 | .00 |
| 7506027 | MICROWAVE OVEN | U | 02/01/1994 | SL Y | 10.00 | | 321.00 | .00 | 321.00 | .00 |
| 7506028 | 45 TABLES W/BASES 35X18X2 | U | 02/01/1994 | SL Y | 10.00 | | 2,133.00 | .00 | 2,133.00 | .00 |
| 7506029 | 125 BLACK PLASTIC CHAIRS | U | 02/01/1994 | SL Y | 10.00 | | 1,546.00 | .00 | 1,546.00 | .00 |
| 7506030 | REST . STP LITES & CHR CAST | U | 02/01/1994 | SL Y | 10.00 | | 464.00 | .00 | 464.00 | .00 |
| 7506031 | G260 FRYMATE FRYER | U | 02/01/1994 | SL Y | 10.00 | | 841.00 | .00 | 841.00 | .00 |
| 7506032 | JR 77 DOUBLE BROILER | U | 02/01/1994 | SL Y | 10.00 | | 4,090.00 | .00 | 4,090.00 | .00 |
| 7506033 | 43-40R 6-BURNER STOVE | U | 02/01/1994 | SL Y | 10.00 | | 1,208.00 | .00 | 1,208.00 | .00 |
| 7506034 | 46-40R EQUA-THERM SECTIONS | U | 02/01/1994 | SL Y | 10.00 | | 1,269.00 | .00 | 1,269.00 | .00 |
| 7506035 | (1) 5-HOLE STEAM TABLE | U | 02/01/1994 | SL Y | 10.00 | | 601.00 | .00 | 601.00 | .00 |
| 7506036 | TEC M-2400 CASH REGISTER | U | 02/01/1994 | SL Y | 10.00 | | 1,490.00 | .00 | 1,490.00 | .00 |
| 7506037 | BACK SPLASH & INSTALLATION | U | 02/01/1994 | SL Y | 10.00 | | 643.00 | .00 | 643.00 | .00 |
| 7506038 | INST. OF TANK & GAS LINES | U | 02/01/1994 | SL Y | 10.00 | | 497.00 | .00 | 497.00 | .00 |
| 7506039 | FURNITURE-COURTSIDE RESTAURANT | U | 02/01/1994 | SL Y | 10.00 | | 860.00 | .00 | 860.00 | .00 |
| 7506040 | COMM REST SUPPLIES | N | 05/17/1994 | SL Y | 10.00 | | 7,849.00 | .00 | 7,849.00 | .00 |
| 7506041 | SCOTCHEL & MCGRANE 120 CH | N | 01/06/1995 | SL Y | 10.00 | | 8,507.00 | .00 | 8,507.00 | .00 |
| 7506042 | RUSS SWART 41 TABLES | N | 01/15/1995 | SL Y | 10.00 | | 1,251.00 | .00 | 1,251.00 | .00 |
| 7506043 | EDWARD DON COMM REST SUPP | N | 01/19/1995 | SL Y | 10.00 | | 2,310.00 | .00 | 2,310.00 | .00 |
| 7506044 | ACTION GLASS 24 TABLE TOPS | N | 02/01/1995 | SL Y | 10.00 | | 700.00 | .00 | 700.00 | .00 |
| 7506045 | EDWARD DON COMM REST SUPP | N | 03/08/1995 | SL Y | 10.00 | | 9,009.00 | .00 | 9,009.00 | .00 |
| 7506046 | EDWARD DON COMM REST SUPP | N | 04/06/1995 | SL Y | 10.00 | | 838.00 | .00 | 838.00 | .00 |
| 7506047 | ACTION GLASS 12 TABLE TOPS | N | 11/13/1995 | SL Y | 10.00 | | 375.00 | .00 | 375.00 | .00 |
| 7506048 | FREEZERS (2-SEARS) | N | 03/21/1996 | SL Y | 10.00 | | 530.00 | .00 | 530.00 | .00 |
| 7506049 | POTS, PANS, ETC. – ED DON | N | 03/14/1996 | SL Y | 10.00 | | 1,266.00 | .00 | 1,266.00 | .00 |
| 7506050 | CHAIRS & STOOLS-SUPERIOR PROD. | N | 12/14/1999 | SL Y | 10.00 | | 1,176.83 | .00 | 1,176.83 | .00 |

2/7/2014
1:17:32 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 03 - ACE DEPRECIATION
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE     20
00.001

LOCATION     7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 7506051 | DCS-24-CRB BROILER | N | 12/18/2001 | SL Y | 10.00 | | 570.50 | .00 | 570.50 | .00 |
| 7506052 | KITCHEN HOOD FIRE SYSTEM | N | 01/07/2002 | SL Y | 10.00 | | 1,121.10 | .00 | 1,121.10 | .00 |
| | TOTAL RESTAURANT EQUIPMENT (1550) | | | | | | 72,976.43 | | 72,976.43 | .00 |
| 60 | OFFICE EQUIPMENT (1550) | | | | | | | | | |
| 7607002 | SOFA | | | | | | | | | |
| 7607003 | BUTCHER BLOCK | U | 02/01/1994 | SL Y | 10.00 | | 171.00 | .00 | 171.00 | .00 |
| 7607004 | 8 CHAIRS | U | 02/01/1994 | SL Y | 10.00 | | 220.00 | .00 | 220.00 | .00 |
| 7607005 | 1-HON FILE #E4-214CP-A | U | 02/01/1994 | SL Y | 10.00 | | 159.00 | .00 | 159.00 | .00 |
| 7607006 | 1-HON FILE HE4-314CP-A | U | 02/01/1994 | SL Y | 10.00 | | 95.00 | .00 | 95.00 | .00 |
| 7607007 | 1 DESK E4-32474WP | U | 02/01/1994 | SL Y | 10.00 | | 118.00 | .00 | 118.00 | .00 |
| 7607008 | 1 CHAIR E4-533-78/926 | U | 02/01/1994 | SL Y | 10.00 | | 138.00 | .00 | 138.00 | .00 |
| 7607009 | 8 CHAIRS | U | 02/01/1994 | SL Y | 10.00 | | 152.00 | .00 | 152.00 | .00 |
| 7607010 | 2 #240 STENO CHAIRS | U | 02/01/1994 | SL Y | 10.00 | | 159.00 | .00 | 159.00 | .00 |
| 7607011 | 2 #4229 STOOLS | U | 02/01/1994 | SL Y | 10.00 | | 107.00 | .00 | 107.00 | .00 |
| 7607012 | 3 ARMCHAIRS W/END TABLE | U | 02/01/1994 | SL Y | 10.00 | | 82.00 | .00 | 82.00 | .00 |
| 7607013 | CHAIR (MUTUELS DEPT.) | U | 02/01/1994 | SL Y | 10.00 | | 412.00 | .00 | 412.00 | .00 |
| 7607014 | CHAIR | U | 02/01/1994 | SL Y | 10.00 | | 67.00 | .00 | 67.00 | .00 |
| 7607015 | 3 ARMCHAIRS WALNUT | U | 02/01/1994 | SL Y | 10.00 | | 180.00 | .00 | 180.00 | .00 |
| 7607016 | OAK JUDGES CHAIR & EXEC CHAIR | U | 02/01/1994 | SL Y | 10.00 | | 194.00 | .00 | 194.00 | .00 |
| 7607017 | CONFERENCE TABLE | U | 02/01/1994 | SL Y | 10.00 | | 260.00 | .00 | 260.00 | .00 |
| 7607018 | 8 CONFERENCE CHAIRS | U | 02/01/1994 | SL Y | 10.00 | | 376.00 | .00 | 376.00 | .00 |
| 7607026 | CHAIR | U | 02/01/1994 | SL Y | 10.00 | | 735.00 | .00 | 735.00 | .00 |
| 7607030 | GOULD SIGNS | U | 02/01/1994 | SL Y | 10.00 | | 119.00 | .00 | 119.00 | .00 |
| 7607031 | PLANTERS PLANT KEEPER VER | N | 03/21/1994 | SL Y | 20.00 | | 2,700.00 | .00 | 2,529.68 | 113.55 |
| 7607033 | SURFSIDE GLASS CO, INC. | N | 04/30/1994 | SL Y | 10.00 | | 750.00 | .00 | 750.00 | .00 |
| 7607034 | PILGRIM MAT SERVICES | N | 04/11/1994 | SL Y | 10.00 | | 1,150.00 | .00 | 1,150.00 | .00 |
| 7607035 | SEAT ANCHORS | N | 04/28/1994 | SL Y | 10.00 | | 427.00 | .00 | 427.00 | .00 |
| 7607037 | GOULD SIGNS | N | 04/30/1994 | SL Y | 10.00 | | 533.00 | .00 | 533.00 | .00 |
| 7607038 | ROBERT STEIN, INC. | N | 05/03/1994 | SL Y | 20.00 | | 4,912.00 | .00 | 4,602.06 | 206.63 |
| 7607039 | THE PLANT KEEPER OF VERO | N | 05/11/1994 | SL Y | 10.00 | | 17,870.00 | .00 | 17,870.00 | .00 |
| 7607040 | PLANT HAVEN WHOLESALE | N | 06/08/1994 | SL Y | 10.00 | | 1,001.00 | .00 | 1,001.00 | .00 |
| 7607041 | CLAYTON HENDRICKSON | N | 05/27/1994 | SL Y | 10.00 | | 4,008.00 | .00 | 4,008.00 | .00 |
| 7607042 | SURFSIDE GLASS CO, INC. | N | 06/21/1994 | SL Y | 10.00 | | 1,000.00 | .00 | 1,000.00 | .00 |
| 7607043 | GR GATSBY'S AUCTION - LAMPS | N | 07/05/1994 | SL Y | 10.00 | | 1,150.00 | .00 | 1,150.00 | .00 |
| 7607044 | JANET CLARK CASEA TREE | N | 12/06/1994 | SL Y | 10.00 | | 1,485.00 | .00 | 1,485.00 | .00 |
| | | N | 02/11/1995 | SL Y | 10.00 | | 318.00 | .00 | 318.00 | .00 |

2/7/2014
1:17:02 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 03 - ACE DEPRECIATION
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

PAGE          00001
21

LOCATION      7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 7607045 | SAMS CLUB STACK CHAIRS | N | 04/03/1995 | SL  Y | 10.00 | | 1,468.00 | .00 | 1,468.00 | .00 |
| 7607046 | SAMS CLUB CHAIRS SUPPLIES | N | 05/19/1995 | SL  Y | 10.00 | | 445.00 | .00 | 445.00 | .00 |
| 7607047 | SAMS CLUBS CHAIRS SUPPLIES | N | 04/19/1995 | SL  Y | 10.00 | | 1,117.00 | .00 | 1,117.00 | .00 |
| 7607048 | SAMS CLUB OFFICE FURNITURE | N | 03/02/1995 | SL  Y | 10.00 | | 1,117.00 | .00 | 1,117.00 | .00 |
| 7607049 | BEST OFFICE SUPPLIES FURNITURE | N | 09/11/1995 | SL  Y | 10.00 | | 89.00 | .00 | 89.00 | .00 |
| 7607052 | FILE CABINET - 2 FIREKING | N | 07/10/1996 | SL  Y | 10.00 | | 1,198.00 | .00 | 1,198.00 | .00 |
| 7607053 | DESK/CHAIR-STAPLES,DISC. FURN. | N | 04/13/1999 | SL  Y | 10.00 | | 2,370.52 | .00 | 2,370.52 | .00 |
| 7607054 | COMPUTER EQUIP-IMP.CK0#1202 | N | 04/29/2000 | SL  Y | 10.00 | | 904.27 | .00 | 904.27 | .00 |
| 7607055 | COMPUTER (OFFICE) | N | 01/08/2001 | SL  Y | 6.00 | | 1,963.14 | .00 | 1,963.14 | .00 |
| 7607056 | COMPUTER | N | 04/17/2002 | SL  Y | 6.00 | | 1,100.60 | .00 | 1,100.60 | .00 |
| 7607057 | COMPUTER - OFFICE | N | 10/31/2002 | SL  Y | 6.00 | | 1,000.00 | .00 | 1,000.00 | .00 |
| 7607058 | 2 INTELLIFAX MACHINES-AM EXP | N | 04/15/2004 | SL  Y | 6.00 | | 1,523.59 | .00 | 1,523.59 | .00 |
| 7607059 | Toshiba Phone System | N | 05/22/2008 | SL  Y | 10.00 | | 666.15 | .00 | 666.15 | .00 |
| | Oceanside Communications | | | | | | 7,212.75 | .00 | 3,245.74 | 721.27 |
| 7607060 | 2 Softbyte Computers | N | 09/12/2008 | SL  Y | 6.00 | | 3,107.40 | .00 | 2,330.55 | 517.90 |
| 7607061 | Computer Hard Drive | N | 02/15/2013 | SL  N | 5.00 | | 1,765.14 | .00 | .00 | 309.87 |
| | | | | | | | | | | |
| | TOTAL OFFICE EQUIPMENT (1560) | | | | | | 66,678.56 | | 59,689.30 | 1,869.22 |
| | | | | | | | | | | |
| 80 | CARDROOM EQUIPMENT (1580) | | | | | | | | | |
| 7809001 | CARDROOM EQUIPMENT- TARA | N | 12/31/1996 | SL  Y | 10.00 | | 3,146.00 | .00 | 3,146.00 | .00 |
| 7809002 | CARDROOM EQUIPMENT | N | 01/01/1997 | SL  Y | 10.00 | | 3,522.51 | .00 | 3,522.51 | .00 |
| 7809003 | 2 6 Tier Lockers-Grainger | N | 01/17/2008 | SL  Y | 10.00 | | 1,503.53 | .00 | 676.58 | 150.35 |
| 7809004 | Brother Printer-Staples | N | 02/15/2008 | SL  Y | 10.00 | | 756.12 | .00 | 340.25 | 75.61 |
| 7809005 | HP Compaq Desktop | N | 02/25/2008 | SL  Y | 6.00 | | 829.22 | .00 | 621.91 | 138.21 |
| 7809006 | Lenovo Laptop Computer | N | 03/13/2008 | SL  Y | 5.00 | | 1,493.99 | .00 | 1,120.50 | 248.99 |
| 7809007 | Chairs/Desks | N | 03/24/2008 | SL  Y | 10.00 | | 5,141.05 | .00 | 2,313.47 | 514.11 |
| | Discount Office Furniture | | | | | | | | | |
| 7809008 | 28 Refurbished Poker Tables | N | 04/11/2008 | SL  Y | 10.00 | | 19,910.30 | .00 | 8,959.64 | 1,991.03 |
| | Quality Gaming | | | | | | | | | |
| 7809009 | 47 Drop Boxes | N | 04/11/2008 | SL  Y | 10.00 | | 12,367.62 | .00 | 5,565.42 | 1,236.76 |
| | Quality Gaming | | | | | | | | | |
| 7809010 | HD-150 Protex Burglary Safe | N | 04/14/2008 | SL  Y | 10.00 | | 1,598.00 | .00 | 719.10 | 159.80 |
| 7809011 | Ameranth Poker Rm Manager | N | 04/15/2008 | SL  Y | 6.00 | | 50,634.54 | .00 | 37,975.91 | 8,439.09 |
| | Queve OS Gaming | | | | | | | | | |
| 7809012 | 2 Acrylic Signs-Signcraft | N | 04/17/2008 | SL  Y | 10.00 | | 1,850.00 | .00 | 832.50 | 185.00 |
| 7809013 | Desk/Chair/File Cabinet | N | 04/23/2008 | SL  Y | 10.00 | | 618.43 | .00 | 278.28 | 61.85 |

2/7/2014
1:17:02 PM

FLORIDA GAMING CORPORATION
3500 N.W. 37 AVENUE
MIAMI, FLORIDA 33142

PAGE 00001
22

FINAL
DEPRECIATION SCHEDULES
SCHEDULE 03 - ACE DEPRECIATION
FOR THE YEAR BEGINNING 01/01/2013 AND ENDING 12/31/2013

LOCATION    7 - FT. PIERCE JAI-ALAI

| CL ITEM | DESCRIPTION | NEW USED | ACQ/ DISP | METHOD | LIFE YRS | DEPR MO/DAY | COST OR OTHER BASIS | SALVAGE | PRIOR DEPRECIATION | CURRENT DEPRECIATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | Disc.Office Furniture | | | | | | | | | |
| 7809014 | Compac SR 541/Acer LCD Staples | N | 04/25/2008 | SL  Y | 6.00 | | 617.56 | .00 | 463.24 | 102.95 |
| 7809015 | Cummins Money Counter | N | 04/25/2008 | SL  Y | 10.00 | | 457.64 | .00 | 205.93 | 45.77 |
| 7809016 | 12 Storage Cabinets | N | 04/28/2008 | SL  Y | 10.00 | | 3,165.14 | .00 | 1,424.31 | 316.51 |
| 7809017 | 12 Receptacles-Cokes | N | 04/28/2008 | SL  Y | 10.00 | | 1,832.86 | .00 | 824.79 | 183.29 |
| 7809018 | Misc.Furn.& Equip.-Cokes | N | 05/22/2008 | SL  Y | 10.00 | | 3,304.40 | .00 | 1,486.98 | 330.44 |
| 7809019 | Furniture-True Treasures | N | 07/20/2008 | SL  Y | 10.00 | | 4,787.77 | .00 | 2,154.51 | 478.77 |
| 7809020 | 2 "Crystal Card Room" Signs | N | 07/29/2008 | SL  Y | 10.00 | | 4,452.00 | .00 | 2,003.40 | 445.20 |
| 7809021 | DISCOUNT FURNITURE | N | 08/03/2008 | SL  Y | 10.00 | | 2,559.86 | .00 | 1,138.72 | 252.55 |
| 7809022 | Discount Furniture | N | 08/25/2008 | SL  Y | 10.00 | | 3,689.70 | .00 | 1,660.37 | 368.97 |

TOTAL CARDROOM EQUIPMENT (1580)

128,248.34                77,434.32        15,725.25

**SCHEDULE IV**
**INTANGIBLE PERSONAL PROPERTY**

Operating Permits and Licenses:

| | Issuing Authority | Description | Location | License Number | Exp Date |
|---|---|---|---|---|---|
| | | **PERMITS** | | | |
| 1. | State of Florida, DBPR | Miami Pari-Mutuel Wagering Permit | Miami | | |
| 2. | State of Florida, DBPR | Ft. Pierce Pari-Mutuel Wagering Permit | Ft. Pierce | | |
| 3. | State of Florida, DBPR | Tampa Pari-Mutuel Permit | Tampa | | |
| | | **LICENSES** | | | |
| 4. | St. of Florida, DBPR, PMW | FGC, Inc. dba Miami Jai-Alai PM License #273 | Miami | 273 | June. 30, 2014 |
| 5. | St. of Florida, DBPR, PMW | "" MJA cardroom license (28) tables #273 | Miami | CR273 | June. 30, 2014 |
| 6. | St. of Florida, DBPR, PMW | FGC, Inc. dba MJA slot machine operations license | Miami | SM273 | May 11, 2014 |
| 7. | St. of Florida, DBPR, ABT | Alcohol License 4COP, dual Tobacco | Miami | L12030702678 | Mar. 31, 2014 |
| 8. | St. of Florida, DBPR, ABT | Alcohol License 3M | Miami | L12030702679 | Mar. 31, 2014 |
| 9. | Miami-Dade County | Local Business Tax 195 eating Est. Snack Bar 1 | Miami | 180652-1 | Sept. 30, 2014 |
| 10. | Miami-Dade County | Local Business Tax 195 eating Est. Snack Bar 2 | Miami | 180653-9 | Sept. 30, 2014 |
| 11. | Miami-Dade County | Local Business Tax 195 eating Est. Snack Bar 3 | Miami | 180657-6 | Sept. 30, 2014 |
| 12. | Miami-Dade County | Local Business Tax 195 eating EST.Snack Bar 4 | Miami | 180658-8 | Sept. 30, 2014 |
| 13. | Miami-Dade County | Local Business Tax 195 eating EST.Snack Bar 5 | Miami | 180659-6 | Sept. 30, 2014 |
| 14. | Miami-Dade County | Local Business Tax 195 eating EST.Snack Bar 8 | Miami | 180663-8 | Sept. 30, 2014 |
| 15. | Miami-Dade County | Local Business Tax 195 eating EST.Snack Bar 7 | Miami | 180662-0 | Sept. 30, 2014 |
| 16. | Miami-Dade County | Local Business Tax 195 eating EST.Snack Bar 6 | Miami | 180660-4 | Sept. 30,2014 |

11

| | | | | |
|---|---|---|---|---|
| 17. | Miami-Dade County | Local Business Tax 195 eating EST.rest | Miami | 180665-3 | Sept. 30, 2014 |
| 18. | Miami-Dade County | Local Business Tax 192 comm/ind/off 193899 sq" | Miami | 505015-8 | Sept. 30, 2014 |
| 19. | Miami-Dade County | Local Business Tax 208 Auditorium seating 4500 | Miami | 034381-4 | Sept. 30, 2014 |
| 20. | St. of Fla., Div. of Hotels | Seating food service – bar | Miami | L12020400143 | Oct. 1, 2014 |
| 21. | St. of Fla., Div. of Hotels | Seating food service – bar | Miami | L12020400144 | Oct. 1, 2014 |
| 22. | City of Miami | Certificate of Use open areas parking | Miami | 365350-168786 | Dec. 31, 2014 |
| 23. | City of Miami | Certificate of Use food/beverage | Miami | 365350-177533 | Dec. 31, 2014 |
| 24. | City of Miami | Certificate of Use amus. Parks, frontons | Miami | 365350-177533 | Dec. 31, 2014 |
| 25. | City of Miami | Certificate of Use amus. Parks, frontons | Miami | 365350-168822 | Dec. 31, 2014 |
| 26. | City of Miami | Alarm Permit | Miami | 88563 | Sept. 30, 2014 |
| 27. | St. of Fla., Div. of Hotels | | Miami | NOS2302815 | Oct. 1, 2013 |
| 28. | St. of Fla., Div. of Hotels | | Miami | SEA2317107 | Oct. 1, 2013 |
| 29. | City of Miami | Jai-Alai or Pelota | Miami | 365350-00127164 | Sept. 30, 2014 |
| 30. | City of Miami | ATM permit | Miami | 105861-0022 | Sep. 30, 2014 |
| 31. | City of Miami | ATM permit | Miami | 105861-0023 | Sep. 30, 2014 |
| 32. | City of Miami | Cafeteria | Miami | 105861-0016 | Sep. 30, 2014 |
| 33. | City of Miami | Cafeteria | Miami | 105861-0014 | Sep. 30, 2014 |
| 34. | City of Miami | Cafeteria | Miami | 105861-0011 | Sep. 30, 2014 |
| 35. | City of Miami | Cafeteria | Miami | 105861-0010 | Sep. 30, 2014 |
| 36. | City of Miami | Cafeteria | Miami | 105861-0009 | Sep. 30, 2014 |
| 37. | City of Miami | ATM permit | Miami | 105861-0021 | Sep. 30, 2014 |
| 38. | City of Miami | ATM permit | Miami | 105861-0020 | Sep. 30, 2014 |
| 39. | City of Miami | ATM permit | Miami | 105861-0019 | Sep. 30, 2014 |
| 40. | City of Miami | ATM permit | Miami | 105861-0018 | Sep. 30, 2014 |
| 41. | City of Miami | Slot Machines | Miami | 105861-0024 | Sep. 30, 2014 |

12

| 42. | City of Miami | Cafeteria | Miami | 105861-0001 | Sep. 30, 2014 |
|---|---|---|---|---|---|
| 43. | City of Miami | Cafeteria | Miami | 105861-0002 | Sep. 30, 2014 |
| 44. | City of Miami | Cafeteria | Miami | 105861-0003 | Sep. 30, 2014 |
| 45. | City of Miami | Cafeteria | Miami | 105861-0004 | Sep. 30, 2014 |
| 46. | City of Miami | Cafeteria | Miami | 105861-0008 | Sep. 30, 2014 |
| 47. | City of Miami | Racing/Selling Pamphlets | Miami | 105861-0006 | Sep. 30, 2014 |
| 48. | City of Miami | Merchants Retail | Miami | 105861-0005 | Sep. 30, 2014 |
| 49. | State of FL Dept. of Health | Swimming Pool Spa Permit | Miami | 13-60-00801 | June 30, 2014 |
| 50. | Miami-Dade County Planning and Zoning | Class "C" Sign Permit | Miami | S200101003 | Sept. 30, 2014 |
| 51. | St. of FL, DBPR | FGC dba Ft Pierce Jai-Alai pari-mutuel lic#278 | Ft Pierce | 278 | June. 30, 2014 |
| 52. | St. of FL, DBPR | " "FPJA cardroom license #cr278 | Ft Pierce | cr278 | June. 30, 2014 |
| 53. | St. of FL, Div of Hotels | Food Service – Bar | Ft Pierce | L1203090360 | Apr. 1, 2014 |
| 54. | St. of Fla.DBPR, ABT | Alcohol tobacco 12RT dual license | Ft Pierce | L12022202039 | Mar. 31, 2014 |
| 55. | St. of Fla.DBPR, ABT | Alcohol tobacco RTPD dual license | Ft Pierce | I11120601730 | Mar. 31, 2014 |
| 56. | St Lucie County | Dancehall | Ft Pierce | 7911-00900004 | Sep. 30, 2014 |
| 57. | St. Lucie County | Misc Retail | Ft Pierce | 5999-00900138 | Sep. 30, 2014 |
| 58. | St. Lucie County | Restaurant | Ft Pierce | 5812-00900035 | Sep. 30, 2014 |
| 59. | City of Ft Pierce | coin op/game rm,13ari-mutuel/poker room | Ft Pierce | 13-0002071 | Sep. 30, 2014 |

Trademarks:

1. Miami Jai-Alai, Registered on July 16, 1975, Doc. No. 915535, Expires on July 16, 2015
2. Tampa Jai-Alai, Registered on July 16, 1975, Doc. No. 915532, Expires on July 16, 2015

Domain Names:

Http://www.casinomiami.net
Http://www.casinomiamijaialai.com

13

14

Http://www.fla-gaming.com
Http://www.jaialai.net

## SCHEDULE V
## SURVEYS

All Surveys were included in the Intralinks data room created in connection with Seller's bankruptcy auction and Purchaser acknowledges receipt thereof.

