IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | Chapter 11 |
| FLORIDA GAMING CENTERS, INC., *et al.*,[1] | Case No. 13-29597-RAM (Jointly Administered) |
| Debtors.                              / | |

**CONFIRMATION DECLARATION OF WILLIAM B. COLLETT, JR. IN SUPPORT OF SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF FLORIDA GAMING CENTERS, INC. AND FLORIDA GAMING CORPORATION**

I, William B. Collett, Jr., being duly sworn, state the following under penalty of perjury:

My name is William B. Collett, Jr. I am over 21 years of age and fully competent to make this declaration. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration.

1. I am the President and Chief Executive Officer for Florida Gaming Centers, Inc. and Florida Gaming Corporation.

2. As President and Chief Executive Officer, I am familiar with the business, operations, assets and books and records of the Debtors.

3. I make this declaration in support of the confirmation of the *Second Amended Joint Chapter 11 Plan of Liquidation of Florida Gaming Centers, Inc. and Florida Gaming Corporation* (the "**Plan**") [ECF No. 548].[2] If called upon as a witness, I would testify competently to the facts and opinions set forth herein.

---

[1] The debtors in these chapter 11 cases, and the last four digits of their federal tax identification number, are: Florida Gaming Corporation (0533), Florida Gaming Centers, Inc. (5893), Tara Club Estates, Inc. (9545), and Freedom Holding, Inc. (4929).

[2] Capitalized terms not otherwise defined herein have the meaning ascribed such terms in the Plan.

**Background**

4. Florida Gaming Centers, Inc. ("**Centers**"), which in turn, is 100% owned by Florida Gaming Corporation ("**Holdings**") (Centers and Holdings together, "**Debtors**"), operated Miami Jai Alai, one of Miami's oldest institutions. In fact, the first professional jai alai game was played at Miami Jai Alai in 1926. Over the years, Miami Jai Alai has been an important part of the growing Miami community – hosting jammed-packed Jai-Alai games, concerts by Jimi Hendrix, Miami Vice episodes, Miami Junior Women's Club meetings, and championship boxing matches.

5. Due to a decline in the jai-alai industry and the need to bring in additional cash flow to the Miami Jai-Alai fronton, Miami Jai Alai opened Casino Miami Jai-Alia in January 2012. The addition included a 40,000 square foot state of the art casino with 1035 Class III slot machines, an expanded poker room, electronic blackjack, roulette, dominoes, live shows such as concerts and boxing, a new restaurant and three full-service bars.

6. On August 19, 2013, the Debtors commenced these proceedings by filing voluntary petitions under Chapter 11 of the Bankruptcy Code.

**Terms of the Plan**

7. The Plan includes the following principal features:

   a. **Other Administrative Claims.** Each Holder of an Allowed Other Administrative Claim shall receive on account of, and in full satisfaction, settlement and release of and in exchange for such Allowed Other Administrative Claim, Cash equal to the unpaid portion of such Allowed Other Administrative Claim, upon the earlier to occur of (i) ten (10) Business Days after the Effective Date, or (ii) ten (10) Business Days after the entry of a Final Order allowing such Other Administrative Claim; *provided*, *however*, that Other Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases

shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreement or course of dealing relating thereto.

    b. **Statutory Fees.** On or before the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930 shall be paid in full by the Debtors in Cash. Following the Effective Date, the Creditor Trustee shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930 for post-confirmation periods, for each of the Debtors' Estates, based upon disbursements made by the Creditor Trustee with respect to each of the Debtors, until the earlier of the closing of the Chapter 11 Cases of the Debtors by the issuance of a final decree by the Bankruptcy Court or upon the entry of an order by the Bankruptcy Court dismissing or converting the Chapter 11 Cases of the Debtors to another chapter under the Bankruptcy Code. The fees due and payable to the U.S. Trustee in respect of the Distribution (by the Debtors or the Creditor Trustee) of the Centers Claim Reserve, the Initial Holdings Distribution Amount, the Other Administrative Claim Reserve and the Professional Fee Claim Reserve shall be deemed an Allowed Other Administrative Claim.