## SCHEDULE VI
## OTHER ASSETS

(i)      Ford 1997 F150 pickup truck
(ii)     Accounts Receivable

## SCHEDULE VII
## EXCLUDED CONTRACTS

| | Other Parties | Description | Contract Date | Exp Date | Amount |
|---|---|---|---|---|---|
| 1. | Seller and Summit | Credit Agreement | 25-Apr-11 | The loans mature on April 25, 2016 | Original principal balance of $87,000,000 |
| 2. | Seller, Freedom Holding, Inc., Tara Club Estates, Inc., City National Bank of Miami, as trustee under Land Trust #5003471 dated January 1, 1979 and Summit | Pledge and Security Agreement | 25-Apr-11 | | |
| 3. | Summit | Transaction Fee Letter | 25-Apr-11 | | |
| 4. | Summit | Agent Fee Letter | 25-Apr-11 | | |
| 5. | Seller, as guarantor, and Summit | Warrant Agreement | 25-Apr-11 | | |
| 6. | Summit and Wells Fargo Bank, N.A. | Deposit Account Control Agreement (Access Restricted Immediately) | 25-Apr-11 | | |
| 7. | Summit and Wells Fargo Bank, N.A. | Deposit Account Control Agreement (Access Restricted After Notice) | 25-Apr-11 | | |
| 8. | Summit | Disbursement Agreement | 25-Apr-11 | | |
| 9. | Summit | Construction Mortgage with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing | 25-Apr-11 | | |
| 10. | Summit | Mortgage with Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing | 25-Apr-11 | | |

| # | Party | Agreement | Date | Date | Notes |
|---|---|---|---|---|---|
| 11. | Seller and Summit | Assignment of Construction and Development Documents | 25-Apr-11 | | |
| 12. | Summit | Environmental Indemnity | | | |
| 13. | Miami Casino Management, LLC | Management Agreement | 25-Apr-11 | 3 years after opening of the casino | |
| 14. | Miami Casino Management, LLC, Seller and Summit | Management Fee Subordination Agreement | 25-Apr-11 | 25-Apr-16 | |
| 15. | Florida Lemark Corporation | Construction Agreement | 25-Apr-11 | | $0.00 |
| 16. | Florida Lemark Corp., Construct Design, Inc., and Seller | Promissory Note, dated December 9, 2010, as modified by that Amendment and Restatement, Assignment and Assumption Agreement, dated as of April 25, 2011 | 9-Dec-10 and 25-Apr-11 | 25-Apr-16 | $1,106,598.85 (as of 10/1); interest being paid in kind |
| 17. | Summit | Collateral Assignment of Beneficial Interest under Land Trust Agreement | 25-Apr-11 | | |
| 18. | City National Bank of Miami, as trustee under Land Trust #5003471 dated January 1, 1979 and Summit | Collateral Assignment of Settlement Agreement Documents | 25-Apr-11 | | |
| 19. | Seller and Summit | Agreement regarding Management Rights | 15-Apr-11 | | |
| 20. | Innovation Capital, LLC | Financial Advisory Engagement | 1-Oct-10 | 1-Oct-11 | |
| 21. | Innovation Capital, LLC | Financial Advisory Engagement | 3-May-11 | 3-May-13 | |
| 22. | Miami Gaming Ventures, L.L.C. | Compensation Agreement | 21-Jan-08 | 1-Mar-14 | |
| 23. | Miami Gaming Ventures, L.L.C. | Amendment to Compensation Agreement | 2-Jan-12 | 1-Mar-14 | |
| 24. | Miami Gaming Ventures, L.L.C. | Consulting Agreement | 2-Jan-12 | 2-Jan-14 | $5,000 per month |
| 25. | W. Bennett Collet, Jr. | Employment Agreement | 25-Apr-11 | | |

18

| 26. | Daniel J. Licciardi | Employment Agreement | 25-Apr-11 | | |

19

## SCHEDULE IX
## PREPAID DEPOSITS AND EXPENSES

1.    All prepaid utility deposits, including, without limitation:

    a.    $135,205 to Florida Power & Light (Miami)
    b.    $6,000 to Florida Power & Light (Ft. Pierce)
    c.    $17,600 to water and sewer (Miami)
    d.    $5,508 to parking
    e.    $3,284 to Florida City Gas

2.    Prepaid expenses for the following Included Contracts:

| Glory (U.S.A.) Inc. | Service -Ticket Redemption Units | Miami | Apr. 9, 2012 | Apr. 20, 2014 (renews annually) | $27,146.80 | Annual |
|---|---|---|---|---|---|---|
| Cummins_Allison Corp. | Service Currency Counting Equipment | Miami | May 1, 2012 | Apr. 30,2014 (then month to month) | $16,784.01 | Annual |

3.    The following prepaid deposits:

    a.    $4,000 to Southeast Beverage (Miami)
    b.    $600 to JJ Taylor Liquor (Ft. Pierce)

## SCHEDULE X

**Ordinary Course Payables to be assumed totals $2,101,284.29**

Below is an itemized list of the Ordinary Course Payables to be assumed by Purchaser and paid at Closing, indicating the vendor, the amount payable as of the Petition Date, and the source from which each amount was derived:

| Vendor | Amount | Derived From |
|---|---|---|
| A1 Fire & Security LLC | 252.19 | Seller's Pre-Petition Payable Records |
| AGS Partners, LLC | 228,312.00 | Proof of Claim # 29 |
| Aitzol Erkiaga | 0 | Seller's Pre-Petition Payable Records |
| All Mobile Video | 200.00 | Seller's Pre-Petition Payable Records |
| Allen, Norton & Blue, P.A. | 8,760.00 | Seller's Pre-Petition Payable Records |
| Allstate Insurance Company | 0 | Seller's Pre-Petition Payable Records |
| Altman Brothers, LLC | 225.00 | Seller's Pre-Petition Payable Records |
| American Gaming & Electronic | 549.56 | Seller's Pre-Petition Payable Records |
| Amtote International, Inc. | 988.83 | Seller's Pre-Petition Payable Records |
| Ante Up Publishing | 500.00 | Schedule F |
| Apple Financial Services | 144.52 | Seller's Pre-Petition Payable Records |
| Aquatic Vegetation Control, Inc. | 222.60 | Seller's Pre-Petition Payable Records |
| Arctica Ice Cream | 204.00 | Seller's Pre-Petition Payable Records |
| Aristocrat Technologies, Inc. | 54,566.85 | Proof of Claim # 21 |
| Ascom Hasler/GE Cap Prog | 0 | Seller's Pre-Petition Payable Records |
| AT&T | 0 | Seller's Pre-Petition Payable Records |
| AT&T | 0 | Seller's Pre-Petition Payable Records |
| Aware Digital | 32,100.57 | Seller's Pre-Petition Payable Records |
| B.R.P. Entertainment | 0 | Seller's Pre-Petition Payable Records |
| Bally Technologies | 27,334.49 | Schedule F |
| Benat Flores | 0 | Seller's Pre-Petition Payable Records |
| Betty Bu Party Rentals | 153.40 | Seller's Pre-Petition Payable Records |
| Big Apple Pizza & Pasta | 1,048.00 | Seller's Pre-Petition Payable Records |
| Bottling Group, LLC | 6,311.25 | Proof of Claim # 10 |
| Brink's Incorporated | 3,738.00 | Proof of Claim # 22 |
| Broadridge ICA | 3,000.00 | Proof of Claim # 11 |
| Broward-Nelson Fountain Service | 130.01 | Seller's Pre-Petition Payable Records |
| Calder Race Course | 6,803.35 | Seller's Pre-Petition Payable Records |
| Casino Café, Inc. | 614.15 | Seller's Pre-Petition Payable Records |
| Cheney Brothers, Inc. | 3,465.25 | Seller's Pre-Petition Payable Records |
| Cisco Systems Capital Corp. | 1,560.15 | Schedule F |
| CIT Technology Financial Services | 24,703.63 | Proof of Claim #44 |
| City Electric Supply Company | 120.62 | Seller's Pre-Petition Payable Records |
| City Maintenance Supply | 556.07 | Seller's Pre-Petition Payable Records |
| City of Miami | 4,458.00 | Seller's Pre-Petition Payable Records |
| Coke's Stationers | 285.20 | Seller's Pre-Petition Payable Records |

21

| | | |
|---|---|---|
| Comcast | 0 | Seller's Pre-Petition Payable Records |
| Commercial Flooring Solutions | 3,562.00 | Seller's Pre-Petition Payable Records |
| Crystal Springs Water Co. | 1,820.09 | Schedule F |
| Dade Paper & Bag Co. | 709.06 | Seller's Pre-Petition Payable Records |
| Dadeland Pool | 1,920.00 | Seller's Pre-Petition Payable Records |
| Dahta Design Construction Co. | 300.00 | Seller's Pre-Petition Payable Records |
| Daily Racing Form, LLC | 8,784.44 | Schedule F |
| Daily Racing Form, LLC | 508.80 | Seller's Pre-Petition Payable Records |
| Dania Jai-Alai | 9,508.99 | Schedule F |
| Dania Jai-Alai | 53,117.42 | Schedule F |
| Dayron Alonso | 0 | Seller's Pre-Petition Payable Records |
| Daytona Beach Kennel Club | 2,247.27 | Schedule F |
| Derby Lane | 1,583.16 | Seller's Pre-Petition Payable Records |
| Deskarga Productions | 0 | Seller's Pre-Petition Payable Records |
| Digideal Corporation | 2,120.00 | Seller's Pre-Petition Payable Records |
| DirecTV | 0 | Seller's Pre-Petition Payable Records |
| Dish | 0 | Seller's Pre-Petition Payable Records |
| Douglas Orr Plumbing, Inc. | 344.00 | Seller's Pre-Petition Payable Records |
| Dynamic Advertising and Design | 650.00 | Seller's Pre-Petition Payable Records |
| Eagle Brands Sales | 0 | Seller's Pre-Petition Payable Records |
| Earthlink, Inc. | 467.75 | Proof of Claim # 18 |
| Economy Chemical Co., Inc. | 619.98 | Seller's Pre-Petition Payable Records |
| Edmunds Direct Mail, Inc. | 45,345.68 | Schedule F |
| Elan Group Inc. | 0 | Seller's Pre-Petition Payable Records |
| Euro Off-Track | 5,574.74 | Seller's Pre-Petition Payable Records |
| Euro Off-Track | 3,080.20 | Seller's Pre-Petition Payable Records |
| FedEx | 1,587.23 | Proof of Claim # 14 |
| Ferrin Signs | 500.00 | Seller's Pre-Petition Payable Records |
| Flagler Dogs | 12,639.86 | Seller's Pre-Petition Payable Records |
| Flagler Race-Outs Purged | 780.61 | Seller's Pre-Petition Payable Records |
| Florida City Gas | 2,125.71 | Proof of Claim # 9 |
| Florida Legislative Consultant | 0 | Seller's Pre-Petition Payable Records |
| Florida Lemark Corporation | 12,123.00 | Schedule F |
| Florida Power and Light | 69,769.39 | Schedule F |
| Florida Power and Light | 8,770.56 | Proof of Claim #24 |
| Florida Workers Com JUA Inc. | 0 | Seller's Pre-Petition Payable Records |
| Ft. Pierce Utilities Authority | 2,939.56 | Schedule F |
| General Electric Capital Corporation | 15,341.41 | Proof of Claim # 19 |
| Gold Coast Beverage Dist. Inc. | 0 | Seller's Pre-Petition Payable Records |
| Gordon Food Service, Inc. | 9,057.75 | Proof of Claim # 12 |
| Graphic Controls | 9,453.14 | Seller's Pre-Petition Payable Records |
| Gulfstream Park | 51,100.12 | Schedule F |
| Home Depot Credit Services | 4,901.55 | Schedule F |
| Hospitality Purchasing | 1,887.07 | Seller's Pre-Petition Payable Records |
| Housner Office Supplies | 402.34 | Seller's Pre-Petition Payable Records |

22

| | | |
|---|---|---|
| Housner Office Supplies | 3,446.13 | Seller's Pre-Petition Payable Records |
| HR Direct | 192.49 | Seller's Pre-Petition Payable Records |
| IGT - Eastern Operating #774028 | 50,191.69 | Proof of Claim # 5 |
| Inaki Osa | 0 | Seller's Pre-Petition Payable Records |
| Indentisys Inc. | 3,746.87 | Proof of Claim # 8 |
| International Sound Corp | 208,420.64 | Proof of Claim # 27 |
| International Union UAWLocal 8868 | 21,935.00 | Proof of Claim # 43 |
| IPFS Corporation | 0 | Seller's Pre-Petition Payable Records |
| Jacksonville Greyhound Racing | 4,013.90 | Seller's Pre-Petition Payable Records |
| JJ Taylor Distributing Florida, Inc. | 0 | Seller's Pre-Petition Payable Records |
| Julian Guisasola | 1,725.00 | Schedule F |
| Kasper Electrical, Inc. | 316.00 | Seller's Pre-Petition Payable Records |
| Konica Minolta | 1,041.76 | Seller's Pre-Petition Payable Records |
| Konica Minolta Business Solution | 1,771.77 | Seller's Pre-Petition Payable Records |
| Konica Minolta Premier Finance | 952.30 | Seller's Pre-Petition Payable Records |
| Law Offices of Thomas J. Palmieri | 7,398.50 | Proof of Claim # 16 |
| Lewiston Raceways | 5,889.70 | Schedule F |
| Loomis | 2,329.40 | Proof of Claim # 7 |
| Manulife Financial (USA) | 0 | Seller's Pre-Petition Payable Records |
| Matty's Sports | 1,141.99 | Seller's Pre-Petition Payable Records |
| Miami Bar & Restaurant Supplies | 1,519.89 | Seller's Pre-Petition Payable Records |
| Miami Signs Corp | 3,434.77 | Seller's Pre-Petition Payable Records |
| Miami-Dade Aviation Department | 65,244.60<br>326,994.02 | Seller's Pre-Petition Payable Records |
| Miami-Dade Police Dept. | 28,343.02 | Schedule F |
| Micros Systems, Inc. | 1,948.27 | Proof of Claim # 2 |
| Moseley Outdoor Advertising | 1,200.00 | Seller's Pre-Petition Payable Records |
| MZM Productions, Inc. | 1,500.00 | Seller's Pre-Petition Payable Records |
| Naples KC | 8,566.48 | Schedule F |
| NASARIN | 804.23 | Seller's Pre-Petition Payable Records |
| NASRIN | 1,391.38 | Seller's Pre-Petition Payable Records |
| Newport Grand, LLC | 5,014.41 | Proof of Claim # 13 |
| Nice & Quick Cleaners Corp | 526.90 | Seller's Pre-Petition Payable Records |
| Oceanside Communications, Inc. | 112.50 | Seller's Pre-Petition Payable Records |
| Office Depot Credit Plan | 454.61 | Seller's Pre-Petition Payable Records |
| Onlineracing | 3,663.96 | Seller's Pre-Petition Payable Records |
| Orkin LLC | 984.44 | Seller's Pre-Petition Payable Records |
| Otis Elevator Company | 5,879.88 | Proof of Claim # 3 |
| Otis Elevator Company | 3,568.50 | Proof of Claim # 6 |
| Palm Beach Kennel Club | 56,286.45 | Schedule F |
| Pancar Industrial Supply | 2,494.46 | Schedule F |
| Paula Murillo | 0 | Seller's Pre-Petition Payable Records |
| Pepsi-Cola | 0 | Noted as Bottling Group LLC above |
| Pepsi-Cola Company | 0 | " " " |
| Praxair Distribution SE, LLC | 364.51 | Seller's Pre-Petition Payable Records |

| | | |
|---|---|---|
| Public Storage | 0 | Seller's Pre-Petition Payable Records |
| Purchase Power | 1.80 | Seller's Pre-Petition Payable Records |
| Republic National Distributing | 0 | Seller's Pre-Petition Payable Records |
| Rex Chemical Corp | 209.58 | Seller's Pre-Petition Payable Records |
| Roberts Communications Network | 87,645.61 | Proof of Claim # 4 |
| Robinson & Associates Inc. | 1373.48 | Seller's Pre-Petition Payable Records |
| Rolando Jimenez | 0 | Seller's Pre-Petition Payable Records |
| Rowland Coffee Roasters | 818.40 | Seller's Pre-Petition Payable Records |
| Royal Cool Air Conditioning, Inc. | 6,180.36 | Seller's Pre-Petition Payable Records |
| Ruben Gonzalez | 0 | Seller's Pre-Petition Payable Records |
| Seat Masters Investment Corp. | 4,531.45 | Schedule F |
| Secure-Tek Systems Corp | 75.00 | Seller's Pre-Petition Payable Records |
| SFM Landscape Services, LLC | 23,715.56 | Proof of Claim # 37 |
| SHFL Entertainment | 66,767.37 | Schedule F |
| Sirely Uniforms | 5,554.31 | Seller's Pre-Petition Payable Records |
| Southern Eagle Distributing, Inc. | 0 | Seller's Pre-Petition Payable Records |
| Southern Landscaping & Lawns | 2,200.00 | Schedule F |
| Specialty House of Creation, Inc. | 11,050.00 | Proof of Claim # 17 |
| Sportech, Inc. | 23,280.91 | Schedule F |
| Sportech, Inc. | 34,538.89 | Schedule F |
| St. John's | 1,723.50 | Seller's Pre-Petition Payable Records |
| St. Petersburgh Kennel Club | 7,294.29 | Seller's Pre-Petition Payable Records |
| Sunshine Cleaning Contractors | 2,322.97 | Schedule F |
| Suzo-Happ Group | 160.43 | Seller's Pre-Petition Payable Records |
| Swisher | 602.32 | Seller's Pre-Petition Payable Records |
| Sysco South Florida, Inc. | 2,320.54 | Seller's Pre-Petition Payable Records |
| Talent Ventures, LLC | 0 | Seller's Pre-Petition Payable Records |
| Tampa Bay Down | 130,348.48 | Proof of Claim # 30 |
| Tampa Bay Down | 28,328.69 | Proof of Claim # 31 |
| Tampa Bay Down | 8,175.01 | Proof of Claim # 32 |
| The New York Racing Assoc. | 250.00 | Seller's Pre-Petition Payable Records |
| The Weeks-Lerman Group, LLC | 900.41 | Proof of Claim # 15 |
| Thyssenkrupp Elevator | 1,024.54 | Seller's Pre-Petition Payable Records |
| Total Compliance Network, Inc. | 980.00 | Seller's Pre-Petition Payable Records |
| UGM Enterprises | 52,361.05 | Seller's Pre-Petition Payable Records |
| Waste Management of Dade County | 3,015.70 | Proof of Claim # 23 |
| Wipeout Pests & Termites, Inc. | 276.91 | Seller's Pre-Petition Payable Records |
| YP | 318.99 | Seller's Pre-Petition Payable Records |
| ZAP Logistics | 14.51 | Seller's Pre-Petition Payable Records |
| Zee Medical Inc. | 117.91 | Seller's Pre-Petition Payable Records |
| Zep Sales & Service | 1,044.33 | Seller's Pre-Petition Payable Records |
| Zuma & Sons Distributors | 0 | Seller's Pre-Petition Payable Records |
| Zuma & Sons Distributors | 0 | Seller's Pre-Petition Payable Records |

## SCHEDULE 1.09
## CASH ON HAND CALCULATION

Cash on Hand will be equal to the sum of the following:

- *Cage Cash – Miami  and Ft Pierce* – comprised of ending cage cash balance as of close of business on the Closing Date.
- *Cash in Transit (to bank) – Miami and Ft Pierce* – comprised of deposits awaiting credit at the bank as of close of business on the Closing Date
- *Cash in TRU's – Miami* – comprised of ending balance as of close of business on the Closing Date
- *Cash in Slot Machines – Miami* – comprised of 100% of amount counted as of 9:00am on Closing Date *plus* 50% of amount counted as of 9:00am on day after Closing Date (half of slot machines counted each day)
- *Cash in Bank Accounts* – Miami and Ft Pierce - comprised of ending balances, including total pending checks issued but not cleared, as of close of business on the Closing Date

By way of example, if the Closing Date were December 23, 2013, Cash on Hand would total $3, 550,886.09, calculated as follows:

**Cage cash:**                          $ 1,094,144.18
(ending cash in cage balance as of close of business)

**Cash in Transit:**                    $    403,028.00
(deposits picked up from CMJA and waiting credit at the bank)

**Cash in TRU's**                       $    432,148.83
(balance calculated at end of day)

**Cash  in  Slot Machines:**            $    795,549.00

25

(1/2 floor counted from previous day as of 9 AM)

| | |
|---|---|
| $   400,000.00 | estimated |

(remaining 1/2 counted 24 hours later; by convention 50% pre sale, 50% post)

**Cash in Bank Accounts**
(total pending checks issues but not cleared)

$    426,016.08

**Total:**    $ 3,550,886.09

| Cage Cash Breakdown | | | |
|---|---|---|---|
| Miami | Main Bank | $ | 856,029.48 |
| | Poker | $ | 92,811.00 |
| | PariMutuels | $ | 41,567.70 |
| Ft Pierce | | | |
| | Poker | $ | 46,783.00 |
| | PariMutuels | $ | 56,953.00 |

## SCHEDULE 2.01(a)
## CORPORATE MATTERS

| Party | Jurisdiction | Fictitious Names |
|-------|-------------|------------------|
| Florida Gaming Centers, Inc. | Florida | Fort Pierce Jai-Alai, Miami Jai-Alai, Summer Jai-Alai, Casino Miami Jai-Alai, Casino Miami |

<u>**SCHEDULE 2.01(c)**</u>
<u>**OWNERSHIP OF ASSETS**</u>

1.      All of the Liens listed on Schedule B, Section II of that certain Commitment for Title Insurance by Commonwealth Land Title Insurance Company dated effective as of July 15, 2013 at 8:00 a.m. (as to St. Lucie) and June 23, 2013 at 8:00 a.m. (as to Miami) (the "Title Commitment") and any and all Liens arising thereafter.

2.      All Liens relating to the sprinkler system at the Miami facility.

28

**SCHEDULE 2.03(b)**
**SELLER -APPROVAL,**
**CONSENT/CONFLICTS**

1.    Summit Loan and Security Agreements.

2.    Mortgage and Security Agreement, dated as of March 27, 2009, among Seller, City National Bank of Florida, and Miami-Dade County.

3.    Mortgage and Security Agreement, dated as of June 17, 2011, among Seller, City National Bank of Florida, and Miami-Dade County.

4.    Food Services Management Agreement, dated November 2011, between Casino Café, Inc. and Seller.

5.    The Licenses and all other Intangible Personal Property described in Schedule IV to the Agreement.

29

## SCHEDULE 2.06(b)
## INDEBTEDNESS

In addition to all payables listed on the attached and Indebtedness under the Included Contracts set forth on Schedule II, the following Indebtedness:

| | Borrower | Lender | Issuance Date | Maturity Date | Initial Principal Balance | Approximate Balance (as of 12/23/13) | Default? Y/N |
|---|---|---|---|---|---|---|---|
| 1. | Seller | Summit Lenders | April 25, 2011 | April 25, 2016 | $87,000,000.00 | $128,000,000 | Y[2] |
| 2. | Seller | Miami-Dade County, Florida | April 1, 2009 | April 1, 2024 | $3,013,586.00 | $2,421,921.79 | Y[3] |
| 3. | Seller | Miami-Dade County, Florida | June 17, 2011 | June 15, 2026 | $12,054,344.00 | $12,602,366.70[4] | Y[5] |
| 4. | Florida Gaming Corporation* | Miami Gaming Ventures, L.L.C. | January 21, 2008, as amended on January 2, 2012 | March 1, 2014 | $480,000.00 | $420,000.00 | Y[6] |

*The promissory note referenced in Item 4 is made by Florida Gaming Corporation but Seller receives the benefit of the agreement with Miami Gaming Ventures, L.L.C. It is listed on the Creditor Schedule.

[2] The Company failed to make its first principal payment when due in addition to violating several other provisions of the Summit Loan and Security Agreements.
[3] The Company defaulted when it filed for bankruptcy.
[4] This figure is the sum of the outstanding principal and interest balance of $11,349,009.34 plus overdue principal and interest of $1,229,277.59 plus estimated delinquency charges of $24,079.77.
[5] The Company failed to make the lump sum payment due in January 2012 when the Company began its slot operations as required under the promissory note because the Company was in negotiations with Miami-Dade County regarding the value of the parcel financed with this loan. The purchase price of the parcel was in part based on Miami-Dade County being able to close 37th Ave. within 6 months. Miami-Dade County has now told the Company that it will need 2 years in order to close 37th Ave. Miami-Dade County has not demanded payment of this lump sum due to the ongoing negotiations.
[6] The Company failed to make its monthly payment when due under the compensation agreement.

30

3/28/2014  11:14:18 AM
A/P Aged Payables by Due Date  (AP/APAY11)
From:  CENTER   To:  TRADE

Florida Gaming Centers

Page 1

| Age Transactions As Of | [3/28/2014] |
| Cutoff by Document Date | [3/28/2014] |
| Print Transactions In | [Detail by Document Date] |
| Transaction Types | [Invoice, Debit Note, Credit Note, Interest, Prepayment, Payment, Adjustment] |
| Include Contact/Phone/Credit Limit | [No] |
| Include Space For Comments | [No] |
| Include Zero-Balance Vendors | [No] |
| Include Vendors/Transactions on Hold | [No] |
| Show Applied Details | [No] |
| Show Fully Paid Transactions | [No] |
| From Document Date | □ |
| Sort Transactions by Transaction Type | [No] |

| Doc. Date | Doc. Type/Doc. Number | Current | 1 to 30 Days | 31 to 60 Days | 61 to 90 Days | Over 90 Days | Total Overdue | Total Payables |
| Appl. Date | Applied No. | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **CENTER** | | | | | | | | |
| Vendor No.: | ALL06 | Vendor Name: | ALLEN, NORTON & BLUE, P.A. | | | | | |
| 8/14/2013 | IN 101084 | | | | | 8,760.00 | 8,760.00 | 8,760.00 |
| 9/16/2013 | IN 101848 | | | | | 1,113.50 | 1,113.50 | 1,113.50 |
| 9/30/2013 | IN 102318 | | | | | 21.73 | 21.73 | 21.73 |
| | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 9,895.23 | 9,895.23 | 9,895.23 |
| Vendor No.: | APP02 | Vendor Name: | APPLE FINANCIAL SERVICES | | | | | |
| 3/9/2014 | IN 80337411 | 144.52 | | | | | | 144.52 |
| | Vendor Total: | 144.52 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 144.52 |
| Vendor No.: | COU01 | Vendor Name: | COUSINS CHIPMAN & BROWN, LLP | | | | | |
| 7/3/2013 | IN 930 | | | | | 12,648.70 | 12,648.70 | 12,648.70 |
| 8/6/2013 | IN 1012 | | | | | 5,861.29 | 5,861.29 | 5,861.29 |
| | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 18,509.99 | 18,509.99 | 18,509.99 |
| Vendor No.: | DEV01 | Vendor Name: | DEVELOPMENT SPECIALISTS, INC. | | | | | |
| 11/12/2013 | IN 111213 | | | | | 19,785.00 | 19,785.00 | 19,785.00 |
| 12/6/2013 | IN 120613 | | | | | 3,834.80 | 3,834.80 | 3,834.80 |
| 1/9/2014 | IN 010914 | | | | 3,772.50 | | 3,772.50 | 3,772.50 |
| 2/10/2014 | IN JAN-14 | | 2,202.90 | | | | 2,202.90 | 2,202.90 |
| 3/6/2014 | IN 030614 | 23,461.35 | | | | | 23,461.35 | 23,461.35 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Vendor No.:** | | | | | 0.00 | 23,461.35 | 2,202.90 | 23,619.80 |
| **Vendor Total:** | | | | | | | | 53,056.55 / 53,056.55 |

**Vendor No.: FED01** — FEDEX

| Type | Date | Invoice No. | Due Date | Amount | Amount | Amount |
|---|---|---|---|---|---|---|
| IN | 8/27/2013 | 2-382-59015 | 9/26/2013 | 1,124.26 | 1,124.26 | 1,124.26 |
| | | | **Vendor Total:** | 1,124.26 | 1,124.26 | 1,124.26 |

(FED01 line also reflects 3,772.50 / 0.00 aging columns)

**Vendor No.: FLO05** — FLORIDA LEGISLATIVE CONSULTANT IN

| Type | Date | Invoice No. | Due Date | Amount | Amount | Amount |
|---|---|---|---|---|---|---|
| IN | 6/25/2010 | JUL/10 | 7/25/2010 | 5,000.00 | 5,000.00 | 5,000.00 |
| IN | 7/26/2010 | AUG/10 | 8/25/2010 | 5,000.00 | 5,000.00 | 5,000.00 |
| IN | 8/26/2010 | SEPT/10 | 9/25/2010 | 5,000.00 | 5,000.00 | 5,000.00 |
| IN | 9/24/2010 | OCT/10 | ####### | 5,000.00 | 5,000.00 | 5,000.00 |
| IN | 10/19/2010 | NOV/10 | ####### | 5,000.00 | 5,000.00 | 5,000.00 |
| IN | 11/24/2010 | DEC/10 | ####### | 5,000.00 | 5,000.00 | 5,000.00 |
| IN | 12/30/2010 | JAN/11 | 1/29/2011 | 5,000.00 | 5,000.00 | 5,000.00 |
| IN | 1/25/2011 | FEB/11 | 2/24/2011 | 5,000.00 | 5,000.00 | 5,000.00 |
| IN | 2/24/2011 | MAR/11 | 3/26/2011 | 5,000.00 | 5,000.00 | 5,000.00 |
| IN | 3/25/2011 | APR/11 | 4/24/2011 | 5,000.00 | 5,000.00 | 5,000.00 |
| IN | 4/25/2011 | MAY/11 | 5/25/2011 | 5,000.00 | 5,000.00 | 5,000.00 |
| | | | **Vendor Total:** | 55,000.00 | 55,000.00 | 55,000.00 |

**Vendor No.: GEN01** — GENOVESE JOBLOVE & BATTISTA P.A.

| Type | Date | Invoice No. | Due Date | Amount | Amount | Amount |
|---|---|---|---|---|---|---|
| IN | 11/13/2013 | 76121 | ####### | 30,734.50 | 30,734.50 | 30,734.50 |
| IN | 12/9/2013 | 76489 | ####### | 12,187.00 | 12,187.00 | 12,187.00 |
| IN | 1/9/2014 | 76758 | 1/24/2014 | 19,802.50 | 19,802.50 | 19,802.50 |
| IN | 2/13/2014 | 77178 | 2/28/2014 | 19,170.40 | 19,170.40 | 19,170.40 |
| IN | 3/12/2014 | 77363 | 3/27/2014 | 94,968.39 | 94,968.39 | 94,968.39 |
| | | | **Vendor Total:** | 114,138.79 (19,802.50 / 42,921.50) | 176,862.79 | 176,862.79 |

**Vendor No.: GUG01** — GUGGENHEIM SECURITIES, LLC

| Type | Date | Invoice No. | Due Date | Amount | Amount | Amount |
|---|---|---|---|---|---|---|
| IN | 2/10/2014 | 2014-1B-110 | 3/2/2014 | 43,515.31 | 43,515.31 | 43,515.31 |
| IN | 3/17/2014 | 2014-IB-123 | 4/6/2014 | 10,602.43 | 10,602.43 | 10,602.43 |
| | | | **Vendor Total:** | 10,602.43 / 43,515.31 | 54,117.74 | 54,117.74 |

**Vendor No.: HOU01-CENTER** 0239138-001 — HOUSNER OFFICE SUPPLIES

| Type | Date | Invoice No. | Due Date | Amount | Amount | Amount |
|---|---|---|---|---|---|---|
| IN | 8/12/2013 | | 8/27/2013 | 402.34 | 402.34 | 402.34 |
| | | | **Vendor Total:** | 402.34 | 402.34 | 402.34 |

**Vendor No.: HUD01** — HUDSON & CALLEJA, LLC

| Type | Date | Invoice No. | Due Date | Amount | Amount | Amount |
|---|---|---|---|---|---|---|
| IN | 9/1/2013 | 2477 | 10/1/2013 | 830.22 | 830.22 | 830.22 |
| IN | 9/1/2013 | 2477-A | 10/1/2013 | 90.00 | 90.00 | 90.00 |
| IN | 9/1/2013 | 2479 | 10/1/2013 | 250.00 | 250.00 | 250.00 |
| IN | 9/1/2013 | 2480 | 10/1/2013 | 2,454.00 | 2,454.00 | 2,454.00 |

| Date | Type | Invoice No. | Due Date | Amount | Balance |
|---|---|---|---|---|---|
| 9/1/2013 | IN | 2502 | 10/1/2013 | 1,725.81 | 1,725.81 |
| 10/1/2013 | IN | 2478 | ######## | 70.00 | 70.00 |
| 10/1/2013 | IN | 2545 | ######## | 500.00 | 500.00 |
| 10/1/2013 | IN | 2600 | ######## | 551.00 | 551.00 |
| 10/1/2013 | IN | 2600-A | ######## | 421.00 | 421.00 |
| 10/1/2013 | IN | 2718 | ######## | 107.00 | 107.00 |
| 10/1/2013 | IN | 2718-A | ######## | 82.00 | 82.00 |
| 11/1/2013 | IN | 2796 | 12/1/2013 | 1,584.00 | 1,584.00 |
| 12/1/2013 | IN | 2891 | ######## | 605.20 | 605.20 |
| 1/1/2014 | IN | 3007 | 1/31/2014 | 1,791.00 | 1,791.00 |
| 2/1/2014 | IN | 3203 | 3/3/2014 | 3,627.00 | 3,627.00 |
| 3/10/2014 | IN | 3336 | 4/9/2014 | 17,949.00 | 17,949.00 |