    c. **Professional Fee Claims.** On or prior to the deadline set by the Bankruptcy Court for Professionals to File final fee applications, each Professional shall File with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date. Within ten (10) days after entry of an Order with respect to its final fee application, as applicable, either the Debtors or the Creditor Trustee, as applicable, shall pay the Allowed Professional Fee Claims of each Professional.

    d. **Priority Tax Claims.** Each Holder of an Allowed Priority Tax Claim shall be entitled to receive on account of such Allowed Priority Tax Claim, in full satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, payment in full in Cash upon the earlier to

occur of (i) within ten (10) Business Days after the Effective Date, or (ii) ten (10) Business Days after the entry of a Final Order allowing such Priority Tax Claim.

      e. **Lenders Centers Claims**. The Lenders Centers Claims were satisfied in full pursuant to the terms of the Settlement Agreement and the Sale Order and shall not be classified, nor entitled to vote or receive any Distribution on account of such Lenders Centers Claims pursuant to this Plan.

      f. **Class 1: Centers Claims**. Class 1 consists of Allowed Centers Claims. Each Holder of an Allowed Centers Claim shall receive payment in full, in Cash, of the allowed amount of its Centers Claim, exclusive of any post-petition interest and/or fees of any kind, upon the earlier to occur of (i) within ten (10) Business Days after the Effective Date, or (ii) ten (10) Business Days after the entry of a Final Order allowing each such Centers Claim.

      g. **Class 2: Lenders Holdings Claims.** Class 2 consists of Allowed Lenders Holdings Claims. The Holders of Lenders Holdings Claims received a partial Distribution (or were deemed to have received a partial Distribution) in respect of the Lenders Holdings Claims pursuant to the Settlement Agreement and Sale Order, and shall receive no further Distribution pursuant to the Plan on account of the Allowed Lenders Holdings Claims other than any distributions provided pursuant to the terms of the Settlement Agreement.

      h. **Class 3: Non-Subordinated Holdings Claims.** Class 3 consists of Allowed Non-Subordinated Holdings Claims. Each Holder of an Allowed Non-Subordinated Holdings Claim shall receive payment, in Cash, of its Pro Rata share of (a) the Initial Holdings Distribution Amount; (b) (i) the Centers Claim Remainder, if any, and (ii) that portion of the Administrative Claim Remainder, if any, distributable to the Estates of the

Debtors pursuant to section 6 of the Settlement Agreement, in each case pursuant to the terms of the Settlement Agreement; (c) the proceeds of Causes of Action, including in respect of the D&O Claims (net of Post Confirmation Administrative Claims related thereto); and (d) the proceeds (net of Post Confirmation Administrative Claims) from the liquidation of the balance of the Creditor Trust Assets; *provided*, *however*, that for the avoidance of doubt, Holders of Allowed Non-Subordinated Holdings Claims shall not receive payment of any post-petition interest and/or fees of any kind. The initial Distributions to Holders of Allowed Non-Subordinated Holdings Claims shall be made upon the earlier to occur of (i) within ten (10) Business Days after the Effective Date, or (ii) ten (10) Business Days after the entry of a Final Order allowing such Non-Subordinated Holdings Claim. Thereafter, Distributions to Holders of Allowed Non-Subordinated Holdings Claims shall be made on such other Distribution Dates as determined by the Creditor Trustee.

      i.    **Class 4: Subordinated Holdings Claims**. Class 4 consists of Allowed Subordinated Holdings Claims. Each Holder of an Allowed Subordinated Holdings Claim shall receive payment, in Cash, of its Pro Rata share of the Subordinated Holdings Claim Remainder, if any; *provided*, *however*, that for the avoidance of doubt, Holders of Allowed Subordinated Holdings Claims shall not receive payment of any post-petition interest and/or fees of any kind.