**Vendor Total:** 17,949.00 | 3,627.00 | 1,791.00 | 605.20 | 0.00 | 8,665.03 | 14,688.23 | 32,637.23

**Vendor No.:** JON01  **Vendor Name:** DAVID JONAS

| Date | Type | Invoice No. | Due Date | Amount | Balance |
|---|---|---|---|---|---|
| 3/28/2014 | IN | C031514 | 4/4/2014 | 18,236.00 | 18,236.00 |

**Vendor Total:** 18,236.00 | 0.00 | 0.00 | 18,236.00 | 18,236.00

**Vendor No.:** KAP01  **Vendor Name:** KAPILA & COMPANY

| Date | Type | Invoice No. | Due Date | Amount | Balance |
|---|---|---|---|---|---|
| 8/31/2013 | IN | 97180 | 9/10/2013 | 533.12 | 533.12 |
| 9/30/2013 | IN | 97181 | ######## | 8,414.32 | 8,414.32 |
| 10/31/2013 | IN | 97182 | ######## | 2,105.01 | 2,105.01 |
| 11/30/2013 | IN | 97264 | ######## | 1,446.44 | 1,446.44 |
| 12/31/2013 | IN | 97308 | 1/10/2014 | 1,918.88 | 1,918.88 |
| 1/31/2014 | IN | 97378 | 2/10/2014 | 1,154.80 | 1,154.80 |
| 2/28/2014 | IN | 97423 | 3/10/2014 | 5,963.00 | 5,963.00 |

**Vendor Total:** 5,963.00 | 1,154.80 | 1,918.88 | 0.00 | 12,498.89 | 21,535.57 | 21,535.57

**Vendor No.:** MIA03  **Vendor Name:** MIAMI GAMING VENTURES, LLC.

| Date | Type | Invoice No. | Due Date | Amount | Balance |
|---|---|---|---|---|---|
| 6/1/2012 | IN | 04/24 | 7/1/2012 | 20,000.00 | 20,000.00 |
| 7/2/2012 | IN | 05/24 | 8/1/2012 | 20,000.00 | 20,000.00 |
| 8/1/2012 | IN | 06/24 | 8/31/2012 | 20,000.00 | 20,000.00 |
| 9/3/2012 | IN | 07/24 | 10/3/2012 | 20,000.00 | 20,000.00 |
| ######## | IN | 08/24 | ######## | 20,000.00 | 20,000.00 |
| 10/1/2012 | IN | 09/24 | 11/1/2012 | 20,000.00 | 20,000.00 |
| 11/1/2012 | IN | 010/24 | 12/1/2012 | 20,000.00 | 20,000.00 |
| 12/1/2012 | IN | 10/24 | ######## | 5,000.00 | 5,000.00 |
| ######## | IN | 011/24 | 2/1/2013 | 20,000.00 | 20,000.00 |
| 2/1/2013 | IN | 11/24 | 2/1/2013 | 5,000.00 | 5,000.00 |
| 3/3/2013 | IN | 012/24 | 3/3/2013 | 20,000.00 | 20,000.00 |
| 2/1/2013 | IN | 12/24 | 3/3/2013 | 5,000.00 | 5,000.00 |

| Date | Invoice No. | Type | Inv. Date | Col 1 | Col 2 | Col 3 | Col 4 | Col 5 |
|---|---|---|---|---|---|---|---|---|
| 3/1/2013 | 012/24 - MAR/13 | IN | 3/31/2013 | | | 20,000.00 | 20,000.00 | 20,000.00 |
| 3/1/2013 | 12/24 - MAR/13 | IN | 3/31/2013 | | | 5,000.00 | 5,000.00 | 5,000.00 |
| 4/1/2013 | 014/24 | IN | 5/1/2013 | | | 20,000.00 | 20,000.00 | 20,000.00 |
| 4/1/2013 | 14/24 | IN | 5/1/2013 | | | 5,000.00 | 5,000.00 | 5,000.00 |
| 5/1/2013 | 15/24 | IN | 5/31/2013 | | | 5,000.00 | 5,000.00 | 5,000.00 |
| 8/1/2013 | 18/24 | IN | 8/31/2013 | | | 5,000.00 | 5,000.00 | 5,000.00 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 255,000.00 | 255,000.00 | 255,000.00 |

**Vendor Name:** MIAMI-DADE AVIATION DEPARTMENT FI
**Vendor No.:** MIA05

| Date | Invoice No. | Type | Inv. Date | Col 1 | Col 2 | Col 3 | Col 4 | Col 5 |
|---|---|---|---|---|---|---|---|---|
| 6/19/2012 | 12215260 | IN | 7/19/2012 | | | 10,350.99 | 10,350.99 | 10,350.99 |
| 7/18/2012 | 12217477 | IN | 8/17/2012 | | | 11,645.05 | 11,645.05 | 11,645.05 |
| 9/18/2012 | 12221939 | IN | ######## | | | 13,715.49 | 13,715.49 | 13,715.49 |
| 12/17/2012 | 12228971 | IN | 1/16/2013 | | | 14,087.02 | 14,087.02 | 14,087.02 |
| 3/14/2013 | 13235506 | IN | 4/13/2013 | | | 1,112.57 | 1,112.57 | 1,112.57 |
| 4/9/2013 | 13237700 | IN | 5/9/2013 | | | 868.34 | 868.34 | 868.34 |
| 5/17/2013 | 13240381 | IN | 6/16/2013 | | | 509.38 | 509.38 | 509.38 |
| 8/15/2013 | 13246927 | IN | 9/14/2013 | | | 12,955.76 | 12,955.76 | 12,955.76 |
| 10/16/2013 | 13251505 | IN | ######## | | | 10,469.29 | 10,469.29 | 10,469.29 |
| 11/18/2013 | 13254031 | IN | ######## | | | 52.76 | 52.76 | 52.76 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 75,766.65 | 75,766.65 | 75,766.65 |

**Vendor Name:** MIAMI-DADE AVIATION DEPARTMENT FI
**Vendor No.:** MIA17

| Date | Invoice No. | Type | Inv. Date | Col 1 | Col 2 | Col 3 | Col 4 | Col 5 |
|---|---|---|---|---|---|---|---|---|
| 8/10/2012 | 12219989 | IN | 9/9/2012 | | | 12,087.51 | 12,087.51 | 12,087.51 |
| 10/18/2012 | 12224367 | IN | ######## | | | 13,598.63 | 13,598.63 | 13,598.63 |
| 11/20/2012 | 12226691 | IN | ######## | | | 14,583.75 | 14,583.75 | 14,583.75 |
| 1/16/2013 | 13231149 | IN | 2/15/2013 | | | 14,638.01 | 14,638.01 | 14,638.01 |
| 2/14/2013 | 13232727 | IN | 3/16/2013 | | | 14,638.01 | 14,638.01 | 14,638.01 |
| 3/14/2013 | 13235507 | IN | 4/13/2013 | | | 12,279.64 | 12,279.64 | 12,279.64 |
| 4/9/2013 | 13237701 | IN | 5/9/2013 | | | 12,684.43 | 12,684.43 | 12,684.43 |
| 5/17/2013 | 13240382 | IN | 6/16/2013 | | | 12,404.78 | 12,404.78 | 12,404.78 |
| 7/1/2013 | 13242898 | IN | 7/31/2013 | | | 110,039.63 | 110,039.63 | 110,039.63 |
| 8/1/2013 | 13245270 | IN | 8/31/2013 | | | 110,039.63 | 110,039.63 | 110,039.63 |
| 9/17/2013 | 132499111 | IN | ######## | | | 11,632.27 | 11,632.27 | 11,632.27 |
| 12/11/2013 | 13255859 | IN | 1/10/2014 | | | 30.00 | 30.00 | 30.00 |
| 2/22/2014 | 14258821 | IN | 3/24/2014 | 32,105.85 | | 32,105.85 | 32,105.85 | 32,105.85 |
| **Vendor Total:** | | | | 32,105.85 | 30.00 | 338,626.29 | 370,762.14 | 370,762.14 |

**Vendor Name:** MORRISON BROWN ARGIZ & FARRA, LL
**Vendor No.:** MOR03

| Date | Invoice No. | Type | Inv. Date | Col 1 | Col 2 | Col 3 | Col 4 | Col 5 |
|---|---|---|---|---|---|---|---|---|
| 3/17/2014 | 468371 | IN | 3/24/2014 | 50,000.00 | | 50,000.00 | 50,000.00 | 50,000.00 |
| **Vendor Total:** | | | | 50,000.00 | 0.00 | 0.00 | 50,000.00 | 50,000.00 |

**Vendor Name:** PHILADELPHIA INSURANCE COMPANIES
**Vendor No.:** PHI01

| Date | Type | Doc No. | Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Past Due | Total |
|---|---|---|---|---|---|---|---|---|---|
| 2/18/2014 | IN | 021814 | 15,000.00 | | | | | 0.00 | 15,000.00 |
| | | Vendor Total: | 15,000.00 | | | | | 0.00 | 15,000.00 |

**Vendor No.: SAL02 — Vendor Name: SALAZAR JACKSON, LLP**

| Date | Type | Doc No. | Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Past Due | Total |
|---|---|---|---|---|---|---|---|---|---|
| 9/1/2013 | IN | 1202 | | | | | 20,788.10 | | 20,788.10 |
| 10/1/2013 | IN | 1200 | | | | | 32,609.70 | | 32,609.70 |
| 11/1/2013 | IN | 1201 | | | | | 18,751.80 | | 18,751.80 |
| 11/30/2013 | IN | NOV/13 | | | | 23,713.70 | | | 23,713.70 |
| 1/14/2014 | IN | 1317 | | | 40,374.00 | | | | 40,374.00 |
| 2/13/2014 | IN | 021314 | | 105,080.50 | | | | | 105,080.50 |
| 3/27/2014 | IN | 031414 | 123,875.73 | | | | | | 123,875.73 |
| | | Vendor Total: | 123,875.73 | 105,080.50 | 40,374.00 | 23,713.70 | 72,149.60 | 241,317.80 | 365,193.53 |

| | | | Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Past Due | Total |
|---|---|---|---|---|---|---|---|---|---|
| FTPIER | | CENTER Totals: | 170,807.68 | 392,891.80 | 45,522.70 | 49,842.78 | 914,179.58 | 1,402,436.86 | 1,573,244.54 |

**Vendor No.: ALL01 — Vendor Name: ALL MOBILE VIDEO**

| Date | Type | Doc No. | Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Past Due | Total |
|---|---|---|---|---|---|---|---|---|---|
| 8/1/2013 | IN | 135626 | | | | | 200.00 | | 200.00 |
| | | Vendor Total: | | | | | 200.00 | 200.00 | 200.00 |

**Vendor No.: ALTO2 — Vendor Name: ALTMAN BROTHERS, LLC**

| Date | Type | Doc No. | Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Past Due | Total |
|---|---|---|---|---|---|---|---|---|---|
| 7/22/2013 | IN | 2814 | | | | | 225.00 | | 225.00 |
| | | Vendor Total: | | | | | 225.00 | 225.00 | 225.00 |

**Vendor No.: AMT02-FTP — Vendor Name: AMTOTE INTERNATIONAL, INC.**

| Date | Type | Doc No. | Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Past Due | Total |
|---|---|---|---|---|---|---|---|---|---|
| 8/6/2013 | IN | SGMS-17873 | | | | | 532.09 | | 532.09 |
| 8/6/2013 | IN | SGMS-17873-2 | | | | | 456.74 | | 456.74 |
| 9/3/2013 | IN | SGMS-18024 | | | | | 192.46 | | 192.46 |
| 9/3/2013 | IN | SGMS-18024-2 | | | | | 321.91 | | 321.91 |
| 3/11/2014 | IN | SGMS-18911 | 1,085.73 | | | | | | 1,085.73 |
| 3/11/2014 | IN | SGMS-18911-2 | 134.99 | | | | | | 134.99 |
| | | Vendor Total: | 1,220.72 | | | | 1,503.20 | 1,503.20 | 2,723.92 |

**Vendor No.: AQU01 — Vendor Name: AQUATIC VEGETATION CONTROL, INC.**

| Date | Type | Doc No. | Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Past Due | Total |
|---|---|---|---|---|---|---|---|---|---|
| 7/31/2013 | IN | 204866 | | | | | 222.60 | | 222.60 |
| | | Vendor Total: | | | | | 222.60 | 222.60 | 222.60 |

**Vendor No.: ARR02 — Vendor Name: JUAN ARRASATE**

| Date | Type | Doc No. | Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Past Due | Total |
|---|---|---|---|---|---|---|---|---|---|
| 3/24/2014 | IN | 032914 | 594.96 | | | | | 0.00 | 594.96 |
| | | Vendor Total: | 594.96 | | | | | 0.00 | 594.96 |

**Vendor No.: BIG01 — Vendor Name: BIG APPLE PIZZA & PASTA**

| Date | Type | Doc No. | Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Past Due | Total |
|---|---|---|---|---|---|---|---|---|---|
| 7/28/2013 | IN | 072813 | | | | | 262.00 | | 262.00 |

| Type | Invoice No. | Date | Vendor Name / No. | | | | | Total |
|---|---|---|---|---|---|---|---|---|
| IN | 080413 | 8/4/2013 | | | | | 262.00 | 262.00 |
| IN | 081113 | 8/11/2013 | | | | | 262.00 | 262.00 |
| IN | 081813 | 8/18/2013 | | | | | 262.00 | 262.00 |
| IN | 031414 | 3/14/2014 | | 262.00 | | | | 262.00 |
| | | | Vendor Total: | 262.00 | 0.00 | 0.00 | 1,048.00 | 1,310.00 |
| | | | **Vendor No.: BRI01** | | | | | |
| | | | **Vendor Name: BRINKS INCORPARTED** | | | | | |
| IN | 0763070003 | 7/31/2013 | | | | | 2,206.55 | 2,206.55 |
| IN | 0766290003 | 8/31/2013 | | | | | 1,531.45 | 1,531.45 |
| | | | Vendor Total: | 0.00 | 0.00 | 0.00 | 3,738.00 | 3,738.00 |
| | | | **Vendor No.: CAL01** | | | | | |
| | | | **Vendor Name: CALDER RACE COURSE** | | | | | |
| IN | 072813 | 8/27/2013 | | | | | 1,305.16 | 1,305.16 |
| IN | 081113 | 9/10/2013 | | | | | 2,763.17 | 2,763.17 |
| IN | 081813 | 9/17/2013 | | | | | 2,735.02 | 2,735.02 |
| IN | 080413 | 12/23/2013 | | | | 1,757.60 | | 1,757.60 |
| | | | Vendor Total: | 0.00 | 0.00 | 1,757.60 | 6,803.35 | 8,560.95 |
| | | | **Vendor No.: CIT01** | | | | | |
| | | | **Vendor Name: CITY ELECTRIC SUPPLY COMPANY** | | | | | |
| IN | PSIL/127359 | 8/24/2013 | | | | | 120.62 | 120.62 |
| | | | Vendor Total: | 0.00 | 0.00 | 0.00 | 120.62 | 120.62 |
| | | | **Vendor No.: COK01** | | | | | |
| | | | **Vendor Name: COKE'S STATIONERS** | | | | | |
| IN | 040538 | 8/13/2013 | | | | | 204.69 | 204.69 |
| IN | 040540 | 8/16/2013 | | | | | 80.51 | 80.51 |
| IN | 042738 | 4/13/2014 | | 91.48 | | | | 91.48 |
| | | | Vendor Total: | 91.48 | 0.00 | 0.00 | 285.20 | 376.68 |
| | | | **Vendor No.: COL02** | | | | | |
| | | | **Vendor Name: KYLE COLLETT** | | | | | |
| IN | 032714 | 3/27/2014 | | 70.24 | | | | 70.24 |
| | | | Vendor Total: | 70.24 | 0.00 | 0.00 | 0.00 | 70.24 |
| | | | **Vendor No.: COM01** | | | | | |
| | | | **Vendor Name: COMPLETE RESTAURANT EQUIP. & SUF** | | | | | |
| IN | 12011 | 4/9/2014 | | 309.92 | | | | 309.92 |
| | | | Vendor Total: | 309.92 | 0.00 | 0.00 | 0.00 | 309.92 |
| | | | **Vendor No.: DAD02** | | | | | |
| | | | **Vendor Name: DADE PAPER & BAG CO.** | | | | | |
| IN | 545413 | 8/10/2013 | | | | | 709.06 | 709.06 |
| | | | Vendor Total: | 0.00 | 0.00 | 0.00 | 709.06 | 709.06 |
| | | | **Vendor No.: DAI02-FTP** | | | | | |
| | | | **Vendor Name: DAILY RACING FORM, LLC** | | | | | |
| IN | SCI17769 | 7/14/2013 | | | | | 120.00 | 120.00 |

| Date | Type | Doc No. | Due Date | | | | | Amount | Amount | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/14/2013 | IN | NS274 | 7/21/2013 | | | | | 944.35 | 944.35 | 944.35 |
| 7/14/2013 | IN | NS454 | 7/21/2013 | | | | | 754.85 | 754.85 | 754.85 |
| 7/14/2013 | C | SOI1779 | 7/14/2013 | | | | | -823.50 | -823.50 | -823.50 |
| 7/21/2013 | IN | NS527 | 7/21/2013 | | | | | 944.35 | 944.35 | 944.35 |
| 7/21/2013 | IN | NS640 | 7/28/2013 | | | | | 776.75 | 776.75 | 776.75 |
| 7/21/2013 | IN | SOI1794 | 7/28/2013 | | | | | 120.00 | 120.00 | 120.00 |
| 7/28/2013 | IN | NS1052 | 8/4/2013 | | | | | 748.00 | 748.00 | 748.00 |
| 7/28/2013 | IN | NS709 | 8/4/2013 | | | | | 1,007.45 | 1,007.45 | 1,007.45 |
| 7/28/2013 | C | SOI1804 | 7/28/2013 | | | | | -1,063.70 | -1,063.70 | -1,063.70 |
| 8/4/2013 | IN | NS1175 | 8/11/2013 | | | | | 1,007.45 | 1,007.45 | 1,007.45 |
| 8/4/2013 | IN | NS1296 | 8/11/2013 | | | | | 736.40 | 736.40 | 736.40 |
| 8/4/2013 | IN | SOI1884 | 8/11/2013 | | | | | 240.00 | 240.00 | 240.00 |
| 8/11/2013 | IN | NS1369 | 8/18/2013 | | | | | 1,007.45 | 1,007.45 | 1,007.45 |
| 8/11/2013 | IN | NS1621 | 8/18/2013 | | | | | 767.40 | 767.40 | 767.40 |
| 8/11/2013 | C | SOI1964 | 8/11/2013 | | | | | -1,055.83 | -1,055.83 | -1,055.83 |
| 8/18/2013 | IN | NS1762 | 8/25/2013 | | | | | 1,007.45 | 1,007.45 | 1,007.45 |
| 8/18/2013 | IN | NS1921 | 8/25/2013 | | | | | 756.80 | 756.80 | 756.80 |
| 8/18/2013 | IN | SOI2313 | 8/18/2013 | | | | | -458.39 | -458.39 | -458.39 |
| 8/25/2013 | IN | NS2126 | 9/1/2013 | | | | | 63.10 | 63.10 | 63.10 |
| 8/25/2013 | IN | NS2189 | 9/1/2013 | | | | | 60.00 | 60.00 | 60.00 |
| 8/25/2013 | C | SOI2480 | 8/25/2013 | | | | | -497.09 | -497.09 | -497.09 |
| 3/9/2014 | IN | NS9954 | 3/16/2014 | | 1,266.15 | | | | 1,266.15 | 1,266.15 |
| 3/9/2014 | IN | NS9988 | 3/16/2014 | | 819.25 | | | | 819.25 | 819.25 |
| 3/9/2014 | C | SOI10002 | 3/9/2014 | | -296.46 | | | | -296.46 | -296.46 |
| 3/16/2014 | IN | NS10218 | 3/23/2014 | | 1,266.15 | | | | 1,266.15 | 1,266.15 |
| 3/16/2014 | IN | NS10261 | 3/23/2014 | | 817.25 | | | | 817.25 | 817.25 |
| 3/16/2014 | C | SOI10274 | 3/16/2014 | | -336.41 | | | | -336.41 | -336.41 |
| Vendor Total: | | | | 0.00 | 3,535.93 | 0.00 | 0.00 | 7,163.29 | 10,699.22 | 10,699.22 |

Vendor No.: DAN01    Vendor Name: DANIA JAI-ALAI

| Date | Type | Doc No. | Due Date | | | | | Amount | Amount | Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/25/2013 | C | 052513 | 5/25/2013 | | | | | -432.51 | -432.51 | -432.51 |
| 5/30/2013 | IN | 053013 | 6/29/2013 | | | | | 357.52 | 357.52 | 357.52 |
| 6/6/2013 | IN | 060613 | 7/6/2013 | | | | | 746.51 | 746.51 | 746.51 |
| 6/13/2013 | IN | 061313 | 7/13/2013 | | | | | 873.17 | 873.17 | 873.17 |
| 6/20/2013 | C | 062013 | 6/20/2013 | | | | | -449.76 | -449.76 | -449.76 |
| 6/27/2013 | IN | 062713 | 7/27/2013 | | | | | 879.36 | 879.36 | 879.36 |
| 7/7/2013 | IN | 070713 | 8/6/2013 | | | | | 978.43 | 978.43 | 978.43 |
| 7/14/2013 | IN | 071413 | 8/13/2013 | | | | | 500.35 | 500.35 | 500.35 |
| 7/21/2013 | IN | 072113 | 8/20/2013 | | | | | 2,000.22 | 2,000.22 | 2,000.22 |
| 7/27/2013 | IN | 072713 | 8/26/2013 | | | | | 1,679.42 | 1,679.42 | 1,679.42 |
| 3/8/2014 | C | 030814 | 3/8/2014 | | -1,121.83 | | | | -1,121.83 | -1,121.83 |

| Date | Type | Number | Due Date | | | | | | |
|------|------|--------|----------|--|--|--|--|--|--|
| 3/15/2014 | IN | 031514 | 4/14/2014 | 94.52 | | | | 94.52 | 94.52 |
| 3/22/2014 | C | 032214 | 3/22/2014 | -399.81 | | | | -399.81 | -399.81 |
| **Vendor Total:** | | | | -1,521.64 | 0.00 | 0.00 | 7,132.71 | 5,611.07 | 5,705.59 |
| **Vendor No.: DAY01 — Vendor Name: DAYTONA BEACH KENNEL CLUB** | | | | | | | | | |
| | IN | | | JAN-DEC/12 OUTS | | | | | |
| 6/30/2013 | IN | 080313 | 7/30/2013 | | | | 539.25 | 539.25 | 539.25 |
| 8/3/2013 | IN | 081013 | 9/2/2013 | | | | 1,016.64 | 1,016.64 | 1,016.64 |
| 8/10/2013 | IN | 081813 | 9/9/2013 | | | | 472.49 | 472.49 | 472.49 |
| 8/18/2013 | IN | 081913 | 9/17/2013 | | | | 304.51 | 304.51 | 304.51 |
| 8/19/2013 | C | 081913 | 8/19/2013 | | | | -85.62 | -85.62 | -85.62 |
| 3/22/2014 | C | 032214 | 3/22/2014 | -1,333.48 | | | | -1,333.48 | -1,333.48 |
| **Vendor Total:** | | | | -1,333.48 | 0.00 | 0.00 | 2,247.27 | 913.79 | 913.79 |
| **Vendor No.: DELO3-FTP — Vendor Name: DELTACOM 1058** | | | | | | | | | |
| 7/11/2013 | IN | 070113 | 7/31/2013 | | | | 174.72 | 174.72 | 174.72 |
| 8/1/2013 | IN | 080113 | 8/31/2013 | | | | 187.23 | 187.23 | 187.23 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 361.95 | 361.95 | 361.95 |
| **Vendor No.: DER01 — Vendor Name: DERBY LANE** | | | | | | | | | |
| | IN | | | JAN-DEC/12 OUTS | | | | | |
| 6/30/2013 | IN | | 7/30/2013 | | | | 1,583.16 | 1,583.16 | 1,583.16 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 1,583.16 | 1,583.16 | 1,583.16 |
| **Vendor No.: ECO01 — Vendor Name: ECONOMY CHEMICAL CO.. INC.** | | | | | | | | | |
| 7/30/2013 | IN | 266812 | 8/29/2013 | | | | 239.25 | 239.25 | 239.25 |
| 8/8/2013 | IN | 266971 | 9/7/2013 | | | | 181.18 | 181.18 | 181.18 |
| 8/14/2013 | IN | 267079 | 9/13/2013 | | | | 199.55 | 199.55 | 199.55 |
| 3/19/2014 | IN | 270732 | 4/18/2014 | 182.44 | | | | | 182.44 |
| **Vendor Total:** | | | | 182.44 | 0.00 | 0.00 | 619.98 | 619.98 | 802.42 |
| **Vendor No.: EUR01 — Vendor Name: EURO OFF-TRACK** | | | | | | | | | |
| 8/31/2010 | IN | JUN/AUG10 | 9/30/2010 | | | | 5,574.74 | 5,574.74 | 5,574.74 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 5,574.74 | 5,574.74 | 5,574.74 |
| **Vendor No.: FED01-FTP — Vendor Name: FEDEX** | | | | | | | | | |
| 8/27/2013 | IN | 2-382-67910 | 9/26/2013 | | | | 504.56 | 504.56 | 504.56 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 504.56 | 504.56 | 504.56 |
| **Vendor No.: FER01 — Vendor Name: FERRIN SIGNS** | | | | | | | | | |
| 8/16/2013 | IN | 1308031 | 9/15/2013 | | | | 500.00 | 500.00 | 500.00 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 500.00 | 500.00 | 500.00 |
| **Vendor No.: FLA02 — Vendor Name: FLAGLER RACE - OUTS PURGED** | | | | | | | | | |
| 6/30/2013 | IN | 063013OUTS | 7/30/2013 | | | | 780.61 | 780.61 | 780.61 |

**Vendor No.: FLA03  Vendor Name: FLAGLER DOGS**

| Date | Type | Invoice No. | Amount |
|---|---|---|---|
| 6/2/2013 | IN | 060213 | 369.72 |
| 6/9/2013 | IN | 060913 | 2,027.61 |
| 6/16/2013 | IN | 061613 | 916.93 |
| 6/23/2013 | IN | 062313 | 1,558.51 |
| 6/30/2013 | IN | 063013 | 1,109.96 |
| 7/7/2013 | IN | 070713 | 1,162.18 |
| 7/14/2013 | IN | 071413 | 1,898.66 |
| 7/21/2013 | IN | 072113 | 904.57 |
| 7/28/2013 | C | 072813 | -417.57 |
| 7/30/2013 | C | 073013 | -70.07 |
| 8/4/2013 | IN | 080413 | 1,289.66 |
| 8/11/2013 | IN | 081113 | 895.93 |
| 8/18/2013 | IN | 081813 | 993.77 |
| **Vendor Total:** | | | **12,639.86** |

**Vendor No.: FLO08-FTP  Vendor Name: FLORIDA POWER & LIGHT CO.**

| Date | Type | Invoice No. | Amount |
|---|---|---|---|
| 3/26/2014 | IN | 09566/26MAR14 | 9,164.06 |
| **Vendor Total:** | | | **9,164.06** |

**Vendor No.: GFS07-FTP  Vendor Name: GORDON FOOD SERVICE, INC.**

| Date | Type | Invoice No. | Amount |
|---|---|---|---|
| 7/25/2013 | IN | 152514619 | 1,626.63 |
| 8/1/2013 | IN | 152596993 | 1,608.71 |
| 8/8/2013 | IN | 152679239 | 1,643.49 |
| 8/15/2013 | IN | 152770233 | 1,268.40 |
| 3/27/2014 | IN | 155988760 | 3,282.81 |
| **Vendor Total:** | | | **9,430.04** |

**Vendor No.: GRA04  Vendor Name: GRAINGER**

| Date | Type | Invoice No. | Amount |
|---|---|---|---|
| 3/7/2014 | IN | 9383469203 | 174.05 |
| **Vendor Total:** | | | **174.05** |