      j.    **Class 5: Centers Equity Interests.** Class 5 consists of Allowed Centers Equity Interests. The Holders of Centers Equity Interests shall receive Distributions on account of such Interests pursuant to this Plan from the net proceeds of Causes of Action, if any, after payment in full of all Allowed Claims in Class 1 above, *provided, however*, that the Lenders have agreed, in the Settlement Agreement, to waive any such Distribution on account of such Lenders Centers Interests.

    k. **Class 6: Holdings Preferred Equity Interests.**  Class 6 consists of Allowed Holdings Preferred Equity Interests.  On the Effective Date, all Holdings Preferred Equity Interests shall be terminated and extinguished; provided, however, that each Holder of an Allowed Holdings Preferred Equity Interest on the Recordholder Distribution Date shall receive payment, in Cash, of its Pro Rata share of the Holdings Preferred Equity Interest Remainder, if any.

    l. **Class 7: Holdings Equity Interests.**  Class 7 consists of Allowed Holdings Equity Interests.  On the Effective Date, all Holdings Equity Interests shall be terminated and extinguished; provided, however, that each Holder of an Allowed Holdings Equity Interest on the Recordholder Distribution Date shall receive payment, in Cash, of its Pro Rata share of the Holdings Equity Interest Remainder, if any.

## Liquidation Analysis

8. The Settlement Agreement, attached to the Plan as Exhibit A, requires the Debtors to make distributions pursuant to the Payment Waterfall contained therein.  The Debtors believe that the Distributions under the Plan, and as required by the Settlement Agreement, will provide Creditors of the Debtors a greater recovery on account of Allowed Claims then would distributions by a Chapter 7 Trustee.  Additionally, Distributions under the Plan to Creditors of the Debtors would be made more quickly than distributions by a Chapter 7 trustee and a Chapter 7 trustee would charge a substantial fee, reducing the amount, if any, available for distribution on account of Allowed Claims.

## Feasibility

9. Section 1129(a)(11) of the Bankruptcy Code requires that the Debtors be able to perform their obligations under the Plan.  For purposes of determining whether the Plan meets this requirement, I analyzed the Debtors' ability to meet their obligations under the Plan.  I believe that the Debtors have adequate funding to be able to meet their obligations under the Plan.  Based upon the terms of the Settlement

Agreement, Centers DIP holds cleared funds in its trust account totaling $6,892,445.31. These funds are sufficient to pay sums due on the Effective Date, and to fund the case through the entry of a Final Decree.

### The Plan Meets the Requirements of 11 U.S.C. § 1129

10. To the best of my knowledge, information and belief, the Plan has been proposed by the Debtors in good faith and not by any means forbidden by law.

11. To the best of my knowledge, information and belief, any payment made or to be made by the Debtors, for services or for costs and expenses in or in connection with the cases, or in connection with the Plan and incident to the cases, besides payments made by Debtors in the ordinary course of business, have been approved by, or are subject to, the approval of the Court as reasonable.

12. To the best of my knowledge, information and belief, with respect to each impaired class of Claims or Interests, each Holder of a Claim or Interest of such class has either accepted the Plan or will receive or retain, under the Plan on account of such claim or interest, property of value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

13. The Plan divides creditors and equity interest holders into seven classes. Holders of Claims or Interests in Classes 1, 2, 3, 4 and 5 are impaired. Further, Holders of Interests classified in Classes 6 and 7 of the Plan are impaired, and will receive no distribution under the Plan.

14. To the best of my knowledge, information and belief, the confirmation of the Plan is not likely to be followed by any further liquidation or the need for further financial reorganization of the Debtors under the Plan, except to the extent proposed by the Plan.

15. The Plan provides for payment in full of all fees payable under 28 U.S.C. § 1930. To the extent any fees remain due and owing, they will be paid upon the Effective Date.

16. The Plan is fair and equitable with respect to all classes of Claims and Interests.

Based upon the foregoing, I submit that the Plan satisfies all of the requirements of the Bankruptcy Code and the Plan should be confirmed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 11, 2014

_____
W. Bennett Collett, Jr.