**Vendor No.: GUL01  Vendor Name: GULFSTREAM PARK**

| Date | Type | Invoice No. | Amount |
|---|---|---|---|
| 3/30/2013 | IN | 033013 | 11,687.28 |
| 4/5/2013 | IN | 040513 | 9,104.15 |
| 5/12/2013 | IN | 051213 | 2,995.73 |
| 5/18/2013 | IN | 051813 | 16,479.41 |
| 5/26/2013 | IN | 052613 | 117.94 |
| 5/31/2013 | IN | 053113 | 1,193.13 |
| 6/2/2013 | IN | 060213 | 1,659.08 |

| Date | Type | Invoice No. | Due Date | Vendor Name / No. | B1 | B2 | B3 | B4 | B5 | Balance | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/8/2013 | IN | 060813 | | | | | | | 1,909.34 | 1,909.34 | 1,909.34 |
| 6/25/2013 | IN | 062513 | | | | | | | 174.92 | 174.92 | 174.92 |
| 7/7/2013 | IN | 070713 | | | | | | | 3,352.14 | 3,352.14 | 3,352.14 |
| 7/14/2013 | C | 071413 | | | | | | | -1,160.11 | -1,160.11 | -1,160.11 |
| 7/21/2013 | IN | 072113 | | | | | | | 236.64 | 236.64 | 236.64 |
| 7/28/2013 | IN | 072813 | | | | | | | 1,053.46 | 1,053.46 | 1,053.46 |
| 8/11/2013 | IN | 081113 | | | | | | | 1,514.83 | 1,514.83 | 1,514.83 |
| 8/18/2013 | IN | 081813 | | | | | | | 782.18 | 782.18 | 782.18 |
| 12/23/2013 | IN | 080413 | | | | | | 1,582.22 | | 1,582.22 | 1,582.22 |
| | | | | **Vendor Total:** | 0.00 | 0.00 | 0.00 | 1,582.22 | 51,100.12 | 52,682.34 | 52,682.34 |
| 2/25/2014 | C | 062513 - OUTS | | Vendor No.: GUL01-OUTS — GULFSTREAM PARK | | | -6,590.98 | | | -6,590.98 | -6,590.98 |
| | | | | **Vendor Total:** | 0.00 | 0.00 | -6,590.98 | 0.00 | | -6,590.98 | -6,590.98 |
| 9/26/2012 | IN | ####### | | Vendor No.: HOL01  11/1 OUTS — HOLLYWOOD GREYHOUND TRACK | | | | | 948.57 | 948.57 | 948.57 |
| | | | | **Vendor Total:** | | | | 0.00 | 948.57 | 948.57 | 948.57 |
| 10/15/2012 | IN | 0031662-IN | ####### | Vendor No.: INT12 — INTERNATIONAL SOUND CORP. | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 10/22/2011 | IN | 0031698-IN | ####### | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 10/29/2011 | IN | 0031933-IN | 11/5/2011 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 11/5/2011 | IN | 0075230-IN | ####### | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 11/12/2011 | IN | 0075319-IN | ####### | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 11/26/2011 | IN | 0075443-IN | 12/3/2011 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 12/3/2011 | IN | 0075783-IN | ####### | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 12/10/2011 | IN | 0075931-IN | ####### | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 12/17/2011 | IN | 0075972-IN | ####### | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 12/24/2011 | IN | 0076063-IN | ####### | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 12/31/2011 | IN | 0076154-IN | ####### | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 1/7/2012 | IN | 0076263-IN | 1/7/2012 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 1/14/2012 | IN | 0076298-IN | 1/14/2012 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 1/21/2012 | IN | 0073353-IN | 1/21/2012 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 1/28/2012 | IN | 0076426-IN | 1/25/2012 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 2/4/2012 | IN | 0076621-IN | 2/4/2012 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 2/11/2012 | IN | 0076331-IN | 2/11/2012 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 2/18/2012 | IN | 0076739-IN | 2/13/2012 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 2/25/2012 | IN | 0076777-IN | 2/18/2012 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 3/3/2012 | IN | 0078874-IN | 2/25/2012 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 3/3/2012 | IN | 0077054-IN | 3/3/2012 | | | | | | 783.26 | 783.26 | 783.26 |
| 3/10/2012 | IN | 0077055-IN | 3/10/2012 | | | | | | 2,437.05 | 2,437.05 | 2,437.05 |

| Date | Type | Invoice No. | Amount | Amount | Amount |
|---|---|---|---|---|---|
| 3/10/2012 | IN | 0077158-IN | 1,515.00 | 1,515.00 | 1,515.00 |
| 3/10/2012 | IN | 0077159-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 3/17/2012 | IN | 0072263-IN | 1,521.63 | 1,521.63 | 1,521.63 |
| 3/17/2012 | IN | 0077254-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 3/24/2012 | IN | 0077358-IN | 1,515.00 | 1,515.00 | 1,515.00 |
| 3/24/2012 | IN | 0077359-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 3/31/2012 | IN | 0077459-IN | 1,250.00 | 1,250.00 | 1,250.00 |
| 4/7/2012 | IN | 0075509-IN | 1,780.00 | 1,780.00 | 1,780.00 |
| 4/7/2012 | IN | 0077510-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 4/14/2012 | IN | 0077603-IN | 1,212.00 | 1,212.00 | 1,212.00 |
| 4/14/2012 | IN | 0076804-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 4/21/2012 | IN | 0077698-IN | 1,250.00 | 1,250.00 | 1,250.00 |
| 4/21/2012 | IN | 0077699-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 4/28/2012 | IN | 0077860-IN | 1,256.63 | 1,256.63 | 1,256.63 |
| 4/28/2012 | IN | 0077861-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 5/5/2012 | IN | 0077983-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 5/12/2012 | IN | 0078086-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 5/19/2012 | IN | 0078121-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 8/4/2012 | IN | 0079373-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 8/11/2012 | IN | 0079409-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| **Vendor Total:** | | | **92,506.17** | **92,506.17** | **92,506.17** |

Vendor No.: INT12-FTP

Vendor Name: INTERNATIONAL SOUND CORP.

| Date | Type | Invoice No. | Amount | Amount | Amount |
|---|---|---|---|---|---|
| 3/8/2012 | IN | 0077090-IN | 701.75 | 701.75 | 701.75 |
| 3/31/2012 | IN | 0077460-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 5/28/2012 | IN | 0078240-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 6/2/2012 | IN | 0078416-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 6/9/2012 | IN | 0078547-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 6/16/2012 | IN | 0078562-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 6/23/2012 | IN | 0078882-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 6/30/2012 | IN | 0078777-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 7/7/2012 | IN | 0078897-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 7/14/2012 | IN | 0079027-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 7/21/2012 | IN | 0079112-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 7/28/2012 | IN | 0079212-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 8/25/2012 | IN | 0079686-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 7/13/2013 | IN | 0084579-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 7/20/2013 | IN | 0084675-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 7/27/2013 | IN | 0084828-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 8/3/2013 | IN | 0084883-IN | 2,437.05 | 2,437.05 | 2,437.05 |
| 8/10/2013 | IN | 0084981-IN | 2,437.05 | 2,437.05 | 2,437.05 |

0.00    0.00    0.00    0.00    0.00

| Date | Ty | Invoice No. | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 8/17/2013 | IN | 0085132-IN | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 8/24/2013 | IN | 0085167-IN | | | | 2,437.05 | 2,437.05 | 2,437.05 |
| 3/8/2014 | IN | 0088072-IN | | | 1,356.00 | | 1,356.00 | 1,356.00 |
| 3/8/2014 | IN | 0088073-IN | | | 2,437.05 | | 2,437.05 | 2,437.05 |
| 3/22/2014 | IN | 0088166-IN | | | 1,356.00 | | 1,356.00 | 1,356.00 |
| 3/15/2014 | IN | 0088167-IN | | | 2,437.05 | | 2,437.05 | 2,437.05 |
| **Vendor Total:** | | | 0.00 | 0.00 | 7,586.10 | 47,005.70 | 54,591.80 | 54,591.90 |

Vendor No.: JAC01  Vendor Name: JACKSONVILLE GREYHOUND RACING

| Date | Ty | Invoice No. | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7/13/2013 | C | 071313 | | | | -1,100.00 | -1,100.00 | -1,100.00 |
| 7/31/2013 | IN | 073113 | | | | 397.70 | 397.70 | 397.70 |
| 8/4/2013 | IN | 080413 | | | | 2,666.30 | 2,666.30 | 2,666.30 |
| 8/11/2013 | IN | 081113 | | | | 1,027.72 | 1,027.72 | 1,027.72 |
| 8/18/2013 | IN | 081813 | | | | 751.45 | 751.45 | 751.45 |
| 8/19/2013 | IN | 081913 | | | | 270.73 | 270.73 | 270.73 |
| **Vendor Total:** | | | 0.00 | 0.00 | 0.00 | 4,013.90 | 4,013.90 | 4,013.90 |

Vendor No.: JTL01  Vendor Name: JJ TAYLOR DISTRIBUTING FLORIDA, INC

| Date | Ty | Invoice No. | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 4/3/2014 | IN | 10160424 | | 391.60 | | | 391.60 | 391.60 |
| **Vendor Total:** | | | 0.00 | 391.60 | 0.00 | 0.00 | 391.60 | 391.60 |

Vendor No.: KAS01  Vendor Name: KASPER ELECTRICAL, INC.

| Date | Ty | Invoice No. | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 8/25/2013 | IN | 15536 | | | 316.00 | | 316.00 | 316.00 |
| **Vendor Total:** | | | 0.00 | 0.00 | 316.00 | 0.00 | 316.00 | 316.00 |

Vendor No.: MAR01  Vendor Name: MARDI GRAS RACETRACK & GAMING CI

| Date | Ty | Invoice No. | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7/30/2013 | IN | JAN-DEC/12 OUTS | | | | 1,211.44 | 1,211.44 | 1,211.44 |
| **Vendor Total:** | | | 0.00 | 0.00 | 0.00 | 1,211.44 | 1,211.44 | 1,211.44 |

Vendor No.: MOS01  Vendor Name: MOSELEY OUTDOOR ADVERTISING

| Date | Ty | Invoice No. | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 10/20/2010 | IN | 6958 | | | | 1,200.00 | 1,200.00 | 1,200.00 |
| **Vendor Total:** | | | 0.00 | 0.00 | 0.00 | 1,200.00 | 1,200.00 | 1,200.00 |

Vendor No.: NAP01  Vendor Name: NAPLES KC

| Date | Ty | Invoice No. | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6/4/2013 | IN | 050513 | | | | 1,204.45 | 1,204.45 | 1,204.45 |
| 6/11/2013 | IN | 051213 | | | | 2,032.02 | 2,032.02 | 2,032.02 |
| 6/18/2013 | IN | 051913 | | | | 1,929.45 | 1,929.45 | 1,929.45 |
| 6/25/2013 | IN | 052613 | | | | 1,995.77 | 1,995.77 | 1,995.77 |
| 6/26/2013 | IN | 052713 | | | | 367.69 | 367.69 | 367.69 |
| 6/30/2013 | IN | JAN-DEC/12 OUTS | | | | 1,037.10 | 1,037.10 | 1,037.10 |
| **Vendor Total:** | | | 0.00 | 0.00 | 0.00 | 8,566.48 | 8,566.48 | 8,566.48 |

| Date | Type | Invoice No. | Due Date | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Vendor No.:** NAS01-FTP | | | **Vendor Name:** NASRIN | | | | | |
| 8/1/2013 | IN | NASRIN9329 | | 0.00 | 0.00 | 1,391.38 | 1,391.38 | 1,391.38 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 1,391.38 | 1,391.38 | 1,391.38 |
| **Vendor No.:** NES01 | | | **Vendor Name:** NESTLE PURE LIFE DIRECT | | | | | |
| 8/24/2013 | IN | 03H8468001145 | 9/23/2013 | 0.00 | 0.00 | 167.90 | 167.90 | 167.90 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 167.90 | 167.90 | 167.90 |
| **Vendor No.:** OCE01 | | | **Vendor Name:** OCEANSIDE COMMUNICATIONS, INC. | | | | | |
| 6/14/2013 | IN | 2866 | | | | 275.00 | 275.00 | 275.00 |
| 8/6/2013 | IN | 2943 | | | | 112.50 | 112.50 | 112.50 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 387.50 | 387.50 | 387.50 |
| **Vendor No.:** ONL01 | | | **Vendor Name:** ONLINERACING | | | | | |
| 11/1/2010 | IN | 090339 | 12/1/2010 | 0.00 | 0.00 | 3,663.96 | 3,663.96 | 3,663.96 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 3,663.96 | 3,663.96 | 3,663.96 |
| **Vendor No.:** PEP02 | | | **Vendor Name:** PEPSI-COLA - 7054243 | | | | | |
| 8/19/2013 | IN | 24504901 | 9/18/2013 | 0.00 | 0.00 | 457.50 | 457.50 | 457.50 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 457.50 | 457.50 | 457.50 |
| **Vendor No.:** PRA01 | | | **Vendor Name:** PRAXAIR DISTRIBUTION SE, LLC | | | | | |
| 7/31/2013 | IN | PJ02368112 | 8/30/2013 | | | 178.00 | 178.00 | 178.00 |
| 8/9/2013 | IN | PJ02376502 | 9/8/2013 | | | 186.51 | 186.51 | 186.51 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 364.51 | 364.51 | 364.51 |
| **Vendor No.:** PUR01 | | | **Vendor Name:** PURCHASE POWER | | | | | |
| 8/11/2013 | IN | 081113 | 9/10/2013 | 0.00 | 0.00 | 1.80 | 1.80 | 1.80 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 1.80 | 1.80 | 1.80 |
| **Vendor No.:** ROB02-FTP | | | **Vendor Name:** ROBERTS COMMUNICATIONS NETWORK | | | | | |
| 7/31/2013 | IN | 1307A-1871 | 8/7/2013 | | | 3,350.00 | 3,350.00 | 3,350.00 |
| 8/1/2013 | IN | RC000014523 | 8/8/2013 | | | 500.00 | 500.00 | 500.00 |
| 8/31/2013 | IN | 1308A-1791 | 9/7/2013 | | | 3,350.00 | 3,350.00 | 3,350.00 |
| 2/28/2014 | IN | 1402A-2443 | 3/7/2014 | | 3,625.00 | | 3,625.00 | 3,625.00 |
| **Vendor Total:** | | | | 0.00 | 3,625.00 | 7,200.00 | 10,825.00 | 10,825.00 |
| **Vendor No.:** SOU01 | | | **Vendor Name:** SOUTHERN EAGLE DISTRIBUTING, INC. | | | | | |
| 3/27/2014 | IN | 14206111 | 4/3/2014 | 812.53 | 0.00 | 0.00 | 812.53 | 812.53 |
| **Vendor Total:** | | | | 812.53 | 0.00 | 0.00 | 812.53 | 812.53 |
| **Vendor No.:** SOU05-FTP | | | **Vendor Name:** SOUTHERN WINE & SPIRITS | | | | | |
| 3/27/2014 | IN | 3868073 | 4/6/2014 | 824.96 | | | | 824.96 |

| Date | Type | Doc No. | Due Date | C1 | C2 | C3 | C4 | C5 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Vendor Total:** | | | | 824.96 | 0.00 | 0.00 | 0.00 | 0.00 | 824.96 |

**Vendor No.: SOU06 — Vendor Name: SOUTHERN LANDSCAPING & LAWNS**

| Date | Type | Doc No. | Due Date | C1 | C2 | C3 | C4 | C5 | Total |
|---|---|---|---|---|---|---|---|---|---|
| 7/31/2013 | IN | 5023 | 8/30/2013 | | | | | 1,100.00 | 1,100.00 |
| 9/1/2013 | IN | 5024 | 10/1/2013 | | | | | 1,100.00 | 1,100.00 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 2,200.00 | 2,200.00 |

**Vendor No.: SPO03-FTP — Vendor Name: SPORTECH, INC.**

| Date | Type | Doc No. | Due Date | C1 | C2 | C3 | C4 | C5 | Total |
|---|---|---|---|---|---|---|---|---|---|
| 8/19/2013 | IN | 17469 | 6/26/2013 | | | | | 1,925.47 | 1,925.47 |
| 6/21/2013 | IN | 17688 | 6/28/2013 | | | | | 1,918.60 | 1,918.60 |
| 6/27/2013 | IN | 17899 | 7/4/2013 | | | | | 1,917.98 | 1,917.98 |
| 7/8/2013 | IN | 18110 | 7/15/2013 | | | | | 1,915.24 | 1,915.24 |
| 7/11/2013 | IN | 18362 | 7/18/2013 | | | | | 1,920.79 | 1,920.79 |
| 7/18/2013 | IN | 18576 | 7/25/2013 | | | | | 1,901.40 | 1,901.40 |
| 7/24/2013 | IN | 18790 | 7/31/2013 | | | | | 1,907.14 | 1,907.14 |
| 8/5/2013 | IN | 19038 | 8/12/2013 | | | | | 1,902.06 | 1,902.06 |
| 8/6/2013 | IN | 19251 | 8/15/2013 | | | | | 1,911.59 | 1,911.59 |
| 8/16/2013 | IN | 19557 | 8/23/2013 | | | | | 1,940.13 | 1,940.13 |
| 8/22/2013 | IN | 19767 | 8/29/2013 | | | | | 1,910.25 | 1,910.25 |
| 8/28/2013 | IN | 19987 | 9/4/2013 | | | | | 547.87 | 547.87 |
| 12/3/2013 | IN | 23515 | ######## | | | | | 1,901.63 | 1,901.63 |
| 12/4/2013 | IN | 23734 | ######## | | | | | 1,897.62 | 1,897.62 |
| 12/11/2013 | IN | 23939 | ######## | | | | | 1,904.18 | 1,904.18 |
| 12/18/2013 | IN | 24145 | ######## | | | | | 1,904.11 | 1,904.11 |
| 12/21/2013 | IN | 23277 | ######## | | | | 1,897.98 | | 1,897.98 |
| 1/2/2014 | IN | 24360 | 1/9/2014 | | | | 1,899.95 | | 1,899.95 |
| 1/6/2014 | IN | 24563 | 1/13/2014 | | | | 1,898.74 | | 1,898.74 |
| 1/14/2014 | IN | 24959 | 1/21/2014 | | | | 1,927.99 | | 1,927.99 |
| 1/22/2014 | IN | 25300 | 1/29/2014 | | | 1,906.03 | | | 1,906.03 |
| 1/27/2014 | IN | 25517 | 2/3/2014 | | | 1,912.62 | | | 1,912.62 |
| 1/31/2014 | IN | 25733 | 2/7/2014 | | | 1,932.70 | | | 1,932.70 |
| 2/14/2014 | IN | 26009 | 2/21/2014 | | | 1,915.22 | | | 1,915.22 |
| 2/18/2014 | IN | 26226 | 2/25/2014 | | | 1,914.03 | | | 1,914.03 |
| 2/19/2014 | IN | 26433 | 2/26/2014 | | 27.23 | | | | 27.23 |
| 2/21/2014 | IN | 26487 | 2/28/2014 | | 1,907.88 | | | | 1,907.88 |
| 2/27/2014 | IN | 26700 | 3/6/2014 | | 1,914.06 | | | | 1,914.06 |
| 3/6/2014 | IN | 26964 | 3/13/2014 | | 1,923.98 | | | | 1,923.98 |
| 3/12/2014 | IN | 27179 | 3/19/2014 | | 1,924.74 | | | | 1,924.74 |
| 3/19/2014 | IN | 27502 | 3/26/2014 | | 1,925.69 | | | | 1,925.69 |
| **Vendor Total:** | | | | 0.00 | 9,623.58 | 9,580.60 | 7,624.66 | 29,226.06 | 56,054.90 |

| Ref / Invoice | Type | Inv Date | Due Date | Vendor Name | | | | | Amount | Amount | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Vendor No.:** STA03-FTP | | | | | | | | | | | |
| 2013 | IN | 3/16/2014 | 3/23/2014 | STATE OF FLORIDA | | | | 0.00 | 34,218.45 | 34,218.45 | 34,218.45 |
| | | | | **Vendor Total:** | 0.00 | 0.00 | 0.00 | 0.00 | 34,218.45 | 34,218.45 | 34,218.45 |
| **Vendor No.:** STJ01 | | | | | | | | | | | |
| JAN-DEC/12 OUTS | IN | 6/30/2013 | 7/30/2013 | ST. JOHN'S | | | | 1,723.50 | 1,723.50 | 1,723.50 | 1,723.50 |
| | | | | **Vendor Total:** | 0.00 | 0.00 | 0.00 | 1,723.50 | 1,723.50 | 1,723.50 | 1,723.50 |
| **Vendor No.:** SWI01 | | | | SWISHER | | | | | | | |
| 8001380123 | IN | 7/24/2013 | 8/23/2013 | | | | | 144.41 | 144.41 | 144.41 | 144.41 |
| 8001409112 | IN | 7/31/2013 | 8/30/2013 | | | | | 156.75 | 156.75 | 156.75 | 156.75 |
| 8001428359 | IN | 8/7/2013 | 9/6/2013 | | | | | 156.75 | 156.75 | 156.75 | 156.75 |
| 8001450234 | IN | 8/14/2013 | 9/13/2013 | | | | | 144.41 | 144.41 | 144.41 | 144.41 |
| | | | | **Vendor Total:** | 0.00 | 0.00 | 0.00 | 602.32 | 602.32 | 602.32 | 602.32 |
| **Vendor No.:** TAM01 | | | | TAMPA BAY DOWN | | | | | | | |
| 060213 | IN | 6/2/2013 | 7/2/2013 | | | | | 7,135.35 | 7,135.35 | 7,135.35 | 7,135.35 |
| 060913 | IN | 6/9/2013 | 7/9/2013 | | | | | 23,445.84 | 23,445.84 | 23,445.84 | 23,445.84 |
| 061613 | IN | 6/16/2013 | 7/16/2013 | | | | | 11,125.97 | 11,125.97 | 11,125.97 | 11,125.97 |
| 062313 | IN | 6/23/2013 | 7/23/2013 | | | | | 14,922.96 | 14,922.96 | 14,922.96 | 14,922.96 |
| 063013 | IN | 6/30/2013 | 7/30/2013 | | | | | 12,208.48 | 12,208.48 | 12,208.48 | 12,208.48 |
| 063013EXCH | C | 6/30/2013 | 6/30/2013 | | | | | -26,172.92 | -26,172.92 | -26,172.92 | -26,172.92 |
| 070713 | IN | 7/7/2013 | 8/6/2013 | | | | | 14,119.27 | 14,119.27 | 14,119.27 | 14,119.27 |
| 071413 | IN | 7/14/2013 | 8/13/2013 | | | | | 14,388.28 | 14,388.28 | 14,388.28 | 14,388.28 |
| 072113 | IN | 7/21/2013 | 8/20/2013 | | | | | 19,180.54 | 19,180.54 | 19,180.54 | 19,180.54 |
| 072813 | IN | 7/28/2013 | 8/27/2013 | | | | | 17,045.96 | 17,045.96 | 17,045.96 | 17,045.96 |
| 073113 | IN | 7/31/2013 | 8/30/2013 | | | | | 2,619.44 | 2,619.44 | 2,619.44 | 2,619.44 |
| 080413 | IN | 8/4/2013 | 9/3/2013 | | | | | 11,588.40 | 11,588.40 | 11,588.40 | 11,588.40 |
| 081113 | IN | 8/11/2013 | 9/10/2013 | | | | | 20,311.41 | 20,311.41 | 20,311.41 | 20,311.41 |
| 081813 | IN | 8/18/2013 | 9/17/2013 | | | | | 20,218.52 | 20,218.52 | 20,218.52 | 20,218.52 |
| 081913 | IN | 8/19/2013 | 9/18/2013 | | | | | 2,164.63 | 2,164.63 | 2,164.63 | 2,164.63 |
| 063013/OUTS | IN | 8/29/2013 | 9/28/2013 | | | | | 8,175.01 | 8,175.01 | 8,175.01 | 8,175.01 |
| | | | | **Vendor Total:** | 0.00 | 0.00 | 0.00 | 172,477.14 | 172,477.14 | 172,477.14 | 172,477.14 |
| **Vendor No.:** TAM03 | | | | ST. PETERSBURGH KENNEL CLUB or DE | | | | | | | |
| JAN-DEC/12 OUTS | IN | 6/30/2013 | 7/30/2013 | | | | | 1,374.19 | 1,374.19 | 1,374.19 | 1,374.19 |
| 080313 | IN | 8/3/2013 | 9/2/2013 | | | | | 2,320.67 | 2,320.67 | 2,320.67 | 2,320.67 |
| 081013 | IN | 8/10/2013 | 9/9/2013 | | | | | 2,212.55 | 2,212.55 | 2,212.55 | 2,212.55 |
| 081813 | IN | 8/18/2013 | 9/17/2013 | | | | | 1,287.01 | 1,287.01 | 1,287.01 | 1,287.01 |
| 081913 | IN | 8/19/2013 | 9/18/2013 | | | | | 99.87 | 99.87 | 99.87 | 99.87 |
| | | | | **Vendor Total:** | 0.00 | 0.00 | 0.00 | 7,294.29 | 7,294.29 | 7,294.29 | 7,294.29 |

| Vendor No. | Type | Invoice | Date | Vendor Name | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **THED01** | | | | | | | | | |
| 7/31/2013 | IN | D0021061 | 8/30/2013 | | | 0.00 | 250.00 | 250.00 | 250.00 |
| 8/31/2013 | IN | D0021218 | 9/30/2013 | | | 0.00 | 250.00 | 250.00 | 250.00 |
| Vendor Total: | | | | | | 0.00 | 500.00 | 500.00 | 500.00 |
| | | | | Vendor Name: | THE NEW YORK RACING ASSOCIATION | | | | |
| **THY01** | | | | | | | | | |
| 8/1/2013 | IN | 709008 | 8/31/2013 | | | 0.00 | 1,024.54 | 1,024.54 | 1,024.54 |
| Vendor Total: | | | | | | 0.00 | 1,024.54 | 1,024.54 | 1,024.54 |
| | | | | Vendor Name: | THYSSENKRUPP ELEVATOR | | | | |
| **TRO02** | | | | | | | | | |
| 3/28/2014 | IN | 010414OUTS | 4/25/2014 | | 1,372.95 | 0.00 | 1,372.95 | 1,372.95 | 1,372.95 |
| Vendor Total: | | | | | 1,372.95 | 0.00 | 1,372.95 | | |
| | | | | Vendor Name: | TROPICAL PARK | | | | |
| **TYCO1-FTP** | | | | | | | | | |
| 3/8/2014 | IN | 213357281 | 4/7/2014 | | | 0.00 | 450.88 | 450.88 | 450.88 |
| 3/8/2014 | IN | 213357282 | 4/7/2014 | | | 0.00 | 450.88 | 450.88 | 450.88 |
| Vendor Total: | | | | | | 0.00 | 901.76 | 901.76 | 901.76 |
| | | | | Vendor Name: | TYCO INTEGRATED SECURITY LLC | | | | |
| **UNI09-FTP** | | | | | | | | | |
| 5/3/2013 | IN | 14143 | 5/10/2013 | | | 0.00 | 513.14 | 513.14 | 513.14 |
| 5/5/2013 | IN | 14381 | 5/12/2013 | | | 0.00 | 413.13 | 413.13 | 413.13 |
| 6/5/2013 | IN | 14632 | 6/12/2013 | | | 0.00 | 472.32 | 472.32 | 472.32 |
| 7/5/2013 | IN | 14908 | 7/12/2013 | | | 0.00 | 585.48 | 585.48 | 585.48 |
| 8/5/2013 | IN | 15193 | 8/12/2013 | | | 0.00 | 445.01 | 445.01 | 445.01 |
| 9/6/2013 | IN | 15450 | 9/13/2013 | | | 0.00 | 446.38 | 446.38 | 446.38 |
| Vendor Total: | | | | | | 0.00 | 2,875.46 | 2,875.46 | 2,875.46 |
| | | | | Vendor Name: | UNITED TOTE COMPANY | | | | |
| **USD01** | | | | | | | | | |
| 3/24/2014 | IN | 032814 | 4/23/2014 | | | 0.00 | 43.05 | 43.05 | 43.05 |
| Vendor Total: | | | | | | 0.00 | 43.05 | 43.05 | 43.05 |
| | | | | Vendor Name: | US DEPARTMENT OF EDUCATION | | | | |
| **WES01** | | | | | | | | | |
| 6/9/2013 | IN | 060913 | 7/9/2013 | | | | | 2,930.67 | 2,930.67 |
| 6/16/2013 | IN | 061613 | 7/16/2013 | | | | | 8,387.75 | 8,387.75 |
| 6/18/2013 | C | 063113ADJ | 7/18/2013 | | | | | 154.18 | 154.18 |
| 6/23/2013 | C | 062313 | 6/23/2013 | | | | | -193.16 | -193.16 |
| 6/30/2013 | IN | 063013 | 7/30/2013 | | | | | 7,172.73 | 7,172.73 |
| 6/30/2013 | C | 063013-ITW | 6/30/2013 | | | | | -5,158.10 | -5,158.10 |
| 6/30/2013 | IN | JAN-DEC/12 OUTS | 7/30/2013 | | | | | 7,021.20 | 7,021.20 |
| 7/7/2013 | IN | 070713 | 8/6/2013 | | | | | 430.47 | 430.47 |
| 7/14/2013 | IN | 071413 | 8/13/2013 | | | | | 5,421.64 | 5,421.64 |
| 7/21/2013 | IN | 072113 | 8/20/2013 | | | | | 8,570.65 | 8,570.65 |
| | | | | Vendor Name: | PALM BEACH KENNEL CLUB | | | | |

| Date | Type | Doc No | Date 2 | | | | | | | |
|------|------|--------|--------|---|---|---|---|---|---|---|
| 7/28/2013 | IN | 072813 | 8/27/2013 | | | | | 6,571.43 | 6,571.43 | 6,571.43 |
| 7/31/2013 | IN | 073113 | 8/30/2013 | | | | | 2,596.74 | 2,596.74 | 2,596.74 |
| 8/4/2013 | IN | 080413 | 9/3/2013 | | | | | 5,836.55 | 5,836.55 | 5,836.55 |
| 8/11/2013 | IN | 081113 | 9/10/2013 | | | | | 2,670.33 | 2,670.33 | 2,670.33 |
| 8/18/2013 | IN | 081813 | 9/17/2013 | | | | | 3,346.90 | 3,346.90 | 3,346.90 |
| 8/19/2013 | IN | 081913 | 9/18/2013 | | | | | 526.47 | 526.47 | 526.47 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 0.00 | 56,286.45 | 56,286.45 | 56,286.45 |
| Vendor No.: WIP01 | | | Vendor Name: WIPEOUT PESTS & TERMITES, INC. | | | | | | | |
| 7/16/2013 | IN | 39831 | 8/15/2013 | | | | | 175.73 | 175.73 | 175.73 |
| 7/16/2013 | IN | 39832 | 8/15/2013 | | | | | 101.18 | 101.18 | 101.18 |
| 8/15/2013 | IN | 40456 | 9/14/2013 | | | | | 101.18 | 101.18 | 101.18 |
| 8/15/2013 | IN | 40457 | 9/14/2013 | | | | | 175.73 | 175.73 | 175.73 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 0.00 | 553.82 | 553.82 | 553.82 |
| Vendor No.: YP01 | | | Vendor Name: YP | | | | | | | |
| 8/7/2013 | IN | 080713 | 9/6/2013 | | | | | 318.99 | 318.99 | 318.99 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 0.00 | 318.99 | 318.99 | 318.99 |
| Vendor No.: ZEE01 | | | Vendor Name: ZEE MEDICAL, INC. | | | | | | | |
| 8/19/2013 | IN | 0164169124 | 9/18/2013 | | | | | 117.91 | 117.91 | 117.91 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 0.00 | 117.91 | 117.91 | 117.91 |
| Vendor No.: ZEP01 | | | Vendor Name: ZEP SALES & SERVICE | | | | | | | |
| 8/2/2013 | IN | 9000440805 | 9/1/2013 | | | | | 484.10 | 484.10 | 484.10 |
| 8/8/2013 | C | 80000154503 | 8/8/2013 | | | | | -387.43 | -387.43 | -387.43 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 0.00 | 96.67 | 96.67 | 96.67 |
| FTPIER Totals: | | | | 18,573.33 | 56,954.66 | 2,989.62 | 10,964.48 | 555,910.47 | 626,819.23 | 645,392.56 |
| MIAMI | | | | | | | | | | |
| Vendor No.: A1F03 | | | Vendor Name: A1 FIRE & SECURITY LLC | | | | | | | |
| 7/29/2013 | IN | 145190 | 8/8/2013 | | | | | 252.19 | 252.19 | 252.19 |
| 7/30/2013 | IN | AF145192 | 8/9/2013 | | | | | 308.90 | 308.90 | 308.90 |
| 8/2/2013 | IN | AF145198 | 8/12/2013 | | | | | 685.82 | 685.82 | 685.82 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 0.00 | 1,246.91 | 1,246.91 | 1,248.91 |
| Vendor No.: AME01 | | | Vendor Name: AMERICAN BANKERS INSURANCE COMI | | | | | | | |
| 2/15/2014 | IN | 042614 | 3/17/2014 | | | | | 13,871.00 | 13,871.00 | 13,871.00 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 0.00 | 13,871.00 | 13,871.00 | 13,871.00 |
| Vendor No.: AME12 | | | Vendor Name: AMERICAN GAMING SYSTEMS, LLC. | | | | | | | |
| 7/31/2013 | IN | 14623 | 8/30/2013 | | | | | 228,780.00 | 228,780.00 | 228,780.00 |

| Date | Vendor No. / Code | C | Invoice / Doc No. | Current | Aged | Total |
|---|---|---|---|---|---|---|
| 8/1/2013 | 3786 | | 14990 | | -468.00 | -468.00 |
| 8/31/2013 | | IN | | | 140,220.00 | 140,220.00 |
| Vendor Total: | | | | 0.00 | 368,532.00 | 368,532.00 |
| | AME13 | | | | Vendor Name: AMERICAN GAMING & ELECTRONIC | |
| 8/2/2013 | | IN | 10207228 | | 668.75 | 668.75 |
| 8/6/2013 | | IN | 10207285 | | 549.56 | 549.56 |
| 8/19/2013 | | IN | 10207766 | | 210.26 | 210.26 |
| Vendor Total: | | | | 0.00 | 1,428.57 | 1,428.57 |
| | ANT03 | | | | Vendor Name: ANTE UP PUBLISHING LLC | |
| 1/16/2013 | | IN | 1744 | | 500.00 | 500.00 |
| Vendor Total: | | | | 0.00 | 500.00 | 500.00 |
| | ARC01 | | | | Vendor Name: ARCTICA ICE CREAM | |
| 9/17/2013 | | IN | 50412002 | | 204.00 | 204.00 |
| Vendor Total: | | | | 0.00 | 204.00 | 204.00 |
| | ARI01 | | | | Vendor Name: ARISTOCRAT TECHNOLOGIES, INC. | |
| 6/10/2013 | | IN | 466541 | | 8,346.00 | 8,346.00 |
| 6/10/2013 | | IN | 466542 | | 12,519.00 | 12,519.00 |
| 7/10/2013 | | IN | 470641 | | 8,624.20 | 8,624.20 |
| 7/10/2013 | | IN | 470642 | | 12,936.30 | 12,936.30 |
| 8/9/2013 | | IN | 474873 | | 5,285.80 | 5,285.80 |
| 8/9/2013 | | IN | 474874 | | 7,928.70 | 7,928.70 |
| 3/10/2014 | | IN | 508432 | 8,624.20 | | 8,624.20 |
| 3/10/2014 | | IN | 508433 | 12,936.30 | | 12,936.30 |
| Vendor Total: | | | | 21,560.50 | 55,640.00 | 77,200.50 |
| | AVM01 | | | | Vendor Name: AV-MED INC. - 108294 | |
| 4/23/2014 | | IN | CMM100071572 | 12,450.44 | 0.00 | 12,450.44 |
| Vendor Total: | | | | 12,450.44 | 0.00 | 12,450.44 |
| | AVM02 | | | | Vendor Name: AV-MED INC. - 116146 | |
| 4/23/2014 | | IN | CMM100071528 | 64,825.50 | 0.00 | 64,825.50 |
| Vendor Total: | | | | 64,825.50 | 0.00 | 64,825.50 |
| | AVM03 | | | | Vendor Name: AV-MED HEALTH PLANS | |
| 4/23/2014 | | IN | CMM100071544 | 56,275.49 | 0.00 | 56,275.49 |
| Vendor Total: | | | | 56,275.49 | 0.00 | 56,275.49 |
| | AWA01 | | | | Vendor Name: AWARE DIGITAL, INC. | |

| Date | Invoice No. | Type | Vendor Name | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7/28/2013 | AWDQ1655 | IN | | 0.00 | | | 1,017.43 | 1,017.43 |
| | | | Vendor Total: | 0.00 | 0.00 | 0.00 | 1,017.43 | 1,017.43 |
| | Vendor No.: BAL01 | | BALLY TECHNOLOGIES | | | | | |
| 8/2/2013 | 62870 | IN | | 0.00 | | | 3,668.88 | 3,668.88 |
| 9/19/2013 | 066490 | IN | | 0.00 | | | 14,504.73 | 14,504.73 |
| 9/30/2013 | 068262 | IN | | 0.00 | | | 8,187.34 | 8,187.34 |
| | | | Vendor Total: | 0.00 | 0.00 | 0.00 | 26,360.95 | 26,360.95 |
| | Vendor No.: BET01 | | BETTY BU PARTY RENTALS | | | | | |
| 9/6/2013 | 17549 | IN | | 0.00 | | | 153.40 | 153.40 |
| | | | Vendor Total: | 0.00 | 0.00 | 0.00 | 153.40 | 153.40 |
| | Vendor No.: BRO01 | | BROWARD-NIELSON FOUNTAIN SERVIC | | | | | |
| 9/4/2013 | 113820 | IN | | 0.00 | | | 130.01 | 130.01 |
| | | | Vendor Total: | 0.00 | 0.00 | 0.00 | 130.01 | 130.01 |
| | Vendor No.: CAF01 | | ROWLAND COFFEE ROASTERS DBA CA | | | | | |
| 9/6/2013 | 16264 | IN | | 0.00 | | | 818.40 | 818.40 |
| | | | Vendor Total: | 0.00 | 0.00 | 0.00 | 818.40 | 818.40 |
| | Vendor No.: CAS03 | | CASINO CAFE, INC. | | | | | |
| 9/6/2013 | 43 | IN | | 0.00 | | | 263.15 | 263.15 |
| 9/9/2013 | 44 | IN | | 0.00 | | | 351.00 | 351.00 |
| | | | Vendor Total: | 0.00 | 0.00 | 0.00 | 614.15 | 614.15 |
| | Vendor No.: CHE02 | | CHENEY BROTHERS, INC. | | | | | |
| 7/18/2013 | 01-250173 | IN | | 0.00 | | | 973.70 | 973.70 |
| 8/1/2013 | 01-269394 | IN | | 0.00 | | | 5.00 | 5.00 |
| 8/8/2013 | 01-281812 | IN | | 0.00 | | | 973.70 | 973.70 |
| 8/9/2013 | 01-282589 | IN | | 0.00 | | | 753.95 | 753.95 |
| 8/14/2013 | 01-289898 | IN | | 0.00 | | | 753.90 | 753.90 |
| 8/23/2013 | 01-304415 | IN | | 0.00 | | | 5.00 | 5.00 |
| | | | Vendor Total: | 0.00 | 0.00 | 0.00 | 3,465.25 | 3,465.25 |
| | Vendor No.: CIS02 | | CISCO SYSTEMS CAPITAL CORP. | | | | | |
| 3/9/2014 | 3515817-09793 | IN | | 0.00 | 1,560.15 | 0.00 | 1,560.15 | 1,560.15 |
| | | | Vendor Total: | 0.00 | 1,560.15 | 0.00 | 1,560.15 | 1,560.15 |
| | Vendor No.: CIT08 | | CITY OF MIAMI | | | | | |
| 9/3/2013 | 72231 | IN | | 0.00 | | | 4,458.00 | 4,458.00 |
| | | | Vendor Total: | 0.00 | 0.00 | 0.00 | 4,458.00 | 4,458.00 |

| Vendor No. | | | Vendor Name: | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **CIT11** | | | CITY MAINTENANCE SUPPLY | | | | | | |
| 7/11/2013 | IN | 12027 | | 0.00 | 0.00 | 0.00 | 118.74 | 118.74 | 118.74 |
| 8/1/2013 | IN | 13734 | | | | | 913.46 | 913.46 | 913.46 |
| 8/13/2013 | IN | 14006 | | | | | 437.33 | 437.33 | 437.33 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 1,469.53 | 1,469.53 | 1,469.53 |
| **COM13** | | | COMMERCIAL FLOORING SOLUTIONS | | | | | | |
| 7/11/2013 | IN | 345212 | | 0.00 | 0.00 | 0.00 | 3,562.00 | 3,562.00 | 3,562.00 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 3,562.00 | 3,562.00 | 3,562.00 |
| **CUM01** | | | CUMMINS-ALLISON CORP. | | | | | | |
| 3/7/2014 | IN | 12121971 | | 17,618.62 | 0.00 | 0.00 | 17,618.62 | 17,618.62 | 17,618.62 |
| Vendor Total: | | | | 17,618.62 | 0.00 | 0.00 | 0.00 | 0.00 | 17,618.62 |
| **DAD03** | | | DADELAND POOL | | | | | | |
| 8/16/2013 | IN | 60179 | | 0.00 | 0.00 | 0.00 | 1,920.00 | 1,920.00 | 1,920.00 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 1,920.00 | 1,920.00 | 1,920.00 |
| **DAH01** | | | DAHTA DESIGN CONSTRUCTION CO. | | | | | | |
| 7/30/2013 | IN | 15 | | 0.00 | 0.00 | 0.00 | 150.00 | 150.00 | 150.00 |
| 8/6/2013 | IN | 16 | | | | | 150.00 | 150.00 | 150.00 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 300.00 | 300.00 | 300.00 |
| **DAI02** | | | DAILY RACING FORM, LLC | | | | | | |
| 7/21/2013 | IN | NS641 | | 0.00 | 0.00 | 0.00 | 89.60 | 89.60 | 89.60 |
| 7/28/2013 | IN | NS1053 | | | | | 70.40 | 70.40 | 70.40 |
| 8/4/2013 | IN | NS1297 | | | | | 59.20 | 59.20 | 59.20 |
| 8/11/2013 | IN | NS1622 | | | | | 140.80 | 140.80 | 140.80 |
| 8/18/2013 | IN | NS1922 | | | | | 148.80 | 148.80 | 148.80 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 508.80 | 508.80 | 508.80 |
| **DIG01** | | | DIGIDEAL CORPORATION | | | | | | |
| 7/31/2013 | IN | 0501617-IN | | 0.00 | 0.00 | 0.00 | 2,120.00 | 2,120.00 | 2,120.00 |
| 8/31/2013 | IN | 0501657-IN | | | | | 1,299.35 | 1,299.35 | 1,299.35 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 3,419.35 | 3,419.35 | 3,419.35 |
| **DOU01** | | | DOUGLAS ORR PLUMBING, INC. | | | | | | |
| 9/9/2013 | IN | 557982 | | 0.00 | 0.00 | 0.00 | 203.00 | 203.00 | 203.00 |
| 8/15/2013 | IN | 412468 | | | | | 141.00 | 141.00 | 141.00 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 344.00 | 344.00 | 344.00 |
| **DYN01** | | | DYNAMIC ADVERTISING AND DESIGN | | | | | | |
| 8/6/2013 | IN | 2016 | | 0.00 | 0.00 | 0.00 | 650.00 | 650.00 | 650.00 |

| Reference | Type | Date | Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Total | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Vendor Total:** | | | 650.00 | 0.00 | 0.00 | 0.00 | 0.00 | 650.00 | 650.00 |
| **Vendor No.: EDM02 — EDMUNDS DIRECT MAIL, INC.** | | | | | | | | | |
| 062013058-52 | IN | 6/17/2013 | | | | | 995.26 | 995.26 | 995.26 |
| 032014039-92 | IN | 3/19/2014 | | 15,234.72 | | | | 15,234.72 | 15,234.72 |
| 032014065-110 | IN | 3/20/2014 | | 325.00 | | | | 325.00 | 325.00 |
| **Vendor Total:** | | | 0.00 | 15,559.72 | 0.00 | 0.00 | 995.26 | 16,554.98 | 16,554.98 |
| **Vendor No.: EUR01 — EURO OFF-TRACK** | | | | | | | | | |
| 113010 | IN | 1/30/2011 | | | | | 3,080.20 | 3,080.20 | 3,080.20 |
| **Vendor Total:** | | | 0.00 | 0.00 | 0.00 | 0.00 | 3,080.20 | 3,080.20 | 3,080.20 |
| **Vendor No.: FLO08 — FLORIDA POWER & LIGHT CO.** | | | | | | | | | |
| 12442-99168/13MAR14 | IN | 3/23/2014 | | 37,391.65 | | | | 37,391.65 | 37,391.65 |
| 28365-50285/13MAR14 | IN | 3/23/2014 | | 1,138.09 | | | | 1,138.09 | 1,138.09 |
| 81612-20267/13MAR14 | IN | 3/23/2014 | | 14,885.13 | | | | 14,885.13 | 14,885.13 |
| **Vendor Total:** | | | 0.00 | 53,414.87 | 0.00 | 0.00 | 0.00 | 53,414.87 | 53,414.87 |
| **Vendor No.: FLO19 — FLORIDA LEMARK CORPORATION** | | | | | | | | | |
| 58460 | IN | 6/22/2013 | | | | | 2,160.00 | 2,160.00 | 2,160.00 |
| 56503 | IN | 6/29/2013 | | | | | 1,080.00 | 1,080.00 | 1,080.00 |
| 56534 | IN | 7/20/2013 | | | | | 3,240.00 | 3,240.00 | 3,240.00 |
| 56579 | IN | 8/10/2013 | | | | | 2,160.00 | 2,160.00 | 2,160.00 |
| 56695 | IN | 9/22/2013 | | | | | 2,403.00 | 2,403.00 | 2,403.00 |
| 56728 | IN | 9/27/2013 | | | | | 1,080.00 | 1,080.00 | 1,080.00 |
| 57157 | IN | 4/18/2014 | | 1,094.00 | | | | 1,094.00 | 1,094.00 |
| **Vendor Total:** | | | 0.00 | 1,094.00 | 0.00 | 0.00 | 12,123.00 | 13,217.00 | 13,217.00 |
| **Vendor No.: FLO20 — FLORIDA CITY GAS** | | | | | | | | | |
| S5777208/19AUG13 | IN | 8/26/2013 | | | | | 138.01 | 138.01 | 138.01 |
| S5884928/19AUG13 | IN | 8/26/2013 | | | | | 1,436.40 | 1,436.40 | 1,436.40 |
| S5958236/15AUG13 | IN | 8/26/2013 | | | | | 5.65 | 5.65 | 5.65 |
| 3670301142/18SEP13 | IN | 9/25/2013 | | | | | 203.99 | 203.99 | 203.99 |
| 4820301142/18SEP13 | IN | 9/25/2013 | | | | | 14.84 | 14.84 | 14.84 |
| S5337642079/18SEP13 | IN | 9/25/2013 | | | | | 1,482.91 | 1,482.91 | 1,482.91 |
| S5777208/18MAR14 | IN | 3/27/2014 | | 272.61 | | | | 272.61 | 272.61 |
| S5884928/18MAR14 | IN | 3/27/2014 | | 1,600.15 | | | | 1,600.15 | 1,600.15 |
| **Vendor Total:** | | | 0.00 | 1,872.76 | 0.00 | 0.00 | 3,281.80 | 5,154.56 | 5,154.56 |
| **Vendor No.: GAV01 — GAVINA COFFEE CO.** | | | | | | | | | |
| 192989 | IN | 4/19/2014 | 230.00 | | | | | 230.00 | 230.00 |
| **Vendor Total:** | | | 230.00 | 0.00 | 0.00 | 0.00 | 0.00 | 230.00 | 230.00 |

| Vendor No.: | | Type | Invoice No. | Date | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| GFS01 | Vendor Name: | | GORDON FOOD SERVICE, INC. | | | | | | | |
| 7/23/2013 | 152492695 | IN | | 8/22/2013 | | | | 123.90 | 123.90 | 123.90 |
| 7/23/2013 | 152492697 | IN | | 8/22/2013 | | | | 420.02 | 420.02 | 420.02 |
| 7/25/2013 | 152509128 | IN | | 8/24/2013 | | | | 43.58 | 43.58 | 43.58 |
| 7/30/2013 | 152571156 | IN | | 8/29/2013 | | | | 399.25 | 399.25 | 399.25 |
| 8/6/2013 | 152656549 | IN | | 9/5/2013 | | | | 578.02 | 578.02 | 578.02 |
| 8/6/2013 | 152656552 | IN | | 9/5/2013 | | | | 528.18 | 528.18 | 528.18 |
| 8/13/2013 | 152742838 | IN | | 9/12/2013 | | | | 554.74 | 554.74 | 554.74 |
| 8/13/2013 | 152742850 | IN | | 9/12/2013 | | | | 282.85 | 282.85 | 282.85 |
| Vendor Total: | | | | | | | 0.00 | 2,930.54 | 2,930.54 | 2,930.54 |
| GRA01 | Vendor Name: | | GRAPHIC CONTROLS | | | | | | | |
| 8/6/2013 | LC5571 | IN | | 9/5/2013 | | | | 5,039.57 | 5,039.57 | 5,039.57 |
| 8/9/2013 | LC6886 | IN | | 9/8/2013 | | | | 4,413.57 | 4,413.57 | 4,413.57 |
| Vendor Total: | | | | | | | 0.00 | 9,453.14 | 9,453.14 | 9,453.14 |
| HOS01 | Vendor Name: | | HOSPITALITY PURCHASING | | | | | | | |
| 8/1/2013 | 166217 | IN | | 8/31/2013 | | | | 1,413.80 | 1,413.80 | 1,413.80 |
| 8/15/2013 | 166559 | IN | | 9/14/2013 | | | | 473.27 | 473.27 | 473.27 |
| Vendor Total: | | | | | | | 0.00 | 1,887.07 | 1,887.07 | 1,887.07 |
| HOU01 | Vendor Name: | | HOUSNER OFFICE SUPPLIES | | | | | | | |
| 7/24/2013 | 0238886-001 | IN | | 8/8/2013 | | | | 490.86 | 490.86 | |
| 7/26/2013 | 0238832-001 | IN | | 8/10/2013 | | | | 88.05 | 88.05 | |
| 7/29/2013 | 0238803-001 | IN | | 8/13/2013 | | | | 348.88 | 348.88 | |
| 7/31/2013 | 0238979-001 | IN | | 8/15/2013 | | | | 222.54 | 222.54 | |
| 7/31/2013 | 0238981-001 | IN | | 8/15/2013 | | | | 440.82 | 440.82 | |
| 7/31/2013 | 0238983-001 | IN | | 8/15/2013 | | | | 228.41 | 228.41 | |
| 8/1/2013 | 0238898-001 | IN | | 8/16/2013 | | | | 22.11 | 22.11 | |
| 8/1/2013 | 0239011-001 | IN | | 8/16/2013 | | | | 132.64 | 132.64 | |
| 8/6/2013 | 0238814-001 | IN | | 8/21/2013 | | | | 48.09 | 48.09 | |
| 8/6/2013 | 0238034-001 | IN | | 8/21/2013 | | | | 3.10 | 3.10 | |
| 8/6/2013 | 0239048-001 | IN | | 8/21/2013 | | | | 497.39 | 497.39 | |
| 8/9/2013 | 0239107-001 | IN | | 8/24/2013 | | | | 75.53 | 75.53 | |
| 8/9/2013 | 0239108-001 | IN | | 8/24/2013 | | | | 61.28 | 61.28 | |
| 8/9/2013 | 0239119-001 | IN | | 8/24/2013 | | | | 88.79 | 88.79 | |
| 8/14/2013 | 0239162-001 | IN | | 8/29/2013 | | | | 181.89 | 181.89 | |
| 8/14/2013 | 0239175-001 | IN | | 8/29/2013 | | | | 324.29 | 324.29 | |
| 8/16/2013 | 0239212-001 | IN | | 8/31/2013 | | | | 191.46 | 191.46 | |
| 3/13/2014 | 0242018-001 | IN | | 3/28/2014 | 116.05 | | | | | 116.05 |
| 3/13/2014 | 0242034-001 | IN | | 3/28/2014 | 20.35 | | | | | 20.35 |

**(Vendor continuation — Vendor No. / Name on prior page)**

| Date | Type | Reference | Due Date | Discount | Amount | Total |
|---|---|---|---|---|---|---|
| 3/14/2014 | IN | 0242050-001 | 3/29/2014 | 0.00 | 22.02 | 22.02 |
| 3/14/2014 | IN | 0242062-001 | 3/29/2014 | 0.00 | 257.55 | 257.55 |
| 3/20/2014 | IN | 0242040-001 | 4/4/2014 | 0.00 | 42.79 | 42.79 |
| 3/20/2014 | IN | 0242141-001 | 4/4/2014 | 0.00 | 38.46 | 38.46 |
| 3/21/2014 | IN | 0242087-001 | 4/5/2014 | 0.00 | 42.79 | 42.79 |
| 3/21/2014 | IN | 0242166-001 | 4/5/2014 | 0.00 | 276.02 | 276.02 |
| 3/21/2014 | IN | 0242169-001 | 4/5/2014 | 0.00 | 497.39 | 497.39 |
| **Vendor Total:** | | | | 0.00 | 1,313.42 | 3,446.13 → 4,759.55 |

**Vendor No.: HRD01    Vendor Name: HR DIRECT**

| Date | Type | Reference | Due Date | Discount | Amount | Total |
|---|---|---|---|---|---|---|
| 8/1/2013 | IN | INV1479366 | 8/6/2013 | 0.00 | 192.49 | 192.49 |
| **Vendor Total:** | | | | 0.00 | 192.49 | 192.49 |

**Vendor No.: IDE01    Vendor Name: IDEA GARDEN ADVERTISING**

| Date | Type | Reference | Due Date | Discount | Amount | Total |
|---|---|---|---|---|---|---|
| 3/12/2014 | IN | 031214 | 4/11/2014 | 0.00 | 728.50 | 728.50 |
| **Vendor Total:** | | | | 0.00 | 728.50 | 728.50 |

**Vendor No.: IDE02    Vendor Name: IDENTISYS INC.**

| Date | Type | Reference | Due Date | Discount | Amount | Total |
|---|---|---|---|---|---|---|
| 7/18/2013 | IN | 176382 | 8/17/2013 | | 654.13 | 654.13 |
| 7/18/2013 | IN | 176385 | 8/17/2013 | | 237.81 | 237.81 |
| 7/26/2013 | IN | 177568 | 8/25/2013 | | 2,256.74 | 2,256.74 |
| 7/30/2013 | IN | 177837 | 8/29/2013 | | 30.13 | 30.13 |
| 7/30/2013 | IN | 177903 | 8/29/2013 | | 568.06 | 568.06 |
| **Vendor Total:** | | | | 0.00 | 3,746.87 | 3,746.87 |

**Vendor No.: IGT01    Vendor Name: IGT - EASTERN OPERATING #774028**

| Date | Type | Reference | Due Date | Discount | Amount | Total |
|---|---|---|---|---|---|---|
| 6/29/2013 | IN | 93155347 | 7/29/2013 | | 19,260.00 | 19,260.00 |
| 7/5/2013 | C | 93155596 | 7/5/2013 | | -107.00 | -107.00 |
| 7/27/2013 | IN | 93180022 | 8/26/2013 | | 19,902.00 | 19,902.00 |
| 8/24/2013 | IN | 93206012 | 9/23/2013 | | 12,198.00 | 12,198.00 |
| **Vendor Total:** | | | | 0.00 | 51,253.00 | 51,253.00 |

**Vendor No.: INT12    Vendor Name: INTERNATIONAL SOUND CORP.**

| Date | Type | Reference | Due Date | Discount | Amount | Total |
|---|---|---|---|---|---|---|
| 12/23/2011 | IN | 0075791-IN | ######## | | 1,978.20 | 1,978.20 |
| 12/10/2011 | IN | 0075939-IN | ######## | | 1,978.20 | 1,978.20 |
| 12/17/2011 | IN | 0075890-IN | ######## | | 1,978.20 | 1,978.20 |
| 12/24/2011 | IN | 0076089-IN | ######## | | 1,978.20 | 1,978.20 |
| 12/31/2011 | IN | 0076162-IN | 1/7/2012 | | 1,698.50 | 1,698.50 |
| 1/7/2012 | IN | 0076272-IN | 1/14/2012 | | 1,978.20 | 1,978.20 |
| 1/14/2012 | IN | 001-030-3000-8800-210 | 1/21/2012 | | 1,978.20 | 1,978.20 |
| 1/21/2012 | IN | 0076340-IN | 1/28/2012 | | 1,978.20 | 1,978.20 |
| 1/28/2012 | IN | 0076435-IN | 2/4/2012 | | 1,978.20 | 1,978.20 |

| Date | Type | Invoice No. | Invoice Date | | | | Amount | Amount |
|---|---|---|---|---|---|---|---|---|
| 2/4/2012 | IN | 0076630-IN | 2/11/2012 | | | | 1,978.20 | 1,978.20 |
| 2/11/2012 | IN | 0076748-IN | 2/18/2012 | | | | 1,978.20 | 1,978.20 |
| 2/18/2012 | IN | 0076786-IN | 2/25/2012 | | | | 1,978.20 | 1,978.20 |
| 2/25/2012 | IN | 0076883-IN | 3/3/2012 | | | | 1,978.20 | 1,978.20 |
| 3/3/2012 | IN | 0077064-IN | 3/10/2012 | | | | 1,978.20 | 1,978.20 |
| 3/10/2012 | IN | 0077168-IN | 3/17/2012 | | | | 1,978.20 | 1,978.20 |
| 3/17/2012 | IN | 0077283-IN | 3/24/2012 | | | | 1,978.20 | 1,978.20 |
| 3/24/2012 | IN | 0077367-IN | 3/31/2012 | | | | 1,978.20 | 1,978.20 |
| 3/31/2012 | IN | 0077469-IN | 4/7/2012 | | | | 1,978.20 | 1,978.20 |
| 4/7/2012 | IN | 0077519-IN | 4/14/2012 | | | | 1,978.20 | 1,978.20 |
| 4/14/2012 | IN | 0077613-IN | 4/21/2012 | | | | 1,978.20 | 1,978.20 |
| 4/21/2012 | IN | 0077707-IN | 4/28/2012 | | | | 1,978.20 | 1,978.20 |
| 4/28/2012 | IN | 0077689-IN | 5/5/2012 | | | | 1,978.20 | 1,978.20 |
| 5/5/2012 | IN | 0077993-IN | 5/12/2012 | | | | 1,978.20 | 1,978.20 |
| 5/12/2012 | IN | 0078096-IN | 5/19/2012 | | | | 1,978.20 | 1,978.20 |
| 5/19/2012 | IN | 0078131-IN | 5/26/2012 | | | | 1,978.20 | 1,978.20 |
| 5/26/2012 | IN | 0078250-IN | 6/2/2012 | | | | 1,978.20 | 1,978.20 |
| 6/2/2012 | IN | 0078426-IN | 6/9/2012 | | | | 2,021.92 | 2,021.92 |
| 6/9/2012 | IN | 0078557-IN | 6/16/2012 | | | | 1,978.20 | 1,978.20 |
| 6/16/2012 | IN | 0078591-IN | 6/23/2012 | | | | 1,978.20 | 1,978.20 |
| 6/23/2012 | IN | 0078691-IN | 6/30/2012 | | | | 1,978.20 | 1,978.20 |
| 6/30/2012 | IN | 0078786-IN | 7/7/2012 | | | | 1,978.20 | 1,978.20 |
| 7/7/2012 | IN | 0079380-IN | 7/1/2012 | | | | 659.40 | 659.40 |
| 8/4/2012 | IN | 0079416-IN | 8/11/2012 | | | | 1,978.20 | 1,978.20 |
| 8/11/2012 | IN | 0079505-IN | 8/18/2012 | | | | 1,978.20 | 1,978.20 |
| 8/18/2012 | IN | 0084972-IN | 8/25/2012 | | | | 329.70 | 329.70 |
| 8/3/2013 | IN | 0084991-IN | 8/10/2013 | | | | 1,978.20 | 1,978.20 |
| 8/10/2013 | IN | 0085141-IN | 8/17/2013 | | | | 1,978.20 | 1,978.20 |
| 8/17/2013 | IN | 0085176-IN | 8/24/2013 | | | | 1,978.20 | 1,978.20 |
| 8/24/2013 | IN | 0088174-IN | 8/31/2013 | | | | 1,978.20 | 1,978.20 |
| 3/15/2014 | | | 3/22/2014 | | | 1,978.20 | 1,978.20 | 1,978.20 |
| | | Vendor Total: | | 0.00 | 0.00 | | 71,968.32 | 73,946.52 |

Vendor Name: LIFT STATIONS "R" US

| Date | Type | Invoice No. | Invoice Date | | | | Amount | Amount |
|---|---|---|---|---|---|---|---|---|
| Vendor No.: | | LIF01 | | | | | | |
| 8/16/2013 | IN | 39898 | 8/23/2013 | | | | 1,500.00 | 1,500.00 |
| | | Vendor Total: | | 0.00 | 0.00 | | 1,500.00 | 1,500.00 |

Vendor Name: LOOMIS

| Date | Type | Invoice No. | Invoice Date | | | | Amount | Amount |
|---|---|---|---|---|---|---|---|---|
| Vendor No.: | | LOO01 | | | | | | |
| 7/31/2013 | IN | 11279465 | 8/15/2013 | | | | 1,784.16 | 1,784.16 |
| 8/31/2013 | IN | 11294845 | 9/15/2013 | | | | 545.24 | 545.24 |
| | | Vendor Total: | | 0.00 | 0.00 | | 2,329.40 | 2,329.40 |

**Vendor No.: MAT01**
Vendor Name: MATTY'S SPORTS

| Date | Type | Reference | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6/13/2013 | IN | 38184 | | | 0.00 | 1,141.99 | 1,141.99 | 1,141.99 |
| Vendor Total: | | | 0.00 | 0.00 | 0.00 | 1,141.99 | 1,141.99 | 1,141.99 |

**Vendor No.: MIA01**
Vendor Name: MIAMI BAR & RESTAURANT SUPPLIES

| Date | Type | Reference | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7/22/2013 | IN | 201136 | | | 0.00 | 227.57 | 227.57 | 227.57 |
| 7/29/2013 | IN | 201448 | | | | 215.52 | 215.52 | 215.52 |
| 7/29/2013 | IN | 201452 | | | | 85.90 | 85.90 | 85.90 |
| 8/5/2013 | IN | 201796 | | | | 426.44 | 426.44 | 426.44 |
| 8/12/2013 | IN | 202139 | | | | 117.30 | 117.30 | 117.30 |
| 8/13/2013 | IN | 202219 | | | | 118.40 | 118.40 | 118.40 |
| 8/19/2013 | IN | 202488 | | | | 325.26 | 325.26 | 325.26 |
| Vendor Total: | | | 0.00 | 0.00 | 0.00 | 1,516.39 | 1,516.39 | 1,516.39 |

**Vendor No.: MIA06**
Vendor Name: MIAMI-DADE WATER AND SEWER DEPA

| Date | Type | Reference | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 8/21/2013 | IN | 1868960928/14AUG13 | | | | 1,471.39 | 1,471.39 | 1,471.39 |
| 8/21/2013 | IN | 2431030290/14AUG13 | | | | 1,088.87 | 1,088.87 | 1,088.87 |
| 8/21/2013 | IN | 4434372200/14AUG13 | | | | 16.50 | 16.50 | 16.50 |
| 8/21/2013 | IN | 7099333200/14AUG13 | | | | 3,405.61 | 3,405.61 | 3,405.61 |
| Vendor Total: | | | 0.00 | 0.00 | 0.00 | 5,982.37 | 5,982.37 | 5,982.37 |

**Vendor No.: MIA07**
Vendor Name: MIAMI SIGNS CORP.

| Date | Type | Reference | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 5/7/2013 | IN | 2760 | | | | 200.00 | 200.00 | 200.00 |
| 6/5/2013 | IN | 2794 | | | | 120.00 | 120.00 | 120.00 |
| 6/13/2013 | IN | 2812 | | | | 32.10 | 32.10 | 32.10 |
| 7/10/2013 | IN | 2833 | | | | 1,198.40 | 1,198.40 | 1,198.40 |
| 7/11/2013 | IN | 2836 | | | | 273.92 | 273.92 | 273.92 |
| 8/14/2013 | IN | 2862 | | | | 1,095.68 | 1,095.68 | 1,095.68 |
| 8/14/2013 | IN | 2863 | | | | 514.67 | 514.67 | 514.67 |
| Vendor Total: | | | 0.00 | 0.00 | 0.00 | 3,434.77 | 3,434.77 | 3,434.77 |

**Vendor No.: MIA15**
Vendor Name: MIAMI-DADE POLICE DEPT.

| Date | Type | Reference | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7/29/2013 | IN | 072113 | | | | 6,108.88 | 6,108.88 | 6,108.88 |
| 8/5/2013 | IN | 080513 | | | | 8,090.88 | 8,090.88 | 8,090.88 |
| 8/19/2013 | IN | 081813 | | | | 6,473.26 | 6,473.26 | 6,473.26 |
| 3/2/2014 | IN | P94MAR0214 | | | 7,421.01 | | | 7,421.01 |
| Vendor Total: | | | 0.00 | | 7,421.01 | 20,673.02 | 28,094.03 | 28,094.03 |

**Vendor No.: MIA20**
Vendor Name: MIAMI-DADE TAX COLLECTOR

| Date | Type | Reference | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3/24/2014 | IN | FOLIO 14-438750 | | | 368,078.80 | 0.00 | 368,078.80 | 368,078.80 |
| 3/31/2014 | | | | | | | | |
| Vendor Total: | | | 368,078.80 | 0.00 | 0.00 | 368,078.80 | 368,078.80 | |

| Vendor No. | | Date | Col1 | Col2 | Col3 | Col4 | Col5 | Col6 | Col7 |
|---|---|---|---|---|---|---|---|---|---|
| **MZM01** | | | | | | | | | |
| IN 2013-14-52 | | 8/8/2013 | | | | | 1,500.00 | 1,500.00 | 1,500.00 |
| Vendor Name: MZM PRODUCTIONS, INC. | | | | | | | | | |
| Vendor Total: | | | 0.00 | 0.00 | 0.00 | 0.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| **NAS01** | | | | | | | | | |
| IN NASRIN5331 | | 8/8/2013 | | | | | 804.23 | 804.23 | 804.23 |
| Vendor Name: NASRIN | | | | | | | | | |
| Vendor Total: | | | 0.00 | 0.00 | 0.00 | 0.00 | 804.23 | 804.23 | 804.23 |
| **NEX02** | | | | | | | | | |
| IN 25213 | | 9/15/2013 | | | | | 80.00 | 80.00 | 80.00 |
| Vendor Name: NEXTLEVEL INFORMATION SOLUTIONS | | | | | | | | | |
| Vendor Total: | | | 0.00 | 0.00 | 0.00 | 0.00 | 80.00 | 80.00 | 80.00 |
| **NIC01** | | | | | | | | | |
| IN 68042 | | 7/31/2013 | | | | | 526.90 | 526.90 | 526.90 |
| Vendor Name: NICE & QUICK CLEANERS CORPORATIC | | | | | | | | | |
| Vendor Total: | | | 0.00 | 0.00 | 0.00 | 0.00 | 526.90 | 526.90 | 526.90 |
| **OFF01** | | | | | | | | | |
| IN 080513 | | 8/5/2013 | | | | | 454.61 | 454.61 | 454.61 |
| IN 090413 | | 9/4/2013 | | | | | 312.76 | 312.76 | 312.76 |
| Vendor Name: OFFICE DEPOT CREDIT PLAN | | | | | | | | | |
| Vendor Total: | | | 0.00 | 0.00 | 0.00 | 0.00 | 767.37 | 767.37 | 767.37 |
| **ORK01** | | | | | | | | | |
| IN 85474190 | | 7/16/2013 | | | | | 246.11 | 246.11 | 246.11 |
| IN 85474191 | | 7/23/2013 | | | | | 246.11 | 246.11 | 246.11 |
| IN 863618957 | | 8/6/2013 | | | | | 246.11 | 246.11 | 246.11 |
| IN 863618959 | | 8/13/2013 | | | | | 246.11 | 246.11 | 246.11 |
| IN 863618960 | | 8/20/2013 | | | | | 246.11 | 246.11 | 246.11 |
| IN 91843881 | | 3/11/2014 | 246.11 | | | | | | |
| IN 91843883 | | 3/18/2014 | 246.11 | | | | | | |
| IN 91843884 | | 3/25/2014 | 246.11 | | | | | | |
| Vendor Name: ORKIN LLC | | | | | | | | | |
| Vendor Total: | | | 738.33 | 0.00 | 0.00 | 0.00 | 1,230.55 | 1,230.55 | 1,968.88 |
| **OTI01** | | | | | | | | | |
| IN TAO09650G713 | | 6/20/2013 | | | | | 3,568.50 | 3,568.50 | 3,568.50 |
| IN TAO25986001 | | 8/7/2013 | | | | | 735.00 | 735.00 | 735.00 |
| IN TAO09650G414 | | 3/20/2014 | 6,516.12 | | | | | | 6,516.12 |
| Vendor Name: OTIS ELEVATOR COMPANY | | | | | | | | | |
| Vendor Total: | | | 6,516.12 | 0.00 | 0.00 | 0.00 | 4,303.50 | 4,303.50 | 10,819.62 |
| **PAN01** | | | | | | | | | |
| IN 4639 | | 6/28/2013 | | | | | 813.47 | 813.47 | 813.47 |
| IN 4685 | | 7/17/2013 | | | | | 377.66 | 377.66 | 377.66 |
| IN 4693 | | 7/18/2013 | | | | | 361.29 | 361.29 | 361.29 |
| Vendor Name: PANCAR INDUSTRIAL SUPPLY | | | | | | | | | |

| Date | Type | Document No. | Due Date | | | Amount | Amount | Amount |
|---|---|---|---|---|---|---|---|---|
| 8/6/2013 | IN | 4732 | 8/13/2013 | | 0.00 | 374.99 | 374.99 | 374.99 |
| 8/8/2013 | IN | 4738 | 8/15/2013 | | | 567.05 | 567.05 | 567.05 |
| | | Vendor Total: | | 0.00 | | 2,494.46 | 2,494.46 | 2,494.46 |
| Vendor No.: PAT01 | | Vendor Name: PATRIOT GAMING & ELECTRONICS, INC | | | | | | |
| 3/11/2014 | IN | 63046 | 3/31/2014 | 0.00 | 0.00 | 313.98 | | 313.98 |
| | | Vendor Total: | | 0.00 | | 313.98 | | 313.98 |
| Vendor No.: PEP01 | | Vendor Name: PEPSI-COLA COMPANY | | | | | | |
| 7/30/2013 | IN | 28877310 | 8/14/2013 | | | 2,390.00 | 2,390.00 | 2,390.00 |
| 8/6/2013 | IN | 24522611 | 8/21/2013 | | | 1,435.30 | 1,435.30 | 1,435.30 |
| 8/13/2013 | IN | 74555108 | 8/28/2013 | | | 1,573.95 | 1,573.95 | 1,573.95 |
| | | Vendor Total: | | 0.00 | | 5,399.25 | 5,399.25 | 5,399.25 |
| Vendor No.: REX03 | | Vendor Name: REX CHEMICAL CORP. | | | | | | |
| 8/7/2013 | IN | 13-04272 | 9/6/2013 | 0.00 | 0.00 | 209.58 | | 209.58 |
| | | Vendor Total: | | 0.00 | | 209.58 | | 209.58 |
| Vendor No.: RO502 | | Vendor Name: ROBERTS COMMUNICATIONS NETWOR | | | | | | |
| 10/1/2012 | IN | T1210-0709-279 | 10/8/2012 | | | 3,300.00 | 3,300.00 | 3,300.00 |
| 10/8/2012 | IN | T1210-0710-279 | ######## | | | 3,300.00 | 3,300.00 | 3,300.00 |
| 10/15/2012 | IN | T1210-0711-279 | ######## | | | 3,300.00 | 3,300.00 | 3,300.00 |
| 10/22/2012 | IN | T1210-0712-279 | ######## | | | 3,300.00 | 3,300.00 | 3,300.00 |
| 10/29/2012 | IN | T1210-0713-279 | 11/5/2012 | | | 1,100.00 | 1,100.00 | 1,100.00 |
| 11/1/2012 | IN | SM1211-1236 | 11/8/2012 | | | 1,450.00 | 1,450.00 | 1,450.00 |
| 11/5/2012 | IN | T1211-1037-279 | ######## | | | 3,300.00 | 3,300.00 | 3,300.00 |
| 11/12/2012 | IN | T1211-1038-279 | ######## | | | 3,300.00 | 3,300.00 | 3,300.00 |
| 11/19/2012 | IN | T1211-1039-279 | ######## | | | 2,750.00 | 2,750.00 | 2,750.00 |
| 12/1/2012 | IN | SM1212-0980 | 12/8/2012 | | | 1,450.00 | 1,450.00 | 1,450.00 |
| 12/3/2012 | IN | T1212-0735-279 | ######## | | | 3,300.00 | 3,300.00 | 3,300.00 |
| 12/10/2012 | IN | T1212-0736-279 | ######## | | | 3,300.00 | 3,300.00 | 3,300.00 |
| 12/17/2012 | IN | T1212-0737-279 | ######## | | | 3,300.00 | 3,300.00 | 3,300.00 |
| 4/29/2013 | IN | T1304-0733-279 | 5/6/2013 | | | 1,100.00 | 1,100.00 | 1,100.00 |
| 5/1/2013 | IN | SM1305-1110 | 5/8/2013 | | | 1,450.00 | 1,450.00 | 1,450.00 |
| 5/1/2013 | IN | T1305-0882-279 | 5/8/2013 | | | 2,750.00 | 2,750.00 | 2,750.00 |
| 5/13/2013 | IN | T1305-0884-279 | 5/20/2013 | | | 3,300.00 | 3,300.00 | 3,300.00 |
| 5/20/2013 | IN | T1305-0885-279 | 5/27/2013 | | | 3,300.00 | 3,300.00 | 3,300.00 |
| 5/27/2013 | IN | T1305-0886-279 | 6/3/2013 | | | 2,200.00 | 2,200.00 | 2,200.00 |
| 5/31/2013 | IN | 1305A-1674 | 6/7/2013 | | | 50.00 | 50.00 | 50.00 |
| 6/30/2013 | IN | 1306A-1967 | 7/7/2013 | | | 50.00 | 50.00 | 50.00 |
| 7/31/2013 | IN | 1307A-1972 | 8/7/2013 | | | 50.00 | 50.00 | 50.00 |
| 8/1/2013 | IN | SM1308-1184 | 8/8/2013 | | | 1,450.00 | 1,450.00 | 1,450.00 |

| Date | Type | Invoice No. | Invoice Date | Col 1 | Col 2 | Col 3 | Total |
|---|---|---|---|---|---|---|---|
| 8/1/2013 | IN | T1308-0870-279 | 8/8/2013 | | 1,100.00 | 1,100.00 | 1,100.00 |
| 8/5/2013 | IN | T1308-0871-279 | 8/12/2013 | | 3,300.00 | 3,300.00 | 3,300.00 |
| 8/12/2013 | IN | T1308-0872-279 | 8/19/2013 | | 3,300.00 | 3,300.00 | 3,300.00 |
| 8/19/2013 | IN | T1308-0873-279 | 8/26/2013 | | 550.00 | 550.00 | 550.00 |
| 3/17/2014 | IN | T1403-0987-279 | 3/24/2014 | 3,300.00 | | | 3,300.00 |
| 3/24/2014 | IN | T1403-0988-279 | 3/31/2014 | 3,300.00 | | | 3,300.00 |
| **Vendor Total:** | | | | 3,300.00 | 60,400.00 | 63,700.00 | 67,000.00 |
| **Vendor No.:** ROB03 / 2723 | | | | | | | |
| **Vendor Name:** ROBINSON & ASSOCIATES, INC. | | | | | | | |
| 8/7/2013 | IN | 2723 | 9/6/2013 | | 1,373.48 | 1,373.48 | 1,373.48 |
| **Vendor Total:** | | | | 0.00 | 1,373.48 | 1,373.48 | 1,373.48 |
| **Vendor No.:** ROY'01 | | | | | | | |
| **Vendor Name:** ROYAL COOL AIR CONDITIONING, INC. | | | | | | | |
| 7/5/2013 | IN | 12548 | 8/4/2013 | | 950.00 | 950.00 | 950.00 |
| 7/21/2013 | IN | 12575 | 8/20/2013 | | 203.50 | 203.50 | 203.50 |
| 7/25/2013 | IN | 12579 | 8/24/2013 | | 612.36 | 612.36 | 612.36 |
| 7/30/2013 | IN | 12606 | 8/29/2013 | | 196.50 | 196.50 | 196.50 |
| 7/31/2013 | IN | 12580 | 8/30/2013 | | 1,720.00 | 1,720.00 | 1,720.00 |
| 7/31/2013 | IN | 12600 | 8/30/2013 | | 2,300.00 | 2,300.00 | 2,300.00 |
| 8/1/2013 | IN | 12581 | 8/31/2013 | | 88.00 | 88.00 | 88.00 |
| 8/13/2013 | IN | 12593 | 9/12/2013 | | 110.00 | 110.00 | 110.00 |
| 3/11/2014 | IN | 12797 | 4/10/2014 | 132.00 | | | 132.00 |
| 3/14/2014 | IN | 12807 | 4/13/2014 | 110.00 | | | 110.00 |
| 3/18/2014 | IN | 12810 | 4/17/2014 | 691.57 | | | 691.57 |
| 3/19/2014 | IN | 12811 | 4/18/2014 | 2,490.00 | | | 2,490.00 |
| **Vendor Total:** | | | | 3,423.57 | 6,180.36 | 6,180.36 | 9,603.93 |
| **Vendor No.:** SEC03 / 00-5932 | | | | | | | |
| **Vendor Name:** SECURE-TEK SYSTEMS CORP. | | | | | | | |
| 8/14/2013 | IN | 00-5932 | 9/13/2013 | | 80.25 | 80.25 | 80.25 |
| **Vendor Total:** | | | | 0.00 | 80.25 | 80.25 | 80.25 |
| **Vendor No.:** SER01 / 30846 | | | | | | | |
| **Vendor Name:** SERVICE CENTRAL INC. | | | | | | | |
| 3/17/2014 | IN | 30846 | 4/16/2014 | 132.00 | | | 132.00 |
| **Vendor Total:** | | | | 132.00 | 0.00 | 0.00 | 132.00 |
| **Vendor No.:** SFM01 | | | | | | | |
| **Vendor Name:** SFM LANDSCAPE SERVICES, LLC | | | | | | | |
| 6/30/2013 | IN | 134339 | 7/15/2013 | | 2,000.00 | 2,000.00 | 2,000.00 |
| 7/31/2013 | IN | 134405 | 8/15/2013 | | 3,000.00 | 3,000.00 | 3,000.00 |
| 8/31/2013 | IN | 134472 | 9/15/2013 | | 1,000.00 | 1,000.00 | 1,000.00 |
| **Vendor Total:** | | | | 0.00 | 6,000.00 | 6,000.00 | 6,000.00 |
| **Vendor No.:** SFM02 | | | | | | | |
| **Vendor Name:** SFM SECURITY SERVICES, INC. | | | | | | | |

| Date | Type | Invoice No. | Invoice Date | Amount | Current |  |  |  | Over 90 Days | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/31/2013 | IN | 3022607 | 8/15/2013 | 1,336.97 |  |  |  |  | 1,336.97 | 1,336.97 |
| 8/14/2013 | IN | 3022674 | 8/29/2013 | 1,911.87 |  |  |  |  | 1,911.87 | 1,911.87 |
| **Vendor Total:** | | | | 3,248.84 | 0.00 | 0.00 | 0.00 | 0.00 | 3,248.84 | 3,248.84 |

**Vendor No.: SFM03    Vendor Name: SFM JANITORIAL SERVICES, LLC**

| Date | Type | Invoice No. | Invoice Date | Amount | Current |  |  |  | Over 90 Days | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/29/2013 | IN | 1019482 | 8/13/2013 | 3,616.93 |  |  |  |  | 3,616.93 | 3,616.93 |
| 8/5/2013 | IN | 1019520 | 8/20/2013 | 3,616.93 |  |  |  |  | 3,616.93 | 3,616.93 |
| 8/12/2013 | IN | 1019601 | 8/27/2013 | 3,616.93 |  |  |  |  | 3,616.93 | 3,616.93 |
| 8/19/2013 | IN | 1019608 | 9/3/2013 | 3,616.93 |  |  |  |  | 3,616.93 | 3,616.93 |
| 3/24/2014 | IN | 1020765 | 4/8/2014 | 5,679.23 | 5,679.23 |  |  |  |  | 5,679.23 |
| **Vendor Total:** | | | | 20,146.95 | 5,679.23 | 0.00 | 0.00 | 0.00 | 14,467.72 | 20,146.95 |

**Vendor No.: SHF01    Vendor Name: SHFL ENTERTAINMENT**

| Date | Type | Invoice No. | Invoice Date | Amount | Current |  |  |  | Over 90 Days | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/2013 | IN | ETR002124 | 7/1/2013 | 16,050.00 |  |  |  |  | 16,050.00 | 16,050.00 |
| 6/1/2013 | IN | LSR023805 | 7/1/2013 | 9,116.40 |  |  |  |  | 9,116.40 | 9,116.40 |
| 7/1/2013 | IN | ETR002205 | 7/31/2013 | 16,050.00 |  |  |  |  | 16,050.00 | 16,050.00 |
| 7/31/2013 | IN | LSR024754 | 7/31/2013 | 9,116.40 |  |  |  |  | 9,116.40 | 9,116.40 |
| 8/1/2013 | IN | ETR002291 | 8/31/2013 | 9,837.10 |  |  |  |  | 9,837.10 | 9,837.10 |
| 8/31/2013 | IN | LSR025709 | 8/31/2013 | 5,587.47 |  |  |  |  | 5,587.47 | 5,587.47 |
| 3/1/2014 | IN | ETR002919 | 3/31/2014 | 16,050.00 | 16,050.00 |  |  |  |  | 16,050.00 |
| 3/1/2014 | IN | LSR032421 | 3/31/2014 | 8,356.70 | 8,356.70 |  |  |  |  | 8,356.70 |
| **Vendor Total:** | | | | 90,164.07 | 24,406.70 | 0.00 | 0.00 | 0.00 | 65,757.37 | 90,164.07 |

**Vendor No.: SIR01    Vendor Name: SIRELY UNIFORMS**

| Date | Type | Invoice No. | Invoice Date | Amount | Current |  |  |  | Over 90 Days | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/31/2013 | IN | 15260 | 8/10/2013 | 4,958.38 |  |  |  |  | 4,958.38 | 4,958.38 |
| 7/31/2013 | IN | 15261 | 8/10/2013 | 238.10 |  |  |  |  | 238.10 | 238.10 |
| 8/7/2013 | IN | 15278 | 8/17/2013 | 297.87 |  |  |  |  | 297.87 | 297.87 |
| 8/9/2013 | IN | 15284 | 8/19/2013 | 59.96 |  |  |  |  | 59.96 | 59.96 |
| **Vendor Total:** | | | | 5,554.31 | 0.00 | 0.00 | 0.00 | 0.00 | 5,554.31 | 5,554.31 |

**Vendor No.: SPE01    Vendor Name: SPECIALTY HOUSE OF CREATION, INC.**

| Date | Type | Invoice No. | Invoice Date | Amount | Current |  |  |  | Over 90 Days | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 9/8/2013 | IN | 1139 | 9/8/2013 | 11,050.00 |  |  |  |  | 11,050.00 | 11,050.00 |
| **Vendor Total:** | | | | 11,050.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,050.00 | 11,050.00 |

**Vendor No.: SPO02    Vendor Name: SPORTECH, INC.**

| Date | Type | Invoice No. | Invoice Date | Amount | Current |  |  |  | Over 90 Days | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/19/2013 | IN | 17471 | 6/26/2013 | 2,850.00 |  |  |  |  | 2,850.00 | 2,850.00 |
| 6/21/2013 | IN | 17690 | 6/28/2013 | 2,850.00 |  |  |  |  | 2,850.00 | 2,850.00 |
| 7/4/2013 | IN | 17901 | 7/4/2013 | 2,850.00 |  |  |  |  | 2,850.00 | 2,850.00 |
| 7/8/2013 | IN | 18112 | 7/15/2013 | 2,850.00 |  |  |  |  | 2,850.00 | 2,850.00 |
| 7/11/2013 | IN | 18364 | 7/18/2013 | 2,850.00 |  |  |  |  | 2,850.00 | 2,850.00 |
| 7/18/2013 | IN | 18578 | 7/25/2013 | 2,850.00 |  |  |  |  | 2,850.00 | 2,850.00 |
| 7/24/2013 | IN | 18792 | 7/31/2013 | 2,850.00 |  |  |  |  | 2,850.00 | 2,850.00 |

| Invoice Date | Due Date | Type | Invoice No. | | | | | | Total | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/5/2013 | 8/12/2013 | IN | 19040 | | | | | 2,850.00 | 2,850.00 | 2,850.00 |
| 8/8/2013 | 8/15/2013 | IN | 19253 | | | | | 2,850.00 | 2,850.00 | 2,850.00 |
| 8/16/2013 | 8/23/2013 | IN | 19559 | | | | | 2,850.00 | 2,850.00 | 2,850.00 |
| 8/22/2013 | 8/29/2013 | IN | 19769 | | | | | 2,850.00 | 2,850.00 | 2,850.00 |
| 8/28/2013 | 9/4/2013 | IN | 19989 | | | | | 814.00 | 814.00 | 814.00 |
| 11/21/2013 | ######## | IN | 23279 | | | | | 2,850.00 | 2,850.00 | 2,850.00 |
| 12/23/2013 | ######## | IN | 23517 | | | | | 2,850.00 | 2,850.00 | 2,850.00 |
| 12/4/2013 | ######## | IN | 23736 | | | | | 2,850.00 | 2,850.00 | 2,850.00 |
| 12/11/2013 | ######## | IN | 23941 | | | | | 2,850.00 | 2,850.00 | 2,850.00 |
| 12/18/2013 | ######## | IN | 24147 | | | | | 2,850.00 | 2,850.00 | 2,850.00 |
| 1/2/2014 | 1/9/2014 | IN | 24362 | | | | 2,850.00 | | 2,850.00 | 2,850.00 |
| 1/6/2014 | 1/13/2014 | IN | 24565 | | | | 2,850.00 | | 2,850.00 | 2,850.00 |
| 1/14/2014 | 1/21/2014 | IN | 24961 | | | | 2,850.00 | | 2,850.00 | 2,850.00 |
| 1/22/2014 | 1/29/2014 | IN | 25302 | | | 2,850.00 | | | 2,850.00 | 2,850.00 |
| 1/27/2014 | 2/3/2014 | IN | 25519 | | | 2,850.00 | | | 2,850.00 | 2,850.00 |
| 1/31/2014 | 2/7/2014 | IN | 25735 | | | 2,850.00 | | | 2,850.00 | 2,850.00 |
| 2/3/2014 | 2/17/2014 | IN | 26228 | | | 2,850.00 | | | 2,850.00 | 2,850.00 |
| 2/7/2014 | 2/21/2014 | IN | 26011 | | | 2,850.00 | | | 2,850.00 | 2,850.00 |
| 2/10/2014 | 2/26/2014 | IN | 26435 | | | | | | 2,850.00 | 2,850.00 |
| 2/14/2014 | | IN | 26489 | | | | | | 2,850.00 | 2,850.00 |
| 2/19/2014 | | IN | 26435 | | 439.94 | | | | 439.94 | 439.94 |
| 2/21/2014 | 2/28/2014 | IN | 26489 | | 2,850.00 | | | | 2,850.00 | 2,850.00 |
| 2/26/2014 | 3/6/2014 | IN | 26702 | | 2,850.00 | | | | 2,860.00 | 2,850.00 |
| 2/27/2014 | 3/13/2014 | IN | 26966 | | 2,850.00 | | | | 2,850.00 | 2,850.00 |
| 3/6/2014 | 3/19/2014 | IN | 27181 | | 2,850.00 | | | | 2,850.00 | 2,850.00 |
| 3/13/2014 | 3/26/2014 | IN | 27504 | | 2,850.00 | | | | 2,850.00 | 2,850.00 |
| **Vendor Total:** | | | | 0.00 | 14,689.94 | 14,250.00 | 8,550.00 | 0.00 | 46,414.00 | 83,903.94 | 83,903.94 |

**Vendor No.:** SUN01    **Vendor Name:** SUNSHINE CLEANING CONTRACTORS, I

| Invoice Date | Due Date | Type | Invoice No. | | | | | | Total | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 7/21/2013 | 8/20/2013 | IN | SA20130741 | | | | | 214.00 | 214.00 | 214.00 |
| 7/28/2013 | 8/27/2013 | IN | SA20130761 | | | | | 214.00 | 214.00 | 214.00 |
| 7/31/2013 | 8/30/2013 | IN | SA20130705 | | | | | 946.95 | 946.95 | 946.95 |
| 9/30/2013 | | IN | SA20130805 | | | | | 948.02 | 948.02 | 948.02 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,322.97 | 2,322.97 | 2,322.97 |

**Vendor No.:** SUZ01    **Vendor Name:** SUZO-HAPP GROUP

| Invoice Date | Due Date | Type | Invoice No. | | | | | | Total | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/7/2013 | 8/14/2013 | IN | 2273592 | | | | | 160.43 | 160.43 | 160.43 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.43 | 160.43 | 160.43 |

**Vendor No.:** SYS01    **Vendor Name:** SYSCO SOUTH FLORIDA INC.

| Invoice Date | Due Date | Type | Invoice No. | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|
| 7/23/2013 | 8/22/2013 | IN | 307231145 | | | | | 1,415.87 | 1,415.87 |
| 7/30/2013 | 8/29/2013 | IN | 307301088 | | | | | 217.04 | 217.04 |
| 8/6/2013 | 9/5/2013 | IN | 308061169 | | | | | 687.63 | 687.63 |

| Vendor No. / Invoice | Type | Date | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 2,320.54 | 2,320.54 | 2,320.54 |
| **Vendor No.: THE05** — HOME DEPOT CREDIT SERVICES | | | | | | | | | | |
| 062413 | IN | 6/24/2013 | 7/24/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 1,962.94 | 1,962.94 | 1,962.94 |
| 072513 | IN | 7/25/2013 | 8/24/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 1,077.11 | 1,077.11 | 1,077.11 |
| 082513 | IN | 8/25/2013 | 9/24/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 1,861.50 | 1,861.50 | 1,861.50 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 4,901.55 | 4,901.55 | 4,901.55 |
| **Vendor No.: TOT01** — TOTAL COMPLIANCE NETWORK, INC. | | | | | | | | | | |
| 320390 | IN | 7/31/2013 | 8/30/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 980.00 | 980.00 | 980.00 |
| 322016 | IN | 8/31/2013 | 9/30/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 140.00 | 140.00 | 140.00 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 1,120.00 | 1,120.00 | 1,120.00 |
| **Vendor No.: UGM01** — UGM ENTERPRISES | | | | | | | | | | |
| 3415 | IN | 7/16/2013 | 8/15/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 48,111.05 | 48,111.05 | 48,111.05 |
| 3429 | IN | 7/31/2013 | 8/30/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 4,250.00 | 4,250.00 | 4,250.00 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 52,361.05 | 52,361.05 | 52,361.05 |
| **Vendor No.: UNI15** — UNITED FIRE PROTECTION, INC. | | | | | | | | | | |
| 41777 | IN | 7/24/2013 | 7/31/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 991.25 | 991.25 | 991.25 |
| 43207 | IN | 8/31/2013 | 9/7/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 1,626.40 | 1,626.40 | 1,626.40 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 2,617.65 | 2,617.65 | 2,617.65 |
| **Vendor No.: WEE01** — THE WEEKS-LERMAN GROUP, LLC | | | | | | | | | | |
| PINV-073451 | IN | 8/19/2013 | 9/18/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 900.41 | 900.41 | 900.41 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 900.41 | 900.41 | 900.41 |
| **Vendor No.: ZAP02** — ZAP LOGISTICS | | | | | | | | | | |
| 053267 | IN | 8/1/2013 | 8/31/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 14.51 | 14.51 | 14.51 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 14.51 | 14.51 | 14.51 |
| **MIAMI Totals:** | | | | 604,244.92 | 98,107.93 | 14,250.00 | 8,550.00 | 982,239.79 | 1,103,147.72 | 1,707,392.64 |
| **PLAYER** | | | | | | | | | | |
| **Vendor No.: AIZ02** — JON AIZPITARTE | | | | | | | | | | |
| 0000017936 | IN | 4/22/2013 | 5/22/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| **Vendor No.: CRY02** — CRYSTAL SPRINGS WATER CO. | | | | | | | | | | |
| 1678636 090213 | IN | 9/2/2013 | 9/9/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 222.36 | 222.36 | 222.36 |
| **Vendor Total:** | | | | 0.00 | 0.00 | 0.00 | 0.00 | 222.36 | 222.36 | 222.36 |
| **Vendor No.: ERK02** — AITZOL ERKIAGA | | | | | | | | | | |
| 053013 | IN | 5/30/2013 | 6/29/2013 | 0.00 | 0.00 | 0.00 | 0.00 | 1,607.70 | 1,607.70 | 1,607.70 |

|  | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 1,607.70 | 1,607.70 | 1,607.70 |
| Vendor No.: ERK03 | | | | | | | | |
| 017977 | 5/11/2013 | IN | Vendor Name: ARITZ ERKIAGA | | | 1,607.88 | 1,607.88 | 1,607.88 |
|  | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 1,607.88 | 1,607.88 | 1,607.88 |
| Vendor No.: FED01 | | | | | | | | |
| 1-211-22309 | 8/15/2013 | IN | Vendor Name: FEDEX | | | 14.11 | 14.11 | 14.11 |
|  | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 14.11 | 14.11 | 14.11 |
| Vendor No.: FLO06 | | | | | | | | |
| 0001412 | 5/28/2013 | IN | Vendor Name: BENAT FLORES | | | 1,700.00 | 1,700.00 | 1,700.00 |
|  | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 1,700.00 | 1,700.00 | 1,700.00 |
| Vendor No.: GON01 | | | | | | | | |
| 052813 | 5/26/2013 | IN | Vendor Name: RUBEN GONZALEZ | | | 1,548.53 | 1,548.53 | 1,548.53 |
|  | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 1,548.53 | 1,548.53 | 1,548.53 |
| Vendor No.: GUI01 | | | | | | | | |
| 017967 | 6/11/2013 | IN | Vendor Name: JULIAN GUISASOLA | | | 1,700.00 | 1,700.00 | 1,700.00 |
| 082713 | 8/27/2013 | IN | | | | 25.00 | 25.00 | 25.00 |
|  | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 1,725.00 | 1,725.00 | 1,725.00 |
| Vendor No.: OSA02 | | | | | | | | |
| 061913 | 7/19/2013 | IN | Vendor Name: INAKI OSA | | | 1,398.90 | 1,398.90 | 1,398.90 |
|  | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 1,398.90 | 1,398.90 | 1,398.90 |
| Vendor No.: RUI01 | | | | | | | | |
| 102313 | 10/23/2013 | IN | Vendor Name: RICARDO RUIZ | | | 25.00 | 25.00 | 25.00 |
|  | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 25.00 | 25.00 | 25.00 |
| Vendor No.: SOE01 | | | | | | | | |
| 082713 | 9/26/2013 | IN | Vendor Name: WAGIMAN SOEMANTO | | | 257.48 | 257.48 | 257.48 |
|  | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 257.48 | 257.48 | 257.48 |
| SUMMER PLAYER Totals: | | | | | | 11,806.96 | 11,806.96 | 11,806.96 |
| Vendor No.: DAN01 | | | | | | | | |
| 022813OUTS | 2/28/2013 | IN | Vendor Name: DANIA JAI-ALAI | | | 2,376.28 | 2,376.28 | 2,376.28 |
|  | Vendor Total: | 0.00 | 0.00 | 0.00 | 0.00 | 2,376.28 | 2,376.28 | 2,376.28 |
| Vendor No.: DAN01-SUMMER | | | | | | | | |
| 053113 | 7/14/2013 | | Vendor Name: DANIA JAI-ALAI | | | 200.23 | 200.23 | 200.23 |

| Date | | Doc | Due Date | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 7/6/2013 | IN | 070613 | 8/5/2013 | | | | 9,991.39 | 9,991.39 | 9,991.39 |
| 7/13/2013 | IN | 071313 | 8/12/2013 | | | | 7,896.69 | 7,896.69 | 7,896.69 |
| 7/20/2013 | IN | 072013 | 8/19/2013 | | | | 9,687.63 | 9,687.63 | 9,687.63 |
| 7/24/2013 | IN | 068013 | 8/23/2013 | | | | 14,366.09 | 14,366.09 | 14,366.09 |
| 7/27/2013 | IN | 072713 | 8/26/2013 | | | | 10,975.39 | 10,975.39 | 10,975.39 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 53,117.42 | 53,117.42 | 53,117.42 |

Vendor No.: LEW01    Vendor Name: LEWISTON RACE WAYS

| Date | | Doc | Due Date | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 8/31/2013 | IN | 083113 | 9/7/2013 | | | | 5,015.41 | 5,015.41 | 5,015.41 |
| Vendor Total: | | | | 0.00 | 0.00 | 0.00 | 5,015.41 | 5,015.41 | 5,015.41 |

Vendor No.: STA03    Vendor Name: STATE OF FLORIDA

| Date | | Doc | Due Date | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 3/16/2014 | IN | 2013 | 3/23/2014 | | | 11,520.00 | | 11,520.00 | 11,520.00 |
| Vendor Total: | | | | 0.00 | 0.00 | 11,520.00 | 0.00 | 11,520.00 | 11,520.00 |

| SUMMER Totals: | | | | 0.00 | 0.00 | 11,520.00 | 60,509.11 | 72,029.11 | 72,029.11 |

| Report Total: | | | | 793,625.93 | 62,762.32 | 559,474.39 | 2,524,645.91 | 3,216,239.88 | 4,009,865.81 |
| | | | | 19.79% | 1.57% | 13.95% | 62.96% | 80.21% | 100.00% |
| | | | | | | 1.73% | | | |
| | | | | | | 69,357.26 | | | |

CR: Credit Note    DB: Debit Note    IN: Invoice    IT: Interest Charge    PI: Prepayment    MC: Miscellaneous Payment

AD: Adjustment    CF: Applied Credit (from)    CT: Applied Credit (to)    DF: Applied Debit (from)    DT: Applied Debit (to)

ED: Earned Discount Taken    GL: Gain or Loss (multicurrency ledgers)    PY: Payment    RD: Rounding

178 vendors printed

## SCHEDULE 2.07
## NO MATERIAL CHANGE

Schedule 2.10 regarding the current status of pending and/or threatened legal proceedings of the Seller Parties.

Schedule 2.06(b) regarding defaults under terms or provisions of Contracts relating to the Business, the Assets or Seller.

See Schedule 2.09(a) regarding late filings.

31

## SCHEDULE 2.09(a)
## TAXES

1.    Seller made a late 941 payment and was put on a payment plan to pay $1,725 monthly for 63 months for penalties and interest relating to the late payment.  Seller paid the Internal Revenue Service in full on July 25, 2013.

2.    Seller filed its 2011 consolidated federal and state income tax returns after their extended due dates.  Since there was no tax due with the returns, due to the losses experienced by the Seller in 2011, management expects no significant adverse repercussions.

3.    Seller will have to pay Miami-Dade County, Florida and St. Lucie County, Florida for 2013 real property taxes and tangible personal property taxes, which are due in March but may be paid earlier for a discount.

4.    Miami-Dade County, Florida and St. Lucie County, Florida 2012 real property taxes and tangible personal property taxes were paid on July 18, 2013 and May 10, 2013, respectively.

5.    Seller has not filed its 2012 consolidated federal and state income tax returns.

32

## SCHEDULE 2.10
## LEGAL PROCEEDINGS

1.      See the Loss Runs for each insurance policy, which were included in the Intralinks data room created in connection with Seller's bankruptcy auction and Purchaser acknowledges receipt thereof. To the extent necessary Seller shall provide an updated list of insurance claims pursuant to a Schedule Supplement in accordance with Section 4.13(e) of the Agreement.

2.      City of Miami, Florida is requiring that a sprinkler system and emergency lighting be installed at the Miami Jai-Alai Facility, which will cost approximately $400,000.00 as disclosed on Schedule 2.11. Approximately 50% of the work has been completed.

3.      ABC Funding, LLC, et. al. v. Florida Gaming Centers, Inc., et. al., Miami-Dade County Circuit Court, Action No. 12-35064-CA-58.

4.      ABC Funding, LLC, et. al. v. Florida Gaming Centers, Inc., et. al., St. Lucie County Circuit Court, Action No. 56-2012-CA-003525-AXXXHC.

5.      Herbert Silverberg v. Florida Gaming Corp., Silvermark LLC, et. al., Delaware Court of Chancery Civil Action, No. 8292-VCN.

6.      Florida Gaming Centers, Inc. v. Innovation Capital LLC, Florida Circuit Court – Miami-Dade, No. 2013-005105-CA-01.

## SCHEDULE 2.11
## COMPLIANCE WITH LAWS

City of Miami, Florida is requiring that a sprinkler system and emergency lighting be installed at the Miami Jai-Alai Facility, which will cost approximately $400,000.00. Approximately 50% of the work has been completed.

## SCHEDULE 2.12(a)
## BENEFIT PLANS: ERISA

1.  401(k) Plans
    (a) Player – company $100 monthly contribution per player
    (b) Non – Player ; Voluntary No company contribution or match
2.  Employment Agreements
    (a) W. Bennett Collett, Jr.
    (b) Daniel J. Licciardi
    (c) Director of Marketing – pending Court Approval
    (d) Director of HR – pending Court Approval
3.  Employee Benefit Plans
    (a) Health Care – employer contribution
    (b) Life Insurance – with health plan
    (c) Major medical – voluntary – no company contribution
    (d) Vision and Dental

35

Florida Gaming 2013 Payroll Deductions

12/01/2013-12/31/2014 Plan Year

**HMO 5563** — EMPLOYER PAYS 75% OF THIS PLAN FOR EACH PLAN/PLAYERS ARE 100% ER PAID

| Tier | | Mo. Prem. | 75% Employer Contribution | Monthly EE Health Premium | Mo. Life Prem. | 75% Employer Contribution | Monthly EE Life Premium | Monthly EE Premium | EE Mo. Cont. | EE Bi-Weekly Cont | EE Weekly Cont. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EE Only | 118 | $413.79 | $310.34 | $103.45 | $5.40 | $4.05 | $1.35 | $104.80 | $104.80 | $48.37 | $24.18 |
| EE+1 | 7 | $959.99 | $310.34 | $649.65 | $5.40 | $4.05 | $1.35 | $651.00 | $651.00 | $300.46 | $150.23 |
| EE+2 or more | 7 | $1,191.75 | $310.34 | $881.41 | $5.40 | $4.05 | $1.35 | $882.76 | $882.76 | $407.43 | $203.71 |
| Monthly | 132 | $63,889.40 | $40,964.88 | $22,924.52 | $712.80 | $534.60 | $178.20 | $23,102.72 | $23,102.72 | $10,662.09 | $5,331.40 |
| Annual | | $766,672.80 | $491,578.56 | $275,094.24 | $8,553.60 | $6,415.20 | $2,138.40 | $277,232.64 | $277,232.64 | $127,953.53 | $63,976.76 |

Health insurance premiums include $5.40 for the 15K life Ins. Co. pays 75% of that amount

**HMO OA 5229** — EMPLOYER PAYS 75% OF HMO 5563 FOR EACH PLAN/PLAYERS ARE 100% ER PAID

| Tier | | Mo. Prem. | 75% Employer Contribution | Monthly EE Health Premium | Mo. Life Prem. | 75% Employer Contribution | Monthly EE Life Premium | Monthly EE Premium | EE Mo. Cont. | EE Bi-Weekly Cont | EE Weekly Cont. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EE Only | 39 | $593.20 | $310.34 | $282.86 | $5.40 | $4.05 | $1.35 | $288.26 | $288.26 | $133.09 | $66.52 |
| EE+1 | 8 | $1,376.20 | $310.34 | $1,065.86 | $5.40 | $4.05 | $1.35 | $1,071.26 | $1,071.26 | $494.43 | $247.21 |
| EE+2 or more | 23 | $1,708.45 | $310.34 | $1,398.11 | $5.40 | $4.05 | $1.35 | $1,399.46 | $1,399.46 | $645.90 | $322.95 |
| Monthly | 70 | $73,438.75 | $21,723.80 | $51,714.95 | $378.00 | $283.50 | $94.50 | $51,999.80 | $51,999.80 | $23,999.91 | $11,999.95 |
| Annual | | $881,265.00 | $260,685.60 | $620,579.40 | $4,536.00 | $3,402.00 | $1,134.00 | $623,997.60 | $623,997.60 | $287,998.89 | $143,998.45 |

Health insurance premiums include $5.40 for the 15K life Ins. Co. pays 75% of that amount

**POS CH 5234** — EMPLOYER PAYS 75% OF HMO 5563 FOR EACH PLAN/PLAYERS ARE 100% ER PAID

| Tier | | Mo. Prem. | 75% Employer Contribution | Monthly EE Health Premium | Mo. Life Prem. | 75% Employer Contribution | Monthly EE Life Premium | Monthly EE Premium | EE Mo. Cont. | EE Bi-Weekly Cont | EE Weekly Cont. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| EE Only | 15 | $723.86 | $310.34 | $413.52 | $5.40 | $4.05 | $1.35 | $414.87 | | | |
| EE+1 | 2 | $1,679.94 | $310.34 | $1,369.60 | $5.40 | $4.05 | $1.35 | $1,370.35 | | | |
| EE+2 or more | 2 | $2,084.78 | $310.34 | $1,774.44 | $5.40 | $4.05 | $1.35 | $1,775.79 | | | |
| Monthly | 18 | $16,706.80 | $5,586.12 | $11,120.68 | $97.20 | $72.90 | $24.30 | $11,144.98 | | | |
| Annual | | $200,481.60 | $67,033.44 | $133,448.16 | $1,166.40 | $874.80 | | $133,739.76 | | | |

Health insurance premiums include $5.40 for the 15K life Ins. Co. pays 75% of that amount

## SCHEDULE 2.13(a)
## REAL PROPERTY

### Owned Property

| | Owner | Folio # | Street Address | Summary Legal Description |
|---|---|---|---|---|
| 3. | City National Bank of Florida | 01-3129-015-0010 | 3500 NW 37th Ave., Miami, FL 33142 | Fronton Heights Addn PB 90-20, City of Miami |
| 4. | City National Bank of Florida | 01-3129-015-0020 | 3500 NW 37th Ave., Miami, FL 33142 | Fronton Heights Addn PB 90-20, Dade County |
| 5. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1910 | 3695 NW 35th St., Miami, FL 33142 | Melrose Hgts 5th Sec. PB 17-22, Lots 24-29 BLK 71 |
| 6. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1970 | 3695 NW 35th St., Miami, FL 33142 | Melrose Hgts 5 Sec. PB 17-22, Lot 30, BLK 71 |
| 7. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1980 | 3695 NW 35th St., Miami, FL 33142 | Melrose Hgts, 5th Sec. PB 17-22, Lot 31, BLK 71 |
| 8. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1990 | 3695 NW 35th St., Miami, FL 33142 | Melrose Hgts 5th Sec. PB 17-22, Lot 32, BLK 71 |
| 9. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-2000 | 3601 NW 35th St., Miami, FL 33142 | Melrose Hgts 5th Sec. PB 17-22, Lots 33-36, BLK 71 |
| 10. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1290 | | Melrose Hgts 5th Sec. PB 17-22, Lots 1-17 inc. & 21–26 inc. BLK 69 |
| 11. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1460 | 3663 NW 33rd St., Miami, FL 33142 | Melrose Hgts. 5th Sec. PB 17-22, Lots 18-19  BLK 69 |
| 12. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1540 | | Melrose Hgts. 5th Sec. PB 17-22, Lots 1-18 & 25 & 26 BLK 70 & N1/2 34 ST S of LTS 16-17-18 |
| 13. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1720 | 3655 NW 34th St., Miami, FL 33142 | Melrose Hgts. 5th Sec. PB 17-22, Lots 19-22 Inc. BLK 70 & N ¼ of NW 34th St Lyg S & Adj. |
| 14. | Florida Gaming Centers, Inc. and City National Bank of Florida | 30-3128-014-1730 | 3635 NW 34th St., Miami, FL 33142 | Melrose Hgts. 5th Sec. PB 17-22, Lots 23 & 24 Blk 70 & N ½ of NW 34 St. Lyg. S & Adj. Closed Per |
| 15. | Florida Gaming Centers, Inc. | 2313-233-0001-000/0 | 1750 S. Kings Hwy., Ft. Pierce, FL 34945 | |
| 16. | Florida Gaming Corporation | 2313-233-0002-000/7 | 1776 Kings Hwy., Ft. Pierce, FL 34945 | |
| 17. | Florida Gaming Corporation | 2313-233-0003-000/4 | 1790 Kings Hwy, Ft. Pierce, FL 34945 | |
| 18. | Florida Gaming Centers, Inc. | 2313-322-0012-000/3 | 0 Kings Hwy, Ft. Pierce, FL | |

36

34945

## Real Property Leases

| | Lessee | Name of Lease | Facility |
|---|---|---|---|
| 19. | Casino Café | Food Services Management Agreement (Florida Gaming Corporation as Landlord) | Miami |
| 20. | Summer Jai Alai Partners | Lease (Seller as Landlord) | Miami |

37

## SCHEDULE 2.13(b)
## REAL PROPERTY ISSUES

1.    The Real Property is insured by a Lender's policy of title insurance effective as of the closing date of the Summit Loan.  Seller does not have an Owner's policy of title insurance on the Real Property.

2.    City of Miami, Florida is requiring that a sprinkler system and emergency lighting be installed at the Miami Jai-Alai Facility, which will cost approximately $400,000.00. Approximately 50% of the work has been completed.

3.    Ft. Pierce Jai-Alai needs to replace a non-functioning fire pump and control panel for same that were damaged in the summer storms.  The preliminary estimate for the repair/replacement is approximately $30,000.

38

## SCHEDULE 2.13(d)
## INSURANCE CLAIMS/NOTICE OF DEFECTS

1.    City of Miami, Florida is requiring that a sprinkler system and emergency lighting be installed at the Miami Jai-Alai Facility, which will cost approximately $400,000.00. Approximately 50% of the work has been completed.

2.    Ft. Pierce Jai-Alai needs to replace a non-functioning fire pump and control panel for same that were damaged in the summer storms. The preliminary estimate for the repair/replacement is approximately $30,000.

3.    See the list of insurance claims set forth in the Loss Runs described on Schedule 2.10.

4.    Seller has the right to cause the Miami-Dade County, Florida to vacate 37th Avenue pursuant to Resolution, No. R-508-11, recorded in Official Records Book 27779, Page 151, Public Records of Miami-Dade County, Florida, subject to the terms of the Stipulated Order of Taking and Final Judgment recorded March 19, 2009 in Official Records Book 26794, Page 1330, Public Records of Miami-Dade County, Florida, and the terms, covenants, conditions, rights, duties and obligations contained in that certain Settlement Agreement contained therein.

5.    There is a civil judgment against Seller for $20,000 held by Tampa Bay Systems Sales, Inc.

6.    There is a state tax warrant against Seller for $234 by the State of Indiana.

## SCHEDULE 2.13(e)
## NOTICE OF VIOLATIONS

Seller received a Zoning Citation, No. 2012-TO26004 for failure to obtain a proper permit for the parking lot. Seller resolved this issue and the Citation has been released.

## SCHEDULE 2.13(m)
## PERCENTAGE PAYMENTS

| Revenue Sharing Agreement | Percentage Payment | Amount Already Paid |
|---|---|---|
| Jai-Alai Players Collective Bargaining Agreement | 1.75% of Slot Revenue | Paid in full on 15th of each month |
| City of Miami, Florida | 1.5% of Slot Revenue | Paid in full on 15th of each month |
| Miami-Dade County, Florida | 1.5% of Slot Revenue | Paid in full on 15th of each month |
| City of Ft. Pierce, Florida and St. Lucie County, Florida | 3.0% of Slot Revenue and poker rake | Paid annually; approximately $80,000 for 2013 will be due in spring 2014 |

## SCHEDULE 2.16(a)
## CONTRACTS

All written and unwritten employment contracts:

See Schedule 2.23(a).

All Contracts containing a provision or covenant prohibiting or limiting the ability of the Seller to engage in any business activity or compete with any Person:

Summit Loan and Security Agreements.

All partnership, joint venture, shareholders' or other similar Contracts:

None.

All Contracts with distributors, dealers, manufacturer's representatives, sales agencies or franchises:

None.

All Contracts relating to Indebtedness of the Seller:

See Schedule 2.06(b).

All Contracts providing for (A) the future disposition or acquisition of any assets or properties, and (B) any merger or other business combination:

None.

All Contracts between Seller and any Affiliate of Seller:

See Schedule 2.18.

All Contracts that limit or contain restrictions on the ability of Seller to incur Indebtedness or incur or suffer to exist any Lien, or to purchase or sell any Assets or to change the Business:

1. Summit Loan and Security Agreements.

2. Mortgage and Security Agreement, dated as of March 27, 2009, among Seller, City National Bank of Florida, and Miami-Dade County.

3. Mortgage and Security Agreement, dated as of June 17, 2011, among Seller, City National Bank of Florida, and Miami-Dade County.

42

4. Food Services Management Agreement, dated November 2011, between Casino Café, Inc. and Seller.

5. The Licenses and other Intangible Personal Property described in Schedule IV to the Agreement.

All collective bargaining or similar union contracts covering an Employee or the Jai-Alai Players:

Jai-Alai Players Collective Bargaining Agreement.

All other Contracts that (A) involve the future payment or potential future payment of more than $25,000 annually or (B) cannot be terminated within thirty (30) days after giving notice of termination without resulting in any cost or penalty to Seller:

The Contracts listed on Schedule II, which show a monthly or annual amount greater than $25,000 annually, and the Contracts on the attached list.

| | Company | Service/Product | Property | Contract Date | Exp Date | Amount | Frequency |
|---|---|---|---|---|---|---|---|
| 1. | Teleview Racing Patrol, Inc. (now owned by International Sound Corp.) | Televising Pari-mutuel Wagering | Miami | Feb. 16, 2011 | Feb. 15, 2016 | $331 | Daily - Live |
| 2. | Teleview Racing Patrol, Inc. (now owned by International Sound Corp.) | Televising Pari-mutuel Wagering | Miami | Feb. 16, 2011 | Feb. 15, 2016 (not in effect right now) | $50 | Daily - Simulcast |
| 3. | Konica-Minolta | Copier Leases | Miami | Oct. 18, 2011 | Oct. 17, 2016 | $2,640 | Monthly |
| 4. | Otis Elevator | Elevator Service Contract (3) elevators | Miami | | | $6,366 | Quarterly |
| 5. | Miami-Dade County, Florida | Promissory Note in the face amount of $3,013,586.10 | Miami | March 27, 2009 | April 1, 2024 | See Amortization schedule attached to the Note | Monthly |
| 6. | Miami-Dade County, Florida | Mortgage and Security Agreement to Miami-Dade County, Florida, recorded in Book 26817, Page 2713 (Parcel 1). | Miami | April 6, 2009 | | | |
| 7. | Miami-Dade County, Florida | Promissory Note in the face amount of $12,054,344.00 | Miami | June 17, 2011 | June 15, 2026 | See Amortization Schedule attached to the Note | Monthly |
| 8. | Miami-Dade County, Florida | Mortgage and Security Agreement to Miami-Dade County, Florida, recorded in Book 27728 at Page 1880 (Parcel 3). | Miami | June 17, 2011 | | | |
| 9. | Miami-Dade County, Florida | Settlement Agreement | Miami | February 3, 2009 | | | |
| 10. | Miami-Dade County, Florida | Letter Agreement | Miami | February 16, 2011 | | | |
| 11. | American Gaming System | Slot machine leases | Miami | Jan. 21, 2011 | Jul. 22, 2014 | $175,500 | Monthly |
| 12. | American Gaming System | Slot machine leases | Miami | Jan. 21, 2011 | Jan. 22, 2014 (now month to month) | $41,880 | Monthly |

44

| 13. | DigiDeal | Electronic blackjack dealers | Miami | Oct. 27, 2011 | Oct 15, 2014 | $2,000 | Monthly |

The Revenue Sharing Agreements shown on Schedule II.

45

### SCHEDULE 2.16(c)
### CONTRACTS – RIGHT TO TERMINATE
### AS A RESULT OF SALE

See Schedule 2.03(b).

## SCHEDULE 2.17
## INSURANCE

(i)    List of Policies – See Attached

(ii)   Summaries of Policies – See Attached

## Policy Overview

**Prepared on : 03/28/2014**

agency:  Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)840-6225
(954)640-6225
info@mackinsurance.com

For:  Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandl@aol.com

| Policy Type | Insurance Company | Policy Number | Policy Period | Total Cost |
|---|---|---|---|---|
| Directors and Officers | National Union Fire Insurance Compan | 16084571 | 3/5/2014 - 3/5/2015 | 111,430.00 |
| Commercial Employer Practic | Illinois National Insurance Company | 18185913 | 3/5/2014 - 3/5/2015 | 40,520.00 |
| General Liability | Philadelphia Indemnity Ins. Co | PHPK1081135 | 9/30/2013 - 9/30/2014 | 78,080.53 |
| Umbrella(C) | Philadelphia Indemnity Ins. Co | PHUB436145 | 9/30/2013 - 9/30/2014 | 33,553.00 |
| Umbrella(C) | North River Insurance Company | 5227476588 | 9/30/2013 - 9/30/2014 | 36,676.80 |
| Bonds | Lexon Insurance Company | 1022599 | 8/17/2013 - 8/17/2014 | 8,104.00 |
| Bonds | Lexon Insurance Company | 1022600 | 8/17/2013 - 8/17/2014 | 8,104.00 |
| Bonds | Lexon Insurance Company | 1026701 | 8/17/2013 - 8/17/2014 | 4,052.00 |
| Workers Compensation | FWCJUA | 6FR13UB2864C49613 | 7/23/2013 - 7/23/2014 | 843,707.00 |
| Business Auto | Default Company | ALLSTATE 048666902 | 6/29/2013 - 6/29/2014 | 0.00 |
| Commercial Property | Arch Specialty Insurance Company | ESP730010400 | 5/31/2013 - 5/31/2014 | 68,245.00 |
| Bonds | Lexon Insurance Company | 1056758 | 4/27/2013 - 4/27/2014 | 162,080.00 |
| Commercial Property | Lexington Insurance Company | 018336634 | 1/24/2014 - 1/24/2015 | 537,541.63 |
| Flood | Standard Fire Insurance | 6002559869 | 4/26/2013 - 4/26/2014 | 11,093.00 |
| Bonds | The Fidelity & Deposit Company of Mar | CCPZF510605506 | 10/17/2012 - 10/17/2015 | 506.50 |
| Commercial Property | Aspen Specialty Insurance Company | PXA96P014 | 1/24/2014 - 1/24/2015 | 166,708.25 |
| Commercial Property | Arch Specialty Insurance Company | ESP005326001 | 1/24/2014 - 1/24/2015 | 134,933.89 |
| Commercial Property | Landmark American | LHD385605 | 1/24/2014 - 1/24/2015 | 56,049.13 |
| Boiler & Machinery | Hartford Steam Boiler Ins. Co. | FBP9444849 | 1/24/2014 - 1/24/2015 | 9,437.10 |
| Bonds | Lexon Insurance Company | 1056759 | 1/1/2014 - 1/1/2016 | 16,208.00 |
| Crime | National Union Fire Insurance Compan | 018292775 | 1/1/2014 - 1/1/2015 | 15,516.00 |
| Flood | Wright National Flood Insurance Compa | 0911150143223 | 11/9/2013 - 11/9/2014 | 2,340.00 |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

**Prepared on : 03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandi@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Directors and Officers** | | National Union Fire Insurance C | 16084571 | 3/5/2014 - 3/5/2015 | |
| General Aggregate | 3,000,000. | | | | |
| Securities Retention | 500,000 Ded | | | | |
| Designated Claim Retention | 750,000 Ded | | | | |
| All other Loss to which Retention applies | 500,000 Ded | | | | |

These schedules are provided as a brief outline of your policy. You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

Prepared on : 03/28/2014

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL  33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL  33142
Res:  (561)971-1978
Bus:  (305)633-6400
cetaceandl@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| Commercial Employer Practice Liability | | Illinois National Insurance Comp | 18185913 | 3/5/2014 - 3/5/2015 | |
| General Aggregate | 1,000,000. | | | | |
| Class Action | 500,000 Ded | | | | |
| Third Party | 500,000 Ded | | | | |
| All other Loss to which Retention applies | 250,000 Ded | | | | |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

# Summary of Insurance

**Prepared on : 03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandt@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Commercial Property** | | Lexington Insurance Company | 018336834 | 1/24/2014 - 1/24/2015 | |
| **Loc # 00001    Bldg #** | | | | | |
| 3500 N. W. 37th Avenue | | | | | |
| Miami, FL 33142 | | | | | |
| Building | 25,000,000 | | | | |
| | 25,000,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:  Replacement Cost | | | | | |
| Business Personal Property | 20,000,000 | | | | |
| | 20,000,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:  Replacement Cost | | | | | |
| BI w/ Extra Expense | 22,000,000 | | | | |
| | 22,000,000 Lim | | | | |
| | 7 Ded | | | | |
| Valuation:  Actual Loss Sustained | | | | | |
| Outdoor Property | 40,000 | | | | |
| | 40,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:  Replacement Cost | | | | | |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

**Prepared on: 03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandl@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Commercial Property** | | Aspen Specialty Insurance Com | PXA96P014 | 1/24/2014 - 1/24/2015 | |
| Loc # 00001      Bldg # 00001 | | | | | |
| 3500 N. W. 37th Avenue | | | | | |
| Miami, FL 33142 | | | | | |
| Building | 25,000,000 | | | | |
| | 25,000,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:  Replacement Cost | | | | | |
| Business Personal Property | 20,000,000 | | | | |
| | 20,000,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:  Replacement Cost | | | | | |
| BI w/ Extra Expense | 22,000,000 | | | | |
| | 22,000,000 Lim | | | | |
| | 7 Ded | | | | |
| Valuation:  Actual Loss Sustained | | | | | |
| Outdoor Property | 40,000 | | | | |
| | 40,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:  Replacement Cost | | | | | |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

# Summary of Insurance

**Prepared on : 03/28/2014**

**agency:** Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)840-6225
(954)840-6225
info@mackinsurance.com

**For:** Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceanfl@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Commercial Property** | | Arch Specialty Insurance Comp: | ESP00S326001 | 1/24/2014 - 1/24/2015 | |
| **Loc # 00001    Bldg #** | | | | | |
| 3500 N. W. 37th Avenue | | | | | |
| Miami, FL 33142 | | | | | |
| Building | 25,000,000 | | | | |
| | 25,000,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:   Replacement Cost | | | | | |
| **Business Personal Property** | 20,000,000 | | | | |
| | 20,000,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:   Replacement Cost | | | | | |
| **BI w/ Extra Expense** | 22,000,000 | | | | |
| | 22,000,000 Lim | | | | |
| | 7 Ded | | | | |
| Valuation:   Actual Loss Sustained | | | | | |
| **Outdoor Property** | 40,000 | | | | |
| | 40,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:   Replacement Cost | | | | | |

These schedules are provided as a brief outline of your policy.   You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

**Prepared on: 03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandl@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Commercial Property** | | Landmark American | LHD385605 | 1/24/2014 - 1/24/2015 | |
| **Lot # 00001        Bldg #** | | | | | |
| 3500 N. W. 37th Avenue | | | | | |
| Miami, FL 33142 | | | | | |
| **Building** | 25,000,000 | | | | |
| | 25,000,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:  Replacement Cost | | | | | |
| **Business Personal Property** | 20,000,000 | | | | |
| | 20,000,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:  Replacement Cost | | | | | |
| **BI w/ Extra Expense** | 22,000,000 | | | | |
| | 22,000,000 Lim | | | | |
| | 7 Ded | | | | |
| Valuation:  Actual Loss Sustained | | | | | |
| **Outdoor Property** | 40,000 | | | | |
| | 40,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation:  Replacement Cost | | | | | |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

**Prepared on: 03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandi@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Boiler & Machinery** | | Hartford Steam Boiler Ins. Co. | FBP9444849 | 1/24/2014 - 1/24/2015 | |
| Loc # 00001    **Bldg # 00001** | | | | | |
| 3500 N. W. 37th Avenue | | | | | |
| Miami, FL 33142 | | | | | |
| Equipment Breakdown | 100,000,000 | | | | |
| | 100000000 Lim | | | | |
| Business Income | 34,696,000 | | | | |
| | 34,696,000 Lim | | | | |
| Ordinance or Law | 250,000 | | | | |

These schedules are provided as a brief outline of your policy. You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

**Prepared on : 03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandi@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Bonds** | | | | | |
| Loc # 00001      Bldg # 00001 | | | | | |
| 3500 N. W. 37th Avenue | | | | | |
| Miami, FL 331:42 | | | | | |
| Parimutual/Slot Machine Bond | 100,000 | Lexon Insurance Company | 1056759 | 1/1/2014 - 1/1/2016 | |

These schedules are provided as a brief outline of your policy.   You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

Prepared on: 03/28/2014

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954) 840-6225
(954) 840-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561) 971-1978
Bus: (305) 633-6400
cetaceandf@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| | | National Union Fire Insurance Co | 018292775 | 1/1/2014 - 1/1/2015 | |
| **Crime** | | | | | |
| A. Employee Dishonesty | 500,000/5,000 Ded | | | | |
| B. Forgery or Alteration | 500,000/5,000 Ded | | | | |
| C. Theft, Disappearance & Destruction | | | | | |
| Sec 1-Inside the Premises | 500,000/5,000 Ded | | | | |
| Sec 2-Outside the Premises | 500,000/5,000 Ded | | | | |
| D. Robbery & Safe Burglary | | | | | |
| Sec 1-Inside-Robbery of Custodians | | | | | |
| Safe Burglary | | | | | |
| Sec 2-Outside the Premises | | | | | |
| E. Premises Burglary | | | | | |
| F. Computer Fraud | 500,000/5,000 Ded | | | | |
| G. Extortion | | | | | |
| Ins Loss Participation | | | | | |
| H. Premises Theft & Robbery Outside | | | | | |
| Sec 1 - Theft | | | | | |
| Sec 2 - Robbery Outside | | | | | |
| Q. Robbery & Safe Burglary | | | | | |
| Money & Securities | | | | | |
| Sec 1 - Inside the Premises | | | | | |
| Sec 2 - Outside the Premises | | | | | |
| U. Other Coverage | | | | | |

These schedules are provided as a brief outline of your policy. You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

Prepared on : 03/28/2014

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)533-6400
cetaceandi@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| Flood | | Wright National Flood Insurance | 09115O143223 | 11/9/2013 - 11/9/2014 | 2,273.00 |
| Location Address: | | | | | |
| 1750 S KINGS HWY | | | | | |
| FORT PIERCE, FL 34945-3025 | | | | | |
| Location #: 0001  Building #: 00 | | | | | |
| Building Basic Limit | 175,000 | | | | |
| | 1,000 Ded | | | | |
| Building Additional Limit | 325,000 | | | | |
| ICC Premium | 4 | | | | |
| CRS Discount | -248 | | | | |
| CRS% | % | | | | |
| Fed Policy Fee | 44 | | | | |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

# Summary of Insurance

**agency:** Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

**Prepared on : 03/28/2014**

**For:** Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandi@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| General Liability | | Philadelphia Indemnity Ins. Co | PHPK1081135 | 9/30/2013 - 9/30/2014 | |
| General Aggregate | 3,000,000 | | | | |
| Rented to you | 5,000 Ded | | | | |
| Medical Expense | 100,000 | | | | |
| Products/Completed Ops Aggregate | Excluded | | | | |
| Personal & Advertising Injury | 3,000,000 | | | | |
| Each Occurrence | 1,000,000 | | | | |
| Employee Benefits | 1,000,000 | | | | |
| Garage & Dealers | 1,000,000/1,000,000 | Philadelphia Indemnity Ins. Co | PHPK1081135 | 9/30/2013 - 9/30/2014 | |

These schedules are provided as a brief outline of your policy. You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

# Summary of Insurance

Prepared on: **03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandf@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Umbrella(C)** | | Philadelphia Indemnity Ins. Co | PHUB436145 | 9/30/2013 - 9/30/2014 | |
| Coverage Type: Umbrella | | | | | |
| Each Occurrence | 20,000,000 | | | | |
| Aggregate | 20,000,000 | | | | |
| Products Completed Operations | 20,000,000 | | | | |
| Retained Limit | 10,000 Ded | | | | |

These schedules are provided as a brief outline of your policy. You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

**Prepared on : 03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)540-6225
(954)540-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandl@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| Umbrella(C) | | North River Insurance Company | 5227476588 | 9/30/2013 - 9/30/2014 | |
| Coverage Type: Other than Umbrella | | | | | |
| Each Occurrence | 20,000,000 | | | | |
| Aggregate | 20,000,000 | | | | |
| Products Completed Operations | 20,000,000 | | | | |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

# Summary of Insurance

Prepared on : 03/28/2014

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandl@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Bonds** | | Lexon Insurance Company | | | |
| Loc # 00001    Bldg # 00001<br>3500 N. W. 37th Avenue<br>Miami, FL 33142 | | | | | |
| Pari-Mutual Wagering Bond | 100,000 | | 1022599 | 8/17/2013 - 8/17/2014 | |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

Prepared on : 03/28/2014

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandi@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Bonds** | | | | | |
| Loc # 00001    Bldg # 00001 | | | | | |
| 3500 N. W. 37th Avenue | | | | | |
| Miami, FL 33142 | | | | | |
| Pari-Mutual **Wagering Bond** | 100,000 | Lexon Insurance Company | 1022600 | 8/17/2013 - 8/17/2014 | |

These schedules are provided as a brief outline of your policy.   You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

| | |
|---|---|
| agency: | Mack, Mack & Waltz Insurance Group, Inc. |
| | 1211 S Military Trail, Suite 100 |
| | Deerfield Beach, FL 33442 |
| | (954)640-6225 |
| | (954)640-6225 |
| | info@mackinsurance.com |

Prepared on : 03/28/2014

For:    Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandi@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Bonds** | | | | | |
| **Loc # 00001    Bldg #** | | | | | |
| 3500 N. W. 37th Avenue | | | | | |
| Miami, FL 33142. | | | | | |
| **Pari-Mutual Wagering Bond** | 50,000 | Lexon Insurance Company | 1026701 | 8/17/2013 - 8/17/2014 | |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

**Prepared on: 03/28/2014**

agency:
Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For:
Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandl@aol.com

| Coverage | | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|---|
| **Workers Compensation** | | | FWCJUA | 6FR13UB2864C49613 | 7/23/2013 - 7/23/2014 | |
| Part 1 - Workers Compensation States: | FL | | | | | |
| Part 2 - Employers Liability: | | | | | | |
| Increased employer's liability | | | | | | |
| Each Accident Limit: | | 500,000. | | | | |
| Disease Policy Limit: | | 500,000. | | | | |
| Disease Each Employee: | | 500,000. | | | | |
| Deductible: | | | | | | |
| Deductible Type: | | | | | | |
| Applies To: | | | | | | |
| Factor: | | | | | | |
| Factored Premium: | | | | | | |
| **Other Coverages:** | | | | | | |
| Experience Mod Factor 1 | | | | | | |
| Expense constant | | | | | | |
| Increased employer's liability | | | | | | |
| Drug Free Workplace Cr | | | | | | |
| Safety Program Cr | | | | | | |
| Part 3 - Other States Included: | FL | | | | | |
| Part 3 - Other States Excluded: | | | | | | |

These schedules are provided as a brief outline of your policy. You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

# Summary of Insurance

Prepared on: **03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)840-6225
(954)840-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceand@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Business Auto** | | Default Company | ALLSTATE 048666902 | 6/29/2013 - 6/29/2014 | |
| Combined single limit | 1,000,000. | | | | |
| Personal Injury Protection | Basic | | | | |
| Uninsured motorist BI-single limit NS | 300,000. | | | | |
| Comprehensive | 500 Ded | | | | |
| Collision | 500 Ded | | | | |
| Rental reimbursement | | | | | |

These schedules are provided as a brief outline of your policy. You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

| agency: | Mack, Mack & Waltz Insurance Group, Inc.<br>1211 S Military Trail, Suite 100<br>Deerfield Beach, FL 33442<br>(954)640-6225<br>(954)640-6225<br>info@mackinsurance.com | Prepared on : 03/28/2014 |
|---|---|---|
| | For: | Florida Gaming Centers, Inc.<br>3500 NW 37th Avenue<br>Miami, FL 33142<br>Res: (561)971-1978<br>Bus: (305)633-6400<br>cetaceandl@aol.com |

| Insurance Company | Policy Number | Policy Period |
|---|---|---|
| Arch Specialty Insurance Comp: | ESP730010400 | 5/31/2013 - 5/31/2014 |

| Coverage | Amount/Limits | Premium |
|---|---|---|
| **Commercial Property** | | |
| Loc # 00001    Bldg # 00001<br>1750 S. Kings Hwy<br>Ft. Pierce, FL 34945 | | |
| Building | 8,945,000 | |
| | 8,945,000 Lim | |
| | 10,000 Ded | |
| Valuation:  Replacement Cost<br>Coins:    90 | | |
| **Business Personal Property** | 504,042 | |
| | 504,042 Lim | |
| | 10,000 Ded | |
| Valuation:  Replacement Cost<br>Coins:    90 | | |
| **Business Income w/EE** | 496,000 | |
| | 496,000 Lim | |
| Valuation:  Actual Loss Sustained<br>Coins:    90 | | |
| Loc # 00001    Bldg # 00002<br>1750 S. Kings Hwy<br>Ft. Pierce, FL 34945 | | |
| Building | 75,000 | |
| | 75,000 Lim | |
| | 10,000 Ded | |
| Valuation:  Replacement Cost<br>Coins:    90 | | |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

**agency:** Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

**Prepared on : 03/28/2014**

**For:** Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceancl@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| Loc # 00001    Bldg # 00003 | | | | | |
| 1750 S. Kings Hwy | | | | | |
| Ft. Pierce, FL 34945 | | | | | |
| Fence Coverage | 18,000 | | | | |
| | 18,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation: Replacement Cost | | | | | |
| Coins: 90 | | | | | |
| Loc # 00001    Bldg # 00004 | | | | | |
| 1750 S. Kings Hwy | | | | | |
| Ft. Pierce, FL 34945 | | | | | |
| Lighting | 32,000 | | | | |
| | 32,000 Lim | | | | |
| | 10,000 Ded | | | | |
| Valuation: Replacement Cost | | | | | |
| Coins: 90 | | | | | |

These schedules are provided as a brief outline of your policy. You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

**Prepared on : 03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3550 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cstaceandl@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Bonds** | | | | | |
| Loc # 00001    Bldg #<br>3500 N. W. 37th Avenue<br>Miami, FL 33142 | | Lexon Insurance Company | 1056758 | 4/27/2013 - 4/27/2014 | |
| Slot Machine Tax Bond | 2,000,000 | | | | |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

Prepared on : 03/28/2014

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL  33442
(954)840-6225
(954)840-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL  33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandl@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| Flood | | Standard Fire Insurance | 6002559869 | 4/26/2013 - 4/26/2014 | 11,093.00 |
| Location Address: | | | | | |
| 3500 NW 37TH AVE | | | | | |
| MIAMI, FL 33142-4923 | | | | | |
| Location #: 0001  Building #: 00 | | | | | |
| Building Basic Limit | 175,000 | | | | |
| | 2,000 **Ded** | | | | |
| Building Additional Limit | 325,000 | | | | |
| Content Basic Limit | 150,000 | | | | |
| | 2,000 **Ded** | | | | |
| Content Additional Limit | 350,000 | | | | |
| ICC Premium | 55 | | | | |
| CRS Discount | -1,950 | | | | |
| CRS% | % | | | | |
| Fed Policy Fee | 40 | | | | |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## Summary of Insurance

Prepared on : 03/28/2014

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandl@aol.com

| Coverage | Amount/Limits | Insurance Company | Policy Number | Policy Period | Premium |
|---|---|---|---|---|---|
| **Bonds** | | | | | |
| Loc # 00001    **Bldg # 00001** | | | | | |
| 3500 N. W. 37th Avenue | | | | | |
| Miami, FL 33142 | | | | | |
| Employee Theft | 120,000 | The Fidelity & Deposit Company | CCPZF510605506 | 10/17/2012 - 10/17/2015 | |

These schedules are provided as a brief outline of your policy. You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

# Business Auto Vehicle Schedule

Prepared on: 03/28/2014

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandl@aol.com

**Policy No: ALLSTATE 048666902 LOB: AUTOB**

| Veh# | Cust# | Year | Make/Model | VIN | Garaged | Class | Cost New | Liab | PIP | Med | UM | UIM | Comp | Coll | SP | Stated Amt |
|------|-------|------|-----------|-----|---------|-------|----------|------|-----|-----|----|----|------|------|-----|-----------|
| 0001 | 0001 | 1998 | FORD/F150 | A39397 | Miami, FL | | 19,000 | X | X | | X | | 500 | 500 | 500 | |

These schedules are provided as a brief outline of your policy. You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

# General Liability Classification Schedule

**Prepared on : 03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)640-6225
(954)640-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandl@aol.com

Policy No: PHPK1081135 LOB: CGL

| Loc# | Classification | Class Code | Prem Basis | Exposure | Terr | Rate Prem/OPS | Rate Products | Premium Prem/OPS | Premium Products |
|---|---|---|---|---|---|---|---|---|---|
| 00001 | Attendees | 63218 | M | 270,138 | | | | | |
| 00001 | Security | 98751 | P | 1,500,000 | | | | | |
| 00001 | Parking Public Open Air | 46604 | S | 22,024 | | | | | |
| 00001 | Restaurants Oper Conc-FP | 16819 | S | 1,100,000 | | | | | |
| 00001 | Gift Shop - FP | 13506 | S | 48,845 | | | | | |
| 00001 | Restaurant Tavern/Liquor Sales | 58161 | S | 1,000,000 | | | | | |
| 00001 | Gambling - Casinos | 43990 | P | 1,500,000 | | | | | |
| 00001 | Building/Premise - Restaurant Lease | 61212 | A | 4,000 | | | | | |
| 00002 | Gift Shop - FP | 13506 | S | If Any | | | | | |
| 00002 | Attendees | 63218 | S | If Any | | | | | |
| 00002 | Restaurants Oper Conc-FP | 16819 | S | If Any | | | | | |
| 00003 | Parking Public Open Air | 46604 | S | If Any | | | | | |
| 00003 | Attendees | 63218 | S | If Any | | | | | |
| 00003 | Gift Shop - FP | 13506 | S | If Any | | | | | |
| 00003 | Parking Public Open Air | 46604 | S | If Any | | | | | |
| 00003 | Restaurants Oper Conc-FP | 16819 | S | If Any | | | | | |

These schedules are provided as a brief outline of your policy. You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

# Workers Compensation Rating Schedule

**Prepared on : 03/28/2014**

agency: Mack, Mack & Waltz Insurance Group, Inc.
1211 S Military Trail, Suite 100
Deerfield Beach, FL 33442
(954)840-6225
(954)840-6225
info@mackinsurance.com

For: Florida Gaming Centers, Inc.
3500 NW 37th Avenue
Miami, FL 33142
Res: (561)971-1978
Bus: (305)633-6400
cetaceandl@aol.com

**Policy No: 6FR13UB2864C49613   LOB: WORK**

| State/Loc# | Class | Category | Total Emp | Emp Part | Emp Full | Est Ann Renum | Rate | Est Ann Prem |
|---|---|---|---|---|---|---|---|---|
| FL / 00001 | 9182 | Athletic Sports or Park: Operations & Drivers | 0 | 0 | 0 | 2,504,397. | 3.46 | 86,652.14 |
| FL / 00001 | 9061 | Club NOC & Clerical | | | | 17,882,346. | 2.50 | 447,058.65 |

These schedules are provided as a brief outline of your policy.  You must refer to the provisions found in your policy for the details of your coverages, terms, conditions and exclusions that apply.

## SCHEDULE 2.18
## AFFILIATE TRANSACTIONS

1.    Florida Gaming Corporation owns a certain parcel adjacent to the Ft. Pierce Facility, by Warranty Deed, recorded in Official Records Book 913, Page 2536, Public Records of St. Lucie County, Florida and Warranty Deed, recorded in Official Records Book 913, Page 2538, Public Records of St. Lucie County, Florida.

2.    Employment Agreement between W. Bennett Collett, Jr. and the Seller dated as of April 25, 2011.

3.    Employment Agreement between Daniel Licciardi and the Seller dated as of April 25, 2011.

4.    Florida Gaming Corporation is the party to the following Included Contracts listed on Schedule II:    (i) Otis Elevator Service Contract (#15); (ii) Royal Cool Air Conditioning Maintenance and Service Contract (#17); (iii) CIP Report Writing System (#22); and (iv) Roberts Communication Satellite Service Contract (#23).

5.    There is an intercompany payable due to Florida Gaming Corporation by Seller in the approximate amount of $5,021,284.00.

**SCHEDULE 2.19(a)**
**ENVIRONMENTAL PERMIT**

NONE.

## SCHEDULE 2.20
## INVENTORY MATTERS

NONE.

## SCHEDULE 2.22
## SHARED FACILITIES/SERVICES

1.      Summer Jai-Alai and Summer Jai-Alai (1) permits are operated at Casino Miami Jai-Alai. The schedule is incorporated in the normal Miami jai-Alai schedule and CJMA receives rent for operating them but for no beneficial gain or loss for Summer. Dates are only operated to keep the permits alive. Lease is for 7 years from the start of slot operations at Casino Miami jai-Alai.

2.      Florida Gaming Corporation owns a certain parcel adjacent to the Ft. Pierce Facility, by Warranty Deed, recorded in Official Records Book 913, Page 2536, Public Records of St. Lucie County, Florida and Warranty Deed, recorded in Official Records Book 913, Page 2538, Public Records of St. Lucie County, Florida.

3.      Florida Gaming Corporation is the party to the following Included Contracts listed on Schedule II:   (i) Otis Elevator Service Contract (#15); (ii) Royal Cool Air Conditioning Maintenance and Service Contract (#17); (iii) CIP Report Writing System (#22); and (iv) Roberts Communication Satellite Service Contract (#23).

51

## SCHEDULE 2.23(a)
## EMPLOYEES

The Employee List was included in the Intralinks data room created in connection with Seller's bankruptcy auction and Purchaser acknowledges receipt thereof.

## SCHEDULE 2.25
## BROKERS

Guggenheim Securities, LLC

## SCHEDULE 2.27
### SUPPLIERS

| | Name | Address | Contract | Approximate Dollar Volume (as of 12/23/13) |
|---|---|---|---|---|
| 1. | Allied Health Plans | 9400 South Dadeland Blvd., Suite 510 Miami, FL 33156 | Health benefits | $111,133.67 |
| 2. | American Gaming Systems, LLC | 6680 Amelia Earhart Court Las Vegas, NV 89119 | Slot machines | $449,946.00 |
| 3. | Aristocrat Technologies | 7230 Amigo Street Las Vegas, NV 89119 | Slot machines | $42,425.50 |
| 4. | Bally Technologies, Inc. | 6601 South Bermuda Road Las Vegas, NV 89119 | Software/Hardware maintenance; slot machines; contract maintenance | $26,360.95 |
| 5. | Dana Jai-Alai | 301 East Dania Beach Blvd. P.O. Box 96 Dania, FL 33004 | ITW wagering | $58,946.77 |
| 6. | Edmunds Direct Mail, Inc. | 301 Tilton Road Northfield, NJ 08225 | Players Club mail services | $68,124.11 |
| 7. | Flagler Dogs | 401 NW 38 Court Miami, FL 33126 | ITW wagering | $13,420.47 |
| 8. | Gordon Food Service | 2850 NW 120 Terrace Miami, FL 33167 | F&B supplies | $9,077.77 |
| 9. | Graphic Controls | 400 Exchange Street Buffalo, NY 14204 | Slot operating supplies | $9,453.14 |
| 10. | Gulfstream Park | 901 South Federal Highway Hallandale, FL 33009 | ITW wagering | $48,803.11 |
| 11. | IGT-Eastern Operating | 6355 South Buffalo Drive Las Vegas, NV 89113 | Slot machines | $39,005.00 |
| 12. | International Sound | 6355 South Buffalo Drive | Television Pari-Mutuel wagering and | $195,797.39 |

54

|  | | | surveillance equipment | |
|---|---|---|---|---|
|  | Corp. | Las Vegas, NV 89113 | | |
| 13. | Miami Dade Police | 9105 NW 25 Street, Suite 3049<br>Doral, FL 33172 | Security services | $20,673.02 |
| 14. | Palm Beach Kennel | 1111 North Congress Avenue<br>West Palm Beach, FL 33409 | ITW wagering | $49,742.75 |
| 15. | Roberts Communication<br>Network, Inc. | 4175 Cameron Street, Suite B-10<br>Las Vegas, NV 89103 | Satellite service for jai-alai signal | $70,850.00 |
| 16. | SFM Services, Inc. | 9700 NW 79th Avenue<br>Miami, FL 33016 | Janitorial,    landscape,    security<br>services | $23,716.56 |
| 17. | SHFL    Entertainment,<br>Inc. | 1106 Palms Airport Drive<br>Las Vegas, NV 89119 | Slot machines; card shufflers | $50,332.80 |
| 18. | Specialty    House    of<br>Creation | 200 North Walnut<br>P.O. Box 130<br>Cottonwood, KS 66845 | Player Club supplies | $11,050.00 |
| 19. | Sportech, Inc. | 1095 Winward Ridge Parkway<br>Suite 170<br>Alpharetta, GA 30005 | Pari-mutuel wagering equipment and<br>service | $40,955.03 |
| 20. | Tampa Bay Downs | 112225 Race Track Road<br>Tampa, FL 33626 | ITW Wagering | $121,607.57 |

<u>**SCHEDULE 3.03(b)**</u>
<u>**PURCHASER – APPROVALS,**</u>
<u>**CONSENTS/CONFLICTS**</u>

All Intangible Personal Property.

## SCHEDULE 3.08
## ALTERNATIVE PURCHASERS

NONE.

LOULibrary 0000KXE.0610291  1584294v9

## EXHIBIT B

Copies of the Fronton Asset Purchase Agreement identified as Exhibit 1 are available from the Clerk of the Bankruptcy Court, or by contacting Ali-Marcelle Lee-Sin at lee-sin@salazarjackson.com.